**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This document refers to:

*Orange County Water District v. Unocal Corp., et al.*,
    Case No. 04-cv-4968
*Commonwealth of Puerto Rico, et al. v. Shell Oil Co.,
    et al.*, Case No. 07-cv-10470
*Commonwealth of Puerto Rico, et al. v. Shell Oil Co.,
    et al.*, Case No. 14-cv-01014
*New Jersey Department of Environmental Protection,
    et al. v. Atlantic Richfield Co., et al.*, Case No. 08-
    cv-00312

Master File No. 1:00 – 1898
MDL 1358 (SAS): M21-88

## EXXON MOBIL CORPORATION DEFENDANTS' CORRECTED TWELFTH AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES

Pursuant to the Master Answer agreement among the parties, Case Management Order No. 6 and the Court's instructions during the January 13, 2005 status conference, Defendant Exxon Mobil Corporation, by undersigned counsel, hereby amends its Eleventh Amended Master Answer and Affirmative Defenses, filed in MDL 1358 on or November 15, 2013.

Exxon Mobil Corporation answers the complaints in *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* ("MDL 1358") for which an answer is presently required, and in which it has been properly named and served, as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs' complaints purport to assert common law and statutory claims against Exxon Mobil Corporation and various related entities and companies.  One or more of the following entities have been named as a defendant, some incorrectly, in each of the matters consolidated as part of MDL 1358: Exxon Mobil Corporation, f/k/a Exxon Corporation; Exxon

Mobil Corporation, d/b/a ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A.,

Exxon Company, U.S.A, ExxonMobil Chemical Corporation and/or ExxonMobil Chemical

U.S.A.; Exxon Mobil Chemical Company; ExxonMobil Oil Corporation; Exxon Mobil Sales and

Supply LLC; Exxon Caribbean Sales Inc.; ExxonMobil Oil Corporation, f/k/a Mobil Oil

Corporation, Socony Mobil Oil Company, Inc., and Socony Vacuum Oil Company,

Incorporated; ExxonMobil Pipeline Company; Mobil Corporation; Mobil Oil Corporation; and

Esso Standard Oil Company (Puerto Rico).  For ease of reference only, the foregoing defendants

referred to collectively herein as "ExxonMobil."  To the extent proper entities are named, Exxon

Mobil Corporation is the ultimate corporate parent of each of these entities.  To the extent

plaintiffs' complaints assert or purport to assert claims against these entities as separate and

distinct corporate entities, this Answer constitutes their response.


## ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS

### Basic Defendant Information

2.      Exxon Mobil Corporation ("ExxonMobil"), formerly known as Exxon

Corporation ("Exxon"), is a New Jersey corporation with its principal place of business in Irving,

Texas.

3.      Some of the complaints in MDL 1358 assert claims against ExxonMobil

Chemical Company, others do not.  ExxonMobil states that ExxonMobil Chemical Company is

an unincorporated division of Exxon Mobil Corporation.

4.      Some of the complaints in the MDL 1358 matters assert claims against

ExxonMobil Oil Corporation, others do not.   ExxonMobil states that ExxonMobil Oil

Corporation is a New York corporation with its principal place of business in Irving, Texas.  One

hundred percent of the stock of ExxonMobil Oil Corporation  is owned by Mobil Corporation.

5.      Some of the complaints in the MDL 1358 matters assert claims against Esso Standard Oil Company (Puerto Rico).  ExxonMobil states that Esso Standard Oil Company (Puerto Rico) is wholly owned by Esso Caribbean Investments Limited.

6.      Some of the complaints in the MDL 1358 matters assert claims against Mobil Corporation, others do not.  ExxonMobil states that Mobil Corporation is a Delaware corporation with its principal place of business in Irving, Texas.  Mobil Corporation is wholly owned by Exxon Mobil Corporation.

**Sale, Distribution and/or Supply of Gasoline with MTBE or TBA to States in Question**

7.      ExxonMobil admits that ExxonMobil, Exxon, Esso Standard Oil Company (Puerto Rico) and/or Mobil has produced, delivered and/or supplied gasoline (for one or more time periods between 1979 and the date of the filing of the complaints) to at least a portion of one or more of the following states (in which one or more of the plaintiffs have pending cases in MDL 1358 for which an answer is presently required):   California, New Jersey, and the Commonwealth of Puerto Rico.

**Allegations Regarding Production of MTBE or TBA**

8.      ExxonMobil states that it understands the allegations in the complaint about the production of  "neat MTBE" to mean commercial fuel grade MTBE containing at least 95 volume percent MTBE.  ExxonMobil further states that it operates or has operated MTBE manufacturing units as part of the Beaumont, Texas, Baytown, Texas, Baton Rouge, Louisiana and SAMREF Yanbu, Saudi Arabia refiners.  Further, ExxonMobil states that while these units have manufactured MTBE for gasoline blending, the MTBE may not have the purity to qualify as "neat MTBE."  ExxonMobil further states that it operated an MTBE manufacturing unit at its Benicia, California refinery until the time of the merger between Exxon and Mobil.  This unit

manufactured MTBE for gasoline blending, however, its MTBE may not have had the purity to qualify as "neat MTBE."

9.      ExxonMobil also states that prior to the merger of Exxon Corporation and Mobil Corporation on November 30, 1999, the former Exxon Corporation ("Exxon") manufactured MTBE at its Baytown, Texas, and Baton Rouge, Louisiana refineries.  ExxonMobil further states that Exxon owned and operated an MTBE plant at its Baytown refinery beginning in 1993.  This plant manufactured MTBE for gasoline blending, however the MTBE manufactured at the Baytown may not have had the purity to qualify as "neat MTBE."  Exxon also owned and operated an MTBE plant at its Baton Rouge refinery beginning in 1992.  This plant manufactured MTBE for gasoline blending, however, the MTBE manufactured at its Baton Rouge refinery may not have had the purity to qualify as "neat MTBE."  Further, Exxon owned and operated an MTBE manufacturing unit at its Benicia, California refinery from 1994 until the time of the merger between Exxon and Mobil.  This unit manufactured MTBE for gasoline blending, however, the MTBE manufactured at Benicia may not have had the purity to qualify as "neat MTBE."

10.      ExxonMobil also states that prior to the merger of Mobil Corporation with Exxon's subsidiary on November 30, 1999, the Mobil Corporation ("Mobil") had an MTBE manufacturing unit as part of its Beaumont, Texas refinery.  This unit manufactured MTBE for gasoline blending, however, the MTBE may not have had the purity to qualify as "neat MTBE."  Further, Mobil also owned an interest in the SAMREF Refinery in Yanbu, Saudi Arabia which had an MTBE manufacturing unit as part of its refinery operations.  This unit manufactured MTBE for gasoline blending, however, the MTBE may not have had the purity to qualify as "neat MTBE."

11.     ExxonMobil states that Esso Standard Oil (Puerto Rico) did not manufacture "neat MTBE" or "neat TBA", nor did it refine gasoline.

12.     ExxonMobil states that Exxon Corporation, Mobil Corporation and/or Exxon Mobil Corporation did not manufacture "neat TBA" for use as a gasoline blending component.

**Allegations Regarding Properties and Behavior of MTBE**

13.     ExxonMobil admits that MTBE is an aliphatic ether that does not occur naturally. ExxonMobil admits that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene.

14.     ExxonMobil states that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  ExxonMobil further states that MTBE's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including the nature or method of its release, the magnitude of its release, the geological setting, and environmental and microbial factors.

15.     ExxonMobil states that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

**Allegations Regarding Properties and Behavior of TBA**

16.     ExxonMobil admits that TBA is the product of the hydrolysis of isobutylene. ExxonMobil admits that TBA can be an intermediate product of MTBE biodegradation.

17.     ExxonMobil states that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds.  ExxonMobil further states that TBA's behavior in the environment – and its

behavior relative to BTEX – is dependent on a variety of factors, including the nature or method of its release, the magnitude of its release, the geological setting, and environmental and microbial factors.

**Allegations Regarding Taste and Odor**

18.     ExxonMobil admits that individuals vary in their ability to detect the taste and odor of MTBE and TBA in water.  ExxonMobil states that various federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

**Allegations Regarding Health Effects of MTBE**

19.     Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated.  MTBE has been studied publicly by scientists and government agencies for more than 30 years.  MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen.  ExxonMobil admits that EPA has in the past classified MTBE as a possible human carcinogen.  Further, ExxonMobil states that federal and state regulatory agencies have considered, adopted, and enforced standards fully protective of any alleged health concerns related to MTBE.

**Allegations Regarding Storage and Handling of Gasoline**

20.     ExxonMobil admits that it is commonly known that gasoline is sometimes released into the environment from USTs and other means, and states that it and, according to reports, other major oil companies have spent hundreds of millions of dollars or more over the past 30-plus years to eliminate or reduce leaks and to improve leak detection, and that the federal and various state governments have also enacted laws and engaged in enforcement efforts to eliminate or reduce leaks.  ExxonMobil states that it is aware that reasonable adults understand

that gasoline should be handled carefully and should not be spilled as the risk of contamination is obvious.

## Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s

21.     The complaints purport to describe various publicly reported incidents of MTBE contamination in New Jersey, New York and Maine in the 1980s.  ExxonMobil states that it was widely known among federal and state government regulators in the 1980s that various incidents involving MTBE contamination – including the ones plaintiffs' complaints regularly list – had occurred.

22.     ExxonMobil admits that in the early 1980s there was publicity regarding a contamination event in Rockaway, New Jersey, that did not directly involve ExxonMobil. ExxonMobil admits that it is aware of certain release events in New York, some of which involved MTBE.

