```
                                          USDC SDNY
UNITED STATES DISTRICT COURT              DOCUMENT
                                          ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK             DOC #:
----------------------------------------- X  DATE FILED:  12  7  15
                                      :
IN RE: METHYL TERTIARY BUTYL          :
ETHER ("MTBE") PRODUCTS               :    CORRECTED OPINION
LIABILITY LITIGATION                  :    AND ORDER
----------------------------------------- :
                                      :    Master File No. 1:00-1898
This document relates to:             :    MDL 1358 (SAS)
                                      :    M21-88
Commonwealth of Puerto Rico, et al. v.:
Shell Oil Co., et al., 07 Civ. 10470  :
                                      :
----------------------------------------- X
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

In an Opinion filed today (the "Companion Opinion"), this Court

overruled the law of the case with respect to the proper Puerto Rican statute of

limitations tolling rule to apply to the present action.  This Court previously held

that to apply the Puerto Rico Supreme Court's newly announced tolling rule from

*Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365 (2012),

prospectively, as that decision requires, meant that all causes of actions filed after

*Fraguada* was issued, must have been independently tolled for each alleged

tortfeasor from the time the Commonwealth of Puerto Rico ("the Commonwealth")

had sufficient knowledge to trigger the statute of limitations until the date of filing.

1

In the Companion Opinion, I overruled that holding.  I now hold that the *Fraguada* decision is properly interpreted as ending – but not retroactively invalidating – the automatic tolling of jointly and severally liable defendants under *Arroyo v. Hospital La Concepcion*, 130 D.P.R. 596 (1992) and restarting the running of the statute of limitations.[1]  Familiarity with the facts and reasoning of the Companion Opinion is presumed for the purposes of the present Opinion.

The issue currently before the Court is the disposition of the defendants dismissed from this action based on this Court's now vacated decisions (the "Dismissed Defendants").[2]  For the reasons set forth below, this Court's Orders of July 26, 2013; December 30, 2013; and May 21, 2015 are VACATED as to the Dismissed Defendants, Trammo Petroleum, Inc.'s Motion to Dismiss for lack of personal jurisdiction is GRANTED, and the remaining Dismissed Defendants are REINSTATED.

## II.   BACKGROUND

The Dismissed Defendants were all added in the Third Amended

---

[1]     *See* Companion Opinion, Section V.B.

[2]     The Dismissed Defendants are Idemitsu Apollo Corporation; Peerless Oil and Chemicals, Inc.; Petrobras America Inc.; Trammo Caribbean, Inc.; Trammo Petroleum, Inc.; Vitol Inc.; and Vitol S.A.

2

Complaint ("TAC") on December 3, 2012.[3]  On July 16, 2013, this Court granted

Motions to Dismiss brought by defendants Peerless Oil and Chemicals, Inc.

("Peerless"); Trammo Petroleum, Inc. ("TP"); and Trammo Carribean, Inc

("Caribbean") (Caribbean and TP together the "Trammo Defendants") on the

ground that the statute of limitations had run.[4] [5]  The Trammo Defendants moved

for dismissal on alternative grounds as well.  Caribbean claimed that it was

incapable of being sued because it had dissolved as a corporation, and TP argued

that because it has never conducted business in Puerto Rico, the Court lacks

personal jurisdiction.[6]  Because the Trammo Defendants were dismissed on statute

of limitations grounds, the Court declined to decide these alternative grounds for

dismissal.[7]

On December 30, 2013, this Court granted Motions for Summary

---

[3]     *See* TAC (Dkt. No. 178).

[4]     *See In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d 476 (S.D.N.Y. 2013).  The dismissal of Total, S.A. and Total Outre-Mer, S.A. for lack of personal jurisdiction is not affected by this Opinion.

[5]     The Court subsequently reaffirmed this decision in response to a Motion for Reconsideration.  *See In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2013 WL 4008632 (S.D.N.Y. Aug. 2, 2013).

[6]     Memorandum of Law in Support of Motion to Dismiss of Trammo Petroleum, Inc. and Trammo Caribbean, Inc. ("Trammo Mem.") at 6-8, 15-16 (Dkt. No. 208).

[7]     *See In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d at 498 n. 192.

