5B53MBTC                    Teleconference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   HOPE KOCH, et al.,

4                    Plaintiffs,

5            v.                        00 MDL 1358 (SAS)

6   JOHN R. HICKS, et al.,

7                    Defendants.

8   ------------------------------x
                                       New York, N.Y.
9                                      December 5, 2005
                                       10:30 a.m.
10
    Before:
11
                    HON. SHIRA A. SCHEINDLIN,
12
                                       District Judge
13
                       APPEARANCES
14
    LAW OFFICES OF PETER G. ANGELOS
15       Attorneys for Plaintiffs  Wagner
    BY:  SCOTT D. SHELLENBERGER
16          MARY V. KOCH
            KAREN BERGMAN
17

18  LAW OFFICES OF CHARLES J. PIVEN
            Attorneys for Plaintiffs Koch
19  BY:  CHARLES J. PIVEN

20  VENABLE LLP
         Attorneys for Defendants Exxon Mobil
21  BY:  ANDREW GENDRON
            MICHAEL DeVINNE
22

23

24

25

5B53MBTC                          Teleconference

1           (In chambers; all parties appearing via telephone)

2           THE COURT:  Good morning.  This is Judge Scheindlin

3   speaking.  I have a court reporter here.  So I need you to

4   identify yourselves so we know who's on the line.

5           MR. SHELLENBERGER:  This is Scott Shellenberger with

6   the Law Office of Peter G. Angelos in Baltimore.  With me with

7   my firm are Mary Koch, Karen Bergman, and also Marshall Perkins

8   with the Piven Law Firm on behalf of the plaintiffs.

9           THE COURT:  Let me take another minute to get that.

10          MR. SHELLENBERGER:  Speaking is Scott Shellenberger.

11  We have Mary Koch, Karen Bergman --

12          THE COURT:  Okay.

13          MR. SHELLENBERGER:  And Marshall Perkins, all on

14  behalf of plaintiffs.

15          THE COURT:  You said another firm name.

16          MR. SHELLENBERGER:  With the P-i-v-e-n Law Firm.

17          THE COURT:  Okay.  I think I've got them all.  Court

18  reporter does too.  Who else is on the line?

19          MR. GENDRON:  Good morning, your Honor.  Andrew

20  Gendron and Michael DeVinne both of VENABLE on behalf of Exxon

21  Mobil.

22          THE COURT:  Let me do that again.  Just do it again.

23          MR. GENDRON:  Andrew Gendron, G-e-n-d-r-o-n, and

24  Michael, D-e capital V-i-n-n-e, both of VENABLE LLP on behalf

25  of Exxon Mobil.

5B53MBTC                        Teleconference

1          THE COURT:  Is there anybody else on the call?  Is

2    there anybody else who should be on the call?  No.  Okay.

3          MR. SHELLENBERGER:  Scott Shellenberger again.  There

4    is another defendant, John Hicks, who is the owner and operator

5    of the station.

6          THE COURT:  Right.

7          MR. SHELLENBERGER:  I do not know where his counsel

8    is.

9          THE COURT:  Were they told of the call?

10         MR. SHELLENBERGER:  Yes.

11         MR. GENDRON:  Andrew Gendron speaking.  They were

12   copied on the e-mail.

13         THE COURT:  Okay, good.  I wanted a conference call

14   because there are a lot of pieces of paper that were

15   transferred from state court over to federal court.  I have to

16   figure out a schedule, whether everything's here and what the

17   schedule should be, and whether who has appeared or not because

18   at the conference, in person, Mr. Gendron, were you or

19   Mr. DeVinne there?

20         MR. GENDRON:  I was there, your Honor.

21         THE COURT:  You got excited at one point and started

22   saying the firm hasn't even appeared, remember that the

23   D'Angelo Firm has never appeared.  You remember that you made a

24   whole speech.

25         MR. GENDRON:  Your Honor, what I had said to the best

1    of my knowledge they were not counsel of record for the

2    plaintiffs in the Koch case.

3              THE COURT:  Right.  That was one of the things you

4    said.  It wasn't that short, but okay.  That certainly is one

5    of the things you said.  Has that been cured?

