73USMTBE

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  IN RE:  MTBE, et al.,                       00 MDL 1898
4  ------------------------------x
5                                              March 30, 2007
                                               11 a.m.
6
   Before:
7
                    HON. SHIRA A. SCHEINDLIN,
8
                                               District Judge
9
                            APPEARANCES
10
   MARY KOCH, ESQ.
11 KARYN BERGMAN, ESQ.
   JAMES COX, ESQ.
12      Attorneys for Plaintiff Larrabee
13 ANDREW GENDRON, ESQ.
   PETER SACRIPANTI, ESQ.
14      Attorneys for Defendant Exxon Mobil Corp.
15
16
17
18                       (TELEPHONE CONFERENCE)
19
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

1              (Case called)
2              THE COURT:  I have a court reporter here so can you
3   identify yourselves?
4              MS. KOCH:  Mary Koch, along with James Cox and Karyn
5   Bergman.
6              THE COURT:  And you all represent the plaintiff?
7              MS. KOCH:  Plaintiff, yes.
8              MR. SACRIPANTI:  Peter Sacripanti representing
9   Exxon-Mobil Corporation, along with my colleague from Venable
10  Andrew Gendron.
11             MR. GENDRON:  Good morning, your Honor.
12             THE COURT:  Good morning, Mr. Gendron.
13             THE COURT:  You said along with my colleague --
14             MR. SACRIPANTI:  From Venable, your Honor.
15             THE COURT:  This I hope is a very brief and simple
16  conference call.  There is some dispute going on about a notice
17  of voluntary dismissal.  Plaintiffs in a case called Larrabee
18  v. Exxon-Mobil, which is a Maryland case, is that right?
19             MS. KOCH:  That is correct.
20             THE COURT:  You want to dismiss under Rule 41(a)(1)
21  and the defendants say you can't do that because the answer has
22  already been filed.  Plaintiff says, no, an answer hasn't been
23  filed because the sort of standard answer of the MDL isn't
24  deemed to be an answer in this particular case.
25             Is that a fair summary of the dispute going on?

1           MS. KOCH:  Yes, your Honor, from the plaintiff's side.

2           THE COURT:  So, Mr. Sacripanti, I don't remember the

3    history but in Ms. Koch's letter I guess she said I previously

4    said that in a similar case, the Alban case, apparently I said

5    the standard master answer wasn't an answer in these sort of

6    private plaintiff cases as opposed to the water authority cases

7    that make up most of the MDL.  That is what she said.  I don't

8    remember.

9           MR. GENDRON:  If I may, may I answer that question?

10          THE COURT:  Of course.

11          MR. GENDRON:  The difference between the Alban case

12   and the Larrabee case is that in Alban there had been in

13   amendment of the master answer to include the Alban cases.  We

14   had taken the position, based upon some earlier exchanges in

15   conferences before the Maryland cases had been brought in, that

16   the pendency of the master answer sufficed until the cases

17   could be sufficiently addressed.  The court rejected that

18   position and we understand that.  However, just as in the Koch

19   case, Exxon-Mobil responded to a virtually identical complaint

20   in the Larrabee case by amending the master answer to

21   specifically refer to it and to include Maryland affirmative

22   defenses.  And to suggest that that is not good enough suggests

23   that the answer that has been pending for a year and a half in

24   the Koch case is insufficient, even though plaintiffs have

25   never before taken that position, and calls into question our

1  parties' reliance on master answers generally with respect to
2  cases brought into the MDL and would seem to suggest that there
3  are a great many parties in default throughout the MDL.  I
4  don't think that is what the court intended.
5          THE COURT:  So assume you are right, Mr. Gendron, for
6  the sake of argument, I don't even hear from Ms. Koch for a
7  minute -- and assume you are right.  You have answered and now
8  she wants to dismiss voluntarily anyway.
9          Are you opposing that?
10         MR. GENDRON:  The answer is we don't know because we
11 asked them why they want to dismiss and they haven't responded
12 to us.
13         THE COURT:  All right.  Maybe she will tell us.  I
14 thought it was to go to state court.
15         MR. GENDRON:  I haven't heard a thing, your Honor.
16         THE COURT:  Let's find out.
17         Ms. Koch, I think since he might well be right on this
18 answer problem we are going to have to presume it for a little
19 while, and tell me so that he can decide whether he wants to
20 oppose the voluntary dismissal anyway why you want to dismiss.
21         MS. KOCH:  The major reason -- there are actually
22 three reasons that we want to dismiss.  One is because we have
23 obviously the class action involved in it and we have done some
24 work in investigation in this case and this case is very
25 different from Falston in one glaring respect, and that is that

