```
071AAMTBC                      Conference
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  MTBE,

                                00 CV 1898 (SAS)

------------------------------x
                                            New York, N.Y.
                                            July 1, 2010
                                            5:30 p.m.

Before:

              HON. SHIRA A. SCHEINDLIN,

                                            District Judge

                        APPEARANCES

LEONARD KAUFMAN
     Attorney for Plaintiff

MCDERMOTT WILL & EMERY, LLP
     Attorneys for DEFENDANT
BY:  MCDERMOTT WILL & EMERY, LLP

1                  (Case called)

2                  THE COURT:  The court reporter has just joined us.  I
3      am going to summarize for the record what has happened so far
4      in this conference.

5                  I reviewed the plaintiff's letter of June 28th, 2010,
6      lodging on objection to Special Master Warner's ruling, the
7      defense letter in opposition dated June 7th and the plaintiff's
8      reply letter dated July 1st.

9                  Based on all that I've read I am concerned about
10     removing state records against the policy of the state which is
11     to maintain original records on site.  I respect the notion
12     that chain of custody is always going to be an issue.  I think
13     that Special Master Warner tried very hard to take care of that
14     by suggesting that a special security guard or employee of the
15     DEP followed the documents so that person could testify that
16     they were always in DEP custody.  But now I understand more
17     fully how difficult that would be because the scanning of the
18     documents has been scheduled on a 24 hour, seven day basis and
19     there's nobody from the department who could do that.  No
20     employee could do that.  The department's closest office would
21     be Trenton and they just don't have the manpower or budget to
22     put somebody in Manhattan on that schedule.

23                 So having thought that over, I said earlier in this
24     conference that, well, then the vendor should go to the state
25     and whatever it takes the state will have to accommodate the

1  vendor 24 hours, seven days a week.  If that means they have to
2  keep their security personnel at that location around the clock
3  and Saturday and Sunday, so be it, until the scanning is done.
4          I was informed by the parties that the rate of
5  scanning is three times faster off-site than on-site.  To keep
6  the pace going I also said that the vendor will have to bring
7  in as many scanners as it takes to close that gap.  So if they
8  were doing 15 boxes a day with the current scan then we need to
9  move that up to 50 boxes a day.  Then they'll just have to
10 bring in that many more personnel into the state's location and
11 that may mean more scanning machines even though I understand
12 these are more portable machines are smaller.  They're not as
13 efficient as the bigger machines.  It is not unfortunate and I
14 know it is going to be expensive but it really is the only way
15 to keep the pace going and the pace has to be kept because we
16 need to move this litigation along.  It's, certainly, the
17 plaintiff's benefit and the defendant's benefit too.  So all
18 scanning is being done so that there can be site selection by
19 the appropriate dates, both discovery sites and trial sites.
20          So all of that said, before the court reporter arrived
21 Mr. Kaufmann, counsel for plaintiff, said he would just tell
22 his client it has to be done even though the client will not be
23 happy.  You'd have to keep the security personnel in place 24/7
24 and the defendants are not happy to have to have their vendor
25 bring in all this additional machinery, but while nobody is

1  particularly happy with this ruling, I think it preserves

2  everybody's rights.  It does preserve the plaintiff's need to

3  keep the documents on-site about which the state feels very

4  strongly.  But it also keeps the defendants capable of getting

5  a huge mass of documents scanned in a quick fashion.

6          So, that's my Solomonic ruling here.  I think that's

7  where we were up to pretty much.

8          Oh, I know, just when the court report came

9  Mr. Kaufmann accused the defendants of having been tardy in

10 their requests but then Mr. Riccardulli for the defense

11 informed me that that issue was already raised before Special

12 Master Warner and that his ruling was that there was no

13 tardiness.  So, I'm not going to revisit that.  I don't think

14 it's part of the appeal.  I think the appeal was really only

15 the problem ordering that the original documents be taken

16 off-site and so I've modified his order to the extent of

17 requiring that it be done on-site but be done 24/7 at the

18 defendant's expense.

19         Okay.  Now all of that is on the record.  Is there

20 anything else either of you need to add?

21         MR. RICCARDULLI:  We right before the court reporter

22 we also discussed the issue against plaintiff's privilege

23 review.

24         THE COURT:  We did.  But Mr. Kaufmann said he was, I

25 thought, 99.9 percent finished with the review and -- maybe he

1    didn't say that.  Maybe he said you were 99.5 percent on the
2    way to agreeing on a claw back agreement.
3             MR. KAUFMANN:  Yes, your Honor.  And in terms of a
4    privilege review it is my understanding of that review as not
5    part of the progress of the production of documents and if we
6    have to get boxes there, we will get the boxes there for the
7    next conference.
8             THE COURT:  Okay.
9             MR. RICCARDULLI:  That's the point I was actually
10   going to make was that the speed of the review, we have had a
11   review team in place and today we had four lawyers in addition
12   to the scan team that's on-site and the report I received just
13   a short while ago was that our review team sat for five hours
14   today idle without any boxes to review.  So this front end
15   privilege review is slowing down the production.  So our review
16   time literally sat there for five hours while we've got them
17   on-site.
18            THE COURT:  That's not a good thing, Mr. Kaufmann.
19   That means that four or five lawyers were billing "X" amount of
20   hours to do nothing.  That is an unfair expense.
21            MR. KAUFMANN:  All can I say, your Honor, is that that
22   information is news to me.  I get reports everyday and none of
23   my reports that I get indicate that defendants had nothing to
24   do.
25            THE COURT:  That is today's report.

071AAMTBC                     Conference

1            MR. KAUFMANN:  Okay.  I will check that out and --
2            THE COURT:  So, I suggest, Mr. Riccardulli, you keep
3    the lawyers from going in needlessly until they are at least
4    enough ahead of you to make sure timely -- so if they don't get
5    to work until July 4th, so be it.
6            MR. RICCARDULLI:  Understand stood, your Honor.
7            THE COURT:  Let them start catching up again on July
8    5th.
9            MR. RICCARDULLI:  Understood.  We will --
10           THE COURT:  You'll have to work with Mr. Kaufmann.
11           MR. KAUFMANN:  In fact, Steve, you and I should
12   probably talk when the judge is finished with us.
13           THE COURT:  Correct.  I am finished.  And if you need
14   to order this record and I think you might, Mr. Kaufmann, to
15   show your client that's now available.  It will be available.
16   It is very short.  Okay.
17           MR. KAUFMANN:  Okay.
18           THE COURT:  I'm going on to the next telephone
19   conference.  Have a good weekend.
20                            (Adjourned)