```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  METHYL TERTIARY BUTYL            00 MDL 1358
ETHER ("MTBE") PRODUCTS                  Master File C.A.
LIABILITY LITIGATION                     No. 1:00-1898 (SAS)

------------------------------x

CARL MORGAN, et al.,

            Plaintiffs,

       v.                                05 CV 10259 (SAS)

EXXON MOBIL,

            Defendant.

------------------------------x
                                         New York, N.Y.
                                         April 13, 2011
                                         3:00 p.m.


Before:

                  HON. SHIRA A. SCHEINDLIN

                                         District Judge


                        APPEARANCES
                     (via speakerphone)

NOLAN, PLUMHOFF & WILLIAMS, LTD.
     Attorneys for Plaintiff
BY:  ROBERT L. HANLEY, JR., ESQ.

VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P.
     Attorneys for Defendant
BY:  ANDREW GENDRON, ESQ.
```

1             (In chambers)
2             THE COURT:  Hello?
3             MR. HANLEY:  Good afternoon, your Honor.
4             THE COURT:  Is this Mr. Hanley?
5             MR. HANLEY:  Yes, it is, your Honor.
6             THE COURT:  All right.  And Mr. Gendron?
7             MR. GENDRON:  Yes, your Honor.  Good afternoon.
8             THE COURT:  Good afternoon.  And I have a court
9    reporter here, so you're on the record.
10            I received a letter from Mr. Hanley dated April 7, and
11   he says in the letter that this is a joint request between the
12   plaintiff and the defendant, Exxon Mobile, to remand this case
13   to Maryland, and the reason why is, this involves 15 properties
14   and 17 plaintiffs, all who maintain private domestic wells.
15   There are no allegations of contamination of any community well
16   or a well utilized to provide water for municipalities.  So the
17   discovery is all local.  And the depositions and expert reports
18   are going to be unique to this specific location.  And Exxon
19   has already produced documents.  And plaintiff's counsel has
20   not participated in the MDL discovery.  And so that's it.
21            Now, the problem is that I don't know how the case got
22   to the MDL in the first place.  Was it filed -- it was probably
23   filed in the U.S. District Court in Maryland.  Because that's
24   where you want to remand it to.  And what happened then?
25            MR. HANLEY:  Well, it was initially filed in the state

1    court, your Honor.
2            THE COURT:  OK.
3            MR. HANLEY:  It was removed to federal district court
4    in Maryland.
5            THE COURT:  By the way, is this Mr. Hanley speaking?
6            MR. HANLEY:  Yes, I'm sorry.  It is.
7            THE COURT:  OK.  Go ahead.  So then it was removed to
8    the federal --
9            MR. HANLEY:  After the removal, it was -- they filed a
10   motion.  It's a tag-along.
11           THE COURT:  Wait a minute, wait, Mr. Hanley, "they"
12   filed a motion.  Who's "they"?
13           MR. HANLEY:  Exxon, the tag-along action.
14           THE COURT:  They filled that motion with the MDL
15   panel?
16           MR. HANLEY:  Correct.
17           THE COURT:  OK.  Go ahead.
18           MR. HANLEY:  And then, you know, we opposed the
19   conditional transfer order.
20           THE COURT:  Right.
21           MR. HANLEY:  And the MDL denied our opposition or
22   rejected our opposition.  And then we were in the MDL.  And
23   then for a period of time your Honor had stayed all cases
24   except the four focus cases at that time.
25           THE COURT:  Right.  Then long ago I lifted that stay.

1           MR. HANLEY:  Yes.  It was a long time ago.  You know,
2    in essence, most of the discovery that was going on up there
3    really didn't pertain to our case.  In addition, there had been
4    another case that had been up before your Honor, another
5    Maryland case.
6           THE COURT:  Right.
7           MR. HANLEY:  It went back to the state court in
8    Maryland.
9           THE COURT:  That's right.  Because there was no more
10   federal jurisdiction.
11          MR. HANLEY:  It has since been tried.  We're appealing
12   now.
13          THE COURT:  Great.
14          MR. GENDRON:  Excuse me, Mr. Hanley.  That is not
15   correct that it is appealing in Maryland.
16          Pardon me, your Honor.
17          THE COURT:  That's OK.
18          MR. HANLEY:  There was another case, again, that,
19   after the decision came out about federal jurisdiction, this
20   was also handed back.  And that is the subject of a class
21   action lawsuit that has not been tried in Maryland yet.
22          THE COURT:  Right.
23          MR. HANLEY:  So that case, the class action case,
24   involves the same station which my clients are running.
25   There's a ton of discovery going on in Maryland, you know,

1    about -- additionally, the Maryland environmental authorities
2    have been involved with that station.  So there is a wealth of
3    documents and discovery that had been obtained from MDE in
4    terms of documents.
5              THE COURT:  Right.  I guess my only hesitation,
6    because I know this is a joint request, is essentially, it
7    sounds a little bit like an end run around the MDL panel.
8    Because when you opposed the transfer, you must have made many
9    similar arguments.  And the panel said, no, we reject your
10   argument, this goes to the MDL.
11             Now, I would understand if you wrote, both wrote
12   together and said, we've completed all the discovery so it
13   should be remanded to the transferor court for trial.
14   Otherwise I'm not really supposed to remand things that the
15   panel has sent to me until discovery is complete and they're
16   ready to go to trial.  You can't say that yet, though, right?
17   You can't say that your discovery is complete.
18             MR. HANLEY:  Yes.  We have not taken the depositions
19   in the case.  That's correct.
20             THE COURT:  Right.  So since the MDL panel transferred
21   it, having overruled your objections, shouldn't you just get
22   your discovery done, and then when you can jointly represent to
23   this Court that the pretrial phase is over and it's ready to be
24   tried and should be remanded to the transferor case.  Then,
25   like every other case, I would remand it.

