```
 1   Fc9dmtbc                       Speakerphone Conference

 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   ------------------------------x

 4                                              00 MDL 1358
     IN RE:  METHYL TERTIARY BUTYL              00-cv-01898 (SAS)
 5   ETHER ("MTBE") PRODUCTS                    04-cv-04968 (SAS)
     LIABILITY LITIGATION                       07-cv-10470 (SAS)
 6                                              14-cv-06228 (SAS)

 7   ------------------------------x

 8                                              December 9, 2015
                                                4:31 p.m.
 9
     Before:
10
                      HON. SHIRA A. SCHEINDLIN,
11
                                         District Judge
12
                       APPEARANCES VIA SPEAKERPHONE
13

14   JACKSON GILMOUR & DOBBS, PC
          Attorneys for Plaintiffs
15   BY:  JOHN D.S. GILMOUR

16   MCDERMOTT, WILL & EMERY, LLP
          Attorneys for Defendant Exxon Mobil Corporation
17   BY:  JAMES PARDO
          LISA A. GERSON
18
     SUTHERLAND ASBILL & BRENNAN LLP
19        Attorneys for Defendant Vitol
     BY:  MEGHANA D. SHAH
20
     THOMPSON & KNIGHT,LLP
21        Attorneys for Defendant Petrobras America, Inc.
     BY:  JAMES B. HARRIS
22

23

24

25
```

```
1                 (In chambers; speakerphone call connected)
2                 THE COURT:  Good afternoon.
3                 Mr. Gilmour.
4                 MR. GILMOUR:  Good afternoon, your Honor.
5                 THE COURT:  Good afternoon, Mr. Pardo.
6                 MR. PARDO:  Good afternoon, your Honor.
7                 THE COURT:  And is Ms. Gerson on the phone also?
8                 MS. GERSON:  I am, your Honor.  Good afternoon.
9                 THE COURT:  Is anybody else on the call?
10                No.
11                MR. HARRIS:  Your Honor, this is Jim Harris, with
12      Thompson & Knight, on behalf of Petrobras.  I do not intend to
13      participate but would like to be able to listen in.
14                THE COURT:  What is your last name again?
15                MR. HARRIS:  Harris, H-a-r-r-i-s.
16                THE COURT:  Oh, OK.  Yes.
17                MS. SHAH:  And, your Honor, this is Meghana Shah from
18      Sutherland.  I represent Vitol.  I also just want to listen in.
19                THE COURT:  You represent who?
20                MS. SHAH:  The Vitol defendant.
21                THE COURT:  OK.  All right.  In any event, the reason
22      I called this telephone conference is because of a pending
23      motion for reconsideration of this Court's October 1, 2015
24      decision denying summary judgment for the defendants on the
25      statute of limitations grounds, in particular the SOC 0242
```

1   trial site.  The defendants say that I applied the law
2   incorrectly because there was this report that indicated the
3   presence of MTBE, and the Commonwealth raised a disputed issue
4   of fact by saying, yes, we got the report but, no, it didn't
5   really indicate in the body of the report that MTBE was
6   present, so we were not aware as of the date of the report of
7   the presence of MTBE at that site.  You know, if we had been,
8   we would have been time barred because those reports were
9   received in October -- I'm sorry, in 2004 and October 2005,
10  respectively, and any knowledge before June 12, '06 would make
11  the claim time barred.
12          But in reviewing the briefs on reconsideration, I am
13  no longer confident that merely raising an issue of fact as to
14  whether the report put the Commonwealth on notice is enough.  I
15  think that is a disputed issue of fact.  Yes, the report was
16  received, but whether or not it provided notice is a fact
17  question.
18          But the law seems to be that the Commonwealth would
19  have to not only prove a lack of knowledge but has to show the
20  date when it did become aware of the damage, and that's in a
21  couple of the cases that were cited in the briefs -- _Rivera_, a
22  1982 District of Puerto Rico case, and _Davis Davis v. Colon
23  Rivera_, another case, not the district court, but in any event,
24  another Puerto Rico case.
25          So the question is whether the Commonwealth can

