# McDermott Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

BY HAND DELIVERY AND ELECTRONIC MAIL                    February 11, 2016

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

Re:   Master File C.A. No. 1:00-1898 (SAS) MDL No. 1358 - Defendants' Reply Letter

Dear Judge Scheindlin:

Defendants respectfully submit this reply letter in advance of the February conference.[1]

## JOINT AGENDA ITEM

I.   *Commonwealth of Puerto Rico I*: **Suggestion of Partial Remand**

Defendants responded with comments to Plaintiffs' draft suggestion of partial remand on February 10 and will be prepared to provide the Court with an update on the parties' discussions.

## PLAINTIFFS' AGENDA ITEMS

I.   *Commonwealth of Pennsylvania*: **CMO 119 Release Site Lists**

CMO 119 § III.A required that by December 31, Defendants "identify every 'release site' (by name, address and, *if applicable*, site identification number) where that Defendant's records and/or the records of its environmental consultant in Defendant's possession, report, indicate or show a release of MTBE or a detection of MTBE." On January 5, Plaintiff requested that Defendants re-produce their site lists in native format and update their lists to include PADEP's internal Facility ID numbers.[2] The parties' subsequent meet-and-confers focused on clarifying

---

[1] Defendants request a short extension of the page limit to respond to Plaintiff's 6-page letter.

[2] Plaintiff's suggestion that Defendants already were obligated by CMO 119 to provide PADEP internal numbers is incorrect and belied by the subsequent request that Defendants voluntarily agree to do so. As cited above, the CMO required Defendant to provide a site identification number only "if applicable." Furthermore, the term was not defined, and many Defendants reasonably responded to the CMO by providing their own internal station ID number.

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue New York New York 10173-1922 Telephone: +1 212 547 5400 Facsimile: +1 212 547 5444 www.mwe.com

The Honorable Shira A. Scheindlin
February 11, 2016
Page 2

the PADEP ID numbers Plaintiff proposed to use and any limitations to the use of those numbers. *See L. Gerson Jan. 7 & Feb. 2, 2016 Emails to T. O'Reilly* (at Ex. A-B, respectively).

The parties' current positions are not far apart. There is agreement to exchange lists in native format, and Defendants have agreed to update their lists to include PADEP's "Primary Facility" number and/or "Facility ID" number to the extent such information is contained in Defendants' records (or records of their environmental consultants in Defendant's possession). Plaintiff, however, asks Defendants to go further still – *i.e.* to look at the opposing side's records to respond to discovery. *See Pls.' Preconf. Ltr.*, at 2 (suggesting Defendants look to PADEP's website and Plaintiff's production in this litigation). Plaintiff's proposal goes beyond what is required by the FRCP and CMO 119. *See* CMO 119 § III.A (requiring Defendants to look at "Defendant's records and/or the records of its environmental consultant in Defendant's possession"). Therefore, Defendants request that the Court approve Defendants' proposal, as outlined in the February 2 email to Ms. O'Reilly, with a due date of February 19. *See* Ex. B.

**II.   *Commonwealth of Pennsylvania*: Lukoil America Corp. Privilege Assertion**

Plaintiff seeks disclosure of "communications involving an [in-house] attorney who represented both LAC and its (former) wholly owned subsidiary Getty Petroleum Marketing Inc. (GPMI)," arguing that the common interest privilege does not apply and in any event has been waived. *Pls.' Preconf. Ltr.*, at 2, 3-4. Plaintiff, however, overlooks the distinction between the *common interest* privilege and the *co- or joint-client* privilege. The co- or joint-client privilege applies when two or more entities consult the same counsel on the same matter; by contrast, the common interest privilege applies when separately represented entities have a common interest. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362-65 (3d Cir. 2007). "When co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes. Hence the privilege protects those communications from compelled disclosure to persons outside the joint representation. Moreover, waiving the joint-client privilege requires the consent of all joint clients." *Id.* at 363 (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75(2)). Conversely, if co-clients later find themselves on opposite sides in litigation, all communications made during the joint representation are discoverable by each party, but remain protected from disclosure to the outside world in the absence of waiver by all co-clients. *Id.* at 366.

Thus, in the GPMI bankruptcy litigation, the Trustee, who stepped into GPMI's shoes, could discover the communications of LAC's and GPMI's attorneys, but those communications remained confidential as to the rest of the world. The Trustee's receipt of attorney communications to which GPMI was entitled as a co-client did not waive the privilege. Nor is LAC's assertion of the co-client privilege inconsistent with LAC's and GPMI's corporate separateness. "[P]arent companies often centralize the provision of legal services to the entire corporate group in one in-house legal department," and the resulting "intra-group sharing does not implicate the disclosure rule." *Id.* at 369. By treating the "members of the corporate family [as] joint clients," the courts respect "both the separateness of each entity and the reality that they are all represented by the same in-house counsel." *Id.* at 372.

The Honorable Shira A. Scheindlin
February 11, 2016
Page 3

Plaintiff asserts the crime-fraud exception (*Pls.' Preconf. Ltr.*, at 4), but it has done nothing to satisfy the showing required to trigger its application, notwithstanding the repeated assertion that LAC drove GPMI into bankruptcy. That assertion ignores critical facts, particularly the actual cause of GPMI's declaration of bankruptcy—an adverse arbitration award of $230 million. In any event, there is no valid reason to permit disclosure of privileged communications about a wholly collateral matter. Plaintiff recently admitted that the alleged fraudulent transfer in 2009 is only relevant, if at all, to evaluating the extent to which LAC controlled GPMI. *See Opp. to LAC Mot. to Dismiss* (Feb. 5, 2016), Dkt. #4372. Whether LAC exercised control over GPMI's assets in 2009 is irrelevant to whether LAC controlled GPMI's operating decisions during the period in which MTBE gasoline was sold. Indeed, whether attorney-client communications were used to facilitate an allegedly fraudulent transaction in 2009 will shed no light on whether LAC dominated GPMI regarding the claims in this litigation.

