```
 1   UNITED STATES DISTRICT COURT

 2   SOUTHERN DISTRICT OF NEW YORK
     ------------------------------x
 3
     In Re: METHYL TERTIARY BUTYL
 4          ETHER ("MTBE") PRODUCTS          00 CV  1898 (SAS)
            LIABILITY LITIGATION
 5
     ------------------------------x
 6
                                             New York, N.Y.
 7                                           February 16, 2016
                                             4:05 p.m.
 8
     Before:
 9
             HON. SHIRA A. SCHEINDLIN
10
                                             District Judge
11

12
             APPEARANCES
13

14       Attorneys for Plaintiffs
         DUANE C. MILLER
15       MICHAEL AXLINE
         JOHN GILMOUR
16       LEONARD KAUFMANN

17       Attorneys for Defendants
         JAMES PARDO
18       LISA GERSON
         JEFF PARKER
19       ANDREW RUNNING
         JIM TUITE
20       ALAN DRAUS

21

22

23

24

25
```

1                (Case called)

2                THE COURT:  The first item on today's agenda is the
3       Puerto Rico case where the parties are working on a remand for
4       the phase I trial sites.  I don't know if there's anything to
5       discuss other than this happy fact, but if you want to update
6       me as to preparing the actual physical paper, I'd be happy to
7       hear that.  Mr. Gilmour.

8                MR. GILMOUR:  Give yes, your Honor.  We have been in
9       discussions with defendants.  Ms. Gerson and I spoke just
10      before coming into your Honor's courtroom.  I think we have
11      made substantial progress regarding most issues, including the
12      verbiage.

13               There may be one remaining issue, Your Honor.  I think
14      we've agreed that we will continue to meet and confer and try
15      and resolve that ASAP.  If we cannot, then we would like to
16      include it in the next realm of pre-conference letters.

17               THE COURT:  Why can't we set a cutoff for that.  If
18      you can't resolve it in a week, come in on just that matter
19      alone, and let's do it.  A remand is always a very happy
20      thought.  It means somebody is approaching a trial on
21      something.  So I don't see waiting for a monthly conference.

22               So my view is if you can't resolve this by the close
23      of business on Tuesday, February 23, then I would schedule a
24      conference, just to see if I can help resolve a remaining
25      issue, Tuesday, March 1, at 4:30.

1                MR. GILMOUR:  Yes, your Honor.

2                THE COURT:  And then you can just call to cancel it.

3                MR. GILMOUR:  Yes, your Honor.  Thank you.

4                MS. GERSON:  Were you anticipating in-person?

5                THE COURT:  Yes.  If we have to.  I don't think we

6  need all the 22 people who are here now but at least you two

7  and whoever else would like to attend of course.  I was

8  thinking in-person.

9                There's nothing further you want to report at this

10 time; is that right?

11               MR. GILMOUR:  That's correct, your Honor.

12               MS. GERSON:  Thank you, your Honor.

13               MR. GILMOUR:  Thank you, your Honor.

14               THE COURT:  So the next topic on the agenda is

15 Pennsylvania.  And there are three issues on the Pennsylvania

16 case.  One relates to the title release site lists.  One has to

17 do with LUKOIL Americas Corporation's privilege assertion, and

18 one has to do with service.  Alternative service on OAO LUKOIL.

19               The easiest of the three is the alternative service.

20 So I might as well just give you the answer on that and move

21 along to slightly harder ones.  The answer is there's no reason

22 to postpone making service.

23               I know that the defense doesn't oppose alternative

24 service, but they say not now.  We should wait and see if LAC

25 is dismissed because then there's no basis for jurisdiction,

1  etc., etc.

2              I don't see any point in putting off the actual making

3  of service.  It's not that difficult.  It's better to get it

4  done.  So there's the ruling, so to speak, on that.  Go ahead

5  and make service.

6              On the other two issues, the middle issue relates to

7  the alleged privilege assertion.  There I thought the

8  suggestion of in-camera review makes sense.

9              I've already seen some of the transcripts regarding

10 the bankruptcy proceedings.  I don't see why I shouldn't do the

11 same with respect to the group of documents as to which there's

12 an alleged privilege on the basis of which they're being

13 withheld.

14             So if anybody wants to be heard further, okay.  But

15 I'm willing to review them.  I can't tell exactly how many.

16 Sometimes it seems like one; sometimes it seems like six.  How

17 many are there?

18             MR. TUITE:  Your Honor, James Tuite for LUKOIL

19 Americas's Corporation.  At this point, plaintiff has only

20 identified one document.  Again, we're happy to submit that.

21 It's just that these documents are attorney communications

22 relating to a transaction --

23             THE COURT:  Then it won't take you long.  If it's one

24 document, it's clearly attorney-client, and there's no

25 exception.  It shouldn't take you forever to figure it out.

1           Mr. Axline, do you agree it's just one document?

2           MR. AXLINE:  No, your Honor.  It's two.

3           THE COURT:  How do I know whether it should fall under
4  that exception and shouldn't be disclosed?  I might know
5  whether it falls under joint privilege or common interest or
6  not.  I'm not even sure if that would require background facts.

7           In other words, an in-camera review will tell me it's
8  an attorney-client communication.  That's agreed to.  The
9  question is does it fall under any of these exceptions.

10          Is that right, Mr. Axline?

11          MR. AXLINE:  Your Honor, we've seen these documents.
12 They were inadvertently disclosed to us.  We called Mr. Tuite,
13 and we said, do you want to assert privilege for these
14 documents.  I'm a little hesitant to say anything about that.

15          THE COURT:  But you know they were disclosed to the
16 trustee in bankruptcy.  I thought one of the arguments here was
17 waiver.

18          MR. AXLINE:  It is, as between GPMI and LAC.  It's
19 also -- I want to make this point about these documents, your
20 Honor.  They go to the corporate separateness issue that is
21 before you on the motion to dismiss.

22          There's a case that at one point I wanted to make
23 which is the case Mr. Tuite cites which is the Teleglobe case,
24 which he relies on pretty heavily, makes the point that
25 treating members of a corporate family as one client

1  disrespects the corporate firm.  It is a factor to consider in
2  the corporate separateness analysis.
3           We would be happy to take a look at the documents and
4  decide if they're privileged or not.  The transcript that we
5  looked at involved an assertion with respect to communications
6  with Akin Gump, outside counsel.  These do not involve that.
7           THE COURT:  I'm still concerned that receiving the two
8  documents without context is not going to help me figure out
9  the argument on exception.  So maybe you have to submit short
10 letter briefs to accompany this submission.
11          I know the letters here raise it, but I think I could
12 use more.  So maybe a five-page, double-spaced submission from
13 each as to why they should be disclosed or why they shouldn't
14 be.
15          Does that sound reasonable?
16          MR. AXLINE:  Submitted in camera?  Frankly, I'm not
17 sure what my ethical obligation is on this.
18          THE COURT:  And I can't advise you on that.
19          MR. AXLINE:  I'm hesitant to discuss the substance.
20          THE COURT:  You certainly know how to seek an ethics
21 opinion.  Putting that aside, I think I need context.  I can't
22 tell -- the document itself won't tell me much about the
23 exceptions or even this legal argument.
24          MR. TUITE:  Your Honor, when we submitted the redacted
25 transcripts for your in-camera review, the one thing we did do

1  was give you a list of names and identify whether they're
2  counsel or not.  We can certainly do that.
3              THE COURT:  That's easy.  I'm saying more than that.
4  If you're addressing an exception to the usual attorney-client
5  privilege, I need to know the context of why that exception
6  would work.
7              So I'm going to suggest that you each can submit in
8  camera a five-page, double-spaced submission as to, in your
9  case, why you think it's privileged and, in your case, why you
10 think it's no longer privileged, if it ever was, etc., and
11 hopefully between the documents and the submissions, I'll be
12 able to make some kind of an intelligent ruling.
13             MR. AXLINE:  We'll do that.
14             THE COURT:  When is the date for these submissions?
15 Can you do it in a week?  Can you do it by the close of
16 business on the 23rd of February, which is a week from today?
17             MR. TUITE:  My only hesitation, your Honor, is our
18 reply brief is due this Friday.  If we could have maybe one or
19 two more days, that would be fine.
20             THE COURT:  The close of business on the 24th.
21             MR. TUITE:  Okay, your Honor.
22             MR. AXLINE:  For your Honor's benefit and for
23 Mr. Tuite's benefit as well, I think we will be addressing the
24 choice of laws issue in our letter as to which law applies to
25 the privilege issue here for these documents.

1    THE COURT:  Can I get a preview?  What law did you
2 think applies?
3    MR. AXLINE:  Pennsylvania.
4    THE COURT:  See if you can schedule a telephone call
5 with each other -- the lawyers in this case generally get
6 along -- just to say are you going to disagree or agree with us
7 that Pennsylvania law applies.
8    If not, can you tell us what state you think so we can
9 get a little heads-up.  Will you try to have that conversation
10 with each other?
11    MR. TUITE:  Yes.
12    THE COURT:  Now we go backward to the first of the
13 three issues which was the release site list.  Release site
14 list.  This is kind of big because I gather there are 5,000
15 release sites here.  That's hard to manage.
16    It seems to me there has to become an agreed-upon
17 master list of these sites, and they have to be coordinated by
18 both the six-digit and seven-digit identification numbers.
19    The real issue is sort of who has the burden to do
20 what.  I think that's what you're really fighting about.
21 Everybody must realize it has to be done to manage so many
22 sites.
23    I can start out by saying that I think both the
24 six-digit and seven-digit identification numbers are needed.
25 Defendants can, of course, search their own records.

1              But the issue is whether the defendant also had to go
2     through publicly available database like eFax to find
3     identification numbers when they don't have it.
4              Defendants say, we shouldn't have to search outside
5     our own records if we don't have it.  I'm sure that I don't
6     understand how burdensome that is, but with the size of the
7     defense collectively, I just think of all the billable hours
8     that are being spent in this room.  I would think you should go
9     ahead and do that to the extent that you can, including the
10    obligation to not only search your own records but to search
11    publicly available records.
12             As I said, I have no sense that that's so burdensome.
13    It's a search.  It coordinates, and then plaintiffs have to
14    have some burden too I would think.  If the defendants do it
15    first and give you what they find, both from their own
16    documentation and from publicly available databases, and then
17    you can fill in more from the commonwealth's records, between
18    the two of you, you may get one master list.
19             But I would say plaintiffs can go second, so to speak,
20    and see what you get in terms of identification from the
21    defendants who will produce these six- and seven-digit numbers
22    from their own records and from publicly available.
23             Who wants to be heard?  I guess Ms. Gerson did stand
24    first.  Go ahead.
25             MS. GERSON:  First I will say that we did talk ahead

1   of time. So we may be making progress on this point.

2   THE COURT: Hopefully what I just said goes beyond
3   progress, and it approaches a ruling. Go ahead.

4   MS. GERSON: The only thing I wanted to point out is
5   in plaintiff's reply letter, they kind of explain at the last
6   paragraph it's important that defendants themselves supply the
7   numbers so defendants do not later dispute whether the numbers
8   are accurate.

9   That's the point we were making. If they come from
10  our own files, we are comfortable with that, but we can't speak
11  to it really more than that.

12  THE COURT: I think that's a fair caveat. You can do
13  that by a code. If it has an asterisk, that means the only
14  reason we have that number is because it comes from your
15  documents. Anything with an asterisk we can't vouch for. It
16  comes from your documents.

17  Does that take care of this third category of being
18  able to pull the number out of this publicly available database
19  called eFax? Is that what you called their documents? Or is
20  that different?

21  MS. GERSON: I would put it in the same category.
22  It's not from our files.

23  THE COURT: It may not be from theirs either.

24  MS. GERSON: It is from the plaintiffs'.

25  THE COURT: It is. Okay. You want to separate what

1    you learn from their documents as opposed to this database by a
2    single asterisk or a double asterisk.  But either way, you can
3    vouch for it.
4              Then defendants go first, and then plaintiffs have the
5    obligation to fill in the blanks, so to speak, if there are
6    some release sites that are not coded through their efforts
7    which now include going through both the publicly available
8    database and your records.  If you can add, you should.
9              How long will this task take, Ms. Gerson?
10             MS. GERSON:  Can I confer?
11             THE COURT:  Yes.  Sure.
12             (Pause)
13             MS. GERSON:  Your Honor, we don't have all defendants
14   here, and everybody has a different number of sites.  What I'm
15   hearing is that I think 30 days would work.
16             THE COURT:  Is that acceptable to you, Mr. Axline?
17             MR. AXLINE:  Yes, it is, your Honor.  In fairness to
18   the defendants, I need to say that we discussed alternative
19   ways of satisfying our main concern, which is that this list be
20   reliable and not be subject to collateral attack.
21             THE COURT:  I understand that.  All she's saying is
22   she's not willing to unconditionally guarantee the
23   identification numbers that come from your records or the
24   public database, which is why I asked her to indicate the
25   source through a simple coding mechanism.

1           MR. AXLINE:  That is a very good outcome for the
2    commonwealth, your Honor.  We're happy with that.  The
3    defendants have proposed some alternative means prior to this
4    hearing.
5           THE COURT:  Why are you wasting my time?  If you've
6    got this done, you should say, we've resolved this.  Please go
7    on to another agenda item.  Otherwise, I've ruled.  Do it my
8    way.
9           So, Ms. Gerson, 30 days from now is roughly March 15
10   for your version and then any supplementation by the
11   commonwealth by April 12.  You must stick to the schedule.
12   It's a big case, and it won't move without this happening.  So
13   let's not have slippage.  Do your best to meet those deadlines.
14          MS. GERSON:  Thank you, your Honor.
15          THE COURT:  So we've now finished Pennsylvania, which
16   takes us to the Orange County Water District matter.
17          That's a single item, which I again did not find
18   particularly difficult and am prepared to tell you what my
19   ruling is, so to speak, but subject to argument after I tell it
20   to you if you really think that you need to be heard.
21          I see no bar to using these CPRA requests for
22   essentially what we call generally FOIA purposes.  You're
23   entitled to use the public records system to obtain whatever
24   records you can, subject to an agency saying under some
25   exception you can't have it, but that's up to the agency.

1           So I don't think that plaintiffs have any standing at
2    all to prevent you from trying to obtain documents through this
3    CPRA, which for me it's easier for me to say FOIA, but it's the
4    same idea.
5           Now, I understand that defendants have agreed that
6    they will provide the water district with the request letters
7    and with any documents obtained through the requests.  So
8    that's helpful that there's an agreement on that.
9           I think that takes care of it.  Now that I told you
10   what I think is the way to go, very close to a ruling, if
11   anybody wants to be heard further, go ahead.  That's probably
12   where I'm going to come out.
13          Does anybody want to say anything?  Mr. Axline.
14          MR. AXLINE:  Yes, your Honor.  I hear your ruling, and
15   I don't feel there's any argument necessary.
16          THE COURT:  Good.  Then that's done, which takes us to
17   New Jersey.  New Jersey has had a lot of settlements, but
18   there's still a lot to do.  The defendants have requested that
19   plaintiff update the hazardous sites database.
20          MR. KAUFMANN:  Your Honor, I think we might have
21   resolved this.
22          THE COURT:  Go ahead.  You've resolved this too?
23          MR. KAUFMANN:  Yes.  We're pretty close.  We've been
24   having discussions in the last couple of days.  Plaintiffs
25   aren't convinced that they will be able to update the request

1    that's necessary.  But in a compromise, we've agreed to provide

2    that to the defendants in return for them updating certain

3    information for us.

4              There wasn't time to get buy-in from all of the

5    defendants.  My understanding is they think that will likely

6    happen.  So we don't really believe that it's necessary to have

7    a full-blown discussion or decision with the Court on that

8    because I think we're going to have it resolved the very next

9    day.

10             THE COURT:  As with the first item, the Puerto Rico

11   remand, if you can't work it out in a week, why don't you join

12   us on March 1 at 4:30 and just get it done.

13             MR. KAUFMANN:  That's fine.

14             THE COURT:  You seem close.  In case you fail, I don't

15   need to wait a month.  So come in on March 1 at 4:30.

16             MR. KAUFMANN:  That's fine with us.  I'm hopeful --

17             THE COURT:  Mr. Pardo.

18             MR. PARDO:  That's fine with us too.

19             THE COURT:  All right.  I finished the agenda.

20             MR. KAUFMANN:  If I could just say one other thing

21   about next month, however, that we do hope to begin the

22   discussion with the Court about phase II in New Jersey.  We

23   haven't made any progress with phase I.

24             THE COURT:  What do you mean?  The New Jersey court?

25             MR. KAUFMANN:  The New Jersey court.  That's correct.

1    We do think it's necessary for us to start the discussions.
2    We've agreed to meet and confer before that.  We want to bring
3    the ideas to the Court as to where we can start moving that
4    next month.
5             THE COURT:  It's not going to do much good if phase 1
6    isn't moved.
7             MR. KAUFMANN:  It is a factor.
8             THE COURT:  That's fine.  We'll schedule a conference
9    in 30 days.  The usual monthly conference.
10            MR. KAUFMANN:  That would be fine with us, your Honor.
11            THE COURT:  Mr. Pardo, that's fine?
12            MR. PARDO:  That's fine, your Honor.  Let me just add
13   to this though.  What we're hoping is that we can get this
14   information exchanged because the defendants' view is that we
15   need to understand what the rest of the case looks like today
16   before we can have a meaningful conversation.
17            We're happy to start the conversation with plaintiffs.
18   Before we start that conversation with your Honor, I think we
19   want to understand what the rest of the case looks like.
20            THE COURT:  I think we can do both simultaneously.
21   They've agreed to the update.  They're going to be working on
22   it.  I don't want, as I said, a lot of slippage here.  This is
23   another big case.
24            I'd like to meet in a month or so.  I understand your
25   point.  You need more information, and they're going to try to

1  get it to you.  Obviously, Mr. Kaufmann, the sooner you get it
2  to them the more they'll know.
3              MR. KAUFMANN:  They understand that the information
4  that they will provide to us and we provide to them is not a
5  one-week exercise.
6              THE COURT:  I didn't say one week.  I'm meeting with
7  you in one month.
8              MR. KAUFMANN:  It's probably about a 60-day exercise.
9  We think -- this is a little bit of a preview of what we may be
10 discussing next month.  We think we ought to have a concept as
11 to how we're going to approach it and then do the discovery,
12 not do the discovery --
13             THE COURT:  I'm coming out in between.  I don't think
14 we should put off the one-month conference, but I think you
15 should produce this on a rolling basis as fast as possible.
16 Because the more you know about the scope or whatever word you
17 want to use about the remaining case, the better for our
18 conversation.
19             So I don't believe we should stage it the way you
20 said, first the conference and then 60 days.  No.  You should
21 start producing.  We'll have the conference in 30 days.  If
22 Mr. Pardo comes in and says he's gotten nothing in 30 days, I
23 won't be happy.
24             MR. KAUFMANN:  We will produce it to them on a rolling
25 basis as soon as any of it is available.  I don't know the

1  technicality. We will get it to them as soon as possible on a
2  rolling basis, your Honor.
3           THE COURT: Okay. So a month.
4           MR. KAUFMANN: Your Honor, if I may, just by way of
5  timing, if the week of the 28 of March is more convenient for
6  the Court, that would be for some of us.
7           THE COURT: It's not more convenient for the Court.
8  It may be more convenient for you. In any event, I'm good on
9  March 14 or 15, which is about a month. The 14th is
10 preferable. It's a Monday.
11          MR. AXLINE: The California contingent will be here,
12 your Honor.
13          THE COURT: Monday, the 14th. The way it looks now,
14 it would also be late in the day. So don't even think about
15 flying out that night. I can't start until 5:00, but then I
16 have as much time as it needs.
17          So 5:00 p.m. on the 14th. That's the regular monthly
18 conference, March 14 at 5:00 p.m. That's a regular monthly
19 conference with a full agenda. That will be a late one.
20          Is there anything further? Thank you, everybody.
21          (Adjourned)
22
23
24
25