UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/15/16

----------------------------------------------- X
                         :

IN RE METHYL TERTIARY BUTYL    :
ETHER ("MTBE") PRODUCTS         :
LIABILITY LITIGATION              :

----------------------------------------------- :
                         :

This document relates to:          :

                         :

*Commonwealth of Puerto Rico, et al. v.*   :
*Shell Oil Co., et al.*, 07 Civ. 10470      :

                         :
----------------------------------------------- X

**OPINION AND ORDER**

**Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to contamination—actual or threatened—of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water. In this case, the Commonwealth of Puerto Rico ("the Commonwealth") alleges that defendants' use and handling of MTBE has contaminated, or threatened to contaminate groundwater within its jurisdiction. Familiarity with the underlying facts is presumed for the purposes of this Order.

Currently before the Court is the Commonwealth's Motion for

1

Reconsideration of this Court's December 3, 2015 opinion dismissing Trammo Petroleum ("TP") for lack of personal jurisdiction (the "Challenged Opinion").[1] For the following reasons, that motion is GRANTED, the Challenged Opinion is VACATED as to the finding that the Court lacked personal jurisdiction, and TP is reinstated as a defendant.

## II.   BACKGROUND

The Commonwealth filed this action on June 12, 2007.  TP and a related entity Trammo Caribbean, Inc. ("Caribbean") (together the "Trammo Defendants"), however, were not named as defendants until the Third Amended Complaint ("TAC") was filed on December 3, 2012.

### A.   Initial Motion to Dismiss

On April 12, 2013, the Trammo Defendants moved to dismiss on the grounds that the statute of limitations had expired and, as to TP, that this Court lacked personal jurisdiction because TP never conducted business in Puerto Rico.[2] On July 16, 2013, this Court granted the Trammo Defendants' motion to dismiss

---

[1]    *See In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, Dkt. No. 656 (S.D.N.Y. Dec. 3, 2015).  A Corrected Opinion and Order was issued by this Court on December 7, 2015.  *See In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2015 WL 9777725, at *1 (S.D.N.Y. Dec. 7, 2015) [hereinafter *Challenged Opinion*].

[2]    *See generally* Memorandum of Law in Support of Motion to Dismiss of Trammo Petroleum, Inc. and Trammo Caribbean, Inc. (Dkt. No. 208).

on statute of limitations grounds (the "SOL Opinion").  In view of that holding the Court did not decide the question of personal jurisdiction.[3]

On July 10, 2013 — prior to the SOL Opinion but after briefing ended for the motion to dismiss — the Trammo Defendants produced approximately five hundred pages of documents (the "2013 Production") that the Commonwealth now asserts provide a basis for personal jurisdiction over TP.[4]  While these documents were not submitted to the Court at the time, the Commonwealth claims that it was "prepared to supplement the record with this new evidence," but the Court issued the SOL Opinion before plaintiff submitted any of these documents.[5]

### B.    Motion for Reconsideration

On July 31, 2013, the Commonwealth moved to reconsider the SOL Opinion arguing, inter alia, that this Court applied the incorrect Puerto Rican statute of limitations tolling rule.  In *Fraguada Bonilla v. Hospital Auxilio Mutuo*, which was issued after the filing of the initial Complaint but prior to the filing of

---

[3]      *See In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d 476 (S.D.N.Y. 2013) [hereinafter *SOL Opinion*].

[4]      *See* The Commonwealth's Motion for Reconsideration of the Court's Order Dismissing Trammo Petroleum, Inc. for Lack of Personal Jurisdiction ("Pl. Mem.") at 2.

[5]      *Id*.

the TAC, the Puerto Rico Supreme Court overturned the prevailing tolling rule.[6]  In

the SOL Opinion, this Court held that the new *Fraguada* tolling rule should apply

to TAC defendants rather than the tolling rule in place at the time the initial

Complaint was filed.[7]  The choice of the proper tolling rule was critical to

determining whether the statute of limitations had run because under the prior rule

"'[t]imely filing of a complaint by an injured party against a joint and several

co-tortfeasor automatically tolls the statute of limitations against all of the other

co-tortfeasors,'"[8] whereas under the *Fraguada* rule "'the statute of limitations

against each [tortfeasor must] be tolled individually.'"[9]

   Despite moving for reconsideration of the SOL Opinion, which would

necessarily require the Court to address the undecided personal jurisdiction ground

if the action was timely, the Commonwealth did not submit the documents from

the 2013 Production.  On August 2, 2013, this Court denied the motion for

reconsideration as "a quintessential attempt to reargue those issues already

---

[6]   *See generally* 186 D.P.R. 365 (2012).

[7]   *See SOL Opinion*, 949 F. Supp. 2d at 496.

[8]   *Challenged Opinion*, 2015 WL 9777725, at *2 (quoting *Arroyo v. Hospital La Concepcion*, 130 D.P.R. 596 (1992)).

[9]   *Id.* at *3 (quoting *Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365 (2012)).

4

considered."[10]

## C.    Motion to Revise Prior Orders

On July 2, 2014, the Commonwealth once again challenged the SOL Opinion in a motion to revise prior orders based on the passage of "Law 53" by the Puerto Rican legislature — a statute exempting claims by the Commonwealth for "non-patrimonial public goods" from the statute of limitations.[11]  In opposition, TP argued that Law 53 did not apply, but, in the alternative, reiterated its earlier argument that the Court lacked personal jurisdiction.[12]  In reply, the Commonwealth for the first time submitted several documents, discussed below, from the 2013 Production.[13]  These documents, which the Commonwealth correctly notes were not addressed by the Court in the Challenged Opinion, form much of the basis for the present motion for reconsideration. The Commonwealth,

---

[10]    *In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2013 WL 4008632, at *2 (S.D.N.Y. Aug. 2, 2013) (quotations omitted).

[11]    *See generally* The Commonwealth of Puerto Rico's Memorandum of Law in Support of Motion to Revise Prior Orders (Dkt. No. 430).

[12]    *See generally* Trammo Petroleum, Inc.'s and Trammo Caribbean, Inc.'s Memorandum of Law in Opposition to the Commonwealth of Puerto Rico's Motion to Revise Prior Orders (Dkt. No. 436).

[13]    *See* Reply Declaration of John D.S. Gilmour, counsel for the Commonwealth, in Support of the Commonwealth of Puerto Rico's Motion to Revise Prior Orders ("Gilmour Decl.") (Dkt. No. 445).

however, once more failed to provide a number of purchase agreements found in the 2013 Production that it finally submitted with the present motion.

On August 29, 2014, the Court denied the Commonwealth's motion to revise prior orders because the waters of the Commonwealth are patrimonial goods not subject to Law 53, and, in the alternative, Law 53 violates the separation of powers doctrine in the Constitution of Puerto Rico.[14]  Once again, the Court declined to decide TP's personal jurisdiction argument.[15]

### D.   Shell Defendants' Motion for Summary Judgment

On June 12, 2015, two additional TAC defendants, Shell Western Supply and Trading Limited and Shell International Petroleum Company Limited, moved for summary judgment on statute of limitations grounds that mirrored the Trammo Defendants' argument in the April, 2013 motion.[16]  The Commonwealth once again argued that this Court applied the incorrect Puerto Rico tolling rule to

---

[14]      *See In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2014 WL 4290433, at *3-5 (S.D.N.Y. Aug. 29, 2014).

[15]      *See id.*

[16]      *See generally* Memorandum of Points and Authorities in Support of the Motion for Summary Judgment of Shell Western Supply and Trading Limited and Shell International Petroleum Company Limited (Dkt. No. 607).

defendants added in the TAC.[17]  In support of this argument, the Commonwealth submitted numerous intervening decisions from the Puerto Rico Court of Appeals and the District Court for the District of Puerto Rico which provided near unanimous support for its interpretation.[18]

In an opinion issued on December 3, 2015, this Court overruled the law of the case, holding that *Fraguada* "ended [but did not invalidate] tolling [under the previous rule] and restarted the running of the [one-year] statute of limitations for imperfectly jointly and severally liable co-tortfeasors."[19]  Claims against defendants added by the TAC were timely under this interpretation because the TAC was filed "less than four months [after *Fraguada* was decided] on December 3, 2012, well within the one-year statute of limitations."[20]

### E.     The Challenged Personal Jurisdiction Opinion

Consistent with its new ruling, the Court vacated its earlier statute of

---

[17]     *See* The Commonwealth of Puerto Rico's Memorandum of Law in Opposition to Shell Western Supply and Trading Limited's and Shell International Petroleum Company Limited's Motion for Summary Judgment Based on Statute of Limitations (Dkt. No. 622) at 11-16.

[18]     *See generally In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2015 WL 8471020 (S.D.N.Y. Dec. 7, 2015) (summarizing cases interpreting *Fraguada*).

[19]     *Id.* at *5.

[20]     *Id*. at *6.

limitations decisions in a companion opinion issued the same day, reinstating

several previously dismissed defendants.[21]  Based on that ruling the Court then

considered for the first time TP's argument that the Court lacks personal

jurisdiction — over two years after the motion had been made.  The Court

considered only the evidence presented in the Commonwealth's initial opposition

papers, but failed to consider the documents submitted by the Commonwealth

more than a year later in its reply in support of the July 2, 2014 motion to revise

prior orders.[22]  In considering only the first limited submission, I concluded that

"[t]hese documents are insufficient to support personal jurisdiction even when

viewed in the light most favorable to the Commonwealth."[23]

       The documents fell into two categories.  *First*, there were a series of

emails referring generically to "Trammo."  These emails "contain discussions

among Peerless [Oil and Chemicals, Inc.], Total Petroleum Puerto Rico ('Total'),

and Gasolinas de Puerto Rico about the details of Peerless supplying gasoline to

Total, and the documentation reflects Total's notes about the supply scheme,

---

[21]     Following reinstatement on December 3, 2015, Caribbean was
voluntarily dismissed by the Commonwealth on December 14, 2015.  *See* Notice of
Voluntary Dismissal (Dkt. No. 665).

[22]     *See Challenged Opinion*,  2015 WL 9777725, at *8-9.

[23]     *Id*. at *9.

including the chain of supply and relevant price points."[24]  I reasoned that "[t]he emails [related to a gasoline supply contract with Peerless Oil and Chemicals, Inc.] that refer to 'Trammo' must [] be read to refer to Caribbean" because "Caribbean — not TP — had a gasoline supply contract with Peerless at that time."[25]

*Second*, the Commonwealth pointed to the "2004 annual report from the United States Energy Information Agency ('EIA') naming 'Trammo Petro Inc.' as the importer of approximately 25,000 barrels of MTBE from Venezuela to Guayanilla, Puerto Rico in November 2004."[26]  I held, based on "extensive affidavits and documentation" provided by TP, that the single shipment of MTBE attributed to "Trammo Petro Inc." was a recording error because a U.S. Customs Broker Invoice and Caribbean's internal records attributed this shipment to Caribbean.[27]  No other documents were considered by the Court.

### F.   Documents Submitted by the Commonwealth

#### 1.   Documents Submitted with the Motion to Revise Prior Orders

In support of its motion to revise prior orders, the Commonwealth

---

[24]     *Id*. at *8.

[25]     *Id*. at *9.

[26]     *Id*. at *8.

[27]     *Id*. at *9.

submitted several documents from the 2013 Production.  One of these documents

is an "Agreement for Supply of Motor Gasoline, Low Sulfur Diesel and Kerosene"

("Supply Agreement") between "Trammo Petroleum, Inc." and "Peerless Oil &

Chemicals, Inc."[28]  The agreement, dated May 15, 2002, is a requirement contract

under which TP, as seller, would deliver a minimum of 200,000 barrels per month

of gasoline, diesel, and kerosene to Peerless' storage tanks in Peñuelas, Puerto

Rico.[29]  In addition, TP warranted that it had "obtained all permits and

authorizations that are necessary for the execution, delivery and performance . . . of

this Agreement."[30]  Finally, the agreement provided that Peerless would make

available certain storage tanks, not only for delivery of Peerless' own fuel

requirements, but also "for storage of products to be sold to third parties [by

TP]."[31]

       In addition to the Supply Agreement, the Commonwealth submitted a

June 17, 2002 agreement between TP and Caribbean assigning the entirety of the

---

[28]     Supply Agreement, Ex. B to Gilmour Decl., at TC000361.  *See also*
Exs. A-1, A-2, A-3 to Declaration of William C. Petit, counsel for the
Commonwealth, in Support of the Commonwealth's Motion for Reconsideration
("Petit Decl.") (Dkt. No. 679) at TC000361.

[29]     *See id*. at TC000362, TC000376.

[30]     *Id*. at TC000372-73.

[31]     *Id*. at TC000366.

Supply Agreement to Caribbean.[32]  James J. Goughary is the sole signatory on the assignment, acting in his capacity as Senior Vice President ("SVP") for both companies.[33]  The Commonwealth also produced an amendment to the Supply Agreement dated July 10, 2002 — almost a month after the assignment — signed by Goughary in his capacity as the SVP for "Trammo Petroleum, Inc."[34]

### 2.    Documents Submitted with the Present Motion

At a December 14, 2015 conference, the Commonwealth notified the Court that it intended to make the present motion.  The Commonwealth represented that it had obtained a "[F]rame [A]greement"[35] from the Trammo Defendants on November 6, 2015.[36]  The Court granted the Commonwealth permission to submit this new evidence in support of the present motion.[37]  The Frame Agreement memorializes the sale of "Trammo's Puerto Rico petroleum business relating to Colonial Caribbean[, Inc.]" in consideration for which Colonial

---

[32]    *See* Assignment and Amendment of the Supply Agreement, Ex. C to Gilmour Decl.  *See also* Exs. B, C to Petit Decl.

[33]    *See id*. at TC000357.

[34]    *Id*. at TC000358-60.

[35]    Transcript of December 14, 2015 Conference ("12/14/15 Tr.") at 7:9-11.

[36]    *See* Pl. Mem. at 3.

[37]    *See* 12/14/15 Tr. at 9:7-24.

Caribbean shall, inter alia, "pay Trammo US$100,000."[38]  The agreement, as a

term for the transfer of gasoline inventory, requires that BNP Paribas "will

terminate its liens on Trammo's collateral in Puerto Rico."[39]  These references to

"Trammo" are important, the Commonwealth contends, because the Frame

Agreement uses "Trammo" to refer to Trammo Petroleum, Inc. and "Trammo

Caribbean" to refer to Trammo Caribbean, Inc.[40]

       In addition to the production of the Frame Agreement, the

Commonwealth submitted several documents from the 2013 Production that had

never been provided to the Court.[41]  Under Local Rule 6.3, these documents were

improperly submitted on a motion for reconsideration and will not be considered

by the Court.[42]

---

[38]     Frame Agreement, Ex. H to Petit Decl., at TC_PRII000001.

[39]     *Id*.

[40]     *See id*.

[41]     *See* Exs. B at TC000355, D-G to Petit Decl.; Ex. A to Reply
Declaration of William C. Petit, counsel for the Commonwealth, in Support of the
Commonwealth's Motion for Reconsideration (Dkt. No. 690).

[42]     *See* Local Rules of the United States District Courts for the Southern
and Eastern Districts of New York 6.3 ("No affidavits shall be filed by any party
unless directed by the Court.").  *See also R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp.
2d 506, 510 (S.D.N.Y. 2009) (rejecting affidavits submitted with a motion for
reconsideration under Local Rule 6.3 because the movant "never sought
permission to file affidavits in connection with its motion").

## III.   APPLICABLE LAW

### A.   Reconsideration

The standard for granting a motion for reconsideration is strict. "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'"[43] "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"[44] Typical grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[45]

### B.   Rule 12(b)(2)

A plaintiff has the burden of proving personal jurisdiction by a

---

[43]    *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

[44]    *Oji v. Yonkers Police Dep't*, No. 12 Civ. 8125, 2013 WL 4935588, at *1 (S.D.N.Y. Sept. 11, 2013) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

[45]    *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted). *Accord Shrader*, 70 F.3d at 257 (describing grounds for reconsideration as "matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

preponderance of the evidence.[46]  "[A] plaintiff need only allege facts constituting a prima facie showing of personal jurisdiction to survive a Rule 12(b)(2) motion."[47] The plaintiff may make such a showing with "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."[48]  "The Court may rely on the allegations contained in the complaint as well as on affidavits submitted by the parties, and must draw all inferences and resolve any doubts in favor of the plaintiffs notwithstanding contrary information proffered by the moving parties."[49] However, the Court "will not draw argumentative inferences in the plaintiff's favor, nor must we accept as true a legal conclusion couched as a factual allegation."[50]

A court must undertake a "two-step inquiry" to determine if it can

---

[46]    *See Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir. 1996).

[47]    *M & M Packaging v. Kole*, 183 Fed. App'x 112, 114 (2d Cir. 2006) (alteration in original) (citations omitted).

[48]    *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quotation marks and citations omitted).

[49]    *General Elec. Capital Corp. v. Titan Aviation, LLC*, No. 06 Civ. 4795, 2007 WL 107752, at *3 (S.D.N.Y. Jan. 16, 2007) (citing *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

[50]    *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations and quotations omitted).

exercise personal jurisdiction over a defendant.[51]  "First, we determine whether the defendant is subject to jurisdiction under the law of the forum state . . . Second, we consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."[52]  Because Puerto Rico's long-arm statute "extends personal jurisdiction as far as the Federal Constitution permits," the only inquiry is whether the exercise of jurisdiction comports with the demands of the Due Process Clause.[53]  Personal jurisdiction may be exercised "'if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[54]

The Commonwealth alleges only specific jurisdiction over TP in this case.[55]  Specific jurisdiction requires both a "minimum contacts" and a

---

[51]     *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).

[52]     *Id.*

[53]     *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994) (citing *Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 12 (1st Cir. 1986)).

[54]     *Sonera Holding*, 750 F.3d at 225 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853 (2011)) (quotations omitted) (alterations in original).

[55]     *See* Plaintiffs' Opposition to Motion to Dismiss by Defendants Trammo Petroleum, Inc. and Trammo Caribbean, Inc. (Dkt. No. 261) at 2.

"reasonableness" inquiry.  *First*, the plaintiff must demonstrate that "the claim arises out of, or relates to, the defendant's contacts with the forum."[56]  As the Supreme Court recently explained, "the relationship [between the defendant and the forum state] must arise out of contacts that the 'defendant himself' creates with the forum State."[57]  Though "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties . . .  a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[58]  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[59]

Second*, jurisdiction must be reasonable.[60]  Courts weigh the following

---

[56]     *Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013).  *Accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (for the proper exercise of specific jurisdiction, the defendant must have "purposefully directed" his activities toward the forum and the litigation must "arise out of or relate to" those activities).

[57]     *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475).

[58]     *Id.* at 1123 (citation omitted).

[59]     *Id.* (quoting *Burger King*, 471 U.S. at 475).

[60]     *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

16

factors in evaluating the "reasonableness" requirement of due process:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[61]

"While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[62]

## IV.   DISCUSSION

### A.   Reconsideration Is Procedurally Proper

TP's argument that "plaintiff's motion does not meet any of the recognized standards in the Rules of this Court for reconsideration" is unfounded.[63] The Supply Agreement as well as the assignment and subsequent amendment of

---

[61]   *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113-14 (1987).

[62]   *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010) (quoting *Burger King*, 471 U.S. at 477).

[63]   Trammo Petroleum, Inc.'s Memorandum of Law in Opposition to the Commonwealth of Puerto Rico's Motion for Reconsideration ("Def. Mem.") (Dkt. No. 683) at 1.

the Supply Agreement submitted in support of the Commonwealth's motion to revise prior orders were overlooked by this Court in the Challenged Opinion.[64]  In addition, the Frame Agreement, which was not produced by the Trammo Defendants until November 6, 2015, constitutes new evidence pertinent to a determination of personal jurisdiction.  Though this evidence was available to the Commonwealth prior to the issuance of the Challenged Opinion, it was produced by TP nearly three years after the initial motion to dismiss for personal jurisdiction.  I reasoned at the December 14 conference that due to the unusual procedure posture of this case whereby the Court sua sponte vacated the SOL Opinion, it was only then that the Commonwealth "had reason to note [it] should have submitted [the Frame Agreement]."[65]  Therefore, the Frame Agreement is new evidence properly before the Court.

### B. The Commonwealth Has Made a Prima Facie Showing of Personal Jurisdiction

The Commonwealth has carried its burden of demonstrating that the documents from the 2013 Production and the Frame Agreement establish a prima facie case of personal jurisdiction over TP.  The Court's prior conclusion that "no

---

[64]    *See id.* at 15 (conceding that "Exhibits A and B to the 2015 Petit Decl. were also exhibits to the 2014 Gilmour Decl. and came from the same July 10, 2013 document production").

[65]    12/14/15 Tr. at 9:12-17.

fair inference can be drawn" that TP conducted business in Puerto Rico is undermined by the records now before the Court.[66]

The existence of the Supply Agreement by itself provides substantial support for the Commonwealth's allegation that TP supplied "gasoline and/or other products containing MTBE" into Puerto Rico.[67]  While the Commonwealth does not dispute the fact that the Supply Agreement was assigned to Caribbean on June 17, 2002,[68] the Commonwealth argues that TP nonetheless "performed under that agreement, which forms the basis of the Commonwealth's claims against [TP]."[69] In support of this allegation, the Commonwealth notes that TP, not Caribbean, modified the Supply Agreement in a signed writing on July 10, 2002, which postdates the assignment.[70]  Adding further credence to this allegation is the EIA 2004 annual report naming "Trammo Petro Inc." as the importer of approximately

---

[66]     *Challenged Opinion*, 2015 WL 9777725, at \*9.

[67]     TAC ¶ 21.

[68]     *See* Assignment and Amendment of the Supply Agreement at TC000357.

[69]     Pl. Mem. at 6.

[70]     *See* Assignment and Amendment of the Supply Agreement at TC000360.

25,000 gallons of MTBE into Guayanilla, Puerto Rico.[71]

The newly disclosed Frame Agreement provides even further support for finding personal jurisdiction over TP.  The Frame Agreement, which was drafted by William Markstein, the Assistant Secretary of TP and Vice President and Assistant Secretary of Caribbean,[72] references "Trammo's Puerto Rico petroleum business" and "Trammo's collateral in Puerto Rico."[73]  The plain language of the Frame Agreement — which in its first paragraph makes clear that "Trammo" refers to "Trammo Petroleum, Inc." — explicitly links TP to gasoline business conducted in Puerto Rico.[74]  Bolstering this reading of the Frame Agreement is the requirement that payment be made to TP, not Caribbean.[75]  It is precisely these gasoline-related contacts that the Commonwealth alleges give rise to liability for TP.  This satisfies both the requirement of minimum contacts with

---

[71]    EIA Report, Ex. 2 to the Declaration of Daniel Boone, counsel for the Commonwealth, in Support of Plaintiffs' Opposition to Motion to Dismiss by Defendants Trammo Petroleum, Inc. and Trammo Caribbean, Inc. (Dkt. No. 262) at 7.

[72]    *See* Declaration of William E. Markstein, Assistant Secretary of TP and Vice President and Assistant Secretary of Caribbean, in Opposition to the Commonwealth of Puerto Rico's Motion for Reconsideration (Dkt. No. 684) ¶¶ 1, 29.

[73]    Frame Agreement at TC_PRII000001.

[74]    *Id*.

[75]    *See id*.

the forum and that the exercise of personal jurisdiction be reasonable.

TP argues, as it has previously, that this is a case of mistaken identity and submits nearly a hundred pages of exhibits in support of this assertion. Although TP admits for the first time that it did indeed enter into the Supply Agreement with Peerless, it maintains that no deliveries were made under that agreement until after it was assigned to Caribbean.[76]  The later amendment to the Supply Agreement by TP "was just an error,"[77] as was the reference to "Trammo Petro Inc." in the EIA report, and as were the references to "Trammo" in the Frame Agreement drafted by TP's own employee.[78]  TP requests layer upon layer of favorable inferences to permit this Court to conclude that it does not have personal jurisdiction over TP.  Such findings would fly in the face of the motion to dismiss standard requiring the Court to "'draw all reasonable inferences in favor of the plaintiffs.'"[79]  Indeed, on a motion to dismiss, a court is compelled to find for the

---

[76]     *See* Def. Mem. at 8.

[77]     *Id*. at 10.

[78]     *See id.* at 10-12.

[79]     *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 151 (2d Cir. 2015), as amended (Dec. 17, 2015) (quoting *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012)).

plaintiff "'notwithstanding any controverting presentation by [the defendant].'"[80]

The argument that persuaded the Court in the Challenged Opinion — that the EIA reference was only a single typographical error — no longer holds water in light of the evidence now before the Court. And the Court's prior conclusion that it would be unreasonable to infer that Peerless' email references to "Trammo" referred to TP because Caribbean maintained the Supply Agreement with Peerless is now quite reasonable given the evidence that TP was the original party to the Supply Agreement.

## V.    CONCLUSION

For the foregoing reasons, the Commonwealth's Motion for Reconsideration is GRANTED, the Court's December 3, 2015 opinion is VACATED as to the finding that the Court lacks personal jurisdiction over Trammo Petroleum, and Trammo Petroleum is reinstated as a defendant. The Clerk of the Court is directed to close this motion (Dkt. No. 677).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

---

[80]    *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

22

Dated:      New York, New York
            April 15, 2016

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robert J. Gordon, Esq.
Robin L. Greenwald, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for the Commonwealth:**

William C. Petit, Esq.
John D.S. Gilmour, Esq.
Jackson Gilmour & Dobbs, P.C.
3900 Essex, Suite 700
Houston, TX 77027
(713) 355-5000

Jorge L. Flores, Esq.
Legal Counsel
Puerto Rico Department of Justice
Olimpo Street, Pda. 11
San Juan, PR 00907
(787) 721-7700

John K. Dema, Esq.
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, VI 00820
(340) 773-6142

Orland H. Martinez, Esq.
Orland H. Martinez Law Offices
Centra de Seguros, Suite 413
701 Ponce de Leon Avenue

24

San Juan, PR 00907
(787) 722-2378

Michael Axline, Esq.
Miller Axline
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
(916) 488-6688

**Liaison Counsel for Defendants:**

James A. Pardo, Esq.
Lisa A. Gerson, Esq.
Michael J. Dillon, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Trammo Defendants:**

Barry R. Temkin, Esq.
Robert S. Goodman, Esq.
Sara N. Lewis, Esq.
Mound Cotton Wollan & Greengrass
One New York Plaza
New York, NY 10004
(212) 809-4200