UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

Master File No. 1:00-1898

MDL 1358 (SAS)

This Document Relates To:

The Honorable Shira A. Scheindlin

*Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al.*, Case No. 14-CV-06228

---

**PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S SUPPLEMENTAL OPPOSITION TO DEFENDANT LUKOIL AMERICAS CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

Defendant Lukoil Americas Corporation's ("LAC") motion to dismiss for lack of personal jurisdiction asserts that it "is merely a holding company, and . . . had nothing to do with the use of MTBE gasoline and no presence in Pennsylvania." Motion at 1. The Declaration of Vincent DeLaurentis, an officer and former director of LAC, states: "LAC has always been a non-operating holding company." The Commonwealth's opposition brief refutes LAC's assertions. In addition, however, newly discovered documents show that Lukoil Americas LLC ("LAL"), LAC's predecessor by merger, was directly involved in providing MTBE gasoline in Pennsylvania.

LAC was formed through the merger in 2006 of two prior corporations, one of which was also named Lukoil Americas Corporation. (Opp. at 10; Enclosure to 4/12/16 letter of J. Tuite to Hon. Scheindlin.) LAL was the other merger party. In responding to the Commonwealth's jurisdictional discovery, LAC apparently provided records from the former LAC, but not from the former LAL. The Commonwealth, however, while reviewing electronic information and some 25,000 boxes it received directly from the GPMI Bankruptcy Trustee, discovered LAL documents directly responsive to the Commonwealth' previous discovery requests, but which LAC did not produce. Moreover, as noted in the Commonwealth's opposition brief (Opp. at 4, n.3), LAC eventually did produce 750,000 pages of documents in November and December 2015, but only after the Commonwealth had learned independently that LAC had possession of and had not produced pre-bankruptcy records of GPMI.

In searching this mass of previously undisclosed information the Commonwealth located a document referencing an October 2, 2000, contract between LAL (predecessor to Defendant LAC by virtue of the merger) and BP. The Commonwealth immediately provided this document to the Court and to LAC's counsel because it bore directly on the pending motion to dismiss. This August 13, 2001, letter from Vadim Gluzman and Vincent DeLaurentis to Moscow Narodny Bank

1

Ltd. references (1) an October 2, 2000, term contract between LAL and BP Exploration & Oil Inc. (doing business as BP North American Petroleum) (BPNAP) ("Contract 6108") and (2) an October 2, 2000, Guarantee issued by OAO Lukoil to BPNAP guaranteeing payment on Contract 6108. See Letter of Michael Axline to the Court of April 11, 2016.

The Commonwealth has now located in the GPMI records a copy of the October 2, 2000, Guarantee referenced above. *See* Exhibit 1, attached. The Guarantee describes Contract 6108 as one "pursuant to which BP will sell gasoline and reformulated blend stock for its oxygenate blending (together "Product") to [LAL]." The Commonwealth also located records of a First Quarter 2002 LAL "sales revenue through petroleum products" spreadsheet. *See* Exhibit 2, attached. This spreadsheet, captioned in both English and Russian Cyrillic, indicates that BP supplied more than 19 million gallons of gasoline to LAL in Pennsylvania in the First Quarter of 2002, and LAL had more than $14 million in "Sales thru Gas Stations" in Pennsylvania in that quarter.

The Commonwealth provided these and other documents to LAC earlier this week and asked LAC, based on these documents, to withdraw its motion to dismiss, because the documents demonstrated that LAL had been directly involved in providing BP gasoline containing MTBE to retail outlets in Pennsylvania. Rather than agreeing to withdraw LAC's motion, however, just minutes before this brief was to be filed counsel for LAC finally sent counsel for the Commonwealth a copy of Contract 6108. That contract calls for BP to provide up to one billion gallons of gasoline at buyers option, including fungible RFG and conventional gasoline, and specifically references MTBE. See Exhibit 3, attached. Although the contract states that it is between BP and yet another Lukoil entity ("Lukoil USA"), LAL is identified in the contract as the buyer. As indicated in the Notification of Assignment sent to Moscow Narodny Bank, LAL is not

2

only the buyer, but plainly negotiated the contract, is the party named in OAO Lukoil's guarantee of the contract, and played a direct, operational role in arranging the delivery of enormous volumes of BP's MTBE gasoline to Lukoil and GPMI retail outlets in Pennsylvania. As indicated in the contract, one of the delivery points for BP's gasoline is the Philadelphia Harbor in Pennsylvania.

LAC's April 12, 2016 letter to the Court states: "LAL was not merged into LAC until June 2006. . . . Accordingly, the Commonwealth's document sheds no light on the relationship between LAC and GPMI during the period in which MTBE gasoline was used." To the contrary, under Pennsylvania law (and under the laws of virtually all states), the resulting merged corporation is liable for the activities of its predecessor. *Dawejko v. Jorgenson Steel Co.*, 434 A.2d 106 (Pa. Super. 1981); *Philadelphia Electric Company v. Hercules, Inc.*, 762 F.2d 303, 308-309 (3rd Cir. 1985) (applying Pennsylvania successor liability law). As a matter of law, the 2006 merger of LAL and LAC transferred LAL's responsibility (and liability) for its pre-merger conduct relating to Pennsylvania to and into the new merged entity, Defendant LAC. In the letter transmitting contract 6108, LAC's counsel argues that the Commonwealth did not plead successor liability between LAL and LAC. LAC's counsel, however, relied on the fact of the merger in LAC's April 12, 2016 letter to the Court and even provided a copy of the merger document. LAC was clearly aware of the merger and should not be allowed to argue that the merger must be pled in the complaint before it can be relied upon by the Commonwealth. Defendant LAC should produce any and all additional responsive LAL and other documents in its possession bearing on LAL's activities related to this litigation.

Based on Plaintiffs' original papers and the documents that are now before the Court, LAL's conduct in and related to Pennsylvania supports personal jurisdiction over LAC and LAC's Motion to Dismiss should be denied.

DATED: April 15, 2016.                                         Respectfully submitted,

**PENNSYLVANIA OFFICE OF**                        **PENNSYLVANIA GOVERNOR'S OFFICE**
**ATTORNEY GENERAL**                                   **OF GENERAL COUNSEL**

James A Donahue, III, Esquire                              Linda C. Barrett, Esquire
Executive Deputy Attorney General                      Deputy General Counsel
Strawberry Square, 14th Floor                              333 Market Street, 17th Floor
Harrisburg, Pennsylvania 17120                           Harrisburg, Pennsylvania 17101
(717) 705-0418                                                        (717) 787-9347
Email: jdonahue@attorneygeneral.gov              Email: lbarrett@pa.gov


**MILLER & AXLINE, P.C.**                                  **BERGER & MONTAGUE, P.C.**

By: /s/ Michael Axline                                            Daniel Berger, Esquire
     Michael Axline, Esquire                                Tyler E. Wren, Esquire
     Duane Miller, Esquire                                    Special Counsel to the
Special Counsel to the                                             Commonwealth of Pennsylvania
Commonwealth of Pennsylvania                          1622 Locust Street
1050 Fulton Avenue, Suite 100                             Philadelphia, Pennsylvania 19103
Sacramento, California   95825-4225                  (215) 875-3000
(916) 488-6688                                                        Email: twren@bm.net
Email: maxline@toxictorts.org                                       danberger@bm.net
      dmiller@toxictorts.org


**COHEN, PLACITELLA & ROTH, P.C.**

Stewart L. Cohen, Esquire
Robert L. Pratter, Esquire
Michael Coren, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
Two Commerce Square
Suite 2900, 2001 Market St.
Philadelphia, Pennsylvania 19103
(215) 567-3500
Email: scohen@cprlaw.com
      rpratter@cprlaw.com
      mcoren@cprlaw.com

    *Attorneys for Plaintiff*
    *The Commonwealth of Pennsylvania*

# EXHIBIT 1

GUARANTY

THIS GUARANTY dated as of October 2, 2000 (the "Guaranty") by OAO LUKOIL, a joint stock company organized under the laws of the Russian Federation (the "Guarantor"), in favor of BP North America, a Division of BP Exploration & Oil Inc. ("BP"), sets forth the irrevocable and unconditional guaranty of the Guarantor.

PRELIMINARY STATEMENT

BP contemplates entering into a sales agreement, dated the date hereof (the "Sales Agreement"), with LUKOIL Americas, L.L.C., a Delaware limited liability company and the indirect wholly-owned subsidiary of the Guarantor (together with any assignees under the Sales Agreement, the "Purchaser") pursuant to which BP will sell gasoline and reformulated blend stock for oxygenate blending (together "Product") to the Purchaser. The Guarantor is willing to provide this Guaranty to induce BP to sell Product to the Purchaser pursuant to the terms of the Sales Agreement.

1. Guaranty.

1.1. Guaranty; Direct Obligations. The Guarantor hereby unconditionally and irrevocably guarantees to BP the full and prompt payment when due of all payment obligations of the Purchaser arising from the purchase of Product from BP under the Sales Agreement (collectively, the "Guaranteed Obligations"). In the event of any default by the Purchaser in the payment of any of the Guaranteed Obligations, the Guarantor shall, on demand by Notice (as hereinafter defined), forthwith pay in full to BP and perform such Guaranteed Obligations. The Guarantor agrees that its obligations set forth herein constitute direct obligations and not merely obligations of surety. This Guaranty is a continuing guaranty, which shall be effective with respect to the payment of the Guaranteed Obligations. The Guarantor's obligations under this Section 1.1 are subject to Section 13 herein.

2. Absolute Obligation; Waiver of Defenses.

2.1. Guaranty Absolute. The Guarantor agrees that this Guaranty constitutes an irrevocable and unconditional obligation to pay and perform all Guaranteed Obligations due and guaranteed hereunder on demand. The Guarantor agrees to make payment strictly in accordance with the terms hereof regardless of any law, regulation or equitable principle now or hereafter in effect which would modify or restrict either the Guaranteed Obligations or the rights of BP with respect to this Guaranty, and the Guarantor confirms the absolute nature of the Guaranteed Obligations. The representations, warranties and covenants set forth in this Section 2.1 are subject to Section 13 herein.

# EXHIBIT 2

Form 25

Calculation of sales revenues from petroleum products for __1__ Quarter of 2002

Расчет выручки от реализации нефтепродуктов на __1__ квартал 2002 г.

LUKOIL Americas LLC
ЛУКОЙЛ Америкас ЛЛС

All numbers in thousands

| | Supply BP | | | Total | | Sales | Sales in Petroleum Terminals (wholesale) | | | | Sales from Gas Stations | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | gallons beg inv | gallons purchases | gallons end inv | Total gallons | Purchases thou $ | Sales thou $ | Total gallons | Purchased thou $ | Sales thou $ | Total gallons | Purchased thou $ | Sales thou $ |
| TOTAL | 27,360 | 163,697 | 0 | 163,097 | 150,802 | 160,567 | 26,927 | 19,718 | 19,993 | 163,370 | 131,084 | 140,886 |
| DELAWARE | 0 | 2,152 | 0 | 2,152 | 1,681 | 1,905 | 127 | 95 | 95 | 2,025 | 1,586 | 1,809 |
| MARYLAND | 0 | 2,826 | 0 | 2,826 | 2,199 | 2,223 | 2,140 | 1,602 | 1,609 | 686 | 538 | 614 |
| NEW JERSEY | 7,939 | 43,423 | 0 | 43,423 | 33,766 | 37,806 | 7,171 | 5,367 | 5,392 | 36,252 | 28,399 | 32,414 |
| PENNSYLVANIA | 0 | 19,345 | 0 | 19,345 | 15,040 | 16,843 | 3,093 | 2,315 | 2,326 | 16,252 | 12,725 | 14,518 |
| CONNECTICUT | 2,298 | 12,568 | 0 | 12,568 | 9,835 | 11,204 | 166 | 124 | 125 | 12,402 | 9,711 | 11,079 |
| MAINE | 0 | 4,038 | 0 | 4,038 | 3,136 | 3,500 | 758 | 567 | 570 | 3,280 | 2,568 | 2,930 |
| MASSACHUSETTS | 5,982 | 32,716 | 0 | 32,716 | 25,585 | 29,096 | 916 | 686 | 689 | 31,800 | 24,899 | 28,408 |
| NEW HAMPSHIRE | 0 | 7,487 | 0 | 7,487 | 5,821 | 6,521 | 1,177 | 881 | 885 | 6,310 | 4,940 | 5,636 |
| NEW YORK | 11,141 | 60,933 | 0 | 60,933 | 47,415 | 53,313 | 9,515 | 7,135 | 7,339 | 51,418 | 40,280 | 45,973 |
| NEW YORK CITY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| RHODE ISLAND | 0 | 4,451 | 0 | 4,451 | 3,484 | 3,969 | 50 | 37 | 38 | 4,401 | 3,446 | 3,932 |
| VERMONT | 0 | 165 | 0 | 165 | 124 | 127 | 148 | 111 | 111 | 17 | 13 | 15 |
| VIRGINIA | 0 | 3,593 | 0 | 3,593 | 2,777 | 3,059 | 1,066 | 798 | 802 | 2,527 | 1,979 | 2,258 |

| Revenues from Sales of Petroleum Products | 169,567 thou. $ |
|---|---|
| Petroleum Product Purchase Costs | 150,802 |
| Gross margin from sales | 18,765 |

# EXHIBIT 3



October 2, 2000

BP Contract Number: U6108

This "Agreement" confirms the details of the sales agreement as verbally agreed on August 30, 2000 by and between Lukoil USA and BP North America Petroleum, a Division of BP Exploration & Oil Inc. ("BP"). Where used in this Agreement, Lukoil USA and BP shall collectively be referred to as the "Parties", and individually referred to as a "Party". Where used herein the "Seller" is the Party delivering product and the "Buyer" is the Party receiving product.

SELLER:
BP North America, a Division of BP Exploration & Oil Inc.
28100 Torch Parkway, 6th Floor North
Warrenville, IL 60555
U.S.A.
Telefax: 001-630-836-6585

BUYER:
Lukoil Americas LLC
540 Madison Ave.
New York, N.Y.

TERM: This Agreement shall be in effect for an initial period commencing between December 1, 2000 and April 1, 2001 at Buyer's option, and shall continue for one year with automatic yearly renewals thereafter.

PRODUCT TYPE: Fungible RFG and Conventional Gasoline meeting all EPA regulations. During the period May 1 through September 15 ("Summer Season"), subject to EPA regulations, gasoline sold under this Agreement shall meet Colonial A2, M2, D2 and V2 specifications. During the period September 16 through April 30 ("Winter Season"), subject to EPA regulations, gasoline sold under this Agreement shall meet Colonial A4, M4, D4 and V4 specifications. In addition, during the Winter Season only, Seller will supply Reformulated Blendstock for Oxygenate Blending ("RBOB") for destination ethanol blending terminals.

QUANTITY: ~~250 million gallons per annum plus or minus ten percent~~ Up to 1,000,000,000 gallons per annum VG  BSW  at Buyer's option to be delivered on a rateable basis.

DELIVERY: Via Buckeye Pipeline or loaded onto Buyer's nominated barge FOB Linden, New York or Philadelphia Harbor at buyer's option.

NOMINATIONS/SCHEDULING: On or before the twentieth of each month, Buyer shall notify Seller in writing of its proposed requirements schedule for the next following month, indicating grades, volumes and dates. Five days prior to delivery, Buyer shall notify Seller of two-day loading range for barge or Buckeye Pipeline nominations specifying volume and product type.

PRICE:
For 87 Octane RFG and 87 Octane Conventional Gasoline:
The price for deliveries made during the 1st (first) through and including the 15th (fifteenth) day of each month shall be the arithmetic average of the daily LOW price quotations for 87 Unleaded Gasoline, Conventional or RFG as the case may be, basis New York Harbor Barge, as published in all issues of Platts Oilgram effectively dated on the first ~~three~~ publication dates of the calendar month. The price for deliveries made during the 16th (sixteenth) day of each month through and including the last day of each month shall be the arithmetic average of the daily LOW price quotations for 87 Unleaded Gasoline basis New York Harbor Barge, as published in all issues of → now it's 6 days (see the amendment)

BSW                                                                                                                VG

Platt's Oilgram date on the three publication dates immediately following the 15th (fifteenth) day of the month. (6)

For 93 Octane RFG and 93 Octane Conventional Gasoline:
The price for deliveries made during the 1st (first) through and including the 15th (fifteenth) day of each month shall be the arithmetic average of the daily LOW price quotations for 93 Unleaded Gasoline, Conventional or RFG as the case may be, basis New York Harbor Barge, as published in all issues of Platts Oilgram effectively dated on the first three publication dates of the calendar month. The price for deliveries made during the 16th (sixteenth) day of each month through and including the last day of each month shall be the arithmetic average of the daily LOW price quotations for 93 Unleaded Gasoline basis New York Harbor Barge, as published in all issues of Platt's Oilgram date on the three publication dates immediately following the 15th (fifteenth) day of the month. (6)

For 87 RFG RBOB:
The price for deliveries made during the 1st (first) through and including the 15th (fifteenth) day of each month shall be the arithmetic average of the daily midpoint price quotations for 87 RFG Unleaded Gasoline (87 RFG), 93 RFG Unleaded Gasoline (93 RFG) and MTBE basis New York Harbor Barge, as published in all issues of Platts Oilgram effectively dated on the first three publication dates of the calendar month using the following formula: $((87\ RFG - (.11 * MTBE))/.89) + ((93\ RFG - 87\ RFG)/6 * (.74))$. The price for deliveries made during the 16th (sixteenth) day of each month through and including the last day of each month shall be the arithmetic average of the daily midpoint price quotations for 87 RFG Unleaded Gasoline, 93 RFG Unleaded Gasoline and MTBE basis New York Harbor Barge, as published in all issues of Platt's Oilgram date on the three publication dates immediately following the 15th (fifteenth) day of the month using the following formula: $((87\ RFG - (.11 * MTBE))/.89) + ((93\ RFG - 87\ RFG)/6 * (.74))$.

For 93 RFG RBOB:
The price for deliveries made during the 1st (first) through and including the 15th (fifteenth) day of each month shall be the arithmetic average of the daily midpoint price quotations for 93 RFG Unleaded Gasoline, 87 RFG Unleaded Gasoline and MTBE basis New York Harbor Barge, as published in all issues of Platts Oilgram effectively dated on the first three publication dates of the calendar month using the following formula: $((93\ RFG - (.11 * MTBE))/.89) + ((93\ RFG - 87\ RFG)/6 * (.15))$. The price for deliveries made during the 16th (sixteenth) day of each month through and including the last day of each month shall be the arithmetic average of the daily midpoint price quotations for 93 RFG Unleaded Gasoline, 87 RFG Unleaded Gasoline and MTBE basis New York Harbor Barge, as published in all issues of Platt's Oilgram date on the three publication dates immediately following the 15th (fifteenth) day of the month using the following formula: $((93\ RFG - (.11 * MTBE))/.89) + ((93\ RFG - 87\ RFG)/6 * (.15))$.

Any published corrections to any of the relevant quotations shall be taken into account. All averages shall be rounded to 4 decimal places with all further decimal places truncated.

INVOICING AND PAYMENT:

On the fifteenth day of each month, Seller shall fax a provisional invoice to Buyer for deliveries made during the first day through the fifteen day of the month. If the fifteenth day of the month falls on a Saturday, Sunday or on a U.S. bank holiday, Seller shall fax the invoice on the next subsequent banking day. Provisional payment shall be made by Buyer to Seller no later than two banking days after receipt of such provisional invoice.

On the last day of each month, Seller shall fax a provisional invoice to Buyer for deliveries made during the sixteenth day of the month through the last day of the month. If the last day of the

**PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE**

*Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al.,*
United States District Court, Southern District of New York Case No. 14-cv-06228 (SAS)

  I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action. My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225.

  On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

**PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S SUPPLEMENTAL OPPOSITION TO DEFENDANT LUKOIL AMERICAS CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

  I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

  Executed on April 15, 2016, at Sacramento, California.

*/s/ Tonya L. Zimmerman*
TONYA L. ZIMMERMAN