# McDermott Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

**BY HAND DELIVERY AND ELECTRONIC MAIL**               April 21, 2016

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

    Re:    *In Re: MTBE; MDL No. 1358; Master File C.A. No. 1:00-1898 (SAS)*
             *Defendants' Preconference Reply Letter*

Dear Judge Scheindlin:

    Defendants respectfully submit this reply letter in advance of the April 26 conference.

## JOINT AGENDA ITEMS

### I.   *New Jersey*: Phase II Issues

    The parties held a meet-and-confer on April 20 and will continue to confer in advance of the conference. Based on that discussion, it is clear that both sides agree that certain reciprocal discovery is necessary to progress Phase II of the case. In fact, sections 1(a) and 1(b) of Defendants' proposed CMO (*see Defs.' Apr. 18 Ltr.* at Ex. A), address two major areas about which the parties largely are in agreement – Plaintiffs' supplementation of several State databases and Defendants' provision of nine topics of release site information. Some disputes remain and, if not resolved before the conference, Defendants will be prepared to discuss them with the Court next week.

    What does remain in dispute is certain language that Plaintiffs insist on including in their proposed Phase II CMO about future trial structure. Specifically, Plaintiffs ask the Court to mandate now – in advance of any discovery or any better understanding as to the scope of the case – that the entirety of what remains will be completed in a single trial. Not only is this request premature because the parties do not know what remains, it assumes that Plaintiffs have proposed a specific structure in which a single trial can dispense with all remaining claims in a manner that overcomes Defendants' many constitutional and other concerns. But Plaintiffs have made no such proposal. Indeed, Plaintiffs have not articulated any specific plan for Phase II of *New Jersey*, making only vague references to proceeding as in *New Hampshire* but providing no

The Honorable Shira A. Scheindlin
April 21, 2016
Page 2

detail at all about how this would (or could) actually work in *New Jersey*. Assuming that Plaintiffs still intend to proceed with some form of statistical extrapolation to establish statewide injury and damages, we do not see how the parties or the Court can commit to "one more trial" before the viability of this approach is resolved, nor how the issue can be briefed before basic discovery is completed and Plaintiffs' plan for use of statistical evidence is more adequately explained. In fact, Plaintiffs' proposed *Pennsylvania* CMO acknowledges that the use of statistical extrapolation to establish statewide injury and damages is far from a foregone conclusion, as they suggest a briefing schedule be set to address "the use of statistical evidence to prove statewide claims." *Pls' Apr. 18 Ltr.* at Ex. D.[1] In any event, if "one more trial" ever is to be possible, Defendants believe significant narrowing of sites and claims would first have to happen. The reciprocal discovery described above, and other aspects of Defendants' proposed CMO, are aimed at making such narrowing possible. *See Defs.' Apr. 18 Ltr.* at 3 & Ex. A.

The problem with Plaintiffs' insistence on crafting today, in the MDL court, a special verdict form for use in a future trial, is that it is incredibly premature. Any discussion of special verdict forms must be done after summary judgment (and other dispositive or limiting) motions and, at minimum, discussion with the trial judge.

## II.     *Puerto Rico I*: Phase II Issues

Defendants' opening letter describes some of the failings of Plaintiffs' proposed CMO – *e.g.*, it fails to acknowledge the current, ongoing discovery authorized by the Court, and it fails to recognize the unique factual and legal issues in *Puerto Rico*. Defendants have since sent a meet-and-confer letter to Plaintiffs further detailing our concerns, and Defendants will continue to discuss these issues with Plaintiffs leading up to and, if necessary, after the conference. *See Ltr. from S. Dillard to M. Axline* (Apr. 20, 2016) (at Ex. 1).

However, because Plaintiffs have rushed to submit an unworkable CMO, Defendants have developed an alternative – one that is workable and will put the parties in a position to discuss any number of possible case structures for dealing with remaining sites. *See Proposed CMO* (at Ex. 2). Specifically, Defendants' Proposed CMO sets mutual deadlines of June 4 for the parties to respond to outstanding discovery (that provides 90 days for Plaintiffs' responses and 60 days for Defendants' responses, as Defendants served their set a month earlier). The CMO then sets forth a procedure aimed at addressing the "low-hanging fruit." That is, based on the Court's prior rulings on prescription, Defendants believe the already relatively limited number of sites that remain at issue in the case can be further narrowed through stipulation or motion practice. As it currently stands, *Puerto Rico I* covers 354 sites, but Defendants anticipate a significant number of those sites will be time-barred under Puerto Rico's one-year time

---

[1] Pennsylvania Plaintiff's suggestion in their CMO (para. 1) that the Court ordered the parties to discuss Pennsylvania case structure issues at the last conference is contradicted by the record. Plainly, the parties and the Court were discussing case structure for *New Jersey*, which is much further along than *Pennsylvania* where Defendants have yet to even answer. Defendants believe such briefing in *Pennsylvania* is extremely premature.

The Honorable Shira A. Scheindlin
April 21, 2016
Page 3

prescription period.

Finally, Defendants' Proposed CMO suggests that, even without waiting for decisions on the above-referenced motions, the parties will promptly confer regarding additional necessary discovery, creation of a matrix containing relevant information for all sites, and options for case structuring to facilitate efficient resolution of the remaining sites in as few trials as necessary.

### III. *Pennsylvania*: Next CMO

Plaintiff's unilateral submission of an unvetted CMO is premature and improper. The parties held an in-person meet-and-confer in Philadelphia on March 16. At the end of those discussions, the parties agreed that Defendants would attempt to memorialize the discussions (and the agreements reached) in a draft CMO. That draft CMO was sent by Defendants to Plaintiff on April 5. Last week, Plaintiff provided Defendants with a markedly different proposal that bore little resemblance to the issues discussed and agreements reached on March 16, and suggested that the parties meet and confer to reconcile, as much as possible, their differences. Nonetheless, before the parties held a single call, Plaintiff's counsel informed us of their intent to put this issue on the agenda for April 26 and attached their proposal to their preconference letter. That proposal can only be described as one-sided "discovery by CMO" that is designed to provide Plaintiff with what it needs for prosecution of their case while providing nearly none of the information that Defendants seek in support of their defenses. The Court should order the parties to complete the meet-and-confer process – as Plaintiff first suggested – before entertaining any joint or competing CMO proposals. However, if the Court is inclined to sign any CMO at the April conference, Defendants attach at Exhibit 3 their proposal, and discuss below a few of their concerns with the competing proposals.

    a. Non-Site-Specific Discovery – Defendants propose that full non-site-specific discovery should be open. Plaintiff deletes this provision entirely. Although CMO 119 already permits written discovery on a number of non-site-specific topics (*see* CMO 119 § V), Defendants believe that – nearly two years after filing – any existing restrictions on non-site-specific discovery should be removed.[2] Of course, Plaintiff would retain the right to object to any such discovery served by Defendants, but that process should proceed under the Federal Rules of Civil Procedure, not via Court order.

    b. Plaintiff's Document Requests – Plaintiff's proposal, although purporting to keep limits on non-site-specific discovery, includes a number of provisions that are essentially broad statewide document requests on matters of interest to Plaintiff. *See Pls.' Apr. 18 Ltr.* at Ex. D, §§ III.F, IV.A-C. For example, the first of these provisions asks the Court to order production by Defendants of "all distribution, delivery and exchange agreement information [gasoline supply agreements], including retail supply contracts, branding agreements, branded

---

[2] The parties have previously discussed availability of depositions under CMO 119. Although Plaintiff did not object completely to depositions, its counsel wanted pre-approval of notices before they were served. Defendants objected to seeking such pre-approval.

The Honorable Shira A. Scheindlin
April 21, 2016
Page 4

jobber contracts, and unbranded jobber contracts which concern, refer or relate to sites on the MTBE Release Site List." *Id.* § III.F. This is a document request, as are the following three sections of Plaintiff's proposal.[3] If Plaintiff wants to take discovery on certain non-site-specific topics – *e.g.*, "market share" information and exchange agreements, etc. – such would be available to them under Defendants' proposal to fully open non-site-specific discovery. In short, the better approach is for this information to be requested and produced through traditional discovery channels. In fact, in the *Puerto Rico* action, these topics were the subject of the plaintiffs' *First Set of Interrogatories to Defendants* and, later in the case, when the plaintiffs sought MTBE testing information, the Court directed them to serve document requests. *Apr. 12, 2012 Hrg. Tr.* at 42:7-20. There is no justification for the Court to order these massive statewide document productions before discovery even has been served.

       c. Site-Specific Discovery – The parties are in agreement that some site-specific discovery should be undertaken at this time. For example, there is general agreement on creation of a master site list.[4] For additional site-specific discovery, Plaintiff suggests a meet-and-confer. *See Pls.' Apr. 18 Ltr.* at Ex. D, § V. Although the parties have yet to discuss this, Defendants certainly are not opposed to such a meet-and-confer. However, if it is to occur, that discussion also should address the site-specific discovery suggested in Plaintiff's proposed CMO. *See id.* §§ III.E & III.F.

       d. Newly-Added Defendant Deadlines – Defendants that were newly added to the case by the Second Amended Complaint – many of which were only recently served – do not object to including deadlines to make disclosures pursuant to CMO 119. However, certain of the deadlines included in Plaintiff's proposed CMO are too soon for defendants brand new to this MDL, and are inconsistent with the amount of time afforded to Defendants named in the original Complaint.[5] Defendants will be reaching out to Plaintiff to negotiate appropriate deadlines.

       e. Environmental Consultant Subpoenas – CMO 119 set forth Defendants' obligation with respect to these third-party subpoenas (*see* CMO 119 § D), and Defendants have confirmed compliance with those obligations. If Plaintiff has motions to compel that it wishes to file against third-parties, Defendants do not object to those being decided by Special Master Warner, but the venue for motions to compel is governed by Federal Rules of Civil Procedure

---

[3] Moreover, each of the requests – in the guise of a proposed Court order – is riddled with vagueness and ambiguity problems.

[4] One exception to that general agreement is Plaintiff's deletion of Defendants' proposed section III.C, which provides a time period for resolution of disputes regarding any party's site list. While Defendants are open to a different time period, it is important to work out any disagreements at an early stage. For example, Plaintiff's MTBE release site list sometimes includes the same site or the same address multiple times.

[5] Although certain CMO 119 deadlines appear shorter than those now suggested, that CMO was negotiated over a period of time during which the parties were able to begin their discovery efforts.

The Honorable Shira A. Scheindlin
April 21, 2016
Page 5

45(d) and (f) – Defendants cannot consent to a different venue on behalf of third parties. Finally, Plaintiff has requested that the Court approve its proposed additional third-party subpoenas. While it is certainly unusual to request permission to serve third-party subpoenas, since Plaintiff has done so, Defendants object to any suggestion by Plaintiff to third parties that the topics of their subpoenas have been Court-authorized or that the third parties somehow are deprived of their rights under Rule 45.

## DEFENDANTS' AGENDA ITEMS

### I.   *Pennsylvania*: Dismissal Request for Newly Added ExxonMobil Entities.

Plaintiff's Second Amended Complaint added three new ExxonMobil "entities" – Exxon Company, U.S.A.; ExxonMobil Refining & Supply Company; and Mobil Oil Corporation (collectively, "New ExxonMobil Entities"). These new entities were in addition to existing defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation ("ExxonMobil").

In January, ExxonMobil informed Plaintiffs, with citation to former filings, that Exxon Company, U.S.A. and ExxonMobil Refining & Supply Company are unincorporated divisions of named defendant Exxon Mobil Corporation,[6] and that "Mobil Oil Corporation" is the prior name of named defendant ExxonMobil Oil Corporation. Therefore, ExxonMobil requested that Plaintiffs voluntarily dismiss the New ExxonMobil Entities. Plaintiff has agreed to do so, but their proposed dismissal is without prejudice. Because these entities lack capacity to be sued, ExxonMobil believes the dismissal should be with prejudice.

Sincerely,

*James A. Pardo*

James A. Pardo

cc:   All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

---

[6] *See, e.g., E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 77 F. Supp. 2d 71, 75 (D.D.C. 1999) (discussing "line of precedent holding that unincorporated divisions of a corporation lack legal capacity to be sued"); *Greenbaum v. Handlesbanken*, 26 F. Supp. 2d 649, 654 (S.D.N.Y. 1998) ("unincorporated division of a corporation cannot be sued").

# Exhibit 1

April 20, 2016

Michael D. Axline, Esq.
MILLER, AXLINE & SAWYER
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4225

John Gilmour, Esq.
JACKSON GILMOUR & DOBBS, PC
3900 Essex, Suite 700
Houston, Texas 77027

Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
United States

Direct line +1 713 651 5507
steve.dillard@nortonrosefulbright.com

Tel +1 713 651 5151
Fax +1 713 651 5246
nortonrosefulbright.com

Re:  Master File C.A. No. 07-CV-10470; MDL No. 1358 (SAS) M21-88
     *Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*

Dear Counsel:

As a follow-up to the March 29, 2016 status conference, Defendants write in the *Puerto Rico* matter to further the meet-and-confer process regarding Phase II. The *Puerto Rico* case presents several factual and legal issues fundamentally different from other MTBE cases. Unfortunately, your proposed CMO for *Puerto Rico*, which is essentially identical to your proposed CMO for *New Jersey*, fails to account for these differences and is therefore unacceptable. Defendants have identified several of the key differences below, each of which and together make a statistical extrapolation, island-wide case unworkable.

### 1. *The number of sites at issue in Puerto Rico is comparatively small and the case is by no means unmanageable.*

*Puerto Rico I* and *Puerto Rico II* are site-specific cases. Both Plaintiffs and Defendants have attached site lists to their recent respective non-trial site discovery requests. Those site lists are identical and cover <u>354</u> release sites in the *Puerto Rico I* matter. Plaintiffs' counsel indicated at the March 29 status conference that the likely number of release sites with impacted wells at issue in Puerto Rico is "roughly 400." *See* Transcript March 29, 2016 Status Conference at 12:19-13:2. In contrast, in the *New Hampshire* case to which you have referred, the State alleged hundreds of thousands of private wells had been impacted by MTBE. Moreover, full and complete responses to the *Puerto Rico* Defendants' recent non-trial site discovery requests, to which Plaintiffs have not served objections, will provide information about Defendants' statute-of-limitations defense that will likely significantly reduce the number of remaining sites at issue in *Puerto Rico*. And, the number of sites at issue could be further reduced if, as Defendants believe, the Commonwealth is found to be an impermissible nominal party with regard to MTBE contamination, if any, in both PRASA wells and privately owned wells. In other words, *Puerto Rico* is entirely manageable on a site-specific basis.

April 20, 2016
Page 2

### 2. *Plaintiffs have consistently argued they can conduct tracing in the Puerto Rico matter.*

The Commonwealth has neither argued nor shown that it cannot trace MTBE-gasoline to specific sources. In fact, Plaintiffs have already confirmed that tracing is workable at the Phase I trial sites, all of which involve different subsets of the defendants. *See* Transcript Jul. 15, 2014 Status Conference at 33:23-34:10. Moreover, Plaintiffs have previously identified for one defendant all of the sites to which that defendant is supposedly connected. Finally, in approving the defendants Phase II discovery, Judge Scheindlin confirmed that she viewed this case as one where tracing was appropriate. *See* Transcript Dec. 22, 2015 Status Conference at 18:5-12.

### 3. *Plaintiffs' proposed "mini-trial" as to certain "claims" disregards the general liability issues that will be addressed by the Phase I trial.*

Judge Scheindlin suggested that the parties should proceed with the Phase I trial on the remanded trial sites and, if the Phase I trial does not result in settlements as to the remaining sites, then it may be appropriate to implement an alternative strategy for Phase II. *See* Transcript March 29, 2016 Status Conference at 15:6-21. Plaintiffs' counsel seemed to agree with the Court's statement as to the timing of implementing a new strategy for resolving the remaining claims and that Phase I would be an "all issues" trial. *Id.* at 9:17-20. In other words, the results of the Phase I trials will inform how Phase II will be conducted.

We are also concerned that your proposed CMO is misleadingly simplistic with regard to any "mini-trial." We had thought that the listing of some but not all of Plaintiffs' claims for a mini-trial meant the other claims were being dropped. We have learned from your position in the *New Jersey* case that you, in fact, are not dropping any claims. The failure to explain how all claims would be addressed in Phase II is a fundamental problem with your proposed CMO.

### 4. *Plaintiffs have not alleged and could not establish a "single indivisible injury to the groundwater."*

*New Hampshire*'s statewide statistical extrapolation approach was reportedly permitted upon the trial court's finding that MTBE contamination constituted a single indivisible injury to the groundwater, which allowed the State to prove its damages using state-wide proof. The *Puerto Rico* case, to the contrary, is based on separate alleged injuries to distinct water resources and, in addition, has proceeded from the beginning as a site-specific case only. *See, e.g., Opinion & Order* (Jul. 8, 2008) (requiring Plaintiffs to identify approximate boundaries and approximate locations of allegedly impacted water resources). Third Am. Complaint ¶ 5 (defining specific resources at issue.) (Indeed, Plaintiffs filed the *Puerto Rico II* case to add a limited number of specific additional sites, which Plaintiffs then sought unsuccessfully to consolidate with the *Puerto Rico I* case.) Thus, the definition of the resources at issue in this matter, according to the Commonwealth itself, negates an argument that a single indivisible injury to groundwater exists.[1]

---

[1] The Commonwealth also took positions in opposing Defendants' Motion for Summary Judgment Based on Statute of Limitations that are in conflict with an assertion of single, indivisible injury in Puerto Rico. The Commonwealth

April 20, 2016
Page 3

### 5. *Prescription is a defense unique to Puerto Rico that impacts how Phase II should be conducted.*

In *New Hampshire*, there was no statute of limitations defense available to the defendants. In contrast, in *Puerto Rico*, liability at certain sites is prescribed. Indeed, Plaintiffs' responses to written discovery propounded by Idemitsu indicated that 10 of 14 sites at issue (that is, 71%) were time-barred, based on the dates of detection provided by Plaintiffs. On the other hand, if Plaintiffs seek to proceed on the notion that MTBE impacts to the "waters of the Commonwealth" represent damage to a single indivisible resource,[2] then it logically follows that Plaintiffs' knowledge of MTBE detections in this alleged "single" resource from the mid-1990s through 2006 should bar all of Plaintiffs' claims. If, as Defendants suspect, many if not most of the release sites are barred by limitations, then the manner in which Phase II is conducted will be significantly impacted.

### 6. *Plaintiffs' claims for NRD damages are inconsistent with statistical extrapolation.*

Ever since the *Puerto Rico* matter was filed in 2007, Plaintiffs have asserted Natural Resource Damages ("NRD") as a damages model. *See, e.g.,* Plaintiffs' Third Am. Complaint pp. 40-48. Indeed, this was the focus of discovery in this matter, including written discovery, 30(b)(6) depositions, and damages experts. It is unclear to us whether Plaintiffs are suggesting they would move away from the NRD model in order to seek statistical extrapolation on an island-wide basis. Plaintiffs have not explained to Defendants or the Court how the proposed statistical extrapolation would impact Plaintiffs' pending NRD claims.

### 7. *Puerto Rico law requires proof of injury and causation on site-specific and defendant-specific bases.*

Plaintiffs' proposed CMO is predicated on a flawed assumption—that any Defendant connected with MTBE can be presumed to have caused an injury. Puerto Rico law, however, is clear that before a defendant can be held liable for damages a plaintiff must prove by a preponderance of evidence on a site-specific basis that such defendant is factually connected to a site where an injury exists. *See, e.g., Computec Sys. Corp. v. Gen. Automation, Inc.*, 599 F. Supp. 819, 827

---

argued that its claims at the trial sites were not time-barred, in part, because the Defendants' had not shown "MTBE was detected in Class SG-1 waters" rather than "in shallow aquifers that did not threaten drinking water supplies." *See* Plaintiffs' Opposition to Certain Defendants' Motion for Partial Summary Judgment Based on Statute of Limitations, *In Re: MTBE*, Master File No. 1:00-1898, MDL 1358 (SAS) M21-88 (*Commonwealth of Puerto Rico.*, No. 07-CIV-10470), at 3. The Commonwealth further argued that "Defendants cannot simply assume as a matter of law that the detections upon which they rely occurred in Class SG-1 groundwater . . . ." *Id.*

[2] Such an argument contradicts prior arguments by the Commonwealth in this matter. In its opposition to Defendants' Motion for Summary Judgment, the Commonwealth argued that "Defendants' Brief is devoid of any analysis or evidence that would meet its site-by-site burden with respect to whether the injury alleged in the Third Amended Complaint ("TAC") occurred outside the statute of limitations period at each of the four trial sites." Plaintiffs' Opposition to Certain Defendants' Motion for Partial Summary Judgment Based on Statute of Limitations, *In Re: MTBE*, Master File No. 1:00-1898, MDL 1358 (SAS) (*Commonwealth of Puerto Rico.*, No. 07-CIV-10470), at 3.

82450720.1

April 20, 2016
Page 4

(D.P.R. 1984) (Cerezo, J.) ("Unless the damage claimed is proven to have in fact existed and to have been related to the injurious act, no compensation can be awarded, for Puerto Rico law does not sanction punitive damages.") Indeed, Judge Scheindlin acknowledged that liability cannot exist without proof of causation. *See* Transcript March 29, 2016 Status Conference at 24:25-25:13. Plaintiffs have not explained how causation would be addressed under your proposed Phase II approach.

In products liability litigation in Puerto Rico, a plaintiff must identify the injury-causing product and its manufacturer. *See Aponte Rivera v. Sears Roebuck de Puerto Rico, Inc.*, 144 D.P.R. 830, 839 (1998). The requirement to identify the injury-causing product and its manufacturer serves, in part, to ensure that a wrongdoer be held liable only for the harm that it caused. *See Santiago v. Sherwin-Williams, Co.*, 3 F.3d 546, 550 (1st Cir. 1993). Moreover, under the Puerto Rico general tort statute and the standard used by the Puerto Rico Supreme Court for products liability, proof of causation is required. Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws § 5141 (the general tort statute) provides for liability against "[a] person who by an act or omission causes damage to another through fault or negligence . . . ." 31 P.R. Laws Ann. § 5141. The Supreme Court of Puerto Rico has refused to impose liability on a party where no causation has been established. *See Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700, 706 (1990) (plaintiff failed to establish causation between the damage and defendant's alleged negligence); *Arroyo López v. E.L.A.*, 126 D.P.R. 682 (1990) (holding that the mere violation of a law, regulation or statute is not enough to impose liability; plaintiff must establish a causal relationship between such violation and the harm suffered). In other words, tort law in Puerto Rico is based on a corrective model theory not an instrumentality theory.

### 8. *Market share is not available in Puerto Rico.*

Plaintiffs' proposed CMO also appears predicated on the assumption that a market share approach can be used in conjunction with statistical extrapolation, something that you suggested to the Court on March 26 as well. *See* Transcript March 29, 2016 Status Conference 26:24-27:11. But the Puerto Rico Supreme Court has not adopted the market-share liability doctrine and there is no indication that it will. To the contrary, applying the market share doctrine in Puerto Rico would constitute a departure from the traditional starting point in products liability litigation, where a plaintiff must identify the injury-causing product and its manufacturer. Moreover, a market share approach in combination with statistical extrapolation would relax Plaintiffs' burden to the point that a determination of liability by the finder of fact would be pure guesswork. Under a market share theory, there is already an acknowledgement that a particular defendant likely did not cause the specific harm at issue. Statistical extrapolation further attenuates the defendant's conduct from the specific harm such that Defendants' Due Process rights would essentially be elimated.[3]

---

[3] Moreover, there are multiple markets in Puerto Rico – e. g. refining/manufacturing/blending, wholesale/distribution, retail. Plaintiffs have not explained how a "market share" approach would work across these unique markets.

April 20, 2016
Page 5

### 9. *Defendants remain committed to participating in discovery that will lead to an efficient trial strategy for Phase II.*

Defendants will continue to engage in a meet-and-confer process that is specific to and recognizes the uniqueness of the *Puerto Rico* case, as outlined above. Judge Scheindlin recognized that the Court cannot "impose" certain obligations on the parties. *See* Transcript March 29, 2016 Status Conference at 7:11-13; *see also In re Chevron*, 109 F.3d 1016, (5th Cir. 1997) (discrediting "binding" bellwether models).

At the status conference, Judge Scheindlin described the creation of informational categories (which some have referred to as "buckets") into which groups of cases could be placed for possible future resolution. *See* Transcript March 29, 2016 Status Conference at 8:10-14. This kind of approach – or other similar ones – is dependent on the production of data essential to determining which sites are in play before groupings can be created. If the production of data and motion practice were to sufficiently reduce the scope of the case, it might even be possible to try the remaining sites in a single second trial. Regardless of the approach, the parties appear to agree that considerable information is required. From Defendants' perspective, at a minimum this would include the date Plaintiffs first had knowledge of the release of gasoline at sites, the date Plaintiffs first had knowledge of the presence of MTBE in soil or groundwater at sites, the most current MTBE detection levels in Plaintiffs' possession, the existence and extent of any off-site contamination at sites, and which sites on Plaintiffs' list are under active remediation. As a first step in analyzing how Phase II should be conducted, this information must be provided. We are ready to discuss the most efficient way to develop such information, but any process requires that essential data be produced before the parties can have a meaningful discussion of how Phase II in this case should be conducted.

Very truly yours,

Stephen C. Dillard

SCD/bc

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER ("MTBE) PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Commonwealth of Puerto Rico v. Shell Oil Co., et al.*, No. 07 Civ. 10470 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

SHIRA A. SCHEINDLIN, U.S.D.J.

### [PROPOSED] CASE MANAGEMENT ORDER NO. ___

This Case Management Order sets forth deadlines for the next phase of discovery in above-referenced case.

WHEREAS on December 22, 2015, the Court authorized Defendants to serve limited site-specific discovery;

WHEREAS on March 4, 2016, Defendants served their First Set of Discovery on Non-Trial Sites, which sought information on the 354 non-trial sites now remaining in the case; and

WHEREAS Plaintiffs have not yet served objections or responses, but have stated their intent to respond to only one of four interrogatories;

NOW THEREFORE IT IS ORDERED THAT:

1.  By June 4, 2016, Plaintiffs shall respond to Defendants' March 4, 2016 First Set of Discovery on Non-Trial Sites, as written.

2.  By June 4, 2016, Defendants shall respond to Plaintiffs' April 5, 2016 Fifth Set of Document Requests.

3.  Defendants are authorized to serve site-specific discovery similar in topical scope to Plaintiffs' Fifth Set of Document Requests.

4. By the later of sixty (60) days following Plaintiffs' response to Defendants' First Set of Discovery on Non-Trial Sites, the completion of any motion practice related thereto, or completion of any follow-up discovery, the parties will meet and confer regarding stipulated dismissal of sites consistent with the Court's October 1, 2015 Opinion.

5. To the extent sites remain following any such stipulations, within forty-five (45) days after the parties' meet-and-confer in Paragraph 4 has been completed, Defendants may file site-specific summary judgment motions on grounds of prescription and/or laches. The filing of these motions shall not prejudice Defendants' opportunity to file additional summary judgment motions at a later date.

6. Within 30 days following filing of Defendants' initial summary judgment motions on grounds of prescription and/or laches, the parties shall begin the meet-and-confer process regarding:

   a. Further discovery required for the remaining sites in the case;

   b. Creation of a matrix for the remaining sites that includes information on first reported release dates; first reported MTBE detection dates; remedial status; current MTBE concentrations; and any other categories on which the parties agree; and

   c. Creation of an efficient case structure for resolution of the remaining sites in as few trials as necessary.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
       April __, 2016

# **Exhibit 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | Master File No. 1:00-1898<br>MDL 1358 (SAS) M21-88 |
| This documents relates to:<br><br>*Commonwealth of Pennsylvania, et al. v. Exxon Mobil Corporation, et al.*, Case No. 1:14-cv-06228 SAS | |

SHIRA A. SCHEINDLIN, U.S.D.J.

### [PROPOSED] CASE MANAGEMENT ORDER NO.

This Case Management Order defines the next phase of discovery in the above-captioned case.

I. **NON-SITE-SPECIFIC DISCOVERY:** To the extent any limitations previously existed on the scope of non-site-specific discovery, such limitations are removed and the parties may engage in full non-site-specific discovery, including depositions.

II. **ORGANIZATIONAL STRUCTURE 30(b)(6) DEPOSITION:** The parties will confer to select mutually-convenient days for the Organizational Structure 30(b)(6) deposition noticed by Defendants. The deposition will be taken at Plaintiff's Harrisburg Office. Consistent with the 30(b)(6) protocol most recently approved in MDL 1358, seven (7) business days prior to the deposition, Plaintiff shall identify the witnesses it will proffer; identify the topics on which each witness will provide testimony; and produce all responsive documents requested in Defendants' Notice. The deposition shall be completed in accordance with and consistent with PTO 79.

### III. MTBE RELEASE SITE LISTS:

A. To the extent not already completed, Defendants will produce updated CMO 119 § III.A Site Lists in compliance with the Court's direction at the February 16, 2016 status conference and in Excel format. As used herein, "Defendants" refers to those defendants served with the complaint prior to entry of CMO 119. Subsequently added Defendants will confer with Plaintiff regarding a date for service of their CMO 119 § III.A Site Lists.

B. By April 12, 2016, Plaintiff shall produce an updated CMO 119 § II.A Site List containing "Primary Facility" and "Facility ID" numbers, to the extent located after reasonable diligence. Such list shall be produced in Excel format and, to the extent any sites have been added since production of Plaintiff's December 31, 2015 Site List, such sites shall be identified in some manner.

C. To the extent any disputes exist regarding the contents of any party's Site List, the parties shall attempt in good faith to resolve such disputes by May 13, 2016.

D. Plaintiff will provide to Defendants a list of environmental consultants on which Plaintiff has served a subpoena and which Plaintiff alleges have not been responsive. To the extent not already done, each Defendant agrees to inform its environmental consultants that have been subpoenaed by Plaintiff that it does not object to the consultant producing responsive, non-privileged documents and expects the consultant to comply with its obligations under Federal Rule of Civil Procedure 45.

IV. **LIMITED SITE-SPECIFIC DISCOVERY:**

    A. COUNTY RIGHT TO KNOW LAW REQUESTS: The parties agree to work cooperatively to issue a Right to Know Law request to each county in Pennsylvania regarding (1) the locations of private drinking water wells in the county; (2) MTBE testing and detection information, including any relevant databases, for public and private drinking water wells; and (3) documentation of complaints to county agencies or officials regarding the quality, taste or odor of any drinking water. The parties will share the cost of copying and certifying any documents produced in response to all Right to Know Law requests issued pursuant to this CMO.

    B. DEPOSITIONS: During percipient witness depositions and 30(b)(6) depositions on non-site-specific topics, counsel shall not be foreclosed from limited site-specific inquiry reasonably necessary to understand non-site-specific policies, practices, procedures or guidelines.

V. **ELECTRONICALLY STORED INFORMATION:** The parties agree to confer regarding Plaintiff's production of electronically stored information. To make such discussions productive, Plaintiff shall provide to Defendant, or be prepared to discuss, by April 15, 2016, its proposal for collection and production of electronically stored information.

VI. **PA DEP REGIONAL OFFICE VISIT:** Plaintiff shall produce to Defendants an index showing the manner in which files for the Pennsylvania Department of Environmental Protection (PADEP) are organized and maintained in the ordinary course of business. This index shall be produced by April 22, 2016. Thereafter, the parties shall meet and

confer to develop a protocol to permit Defendants to physically inspect a facility storing the records and files for one of PADEP's regional offices.

VII. **OUTSTANDING DISCOVERY:** As discussed at the March 16, 2016 in-person meeting between the parties, by April 11, 2016, Plaintiff shall produce: (i) its revised covered persons list; and (ii) its supplemental response to Defendants' First Set of Interrogatories and Document Requests.

SO ORDERED:

_____

Shira A. Scheindlin

U.S.D.J.

Dated: New York, New York

April \_\_, 2016