# W   E   I   T   Z
## &
# L   U   X   E   N   B   E   R   G

A   P R O F E S S I O N A L   C O R P O R A T I O N

• L A W   O F F I C E S •

**700 BROADWAY        •        NEW YORK, NY 10003**
**TEL. 212-558-5500              FAX 212-344-5461**
**WWW.WEITZLUX.COM**

February 8, 2016

**VIA HAND DELIVERY**
**& ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:     MDL 1358 / MTBE – February 16 Status Conference

Dear Judge Scheindlin:

Plaintiffs respectfully submit this letter in advance of the scheduled February 16, 2016 Status Conference.  Plaintiffs wish to address certain issues identified for the agenda.

**Joint Agenda Item 1:** *Puerto Rico MTBE Litigation*
                                  *Suggestion to Remand*

The Commonwealth recently provided defendants with a draft Joint Proposed Suggestion to Remand concerning the Phase I trial sites.  Liaison Counsel for defendants has indicated that they will provide comments on this draft today or tomorrow.  An update on the status of the Parties' discussions will be provided in the Commonwealth's reply letter.

200 LAKE DRIVE EAST, SUITE 205 • CHERRY HILL, NJ 08002 • TEL 856-755-1115
1880 CENTURY PARK EAST, SUITE 700 • LOS ANGELES, CA 90067 • TEL 310-247-0921

Honorable Shira A. Scheindlin
February 8, 2016
Page 2

**Plaintiffs Agenda Item 1:** *Pennsylvania*
*Release Site Lists*

1. **Pennsylvania Defendants Should Provide Site Identification Numbers for Sites on Their MTBE Release Site Lists and Perform Quality Assurance/Quality Control for Their Lists.**

The Commonwealth of Pennsylvania (the "Commonwealth) is in the process of meeting and conferring with defendants concerning standardizing each side's list of MTBE Release Sites required by Case Management Order #119. (Ex. 1, Let. from T. O'Reilly to L. Gerson.) Standardizing MTBE Release Site Lists will allow the parties to compare lists, ultimately making discovery more efficient by eliminating unnecessary duplication and promoting settlement as all parties will understand who is associated with a particular site at a particular time.

Despite the fact that CMO #119 required all parties to provide "site identification numbers," many defendants did not provide the site identification numbers which are used to track the registration and remediation of these sites. This information is readily available to defendants through their own registration files, the files of their remediation consultants, through the Department of Environmental Protection's website search facilities, as well as through spreadsheets produced by the Commonwealth last June. Defendants should thus be required to provide the two key "site identification numbers" requested by the Commonwealth.

Additionally, defendants have suggested that it is the Commonwealth's burden to validate defendants' release site lists, and to verify the accuracy of the information contained therein. The Commonwealth contends that it is defendants' burden to check the accuracy of their own lists since these are defendants' own sites and their discovery responses. Should defendants uncover an inaccuracy or potential duplicate, that information should be promptly conveyed to counsel for the Commonwealth.

**Plaintiffs Agenda Item 2:** *Pennsylvania*
*Lukoil America Corp. Privilege Assertions*

1. **Lukoil's Assertion of Privilege With Respect to Documents Shared with GMPI in the *Pennsylvania* Matter is Improper**

Lukoil America Corporation (LAC) has asserted an attorney client privilege in the Pennsylvania case for communications involving an attorney who represented both LAC and its (former) wholly owned subsidiary Getty Petroleum Management, Inc. (GPMI). LAC has asserted the privilege with respect to several documents that the Commonwealth believes are

Honorable Shira A. Scheindlin
February 8, 2016
Page 3

directly relevant to LAC's pending motion to dismiss for lack of personal jurisdiction.

As explained in the Commonwealth's opposition to LAC's motion to dismiss (filed Friday), LAC purposefully stripped GPMI of its most valuable assets in anticipation that GPMI would declare bankruptcy. This was not done in the common interest of LAC and GPMI. Rather, it was done exclusively in the exclusive interest of LAC.

When GPMI did in fact declare bankruptcy, the Trustee sued LAC to recover assets and the parties ultimately settled. In the bankruptcy proceedings LAC took the position that LAC and GPMI jointly held an attorney client privilege as to the communications now sought by the Commonwealth, and did not withhold those communications from the bankruptcy trustee. The Trustee had no need to challenge the privilege, therefore, because LAC did not assert the privilege as against GPMI.

LAC is now asserting the privilege against the Commonwealth, however. LAC is asserting that GPMI and LAC had a common interest, and therefore LAC did not waive the privilege by sharing the documents with GPMI.

While the general rule under federal law is that two entities with a common interest and represented by the same counsel may jointly hold a privilege with respect to communications with an attorney, that rule does not apply here, for several reasons, and it in any event is <u>not</u> the rule in Pennsylvania.

First, "[i]t is well established that evidentiary privileges ... are generally disfavored and should be narrowly construed." *Pennsylvania Depart. of Transp. v. Taylor*, 576 Pa. 622, 841 A.2d 108, 118 (2004) (Nigro, J. dissenting) (citing *Commonwealth v. Stewart*, 547 Pa. 277, 690 A.2d 195, 197 (1997)). Second, under Pennsylvania law, clients asserting a common interest must both be parties to litigation or involved in similar or related legal proceedings *that implicate essentially the same interest against a common adversary*. If not, the common interest exception to waiver of attorney-client privilege cannot be invoked. Further, a shared common business interest or an interest that is solely commercial is insufficient to warrant application of the exception. *Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D. Pa. 2014). Here, there is no such common interest, no related proceeding, nor a shared adversary–whatever their shared commercial interests.

Even application of the federal law on common interest privilege would not allow LAC to assert any privilege, for several reasons. First, there was no common interest between LAC and GPMI. LAC drove GPMI into bankruptcy for LAC's benefit. When LAC shared its attorney's communications with the Trustee for GPMI during adversary proceedings in bankruptcy, therefore, it waived its right to assert the privilege. Second, LAC is asserting in its motion to dismiss that it is merely a holding company that held stock in GPMI, and that it was not involved in GPMI's business activities. This assertion is contradicted by LAC's assertions

Honorable Shira A. Scheindlin
February 8, 2016
Page 4

that it holds a joint attorney client privilege with GPMI. LAC should not be allowed to assert that it is independent of GPMI while simultaneously asserting a joint privilege with GPMI. Third, the actions taken by LAC were intended to defraud creditors, and there is no privilege for communications in furtherance of fraudulent conduct. Finally, if LAC's communications with its attorneys are consistent with the publically available information submitted with the Commonwealth's opposition to LAC's motion to dismiss for lack of personal jurisdiction, they will show that the attorney was not in fact advising both GPMI and LAC on a matter of common interest, but rather was advising LAC on how to get rid of GPMI's valuable assets and take GPMI to bankruptcy. Again, subsequently sharing that communication with GPMI (whether out of confidence that LAC controlled GPMI so GPMI would not protest or out of a belief that claiming a joint privilege in bankruptcy would insulate the communications from third parties) constituted a waiver of any right to assert an attorney client privilege.

The Court has already reviewed in chambers some of the sealed transcripts from the bankruptcy adversary proceedings. The Commonwealth respectfully requests that the Court also agree to review in chambers certain communications between LAC and its attorney regarding LAC's relationship with GPMI.

**Plaintiffs Agenda Item 3:** *Pennsylvania Alternative Service on OAO Lukoil*

    1. <u>**The Commonwealth of Pennsylvania Requests Permission for Alternative Service on Certain Lukoil Entities**</u>

OAO Lukoil is a corporation incorporated in Russia which does not have a designated agent for service of process in the United States. Plaintiff contacted James Tuite in several emails and letters asking his firm to accept service on behalf of OAO Lukoil. Ultimately, his firm declined to accept any such service.

Lukoil North America, LLC (LNA) is a wholly owned subsidiary of OAO Lukoil which is responsible for operating hundreds of Lukoil service stations in the United States. Plaintiff served a summons and complaint on LNA as Lukoil's managing agent in the United States. Mr. Tuite then wrote a letter demanding that we withdraw the certificate of service on Lukoil North America, LLC. The process server served Corporation Service Company (CSC) with a complaint on "Lukoil Oil Company a/k/a OAO Lukoil in care of Lukoil North America LLC (LNA) and Lukoil Pan Americas, LLC (LPA) at the address of Corporation Service Company (CSC) in Pennsylvania. We believe that LNA qualifies as managing, general, or responsible agent of Lukoil. (*Bridgeport Music, Inc. v Rhyme Syndicate Music* (6th Cir. 2004) 376 F. 3d 615, 624.)

There are some practical problems with serving OAO Lukoil n/k/a PJSC Lukoil. They

Honorable Shira A. Scheindlin
February 8, 2016
Page 5

are explained in *Bidonthecity.com LLC v. Halverston Holdings Limited* (2014) WL1331046
["But the Court is cognizant of the fact that "[a]lthough Russia is a signatory to the Hague
Convention, in July 2003, Russia unilaterally suspended all judicial cooperation with the United
States in civil and commercial matters." Accordingly, courts have granted parties' request to
pursue alternative methods of service on Russian defendants pursuant to Rule 4(f)(3) [service by
"other means not prohibited by international agreement, as the court orders"]; see also, *Ambriz
Trading Corporation v. Uralsib Financial Corporation* (2011) WL 584415.

We seek an order from this Court determining that service described above is valid or
alternatively authorizing service under Rule 4(f)(3) by Court order.  You have "wide discretion
in ordering service of process under" that rule.  "Court directed service is particularly appropriate
where a signatory to the Hague Service Connection has refused to cooperate for substantive
reasons." (*In Re South African Apartheid Litigation* 643 F. Supp. 2d 423, 433 (2009).)

**Plaintiffs Agenda Item 4:**  *Orange County Water District*
*Use of Public Records Act to Conduct Discovery*

1. **The Court Should Prohibit Defendants from Conducting Discovery in the**
*Orange County Water District* **Matter Until Further Discovery is Approved by**
**This Court or the Transferee Court.**

Counsel for defendant ConocoPhillips has been sending out numerous California Public
Records Act requests (CPRA [the equivalent of a FOIA]) to water agencies who are members of
Orange County Water District (the "District"), and who participated in fact discovery in this
matter. (Ex. 2, Let. from M. Thurlow.) ConocoPhillips's counsel did not carbon copy the
District, or the District's counsel on any of these requests. ConocoPhillips had a distant
Washington D.C. office send out these public records' act requests. Doing so made it less likely
that the recipients would connect the requests with this pending litigation. Indeed, Mr. Thurlow,
who sent the letters, has never been involved in the Orange County matter.

The requests seek information that was the previously the subject of extensive discovery
during the fact discovery period. The requests, for example, seek communications between the
District and its member agency Irvine Ranch Water District concerning MTBE and TBA, even
though defendants are well aware that the District and IRWD claimed privilege for such
communications. (Ex. 2, at 1.) The requests also seek information concerning several of the
sites being remanded for trial. The use of a CPRA in this manner, without notice to the District
or its counsel, by distant defense counsel who was uninvolved in the initial litigation, undermines
the discovery process, circumvents discovery protections, and improperly handicaps the
District's counsel.

The District has met and conferred with counsel for ConocoPhillips, and requested that

Honorable Shira A. Scheindlin
February 8, 2016
Page 6

the parties instead discuss a mutual exchange of updated information prior to trial.  (Ex. 3, Let. from T. O'Reilly.)  ConocoPhillips, however, has refused and has stated an explicit intention to continue sending out CPRAs.  (Ex. 4, Let. from M. Thurlow.)  The District contends that allowing ConocoPhillips to circumvent the discovery process is contrary to the purposes of the MDL and this Court's prior rulings setting forth specific procedures and time limits for the conduct of discovery.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) ["... a court must be mindful of this Court's observations that the FOIA was not intended to supplement or displace rules of discovery."].  The District requests, therefore, that the Court order defendants to (1) provide the District with copies of all letters sent to date, (2) all materials received in response to those letters, and (3) going forward to request materials through the discovery process.

**Defendants' Agenda Items**

### 1.  All Parties in the *New Jersey* Matter Should Provide Updated Data

Defendants' request for an updated HazSites database is premature.  New Jersey Department of Environmental Protection (NJDEP) contends that any update of discovery information should be mutual and should occur as part of mutually negotiated case management order.  (Ex. 5, Let. from S. Kauff.)  Defendants ignore the fact that much of the information contained in the HazSites list comes from their own files and consultants, and that there is a substantial cost to performing the update requested.  NJDEP further contends that if NJDEP is required to update data and site lists, that defendants should also be required to provide site lists.  Defendants have never done so in this matter, and the preparation of site lists by defendants would substantially advance further discovery in Phase II of this matter.

Plaintiffs look forward to discussing the issues on the Agenda with the Court on Tuesday, February 16, 2016.

Respectfully submitted,

*Curt Marshall*

Curt D. Marshall
Weitz & Luxenberg, P.C.
700 Broadway
New York, New York 10003
(212) 558-5836

Honorable Shira A. Scheindlin
February 8, 2016
Page 7


Attachment
cc:      All Counsel of Record (electronic mail)

# EXHIBIT 1

Law Offices of

# MILLER & AXLINE

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE

TRACEY L. O'REILLY
DANIEL BOONE
JUSTIN MASSEY
BRYAN BARNHART
DAVE E. BLUM
MOLLY MCGINLEY HAN

February 4, 2016

VIA U.S. MAIL AND LNFS

Lisa A. Gerson
McDermott Will & Emery
340 Madison Avenue
New York, New York 10173

Re:    *Commonwealth of Pennsylvania v. Exxon Mobil Corp., et al.*
       Case No. 1:14-cv-06228-SAS
       **Case Management Order #119-Release Site Lists**

Dear Ms. Gerson:

I am writing in response to your February 2, 2016, email, concerning the MTBE release site lists produced on December 31, 2015, by the Commonwealth of Pennsylvania (Commonwealth) and defendants in response to Case Management Order #119, and to continue to meet and confer concerning standardization of those lists.[1]

Types of Identification Numbers

As stated in my prior conversations and letters, the Commonwealth proposes using the following two types of numbers to identify sites on the parties' MTBE Release Site Lists:

- Six-DIGIT "Primary Facility" numbers found in column D of PA-MTBE-0000004;

- Seven-DIGIT hyphenated "Facility ID" numbers found in column E of PA-MTBE-0000004.

---

[1] A copy of your February 2, 2016, email is attached for your reference.

Lisa A. Gerson
Page 2
February 4, 2016

The reference to Column D as both "Primary Facility ID" and "Facility ID" in my prior letters was for purposes of tracking (and explaining to defendants) the title given to the "6-DIGIT" number in the PA-MTBE-0000004 spreadsheet and in eFACTS on the Web. In this spreadsheet, Column D is entitled "Facility ID," similarly the "6-DIGIT" number is entered into the "Facility ID" field on various eFACTS on the Web search screens. The "6-DIGIT" number, however, is referred to internally at the Department of Environmental Protection as the "Primary Facility ID" number.

Scope of Agreement

As stated in my prior letters, the Commonwealth provided either the 6-DIGIT or 7-DIGIT identification number for all but eight of the nearly 5,000 sites identified by the Commonwealth on December 31, 2015. A substantial number of defendants did not provide either number in their release site lists.

Pursuant to our conversations, and my letters, the Commonwealth proposes the following agreement:

- All parties will use due diligence to provide the 6-DIGIT number for all sites on their respective CMO #119 release site lists. (*See* Sections II.A (Commonwealth) and III.A (defendants).) Due diligence includes checking all available data as described below.

- All parties will also use due diligence to provide the 7-DIGIT number for all storage tank sites on their respective CMO #119 release site lists.

- All parties will provide their revised lists in Excel format.

The Commonwealth contends that defendants were already obligated to provide "site identification numbers" pursuant to CMO #119, and that these numbers are readily available to defendants from a number of sources, including, but not limited to, PA-MTBE-0000004, defendants' own records, the records of their environmental consultants, and eFACTS on the Web. Defendants now also have the Commonwealth's release site list with either 6-DIGIT or 7-DIGIT numbers for all sites.

We suggest that all parties agree to produce updated site lists by February 19, 2016.

Duplicate Sites

Once the parties have provided updated lists with all relevant numbers in Excel format, each party will have the responsibility to cross-check their own list for duplicates and errors.

Lisa A. Gerson
Page 3
February 4, 2016

Once all lists have been verified and exchanged, the parties can then meet and confer on the best way to proceed to agree upon a master list.

We have reviewed the apparent duplications raised in your email and it appears that these minor discrepancies can be addressed through further validation by all parties.

Sincerely,

Tracey L. O'Reilly

cc: All Counsel (via LNFS)

**Tracey L. O'Reilly**

| | |
|---|---|
| **From:** | Gerson, Lisa <LGerson@mwe.com> |
| **Sent:** | Tuesday, February 02, 2016 12:57 PM |
| **To:** | Tracey L. O'Reilly |
| **Cc:** | MDL1358; mdl1358@weitzlux.com; toxictorts@toxictorts.org |
| **Subject:** | PA: Site List - ID Numbers |

Tracey,

Thank you for your letters of January 22 and February 1. To confirm, we understand that the parties are talking about the following types of numbers:

- Six-DIGIT "Primary Facility" numbers found, for example, in column D of PA-MTBE-0000004;
- Seven-DIGIT hyphenated "Facility ID" numbers found, for example, in column E of PA-MTBE-0000004 and on the cover of at least some environmental reports submitted to DEP.

However, because the letters alternatively refer to the Column D number as the "Primary Facility ID" number (Jan. 22 letter) and the "Facility ID" number (Feb. 1 letter), we refer to the numbers simply as "6-DIGIT" or "7-DIGIT."

Based on your January 22 letter, we understand that:

- Plaintiff has currently provided all 7-DIGIT numbers that is has readily available, but is continuing to search for additional 7-DIGIT numbers and is willing to update its site list with additional 7-DIGIT numbers found;
- Plaintiff is willing to undertake to locate and provide 6-DIGIT numbers for all gasoline station release sites on its list so long as Defendants are willing to do the same; and
- Plaintiff has agreed to produce its list in Excel format.

If our understanding on any of the above is incorrect, please let us know.

Assuming the above is correct, Defendants will agree to provide their lists in Excel or Word format and to update their lists to include the 6-DIGIT and 7-DIGIT numbers to the extent contained in Defendants' records. However, Defendants cannot guarantee that their records will contain either or both of these numbers for all sites.

Finally, we don't believe your letter addressed our concern that a site – i.e. same physical location – may have two different 7-DIGIT numbers. For example, Facility ID's 23-29301 and 39-21079 appear to be the same Shell station (as another example, sites 09-43266 and 09-09151). We also are concerned that some numbers simply are incorrect (e.g. 33-31336 and 46-09153 do not return any results in the Authorization Search). Therefore Defendants believe that any combined or "master" list Plaintiff puts together is likely to have duplicate sites that will require a more "manual" effort to de-dupe. Will Plaintiff agree to undertake that task?

If the above is acceptable, Defendants suggest the parties exchange their updated, electronic site lists in two weeks, by February 16, 2016. Alternatively, we can be available for a call later this week.

Thank you,

**Lisa A. Gerson**
Partner

**McDermott**
**Will & Emery**

McDermott Will & Emery LLP | 340 Madison Avenue | New York, NY 10173-1922
Tel +1 212 547 5769 | Fax +1 646 224 8675

# EXHIBIT 2

Matthew D. Thurlow
Direct Dial: (202) 637-1051
matthew.thurlow@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM & WATKINS LLP

**RECEIVED**

**JAN 12 2016**

**HUMAN RESOURCES**

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Milan |
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

January 7, 2016

<u>VIA U.S. MAIL</u>

Public Records Request
Irvine Ranch Water District
P.O. Box 6025
Irvine, CA 92716

To Whom It May Concern:

I write to request records from the Irvine Ranch Water District pursuant to the California Public Records Act. Please provide the following public records:

- All records concerning communications between the Orange County Water District and Irvine Ranch Water District concerning methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol ("TBA") from 2008 to the present

- All communications between the Orange County Water District, Irvine Ranch Water District, and Mesa Consolidated Water District concerning the following municipal wells from 2008 to the present:

  - Irvine Ranch Water District Well 2 ("Well IRWD-2")

  - Irvine Ranch Water District Well 4 ("Well IRWD-4")

  - Irvine Ranch Water District Well C8 ("Well IRWD-C8")

  - Well 2134

  - Well 18754

  - Mesa Consolidated Water District Well 1B ("Well MCWD-1B")

LATHAM&WATKINS LLP

- All communications between the Orange County Water District and Irvine Ranch Water District concerning Mobil Station #18-JMY, located at 3470 Fairview Road, Costa Mesa, California ("Mobil Station #18-JMY") from 2008 to the present

- All documents concerning any complaints about the taste, odor, and/or quality of potable water from private wells or Wells IRWD-2, IRWD-4, IRWD-C8, Well 2134, Well 18754, and MCWD-1B from 2008 to the present

- All documents concerning any complaints regarding the presence of MTBE or TBA in or near private wells or Wells IRWD-2, IRWD-4, IRWD-C8, Well 2134, Well 18754, and MCWD-1B, or Mobil Station #18-JMY from 2008 to the present

- All sampling records identifying the presence of MTBE or TBA in or near private wells or Wells IRWD-2, IRWD-4, IRWD-C8, Well 2134, Well 18754, and MCWD-1B, or Mobil Station #18-JMY from 2008 to the present

- All documents concerning the presence of MTBE or TBA in or near private wells or Wells IRWD-2, IRWD-4, IRWD-C8, Well 2134, Well 18754, and MCWD-1B, or Mobil Station #18-JMY, and any response or corrective action taken by the Irvine Ranch Water District from 2008 to the present

- All documents concerning any response or corrective action concerning a contaminant other than MTBE or TBA taken by the Irvine Ranch Water District at private wells or Wells IRWD-2, IRWD-4, IRWD-C8, Well 2134, Well 18754, and MCWD-1B, or Mobil Station #18-JMY from 2008 to the present

- All documents concerning any funds expended on any response or corrective action taken related to the presence of MTBE or TBA at private wells or Wells IRWD-2, IRWD-4, IRWD-C8, Well 2134, Well 18754, and MCWD-1B, or Mobil Station #18-JMY from 2008 to the present

Please send complete copies of the public records identified above on cds to Matthew Thurlow, Esq., Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C., 20004. Reasonable fees associated with copying these materials will be reimbursed.

Regards,

Matthew D. Thurlow
of LATHAM & WATKINS LLP

# EXHIBIT 3

Law Offices of

# MILLER & AXLINE

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE

TRACEY L. O'REILLY
DANIEL BOONE
JUSTIN MASSEY
BRYAN BARNHART
DAVE E. BLUM
MOLLY MCGINLEY HAN

January 22, 2016

VIA U.S. MAIL AND LNFS

Matthew D. Thurlow
Latham & Watkins
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 2004-1304

Re:   *Orange County Water District v. Unocal Corp., et al.*
      **ConocoPhillips Company's California Public Records Act Request to Irvine
      Ranch Water District**

Dear Mr. Thurlow:

I am writing in response to your January 7, 2016, California Public Records Act Request
to third party Irvine Ranch Water District. We understand that similar requests have been sent to
other water purveyors and providers who are members of Orange County Water District.

As you, and your firm, are well aware, discovery in the above matter has been closed for
some time, and certain claims are in the process of being remanded to the United States District
Court for the Central District of California. It is obvious that your Public Records Act request
seeks information that would covered, controlled, and limited by the discovery rules under the
Federal Rules of Civil Procedure, including, but not limited to, Rule 34. These requests seek
information, for example, about numerous stations which will be the subject of the upcoming
trial. The Suggestion to Remand signed by Judge Scheindlin explicitly states that "[t]he parties
have completed all discovery related to the focus sites identified in Exhibit A to Case
Management Order #116." Your public records act request also clearly seeks materials which are
privileged and which have been the subject of prior discovery in the above matter.

Since your firm represents defendant ConocoPhillips Company in the above matter, you
are obviously aware of these facts. You have, more importantly, failed to provide a copy of your
requests to our firm or Orange County Water District, and have not properly served those
requests in this matter as required by court orders. Instead, it clear that you are attempting to

1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225; Telephone: (916) 488-6688
Facsimile: (916) 488-4288; Email: toxictorts@toxictorts.org

Matthew D. Thurlow
Page 2
January 22, 2016

conduct this discovery without notice to Orange County Water District or our firm in violation of the Federal Rules of Civil Procedure and prior court orders.

We demand that cease and desist all such efforts to conduct improper discovery in the above matter. Please be advised that we intend to raise this matter with Judge Scheindlin at the upcoming status conference (or sooner if necessary), and will seek all appropriate and available remedies to address this improper attempt to conduct discovery in violation of the Suggestion to Remand and other court orders.

We also hereby demand a copy of all such letters sent to other third parties by the close of business on Monday, January 25, 2016.

Sincerely,

Tracey L. O'Reilly

cc: All Counsel (via LNFS)
    Jon D. Anderson (via Email)

# EXHIBIT 4

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com



# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Milan |
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

February 3, 2016

**VIA FEDERAL EXPRESS AND F&S**

Tracey O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4288

Re:  In re MTBE Products Liability Litigation, MDL 1358
     _Orange County Water District v. Unocal Corp., et al._

Dear Ms. O'Reilly:

This letter responds to your letter of January 22, 2016, regarding Defendants' public information requests to water purveyors in Orange County. Defendants have not sought any documents that are privileged or from which we are otherwise barred by the discovery orders in this case, as you suggest. The requests were issued under the California Public Records Act and have only sought information that is available to any public citizen making similar public information requests.

The California Public Records Act includes an exemption for records prepared in connection with filed litigation and attorney-client privileged materials. Cal. Gov. Code § 6254 (b)(k). No such records have been sought in our requests to the Orange County water purveyors. What our public information requests (several of which you already appear to have) do seek are public documents including communications between the water purveyors and the Orange County Water District regarding MTBE or TBA, sampling of wells for MTBE, information regarding stations at which releases of MTBE have been alleged, and public complaints or corrective actions relating to these wells and stations.

Your letter of January 22 asserts that Defendants are barred from pursuing California Public Records Act requests, without citing to a single, specific provision of law or case management order. In fact, there are no such limitations on litigants seeking such information. _See Wilder v. Sup. Ct._, 66 Cal.App.4th 77, 82 (Cal. Ct. App. 1998) ("The statute [California Public Records Act], which we are bound to interpret in accordance with its plain language unless doing so would lead to absurd results, requires that public records be made available to every person in this state,' without exception."). Defendants' right to public information is not

February 3, 2016
Page 2

**LATHAM&WATKINS**LLP

limited simply because we are in litigation and the Focus Sites discovery in this case is complete.
Defendants obviously will not cease and desist from doing what we are permitted to do by law,
but, to the extent the District does not already have the information we obtain through public
information requests, we will share this information with you at your request.

Defendants also plan to serve public records requests on other municipal and state
agencies in California. As with the requests to the Orange County water purveyors, we will
share any information received from these agencies with the District at your request.

Please let me know if you would like copies of the documents that Defendants have
obtained or will obtain pursuant to their public information requests. If you have any further
questions or concerns, please do not hesitate to pick up the telephone.

Very truly yours,

Matthew D. Thurlow
of LATHAM & WATKINS LLP

cc:    All Counsel (via F&S)

# EXHIBIT 5

LAW OFFICES OF JOHN K. DEMA, P.C.
ATTORNEYS-AT-LAW

JOHN K. DEMA
ADMITTED USVI-CA
jdema@demalaw.com

SCOTT E. KAUFF, OF COUNSEL
ADMITTED DC-MD-NJ-PA
skauff@demalaw.com

February 3, 2016

**VIA EMAIL**

Andrew R. Running, Esq.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654

RE:   *New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*, 08 Civ. 00312, Master File No. 1:00-1898, MDL 1358 (SAS): M21-88

Dear Andy:

We respond to your letter of January 19, 2016, requesting an update of the HazSites database.

Initially, we note that to the extent defendants need the data contained in HazSites related to their sites, that information is readily available to them - HazSites does not contain information generated by the New Jersey Department of Environmental Protection ("NJDEP"); but rather, as you know, it contains data submitted to NJDEP electronically by Responsible Parties and Licensed Site Remediation Professionals ("LSRPs"). Defendants' request, thus, asks NJDEP to provide defendants the data they, themselves, submitted to the NJDEP about their sites in the first instance.

Contrary to the assertions made in your letter, updating the HazSites database is not without costs; updating the database requires time and consultant resources. At the same time, BP would not be prejudiced by waiting until a Case Management Order issues. In fact, by waiting for a Case Management Order to issue, all parties stand to benefit as the experts will be able to rely upon current information in formulating their opinions. So while NJDEP does not oppose updating the dataset, it believes that HazSites should be updated pursuant to a Case Management Order in Phase II in order to avoid duplication of efforts and to ensure that the data can be timely used in the litigation.

1236 STRAND STREET, SUITE 103
CHRISTIANSTED, ST. CROIX, USVI 00820
TELEPHONE: (340) 773-6142
FACSIMILE: (340) 773-3944

11300 ROCKVILLE PIKE, SUITE 112
ROCKVILLE, MARYLAND 20852
TELEPHONE: (301) 881-5900
FACSIMILE: (240) 536-9108

www.demalaw.com

Andrew R. Running, Esq.
February 3, 2016
Page 2

No compelling reason exists to justify the burden of updating the dataset now when the NJDEP has agreed to update the dataset in accordance with the anticipated schedule for Phase II. The Defendants have not made it clear why they need an update at this time. It cannot be for use related to the Trial Sites, as discovery for that phase of the litigation has ended. Any proposed actions related to the Trial Sites should be part of a pre-trial schedule after consultation with Judge Wolfson in the District of New Jersey.

Although you assert in your letter that defendants need updated HazSites data to prepare for the prosecution of the remainder of the litigation and in particular, Phase II, you do not say why this is so other than to reference the selection of focus sites for Phase II. We do not agree that the HazSites dataset will be used for selection of additional focus sites, and I never discussed the use of such data to select focus sites in Phase II. In any event, as we discussed, it is plaintiffs' position that any discovery related to the remainder of the litigation should follow and be part of a comprehensive discovery plan.

Since March 24, 2015, we have repeatedly asked your client, BP, to produce documents and supplement deficient discovery responses concerning the sale and supply of MTBE gasoline to Getty Petroleum Marketing Inc. ("GPMI") and affiliated corporations. In particular, we have sought supply contracts containing details regarding BP's supply of MTBE gasoline to GPMI, which your client was required to maintain under the Code of Federal Regulations (40 CFR 80.74) for at least 5 years. Because Judge Scheindlin entered a preservation order in the MDL proceedings in 2001, your client should have responsive documents dating back to at least 1996. We have supplied you with contract numbers and other identifying information and depositions to help you locate the records. Yet, no responsive supply agreements, contracts, or other documents have been produced. It is thus ironic that you think NJDEP should update the HazSites data at this juncture when your client has been unable to produce key documents that should have been preserved and produced. How is it that not one piece of paper concerning the sale of millions of gallons of gasoline sold prior to 2001 has survived? When Phase II discovery begins, this will be one of the first items we address.

We believe the parties should meet and confer on a comprehensive approach to Phase II, but that the timing of such a meet and confer should occur after an initial conference with Judge Wolfson so that the parties are aware of the schedule being established for trial of the Phase I trial sites. The meet and confer regarding Phase II would include a discussion of discovery needs, how to utilize the results of the Phase I trials, timing, and other topics. To the extent we are unable to get a conference scheduled with Judge Wolfson in the near future, we agree that the parties should begin the meet and confer process on Phase II.

Andrew R. Running, Esq.
February 3, 2016
Page 3

If defendants are willing to participate in such a discussion, please advise and we will set a time to meet based upon the time Judge Wolfson sets for a Phase I conference, or if she does not schedule a conference in the near future, we will meet and confer at a mutually convenient time.

Sincerely,

Scott E. Kauff