

# WEITZ & LUXENBERG

A PROFESSIONAL CORPORATION
• LAW OFFICES •

700 BROADWAY • NEW YORK, NY 10003
TEL. 212-558-5500     FAX 212-344-5461
WWW.WEITZLUX.COM

April 21, 2016

**VIA HAND DELIVERY**
**& ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

  Re: <u>MDL 1358 / MTBE – April 26, 2016 Status Conference</u>

Dear Judge Scheindlin:

  Plaintiffs respectfully submit this reply letter in advance of the scheduled April 26, 2016 Status Conference. We look forward to appearing before the Court on that date.

**Joint Agenda Item #1:** *New Jersey MTBE Litigation*
     **Phase II CMO & Issues**

  On April 18, the parties submitted with their 72-hour letters competing versions of a CMO for Phase II in the New Jersey case. On April 20, the parties met and conferred in an effort to reconcile their competing versions. That effort was only partially successful.

  The parties appear to be in agreement with respect to further developing a master list of release sites and the discovery necessary to achieve that goal. Defendants have agreed to provide information as to sites they: (1) owned or leased underground storage tanks or property at these sites (including dates); (2) supplied gasoline that may have contained MTBE to the sites (including dates); and (3) conducted environmental investigation/remediation at the sites. Defendants have also agreed to provide information (to the extent they have it) on public or private well sampling associated with sites, and sensitive receptors within ½ mile of sites. Plaintiffs have agreed to supplement their prior productions with respect to a number of

Honorable Shira A. Scheindlin
April 21, 2016
Page 2

databases. For ease of reference, in summary, it appears that the parties are agreeable to Parts III.A(1) and (4) of plaintiffs' proposed CMO and Parts 1(a) and (b), as well as 2(a) - (c) of defendants' proposed CMO.

In addition to the topics on which there appears to be agreement, defendants have expressed no serious objection to Parts III.A.2 and A.3 of plaintiffs' proposed CMO (production by defendants of sales information, including market share information, and distribution, delivery and exchange information).

The parties have widely differing views on the remainder of their respective proposed CMOs:

   A.   **Single Final Trial For Phase II.**

A CMO should govern discovery, not the other way around. That is what occurred in Phase I, and that is what should occur in Phase II. Plaintiffs' proposed CMO - which would order that remaining claims be presented in a single trial - is the best (indeed, the only) way to insure that discovery is conducted and remaining key legal issues addressed in a way that will lead to resolution of the entire case. And it is, after all, the plaintiff's prerogative to choose the manner in which it will present its case.

Plaintiffs' proposed CMO is specifically designed to meet that goal:

- Section I sets forth the goal of a single trial;
- Section II identifies the special jury verdict questions in a single trial as an efficient method of resolving the legal and factual issues raised by the causes of action to be tried;
- Sections V and VI recognize that further discussions are necessary before the exact method of a single trial is determined, but require that the parties have these discussions and reach resolution within a limited time frame.

In sum, plaintiffs' proposed CMO provides that any claims that remain following the Phase I trial shall be resolved in a single trial, and all further discovery shall be tailored to achieve the goal of a manageable Phase II trial. As the Court stated at the last status conference: "It is certainly better to structure phase two in some way that makes it not only the second trial but the last trial, if there's a way to do that . . . ." March 29, 2016, Tr. at 6:18-21. Defendants' CMO proposal runs counter to that goal, and would delay, rather than facilitate, a final resolution.

To be clear, plaintiffs' proposed CMO does not require adoption by the Court of a specific statistical method to be employed in a single trial, or otherwise mandate the exact structure of the single trial. Plaintiffs recognize that some of the proposed future discovery would assist the parties and the Court in establishing an efficient and fair method of trial. But plaintiffs' approach is important to establish at this point the foundational principle of a single trial

Honorable Shira A. Scheindlin
April 21, 2016
Page 3

resolving all issues. Without that polestar to guide future actions, the litigation will never conclude in our lifetime.

Defendants argue that establishing a single trial goal is "premature" and additional discovery must take place before determining "an appropriate case structure going forward." In fact, defendants' proposal presupposes that the only way to try the case is to establish arbitrary categories now of defendants' choosing.

In its case, New Hampshire was able to put its entire case on in a single trial, before a single jury, in a little over three months. Before the status conference last month, plaintiffs submitted to the Court the special verdict form from the New Hampshire trial and the New Hampshire Supreme Court's opinion upholding that verdict, to show that claims involving a large number of sites could be decided in a single trial.

Although defendants object to the use of statistical evidence and other methods that plaintiffs might ultimately choose to use in a single trial, the only thing defendants have to say about the New Hampshire trial, verdict and Supreme Court opinion is that it was "based on a specific New Hampshire statute regarding the State's trustee powers that is inapplicable here" and "erroneously presumed that a single release anywhere in the State caused indivisible harm to all waters of the State." Apart from the fact that these statements are not accurate (the verdict was not based on a statute, and did not assume that a single release caused all of the State's injuries), the point that is currently relevant is that it is undeniably <u>possible</u> in our case to successfully resolve the remaining claims in a single trial <u>if the parties are directed to do so by the Court</u>.

### B. Bifurcation And Special Verdict Questions

Defendants object that bifurcation and use of special verdict questions as set forth in Part II of plaintiffs' proposed CMO "defies so many due process (and common sense) principles that it is hard to know where to begin." This hyperbole ignores the reality that special verdicts, such as the verdict used in the New Hampshire case, are common and useful tools for resolving disputes. A single jury determining whether MTBE gasoline was a defective product and then whether that product caused the State's injuries does not violate due process, but rather allows both the State and defendants to present their entire case to a single finder of fact. This does not separate liability from causation and injury, as defendants claim, but rather tries those issues to a single jury in the most efficient way possible.

### C. Statistical Evidence

Defendants argue that "statistical extrapolation presents myriad legal hurdles." Defendants are wrong. As in many other areas of the law, both past and future remediation of environmental contamination can be legally proven based on evidentiary probabilities and

Honorable Shira A. Scheindlin
April 21, 2016
Page 4

properly considered expert reports utilizing statistical evidence and statistical extrapolation and other tools of statistically valid, quantitative analysis. As the Court noted at the last status conference: "The statistical extrapolation approach is something that I think not only New Hampshire has proved, but there was a recent Supreme Court decision this week in a very different context, *Tyson Foods* . . . . But the point was the Supreme Court accepted the notion that you could do it by statistical extrapolation." March 29, 2016 Tr. at 7:19-25. Indeed, by proposing the idea of "categories" of claims to be tried, defendants necessarily are accepting that use of statistical evidence is unavoidable if this case is to be tried on anything other than a site-by-site basis. The defendants' "categories" approach would simply divide the use of statistical evidence into multiple trials.

### D.  Categories

Plaintiffs object in the strongest possible terms to Parts 2(d) and (e) of defendants' proposed CMO. These provisions would impose artificial "categories" selected by defendants to determine how plaintiffs would present their case. Defendants, however, do not get to dictate *how* plaintiffs present their case.

The categories chosen by defendants are not only arbitrary, but clearly intended to minimize plaintiffs' actual damages. The proposed categories are based exclusively on the most recent levels of MTBE detected. This approach ignores the fact that current on-site MTBE levels may be relatively low because the bulk of the MTBE has migrated off-site and is currently threatening drinking water wells. This approach would also minimize the importance of sites where current MTBE levels are low only due to prior remediation. Ironically, defendants, in opposing the Citgo settlement, argued that these very categories were arbitrary and did not capture the full extent of the non-settling defendants' liability exposure. However, now that such an approach would work to their benefit to minimize their exposure, defendants have dropped their objections and are affirmatively advocating these categories.

### Joint Agenda Item #2:  *Puerto Rico MTBE Litigation*
###                      Phase II CMO & Issues

On April 12, 2016, the Commonwealth sent defendants a proposed CMO for Phase II. On April 18, the Commonwealth, having not heard from defendants, attached a copy of its proposed CMO to its 72-hour letter. Subsequent to the submission of the 72-hour letters, defendants sent the Commonwealth a competing version of a proposed CMO and a separate letter objecting to the Commonwealth's proposed CMO.

The Commonwealth's proposed CMO provides for a single trial to resolve remaining claims in Phase II. It calls for the parties to share information on release sites, wells, market share and supplies, and to develop a master list of release sites. It also identifies special verdict

questions to be used in a bifurcated Phase II trial in which liability is determined prior to damages, and directs the parties to meet and confer on details of a Phase II trial.

The defendants' proposed CMO directs the Commonwealth to respond to extensive discovery with respect to 354 sites by June 4, 2016. Defendants improperly served that discovery on March 4, 2016, prior to entry of any Phase II CMO and without any prior meet and confer discussions. The defendants' proposed CMO also calls for the Commonwealth to stipulate to dismissal of sites, sets a schedule for defendants to file summary judgment motions and only then provides for discovery and meet and confer sessions regarding remaining sites.

At a hearing on December 18, 2015, the Court authorized limited discovery with respect to the statute of limitations. The Commonwealth has no objection to answering the defendants' discovery as to this limited topic at this time. It is the broader discovery to which the Commonwealth objects. The Court specifically stated: "I didn't think we were talking about discovery on 400 sites. Because that is not the way we've been doing this case at all. Do the re-instated defendants anticipate site specific discovery on 400 sites?" Defendants responded: "The answer is no, your Honor . . . ." *See* Exh. A, attached, Tr. at 4:3-5 to 5:10. Nevertheless, Defendants March 4, 2016, discovery sought extensive site-specific information with respect to 354 sites, and was not limited to the statute of limitations. Defendants, themselves, even recognized that their causation discovery requests were premature because one of their discovery requests asked the Commonwealth to identify what discovery the Commonwealth would need from defendants in order to respond to the defendants' discovery. *See* Exh. B, attached.

On March 15, 2016, the Commonwealth objected that defendants' discovery far exceeded what had been authorized by the Court at the December 18th hearing and suggested that the parties meet and confer on the subject. *See* Exh. C, attached. Defendants responded by letter on March 21, 2016. *See* Exh. D, attached. The Commonwealth replied on April 7, suggesting that the dispute be presented to the Court at the April 29th Conference. *See* Exh. E, attached. The parties' respective positions are set out in these exchanges.

Defendants' objections to the Commonwealth's proposed CMO are also without merit. Defendants argue that the number of sites is small in comparison to New Jersey, and therefore the Court should preemptively decide that no statistical evidence can or should be used in a Phase II trial. There are still hundreds of sites, however, and there is no reason that accepted and normal methods for streamlining trials should not be used with such a large number of sites. The fact is that if the parties were to try each site traditionally as defendants suggest, it would still take years of non-stop trial to try all of the sites currently in the case. Defendants may be under the mistaken belief that most sites will be discarded based upon the statute of limitations. Based upon our review of the files, however, most sites will be unaffected by the Court's previous statute of limitations rulings.

Honorable Shira A. Scheindlin
April 21, 2016
Page 6

As the Court noted at the last status conference: "The statistical extrapolation approach is something that I think not only New Hampshire has proved, but there was a recent Supreme Court decision this week in a very different context, *Tyson Foods* . . . . But the point was the Supreme Court accepted the notion that you could do it by statistical extrapolation." March 29, 2016 Tr. at 7:19-25. Whether there are hundreds (like in Puerto Rico) or thousands (like in New Jersey) of sites, it is impossible to try all of the sites through traditional means.

Defendants also object that the Commonwealth has argued it can conduct tracing in Puerto Rico. While that it is certainly true for some release sites, it is not true for all release sites, and it is also not true for all potentially impacted wells.

Defendants object that bifurcation and use of special verdict questions as set forth in Part II of the Commonwealth's proposed CMO would violate due process. Special verdicts, however, such as the verdict used in the New Hampshire case, are common and useful tools for resolving disputes. A single jury determining whether MTBE gasoline was a defective product and then whether that product caused the Commonwealth's injuries does not violate due process or separate liability from causation and injury, as defendants claim, but rather tries those issues to a jury in the most efficient way possible.

The Commonwealth also objects to defendants' proposed CMO, which is premised entirely on the defendants' mistaken belief that a substantial portion of the sites at issue will be subject to stipulated dismissals or motions for summary judgment based upon prescription (the statute of limitations). The defendants' position is contradicted by the actual documents the Commonwealth is reviewing to respond to the defendants' statute of limitations discovery. In reality, there is very little evidence that the Commonwealth knew of the presence of MTBE in groundwater at the sites more than one-year before the complaint was filed. Because the underlying premise of defendants' proposed CMO is so flawed, the Commonwealth suggests that the defendants' proposed CMO be rejected in its entirety.

**Joint Agenda Item #3: *Pennsylvania MTBE Litigation*
Case Management Order**

Defendants provided the Commonwealth with a draft Case Management Order on April 5, 2016, and the Commonwealth responded on April 13, 2016, with its proposed changes and additions. The Commonwealth's proposal focuses on the next steps necessary to move this case forward, including obtaining the discovery necessary to brief the Court on the merits of proceeding with a statewide case leading to a single trial. Defendants' proposal, on the other hand, focused on past discovery issues and essentially sought to obtain Court-ordered deadlines even though motions to compel had not been filed. Case management orders should not be used to obtain discovery rulings, but instead should focus on structuring the next phase of discovery necessary to move the case forward. The Commonwealth has not received a response from

Honorable Shira A. Scheindlin
April 21, 2016
Page 7

defendants to its proposed CMO, but the parties have scheduled a telephonic meet-and-confer for Friday, April 22, 2016. It is anticipated that the parties should be able to identify specific areas of dispute in time for the conference.

**Defendants' Agenda Item #1:** *Pennsylvania MTBE Litigation*
    **Dismissal Request for Newly Added ExxonMobil Entities**

The Commonwealth has sent a proposed stipulation to ExxonMobil concerning the newly added ExxonMobil entities and the parties are meeting and conferring on the language.

Plaintiffs will address any additional points raised in Defendants' reply letter at the April 26, 2016 conference.

Respectfully submitted,

William A. Walsh
Weitz & Luxenberg, P.C.
700 Broadway
New York, New York 10003
(212) 558-5836

Attachments.