# EXHIBIT A

Hearing (12-22-15)(Scheindlin)

1

Fcm1mtbc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
3   In re MTBE                          00-CV-1898 (SAS)
4   ------------------------------x     Telephone Conference
5                                       New York, N.Y.
                                        December 22, 2015
6                                       3:06 p.m.
7   Before:
8               HON. SHIRA A. SCHEINDLIN,
9                               District Judge
10                  APPEARANCES
                   (Via Telephone)
11
    For Plaintiffs:
12      WILLIAM PETIT, ESQ.
        MICHAEL AXLINE, ESQ.
13
    For Defendants:
14      PETER LIGH, ESQ. (Vitol)
        ROBERT WILSON, ESQ. (Idemitsu)
15      ADRIAN SANCHEZ, ESQ. (Peerless)
        JAMES HARRIS, ESQ. (Petrobras)
16      DAVID SCHULTE, ESQ. (Petrobras)
17  Observing for Defendants:
        ELAINE MALDONADO, ESQ. (Total)
18      ALBENIZ COURET FUENTES, ESQ. (Total)
        JAMES PARDO, ESQ. (Liaison)
19      LISA GERSON, ESQ. (Liaison)
20
21
22
23
24
25

            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

♀                                               2

Fcm1mtbc

Hearing (12-22-15)(Scheindlin)

1   THE COURT:  Good afternoon.  This is Judge Scheindlin.

2   Is Mr. Petit on the phone?

3   MR. PETIT:  Yes, your Honor.

4   THE COURT:  And Mr. Axline?

5   MR. AXLINE:  Yes, your Honor.

6   THE COURT:  And now I'm going to call out the names of

7   defense counsel.  Mr. Ligh?

8   MR. LIGH:  Yes, your Honor.

9   THE COURT:  Mr. Wilson?

10  MR. WILSON:  Yes, your Honor.  Good afternoon.

11  THE COURT:  And is it Ms. Sanchez?

12  MR. SANCHEZ:  Mr. Sanchez.

13  THE COURT:  Oh, Mr. Sanchez.  Mr. Harris?

14  MR. HARRIS:  Good afternoon.

15  THE COURT:  Mr. Schulte?

16  MR. SCHULTE:  Yes, your Honor.  Good afternoon.

17  THE COURT:  Ms. Maldonado?

18  MS. MALDONADO:  Yes, your Honor.

19  THE COURT:  Mr. Fuentes?

20  MR. FUENTES:  Yes, your Honor.  Good afternoon.

21  THE COURT:  Mr. Pardo?

22  MR. PARDO:  Good afternoon, your Honor.

23  THE COURT:  And Ms. Gerson.

24  MS. GERSON:  Yes, your Honor.

25  THE COURT:  Okay.  I have two letters that I have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

Fcm1mtbc

1   looked at.  They're both dated December 18th.  And I have one

2   from defense counsel, Mr. Harris, and then I have one from

3   Mr. Petit for the plaintiff.  So I've read both these letters,

Page 2

Hearing (12-22-15)(Scheindlin)

4  and there must be some middle ground because if you read the
5  plaintiff's letter, they basically present a list of horribles,
6  saying that it would result in many, many complex motions,
7  which no other defendants are being allowed to make at this
8  time.
9          Do you know what that disturbance is? I can't think
10  straight. What is that noise on this call? Does anybody know?
11  I'm sorry. We can't do it. We can't do the call. We can't do
12  the call unless -- hello?
13          MR. PETIT: Your Honor, this is Will Petit. I think
14  that was Mr. Sanchez's line. He was the last to get on and
15  that's when we started hearing it. He's in Peru, your Honor.
16          THE COURT: Oh, okay.
17          MR. SANCHEZ: Sorry.
18          THE COURT: Okay. Now I can continue, but it says
19  basically that there would be endless enormous motions that
20  would -- I think the phrase was shut down the court for years,
21  although I for some reason can't find that phrase right now.
22  Here it is. It says, "Quite apart from the impossible
23  discovery timeline, the logistical nightmare such an approach
24  would create, or the prejudice to the Commonwealth and even the
25  other defendants, filing summary judgment motions on that many

♀                                                                    4

Fcm1mtbc

1  sites would clog the Court's calendar for years." Now
2  obviously my goal was not to have summary judgment motions on
3  400 sites. I didn't think we were talking about discovery on
4  400 sites. Because that's not the way we've been doing this
5  case at all. Do the reinstated defendants anticipate

Hearing (12-22-15)(Scheindlin)

6  site-specific discovery on 400 sites?

7       MR. HARRIS:  Your Honor, this is Jim Harris.  May I

8  respond?

9       THE COURT:  Please.

10       MR. HARRIS:  The answer is no, your Honor, and we were

11  not anticipating any summary judgments on causation.  What we

12  had hoped to get from the plaintiffs -- and given the amount of

13  time that's passed in this case, we thought it was not an

14  unreasonable request -- was an identification of those sites

15  that they believe we are connected to, and at this point we're

16  not going to challenge that.  We just want to know what sites

17  are we connected to and as to those sites, tell us when you

18  discovered MTBE.  And it would be just as to the reinstated

19  defendants, not as to any other defendants.  I guess we'd take

20  up that issue, your Honor, in Phase 2.  It's just I think a

21  recognition that we are in a different position than the other

22  defendants given that we were brought in late and that we had

23  been dismissed and were brought back into the case.

24       THE COURT:  Right.  But I think the point of

25  plaintiff's counsel is that the other defendants are not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

Fcm1mtbc

1  getting any so-called Phase 2 discovery.  In other words, we

2  did discovery on the Phase 1 sites, we had motions, and we're

3  going to have a remand for trial.  I guess their view is, why

4  are you sort of getting ahead of the other Phase 2 defendants?

5       MR. HARRIS:  And if I might respond again, your Honor.

6  Because we're in a different position both temporally when we

7  were brought in, the fact that we were out, that at least based

8  on some discovery that Idemitsu did early on that was answered

Page 4

Hearing (12-22-15)(Scheindlin)

9  by the plaintiffs, the plaintiffs were able to identify I think

10 just 16 sites to which they connected Idemitsu, which as many

11 as 10 I think are out that the plaintiff, in those answers to

12 interrogatories, say that MTBE was not at those sites before

13 2006. And if the plaintiffs could do that with respect to

14 Idemitsu, we felt that they certainly could do it with respect

15 to the three other defendants who have a very narrow focus on

16 limitations. And additionally, we have a laches argument, your

17 Honor, that none of the other defendants have.

18         THE COURT: Right.

19         MR. HARRIS: We're just tagalong defendants, anyway.

20 We're just in an entirely different posture.

21         THE COURT: No, I agree, I agree, and I am leaning

22 toward the defendant's position on this, but I wanted to

23 understand whether the plaintiff's letter is a realistic parade

24 of horribles. I mean, obviously I'm not planning to have full

25 site-specific discovery on 400 sites, full discovery, you know,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

Fcm1mtbc

1  what substances are found and what the hydrogeologists say and

2  all of that, and we're not doing site-specific discovery in

3  full on those sites. And the plaintiff's letter would say,

4  well, it's not fair even to the other defendants for these

5  defendants to have site-specific discovery on 400 sites. But

6  you've answered that. You said there's no way it's going to be

7  400 sites. They should identify, as to Vitol, Peerless, and

8  Petrobras, which sites we are talking about, and then the only

9  question you'll want to know, or they'll want to know, or

10 you'll want to know is, when is it alleged to have been known.

Page 5

Hearing (12-22-15)(Scheindlin)

11    That's it.  So you're not going to find out about other

12    contaminants or you're not going to have hydrogeologist experts

13    and you're not going to be interested in direction of flow and

14    all that kind of stuff.  It's really as simple as, where do you

15    think we are, where have you identified we are, and when did

16    you know.

17              MR. HARRIS:  That's correct, your Honor.

18              THE COURT:  I don't think that's as burdensome as

19    Mr. Petit's letter makes it sound.  I think it was a "scare the

20    judge" letter.

21              So, Mr. Petit.

22              MR. PETIT:  Your Honor, if I may respond.  This is

23    Will Petit.

24              THE COURT:  Yes.

25              MR. PETIT:  In our conversations with Mr. Harris, it

                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

                                                                    7

    Fcm1mtbc

1    was a statute of limitations motion on a site-specific basis.

2              THE COURT:  Yes, but what's the realistic number of

3    sites?  In other words, if you sit down and give the kind of

4    list you gave to Idemitsu and it turns out that you say that

5    Vitol is at five sites or Peerless is at ten sites, I mean,

6    we're not talking 400.  We're talking a limited number of

7    sites, probably not a big number, and then they'll want

8    interrogatories or document requests or admissions that talk

9    about when you knew what.  Then they may be ready to make a

10   summary judgment motion based on limitations or laches.  I

11   think that's --

12             MR. PETIT:  And your Honor, I just think that that

13   particular discovery is also premature, and I'll give you an

                              Page 6

Hearing (12-22-15)(Scheindlin)

14  example.  Idemitsu issued us before the statute of limitations
15  very general discovery, and it was in Phase 1, and we responded
16  to that discovery by objecting that this wasn't limited to the
17  trial sites.  But we gave them, based on initial information,
18  what we thought were the sites they were connected to.
19          THE COURT:  Well, good.  Do that for these defendants.
20          MR. PETIT:  Well, for purposes of Idemitsu, it's a
21  little bit easier scenario than it is, for example, for Vitol
22  and Petrobras, and I'll give an example.  (Unintelligible) and
23  409 million gallons of MTBE gases were provided to a number of
24  different parties on the island, one of which is
25  (unintelligible) but also others.  Huge discovery question.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

Fcm1mtbc

1   Those are questions for discovery that we're going to want to
2   take against them and against other parties in Phase 2.  So for
3   us to be able to tell Vitol where their gasoline landed is
4   premature.  I don't think we can make that determination as we
5   could for Idemitsu.  The reason why we could for Idemitsu just
6   preliminarily was because Idemitsu was a supplier to GPR in
7   each location by themselves.  They kind of had a dedicated
8   supply chain.  That's not the case for either Vitol,
9   Petrobras -- Peerless, which is a terminal operator, their
10  gasoline went to various places throughout the island, and we
11  haven't had a chance to conduct that discovery, and according
12  to Mr. Harris, they believe that this is a one-way discovery
13  train.
14          THE COURT:  Well, I was going to speak to that, but I
15  wanted to focus on the second page of the defendant's letter,

Page 7

Hearing (12-22-15)(Scheindlin)

16   which says, "Reinstated defendants were middlemen that sold or

17   directed gasoline from one sophisticated party to another

18   sophisticated party, most of whom in turn resold to others,

19   including retailers." And I think we've already ruled in

20   another decision on the sophisticated party issue --

21          MR. HARRIS: Right.

22          THE COURT: -- so the fact that they -- who said

23   right?

24          MR. HARRIS: Jim Harris. I'm sorry, your Honor.

25          THE COURT: So that's one point. Then they said they

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

Fcm1mtbc

1    know of no release sites which they directly sold. I think you

2    would maybe agree with that, Mr. Petit. I'm not sure. Then

3    they say they never owned any storage tanks. And --

4          UNIDENTIFIED SPEAKER: Underground for Peerless.

5    Sorry, your Honor.

6          THE COURT: Right. I see. I know. I know. The

7    parentheses says other than Peerless, which are above-ground.

8    And there's no other gasoline that defendants directed to

9    sophisticated parties for each specific release site and for

10   each storage tank, etc. for each site.

11         So with all of that, I thought there was some merit on

12   defendant's position that they are in a different position than

13   other defendants and that they were out, they were brought back

14   in, they haven't had any initial discovery because they were

15   out, and they may be entitled to at least get started.

16         On the other hand, I certainly, reading these letters,

17   agree with the plaintiff that I'm not having full site

18   discovery on 400 sites. But I think that was put in there, as

Page 8

Hearing (12-22-15)(Scheindlin)

19    I said, as a scare tactic.  I don't think defendants think that
20    either.  They're not asking for full discovery on 400 sites.
21    The real dispute seems to be that you're saying that these
22    were -- some of these defendants were big suppliers and it
23    would require product tracing to figure out where all their
24    gallons went.
25          MR. PETIT:  Well, not just that.  It's just going to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Fcm1mtbc

1    require discovery on other defendants besides them.  I think
2    the four bullet points that Mr. Harris identified in his
3    letter -- first, (unintelligible) There are certainly other
4    product suppliers that are in this case.  (Unintelligible) They
5    would fall under those same categories.
6          The second issue is that it just reiterates the fact
7    that we would have to take discovery on other parties.  If they
8    were limited to a group of stations, I think that that would be
9    an easy thing, an easier thing.  Peerless, for example, if you
10    were limited to stations --
11          THE COURT:  I'm sorry.  I couldn't make you out
12    because of the disturbance on the line again.  If they were
13    limited to what?
14          MR. PETIT:  If they were limited to particular
15    stations more readily, like if they were owners and operators,
16    I think we would be able to have that analysis more easily.
17          THE COURT:  But they're not.  They're not owners and
18    operators, right?  They're middlemen.  They're suppliers.
19          MR. PETIT:  We don't necessarily agree.  I don't want
20    to appear we're agreeing.  The fact that they are product

Page 9

Hearing (12-22-15)(Scheindlin)

21   suppliers means that there's other discovery involved with

22   other defendants.

23        MR. HARRIS:  Your Honor, Jim Harris.  If I may

24   respond.  What you quoted in the letter accurately

25   characterizes this.  We directed materials to ports of Puerto

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

Fcm1mtbc

1    Rico.  It goes off the ship, no longer ours, it goes to others

2    that resell to the retail operators in Puerto Rico.  And the

3    plaintiffs have had going on nine years now in an effort to

4    identify them.  We were brought in late.  I don't think it's

5    unreasonable to say, just tell us which sites we're connected

6    to.  I guess if they say all 400 sites, that puts us in a

7    different position, but at this point we don't have a response

8    to what sites are we connected to.  We're not going to take

9    issue with it to say we're connected to that site.  But also,

10   if we're connected to a site, what the date was that you

11   discovered.  I think those are simple requests that may allow

12   these reinstated defendants to get out of all or most of the

13   case.

14        THE COURT:  The only thing is, they're saying, we

15   can't answer it so directly, we don't know which sites until we

16   do product tracing, because if you sold to another party who

17   then sold to the retailer, they have to trace where that

18   defendant sold before they can tell you where they think you're

19   responsible.  That's why Mr. Petit says it would require

20   discovery from other defendants.

21        MR. PETIT:  Your Honor, even if we were able to

22   provide the information that Mr. Harris is requesting on this

23   call, if we were to provide that and provide him a list, I

Page 10

Hearing (12-22-15)(Scheindlin)

24    don't think they're going to necessarily agree with when the

25    Commonwealth says it knew of the contamination.  If we're in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

Fcm1mtbc

1    Phase 2 --

2         THE COURT:  Well, it may get us to a denial of summary

3    judgment if there's a disputed issue of fact that people can

4    point to as to when the Commonwealth knew, but to do that, you

5    have to have some evidence to prove the issue of fact in

6    dispute.  You can't just say --

7         MR. PETIT:  Can we make a determination on when the

8    Commonwealth knew of MTBE contamination.  (Unintelligible)

9    We're certainly going to want to take discovery on what the

10   site files say.

11        THE COURT:  I'm sorry.  I couldn't hear that.  You

12   want to take discovery as to what?

13        MR. PETIT:  As to what their site files say.  It's

14   more of a complicated issue than Mr. Harris, the reinstated

15   defendants make it out to be, and I'm not sure it gets us

16   anywhere in the long run.

17        MR. HARRIS:  Your Honor, this is Jim Harris.  What I

18   suggest is sort of a middle ground approach which is, let's

19   start out by taking a look at whether they can identify

20   specific sites and what the date that they claim are.  There

21   may be a number of sites that immediately drop out because the

22   Commonwealth has a date prior to 2006.  As to those sites where

23   the date is after 2006, it may be necessary to do some

24   additional limited discovery on how the Commonwealth came to

25   that particular date, but perhaps we cross that bridge when we

Page 11

Hearing (12-22-15)(Scheindlin)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

Fcm1mtbc

1   come to it.

2            THE COURT:  It sounds easy when you say it, but I

3   don't know if they can identify the sites at which they say

4   you're liable and commit themselves to that until they have

5   discovery of other defendants, right?  That's what Mr. Petit

6   says.

7            MR. HARRIS:  I guess, your Honor, but I won't know

8   until I ask, and again, it's a little bit frustrating having us

9   brought into the case late to be told even nine years into the

10  case that they still don't have enough information to do the

11  tracing.  I wasn't involved --

12           THE COURT:  But that's because we haven't had Phase 2

13  discovery.  We've been focusing on the trial sites.  So the

14  plaintiffs are in the odd position of being accused of, after

15  nine years, not having the information, but I haven't allowed

16  that discovery to go forward.

17           MR. HARRIS:  They may have some discovery.  Your

18  Honor, I guess the question is, what do they know now?  We

19  don't even know.

20           THE COURT:  Okay.  But to be committed to say, here's

21  a list of the sites at which we claim you're liable but we're

22  telling you now that we're not committed to this being all of

23  them, you're going to accept that answer?  If they say, we will

24  identify 15 sites but we're not committing ourselves to those

25  15, it could turn out to be 315 but right now these are the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

Hearing (12-22-15)(Scheindlin)

Fcm1mtbc

1   only 15 that we can identify, what would you think of that

2   answer?

3          MR. HARRIS:  I would view that as moving in a positive

4   direction for my client, your Honor.

5          THE COURT:  Even though it wouldn't be definitive

6   until they get discovery of other defendants.

7          MR. HARRIS:  If that's the case, again, the proof will

8   be in the pudding as they're responding to the requests for

9   information.

10         THE COURT:  Apparently you're not listening exactly

11  what I said.  What if they say to you, here's a list of 15

12  where we definitely say you're responsible, but we're leaving

13  it open, we're not committed to that list, we're not saying it

14  won't change, and then a year or two later, they say, oh, and

15  it's 100 more sites.  You don't think you would say, boy, were

16  we misled?

17         MR. HARRIS:  Well --

18         MR. PETIT:  One way to look at this is what position

19  would the reinstated defendants have been in had they not been

20  out of the case earlier.  They wouldn't have been in a

21  different position.  They wouldn't have been entitled to the

22  discovery anyway.

23         MR. HARRIS:  I would disagree with that, your Honor.

24  Your order on Trammo, Peerless and Trammo, was in July '13.

25  The fact discovery ended in October of '13, and we know that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

Fcm1mtbc

1   they had responded to the Idemitsu request for sites and dates,

Page 13

Hearing (12-22-15)(Scheindlin)

2  and if we had had the ruling that we currently have with
3  respect to needing to show the date of injury, there would have
4  been sufficient time to ask those questions and to find out
5  what the Court wanted to --
6        THE COURT: Other Phase 2 defendants who aren't in the
7  Phase 1 sites at all, have they gotten the minimum level of
8  discovery that you're asking for, the identification of sites?
9        MR. HARRIS: I don't know that they asked, your Honor.
10        THE COURT: Well, because maybe they believe the Court
11  ruled that no discovery was going forward on Phase 2 until we
12  finished Phase 1. So when you say they didn't ask, maybe they
13  were told they couldn't, and that's what Mr. Petit is saying
14  is, if you'd never been let out and you'd been there all along,
15  discovery would essentially have been stayed if you weren't in
16  Phase 1.
17        MR. HARRIS: Well, I would add, your Honor, that I
18  think the complexion of the limitations issue changed very
19  dramatically when the Court issued its decision in Peerless and
20  Trammo in July of '13. At that point it was clear that to the
21  extent you could prove knowledge of your involvement with
22  gasoline trade in Puerto Rico and a date of injury, you can get
23  out of the case at that point in time and not have to wait
24  until trial. And I would submit to the Court that in that
25  circumstance, asking those general questions such as the ones

♀                                                                 16

Fcm1mtbc

1  we're asking now would have been most appropriate, and I would
2  urge the Court to allow us to proceed on that basis at that
3  time.
4        THE COURT: Right. But how many defendants have been

Hearing (12-22-15)(Scheindlin)

5   able to take advantage of that?

6            MR. HARRIS:  Other than -- all I know of is --

7            THE COURT:  I'm sorry?

8            MR. HARRIS:  I guess Idemitsu did, your Honor, and the

9   other three reinstated defendants are asking to be able to do

10  the same.

11           THE COURT:  I know, but other than Idemitsu, there are

12  many defendants.  Who else has had that opportunity?

13           MR. HARRIS:  None that I know of, your Honor.

14           THE COURT:  Right.  So that's the question.  Why are

15  these three defendants entitled to special treatment, so to

16  speak?

17           MR. HARRIS:  Well, your Honor, if I might respond.

18  The other way to take a look at it is, is this an appropriate

19  opportunity to allow, on the very limited issue of the

20  limitations, all the defendants to have that opportunity while

21  we await the outcome of the trial of the focus sites in Puerto

22  Rico.  There is going to be a significant amount of down time

23  between now and when those cases are tried, and is this an

24  opportunity, on the very limited issue of limitations, which

25  could be outcome determinative for a whole bunch of sites, to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀                                                                  17

Fcm1mtbc

1   have that discovery done now, and not limited to the four

2   reinstated defendants.

3            THE COURT:  Right.  So Mr. Pardo, you represent as

4   liaison everyone else.  How many defendants are we talking

5   about?

6            MR. PARDO:  Your Honor, Jim Pardo.  I don't have the

Page 15

Hearing (12-22-15)(Scheindlin)

7   exact number.  I'm sorry.  I didn't anticipate that question.

8   I guess I should have.  But I believe there must be somewhere

9   between 12 and 15 defendants, your Honor.

10          THE COURT:  Including the four reinstated or

11  excluding?

12          MR. PARDO:  Excluding.

13          THE COURT:  Oh, my gosh.  So you think it could be as

14  many as 16 to 20.

15          MR. PARDO:  That's correct, your Honor.

16          THE COURT:  Well --

17          MR. HARRIS:  But the question, your Honor, is going to

18  be the same for that entire pool.

19          THE COURT:  Right.  No, I understand that.  The

20  question is, how much work is that for the plaintiff?  How many

21  hours, months, weeks will that take?  Because I agree with you.

22  I think this is getting to be a terribly old case and it should

23  move forward even as they're awaiting the remand period, the

24  scheduling of the trial, the build-up to trial, the actual

25  trial.  I mean, to stay everything for two more years or three

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

Fcm1mtbc

1   I don't think makes any sense.  I think this discovery, what

2   you call this very limited discovery, should go forward as to

3   all defendants, because I can't really justify why these four

4   differ from everybody else.

5          So seems to me the defense should get together for all

6   16 to 20 and make their requests so that it's identical for

7   each of the defendants and then enough time has to be allowed

8   for plaintiffs to produce that kind of information.  But it is

9   limited to which sites and when did the Commonwealth know.

Page 16

Hearing (12-22-15)(Scheindlin)

10  That's all.  Not full site discovery, as I started out saying
11  earlier in this conference, just the issue of which sites and
12  when.
13          MR. PETIT:  Your Honor, this is Will Petit.  It sounds
14  like what you're suggesting is a conversation we'll be having
15  with defense counsel as a whole and defendant's liaison counsel
16  as part of the Phase 2.
17          THE COURT:  Right.  I am saying that.  I'm saying it
18  should be done for everybody because once you start doing one
19  thing for one group, another thing for another group, it's
20  chaotic, and I don't see why this group is in a special
21  position.  Yes, they can point back three years ago and say,
22  well, Idemitsu got its interrogatories answered and got out and
23  all that.  I don't know.  I don't recall how that anomaly
24  occurred, but it's one out of 20.  That's history.  Now I have
25  to deal with the reality today, and I don't see why that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                                    19

Fcm1mtbc

1  limited portion of the Phase 2 discovery shouldn't proceed.  I
2  think it should proceed as to everybody because this remand and
3  trial never goes very fast.  One thinks it could happen
4  tomorrow.  It won't.  It will be two years before that trial is
5  over.
6          MR. HARRIS:  Your Honor, Jim Harris.  I think we have
7  an opportunity to do that.  The defendants could easily get
8  together and craft a very focused set of interrogatories and
9  make productive use of the time when a whole bunch of the
10  defendants are not involved in the trial sites in Puerto Rico.
11          THE COURT:  Well, whether everybody likes it or not,

Page 17

Hearing (12-22-15)(Scheindlin)

12  that's really where I am too.  I think that should be done.

13  And so go ahead and have your meeting, go ahead and craft the

14  joint discovery demands.  I'm sure when plaintiff sees it,

15  they'll write letters and they'll bring it up in a monthly

16  conference and all of that, but I think that's the only way to

17  proceed at this time.  So it's not quite a schedule, but I

18  think that that's where you should start.  Craft the demands as

19  a group for everybody and we'll take it from there, step by

20  step.

21  　　　　MR. PARDO:  Your Honor, this is Jim Pardo.  May I have

22  an opportunity to speak to that?

23  　　　　THE COURT:  Yes.

24  　　　　MR. PARDO:  Thank you.  I hear you.  I will take that

25  message back to the other defendants who are not newly added

20

Fcm1mtbc

1  here or newly added back in.  I guess I'd like -- I didn't

2  anticipate this directive.  I do appreciate it.  I understand

3  it.  I may have some folks on my side who want the opportunity

4  to be heard on this.

5  　　　　THE COURT:  Well, I don't know how a defendant can

6  oppose being given the right to get discovery.  So anybody who

7  doesn't want it can drop out of the group for that purpose and

8  say, this is on behalf of everybody except Shell or except

9  Exxon.  If that's what you want, fine with me.  But basically

10  I'm saying it goes forward as to everybody.  If somebody

11  doesn't want to get discovery, that's up to them.  They don't

12  have a right to be heard.  That's my ruling.  You're liaison

13  counsel, so they were heard through your representation.  It's

14  everybody or nobody.  And anybody who doesn't want any

Hearing (12-22-15)(Scheindlin)

15    discovery, fine, they can exclude themselves from the group.

16    But they won't be in a great position to ask for it later

17    either, since they decided to forgo the opportunity to get it

18    when I offered it.

19            So why don't you meet with your group, and I'm sure

20    you'll get back to me.

21            Do we have a meeting scheduled in January?

22            MR. PARDO:  We do, your Honor.  January 13th right

23    now.

24            THE COURT:  Good.  Maybe you can get the request

25    together or be heard further then.  Not that I want to revisit

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

Fcm1mtbc

1    this.  This is what I think we have to do.  But I'll see you

2    all then.

3            MR. PARDO:  All right.  Thank you, your Honor.

4            ALL COUNSEL:  Thank you, your Honor.

5                        oOo

6

7

8

9

10

11

12

13

14

15

16

Hearing (12-22-15)(Scheindlin)

17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300