23.     ExxonMobil admits that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine.  ExxonMobil admits that information about MTBE was known to federal and state governments and the scientific community, as the 1986 Garrett and Moreau paper illustrates.

## Allegations Regarding Participation In Industry Associations or Lobbying Activities

24.     The chemical properties of ethers like MTBE have been known in the public arena for many, many years.  Plaintiffs' claim that Defendants somehow hid this information from them, or from the U.S. government, is baseless.  ExxonMobil denies that it had any agreement with any other defendant to withhold from plaintiffs or government regulators information concerning MTBE.

25.     ExxonMobil admits that prior to 1990, Congress was preparing to take action to address the Nation's air pollution problem.   ExxonMobil admits that federal government agencies were aware of MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986.  ExxonMobil admits that it, like the federal government, was aware of the Garrett and Moreau paper in or about 1986.  ExxonMobil admits that Exxon Corporation participated in an American Petroleum Institute ("API") committee called the Toxicology Committee.  ExxonMobil admits that a Testing Consent Order was entered with EPA in or about 1988 by various major oil companies.

26.     Some complaints contain allegations about certain defendants' membership in the American Petroleum Institute ("API"), the Oxygenated Fuels Association ("OFA") and the MTBE Committee, and others do not.  ExxonMobil admits that Exxon Corporation, Exxon Mobil Corporation, Mobil Corporation and Mobil Oil Corporation were members of the API at some point during the period from January 1, 1980, to the date of the filing of the complaints. ExxonMobil further admits that Exxon Chemical Company was a member of the MTBE Committee at some point during the period from January 1, 1980, to the date of the filing of the complaints.   ExxonMobil denies that the API, Ad Hoc MTBE Group, OFA, and MTBE Committee were agents of ExxonMobil and that statements made by these groups are attributable to ExxonMobil.  As to these allegations as they pertain to other defendants, no answer from ExxonMobil is required.

27.     In response to plaintiffs' allegation that Congress adopted the Reformulated Gasoline (RFG) Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," ExxonMobil denies the

allegation, as stated, and states that many major oil companies in fact actively resisted the RFG Program's requirement of oxygen content levels.

**Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments**

28.    ExxonMobil states that although the 1990 Clean Air Act Amendments ("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA certainly did compel MTBE's use.  EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use.

29.    ExxonMobil states that beginning in the late 1970s, following the U.S. EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE.  In the mid-1980's, ExxonMobil, at various times, in various locations, added octane enhancers to some gasoline in small amounts to address the government mandated lead phase-out.  In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992).  In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.  Reformulated gasolines used since that time have sometimes contained between 10% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content.

30.    ExxonMobil denies that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and oxyfuel regions when the Amendments requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

31.    ExxonMobil admits that when it refined crude oil, owned refineries, and made gasoline, it complied with the legal requirements of the lead phase-out, the RFG Program and the

Oxygenated Fuel Program.  ExxonMobil further states that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

**Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies**

32.    ExxonMobil admits that in 2001, EPA provided advance notice of its intent to initiate a rulemaking pursuant to the Toxic Substances Control Act ("TSCA") to eliminate or limit the use of MTBE as a fuel additive.  No such rulemaking was ever initiated.  ExxonMobil admits that certain proposed legislation in the U.S. Congress would have limited the use of MTBE in gasoline.  Further, ExxonMobil admits that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

33.    Some complaints contain certain allegations relating to TSCA, 15 U.S.C. § 2607(e), and others do not.  ExxonMobil admits that it received the Notice attached as Exhibit B to those Plaintiffs' complaints.  ExxonMobil denies that it has a duty to report information requested in the Advanced Notice of Proposed Rulemaking ("ANPRM") in 65 Fed. Reg. 16094. ExxonMobil denies that it has information reasonably supporting the conclusion that MTBE and containing gasoline MTBE present a substantial risk of injury to health or the environment.

**Allegations Regarding Plaintiffs' Claimed Inability To Identify Relevant Sources of Gasoline Leaks Or Spills Affecting a Given Site**

34.    Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source; limited to the immediate geographic area of the source; and remediable.  In the vast majority of leak incidents, a responsible party can be and is identified.

35.    ExxonMobil denies that gasoline can never be traced from a contamination site to its terminal or refinery source.

**Allegations Regarding Business Practices**

36.     Some complaints contain allegations that defendants engaged in deceptive or unfair trade practices, and others do not.  ExxonMobil denies that it has engaged in any conduct or practice that is or was deceptive, misleading fraudulent, or unfair.  ExxonMobil further denies that it has deceived, mislead, or defrauded any governmental agency, customer, or consumer.

**Allegations Regarding Intent**

37.     Some complaints contain allegations that defendants acted knowingly, willfully, maliciously and/or wantonly.  ExxonMobil denies all such allegations.

**Allegations Purporting To Quote Or Summarize Documents**

38.     Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations.  These written materials speak for themselves.  The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of their content, and therefore ExxonMobil denies plaintiffs' attempts to summarize or characterize the contents of these written materials.

**Allegations Regarding Defendants Unrelated To ExxonMobil**

39.     ExxonMobil is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts or omissions of defendants unrelated to ExxonMobil and therefore denies same.

**Allegations Regarding Particular Claims or Counts**

40.     In response to the portions of the complaints purporting to state particular common law or statutory claims, ExxonMobil incorporates each paragraph of this Master Answer as if fully restated herein.  ExxonMobil denies it is liable for any legal claim in any MDL 1358 complaint.

**Allegations Regarding Claimed Injuries or Damages**

41.     Some complaints contain allegations about contamination to specific wells and release locations, and others do not.  ExxonMobil is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination and therefore denies same.  ExxonMobil believes publicly available documents regarding plaintiffs will demonstrate that many of the wells at issue have not been impacted by MTBE, or have been impacted only at levels well below state action standards for MTBE.  To the extent a response is required, ExxonMobil denies the allegations.

42.     With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, ExxonMobil admits that plaintiffs seek the relief mentioned in the complaints, but denies that it is appropriate for plaintiffs to do so factually or legally and denies that plaintiffs are entitled to any relief.

**Plaintiffs' Demands for Jury Trials**

43.     Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints.  These jury demands require no answer.  To the extent any answer is deemed necessary, ExxonMobil admits that the plaintiffs demand jury trials, but denies that they are entitled to them.

**Plaintiffs' Allegations of Representational Standing**

44.     Certain California plaintiffs' complaints contain allegations that could be construed to suggest that those plaintiffs are asserting a right to bring claims in a representational capacity.   The Orange County Water District clarified that it was not asserting such rights.  Thereafter, by orders dated June 9 and 22, 2005, the Court either struck all such allegations by plaintiffs that had asserted them or confirmed that such plaintiffs were not asserting them.  On

the basis of these Court orders, ExxonMobil declines to answer these allegations. To the extent an answer is deemed necessary, ExxonMobil denies that any plaintiff has standing to bring claims in a representational capacity.

**Certain Plaintiffs' Allegations of Ownership of the Groundwater Resources**

45.     To the extent plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to surafce water or groundwater, ExxonMobil denies these allegations and denies that these plaintiffs have standing to bring any claim based on allegations of injury to surface water, groundwater or property damage.

**Certain Plaintiffs' Allegations of Injury to Natural Resources**

46.     Certain plaintiffs' complaints contain allegations of damage to natural resources and seek compensation and other relief as the alleged trustee and/or owner of those natural resources. ExxonMobil admits that groundwater, surface waters, wetlands and other ecological resources exist within the States and Commonwealth at issue in MDL 1358 ("MDL States"); admits that some of those resources are privately owned and some are not; admits that some natural resources may provide commercial, industrial, recreational, and other services to the people of the MDL States and to the economies of the MDL States.

47.     ExxonMobil further admits that the police power of certain Plaintiffs extends to the protection and conservation of certain natural resources which are not the private property of any person or entity; admits that by a longstanding legal fiction this proposition is sometimes inexactly expressed by saying that a State is the owner or trustee of natural resources for the benefit of its people or citizens; admits that certain governmental agencies have limited regulatory authority with respect to natural resources within an MDL state as provided by law.

**Regulatory Powers of Other Agencies**

48.    Certain California plaintiffs allege that they are entitled to assert claims to protect groundwater resources or the environment without regard to any impact on water supply wells owned or operated by them.  ExxonMobil denies that these plaintiffs possess any such right.  ExxonMobil further alleges that, pursuant to statutes duly enacted by the California legislature, state agencies that are not parties to these lawsuits have been delegated the power and authority to (1) determine what maximum levels of contaminants, including MTBE and/or TBA, are permissible in potable water distributed in California and (2) manage activities to investigate, delineate, remediate and cleanup actual or suspected MTBE and/or TBA contamination, including determining when sufficient cleanup has been achieved.

**California Civil Code Section 1882 Claims**

49.    Certain California plaintiffs have alleged causes of action and/or prayers for treble damages and attorneys' fees based on California Civil Code § 1882 et seq.  By order dated May 31, 2005, the Court dismissed and struck these allegations from the complaints.  On the basis of the Court order, ExxonMobil declines to answer these allegations.  To the extent any answer is deemed necessary, ExxonMobil denies that any plaintiff is entitled to recovery under California Civil Code § 1882 et seq.

**GENERAL DENIAL OF REMAINING ALLEGATIONS**

50.    ExxonMobil denies the remaining allegations in the complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served.

**RESERVATION OF RIGHT TO AMEND**

51.    ExxonMobil reserves the right to amend this Master Answer.

- 14 -

**AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES**

For its separate defenses to the complaints in the <u>MDL 1358</u> cases for which an answer is presently required, and in which it has been properly named and served, ExxonMobil states as follows:

52.     Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

53.     Plaintiffs' claims are barred in whole or in part because at all relevant times, ExxonMobil's actions and its products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

54.     Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of ExxonMobil.

55.     All acts and conduct of ExxonMobil, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

56.     The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over these matters pursuant to the doctrine of primary jurisdiction.

57.     The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus, this Court should decline to exercise jurisdiction over these matters based upon the doctrine of separation of powers.

58.     Plaintiffs have failed to exhaust their administrative remedies.

59.     Plaintiffs have a plain, common, adequate and speedy remedy at law.   The equitable causes of action alleged in the complaints are thus barred.

60.     Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be unconstitutional given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

61.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which ExxonMobil denies, ExxonMobil alleges that such hardship is outweighed by the convenience and public service rendered by ExxonMobil's actions.

62.     Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

63.     To the extent that plaintiffs have received or may receive some or all of the requested relief from a governmental agency, ExxonMobil asserts its entitlement to an appropriate set-off or reduction of any judgment against it.

64.     The appropriate forum for plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

65. The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

66. Each purported cause of action of the complaints as applied to ExxonMobil is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

67. The complaints fails to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant Fed. R. Civ. P. 12(b)(6).

68. Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, plaintiffs' claims are not ripe for adjudication.

69. Plaintiffs' claims for natural resource damages, including restoration, are not ripe to the extent that ExxonMobil still is conducting and paying for remediation or there is another entity that is paying for remediation.

70. Plaintiffs' claims are not ripe to the extent they seek recovery for any activity to be undertaken in the future at sites where response actions are currently underway or where contamination has not been detected at present.

71. ExxonMobil's conduct was not the cause in fact or proximate cause of any injuries alleged by plaintiffs.

72. Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury and because ExxonMobil's alleged conduct does not constitute an interference with a right common to the general public.

73.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to ExxonMobil is *de minimis* and therefore any injunction would pose a disproportionate hardship on ExxonMobil, as well as on the public, in comparison to the injury and or damages allegedly suffered by plaintiffs.   Accordingly, plaintiffs are not entitled to injunctive relief as to ExxonMobil as a matter of law.

74.     Plaintiffs do not have a legally cognizable injury because the alleged MTBE and/or TBA contamination does not exceed state action levels.

75.     Plaintiffs may not seek attorneys' fees as an element of relief.

76.     Plaintiffs have failed to properly present any claim for attorneys' fees.

77.     Some plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview. These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

78.     Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees, if appropriate, must be proportioned between same.

79.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

80.     The complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to ExxonMobil.

81.     The complaints and each purported cause of action are barred, in whole or in party, by the doctrine of unclean hands.

82.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

83.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

84.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against ExxonMobil in the complaints.

85.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

86.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.   In the event that the defendant-identification burden were shifted in the future, ExxonMobil denies that it contributed to the contamination at issue.

87.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

88.     Plaintiffs assumed the risk of all acts, injuries, and damages that plaintiffs now assert against ExxonMobil.

89.     ExxonMobil is entitled to total or partial indemnity from those individuals or entities who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

90.     Plaintiffs lack the capacity to sue.

91.     Plaintiffs lack standing to sue.

92.     Plaintiffs' claims are barred because ExxonMobil's conduct caused no physical impact to plaintiffs' property.

93.     There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

94.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

95.     The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

96.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to ExxonMobil.  Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from ExxonMobil as a matter of law.

97.     Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by plaintiffs.

98.     At no time did ExxonMobil exercise control over the persons or entities responsible for actual or threatened releases of MTBE, if any, alleged in the complaints.  At all times, ExxonMobil acted with due care with respect to any petroleum or petroleum products used and took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences.

99.     Plaintiffs' claims are barred in whole or in part because plaintiff is not a user or consumer of gasoline containing MTBE, and no injury alleged is the result of using or consuming gasoline containing MTBE.

100.    ExxonMobil did not own, control or release any of the petroleum products that are alleged to have caused or threatened contamination of wells, groundwater, or other locations for which relief is sought in the complaints.

101.    Any ExxonMobil gasoline product sold or distributed for resale was properly designed, formulated, prepared and otherwise not defective in any respect.

102.    To the extent required, ExxonMobil provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

103.    Plaintiffs have failed to allege that ExxonMobil's alleged failure to provide an adequate warning proximately caused their injuries.

104.    Any gasoline product containing MTBE manufactured, sold, or distributed for resale by ExxonMobil was not unreasonably dangerous when made.

105.    The plaintiffs' claims against ExxonMobil are barred by the bulk supplier doctrine.

106.    ExxonMobil sold its products to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

107.    Any injury, damage or loss sustained by the plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

108.    Plaintiffs' claims are barred pursuant to the learned or sophisticated intermediary doctrine.

109.    If any damages or injuries alleged in the complaints occurred because of leaks in the gasoline storage tanks and associated piping, ExxonMobil is not liable for those damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for their intended purpose.

110.    Plaintiffs' claims are barred to the extent they seek any relief inconsistent with the applicable State or Federal regulatory schemes for addressing releases of contamination.

111.    Plaintiffs' nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of their life or property.

112.    Plaintiffs' public nuisance claims must be dismissed because plaintiffs' have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

113.    Plaintiffs' nuisance claims must be dismissed to the extent premised on ExxonMobil's manufacture or distribution of MTBE or MTBE gasoline.

114.    ExxonMobil alleges that it owed no duty of care to plaintiffs in connection with the matter alleged in the complaints.

115.    The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

116.    Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

117.    The complaints and each cause of action are barred based on ExxonMobil's valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

118.    Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

119.    There is no legal relationship upon which any duty could possibly be owed by ExxonMobil to plaintiffs, and therefore, plaintiffs' causes of action fail as a matter of law.

120.    The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part to the presence of compounds other than MTBE (e.g., the BTEX compounds).   Under plaintiffs own legal theories, ExxonMobil is not liable for damages caused by compounds other than MTBE.   In the event liability is assessed against ExxonMobil, such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

121.    ExxonMobil is not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards, requiring cleanup or regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

122.    Any injury, damage or loss sustained by the plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

123.    Plaintiffs have failed to state a claim for trespass because they have neither alleged nor suffered an invasion of an exclusive possessory interest in the alleged damaged property, nor did ExxonMobil act with the requisite intent.

124.    Plaintiffs' recovery is barred, in whole or in part, due to their contributory or comparative fault.

125.    If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which ExxonMobil denies, ExxonMobil alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to the plaintiffs.

126.    If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which ExxonMobil denies,

ExxonMobil alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

127.    The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including ExxonMobil's, is divisible and distinct.  Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

128.    Plaintiffs' alleged injuries, if any, resulted from the mishandling or misuse of the product by the plaintiffs or other persons, and such misuse was not reasonably expected by ExxonMobil at the time that it sold or otherwise conveyed the product to the other party.

129.    Plaintiffs have unreasonably failed to mitigate their damages, if any.

130.    To the extent that any party has settled or may settle in the future with plaintiffs or any person on whose behalf plaintiffs purport to sue, ExxonMobil asserts its entitlement to an appropriate credit or reduction of any judgment(s) against it, or plaintiffs lack standing to sue for such claims or damages.

131.    Plaintiffs' claims for failure to warn are barred to the extent they seek to impose a duty to warn the plaintiffs in their sovereign capacity or as a regulator, as no such duty exists and any such claim violates separation of powers and justiciability principles as well as the doctrine of freedom of speech.

132.    Plaintiffs' claims for failure to warn are barred because ExxonMobil has no duty to warn the general public.

133.    Plaintiffs' claims are barred by principles of due process and separation of powers, as the judiciary's retroactive imposition of state law tort liability for use of MTBE

conflicts with the actions and decisions of both the United States' and plaintiffs' legislative and executive branches of government – including, but not limited to, approval for the use of MTBE; creation of the reformulated gasoline program; decisions to opt-in and/or remain in the reformulated gasoline program; creation and implementation of state funding mechanisms to address gasoline releases, including releases of gasoline containing MTBE; and the implementation of any decisions to ban MTBE.

134.    Any attempted application of any collective liability theory, including but not limited to market share liability, is inappropriate and violates principles of due process as not all gasoline contains or contained MTBE and not all gasoline is fungible.

135.    Any attempted application of any collective liability theory, including but not limited to market share liability, is inappropriate and violates principles of due process to the extent any market share of gasoline fails to account for non-MTBE gasoline.

136.    Any attempted application of any collective liability theory, including but not limited to market share liability, is inappropriate and violates principles of due process because identification of the entity and/or entities, potentially including defendant(s), that caused plaintiffs' alleged injuries is possible.

137.    Any attempted application of any collective liability theory, including but not limited to market share liability, is inappropriate and violates principles of due process due to the time period covered in the complaints, as such time period denies ExxonMobil the ability to present an adequate defense.

138.    Any attempted application of any collective liability theory, including but not limited to market share liability, is inappropriate and violates principles of due process as it will amount to the retroactive imposition of liability.

139.    Any attempted application of any collective liability theory, including but not limited to market share liability, is inappropriate and violates principles of due process because share of the market cannot reliably predict MTBE impact in the environment.

140.    Plaintiffs' claims are barred, in whole or in part, because at all times relevant and material to this action ExxonMobil's conduct comported with available technological, medical, scientific, and industrial state of the art.

141.    Plaintiffs' claims are barred by the doctrine of due process to the extent plaintiffs rely on statistical evidence to attempt to prove the extent of alleged contamination as the use of such statistical evidence denies ExxonMobil the ability to present an adequate defense.

142.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because the law of the MDL States governing punitive damages provides inadequate procedural protections against arbitrary or erroneous awards of such damages.  A state may constitutionally award punitive damages only if the law of that state provides significant and effective procedural protections to defendants, and the law of the MDL States do not.  *See Phillip Morris USA v. Williams*, 549 U.S. 346, 352, 127 S. Ct. 1057, 1062 (2007) (holding that "the Constitution imposes certain limits" regarding "procedures for awarding punitive damages," including requiring states to  implement "proper standards that will cabin the jury's discretionary authority" and "avoid an arbitrary determination of an award's amount"); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-417, 123 S. Ct. 1513, 1519-1520 (2003) ("It is well established that there are procedural . . . constitutional limitations on [punitive damages] awards . . . . Although these awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases

have not been accorded the protections applicable in a criminal proceeding.  This increases our concerns over the imprecise manner in which punitive damages systems are administered.")

143.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because ExxonMobil lacked adequate notice either of the type of conduct that could warrant an award of punitive damages under the law of the MDL States, or of the amount of such damages that could be awarded.  The lack of fair notice bars any award of punitive damages.  *Phillip Morris USA v. Williams*, 549 U.S. 346, 127 S. Ct. 1057, 1059 (2007) (holding "unless a State insists upon proper standards that will cabin the jury's discretionary authority, its punitive damages system may deprive a defendant of 'fair notice of the severity of the penalty that a State may impose,'" thus violating due process); *BMW of N. Am, Inc. v. Gore*, 517 U.S. 559, 574-576, 116 S. Ct. 1589, 1598 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to a penalty, but also of the severity of the penalty that a State may impose."); *accord State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520 (2003).

144.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because due process requires that any award of punitive damages bear a close relationship to appropriate civil fines or penalties established by the legislature, or by administrative agencies under authority delegated by the legislature.  *BMW of N. Am, Inc. v. Gore*, 517 U.S. 559, 583-84, 116 S. Ct. 1589, 1603 (1996). The law of the MDL States, however, fails to incorporate this due process requirement, and

therefore no award of punitive damages may be constitutionally made under the law of the MDL States.

145.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because punitive damages, as awarded in the MDL States, impermissibly discriminate against corporate defendants, including ExxonMobil in this case, that are organized under the laws of other states and that maintain their principal places of business in other states. *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) (noting risk "that jurors will use their verdicts to express biases against big businesses, particularly those without strong local presences").

146.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1), by the Commerce Clause of the United States Constitution (Article I, § 8, cl. 3), and by principles of federalism embodied in the Constitution, to the extent that any claim is based on any conduct by ExxonMobil that occurred outside each MDL State.  No *legitimate* interest of the MDL States can be served by the imposition of punitive damages based on conduct that occurred outside each MDL State; therefore, the limitations on state power in the Due Process and Commerce Clauses prohibit any award of punitive damages based on such conduct.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409, 123 S. Ct. 1513, 1516 (2003) ("State cannot punish a defendant for conduct that may have been lawful where it occurred.  Nor, as a general rule, does a State have a legitimate constitutional interest in imposing punitive damages to punish a defendant for unlawful acts committed outside of its jurisdiction.") (internal citations omitted); *see also Phillip Morris USA v. Williams*, 549 U.S. 346, 347, 127 S. Ct. 1057, 1059 (2007)

(holding that, because of the risk that punitive damages awards can, in practice, impose one State's (or one jury's) policies . . . upon other States . . . "it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance"); *Healy v. Beer Inst.*, 491 U.S. 324, 336, 109 S. Ct. 2491, 2499 (1989) (noting that "Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders"); *Alaska Packers Ass'n v. Indus. Accident Comm'n*, 294 U.S. 532, 540-41, 55 S. Ct. 518, 521 (1935) (state lacks authority "to control the legal consequences of a tortious act committed elsewhere"); *Bonaparte v. Tax Court*, 104 U.S. 592, 594 (1881) ("No State can legislate except with reference to its own jurisdiction.").

147.   Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, to the extent the law of the MDL States permits the introduction of evidence of ExxonMobil's financial condition with respect to the quantum of punitive damages.  The introduction of such evidence violates Due Process by inviting the jury to award an arbitrary amount of punitive damages based on ExxonMobil's status as an industrial enterprise.  *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) ("the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences").

148.   Plaintiffs' claims for punitive damages are barred by the Excessive Fines Clause of the United States Constitution (Amendment VIII) and similar clauses of the Constitutions of certain MDL States.  Where Plaintiff is the State, an award of punitive damages constitutes a "fine" subject to the Excessive Fines Clause.  Under such circumstances, any amount of punitive

damages would be excessive and in violation of the Excessive Fines Clause. Alternatively, the law of certain MDL States requires that a portion of any award of punitive damages be paid to the State and, therefore,  any amount of punitive damages would be excessive and in violation of the Excessive Fines Clause.

149.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because ExxonMobil's conduct that is alleged to warrant punitive damages is unrelated to the Plaintiffs' alleged harm.  Punitive damages may not be awarded to punish and deter conduct that bears no relation to the plaintiff's harm. *Phillip Morris USA v. Williams*, 549 U.S. 346, 353, 127 S. Ct. 1057, 1063 (2007) (holding that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23, 123 S. Ct. 1513, 1523 (2003) (holding "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); and *id.* at 423 (holding that "due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis").

150.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because the law of the MDL States governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, each of the five reprehensibility factors set out in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003).

Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

151.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because the law of the MDL States governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the constitutional factors that govern the permissible ratio of punitive damages to compensatory damages.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003) (holding that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process").  Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

152.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because the law of the MDL States governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the comparable civil fine that could be imposed on the defendant[s] for the conduct in question.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 123 S. Ct. 1513, 1531 (2003) (holding that civil fines are more appropriate benchmarks

for punitive damages than criminal penalties); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583, 116 S. Ct. 1589, 1603 (1996) (holding that courts "should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."); (O'Connor, J., concurring in part and dissenting in part) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301, 109 S. Ct. 2909, 2934 (1989)); *Clark v. Chrysler Corp.*, 436 F. 3d 594, 607 (6th Cir. 2006) (rejecting potential for punitive damages award as a basis for comparison in favor of potential civil penalties under applicable federal statute).  Such specific jury instructions and specific findings of fact on the comparable civil penalties are necessary for purposes of Due Process in order to permit the *de novo* review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

153.   Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because the law of the MDL States governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the direct relationship between ExxonMobil's conduct and the specific injury suffered by plaintiffs.  *Phillip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S. Ct. 1057, 1064 (2007) (holding that "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423, 123 S. Ct. 1513, 1523 (2003) (holding that "[D]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis.").

Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001), to ensure that the award is based solely on the conduct that caused specific injury to Plaintiff.

154.    Plaintiffs' claims for punitive damages are barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the Constitutions of certain MDL States, because the law of the MDL States governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the exclusion of all items of compensatory damage from the quantum of punitive damages.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S. Ct. 1513, 1525 (2003) (noting that "[t]he compensatory damages for the injury suffered here . . . likely were based on a component that was duplicated in the punitive award").  Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), to ensure that items of compensatory damages are not impermissibly 'double-counted' in the quantum of punitive damages.

155.    The damages sustained by Plaintiffs, if any, were the result of actions of an independent contractor precluding any liability on the part of ExxonMobil.

156.    Plaintiffs' claims are barred in whole or in part by Plaintiffs' failure to comply with applicable laws, regulations, standards and/or ordinances.

157.    Plaintiffs' claims under TSCA are barred by the applicable provisions of the pertinent statute of limitations, including, but not limited to, 28 U.S.C. § 2462.

158.    Plaintiffs' claims under TSCA cannot be sustained because the claims are based upon wholly past instances of conduct rather than ongoing violations.

159.    Plaintiffs cannot state a cause of action under TSCA because, at all relevant times, ExxonMobil complied with, satisfied, and discharged any and all obligations under TSCA to report to the EPA Administrator any information concerning the substantial risks of MTBE.

160.    ExxonMobil did not violate TSCA because, at all relevant times, ExxonMobil fully, timely, and adequately informed the EPA Administrator of any and all information concerning the substantial risks of MTBE in ExxonMobil's possession, custody or control.

161.    ExxonMobil has never had any information in its possession, custody or control which shows that MTBE actually poses a substantial risk of injury to health or the environment such as to necessitate a report to the EPA Administrator under TSCA.

162.    Plaintiffs' claims under TSCA are barred because, at all relevant times, ExxonMobil has had actual knowledge that the EPA Administrator had been adequately informed of information concerning the substantial risks of MTBE, and/or had access to such information in publicly-available documents and other sources, including, but not limited to: EPA studies or reports; official publications or reports published or made available to the general public by another Federal agency; scientific publications; scientific databases; news publications; radio or television news report broadcasts; and public scientific conferences or meetings, including conferences sponsored or co-sponsored by the U.S. EPA or at which an EPA employee or contractor acting on behalf of the EPA presented information.

163.    Plaintiffs' claims under TSCA are barred, in whole or in part, because the Advance Notice of Intent to Initiate Rulemaking under the Toxic Substances Control Act to Eliminate or Limit the Use of MTBE as a Fuel Additive in Gasoline, which was published by the

U.S. EPA in the Federal Register on March 24, 2000, did not require or otherwise obligate ExxonMobil to report to the EPA Administrator any information concerning MTBE.

164.    Plaintiffs' claims under TSCA are barred to the extent that Plaintiffs seek to impose civil fines or penalties upon ExxonMobil or recover monetary damages from ExxonMobil for alleged violations of TSCA.

165.    Plaintiffs' claims under TSCA cannot be sustained because Plaintiffs' notice(s) to ExxonMobil and the EPA Administrator of the alleged violations of TSCA under 15 U.S.C. §2619 and/or 40 C.F.R. §§ 702.60-702.62 is deficient and inadequate.

166.    Plaintiffs, as non-injured parties, lack sufficient standing to assert any claims under TSCA against ExxonMobil.

167.    Plaintiffs' claims under TSCA are barred because Plaintiffs have failed to comply with the statutory requirements or jurisdictional prerequisites for asserting a claim under TSCA.

168.    The damages sought by plaintiffs are wholly speculative and conjectural.

169.    Some or all of the injury or damages suffered by plaintiffs were the product of conduct for which ExxonMobil cannot have liability to plaintiffs, since it is lawfully undertaken by ExxonMobil and its predecessors in the exercise of their rights as owner(s) of real property.

170.    Plaintiffs' claims for natural resource damages are barred, in whole or in part, because plaintiffs do not own or have a trusteeship interest in the property and/or natural resources allegedly impacted.

171.    Plaintiffs have failed to state a claim for relief against ExxonMobil under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq. ("CERCLA").

172.     Plaintiffs' claims under CERCLA  are barred, in whole or in part, by the statutory defenses to liability provided by CERCLA.

173.     Plaintiffs' claims under CERCLA, in whole or in part, are subject to either the exclusive jurisdiction or the primary jurisdiction of the United States Environmental Protection Agency ("USEPA").

174.     Plaintiffs' claims under CERCLA are barred and/or untimely under the applicable provisions of the pertinent statute of limitations, including, but not limited to, 42 U.S.C. § 9613(g).

175.     To the extent any natural resources have been damaged by releases of hazardous substances, such releases and damages occurred wholly before December 11, 1980, barring any recovery under CERCLA.

176.     Plaintiffs' claims under CERCLA are barred, in whole or in part, by the "innocent purchaser" defense available under CERCLA, 42 U.S.C. § 9601(35).

177.     To the extent that any or all of the defendants are found liable under CERCLA, joint and several liability is inappropriate as to ExxonMobil because there are distinct harms or there is a reasonable basis for apportionment of the harms suffered.

178.     Plaintiffs' claims under CERCLA are barred, in whole or in part, because petroleum products, including gasoline containing MTBE, are excluded from the definition of "hazardous substances" under CERCLA.

179.     Plaintiffs' claims under CERCLA are barred, in whole or in part, because any past or future costs, if any, incurred by Plaintiffs in responding to an alleged release or threatened release of hazardous substances are inconsistent with the National Contingency Plan.

180.    Plaintiffs' claims under CERCLA are barred because Plaintiffs have failed to satisfy each and every condition precedent necessary to recover for past and/or future response costs under CERCLA.

181.    Plaintiffs have not incurred "clean-up and removal" costs or "response costs" as those terms are defined in the applicable statutes.

182.    Any costs allegedly incurred or to be incurred by Plaintiffs, if any, are unreasonable, duplicative, and not cost effective and, therefore, are not recoverable under CERCLA.

183.    Plaintiffs' claims under CERCLA for natural resource damages are barred, in whole or in part, because the alleged damages constitute irreversible and irretrievable commitments of natural resources.

184.    Defendants are not liable under CERCLA based on equitable defenses including, but not limited to, estoppel, unclean hands, laches, failure to provide opportunity to perform cleanup, failure to notify responsible parties, and failure to list a site on the National Priorities List.

185.    Plaintiffs have failed to state a claim for relief against ExxonMobil under the Resource Conservation and Recovery Act of 1976, as amended ("RCRA"), 42 U.S.C. § 6901, et seq. ("RCRA").

186.    Plaintiffs' claims under RCRA are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of RCRA.

187.    MTBE is not a hazardous waste or solid waste as those terms are currently defined by RCRA and applicable regulations and guidance.

188.     Plaintiffs' claims under RCRA are barred because plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under RCRA.

189.     Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.   This defense includes that Plaintiff will be unjustly enriched and/or will impermissibly double recover if Plaintiff is awarded remediation or restoration costs for sites at which ExxonMobil has paid or is paying for such remediation or restoration.   This defense also includes that Plaintiff will be unjustly enriched by recovering costs from ExxonMobil where a state or federal authorized fund already exists to address response action pertaining to the release of gasoline, including gasoline containing MTBE.

190.     Plaintiffs' claims of negligence and strict liability are barred in whole or in part by the economic loss rule.

191.     Plaintiffs' claims are or may be barred in whole or in part to the extent that Plaintiffs have released, settled, entered into an accord and satisfaction with respect to, or otherwise compromised their claims.

192.     ExxonMobil reserves the right to assert additional defenses that may be pertinent to Plaintiffs' claims when the precise nature of said claims are ascertained through discovery and based on facts developed as this matter progresses.

193.     ExxonMobil incorporates by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.   ExxonMobil further incorporates by reference any affirmative defense listed in a state section, below, to the extent also applicable generally.

194.    The pleading of the defenses described herein shall not be construed as an undertaking by ExxonMobil of any burden which would otherwise be the responsibility of plaintiffs.

## AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For its separate defenses to the complaints in  the <u>MDL 1358</u> cases from particular states (for which an answer is presently required, and in which ExxonMobil has been properly named and served), ExxonMobil states as follows:

### CALIFORNIA

195.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, California Code of Civil Procedure §§ 337, 337.1, 337.2, 337.15, 338, 340, 340.8, and 343.

196.    California Civil Code §§ 1431.1 through 1431.5, commonly known as "Proposition 51," provide that the liability of each defendant for non-economic damages, if any, shall be several only and shall not be joint, and ExxonMobil therefore asserts that each defendant may be held liable only for the amount of non-economic damages, if any, allocated to that defendant in direct proportion to its percentage of fault, if any.

197.    ExxonMobil alleges that its liability, if any, for non-economic loss be pro rated according to the provisions of California Civil Code § 1431.2.

198.    The complaints and each purported cause of action are barred because Plaintiffs and/or their predecessors-in-interest and assignors are guilty of unclean hands due to, among other things, taking actions that have increased and/or prolonged the contamination of the aquifer with MTBE and/or other contaminants.

199.    Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

200.    As to each cause of action in the complaints, ExxonMobil alleges that the release of MTBE and/or hazardous substances, if any, and the damages resulting therefrom, if any, were caused by an act of God.

201.    The complaints and each purported cause of action are barred because they are ambiguous and uncertain.

202.    Plaintiffs did not reasonably rely on any representation, disclaimer, warning, or other act or omission of ExxonMobil.

203.    ExxonMobil had no duty to warn plaintiffs or third parties about the potential dangers, if any, of the product or products manufactured, packaged, labeled, used, applied and/or removed by said third parties.

204.    ExxonMobil had no duty to warn because the risks of injury and damages inherent in utilizing the products described in the complaints, if any, were open, obvious, known and/or knowable.

205.    Any express or implied warranties alleged by plaintiffs to have been made by ExxonMobil, if made at all, were expressly disclaimed and excluded by product labels, pursuant to the laws of the State of California, which provided that ExxonMobil made no warranties, express or implied, concerning the products or the use of said products that extended beyond the description on the label, and that all statements made concerning said products applied only when used as directed.

205.    Plaintiffs are sophisticated water purveyors or managers and were, at all relevant times, fully aware of the nature and risks of injury and damages described in the complaints that could arise in the operations or management of a public drinking water supply system.

206.    If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, ExxonMobil did not and could not have known of such an alternate design at the time.

207.    If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, such an alternate design was not feasible at the time.

208.    If ExxonMobil provided the products alleged to have been defective, and without admitting that it did so or that any product was defective and without assuming the burden of proof on these issues, the products were misused or abused by others without the knowledge or consent of ExxonMobil and in a manner not reasonably foreseeable by ExxonMobil prior to its receipt of notice of the circumstances described in the complaints.  Such misuse or abuse was the sole cause of or a contributing cause to the injuries, losses, and/or damages, if any, suffered by Plaintiffs as alleged in the Complaint, and by reason thereof, Plaintiffs are barred from recovering some or all of any damages suffered.

209.    ExxonMobil is not liable for any alleged wrongful entry upon land because plaintiffs and/or plaintiffs' predecessors in interest or assignors expressly or impliedly consented to or had knowledge of all such activities or conditions.

210.    ExxonMobil alleges that to the extent plaintiffs are claiming damages for the cost of remediation due to plaintiffs' alleged compliance with primary or secondary drinking water standard or other regulations enacted by the State of California or any other governmental body,

those claims are unconstitutional because they constitute an ex post facto application of a regulation disallowed by Art. 1, sec. 9 of the U.S. Constitution.

211.   The complaints and each purported cause of action are barred, in whole or in part, by federal and state law, including but not limited to, the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Clean Air Act, 42 U.S.C. § 7401, et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq.; and rules, regulations, and decisions there under.

212.   ExxonMobil alleges that the maximum contaminant level or other drinking water standard, to the extent they form the bases of plaintiffs' claims against ExxonMobil was/were arbitrarily and unreasonably enacted without due process and, therefore, cannot be enforced against ExxonMobil.

213.   The complaints and each purported cause of action are barred to the extent that federal and/or California state agencies have exonerated ExxonMobil and/or determined that any ExxonMobil facility did not contribute to the presence of MTBE in the relevant groundwater for which plaintiffs are asserting damages.

214.   The complaints and each purported cause of action are barred because plaintiffs do not own or have abandoned, lost, waived, given up, or otherwise failed to perfect any rights, including but not limited to use rights related to any water that is the subject of the complaints. Plaintiffs' claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of plaintiffs.

215.   The complaints and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provision of alternate water supplies by ExxonMobil, defendants, or third parties.

216.    The complaints and each purported cause of action are barred to the extent that plaintiffs have assigned rights and claims for certain damages and other relief, if any, to ExxonMobil, other defendants, or third parties.

217.    If plaintiffs sustained any injury under the circumstances alleged in the complaints or in any other respect, their recovery against ExxonMobil, if any, is barred by the alleged conduct and conditions resulted from a necessity.

218.    Plaintiffs' claims are barred, in whole or in part, as the result of their own knowing or negligent conduct that caused or contributed to MTBE and/or TBA contamination giving rise to these claims.

**NEW JERSEY**

219.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. § 2A:14-2.

220.    ExxonMobil's conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J. Stat. Ann. § 2C:2-2, and, therefore, plaintiffs' claims on these counts should be dismissed.

221.    Plaintiffs' claims are barred by the entire controversy doctrine and the principles of *res judicata*.

222.    ExxonMobil is not "in any way responsible" for a hazardous substance as is required under the New Jersey Spill Compensation and Control Act ("Spill Act").

223.    ExxonMobil did not "discharge" a hazardous substance as required under the Spill Act.

224.    Plaintiffs have not incurred "cleanup and removal costs" under the Spill Act.

225.    Plaintiffs' claim for treble damages under the Spill Act is barred as Plaintiffs have failed to comply with the requirements set forth in the Spill Act.

226.    Plaintiffs' claim for treble damages under the Spill Act is barred as ExxonMobil had good cause for not entering into a settlement agreement with Plaintiffs and because principles of fundamental fairness will be violated by such an award.

227.    Plaintiffs' claims are barred by the doctrine of primary jurisdiction in that the New Jersey Department of Environmental Protection ("NJDEP") is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the Complaint.

228.    Plaintiffs' claims are barred in that ExxonMobil has complied with, and satisfied, all applicable laws, regulations, rules, orders, directives and/or other requirements of the NJDEP and/or other state or federal agencies regarding the environmental condition alleged in the Complaint.

229.    Plaintiffs were contributorily and comparatively negligent and therefore their claims are barred or diminished by such negligence under the Comparative Negligence Act and common law.

230.    Plaintiffs' claims are frivolous.  ExxonMobil reserves the right to move at any time for attorneys' fees and costs in accordance with the New Jersey Frivolous Claims Statute, or pursuant to R.1:4-8.

231.    Plaintiffs' method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J.S.A. § 52:14B-2(e).

232.    Plaintiffs' claims for natural resource damages are in excess of any sovereign rights transmitted to New Jersey by the British Crown at independence, and if upheld would be unconstitutional violation of the Equal Footing Doctrine.

233.    Plaintiffs' claims are barred, in whole or in part, by the statutory defenses to liability provided by the Spill Act.

234.    Plaintiffs' claims under the Spill Act are not ripe, since clean up and remediation have not been completed.

235.    Plaintiffs' claims under the Spill Act are barred, in whole or in part, because the claims asserted are preempted by federal law, including, without limitation the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.

236.    Any injury or damages suffered by plaintiffs have been increased by plaintiffs' failure to mitigate their damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which plaintiffs seek damages have caused damage to natural resources greater than that would otherwise have occurred; and (2) the State and its agencies have failed to take reasonable measures available to them to reduce damages.

237.    Plaintiffs' claims under the Spill Act are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of the Spill Act.

238.    Plaintiffs have failed to join parties needed for the just adjudication of the Plaintiffs' claims, in whose absence complete relief cannot be afforded the existing parties pursuant to *N.J.Ct.R.* 4:28-1.

239.    Plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including without limitation plaintiffs' incurring of costs not authorized by the Spill Act and plaintiffs' failure to direct clean up and

remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

240.   Plaintiffs have no authority or standing, in their *parens patriae* capacity or otherwise, to recover damages on behalf of private individuals.

241.   Plaintiffs' product liability claim fails because there was not a practical and technically feasible alternative design that would have prevented the alleged harm without substantially impairing the reasonably anticipated or intended function of the product.  N.J.S.A. 2A:58C-3a(1).

242.   Plaintiffs' product liability claim fails because the characteristics of the product were known to the ordinary consumer or user.  N.J.S.A. 2A:58C-3a(2).

**PUERTO RICO**

243.   The Commonwealth's complaint fails to state a claim which would entitle it to relief.

244.   The Commonwealth's authority is limited by those powers conferred by the Constitution of the Commonwealth, the legislature in the laws of Puerto Rico and the Congress of the United States of America in federal legislation.

245.   The Environmental Quality Board's ("EQB") authority is limited by those powers delegated to it through its Organic act and other enabling legislation.

246.   The Commonwealth is not exempted from meeting the same burden of proof as any other plaintiff in an action for damages, in accordance with Art. 1802 of the Puerto Rico Civil Code.

247.    Insofar as the Commonwealth seeks to recover damages through the action authorized by the Public Policy Environmental Act ("PPEA"), it is barred from recovering under common law theories, such as public nuisance, trespass, strict products liability and negligence.

248.    Future costs are not authorized by P.R. Laws Ann. tit. 32 § 2761.

249.    Trespass is not an acknowledged cause of action under the Puerto Rico Civil Code or as an equitable cause of action for acts or omissions occurring within the jurisdiction of Puerto Rico.

250.    The Commonwealth's complaint fails to plead the elements of a negligence claim under Art. 1802 of the Puerto Rico Civil Code with sufficient clarity, specificity, and particularity, including the alleged damages sustained by the Commonwealth, the alleged acts or omissions of Defendant and the causal nexus.

251.    If it is determined that the Commonwealth or anyone on whose behalf the Commonwealth is allegedly suing, was injured, as set forth in the complaints, which Defendants deny, any award of damages must be reduced in proportion to the percentage of fault attributable to the Commonwealth and/or to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

252.    The Commonwealth lacks standing to bring a citizen suit under Puerto Rico Public Policy Environmental Act. P.R. Laws Ann. tit. 12 § 8001 et seq.

253.    The Commonwealth's claims are barred by the applicable statute of limitations or prescription period, Article 1802, P.R. Laws. Ann. tit. 31 § 5141.

254.    Defendants are not liable under the PPEA because it has followed and complied with all applicable, if any, dispositions and regulations promulgated under the PPEA.

255.    Defendants are not liable under the PPEA because its actions have not, in any manner, contributed or created any damage or degradation to any of the Commonwealth's natural resources.

256.    Defendants are not liable under the PPEA because releases, if any, were caused by an act or omission of a third party and Defendant exercised due care and took precautions against foreseeable acts of a third party.

257.    The Commonwealth lacks standing to bring a suit for alleged violations to the Water Pollution Control Act ("WPCA"), P.R. Laws Ann. tit. 24 § 591 et seq.

258.    MTBE is not considered "other" pollutant as defined in the WPCA. P.R. Laws Ann. tit. 24 § 591(h).

259.    Defendants are not liable under the WPCA because the prohibitions, as well as the definitions contained in the WPCA, are unconstitutionally vague.

260.    MTBE is not considered a "Pollutant" by the Commonwealth's Water Quality Standards Regulations, Department of State Regulation No. 6616, or subsequently adopted Water Quality Standards Regulations.

261.    Defendants are not liable under the Water Quality Standards Regulations because MTBE is not regulated nor limited under the Water Quality Standards Regulations.

262.    Defendants are not liable under the Water Quality Standards Regulations because releases, if any, were caused by an act of God.

263.    Defendants are not liable under the Water Quality Standards Regulations because releases, if any, were caused by an act or omission of a third party and Defendants exercised due care and took precautions against foreseeable acts of a third party.

264.    MTBE was not a "Regulated Substance" as defined in the Commonwealth's Underground Storage Tank Regulations, Department of State Regulation No. 4362, at the time the complaints were filed or the alleged injury occurred, and retroactive application of later-adopted regulations is unconstitutional.

265.    Defendants are not liable under the Underground Storage Tank Regulations because MTBE was not regulated or limited under the Commonwealth's Underground Storage Tank Regulations at the time the complaints were filed or Defendants' alleged misconduct occurred, and retroactive application of later-adopted regulations is unconstitutional.

266.    Defendants are not liable under the Underground Storage Tank Regulations because releases, if any, were caused by an act of God.

267.    The Commonwealth's claim under RCRA fails because the Commonwealth has failed to allege that Defendants have violated RCRA Subchapter III.

268.    Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

269.    The Commonwealth's claim must be decreased by the proportion of harm for which the Commonwealth is liable due to its concurrent imprudence.

270.    The Commonwealth's award, if any, must be reduced in proportion to the damages for which purchasers of gasoline are liable due to their concurrent imprudence.

271.    The Commonwealth's request that the court order Defendants to remediate impacted water, if any, to pre-injury quality is unrealistic insofar as the costs associated with a zero-tolerance rule make such a goal impracticable.

272.    The Commonwealth has not established defendant's intent to trespass on the land owned by the Commonwealth.

273.    The Commonwealth does not own the land allegedly trespassed.

274.    The Commonwealth has not suffered any damages to its personal or comfortable enjoyment of life or property.

275.    The Commonwealth cannot recover for the risks inherent to unintended uses of Defendant's products.

276.    The Commonwealth has not identified any significant property interest or quasi sovereign interest arising to an objectively significant harm affected by Defendants' activities related to MTBE

277.    No public nuisance exists because no act or omission by or on behalf of any of the Defendants caused or will cause injury to health or offense to the senses, or is a nuisance to the wellbeing of any neighborhood, or to a large number of persons as required by P.R. Laws Ann. tit. 32 § 2761.

278.    Defendants are not liable for any alleged public nuisance because the Commonwealth, through its acts and omissions, impliedly consented to and had knowledge of all activities and conditions alleged in the complaint.

279.    No public nuisance exists because the Defendants' activity does not constitute an ultrahazardous activity or an illegal hazardous activity.

280.    The Commonwealth's request for a permanent injunction should be denied because it is a drastic measure and the court should first provide the Defendants a reasonable time to eliminate or lessen the nuisance caused by MTBE, if any.

281.    Any nuisance caused by Defendants is unintentional and not the result of Defendants' reckless acts or ultrahazardous activities.

282.     Plaintiffs have no authority or standing, in their *parens patriae* capacity or otherwise, to recover damages on behalf of private individuals.

\*\*\*\*\*\*\*\*\*\*

283.     For each State described above, ExxonMobil incorporates by reference any affirmative defense, whether general or specific to another State, alleged herein or by other defendants in <u>MDL 1358</u>.

284.     The pleading of the defenses described above shall not be construed as an undertaking by ExxonMobil of any burden which would otherwise be the responsibility of plaintiffs.


**WHEREFORE**, ExxonMobil requests entry of judgment dismissing the complaints with prejudice, and awarding ExxonMobil its costs and attorneys' fees, and such other relief as the Court may deem just and proper.

## EXXON MOBIL CORPORATION'S AMENDED MASTER CROSS-CLAIMS
## AGAINST JOHN AND JANE DOES NOS. 501-1000[1]

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants and Cross-Plaintiffs Exxon Mobil Corporation, Exxon Mobil Chemical Company, ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, Socony Mobil Oil Company, Inc., Socony Vacuum Oil Company, Incorporated; Esso Standard Oil Company (Puerto Rico) and Mobil Corporation (collectively "ExxonMobil"), by their undersigned counsel, hereby bring these Cross-Claims against Cross-Defendants John and Jane Does nos. 501-1000, presently Defendants in this action but whose identity is unknown, in *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* ("MDL 1358") for all cases in which an answer is presently required, and in which they have properly named and served, and in support thereof, aver as follows:

**Background**

1.      Plaintiffs commenced civil actions in New Jersey and the Commonwealth of Puerto Rico against ExxonMobil and other purported manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the gasoline additive MTBE and/or gasoline products containing MTBE for alleged damages resulting from the contamination or threatened contamination of plaintiffs' groundwater or water systems by MTBE and/or gasoline containing MTBE.  Certain of the complaints also contain allegations relating to TBA.

2.      Specifically, plaintiffs allege negligence, public and private nuisance, trespass, civil conspiracy, breach of warranty, violation of state environmental/spill acts, strict liability

---

[1]  In an email dated July 20, 2005, Her Honor stated that cross-claims relating to the California actions did not have to be asserted with this Master Answer.  Accordingly, ExxonMobil is not asserting cross-claims in the California actions at this time.  ExxonMobil reserves the right to assert such cross-claims in the future in accordance with the schedule set by the Court or the parties.

due to abnormally dangerous activity, violation of state consumer protection laws, and a variety of product liability theories against ExxonMobil (and related entities) and the other named Defendants.

3.      In virtually all instances, plaintiffs' complaints fail to identify – or name as defendants – the entities or persons responsible for spilling, leaking or otherwise releasing into the environment the MTBE, TBA, tert-amyl methyl ether ("TAME"), or gasoline containing MTBE, TBA, or TAME that led to the contamination or threatened contamination they allege. Nor have plaintiffs identified the locations of each well they allege is contaminated or threatened with contamination.

**Parties, Jurisdiction, and Venue**

4.      Exxon Mobil Corporation ("ExxonMobil") is a New Jersey corporation with its principal place of business in Irving, Texas.

5.      Cross-Defendants are individuals and/or entities, Defendants in this action but whose exact identities, locations, and actions are presently unknown to ExxonMobil, and who are responsible for any and all damages allegedly sustained by plaintiffs.  The exact identities, locations and actions of the Defendants also named as Cross-Defendants depend on further discovery and/or determinations regarding, among other things, the locations of the wells plaintiffs allege are contaminated or threatened with contamination.

6.      Cross-Defendants' offending conduct, as described herein, took place in substantial part in New Jersey and the Commonwealth of Puerto Rico in relative proximity to the contaminated or threatened groundwater or water systems in which plaintiffs claim to have an interest.

7.      Jurisdiction is proper in this Court under 28 U.S.C. § 1367, in that the claims set forth herein are so related to the claims in plaintiffs' Complaints that they form part of the same case or controversy.

8.      Venue is proper in this Court under 28 U.S.C. § 1391 and Federal Rule of Civil Procedure 13.

**Cross-Defendants' Unlawful Conduct**

9.      Plaintiffs allege that ExxonMobil and the other named Defendants caused the contamination or threatened contamination of plaintiffs' groundwater or water systems in manufacturing, designing, refining, formulating, distributing, supplying, selling, or marketing MTBE or gasoline containing MTBE and are liable to plaintiffs for the damages allegedly resulting therefrom.  Certain of the complaints also contain allegations relating to TBA and TAME.

10.     ExxonMobil denies any and all liability whatsoever for plaintiffs' alleged damages and incorporates its Master Answer to plaintiffs' Complaints by reference.

11.     ExxonMobil is not responsible for the actual or threatened releases, spills, or leaks of MTBE or gasoline containing MTBE into plaintiffs' groundwater or water systems. ExxonMobil owns or operates few, if any, of the service stations, the land on which they operate, USTs, or other instrumentalities, from which gasoline was leaked or spilled.

12.     The harm allegedly sustained by plaintiffs is a direct result of the actions and inaction of Cross-Defendants, Defendants to this action, the exact identities of which are unknown to ExxonMobil at this time, and over whom ExxonMobil has no control and for whom ExxonMobil is not responsible.  If ExxonMobil has or had any relationship, contractual or

otherwise, with one or more Cross-Defendants, such relationships required Cross-Defendants to refrain from the offending activity described herein, and/or to assume full responsibility for it.

13.     Cross-Defendants owed a duty to ExxonMobil to safely and properly use, handle, or store MTBE or gasoline containing MTBE; install, remove, or inspect USTs containing such products; and remediate or mitigate contamination caused by MTBE or gasoline containing MTBE.

14.     Cross-Defendants breached their aforementioned duty in, *inter alia*, the following regards:

a.      By failing to safely and properly handle, use, or store MTBE or gasoline containing MTBE;

b.      By failing to safely and properly transport, haul, deliver, or transfer MTBE or gasoline containing MTBE;

c.      By failing to safely and properly receive or accept delivery or transfers of MTBE or gasoline containing MTBE;

d.      By failing to safely and properly remediate, mitigate, clean-up, eliminate, or control releases, spills, or leaks of MTBE or gasoline containing MTBE, including by, *inter alia*, failing to timely commence remediation or mitigation efforts, or improperly drilling or establishing monitoring wells during remediation or mitigation, thereby causing cross-contamination;

e.      By failing to safely and properly service, repair, maintain, monitor, inspect, test, or examine USTs or any associated piping or equipment;

f.      By failing to safely and properly install, replace, excavate, or remove USTs or any associated piping or equipment;

g.     By failing to safely and properly dispense or pump gasoline into trucks, tankers, automobiles, or any other vehicles;

h.     By failing to adhere to applicable laws, rules, regulations, guidelines, or procedures relating to the use, handling, or storage of MTBE or gasoline containing MTBE; the installation, removal, or inspection of USTs; or the remediation or mitigation of contamination caused by MTBE or gasoline containing MTBE; and

i.     By otherwise failing to act with due care in using, handling, or storing MTBE or gasoline containing MTBE; installing, removing, or inspecting USTs; or remediating or mitigating contamination caused by MTBE or gasoline containing MTBE.

15.     The actions and inaction of Cross-Defendants were negligent, careless, reckless, and in derogation of their duty to ExxonMobil.

16.     As a direct and proximate result of Cross-Defendants' actions and inaction, Cross-Defendants were the sole cause of and/or contributed to the alleged contamination or threatened contamination of plaintiffs' groundwater or water systems and any and all resulting damages to plaintiffs alleged in the Complaints, and are directly liable to plaintiffs.  Alternatively, Cross-Defendants are liable ExxonMobil for all or part of plaintiffs' claims against ExxonMobil.

17.     Without admitting any of the allegations made against ExxonMobil in plaintiffs' Complaints, ExxonMobil incorporate plaintiffs' allegations and legal claims by reference and asserts them against Cross-Defendants.  Without limitation, ExxonMobil specifically asserts that Cross-Defendants are liable to plaintiffs on, among other claims, their negligence, trespass and

nuisance claims, and any claims premised on state statutes or regulations which apply, in whole or in part, to owners and operators of gasoline stations, USTs or other gasoline storage facilities.

18.     If the allegations contained in plaintiffs' Complaints are correct, which is specifically denied, then Cross-Defendants are liable solely and directly to plaintiffs for the incidents complained of and any and all damages sought by plaintiffs.

19.     Alternatively, if the allegations contained in plaintiffs' Complaints are correct, which is specifically denied, and it is judicially determined that plaintiffs are entitled to damages from ExxonMobil, then Cross-Defendants are liable over to ExxonMobil, and ExxonMobil is entitled to express, implied, or equitable indemnification and/or contribution from Cross-Defendants for all losses, damages, and costs, including attorneys' fees, that ExxonMobil incurs as a result of this action.

**WHEREFORE**, Defendants and Cross-Plaintiffs Defendants and Cross-Plaintiffs Exxon Mobil Corporation, Exxon Mobil Chemical Company, ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, Socony Mobil Oil Company, Inc., Socony Vacuum Oil Company, Incorporated; Esso Standard Oil Company (Puerto Rico), and Mobil Corporation demand entry of judgment in their favor and against Cross-Defendants John and Jane Does nos. 501-1000 for all sums that may be awarded in favor of plaintiffs and against ExxonMobil, together with interest, costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

## EXXON MOBIL CORPORATION'S AMENDED MASTER THIRD-PARTY COMPLAINT AGAINST JOHN AND JANE DOES NOS. 1-500

Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, Defendants and Third-Party Plaintiffs Exxon Mobil Corporation, Exxon Mobil Chemical Company, ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, Mobil Corporation, Socony Mobil Oil Company, Inc., Socony Vacuum Oil Company, Incorporated; and Esso Standard Oil Company (Puerto Rico) (collectively "ExxonMobil"), by their undersigned counsel, hereby bring this Third-Party Complaint against Third-Party Defendants John and Jane Does nos. 1-500 ("Third-Party Defendants") in MDL 1358 for all cases in which an answer is presently required, and in which they have been properly named and served, and in support thereof, avers as follows:

**Background**

1.      Plaintiffs commenced civil actions in California, New Jersey, and the Commonwealth of Puerto Rico against ExxonMobil and other purported manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or gasoline products containing MTBE for alleged damages resulting from the contamination or threatened contamination of Plaintiffs' groundwater or water systems by MTBE and/or gasoline containing MTBE.

2.      Specifically, Plaintiffs allege negligence, public and private nuisance, trespass, civil conspiracy, breach of warranty, violation of state environmental/spill acts, violation of state consumer protection laws, and a variety of product liability theories against ExxonMobil (and related entities) and the other named Defendants.

3.      In virtually all instances, Plaintiffs' complaints fail to identify -- or name as defendants -- the entities or persons responsible for spilling, leaking or otherwise releasing into the environment the MTBE or gasoline containing MTBE that led to the contamination or

threatened contamination they allege.  Nor have Plaintiffs identified the locations of each well they allege is contaminated or  threatened with contamination.

**Parties, Jurisdiction, and Venue**

4.      Exxon Mobil Corporation ("ExxonMobil") is a New Jersey corporation with its principal place of business in Irving, Texas.

5.      Third-Party Defendants are individuals and/or entities, the exact identities and locations of which are presently unknown, consisting of: (a) retail gasoline service station owners and operators; (b) jobbers and wholesalers; (c) trucking and tanking companies; (d) drivers and operators of vehicles used by trucking and tanking companies; (e) contractors, excavators, and others engaged in the installation, removal, repair, or examination of underground storage tanks ("USTs") or associated piping or equipment; and (f) others whose actions or inaction caused or threatens to cause releases, spills, or leaks of MTBE or gasoline containing MTBE impacting Plaintiffs' groundwater or water systems, and who are thereby responsible for any and all damages allegedly sustained by Plaintiffs.

6.      Third-Party Defendants' offending conduct, as described herein, took place in substantial part in California, New Jersey, and the Commonwealth of Puerto Rico in relative proximity to the contaminated or threatened groundwater or water systems in which Plaintiffs claim to have an interest.

7.      Jurisdiction is proper in this Court under 28 U.S.C. § 1367, in that the claims set forth herein are so related to the claims in Plaintiffs' Complaints that they form part of the same case or controversy.

8.      Venue is proper in this Court under 28 U.S.C. § 1391 and Fed. R. Civ. P. 14.

**Third-Party Defendants' Unlawful Conduct**

9.       Plaintiffs allege that ExxonMobil and the other named Defendants caused the contamination or threatened contamination of Plaintiffs' groundwater or water systems in manufacturing, designing, refining, formulating, distributing, supplying, selling, or marketing MTBE or gasoline containing MTBE and are liable to Plaintiffs for the damages allegedly resulting therefrom.

10.      ExxonMobil denies any and all liability whatsoever for Plaintiffs' alleged damages and incorporates its Master Answer to Plaintiffs' Complaints by reference.

11.      ExxonMobil is not responsible for the actual or threatened releases, spills, or leaks of MTBE or gasoline containing MTBE into Plaintiffs' groundwater or water systems. ExxonMobil owns or operates few, if any, of the service stations or USTs, or other instrumentalities, from which gasoline was leaked or spilled by Third-Party Defendants, and which allegedly impacted Plaintiffs' wells.

12.      The harm allegedly sustained by Plaintiffs is a direct result of the actions and inaction of Third-Party Defendants, the exact identities of which are unknown to ExxonMobil at this time, and over whom ExxonMobil has no control and for whom ExxonMobil is not responsible.  If ExxonMobil has or had any relationship, contractual or otherwise, with one or more Third-Party Defendants, such relationships required Third Party Defendants to refrain from the offending activity described herein, and/or to assume full responsibility for it.

13.      Third-Party Defendants owed a duty to Plaintiffs and/or ExxonMobil to safely and properly use, handle, or store MTBE or gasoline containing MTBE; install, remove, or inspect USTs containing such products; and remediate or mitigate contamination caused by MTBE or gasoline containing MTBE.

14.     Third-Party Defendants breached their aforementioned duty in, *inter alia*, the following regards:

a.     By failing to safely and properly handle, use, or store MTBE or gasoline containing MTBE;

b.     By failing to safely and properly transport, haul, deliver, or transfer MTBE or gasoline containing MTBE;

c.     By failing to safely and properly receive or accept delivery or transfers of MTBE or gasoline containing MTBE;

d.     By failing to safely and properly remediate, mitigate, clean-up, eliminate, or control releases, spills, or leaks of MTBE or gasoline containing MTBE, and/or by failing to properly consult or advise Plaintiffs regarding same, including by, *inter alia*, failing to timely commence remediation or mitigation efforts, or improperly drilling or establishing monitoring wells during remediation or mitigation, thereby causing cross-contamination;

e.     By failing to safely and properly service, repair, maintain, monitor, inspect, test, or examine USTs or any associated piping or equipment;

f.     By failing to safely and properly install, replace, excavate, or remove USTs or any associated piping or equipment;

g.     By failing to safely and properly dispense or pump gasoline into trucks, tankers, automobiles, or any other vehicles;

h.     By failing to adhere to applicable laws, rules, regulations, guidelines, or procedures relating to the use, handling, or storage of MTBE or gasoline containing MTBE; the installation, removal, or inspection of USTs; or the

remediation or mitigation of contamination caused by MTBE or gasoline containing MTBE; and

i.        By otherwise failing to act with due care in using, handling, or storing MTBE or gasoline containing MTBE; installing, removing, or inspecting USTs; or remediating or mitigating contamination caused by MTBE or gasoline containing MTBE.

15.     The actions and inaction of Third-Party Defendants were negligent, careless, reckless, and in derogation of their duty to Plaintiffs and/or ExxonMobil.

16.     As a direct and proximate result of Third-Party Defendants' actions and inaction, Third-Party Defendants were the sole cause of and/or contributed to the alleged contamination or threatened contamination of Plaintiffs' groundwater or water systems and any and all resulting damages to Plaintiffs alleged in the Complaints, and are directly liable to Plaintiffs. Alternatively, Third Party Defendants are liable to ExxonMobil for all or part of Plaintiffs' claims against ExxonMobil.

17.     Without admitting any of the allegations made against ExxonMobil in Plaintiffs' Complaints, ExxonMobil incorporates Plaintiffs' allegations and legal claims by reference and asserts them against Third-Party Defendants.  Without limitation, ExxonMobil specifically asserts that Third Party Defendants are liable to Plaintiffs on, among other claims, their negligence, trespass and nuisance claims, and any claims premised on state statutes or regulations which apply, in whole or in part, to owners and operators of gasoline stations, USTs or other gasoline storage facilities.

18.     If the allegations contained in Plaintiffs' Complaints are correct, which is specifically denied, then Third-Party Defendants are liable solely and directly to Plaintiffs for the incidents complained of and any and all damages sought by Plaintiffs.

19.     Alternatively, if the allegations contained in Plaintiffs' Complaints are correct, which is specifically denied, and it is judicially determined that Plaintiffs are entitled to damages from ExxonMobil, then Third-Party Defendants are liable to ExxonMobil, and ExxonMobil is entitled to express, implied, or equitable indemnification and/or contribution from Third-Party Defendants for all losses, damages, and costs, including attorneys' fees, that ExxonMobil incurs as a result of this action.

**WHEREFORE**, Defendant and Third-Party Plaintiff Exxon Mobil Corporation demands entry of judgment in its favor and against Third-Party Defendants John and Jane Does nos. 1-500 for all sums that may be awarded in favor of Plaintiffs and against ExxonMobil, together with interest, costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

Dated:  December 7, 2015                    Respectfully submitted,

                                            James A. Pardo (JP 9018)
                                            Lisa A. Gerson (LG 4340)

                                            McDERMOTT, WILL & EMERY LLP
                                            340 Madison Avenue
                                            New York, New York 10017
                                            Tel: 212-547-5400
                                            Fax: 212-547-5444

                                            *Attorneys for Defendant Exxon Mobil
                                            Corporation*

- 63 -

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Exxon Mobil Corporation Defendants'

Corrected Twelfth Master Answer and Affirmative Defenses was served via Lexis Nexis File &

Serve to all counsel of record on the 7th day of December, 2015.

Lisa A. Gerson