Judgment brought by Vitol, Inc.; Vitol, S.A.; and Idemitsu Apollo Corporation on the ground that the statute of limitations had run.[8]  In granting all of the above Motions, this Court relied on the fact that "*Fraguada* bars the Commonwealth's use of the 2007 filing date to toll the statute of limitations."[9]

In light of these two decisions, on May 21, 2015, the Commonwealth stipulated that an additional TAC defendant, Petrobras America Inc., stood in a similar position as the other Dismissed Defendants and should therefore be dismissed.[10]  The Commonwealth agreed to the stipulation "for purposes of appeal" of the aforementioned Orders.[11]

On June 12, 2015, two additional TAC defendants, Shell Western Supply and Trading Limited and Shell International Petroleum Company Limited brought a Motion for Summary Judgment on nearly identical statute of limitations grounds.[12]  In its Opposition, the Commonwealth brought to this Court's attention

---

[8]     *See In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2013 WL 6869410 (S.D.N.Y. Dec. 30, 2013).

[9]     *In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d at 497.  *Accord In re MTBE Prods. Liab. Litig.*, 2013 WL 6869410 at *3-4.  The first Complaint in this action was filed on June 12, 2007.

[10]     *See* Order of Dismissal (Dkt. No. 601).

[11]     *Id*.

[12]     *See* Memorandum of Points and Authorities in Support of the Motion for Summary Judgment of Shell Western Supply and Trading Limited and Shell

subsequent decisions of the Puerto Rico Court of Appeals and District of Puerto

Rico interpreting *Fraguada*.[13]  These decisions were nearly unanimous in their

reading of *Fraguada* that ran contrary to this Court's prior Orders.[14]  On October

15, 2015, this Court held oral argument on the statute of limitations tolling issue to

determine if the law of the case should be overruled.[15]  As a result of that oral

argument, I issued an Order to Show Cause "why this Court should not vacate and

reconsider" the above Orders because I was "concerned that those decisions may

be erroneous."[16]

      In response to the Order to Show Cause, the Dismissed Defendants

argue that the Commonwealth should be judicially estopped from arguing that the

*Arroyo* rule applies on the present facts and, in any event, there is not "manifest

---

International Petroleum Company Limited (Dkt. No. 607).

[13]    *See* The Commonwealth of Puerto Rico's Memorandum of Law in Opposition to Shell Western Supply and Trading Limited's and Shell International Petroleum Company Limited's Motion for Summary Judgment Based on Statute of Limitations at 5-11 (Dkt. No. 622).

[14]    *See* Companion Opinion, Section IV.C.

[15]    *See* 10/15/15 Transcript of Oral Argument, No. 00 Civ. 1898 (Dkt. No. 4278).  This motion is addressed in the Companion Opinion.

[16]    10/15/15 Order to Show Cause (Dkt. No. 639).

injustice" that requires overruling the law of the case.[17]  In addition, defendants

argue that were the Court to vacate the earlier Orders, "it would reach the same

result, in whole or in part."[18]

> In support of this final contention, the Dismissed Defendants proffer

three arguments.  *First*, taking a cue from the dissenting justices in *Fraguada*, they

argue that the doctrine of laches should bar the Commonwealth's claims.[19]  *Second*,

they contend that the statute of limitations requires dismissal of the

Commonwealth's "island-wide claims" as well as the site-specific claims where

the Commonwealth had notice of MTBE contamination prior to June 12, 2006 –

one year prior to the filing of the initial Complaint.[20]  To that end, the Dismissed

Defendants request the opportunity to conduct discovery and make appropriate

motions for summary judgment at individual contamination sites.[21]  *Third*, the

defendants note that a later phase trial may potentially proceed under a theory of

---

[17]    Dismissed Defendants' Response to the Court's Order to Show Cause Why the Court Should Not Vacate and Reconsider the Dismissal Orders ("OSC Resp.") at 6 (Dkt. No. 650).

[18]    *Id*.

[19]    *See id*.

[20]    *Id.* at 8-10.

[21]    *See id.* at 9-10.

market share liability – which only permits several liability, not joint and several.[22]
Because the *Arroyo* tolling rule only applies to joint and several liability, no tolling
applies in a case alleging only several liability.[23]  The defendants request that the
Court require the Commonwealth to identify "their intended liability theory," and
if the Commonwealth is unwilling to commit to a particular theory, the Dismissed
Defendants "request a ruling that, if Plaintiffs are allowed to pursue in the future an
alternative liability theory that results in several . . . liability, the claims against the
Dismissed Defendants will at such time be dismissed on the basis of limitations."[24]

       Each of these arguments, as well as the alternative ground for
dismissal brought by TP, is addressed below.  Because Caribbean and the
Commonwealth both represent that a stipulation of dismissal in both Puerto Rico
cases is imminent, the Court will withhold a decision on Caribbean's alternative
ground for dismissal.[25]

## III.   LEGAL STANDARD[26]

---

[22]    *See id.* at 10.

[23]    *See id*.

[24]    *Id.* at 10 n. 19.

[25]    *See* 11/16/15 Transcript of Conference, 00 Civ. 1898 (Dkt. No. 4294).

[26]    Because the motions reconsidered here are both Motions for Summary
Judgment and Motions to Dismiss, I address both standards below.

A.      **Summary Judgment**

Summary judgment is appropriate where, "viewing the record in the light most favorable to the non-moving party . . . 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[27] "In making this determination . . . we resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."[28] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29]

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact."[30] To defeat a motion for summary judgment, the non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory

---

[27]      *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)) (quotations omitted).

[28]      *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quotations omitted).

[29]      *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S.Ct. 2675 (2013) (quotations and alterations omitted).

[30]      *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

8

allegations or unsubstantiated speculation.'"[31]

"'The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists.'"[32] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[33] "'Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued.'"[34]

**B.    Motion to Dismiss**

**1.    Rule 12(b)(6) Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all

---

[31]    *Robinson*, 781 F.3d at 44 (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

[32]    *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).

[33]    *Crawford*, 758 F.3d at 486 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[34]    *Szymanski v. Local 3, Int'l Bhd. of Elec. Workers*, 577 Fed. App'x 52, 53 (2d Cir. 2014) (quoting *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995)).

reasonable inferences in the plaintiff's favor."[35]  The court evaluates the

sufficiency of the complaint under the "two-pronged approach" set forth by the

Supreme Court in *Ashcroft v. Iqbal*.[36]  Under the first prong, a court may "begin by

identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth."[37]  For example, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."[38] Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief."[39] A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[40]  Plausibility

requires "more than a sheer possibility that a defendant has acted unlawfully."[41]

When deciding a motion to dismiss, "a district court may consider the facts alleged

---

[35]  *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[36]  *See* 556 U.S. 662, 678-79 (2009).

[37]  *Id*. at 679.

[38]  *Id*. at 678 (citation omitted).

[39]  *Id*. at 679.

[40]  *Id*. at 678 (citation omitted).

[41]  *Id*. (quotations omitted).

in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[42]  In addition, "[t]he Court may take judicial notice of filings in other courts 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"[43]

### 2.    Rule 12(b)(2) Standard

A plaintiff has the burden of proving personal jurisdiction by a preponderance of the evidence.[44]  "[A] plaintiff need only allege facts constituting a prima facie showing of personal jurisdiction to survive a Rule 12(b)(2) motion."[45] The plaintiff may make such a showing with "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."[46]  "The Court may rely on the allegations contained in the complaint as well as on affidavits submitted by

---

[42]     *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[43]     *Brandon v. Musoff*, No. 10 Civ. 9017, 2012 WL 135592, at *3 (S.D.N.Y. Jan. 17, 2012) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006)).

[44]      *See Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir. 1996).

[45]     *M & M Packaging v. Kole*, 183 Fed. App'x 112, 114 (2d Cir. 2006) (alteration in original) (citations omitted).

[46]     *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quotation marks and citations omitted).

the parties, and must draw all inferences and resolve any doubts in favor of the plaintiffs notwithstanding contrary information proffered by the moving parties."[47] However, the Court "will not draw argumentative inferences in the plaintiff's favor, nor must we accept as true a legal conclusion couched as a factual allegation."[48]

A court must undertake a "two-step inquiry" to determine if it can exercise personal jurisdiction over a defendant.[49]  "First, we determine whether the defendant is subject to jurisdiction under the law of the forum state . . . Second, we consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."[50]  Because Puerto Rico's long-arm statute "extends personal jurisdiction as far as the Federal Constitution permits," the only inquiry is whether the exercise of jurisdiction

---

[47]     *General Elec. Capital Corp. v. Titan Aviation, LLC*, No. 06 Civ. 4795, 2007 WL 107752, at *3 (S.D.N.Y. Jan. 16, 2007) (citing *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

[48]     *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations and quotations omitted).

[49]     *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).

[50]     *Id*.

12

comports with the demands of the Due Process Clause.[51]  Personal jurisdiction may

be exercised "'if the defendant has certain minimum contacts with [the State] such

that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'"[52]

The Commonwealth alleges only specific jurisdiction over TP in this

case.[53]  Specific jurisdiction requires both a "minimum contacts" and a

"reasonableness" inquiry.  *First*, the plaintiff must demonstrate that "the claim

arises out of, or relates to, the defendant's contacts with the forum."[54]  As the

Supreme Court recently explained, "the relationship [between the defendant and

the forum state] must arise out of contacts that the 'defendant himself' creates with

---

[51]     *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994) (citing *Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 12 (1st Cir. 1986)).

[52]     *Sonera Holding*, 750 F.3d at 225 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853 (2011)) (quotations omitted) (alterations in original).

[53]     *See* Plaintiffs' Opposition to Motion to Dismiss by Defendants Trammo Petroleum, Inc. and Trammo Caribbean, Inc. ("Opp. to Trammo Motion") at 2.

[54]     *Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013).  *Accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (for the proper exercise of specific jurisdiction, the defendant must have "purposefully directed" his activities toward the forum and the litigation must "arise out of or relate to" those activities).

13

the forum State."[55]  Though "a defendant's contacts with the forum State may be

intertwined with his transactions or interactions with the plaintiff or other

parties . . .  a defendant's relationship with a plaintiff or third party, standing alone,

is an insufficient basis for jurisdiction."[56]  "Due process requires that a defendant

be haled into court in a forum State based on his own affiliation with the State, not

based on the 'random, fortuitous, or attenuated' contacts he makes by interacting

with other persons affiliated with the State."[57]  *Second*, jurisdiction must be

reasonable.[58]  Courts weigh the following factors in evaluating the

"reasonableness" requirement of due process:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[59]

---

[55]  *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475).

[56]  *Id.* at 1123 (citation omitted).

[57]  *Id.* (quoting *Burger King*, 471 U.S. at 475).

[58]  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

[59]  *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113-14 (1987).

## IV.   APPLICABLE LAW

In Puerto Rico, Article 1802 of the Civil Code, L.P.R.A. section 5141, governs obligations that "arise from fault or negligence."[60]  "The statute of limitations for these actions is one year as provided by Art. 1868 of the Civil Code, 31 L.P.R.A. sec[tion] 5298."[61]  In Puerto Rico, the limitations period runs from the time the aggrieved party has "notice of the injury, plus notice of the person who caused it."[62]  Once a defendant has established that the injury occurred more than one year prior to the filing of the TAC, *i.e.*, December 3, 2011, the plaintiff "'bears the burden of proving that [it] lacked the requisite knowledge at the relevant times.'"[63]

"Art. 1873 of the Civil Code, 31 L.P.R.A. sec. 5303 establishes that the expiration of the statute of limitations in actions is tolled by [1] exercising them in court, [2] by an extrajudicial claim by the creditors, and [3] by any other act of

---

[60]    *Fraguada* at *3 (certified translation) (Dkt. No. 277).

[61]    *Id.* (alterations in original).

[62]    *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997) (quotation and citations omitted).

[63]    *Alejandro-Ortiz v. Puerto Rico Elec. Power Auth.*, 756 F.3d 23, 27 (1st Cir. 2014) (quoting *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987)).

acknowledgment of debt by the debtor."[64]  On August 13, 2012, the Puerto Rico

Supreme Court changed the rule governing the application of these tolling

mechanisms in *Fraguada*.  As this Court interprets the *Fraguada* opinion, "that

decision ended *Arroyo* tolling and restarted the running of the statute of limitations

for imperfectly jointly and severally liable co-tortfeasors."[65]

## V.    DISCUSSION

As an initial matter, this Court has the power to sua sponte revise all

non-final judgments under Federal Rules of Civil Procedure 54(b):[66]

> [A]ny order or other decision, however designated, that
> adjudicates fewer than all the claims or the rights and liabilities of
> fewer than all the parties does not end the action as to any of the
> claims or parties and may be revised at any time before the entry
> of a judgment adjudicating all the claims and all the parties' rights
> and liabilities.

The Court's power to revise its earlier decisions, however, is constrained by the

law of the case doctrine.  The Dismissed Defendants argue that the Court should

not overturn the law of the case because the Commonwealth would not suffer

---

[64]      *Fraguada* at *3.

[65]      Companion Opinion, Section V.B.

[66]      *See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d
207, 212 (2d Cir. 2010) ("Sinoying does not dispute that the District Court was
empowered to revisit and vacate sua sponte the order attaching YDX's assets in
New York.").

manifest injustice.[67]  This argument misses the mark.  Manifest injustice is only

one possible justification for overturning the law of the case.[68]  As explained in

more detail in the Companion Opinion, Section V.A, this Court's decision to

overturn the law of the case rests on its conclusion that the earlier Orders were

clear error, not that the Commonwealth would suffer manifest injustice.

        The Dismissed Defendants briefly press the argument that judicial

estoppel should prevent the Commonwealth from asserting that *Arroyo* tolling

applies in the present case because the Commonwealth apparently argued that

*Arroyo* tolling did not apply on similar facts to the Puerto Rico Court of Appeals in

*Cubero Aponte v. Autoridad de Acueductos y Alcantarillados de P.R.*, 2014 WL

7474663 (T.C.A. Oct. 10, 2014).[69]  The defendants spend little time developing this

argument and for good reason.  Judicial estoppel does not constrain the legal

conclusions this Court may reach nor does it serve to prevent the Court from

---

[67]    *See* OSC Resp. at 2-6.

[68]    *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (holding that the
law of the case should not be overturned "absent 'cogent' and 'compelling' reasons
such as 'an intervening change of controlling law, the availability of new evidence,
or the need to correct a clear error or prevent manifest injustice'" (quoting *United
States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000))).

[69]    *See* OSC Resp. at 2.

correcting a previous error of law.[70]

The Dismissed Defendants have failed to provide any persuasive reason why this Court should not vacate its earlier Orders after concluding in the Companion Opinion that they rest on a clear error of law.[71]

## A.   Arguments Against Vacatur Raised in Response to the Order to Show Cause

The Dismissed Defendants argue that even if this Court were to vacate the earlier dismissals, it would reach the same conclusion on other grounds.  That other grounds may justify the same ultimate conclusion does nothing to prevent this Court from correcting an error of law, nor should it.  Indeed, the arguments

---

[70]    *See* 28 Am. Jur. 2d Estoppel and Waiver § 68.  In any event, the Dismissed Defendants have not demonstrated that the Commonwealth would gain an "unfair advantage," as they must, to invoke judicial estoppel.  *United States v. Szpyt*, 785 F.3d 31, 41 (1st Cir. 2015) ("A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.").

[71]     It is worth noting that courts have occasionally found due process concerns to be implicated when a defendant is reinstated much later in the same legal proceedings.  No such concerns arise here.  The Dismissed Defendants were given notice, the opportunity to be heard, and will be given the opportunity to conduct discovery and make motions as needed.  *See, e.g.*, *United States v. State of Ark.*, 791 F.2d 1573, 1576-77 (8th Cir. 1986) (holding that due process required additional proceedings before a finding of liability could be applied to a reinstated defendant); *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 595-97 (6th Cir. 2009) (holding that reversal of an earlier summary judgment decision based on evidence presented at trial violated the dismissed defendants due process rights); *Alberty-Velez v. Corporacion De Puerto Rico Para La Difusion Publica*, 242 F.3d 418, 423-26 (1st Cir. 2001) (same).

that laches and statute of limitations for island-wide and site-specific claims would lead to the same result actually necessitate first vacating the earlier opinions and reinstating the Dismissed Defendants in order to allow them to conduct the necessary discovery and make motions on these grounds.

        The one argument that must be addressed – because it goes directly to the statute of limitations ground – is that proceeding on a theory of market share liability would eliminate *Arroyo* tolling, which only applies to jointly and severally liable tortfeasors.  The Dismissed Defendants correctly note that market share liability is not joint and several.[72]  Nonetheless, at this stage of the proceedings, the Court must rely on the claims as alleged in the Complaint to determine if the statute of limitations is tolled.

        Market share liability is not a single concept and can be either a theory of causation or a means for apportioning liability.  In the first instance, it is "an evidentiary tool that allows a plaintiff to prove causation"[73] and serves as a

---

[72]    *See In re MTBE Prods. Liab. Litig.*, 739 F. Supp. 2d 576, 598 (S.D.N.Y. 2010) ("[D]amages [under market share liability] are apportioned according to each defendant's share of the market at the time of injury, and thus, liability is several, rather than joint and several."); *In re MTBE Prods. Liab. Litig.*, 447 F. Supp. 2d 289, 299-300 (S.D.N.Y. 2006) ("Under market share liability . . . each defendant is  severally liable for the portion of the judgment that represented its share of the market at the time of the injury.").

[73]    *In re MTBE Prods. Liab. Litig.*, 517 F. Supp. 2d 662, 668 (S.D.N.Y. 2007).

"surrogate for proof."[74]  Some courts, however, have used market share liability

"as a surrogate for dividing the aggregate damages" after culpability has been

established.[75]  In any event, market share liability is a juridical tool for providing

equitable relief, "not an independent claim."[76]

Under *Arroyo*, tolling is contingent on the claims, not the ultimate

resolution of the litigation.  As the *Arroyo* court wrote, "the obligation [to remedy

harm] does not arise from the will of the parties, it is unilateral, by virtue of a

person's voluntary act vis-a-vis another person; and the law acknowledges and

sanctions the natural obligation of repairing the damages claimed."[77]  At this

juncture, the key question is whether the claims alleged give rise – as a matter of

law – to joint and several liability.[78]  Here, the TAC sufficiently alleges that

"Defendants are jointly and severally liable for the full costs of all investigatory,

remedial, removal, and other actions necessary to detect, delineate, abate, remove

---

[74]     Restatement (Third) of Torts: Apportionment of Liability § 26 reporter's note n (1999).

[75]     *Id.*

[76]     *In re MTBE Prods. Liab. Litig.*, 517 F. Supp. 2d at 668.

[77]     *Arroyo*, 130 D.P.R. 596 (official translation) (quotations omitted).

[78]     *See Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De Puerto Rico, Inc.*, 142 F.3d 1 (1st Cir. 1998) (discussing whether, as a matter of law, an insurer may be held jointly and severally liable with a tortfeasor).

and remediate MTBE in the waters of the Commonwealth."[79]  Whether any given

defendant is *in fact* jointly and severally liable for the injury alleged cannot be

determined at this stage of the proceedings.[80]  If, at the end of the day, liability – as

a matter of law – is not joint but only several, then any verdict must be vacated if

the one-year limitations period had expired as to any particular defendant at the

time that defendant was sued.

### B.   Statute of Limitations Reconsideration

All of the Dismissed Defendants, except Idemitsu, assert that the

Commonwealth necessarily had knowledge of the alleged injury – MTBE

contamination to the waters of the Commonwealth – at the time the initial

Complaint was filed in 2007.[81]  The memoranda of law then articulate a date by

---

[79]     TAC, Request for Relief ¶ A (note ¶ 19 clarifies that "[w]hen the term 'Defendants' is used alone, it refers to all Defendants named herein jointly and severally").

[80]     Indeed, the Puerto Rican Civil Code recognizes that "solidarity does not presuppose that the scope or source of liability is identical for each solidary debtor. To the contrary, '[s]olidarity may exist, even though the creditors and debtors are not bound in the same manner, and for the same periods and under the same conditions.'"  *Tokyo Marine*, 142 F.3d at 6 (quoting P.R. Laws Ann. tit. 31, § 3104).

[81]     *See* Trammo Mem. at 12; Defendant's Vitol S.A. and Vitol, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment ("Vitol Mem.") at 8-10 (Dkt. No. 336); Memorandum of Law in Support of Motion to Dismiss of Peerless Oil & Chemicals, Inc. ("Peerless Mem.") at 14 (Dkt. No. 233).

which they claim the Commonwealth had knowledge of the individual defendant's

gasoline or MTBE activity in Puerto Rico.[82]

Idemitsu, for its part, provides site-by-site dates for when the

Commonwealth knew of MTBE contamination and points to a discovery response

from ConocoPhillips in 2008 naming Idemitsu as a gasoline wholesaler as the date

the Commonwealth knew of Idemitsu's identity, thereby triggering the running of

the one-year statute of limitations.[83]

Under the *Arroyo* rule, the filing of the initial Complaint tolled the

statute of limitations as to the later-added jointly and severally liable defendants.[84]

Therefore, even if knowledge of the injury is imputed to the Commonwealth on the

date the Complaint was filed, the filing of the Complaint tolled the statute of

limitations.  Idemitsu's argument similarly fails because the 2008 date by which

the Commonwealth allegedly had knowledge of Idemitsu's activity in Puerto Rico

came after the Complaint was filed and tolling began.  The Puerto Rico Supreme

Court's decision in *Fraguada* ended that tolling period and restarted the running of

---

[82]    *See* Trammo Mem. at 12-15; Vitol Mem. at 9-10; Peerless Mem. at 14-15.

[83]    *See* Idemitsu Apollo Corporation's Memorandum of Law in Support of Its Motion for Summary Judgment at 2-4 (Dkt. No. 343).

[84]    *See* Companion Opinion, Section IV.A.

the one-year statute of limitations on August 13, 2012. The Commonwealth

alleged that the Dismissed Defendants are jointly and severally liable for the

aggregated harm to the waters of the Commonwealth in the TAC which was filed

less than four months later on December 3, 2012.

While the motions addressed here are both motions to dismiss and for

summary judgment, under either standard, all of the Dismissed Defendants were

timely added. Because the Commonwealth stipulated to the dismissal of Petrobras

on the basis that Petrobras "is also a Later-Added Defendant and subject to the

same treatment by this Court as Peerless, Trammo, Vitol, and Idemitsu," justice

demands that Order be vacated as well.[85]

C.      **Personal Jurisdiction Over Trammo Petroleum**

Having determined that the statute of limitations decision was in error,

I now turn to whether this Court may exercise personal jurisdiction over TP. I

conclude that the Commonwealth has failed to make out a prima facie case of

personal jurisdiction because it has not demonstrated a sufficient relationship with

the forum "aris[ing] out of contacts that the 'defendant [itself]' create[d]."[86] In the

TAC, the Commonwealth names TP as one of the "Refiner/Supplier Defendants,"

---

[85]      Order of Dismissal (Dkt. No. 601).

[86]      *Walden*, 134 S.Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475).

asserting Claims I through V against this group of defendants based on the factual allegations in paragraphs 88 to 95.  In support of these allegations, the Commonwealth points to the 2004 annual report from the United States Energy Information Agency ("EIA") naming "Trammo Petro Inc." as the importer of approximately 25,000 barrels of MTBE from Venezuela to Guayanilla, Puerto Rico in November 2004.[87]  In addition, the Commonwealth provides emails and documentation that refer generically to "Trammo" as the supplier of gasoline products to Peerless in Puerto Rico.[88]  These emails contain discussions among Peerless, Total Petroleum Puerto Rico ("Total"), and Gasolinas de Puerto Rico about the details of Peerless supplying gasoline to Total, and the documentation reflects Total's notes about the supply scheme, including the chain of supply and relevant price points.[89]

These documents are insufficient to support personal jurisdiction even when viewed in the light most favorable to the Commonwealth.  TP provides extensive affidavits and documentation that this singular report naming "Trammo

---

[87]     *See* Opp. to Trammo Motion at 5 (citing Declaration of Daniel Boone in Support of Plaintiffs' Opposition to Motion to Dismiss by Defendants Trammo Petroleum, Inc. and Trammo Caribbean, Inc. ("Boone Decl."), Ex. 2).

[88]     *See id.* (citing Boone Decl., Ex. 3.).

[89]     *See id.*

Petro Inc." was in error; Caribbean should have been named instead.  Indeed, the EIA's own website states that "analysis . . . reveals that some imports are not correctly reported."[90]  Caribbean's corporate records reveal that it purchased 24,889 barrels of MTBE, originating in Venezuela, and delivered to Guayanilla, Puerto Rico on November 4, 2004.[91]  In addition, a U.S. Customs Broker invoice shows that Caribbean – not TP – imported MTBE originating in Venezuela to Puerto Rico on November 4, 2004.[92]

The emails that refer to "Trammo" must also be read to refer to Caribbean.  Every mention of Trammo in the nine pages of emails and notes provided to the Court refers solely to Trammo supplying gasoline directly to Peerless who then sold that gasoline to Total.[93]  This makes sense because, as TP points out, Caribbean – not TP – had a gasoline supply contract with Peerless at that time.[94]  In this context, no fair inference can be drawn that these references to "Trammo" referred to TP.

---

[90]     Boone Decl., Ex. 2.

[91]     *See* May 29, 2013 Declaration of William E. Markstein ¶¶ 6, 7 (Dkt. No. 279).

[92]     *See id*. ¶ 8.

[93]     *See* Boone Decl., Ex. 3.

[94]     *See* April 12, 2013 Declaration of William E. Markstein ¶ 8 (Dkt. No. 209).

The Commonwealth does not allege that TP had any other contacts with Puerto Rico.  The evidence related to the single shipment of MTBE taken together with TP's affidavit stating that "it does not and did not conduct business or sell gasoline in Puerto Rico, either itself or through an intermediary, or have any agents in Puerto Rico,"[95] convince this Court that TP does not have sufficient minimum contacts for this Court to exercise personal jurisdiction.

Finally, in an attempt to manufacture personal jurisdiction, the Commonwealth alleges new facts in its Opposition to supports its new contention that Caribbean was an alter ego of TP.  Yet these allegations – or any facts supporting them – do not appear anywhere in the TAC, and the Commonwealth has never asked this Court to pierce Caribbean's corporate veil.  This last ditch effort to create personal jurisdiction must fail because "the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.'"[96]

## VI.    CONCLUSION

For the above reasons, the Orders of July 26, 2013; December 30, 2013; and May 21, 2015 (Dkt. Nos. 315, 357, 601) are VACATED as to the

---

[95]    *See id.* ¶ 3.

[96]     *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811, 2013 WL 791462, at *2 (S.D.N.Y. Mar. 5, 2013) (quoting *O'Brien v. National Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989)).

26

Dismissed Defendants, Trammo Petroleum, Inc.'s Motion to Dismiss for lack of personal jurisdiction is GRANTED, and the remaining Dismissed Defendants are REINSTATED. The parties are directed to submit a joint proposed discovery schedule to this Court by December 18, 2015.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             December 7, 2015

27

**- Appearances -**

**Liaison Counsel for Plaintiff:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for Plaintiff:**

John D.S. Gilmour, Esq.
Jackson Gilmour & Dobbs, P.C.
3900 Essex, Suite 700
Houston, TX 77027
(713) 355-5000

Jorge L. Flores, Esq.
Legal Counsel
Puerto Rico Department of Justice
Olimpo Street, Pda. 11
San Juan, PR 00907
(787) 721-7700

John K. Dema, Esq.
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, VI 00820
(340) 773-6142

Orland H. Martinez, Esq.
Orland H. Martinez Law Offices
Centra de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, PR 00907
(787) 722-2378

Michael Axline, Esq.
Miller Axline
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
(916) 488-6688

**Liaison Counsel for Defendants:**

Peter J. Sacripanti, Esq.
James A. Pardo, Esq.
Michael J. Dillon, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Idemitsu Apollo Corporation:**

David N. Lutz, Esq.
Theodore Dorenkamp, Esq.
Bowman and Brooke LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
(612) 339-8682

Robert D. Wilson, Jr., Esq.
Littleton Joyce Ughetta Park & Kelly LLP
4 Manhattanville Road, Suite 202
Purchase, NY 10577
(914) 417-3408

**Counsel for Peerless Oil and Chemicals, Inc.:**

Adrian Sánchez-Pagán, Esq.
Sánchez-Pagán, LLC
P.O. Box 365006
San Juan, PR 00936
(787) 756-7880

**Counsel for Petrobras America Inc.:**

James B. Harris, Esq.
David C. Shulte, Esq.
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
(214) 969-1314

**Counsel for Trammo Petroleum, Inc. and Trammo Caribbean, Inc.:**

Barry R. Temkin, Esq.
Sara N. Lewis, Esq.
Mound Cotton Wollan & Greengrass LLP
One New York Plaza
New York, NY 10004
(212) 809-4200

**Counsel for Vitol S.A. and Vitol Inc.:**

Peter Ligh, Esq.
Meghana D. Shah, Esq.
Travis J. Mock, Esq.
Sutherland Asbill & Brennan LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 389-5000