6              MR. GENDRON:  My understanding, your Honor, is that

7    Ms. Bergman -- please correct me if I'm wrong, counsel --

8    submitted to chambers a letter and proposed pro hac motion for

9    herself, Ms. Koch, and Mr. Shellenberger.  While I haven't seen

10   a separate entry of appearance obviously, I think that the

11   requisite notation is there to indicate that they are entering

12   their appearance.

13             THE COURT:  Okay.  That problem has been dealt with.

14             Now I want to talk about the motion to dismiss and the

15   scheduling of that.  And I think the best place to start in a

16   funny way now that the motion is almost fully briefed or to

17   some extent fully briefed is do the plaintiffs intend to amend

18   the complaint any further?

19             MR. SHELLENBERGER:  Your Honor, Scott Shellenberger.

20   Your Honor, obviously since we've been stayed from doing

21   anything for 18 months, a lot of facts have developed during

22   that period of time.  And I think that it's highly likely that

23   the complaints will be amended.

24             THE COURT:  You say "highly likely."  My question is,

25   is it fair to go through all this motion to dismiss a pleading

5B53MBTC                          Teleconference

which is not the final pleading.  There are many pieces of

paper here, but there's also work that I now undertake.  Why

should I undertake a motion directed to an inoperative

pleading?

          MR. SHELLENBERGER:  Your Honor, I think we should not

resolve the dispositive motions now, for the very fact that no

discovery has been done whatsoever and we need to --

          THE COURT:  You don't usually have discovery prior to

a motion to dismiss.  Their motions to dismiss that Exxon has

made directed to the pleading.  Now -- hold on please.  The

telephone conference is a difficult mechanism, because the way

our telephones work, when you speak, your voice will block my

voice.  I could be sitting here shouting stop, stop, stop, and

you'll never know it.  Obviously in court when you're live you

see the judge interrupting you and you know to stop.

          Anyway, be that as it may, I wanted you to stop.  I

see that there are, for example, Hicks made a motion to dismiss

or for summary judgment.  That I understand if somebody is

fashioning their motion in the alternative, surely you might

say I'm going to need discovery to deal with the summary

judgment.  But a motion to dismiss is directed to the

pleadings.

          Now, I haven't looked at it in the detail you are

about to get into.  Is one of their motions to dismiss the

punitive damages claim?

5B53MBTC                    Teleconference

```
 1          MR. SHELLENBERGER:  That is correct, your Honor.  They
 2   have made a motion to dismiss punitive damages.
 3          THE COURT:  That's not the only motion to dismiss
 4   they've made, is it?
 5          MR. SHELLENBERGER:  They also have made a motion to
 6   dismiss the medical monitoring count.
 7          THE COURT:  Yeah.  Anything else?
 8          MR. SHELLENBERGER:  And then you saw the Hicks
 9   motion --
10          THE COURT:  No, no, let's not turn to Hicks yet.
11   Let's deal with Exxon because they are on the phone.
12          MR. SHELLENBERGER:  Yes, ma'am.  On Friday a
13   supplemental motion to dismiss the remainder of the counts was
14   filed at approximately 5 o'clock.  Obviously I'm not in a
15   position to address that.
16          THE COURT:  I am.  I knew that.  I knew that they had
17   moved to dismiss the remainder or I knew they filed a
18   supplemental motion on Friday.  That raises the very question
19   I'm saying.  So now they've moved to dismiss medical
20   monitoring, punitive damages, and all remaining counts.
21   Originally it was just medical monitoring and punitive damages?
22          MR. SHELLENBERGER:  That's correct.
23          THE COURT:  Well they aren't too injured because they
24   just did this Friday where they knew you were contemplating an
25   amended complaint.  Maybe that was kind of silly.  I don't know
```

1    if they talked to you first to see your schedule.

2            Now that does raise squarely the issue.  It is not a

3    matter of giving you time for discovery.  You don't need

4    discovery to oppose a motion to dismiss that's directed at the

5    pleadings.  The only thing is we shouldn't be dealing with an

6    inoperative dealing.  Either you are going to amend or you are

7    not going to amend.  If you are going to amend, what is your

8    amendment?

9            MR. SHELLENBERGER:  We are going to amend because we

10   have learned from the public records a number of facts we can

11   add to each one of the counts.

12           THE COURT:  That's interesting because we don't even

13   have fact pleading here, we have notice pleading.  You

14   shouldn't have to plead any facts.  So all these facts you

15   learned shouldn't be in the complaint, shouldn't make a darn

16   bit of difference.

17           MR. SHELLENBERGER:  I understand, your Honor, but

18   obviously it's notice pleading and there are a number of facts

19   that go directly to the notice issue that have been gleaned

20   over the past 18 months.

21           THE COURT:  I think lawyers have a great deal of

22   difficulty understanding the concept of notice pleading.  You

23   shouldn't have to plead any facts.  If there are attacking your

24   pleading for lack of facts, they are going to lose.  That's

25   all.  The Supreme Court has told us that in Swierkewicz v.

5B53MBTC                          Teleconference

 1   Sorema.  If they didn't realize that, then they are off base in

 2   federal court.  The supplemental brief was surely filed in

 3   federal court, so Exxon Mobil is supposed to know what it's

 4   doing.  It is a big company.  It wasn't supposed to make a

 5   motion that says this count has to be dismissed for failure to

 6   allege facts.

 7           In any event if you want to amend, then you need to

 8   tell me when, and Exxon needs to probably withdraw the

 9   supplemental motion and direct it to the amended pleading.

10   There is no point in fooling around.

11           Can you amend as of right at this point?  I guess not.

12   There's been a responsive pleading filed to the extant

13   complaint, right?

14           Is Exxon Mobil here?  You're awfully quiet.

15           MR. GENDRON:  Your Honor, Andrew Gendron here.  I only

16   speak when spoken to, your Honor.

17           THE COURT:  I did throw out the question.  Can they

18   amend as of right at this point?

19           MR. GENDRON:  I am not aware of a responsive pleading,

20   your Honor.  To the best of my knowledge, and again I'll defer

21   to opposing counsel to correct me if I'm incorrect factually, I

22   think there's only been motions filed.

23           MR. SHELLENBERGER:  That is correct, your Honor.  So I

24   believe we can amend.

25           THE COURT:  You disagree, do Mr. Gendron or

5B53MBTC                    Teleconference

1    Mr. DeVinne disagree that the plaintiff can amend as of right?

2              MR. GENDRON:  The answer is no, your Honor, we do not

3    disagree.

4              THE COURT:  Let's get a schedule.  Mr. Shellenberger,

5    please when are you going to amend?

6              MR. SHELLENBERGER:  We would ask for approximately 45

7    days.

8              THE COURT:  Absolutely not.  I mean, you're really

9    making me just not understand you at all.  You want to amend,

10   amend.  These motions have been sitting around.  You yourself

11   are complaining about 18 months of nothing.  45 days is

12   nonsense.  You should -- listen, you could amend overnight if

13   you wanted to.  If you wanted to sit down and just hit your

14   computer, you could add your sentences and be done with it.

15             As I understand your amendment, you are not adding

16   complaints, you are not dropping claims.  You want to throw

17   facts into the pleading.  You don't need to do.  Do you intend

18   to add any claims?

19             MR. SHELLENBERGER:  Your Honor, I do need to point out

20   one thing.  In Maryland under the punitive damage claims, I do

21   need specific facts, and that was specifically addressed by

22   Exxon Mobil's motion to dismiss.  So that is the only reason

23   with regard to punitive damages I'd even discuss facts.  I

24   understand the Court's position with regard to notice, and I do

25   understand that.

5B53MBTC                        Teleconference

1          We understand there is a status conference on the

2     20th.  Our amendment will be done before then.

3          THE COURT:  That sounds better.  Let me go back.  Are

4     you going to add any claims or drop any claims?

5          MR. SHELLENBERGER:  We do not intend to add any claims

6     and I do not believe we are going to drop any claims.

7          THE COURT:  Your amendment is to flesh out the

8     punitive damages claims, and maybe, I don't know, tinker a

9     little bit with some of the other claims to make them a little

10    more full factually or something.

11         MR. SHELLENBERGER:  Yes, your Honor.

12         THE COURT:  I see.  Okay.  Now, assuming that, and I

13    do assume that we will have an amended pleading before the

14    December 20 conference which is a Tuesday, Mr. Gendron, would

15    you withdraw the supplemental motion to dismiss that's now

16    pending, and simply refile it within an appropriate time after

17    December 20, because it's directed to an inoperative complaint

18    as is your punitive damages motion, as is everything.  It's

19    really unfortunate but that's the way it is.

20         MR. GENDRON:  Yes.  First of all, I would like to just

21    mention one thing very briefly.  We had not understood that

22    plaintiffs would be amending their pleadings.  We thought that

23    based upon the communication of November 23, I believe, that

24    they would be amending their motion papers.  We did not mean

25    to -- certainly did not mean to file a supplemental motion that

1    would be mooted the next business day.

2              THE COURT:  Right, right, but that's --

3              MR. GENDRON:  That said --

4              THE COURT:  Yes.

5              MR. GENDRON:  -- we will of course direct our motion

6    papers to whatever they file, assuming we've got a basis to do

7    so.

8              THE COURT:  Right, of course.  I am not inviting a

9    frivolous motion, that's right.  That's a good point.  I do

10   want you to make a motion you can make.  If you feel you can't

11   attack it on the face of the complaint, then you should answer

12   and we should move on.

13             But let's set a schedule anyway.  In the meantime can

14   you draft a letter that I can so order saying you're

15   withdrawing all the pending motions in contemplation of filing

16   a motion directed at the amended complaint, just so the clerk

17   doesn't have those running and getting old?

18             MR. GENDRON:  Yes, your Honor.

19             THE COURT:  All right.  Good.  Now assuming you get

20   this complaint on or before December 20, it is going to look

21   much like the complaint you have now.  And I don't think your

22   work will be wasted.  It shouldn't take you terribly long to

23   refile.  How long do you want, given that the research is

24   probably done, the only claim that's going to look a lot

25   different is the punitive damages?

```
 1              MR. GENDRON:  We will not need long.  I have one
 2    request and it's only because I don't want to be perceived as
 3    overly Dickensian by my associate.
 4              THE COURT:  Right.
 5              MR. GENDRON:  I understand Mr. DeVinne does want to
 6    take a couple days off during Christmas week, and I too will be
 7    away that week.  If we might file our motion, let's say, would
 8    it be too great a burden on the Court if we were to file by
 9    Monday, January 9?
10              THE COURT:  No, that would be fine.  That's certainly
11    fair given the big holidays that we're approaching.  So let's
12    say no later than December 20 for the amended pleading, no
13    later than January 9 for the motion.  I want to keep all these
14    short.  So, Mr. Shellenberger, in view of the fact you've
15    already opposed the motion, how long do you need for the
16    opposition papers?
17              MR. SHELLENBERGER:  We believe 20 days, your Honor.
18              THE COURT:  For plaintiffs you ask for the most time.
19    I don't have a 2006 up here.  What day of the week is
20    January 9?
21              MR. GENDRON:  Monday, your Honor.
22              THE COURT:  Hold on one second.  I'm sorry.  I didn't
23    realize I could do it.  January 9 is Monday.  January 27.
24              MR. SHELLENBERGER:  Friday.
25              THE COURT:  Yes.  January 27.  That should make the
```

1    motion to dismiss, if there is any motion to dismiss, fully

2    submitted.

3          Now, with respect to Hicks, can everybody sort of

4    inform these folks to do the same?

5          MR. GENDRON:  I will do so.  May I ask one question?

6          THE COURT:  Yes.

7          MR. GENDRON:  I am not fully conversant on Southern

8    District practice.  When you say that the motion is fully

9    submitted, does the Court not contemplate reply memorandum?

10         THE COURT:  Did I skip that?  Moving papers, response,

11   reply.  Oh no, that was the complaint.  I'm sorry.  You're

12   absolutely right.  I had one extra date for the complaint

13   itself.  You are right.

14         How long would you like?

15         MR. GENDRON:  Well, your Honor, we move more slowly

16   down here for replies.  May I ask for 11 days?

17         THE COURT:  Yes.  All right.  February 8.  All right?

18         MR. GENDRON:  I think that's right.

19         THE COURT:  Well, it's probably close enough to right,

20   so why don't we make it February 8.

21         MR. GENDRON:  Thank you, your Honor.

22         THE COURT:  Can you communicate the schedule to Hicks?

23         MR. GENDRON:  I will.  I will be happy to put this in

24   the same letter so we all have it.

25         THE COURT:  That's great.  You might want to alert

5B53MBTC                         Teleconference

 1   Hicks.  It's hard without having read the papers and without

 2   the lawyer being on the phone, but he does say and/or for

 3   summary judgment.  That's highly unlikely that I am going to

 4   convert it without anybody having any discovery.  You might

 5   want to tell him that, if not directed at the pleadings,

 6   there's little chance.

 7          In state court there was also plaintiffs' motion for

 8   class certification.  And Exxon Mobil responded to that.  So my

 9   next and hopefully last question, given that you're now in the

10   federal court at least for now, there's always a chance of it

11   being sent back to state court after our circuit rules on some

12   pending appeals.  For the moment you're here.  So given that,

13   do plaintiffs want to amend their motion for class

14   certification or not?  I don't know if the Maryland rule was

15   the same, whether you have to tinker with it and cite different

16   cases and whatever.

17          MR. SHELLENBERGER:  We will need to amend the motion

18   for class certification.

19          THE COURT:  What I would like you to do is withdraw it

20   so it's not cluttering our record.  If you would simply write a

21   letter again I can so order to direct the clerk to withdraw

22   those motions, then you can.

23          Now, are you ready to do that now or you want to put

24   that off down the line?

25          MR. SHELLENBERGER:  We need to put that off down the

5B53MBTC                         Teleconference

1   line.

2              THE COURT:  Okay.  There is no reason for the defense

3   to object to that, is there?

4              MR. GENDRON:  No, your Honor.

5              THE COURT:  We'll just back burner that.  But,

6   Mr. Shellenberger, you don't mind withdrawing the motion, do

7   you?  I don't like some motion pending for two years and some

8   Congressman standing up and saying we don't do work.

9              MR. SHELLENBERGER:  There will not be a pending

10  motion.

11             THE COURT:  Then you'll send a letter?

12             MR. SHELLENBERGER:  Yes.

13             THE COURT:  Now with respect to your case as opposed

14  to all the many cases, have you had a discovery conference with

15  your adversary and tried to talk about getting discovery going?

16             MR. SHELLENBERGER:  Your Honor, we had a conference

17  with other plaintiffs' counsel in a similar position.  We are

18  putting together a draft CMO and we hope to have something to

19  Exxon Mobil's counsel very shortly.  So that we can then

20  exchange ideas and meet and try to work this out.

21             THE COURT:  Okay.

22             MR. GENDRON:  Your Honor, we have a conference call

23  with plaintiffs' counsel scheduled for tomorrow afternoon.

24             THE COURT:  Excellent.  All right.  So that then maybe

25  you'll have something for the 20th for me.  If not, we'll do it

5B53MBTC                          Teleconference

1    by correspondence.  I would like to make sure that discovery

2    gets organized and on the track.

3              MR. GENDRON:  We're hopeful.

4              THE COURT:  All right.  Then I don't have anything

5    else to bring up.  Do you folks?

6              MR. GENDRON:  Only to say I look forward to seeing you

7    on the 29th, your Honor.

8              THE COURT:  I look more forward to your letter closing

9    motions that shouldn't be pending in front of me right now.

10   All right?  Thank you, folks.

11             MR. SHELLENBERGER:  Thank you.

12             THE COURT:  Bye.

13                                o0o

14

15

16

17

18

19

20

21

22

23

24

25