1    in Falston there is only one other attorney involved who
2    represents a very small number of individuals.  In Jacksonville
3    there is another attorney involved who represents about 84
4    individual families and so they have all filed individual
5    lawsuits and so we think that that obviously has an impact on
6    the ability to have a class certified in Jacksonville.  We also
7    think in Jacksonville we would be amending the complaint
8    regardless because we want to add numerous other parties to the
9    complaint, other defendants; and, thirdly, we just have decided
10   that in light of those things we would prefer to proceed with
11   individual actions which we are prepared to file for about
12   approximately 120 families in the Jacksonville area.  And so to
13   that end we intend to refile in state court individual actions
14   on behalf of those names.
15             THE COURT:  The named plaintiffs here, Larrabee and
16   Depino and Rieger, they won't be bringing a class action in
17   Maryland.  They will be bringing individual actions, and will
18   they be consolidated with the Jacksonville cases?  Is that what
19   you are saying?
20             MS. KOCH:  I don't know if the court will eventually
21   consolidate.  We filed a complaint that puts all our plaintiffs
22   in one complaint.  So I don't know that a scheduling order has
23   been set in Baltimore County.  I know that there is an idea
24   they may be going to trial in May 2008, but that is all I know
25   about that in that particular case.

1                THE COURT:  All right.

2                Back to Mr. Gendron, now you know the reason.

3                MR. GENDRON:  Yes, your Honor.

4                Well, the first point is whether they seek class

5    certification in this case or not, they have these claims

6    pending and there is no reason why they can't amend these cases

7    to include additional parties after Exxon-Mobil has gone

8    through the time, effort and expense of getting the case

9    removed.  Certainly I am not entirely certain whether

10   numerosity is a concern of theirs, if they say they have 120

11   individual cases that they intend to file.  That sounds like an

12   awful lot of people.

13               THE COURT:  Mr. Gendron, I think you lost me.  You are

14   trying to say you have some power to make them continue to

15   bring a class action when they don't want to?

16               MR. GENDRON:  No, your Honor.  Excuse me if I was

17   unclear.

18               THE COURT:  Maybe it's me.

19               Go ahead.

20               MR. GENDRON:  All I meant was I thought I had heard

21   them say that by virtue of the number of parties that Mr.

22   Snyder is representing in state court they thought that that

23   distinguished the Jacksonville litigation from the Falston

24   litigation in which they sought class certification and maybe

25   it was an unordered assumption on my part but I thought Ms.

1    Koch was suggesting that there would be an opt out problem or a
2    numerosity problem, and then when I heard her say it sounded
3    like they were going to proceed with 120 individual cases
4    numerosity didn't seem like an issue to me.  Maybe I just
5    didn't understand her.  But the fact is regardless of whether
6    they seek class certification in this case or not, they have
7    pending claims.  They can amend them.  If they want to bring in
8    additional parties diversity isn't a basis for removal here so
9    that won't defeat the court's jurisdiction.
10           And in response to the court's question about
11   consolidation with the pending actions of Baltimore County,
12   there is a scheduling order in place.  By the time these cases
13   would be filed in broader Baltimore County it would be past the
14   deadline for joinder of additional parties so there wouldn't be
15   consolidation with the May 2008 trial date.
16           THE COURT:  All of which I don't really understand why
17   that would lead to your opposing a voluntary dismissal of this
18   case in federal court.  I am not able to follow that.
19           MR. GENDRON:  Well, your Honor, first of all, let me
20   say this is the first we have heard of the plaintiff's reasons
21   so we haven't had the opportunity to speak with our client and
22   I don't know what your client's position is and I would ask the
23   court for the opportunity to do that in any event and get back
24   to the court promptly.  But just as a for instance, Exxon-Mobil
25   had a right to seek to get this case in the MDL and it did so

1   properly.
2              THE COURT:  What is the basis of jurisdiction on this
3   one?
4              MR. GENDRON:  I am sorry?
5              THE COURT:  What is the basis of jurisdiction on this
6   one?
7              MR. GENDRON:  It's Section 1503 of the Energy Policy
8   Act of 2005.
9              THE COURT:  So this one is staying no matter what the
10  Second Circuit does.
11             MR. GENDRON:  Yes, your Honor.
12             THE COURT:  Go ahead.  Yes.
13             MR. GENDRON:  Just as plaintiffs have, all things
14  being equal, a right to select their forum, defendants may
15  properly invoke removal jurisdiction and have a right to do so.
16             MS. KOCH:  May I interrupt --
17             THE COURT:  I have a question for Mr. Gendron.
18             What you are really saying is that if she re-files you
19  could remove again anyway.  Is that right?
20             MR. GENDRON:  Depending upon the nature of the
21  complaint that may very well be, in which case this would be a
22  futile exercise.
23             THE COURT:  That is true.  It really depends what you
24  allege because under the Energy Policy Act we don't have the
25  old jurisdiction problem, the one still under consideration in

1   the Second Circuit.  It comes here if it says what it needs to
2   say.  So it's really a question of which jurisdiction.  It's a
3   tricky thing.  I think we should go back to basics.
4               Ms. Koch, do you want to be heard on the answer
5   problem?  Because Mr. Gendron was pretty convincing that if he
6   specifically amended the answer to address the allegations in
7   the Larrabee case it would be a dangerous precedent to say he
8   hadn't filed an answer.  That would throw in doubt a lot of
9   people, a lot of defendants, I mean, not people, but a lot of
10  entities' failure to answer so-called, and I can't have that.
11  That is the whole point of a master answer.  While I may have
12  said that at the time of Alban prior to the amendment of the
13  answers to specifically address some of the issues raised in
14  these cases, unless you are pretty convincing I am going to
15  assume he answered.  Then the question will be he will go back
16  to his people and see if they do want to oppose the voluntary
17  dismissal.  We could get lucky and they don't, but if they do
18  want to oppose I will yet have another motion on my docket and
19  I will decide it.
20              MS. KOCH:  They did not specifically address, your
21  Honor, the issue in their master answer.  As a matter of fact,
22  your Honor, all they did was cite general Maryland law that
23  would entitle them to raise certain defenses in the case.
24  There was no specific addressing of the various allegations in
25  the complaint that was filed by our office.  It's just a

1    general recitation of the affirmative defenses available to
2    them under Maryland law.
3             THE COURT:  But that may be enough.  Why would he, in
4    a master answer that applies to sort of New York cases and
5    California cases and whatever cases, address Maryland law at
6    all?  It seems to me that indicates he was specifically
7    responding.  He was tailoring the master answer to the Maryland
8    cases.  I don't need Maryland cases in New York or California.
9    There was obviously an effort to tailor a master answer.  You
10   say, here are all the master allegations or answers and I add
11   Maryland defenses.  That tells me that it was directed at the
12   Larrabee case.
13            MS. KOCH:  Your Honor, I think that the rules require
14   that they have to also address case specific allegations to the
15   extent that they exist according to the manual for complex
16   litigation, and in your Honor's order in the transcript of the
17   status conference on January 13, 2005 and the case management
18   order, which embodies the rulings of that status conference,
19   you indicated that they have to address them, make specific
20   allegations to the extent they exist.
21            There are no case-specific allegations in the master
22   answer responding to the Larrabee complaint and I know there
23   are because I have seen the answer in Alban and it is case
24   specific and it's vastly different from the master answer where
25   they allege answers for all of their defenses in the Larrabee

1  case.

2  THE COURT:  Well, I don't have the answer in Larrabee
3  in front of me so I am having a hard time sort of being able to
4  rule on this on a telephone conference, although I would like
5  to because I really think this shouldn't require each side to
6  submit briefs and call it a pending motion.  We will never get
7  through if we can't decide whether an answer has been filed.

8  But I guess you could send over the answer, Mr.
9  Gendron, and highlight the portions that you say comply with my
10  order and you in turn, Ms. Koch, can send over the portions of
11  the order that you are citing because I don't have that in
12  front of me.  I don't know what I said in 2005.  I don't know
13  what I said in the transcript and I don't know what I said in
14  the case management order.  So would you have to send over both
15  of those to me.

16  MS. KOCH:  We would like to see the answer in the
17  Alban complaint because that does illustrate it.

18  THE COURT:  Send over a quick package, maybe Federal
19  Express, a drop in the bucket here, and just send over here the
20  appropriate pages of the CMO that you say address this, the
21  appropriate pages of the transcript that you say address this
22  and, if you want to, the Alban answer, and meantime somebody
23  send over the Larrabee answer, and in the first instance I have
24  to make a decision if that is an answer.

25  But Mr. Gendron's point is well taken.  This could

1    throw into disarray a lot of entities who believe they have
2    answered a lot of complaints suddenly learning they haven't
3    answered.  The whole point of a master answer is to be
4    efficient when you have a large number of cases with a large
5    number of defendants.  This may be a relatively small MDL so
6    far in terms of number of cases, maybe we have only 100.  There
7    are cases around the country with 5,000, but if you multiply
8    100 times the number of defendants that are named we have a lot
9    of folks in this MDL.
10              MS. KOCH:  Can I ask one question?  I am curious, if
11   this is Exxon's position are they now saying they have now
12   waive their right to file a motion to dismiss?
13              MR. GENDRON:  We haven't filed a motion to dismiss.
14              THE COURT:  That is not her question.  Her question is
15   having answered is that your responsive pleading?
16              MR. GENDRON:  Yes, your Honor.
17              THE COURT:  So you have waived the right to file a
18   motion to dismiss.
19              MR. GENDRON:  For the preliminary motion to dismiss,
20   absolutely.
21              THE COURT:  Please hold one second.
22              (Pause)
23              THE COURT:  I am back, sorry.
24              MS. KOCH:  Your Honor, I think our position stands as
25   it is and I am prepared to overnight to the court the

1     information that you requested.
2              THE COURT:  But you got an answer to your question
3     about motion to dismiss.  Yes, his position is he filed an
4     answer.
5              MS. KOCH:  That is not the position they took in Koch.
6     They filed a motion to dismiss in Koch.  Even though they had a
7     motion and they certainly didn't indicate that they had waived
8     it by filing a master answer in Koch, and I only say that
9     because they reference Koch in reference to the way we handle
10    the Larrabee case and they went through with their motion to
11    dismiss in the Koch case and did not treat it as a master
12    answer in that regard -- as a master answer or as the answer in
13    that particular case.
14             MR. GENDRON:  If your Honor please, we filed the
15    amended master answer to defend Koch after the court denied our
16    motion to dismiss.
17             THE COURT::  Your motion to dismiss preceded filing
18    any answer?
19             MR. GENDRON:  Yes, your Honor.
20             THE COURT:  What about that, Ms. Koch, do you remember
21    that?
22             MS. KOCH:  I apologize, your Honor.  I am asking my
23    colleague.
24             THE COURT:  Okay.
25             MS. KOCH:  I apologize, that is right.

1           THE COURT:  I guess that doesn't count.

2           MR. GENDRON:  If your Honor please, there is one point

3    I would like to add with respect to this notion of the answer

4    to the Koch complaint and the Larrabee complaint.  A theme that

5    came up in the Koch case very early on with respect to the

6    plaintiff's motion to remand was whether that complaint had

7    so-called product liability allegations concerning MTBE and

8    plaintiffs claiming it didn't and the court concluding after a

9    very careful analysis that yes in fact it did.  The complaint

10   in Larrabee is but for the site of the spill and the name of

11   the parties and as such is virtually identical with respect to

12   those substantive allegations.

13          MS. KOCH:  Absolutely not.

14          MR. GENDRON:  Excuse me, to the extent anyone is

15   claiming that the answer to the Koch complaint is somehow the

16   answer to it that is okay, but it's not with respect to

17   Larrabee.  That is an inconsistent position.

18          MS. KOCH:  I have a couple of things to say.  The

19   first thing is that Mr. Gendron's recitation of what happened

20   is not accurate because the difference in the Koch case is

21   plaintiffs had actually in the initial Wagner case filed an

22   actual product liability element in the first complaint and

23   when we filed the second complaint the court said after the

24   first complaint this one sort of smelled of products liability

25   also but there was no actual product liability complaint in the

1    Wagner complaint before it moved to the first complaint that
2    plaintiffs have filed.  We have not made an allegation on
3    products liability at all.  And that issue is not before the
4    court anyway.  That is something that is going to be argued
5    another day.
6            I think that also what Mr. Gendron has to be cognizant
7    of is that the issue we are talking about now is really the
8    issue in terms of class certification.  We are only talking
9    about three plaintiffs' cases.
10           THE COURT:  I don't think anybody is making a Rule 23
11   argument but what I do think is that that is the issue that he
12   would face.  If he decides not to oppose the voluntary
13   dismissal you refile, then he has to evaluate it for removal.
14   That is when he has to decide whether he thinks there is a
15   product liability claim, right?
16           MR. GENDRON:  A product liability or a claim that
17   implicated Section 1503, your Honor.
18           THE COURT:  Fair enough. Maybe that would be the
19   better approach.  We will see where the strategy turns.
20           So I would like you not to burden the court if,
21   indeed, your decision is going to be not to oppose the
22   voluntary dismissal anyway, but since you may decide the other
23   way around I am going to have to look at this answer question.
24   So my clerk does point out if you want to e-mail the materials
25   to him we would be able to I hope handle the printing out here.

1                MR. GENDRON:  May I make a suggestion?

2                THE COURT:  Yes.

3                MR. GENDRON:  It might be helpful and avoid burdening
4     the court.

5                THE COURT:  I like that.  Because of the Energy Policy
6     Act we are starting to get more new cases so I can see this
7     thing growing.

8                That is for Mr. Sacripanti's benefit, that last
9     comment.  The filings are coming.

10               MR. GENDRON:  If your Honor please, as you pointed
11    out, it may very well be that my client decides not to oppose.

12               THE COURT:  Right.  That is what I mean.  That would
13    be great.

14               MR. GENDRON:  And if we might have a few days to
15    confer with our client and come back to the court it wouldn't
16    be necessary for anybody to send anything in to the court for
17    anything to be printed out or reviewed or for any more time of
18    the court be taken up on this issue.

19               THE COURT:  Except maybe there is going to be a
20    lurking problem with the answer questions.  I don't know
21    whether Mr. Sacripanti thinks this is sui generis or whether
22    this could arise a lot and we need to sort out when an answer
23    is an answer.

24               Do you think we need to face that now or if this one
25    goes away we can let it ride?

1             Mr. Sacripanti, what do you think?

2             MR. SACRIPANTI:  I think if this one goes away we can

3     let it ride.  Although, your Honor, I do agree with Mr.

4     Gendron.

5             THE COURT:  I realize you represent the same clients,

6     not surprisingly.  If we think we can let it ride in general,

7     then Mr. Gendron's suggestion is right.

8             Ms. Koch, would there be any problem if we wait until

9     Wednesday and wait to see if he opposes a voluntary dismissal?

10            MS. KOCH:  I don't want to put any more work on your

11    plate certainly, but the problem is it's just more delay.  We

12    are ready to file.

13            THE COURT:  I understand that.  But we do have to give

14    him time to check with his people as to what they want to do.

15    What he shouldn't present to them assuming answers and assuming

16    we have the right to contest to we want to.  There is tactical

17    reasons why they might not want a ruling from the court now.

18    He is saying give me a couple of days.  I suggested Wednesday

19    because I hoped to be out Monday and Tuesday.

20            MR. GENDRON:  I think that should be sufficient time

21    and I appreciate that.

22            MS. KOCH:  I would say since Mr. Gendron raised this

23    issue himself it would have been nice if counsel would have

24    talked to their client.

25            MR. GENDRON:  Your Honor, I had initially attempted on

1   the day we received a notice of dismissal to call Ms. Koch and
2   then when Ms. Koch did not return my call and I spoke to
3   Mr. Cox, Mr. Cox referred me to Ms. Bergman to ask Ms. Bergman
4   to return my call to discuss this, and I didn't hear from
5   anyone.  I then reached out through other means to other people
6   in their office to see if there was a response and no response
7   was forthcoming.  The inability to discuss this regrettably was
8   not on Exxon-Mobil's part.
9            MS. KOCH:  Our position doesn't change.  In talking
10  about the clients I would explain what the position is
11  irrespective, in any event.
12           THE COURT:  I will give them until Wednesday to get
13  back.  Prepare your packets in case he says he wants to oppose.
14  Prepare your packets to show whether or not the answer is an
15  answer.
16           MR. SACRIPANTI:  You know what, your Honor, with the
17  court's permission if we are really saying that these master
18  answers are not, in effect, answers --
19           THE COURT:  Sometimes.  She is saying it in her case
20  anyway, let's go that far.
21           MR. SACRIPANTI:  I hope it's sui generis.  As liaison
22  counsel I probably have an obligation to go back to the group
23  and say this was raised and is this something we want the court
24  to focus on.
25           THE COURT:  Right.

73USMTBE

1         MR. SACRIPANTI:  So maybe if you would allow me as
2    well until next Wednesday.
3         THE COURT:  Okay.
4         MR. SACRIPANTI:  To come back and say we would like
5    this adjudicated.
6         THE COURT:  Well, that is a little bit of tactics too.
7    You have to work with Mr. Gendron and if it's not ripe for this
8    case I am not going to do it in the abstract either.
9         In any event, should we have a telephone conference on
10   Wednesday?
11        I don't know what my schedule is.  Hold on.
12        How about 3:30 for a telephone conference?
13        MR. GENDRON:  Wednesday the 4th, your Honor?
14        THE COURT:  Yes.  Is that okay?
15        MS. KOCH:  One second.  That is fine.
16        THE COURT:  A 3:30 telephone conference.  Stay in
17   touch with my clerk as to how to set it up.
18        MS. KOCH:  We will just set it up again, your Honor.
19        THE COURT:  Let him know what we have to do.
20        Thank you.
21        MR. GENDRON:  Thank you, your Honor.
22
23
24                            - - -
25