1            In other words, I'm reluctant to overrule the MDL
2    panel, which is really what you're both asking me to do,
3    because they chose to transfer it here for all pretrial
4    proceedings.  Now, if you want to dismiss it in favor of the
5    class action, that's up to you.  But I assume you don't.
6            MR. HANLEY:  No.
7            THE COURT:  No.  So why don't you just get the
8    discovery finished.  What does it matter which court you're in
9    to do such things as notice depositions and take them and
10   finish up and get ready for trial?
11           MR. HANLEY:  Well, it's certainly, you know, we could
12   do it that way.
13           THE COURT:  Well, you could, because that's the way I
14   think I should be handling it, once they determine to transfer
15   it.  If you have been successful in your opposition to
16   tag-along transfer, that's fine.  I wouldn't have cared at all
17   if it remained in Maryland.  But once the panel rejected your
18   objections and sent it here, I guess I feel it's my obligation
19   to see it through to pretrial phase and then remand.
20           And, you know, this has come up in other cases where,
21   after the discovery is finished in a local case, there's been a
22   question, for example, on summary judgment, which court should
23   hear the summary judgment.  That just came up in the Orange
24   County Water District case.  And it turns there on whether the
25   issue in the summary judgment is entirely local and won't

1  affect any of the other, you know, hundred cases in the MDL or
2  whether it raises an issue that's common.  And that's one
3  reason to complete discovery here, so that the rulings can be
4  consistent, both with respect to discovery of Exxon
5  materials -- Exxon is obviously here all the time -- and then
6  to make sure that some of the issues that are raised in summary
7  judgment are not common issues throughout the MDL but are,
8  rather, local issues in Maryland.
9           So it seems premature.  Even though I understand you
10 both agree and I usually try to respect that, it still seems to
11 me to be an end run around the MDL decision.
12          So I would say, if you want to separately propose a
13 discovery schedule that wraps up your discovery quickly and
14 tees it up for either a motion or a remand for trial, I'm happy
15 to accommodate you, but not by just going along with your
16 letter.
17          MR. HANLEY:  I guess the only purpose of my letter
18 was, it seemed that my case was unique in terms of, you know,
19 just being individuals.
20          THE COURT:  No.  I perfect -- no, you don't
21 understand.  If I were hearing this application in the first
22 instance, so to speak, I might have chosen to remand.  But you
23 made those arguments to the MDL when you opposed transfer.  And
24 they rejected them.  You must have said then, my case is
25 unique, it's private wells, it's local.

1        MR. HANLEY:  I did.  In fact, I pulled arguments out
2    of my opposition that sort of made their way into my letter to
3    your Honor.
4        THE COURT:  Right.  Exactly.  And so I'm not being at
5    all disrespectful.  I would have liked to have gone along.  But
6    I was troubled by the fact that the MDL said, no, no, send this
7    to the same judge and let her supervise the pretrial work and
8    remand it for trial.  That's the way the statute envisions it
9    under 1407 or -- is it -- but in any event, the MDL statute.
10       So I don't feel right sending it back until you're
11   ready for trial.  I may send it back for the dispositive
12   motions, if there are any, once they are outlined to me and I
13   see if they raise common issues that affect the entire MDL or
14   whether they're really completely local, like whether some well
15   is downgradient of another well or that kind of thing.  That
16   goes back to Maryland.
17       So I can't tell you.  So why don't you propose with
18   each other a discovery schedule that sees you through
19   discovery, and the quicker you're done, the quicker you're out
20   of here, and you'll be happy.
21       MR. HANLEY:  Very well.  I will have that discussion
22   with Mr. Gendron, your Honor.
23       THE COURT:  Excellent.  Well, he's here all time, so I
24   know he'll be accommodating and work with you.  Right,
25   Mr. Gendron?

14DAMORCps

1   MR. GENDRON:  Of course, your Honor.
2   THE COURT:  OK.  So the two of you work quickly to get
3 together a discovery schedule.  Why don't you submit it as a
4 proposed order.  I'll so-order it.  Offer you go.  Finish up
5 your discovery, see if there's motion practice or not, and
6 we'll try to get this back to Maryland as fast as possible.
7   And if either of you want a record, I do have a record
8 of this, OK?
9   MR. HANLEY:  Thanks, your Honor.
10  THE COURT:  Thank you.  I'm sorry.  Bye-bye.
11                              o0o
12
13
14
15
16
17
18
19
20
21
22
23
24
25