1  proffer the date when it did become aware of the damage,
2  because in its responsive papers on the summary judgment motion
3  it didn't.  It just contested that the reports put it on notice
4  but it didn't offer the date on which it learned.  And even in
5  the reconsideration briefing it still relies on the fact that
6  the Court found that that was a disputed issue of fact that
7  would require that the summary judgment motion be denied.  But
8  now I think that they have to come up and tell me what is the
9  date on which the Commonwealth claims it did become aware.  And
10 I would allow a supplemental submission on that point if the
11 Commonwealth had the dating, can show how it has the date.
12          So, Mr. Gilmour, the call is really directed at you.
13          MR. GILMOUR:  Yes, your Honor.  And to be clear, for
14 the purposes of the record, the Commonwealth -- and I believe
15 we have to send in our response in opposition to the motion for
16 reconsideration -- disagrees necessarily that the case law
17 requires us to provide a date in this instance, but I
18 understand that is not the question you have pending with me
19 now.  So if you will allow us argument on that --
20          THE COURT:  It is not a matter of argument.  The
21 defendants have provided Puerto Rican cases that say the
22 Commonwealth has to not only prove a lack of knowledge but has
23 to affirmatively -- and I quote from the Rivera decision --
24 "show the date when it became aware of the damage."  So it's
25 not a matter of an argument; you need to submit a fact-type

1  affidavit from somebody to say this is when we learned.  I
2  mean, you know, you brought suit so you had to have learned at
3  some point, so the question is when and how did you learn.
4           It is not a matter of supplementing your argument.  I
5  don't want further argument as to what the law requires.  I
6  have had that basically twice now.  I had it in the summary
7  judgment motion and I have it on the reconsideration.  I can
8  decide for myself what the law requires.  I want to know if you
9  can proffer that date.
10          MR. GILMOUR:  Yes, your Honor, and I will momentarily.
11          I would also say that those cases provide after the
12 defendant identifies the date, if the plaintiff disagrees with
13 that date, it is typically on issues of latent damages where
14 they admit now we will have the date of the surgery but the
15 damage does not become aware until later --
16          THE COURT:  OK.  But our case here is the defendants
17 do say you knew when we sent that report, or those reports, in
18 '04 and '05.  You've contested that and say those reports did
19 not put us on notice, and I ruled in your favor and I said
20 that's a disputed issue of fact that those reports put you on
21 notice.  But I now think you have to go further than that and
22 say we didn't know then because we want you to agree with us
23 that either that is a disputed issue of fact or you should just
24 accept that you didn't put us on notice but here's when did
25 learn it, and I am looking for that other half.

1           MR. GILMOUR:  Yes, your Honor, and I will give you
2    that date now.
3           And just because of the nature of how it was derived,
4    I state that the Commonwealth would respond without waiving any
5    privileges or protections, including the attorney-client
6    privilege and the work product doctrine, and that date is
7    August 26, 2011.
8           THE COURT:  Yes.  It is not enough I think to give me
9    the date.  What happened on August 26, 2011 that puts the
10   Commonwealth on notice?
11          MR. GILMOUR:  Yes, your Honor.  Again, without waiving
12   any privileges, a nontestifying consulting expert provided the
13   Commonwealth with materials identifying the presence of MTBE at
14   that site, at the SOC 42 site.
15          THE COURT:  OK.  Can you put the representation you
16   just made -- although it is on the record, I do have a court
17   reporter here -- in an affidavit format?
18          MR. GILMOUR:  I can, your Honor.
19          THE COURT:  OK.  Would you submit that promptly?
20          MR. GILMOUR:  I will, your Honor.
21          THE COURT:  OK.
22          MR. GILMOUR:  I will do it as quickly as possible.
23          THE COURT:  OK.  Now, Mr. Pardo or Ms. Gerson, do you
24   want to add anything?
25          MR. PARDO:  Your Honor, it's Jim Pardo.  Good

1   afternoon and thank you.

2       I would, if I could, just for a few moments.

3       THE COURT: Mm-hmm.

4       MR. PARDO: I understand that you are allowing

5   plaintiffs to supplement the record in this instance, and I

6   appreciate that. I think that is a courtesy and that you've

7   shown them to us in the past. I would just like to know for

8   the record -- I always hate to do this, but our client does

9   object to that because we believe that the standard, the legal

10   standard, the legal burden of proof that plaintiff has to meet,

11   including the cases that are cited in our brief and that you

12   have referred to, were known or should have been known to the

13   plaintiff, and they should have come forward with this date

14   beforehand. It should have been part of the four corners of

15   the briefing or the Rule 56.1 statements that were submitted by

16   them on this motion. They didn't do that and for that reason I

17   think they failed to meet their burden of proof here, and on

18   that grounds alone I think we're entitled to summary judgment.

19       THE COURT: Right. I understand your point, but the

20   way I look at it is because of your motion to reconsider, in

21   fact, the ruling is not a final ruling and it's subject to

22   change under Rule 60. The Court really has the right to

23   correct it at any time before final judgment.

24       So the bottom line is that having now accepted, so to

25   speak, your interpretation of the case law, I feel that it is

1    fair to expand the record in order to justly decide the motion.
2    It was decided, of course, in plaintiff's favor in the first
3    place, but it's reopened by virtue of your motion for
4    reconsideration, which kept it from being final anyway, and at
5    this point I think it is fair to expand the record or to allow
6    the record to be supplemented.  So I take your point but this
7    is where I come out.  So --
8            MS. GERSON:  Your Honor.
9            THE COURT:  Yes, Ms. Gerson.
10           MS. GERSON:  Yes.  Would the defendants have an
11   opportunity to respond --
12           THE COURT:  I don't think it requires a response.  I
13   mean, they are just going to put in a fact affidavit that says
14   this is when we learned, this is how we learned.  There is
15   really not much more to say.
16           MS. GERSON:  So, your Honor, if I could just say that
17   I believe that they -- Mr. Gilmour gave us August 2011.
18           THE COURT:  Yes, August 26th.
19           MS. GERSON:  But this site was already selected by
20   plaintiffs as a focus site in March 2011.  Again, it is also
21   four years after the complaint was filed.  So I think
22   defendants may have information after seeing the declaration
23   that would be relevant.
24           MR. PARDO:  I would add, your Honor -- Jim Pardo --
25   that the site was on a site list that plaintiffs provided to

1  us -- I don't have the exact date but it was in 2010.  So they
2  had to have known.
3             THE COURT:  Yeah, that is odd, come to think about it.
4             Mr. Gilmour, that is odd.  I thought you were going to
5  select any date after June 12, '06 so it would be timely.  But
6  realizing the date you have stated, that is odd because you
7  named this site much earlier and in fact selected it as a focus
8  site.  So now I am confused.
9             MR. GILMOUR:  Yes, your Honor.  You may recall that
10 this case was filed in 2007 originally as an island-wide case
11 without identifying sites.
12            THE COURT:  Right.
13            MR. GILMOUR:  Thereafter --
14            THE COURT:  But when was it selected as the focus
15 site?
16            MR. GILMOUR:  I'm sorry, your Honor.
17            THE COURT:  When was it selected as a focus site?
18            MR. GILMOUR:  I'll explain, your Honor.
19            We developed a list of sites that was overinclusive in
20 2010, as Mr. Pardo just stated.  We then, based upon certain
21 information, reduced that down to focus sites, which, as
22 Ms. Gerson identified, was March 1, 2011.  We continued to
23 revise and analyze those sites to determine which would be the
24 best sites and develop further evidence on this to identify the
25 trial sites, which happened much later, and that's how we

1    related to the SOC 0242 site.  We made our final determination
2    and identified MTBE as a contaminant there on August 26,
3    2011 --
4              THE COURT:  You mean up to that time, with this
5    so-called overinclusive list, you didn't know whether it even
6    had MTBE or not, you just knew it was a Hess station site in
7    Puerto Rico?
8              MR. GILMOUR:  We knew that it was a gas station site
9    that was on the LUST list and that there was BTEX
10   contamination.
11             THE COURT:  I see.  On the what list?  I missed the
12   word.
13             MR. GILMOUR:  The LUST, the leaking underground
14   storage tank, your Honor.
15             THE COURT:  OK.  The LUST list and it had BTEX at the
16   site?
17             MR. GILMOUR:  Yes, your Honor.
18             THE COURT:  I see.  OK.  But it is going to be your
19   statement that you didn't know of the MTBE contamination until
20   2011.
21             All right.  Look, I think let's just get back to
22   Ms. Gerson.  I mean, you can put in something but it's going to
23   be argument, I think, not fact-based since now both sides have
24   explained the history of these dates, but I won't stop you from
25   responding.  I think it's not a useful effort, but if that's

1   what you want to do to complete the record, I won't stop you.

2              So when are you going to have yours in, Mr. Gilmour?

3              MR. GILMOUR:  Your Honor, I need to contact the client

4   again, and right now I am in Washington, D.C.  I will be

5   returning to the office tomorrow.  If I could have until early

6   next week, I would appreciate it?

7              THE COURT:  Let's make it, please, the close of

8   business on Tuesday, the 15th, please.

9              MR. GILMOUR:  Yes, your Honor.

10             THE COURT:  And, Ms. Gerson, if you really think that

11  some kind of a response could be helpful to the Court, I assume

12  you can have it by Friday, the 18th.

13             MS. GERSON:  Yes, your Honor.

14             THE COURT:  All right.  OK.

15             MR. GILMOUR:  Your Honor -- this is Mr. Gilmour -- may

16  I raise one more issue that I think the Court should be aware

17  of?

18             THE COURT:  Yes.

19             MR. GILMOUR:  In reviewing Esso's responses to

20  interrogatories in preparation for this hearing, in response to

21  interrogatory number 15, the Commonwealth requested the date

22  that MTBE was first detected in soil and groundwater at the

23  Esso 242 site.  Esso responded that they objected, and I quote,

24  to the reliability of chromatograms to determine a detection

25  and/or level of an analyte such as MTBE when MTBE was not a

1  specifically targeted chemical for the purpose of these prior
2  analyses.
3          THE COURT:  I understand.  I'm really not interested
4  any longer in the reports of 2004 and 2005 for the purpose of
5  deciding this motion to reconsider because I've already held --
6  and I have no need to change that holding -- that it raises a
7  disputed issue of fact.
8          MR. GILMOUR:  Yes, your Honor.
9          THE COURT:  Right.  You say it didn't put you on
10 notice, they say it did; that is already a fact dispute.  I
11 wouldn't grant them summary judgment or there is no inverse to
12 that.  I wouldn't grant them summary judgment on that argument.
13         The better argument now is that that's not enough.
14 You have to show when you did know.  I'm allowing the
15 supplementing of the record.  They object to my allowing it at
16 this time.  I've explained why I'm allowing it, and that's
17 where we are at this point in time.  So your statement, again,
18 is preserved because there is a record being made today, but it
19 doesn't -- I don't need to go into that further.
20         MR. GILMOUR:  Yes, your Honor.
21         MR. PARDO:  Your Honor, it is Jim Pardo.  I'm sorry to
22 keep you on the phone.  But just so I understand, the affidavit
23 that we will be getting will not just state the date but will
24 explain, understanding there are privilege issues and
25 whatnot --

| | |
|---|---|
| 1 | THE COURT:  Yes, the source of the information, right. |
| 2 | Yes, which he disclosed on this call.  A nontestifying expert |
| 3 | learned the information through I don't know what, testing or |
| 4 | records or both, and produced it to the Commonwealth, but |
| 5 | you'll hear it in writing.  That's what he said. |
| 6 | MR. PARDO:  OK.  Thank you. |
| 7 | THE COURT:  OK.  Thank you, folks.  Bye-bye. |
| 8 | MR. GILMOUR:  Thank you, your Honor. |
| 9 | (Call disconnected) |
| 10 | |
| 11 | - - - |