Plaintiff asks for an *in camera* review. While not objecting to such review, LAC believes it would be an unproductive use of the Court's time. Plaintiff has identified only one attorney-client communication for which it seeks disclosure, and the substance of that communication was a topic of testimony that the Court previously reviewed and found should be redacted because it is "indeed privileged." *Order*, at 2 (May 26, 2015), Dkt. #4215.

### III.     *Commonwealth of Pennsylvania*: Alternative Service on OAO Lukoil

Plaintiff has failed to make the evidentiary showing necessary to establish that Lukoil North America LLC is a managing agent for PJSC Lukoil (formerly named OAO Lukoil). But, in light of the authorities it cites about service in Russia, PJSC Lukoil will not oppose alternative service. PJSC notes that bringing it into the case is unnecessary and will impose burdens and complications inherent in international litigation involving non-English speakers. Thus, PJSC respectively suggests that the Court defer alternative service until after it rules on LAC's pending motion to dismiss. If Plaintiff is unable to pierce GPMI's veil to reach its immediate parent, it makes no sense for Plaintiff to try to pierce several levels higher into the corporate structure.

### IV.     *OCWD*: Use of Public Records Act to Conduct Discovery

The parties have exchanged correspondence regarding Defendants' recent California Public Records Act ("CPRA") requests to water purveyors in the Orange County Water District ("District"). Exs. C-D. The District's demand that Defendants "cease and desist" their CPRA efforts and assertions that Defendants are conducting illicit discovery that circumvents the discovery process appear to be based on a misapprehension of the requests and applicable law.[3]

Public record requests are not discovery requests. Litigants are not barred from making

---

[3] Ms. O'Reilly suggests that Defendants intentionally used D.C. counsel to conceal their requests. That is not true. Matthew Thurlow has made appearances on behalf of ConocoPhillips in several MTBE matters. He is a member of the California Bar. His firm, Latham & Watkins LLP, has represented ConocoPhillips in the Orange County matter since the District filed the case.

The Honorable Shira A. Scheindlin
February 11, 2016
Page 4

public record requests and obtaining publicly available information at any time before, during, or after litigation. There is no bar to seeking public information simply because it also is the subject of "extensive discovery."[4] Nor is there any requirement under the FRCP, any discovery order in this case, or the CPRA, that litigants provide advance notice of public record requests to other litigants and opposing counsel.[5] Litigants have the right to obtain public information at any time during the course of litigation.[6] That is particularly true here because the water purveyors have documents that are unquestionably relevant to both the focus and non-focus District sites, especially for time periods after the production of such information by the District.

In short, Defendants have requested publicly available information from non-party agencies, including well sampling data and documents regarding public taste and odor complaints and corrective actions, that any member of the public may request at any time. Defendants have not requested privileged information because they understand that the CPRA exempts the production of documents prepared in connection with filed litigation and attorney-client privileged materials. Cal. Gov. Code § 6254 (b)(k). Defendants served these CPRA requests because eight years have passed since Defendants served their initial CPRA requests on these non-party agencies and, unlike discovery, there is no duty for the agencies to supplement their productions. Contrary to the District's contentions, Defendants have not refused to discuss the mutual exchange of updated information prior to trial, and are amenable to such an exchange. Indeed, ConocoPhillips, Chevron, and ExxonMobil already have made supplemental productions. Exs. E-G. There is no reason why Defendants should have to wait until the District decides to supplement its productions to issue CPRA requests to non-party agencies.

Defendants have already agreed to provide the District with all materials they receive in response to their public information requests. The Court should deny the District's improper request to bar Defendants from making further public information requests to California public agencies, cities, and water purveyors.

---

[4] See Comstock Intern. v. Export-Import Bank of U.S., 464 F. Supp. 804 (D.D.C. 1979) ("Plaintiff presumably seeks the documents at issue here for use in this arbitration proceeding, but a party's rights under the FOIA are neither enhanced nor diminished by its status as a private litigant.").

[5] See Jackson v. First Fed. Sav., F.A., 709 F. Supp. 887 (E.D. Ark. 1989) ("If the individual or agency in possession of desired documents will provide access to them without resort to a subpoena or other Court backed discovery mechanisms, it is ordinarily unnecessary for the party seeking the material to take steps to compel what will be given freely. Nor is it required that one party give notice to other parties that evidence gathering outside the discovery process is being undertaken. … Equally unconvincing is the assertion that plaintiff violated the discovery stay. Plaintiff did no discovery.").

[6] See Wilder v. Superior Court, 66 Cal. App. 4th 77 (Cal. Ct. App. 1998) ("The [CRPA], which we are bound to interpret in accordance with its plain language unless doing so would lead to absurd results, requires that public records be made available to 'every person in this state,' without exception.").

The Honorable Shira A. Scheindlin
February 11, 2016
Page 5

Sincerely,

*James A. Pardo*

James A. Pardo

cc: All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel