**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This Document Relates To:

*Commonwealth of Pennsylvania v. Exxon Mobil*
*Corporation, et al.*, Case No. 14-CV-06228

**Master File No. 1:00-1898**

**MDL 1358 (SAS)**

The Honorable Shira A. Scheindlin

**PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S OPPOSITION TO**
**DEFENDANT LUKOIL AMERICAS CORPORATION'S**
**MOTION FOR RECONSIDERATION**

Lukoil Americas Corporation's (LAC's) Motion for Reconsideration (Mot.") is without

merit.   LAC does not identify any change in controlling law, any new, previously unavailable,

evidence, or any manifest injustice that would support reconsideration by this Court. *See*

*Analytical Surveys, Inc. v. Tonga Partners, LP*, 684 F.3d 36, 52 (2d Cir. 2012) (motions for

reconsideration are not for "'taking a 'second bite at the apple'. . . .'") (citing *Sequa Corp. v. GBJ*

*Corp.*, 156 F.3d 136, 144 (2d Cir.1998).)

LAC had a full opportunity to address the crime fraud issue discussed in the Court's

opinion.   The issue was raised directly in the parties' briefing on LAC's motion to dismiss for lack

of personal jurisdiction, and again in pre-conference letters and discussion before the Court at the

February 16 status conference.   LAC knew that the Commonwealth would be addressing the

crime fraud exception in the most recent briefing and had every opportunity to address the

exception in its own brief.   LAC affirmatively agreed to the *in camera* process of which it now

complains, then deliberately rejected an additional opportunity to review and brief the issueLAC's

substantive argument - that GPMI received fair value for the assets that were transferred to Lukoil

North America (LNA) during the two weeks that LAC arranged to transfer GPMI to LNA and then

back to LAC - was fully briefed and argued to the Court in the underlying motion to dismiss, and

fully considered by the Court in the opinion LAC asks the Court to reconsider.   In fact the Court's

opinion reviews in some detail the Declaration of Vincent DeLaurentis (*see* 4/05/16 Opinion and

Order [hereafter "Slip Op."] at 5-8), which went to considerable lengths to give LAC's explanation

of the transaction.   LAC's motion to reconsider fails to identify any evidence that LAC would

have added to this declaration had it only known that the Court was actually going to consider the

crime fraud exception.

1

LAC complains that the Court's opinion does not acknowledge that LAC "made no effort whatsoever to keep secret the transfer of assets from GPMI to LUKOIL North America . . . ." Mot. at 2.   This classic bit of misdirection completely misses the point of the Court's opinion and the crime fraud exception.   As the relevant emails show and as the Court's opinion notes, what LAC fraudulently kept secret from GPMI creditors was the entire fraudulent scheme to transfer *only* valuable assets to LNA, keep liabilities with GPMI, and then place GPMI in bankruptcy, after the "clawback" period had expired.

LAC's argument that the transaction was merely a good faith attempt to inject liquidity into GPMI is directly contradicted by emails, sent more than ten months before the transaction, anticipating that after the asset-stripping transaction GPMI would become insolvent and a bankruptcy trustee would be appointed.   The purpose of the emails was to prevent any bankruptcy trustee or creditors from seeing documents related to the comprehensive plan.   If LAC expected the LNA asset-stripping transaction to restore GPMI's liquidity, why concern itself with keeping documents related to the transaction hidden from an eventual bankruptcy trustee?   No amount of additional briefing or record-building by LAC would change or explain this stark fact - which is revealed in the e-mails themselves.[1]

If the Court entertains LAC's request to further develop the record the Commonwealth would also seek to supplement the record with additional documents that fall under the crime fraud exception, including additional emails stating that the plan would help LAC escape environmental liability.   *See* 4/26/16 Letter from M. Axline to Hon. Scheindlin and attached Exhibits A and B

---

[1] *See* Plaintiff's Opp. to Mot. to Dismiss at 20-22 and *Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357 (2d. Cir. 1991) (finding that "information concerning financial transactions and movements of corporate assets subsequent to the transaction [at issue] was evidence admissible on the issue of alter ego liability . . . ."

submitted *in camera* (Ex. A was produced by LAC, was identified to counsel for LAC on February 24; Ex. B was also produced by LAC, but has not previously been identified to LAC).

I.  **LAC Agreed to the *In Camera* Submission and Had Ample Opportunity to Address the Crime Fraud Exception.**

The Commonwealth raised the issue of whether the crime fraud exception applies to allegedly privileged documents in the Commonwealth's 72-hour letter dated February 8, 2016. *See* Exhibit 2 at 4 (2/28/16 Letter from W. Walsh to Hon. Scheindlin, stating "There is no privilege for communications in furtherance of fraudulent conduct.".)   LAC responded to the claim of crime fraud exception in its reply letter, argued the crime fraud exception did not apply, and affirmatively stated it was "not objecting" to an *in camera* review of the document.   *See* Exhibit 3 at 3 (2/11/16 Reply Letter of J. Pardo to Hon. Scheindlin).   In fact, LAC itself noted that the privilege issue had been a topic of testimony that the Court previously reviewed.   *Id.*

At the February 16, 2016, status conference, the Court stated:   If you're addressing an exception to the usual attorney-client privilege, I need to know the context of why that exception would work.   So I'm going to suggest that you each can submit in camera a five-page, double-spaced submission. . . ."   LAC's counsel did not object and, in fact, he agreed to the *in camera* procedure: "MR. TUITE:   My only hesitation, your Honor, is our reply brief is due this Friday.   If we could have maybe one or two more days, *that would be fine*."   *See* Exhibit 4 at 7 (*In re MTBE*, No. 1:00-1898, 2/16/16 Tr.) (emphasis added) & *id.* at 4 ("we're happy to submit" the document for *in camera* review).   *See also* Slip Op. at 2 ("The parties agreed that the Court should conduct an *in camera* review.")

After addressing this issue in the 72-hour letters, discussing the issue on the record at the status conference, and agreeing to a "five-page, double-spaced submission" *in camera* review, LAC waited until after the opinion (which went against LAC) to complain for the first time that the

3

*in camera* review of one privileged document violated due process.[2]   When LAC was then offered

the opportunity to see the Commonwealth's *in camera* submission and file an additional ten (10)

page brief addressing that submission, LAC declined to do so.   *See* Exhibit 1 (4/22/16 E-mail

from J. Tuite to R. Mawn).   Since LAC was afforded multiple opportunities to respond to these

facts, and to brief the crime fraud exception, there is no violation of due process where LAC

agreed to the procedure proposed and followed by the Court.   There is only LAC wanting a fourth

chance to present its losing argument and making strategic choices about how it will attempt to do

so.   LAC's after-the-fact objection to the process, after losing its argument, is unavailing; LAC

must live with its strategic choices on briefing and on the *in camera* review process.

## II.    LAC Does Not Cite Any Overlooked Law or Fact That Would Warrant Reconsideration.

LAC's argues that this Court's April 5, 2016, decision was grounded in "material

misunderstandings of fact" and seeks to submit "new" evidence that shows (according to LAC)

how the Court "misunderstood" the facts.   Mot. at 5.   This evidence, however, is merely

duplicative of evidence in the record and cited in the Court's opinion.   It does not demonstrate any

"misunderstanding" in the Courts opinion - if anything it corroborates the facts as discussed in that

opinion.

LAC argues that the Court's Opinion "cited no evidence concerning the sufficiency of the

consideration paid . . . [and] [t]he issue of fair consideration was a central issue in the 17-day trial

in Bankruptcy Court . . . ."   Mot. at 1.   But the Court's Opinion *did* address the issue of "fair

consideration" (Slip Op. at 5-8) and specifically noted that LAC had commissioned an opinion that

the price received for the transferred assets was a fair price.   Slip Op. at 7.   LAC's motion ignores

---

[2]      The documents submitted for *in camera* review were actually part of the same email
string.   See Part IV, below.

4

the Court's opinion finding that the Houlihan Lokey "fair consideration" opinion "was based on unverified financial information provided by GPMI." *Id.*  More importantly, LAC ignores the fact that the consideration paid for assets sold to LNA was not particularly relevant to the *basis* for the Court's opinion.   The Court's opinion was based on substantial evidence that LAC (and OAO Lukoil) developed a comprehensive "*fraudulent scheme*" (Slip Op. at 18) to strip GPMI of its valuable assets, wait until the clawback period for bankruptcy had passed, then place GPMI into bankruptcy to avoid liabilities, including environmental liabilities.   Slip Op. *passim.*

It is on this plan, revealed by the extensive evidence submitted with the Motion to Dismiss briefing, that the Court's opinion is based.   Slip Op. at 8-11.   All of the evidence relied upon by the Court, other than the single email submitted for *in camera* review, was submitted as part of the Motion to Dismiss briefing.[3]  *See* Commonwealth's Opp. Sect. IV(C) at 20-21 ("The Extent of LAC's Control Over GPMI Is Demonstrated By LAC's Fraudulent Transfer of GPMI's Properties Two Years Prior to Steering GPMI Into Bankruptcy.")  LAC addressed all of these arguments and this evidence in its Reply Brief.   *See, e.g.*, LAC Reply at 7, n.6.   LAC is not entitled to yet another opportunity to respond to the Commonwealth's arguments or submit cumulative evidence.

LAC also argues: "The privilege opinion overlooks several disputed points of law."   Mot. 9-10.   But the opinion did not "overlook" anything (see Slip Op. at 3, 15-17, 18-20).   LAC, strategically or through oversight, did not *submit* the arguments that it now wishes to make.   It was LAC's obligation to make these arguments in the first instance - not the Court's obligation to

---

[3]      LAC, for example, states in its motion at page 7, that it did not have an opportunity to present evidence that GPMI received fair market value for its assets and the "cash infusion by OAO Lukoil", but LAC argued this very point in its Reply in Support of its Motion to Dismiss at n.6, citing Declaration of V. DeLaurentis at ¶ 48 ("the Commonwealth's suggestion (Br. 20–21) that LAC planned to and did drive GPMI into bankruptcy ignores, among other things . . . the August 2009 contribution of $340 million to GPMI—before GPMI sold its assets)").

attempt to discern arguments that LAC could have made, but did not,[4] and when LAC was given the opportunity to submit ten (10) pages of additional briefing, it declined to do so.

### III.    LAC Withheld Relevant Documents.

The evidence referenced for the first time in LAC's motion, while revealing nothing new, *was* improperly withheld from the Commonwealth, and still has not been produced.   LAC should not be permitted to further "develop a record" based on cherry-picked materials previously withheld from the Commonwealth.

LAC cites two joint trial exhibits and two depositions (Mot. at 5-8) from the bankruptcy proceedings.   The Commonwealth has been requesting these materials for more than a year but LAC never produced them.   The Commonwealth sought these documents as part of its Rule 30(b)(6) Notice of Deposition to LAC in March, 2015.   Exhibit 5 at 8 (Commonwealth's Notice of 30(b)(6) Deposition, RFP No. 12(c) (seeking transcripts of depositions of each person who held a position, during the relevant time period, as an officer and/or director of LAC), & at 11, RFP No. 29 (seeking all transcripts of depositions taken, including deposition exhibits, and all trial exhibits, in the adversary proceeding in the bankruptcy court for *In Re GPMI* Adversary Proceeding, No. 11-15606 (S.D.N.Y. Bk.).)

Last year, before it received the crime fraud emails, the Court reviewed *in camera* certain trial testimony from the bankruptcy transcripts and found those redacted transcripts were subject to

---

[4]    The cases cited by LAC are not to the contrary. The Seventh Circuit, for example, observed that the party "with superior access to the evidence and in the best position to explain things [should] come forward with [a satisfactory] explanation for why the privilege shall remain." *Matter of Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988) does not address the amount of briefing or evidence that must be considered when evaluating the crime fraud exception, nor does it suggest courts' should issue an open invitation to flood the court with new documents (especially where the documents submitted to explain the exception have been withheld without a claim of privilege).   *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 97 (3d Cir. 1992) states that the party asserting the privilege has an opportunity to be heard, but it does not require a certain length brief nor does it require an open invitation to provide unlimited documents to the court.

the attorney-client privilege.   *See In re MTBE*, No. 1:00-1898, Docket No. 4215 (5/26/15 Order).

After the Court issued its April 5, 2016, crime fraud opinion, counsel for the Commonwealth again

asked counsel for LAC for a full set of the transcripts in bankruptcy, as well as all exhibits

identified on the Adversary Proceeding's Joint Trial Exhibit List.   *See* Exhibit 6 (4-07-16 Letter

from M. Axline to J. Tuite).   LAC, however, never responded, until it decided to reference several

-- unproduced -- documents, carefully selected, with its Motion for Reconsideration.   *See* Mot. at

5-8.

> **IV.**      **The Court Has the Discretion to Review Privileged Documents and
> Arguments Regarding Privileged Materials in Camera and LAC Agreed
> to this Process.**

An *in camera* review to establish whether the crime fraud exception applies rests in the

sound discretion of the district court.   *U.S. v. Zolin*, 491 U.S. 554, 572 (U.S. 1989).[5]   Any

determination that the crime fraud exception applies is also within the discretion of the district

court.   The cases cited by LAC recognize these principles.   *See In re Omnicom Group, Inc. Sec.

Litig.*, 233 F.R.D. 400, 405 (S.D.N.Y. 2006) (the "Second Circuit has emphasized the broad

discretion of the trial court" in considering the crime fraud exception).   *Omnicon* noted that the

court must only conclude that there is a "reasonable basis to suspect the perpetration or attempted

perpetration of a crime or fraud" in order to conduct an *in camera* review of the evidence.   *Id*;

*Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 420 (N.D. Cal. 1996) makes these very

---

[5]    LAC's reliance on *In re Taylor*, 567 F.2d 1183 (2d Cir. 1977) is entirely misplaced.   *In Re
Taylor* was decided prior to *Zolin, supra,* and simply states, in general, that *in camera* review is
not favored. *In Re Taylor* involved a grand jury proceeding where the government sought to bar
a witness from retaining a certain lawyer based on information in affidavits and exhibits from
grand jury proceedings that were submitted *in camera* and not disclosed to the witness.   Here,
unlike in *Taylor*, LAC knew precisely what was being submitted to the Court for in camera
review, and had multiple opportunities to address the document.

same points and also emphasizes the district court's broad discretion when deciding if the crime fraud exception applies.

The email at issue in the Court's opinion was *produced by LAC*, was identified by the Commonwealth to LAC in advance of the Court's review, and LAC was given the same opportunity to brief its position about the privileged document as the Commonwealth. Aside from this single document, the Court's opinion relies on the abundant non-privileged documents already provided to the Court (some by LAC itself) in connection with briefing on LAC's motion to dismiss for lack of personal jurisdiction. The Court observed that the "record is replete with facts that indicate the profitable assets of GPMI were stripped and then GPMI was sold for the express purpose of taking it into bankruptcy." Slip Op. at 19.

LAC's suggestion that it "has not been afforded the opportunity" to develop an adequate record because it was unable to "condens[e] relevant evidence" (Mot. at 3) into a 5-page brief mischaracterizes the proceedings, briefing and evidence submitted to the Court. In addition to the letter brief, LAC has briefed this issue numerous times: LAC submitted arguments in its 72-hour letter, at the February 16, 2016 status conference, and included seven (7) pages of facts in its Motion, nine (9) exhibits and a 17-page Declaration of Vincent DeLaurentis with 48 paragraphs asserting LAC's version of the facts, as well as arguments set out in its Reply Brief in support of its Motion to Dismiss.

## V.    If LAC Is Allowed To Supplement The Record The Commonwealth Should Also Be Allowed To Supplement The Record.

If this Court were to grant LAC's request to "develop a record," the Court should also allow the Commonwealth to supplement the record. The Commonwealth has had to expend considerable time and resources sorting through the document dump it received from LAC in

November and December of 2015, and the Commonwealth is continuing to find documents supporting the crime fraud exception.   For example, document Bates No. LUK0001875-76 is a 2007 e-mail which specifically discusses the creation of a new Lukoil entity (Lukoil North Americas) in order to avoid the "previous liabilities" of GPMI.   (*See* Att. A to 4/26/16 Ltr. from M. Axline to Hon. Scheindlin submitted simultaneously herewith *in camera* with a copy to LAC counsel James Tuite.)   The Commonwealth notified LAC of its intention to include this email in the *in camera* submission with the other e-mails on February 24, 2016, but LAC asked the Commonwealth to delay submitting the document until the parties could discuss it "at a later date." The Commonwealth honored this request.   LAC has now had almost two months notice that the document would be placed before the Court.   If the Court is inclined to grant LAC's request to "develop a record," the Commonwealth requests permission to supplement the record with this document as well.[6]

Another document located among the documents produced by LAC and subject to the crime fraud exception is Bates No. LUK0048561, dated 1/13/09.   This email reveals further evidence of the fraudulent scheme associated with the restructure as discussed by Vadim Gluzman (President and CEO of LAC and GPMI) and Michael Lewis (counsel and an officer of LAC and GPMI) and copied to GPMI and LAC officers Vincent DeLaurentis and Sem Logovinsky,.   (*See* Att. B to 2/26/16 Ltr. from M. Axline to Hon. Scheindlin submitted *in camera*.)

## CONCLUSION

Based on Plaintiffs' original and supplemental papers and the above brief and Declaration attached hereto, LAC's Motion for Reconsideration should be denied.

---

[6]     LAC also should be ordered to produce the trial transcripts, trial exhibits on the Joint Trial Exhibit List, the depositions and deposition exhibits, all from the bankruptcy proceeding.   LAC should also be ordered to prepare a privilege log of other allegedly privileged writings which in any way touch upon the plan to separate GPMI from its valuable assets.

DATED: April 26, 2016.                          Respectfully submitted,


**PENNSYLVANIA OFFICE OF**                 **PENNSYLVANIA GOVERNOR'S OFFICE**
**ATTORNEY GENERAL**                       **OF GENERAL COUNSEL**

James A Donahue, III, Esquire                  Linda C. Barrett, Esquire
Executive Deputy Attorney General              Deputy General Counsel
Strawberry Square, 14th Floor                  333 Market Street, 17th Floor
Harrisburg, Pennsylvania 17120                 Harrisburg, Pennsylvania 17101
(717) 705-0418                                 (717) 787-9347
Email: jdonahue@attorneygeneral.gov            Email: lbarrett@pa.gov


**MILLER & AXLINE, P.C.**                   **BERGER & MONTAGUE, P.C.**

By: /s/ Michael Axline                         Daniel Berger, Esquire
      Michael Axline, Esquire                  Tyler E. Wren, Esquire
      Duane Miller, Esquire                    Special Counsel to the
Special Counsel to the                         Commonwealth of Pennsylvania
Commonwealth of Pennsylvania                   1622 Locust Street
1050 Fulton Avenue, Suite 100                  Philadelphia, Pennsylvania 19103
Sacramento, California 95825-4225              (215) 875-3000
(916) 488-6688                                 Email: twren@bm.net
Email: maxline@toxictorts.org                        danberger@bm.net
      dmiller@toxictorts.org


**COHEN, PLACITELLA & ROTH, P.C.**

Stewart L. Cohen, Esquire
Robert L. Pratter, Esquire
Michael Coren, Esquire
Special Counsel to the
Commonwealth of Pennsylvania
Two Commerce Square
Suite 2900, 2001 Market St.
Philadelphia, Pennsylvania 19103
(215) 567-3500
Email: scohen@cprlaw.com
      rpratter@cprlaw.com
      mcoren@cprlaw.com

      *Attorneys for Plaintiff*
      *The Commonwealth of Pennsylvania*

# EXHIBIT 1

| From: | Tuite, Jim |
|---|---|
| To: | "Russell_Mawn@nysd.uscourts.gov"; maxline@toxictorts.org; Katchen, Katherine Menapace; MDL1358@weitzlux.com; mdl1358@mwe.com; mhan@toxictorts.org; Scarola, Matt; toxictorts@toxictorts.org |
| Subject: | RE: MDL 1358 - Commw. of Pennsylvania v. Exxon Mobil Corp., et al., Case No. 14-cv-06228 – LAC Reconsideration |
| Date: | Friday, April 22, 2016 11:29:25 AM |

Dear Mr. Mawn,

LAC has advised the Commonwealth that it is not amenable to the proposed arrangement. LAC has submitted its motion for reconsideration, and the Commonwealth has been invited by the Court to submit its response. LAC does not believe that rushed and piecemeal briefing in the context of a reconsideration motion gives LAC an adequate or legally proper opportunity to submit evidence, briefing and argument in response to the Commonwealth to address the inapplicability of the crime-fraud exception.  The motion for reconsideration is not an opportunity to submit new evidence—LAC's citation to the record was done in order to show the manifest injustice that resulted from the process leading to the Order entered on April 5, 2016.  For this reason, LAC objects to the Commonwealth's attempt to submit an additional document—one that was not part of the Commonwealth's original briefing—for *in camera* review.

Finally, in light of the reassignment of the MTBE proceedings to Judge Engelmayer on April 4, 2016, which we just learned about today, please let us know whether we should also be communicating with Judge Engelmayer's chambers in connection with the motion for reconsideration.

Jim Tuite

**From:** Russell_Mawn@nysd.uscourts.gov [mailto:Russell_Mawn@nysd.uscourts.gov]
**Sent:** Thursday, April 21, 2016 6:48 PM
**To:** maxline@toxictorts.org; Tuite, Jim; Katchen, Katherine Menapace; MDL1358@weitzlux.com; mdl1358@mwe.com; mhan@toxictorts.org; Scarola, Matt; toxictorts@toxictorts.org
**Subject:** RE: MDL 1358 - Commw. of Pennsylvania v. Exxon Mobil Corp., et al., Case No. 14-cv-06228 - LAC Reconsideration

If both parties are amenable to this arrangement, please submit a proposed order to the Court indicating as much and outlining specifically the briefing schedule and exchanges you propose.

Please note that regardless of what the parties agree to, a reply from defendants (as opposed to the suggested simultaneous briefing) is still not invited at this time.

Thanks,

Russell Mawn
Law Clerk to the Honorable Shira A. Scheindlin
Southern District of New York
Russell_Mawn@nysd.uscourts.gov

212-805-0478

From:      "Michael Axline" <maxline@toxictorts.org>
To:        <Russell_Mawn@nysd.uscourts.gov>, "'Scarola, Matt'" <mscarola@akingump.com>, "'Tuite, Jim'" <jtuite@AKINGUMP.com>,
           "'Katchen, Katherine Menapace'" <kkatchen@AKINGUMP.com>, <mdl1358@mwe.com>, <MDL1358@weitzlux.com>,
           <mhan@toxictorts.org>, <toxictorts@toxictorts.org>
Date:      04/21/2016 06:24 PM
Subject:   RE: MDL 1358 - Commw. of Pennsylvania v. Exxon Mobil Corp., et al., Case No. 14-cv-06228 - LAC Reconsideration

Mr. Mawn

Both parties submitted in camera briefs on the crime fraud exception.  The Commonwealth proposes to unilaterally
provide LAC today with the brief (and attachments) it submitted in camera, as well as an one additional document
that has previously been shown to LAC and that the Commonwealth intends to reference and attach to its
Response on Tuesday.

The Commonwealth would not oppose LAC being given the opportunity to simultaneously submit its own brief, of
equivalent length, on Tuesday, addressing the documents and the Commonwealth's in camera brief.

Thank you in advance for bringing this to the Court's attention.

Mike Axline

Miller & Axline / phone (916) 488-6688 / fax (916) 488-4288 This private communication may be confidential or
privileged. If you are not the intended recipient, any disclosure, distribution, or use of information herein or
attached is prohibited.

From: Russell_Mawn@nysd.uscourts.gov [mailto:Russell_Mawn@nysd.uscourts.gov]
Sent: Thursday, April 21, 2016 3:02 PM
To: Scarola, Matt <mscarola@akingump.com>; Tuite, Jim <jtuite@AKINGUMP.com>; Katchen, Katherine Menapace
<kkatchen@AKINGUMP.com>; maxline@toxictorts.org; mdl1358@mwe.com; MDL1358@weitzlux.com;
mhan@toxictorts.org; toxictorts@toxictorts.org
Subject: Re: MDL 1358 - Commw. of Pennsylvania v. Exxon Mobil Corp., et al., Case No. 14-cv-06228 - LAC
Reconsideration

Counsel:

Judge Scheindlin requests an opposition brief from the plaintiff due Tuesday, April 26.  The opposition
should be no longer than 10 pages.  No reply is invited at this time.

Please let me know by tonight if you anticipate an issue with this timeline.

Thanks,

Russell Mawn
Law Clerk to the Honorable Shira A. Scheindlin
Southern District of New York

Russell_Mawn@nysd.uscourts.gov
212-805-0478

From:       "Scarola, Matt" <mscarola@akingump.com>
To:         "Russell_Mawn@nysd.uscourts.gov" <Russell_Mawn@nysd.uscourts.gov>
Cc:         "Tuite, Jim" <jtuite@AKINGUMP.com>, "Katchen, Katherine Menapace" <kkatchen@AKINGUMP.com>,
"maxline@toxictorts.org" <maxline@toxictorts.org>, "MDL1358@weitzlux.com" <MDL1358@weitzlux.com>, "mdl1358@mwe.com"
<mdl1358@mwe.com>, "mhan@toxictorts.org" <mhan@toxictorts.org>, "toxictorts@toxictorts.org" <toxictorts@toxictorts.org>
Date:       04/19/2016 11:30 PM
Subject:    MDL 1358 - Commw. of Pennsylvania v. Exxon Mobil Corp., et al., Case No. 14-cv-06228 - LAC Reconsideration

Dear Mr. Mawn:

Attached is a copy of LUKOIL Americas Corporation's motion for reconsideration and brief in support.  Both
documents have been filed on ECF and will be served on all counsel of record by LNFS.

We will send a courtesy hard copy of the papers to Judge Scheindlin for delivery by Thursday.

Thank you,
Matt Scarola

**Matthew Scarola**
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street  |  Suite 1500  |  San Francisco, CA 94104-1036  |  USA  |  Direct: +1 415.765.9507  |  Internal: 49507
Fax: +1 415.765.9501  |  mscarola@akingump.com  |  akingump.com  |  Bio

The information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above. If you have received this communication in
error, please notify us immediately by e-mail, and delete the original message. [attachment
"Motion.pdf" deleted by Russell Mawn/NYSD/02/USCOURTS] [attachment "Brief.pdf"
deleted by Russell Mawn/NYSD/02/USCOURTS]

The information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above. If you have received this communication in
error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 2



# W E I T Z
## &
# L U X E N B E R G

A   P R O F E S S I O N A L   C O R P O R A T I O N

• L A W   O F F I C E S •

700 BROADWAY •        NEW YORK, NY 10003
TEL. 212-558-5500 •        FAX 212-344-5461

WWW.WEITZLUX.COM

February 8, 2016

**VIA HAND DELIVERY**
**& ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   MDL 1358 / MTBE – February 16 Status Conference

Dear Judge Scheindlin:

Plaintiffs respectfully submit this letter in advance of the scheduled February 16, 2016 Status Conference. Plaintiffs wish to address certain issues identified for the agenda.

**Joint Agenda Item 1:** *Puerto Rico MTBE Litigation*
               *Suggestion to Remand*

The Commonwealth recently provided defendants with a draft Joint Proposed Suggestion to Remand concerning the Phase I trial sites. Liaison Counsel for defendants has indicated that they will provide comments on this draft today or tomorrow. An update on the status of the Parties' discussions will be provided in the Commonwealth's reply letter.

Honorable Shira A. Scheindlin
February 8, 2016
Page 4

that it holds a joint attorney client privilege with GPMI. LAC should not be allowed to assert that it is independent of GPMI while simultaneously asserting a joint privilege with GPMI. Third, the actions taken by LAC were intended to defraud creditors, and there is no privilege for communications in furtherance of fraudulent conduct. Finally, if LAC's communications with its attorneys are consistent with the publically available information submitted with the Commonwealth's opposition to LAC's motion to dismiss for lack of personal jurisdiction, they will show that the attorney was not in fact advising both GPMI and LAC on a matter of common interest, but rather was advising LAC on how to get rid of GPMI's valuable assets and take GPMI to bankruptcy. Again, subsequently sharing that communication with GPMI (whether out of confidence that LAC controlled GPMI so GPMI would not protest or out of a belief that claiming a joint privilege in bankruptcy would insulate the communications from third parties) constituted a waiver of any right to assert an attorney client privilege.

The Court has already reviewed in chambers some of the sealed transcripts from the bankruptcy adversary proceedings. The Commonwealth respectfully requests that the Court also agree to review in chambers certain communications between LAC and its attorney regarding LAC's relationship with GPMI.

**Plaintiffs Agenda Item 3:** *Pennsylvania Alternative Service on OAO Lukoil*

1. **The Commonwealth of Pennsylvania Requests Permission for Alternative Service on Certain Lukoil Entities**

OAO Lukoil is a corporation incorporated in Russia which does not have a designated agent for service of process in the United States. Plaintiff contacted James Tuite in several emails and letters asking his firm to accept service on behalf of OAO Lukoil. Ultimately, his firm declined to accept any such service.

Lukoil North America, LLC (LNA) is a wholly owned subsidiary of OAO Lukoil which is responsible for operating hundreds of Lukoil service stations in the United States. Plaintiff served a summons and complaint on LNA as Lukoil's managing agent in the United States. Mr. Tuite then wrote a letter demanding that we withdraw the certificate of service on Lukoil North America, LLC. The process server served Corporation Service Company (CSC) with a complaint on "Lukoil Oil Company a/k/a OAO Lukoil in care of Lukoil North America LLC (LNA) and Lukoil Pan Americas, LLC (LPA) at the address of Corporation Service Company (CSC) in Pennsylvania. We believe that LNA qualifies as managing, general, or responsible agent of Lukoil. (*Bridgeport Music, Inc. v Rhyme Syndicate Music* (6th Cir. 2004) 376 F. 3d 615, 624.)

There are some practical problems with serving OAO Lukoil n/k/a PJSC Lukoil. They

# EXHIBIT 3

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Frankfurt Houston London Los Angeles Miami
Milan Munich New York Orange County Paris Rome Seoul Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

BY HAND DELIVERY AND ELECTRONIC MAIL                    February 11, 2016

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

Re:    Master File C.A. No. 1:00-1898 (SAS) MDL No. 1358 - Defendants' Reply Letter

Dear Judge Scheindlin:

Defendants respectfully submit this reply letter in advance of the February conference.[1]

## JOINT AGENDA ITEM

### I.    *Commonwealth of Puerto Rico I*: Suggestion of Partial Remand

Defendants responded with comments to Plaintiffs' draft suggestion of partial remand on February 10 and will be prepared to provide the Court with an update on the parties' discussions.

## PLAINTIFFS' AGENDA ITEMS

### I.    *Commonwealth of Pennsylvania*: CMO 119 Release Site Lists

CMO 119 § III.A required that by December 31, Defendants "identify every 'release site' (by name, address and, *if applicable*, site identification number) where that Defendant's records and/or the records of its environmental consultant in Defendant's possession, report, indicate or show a release of MTBE or a detection of MTBE." On January 5, Plaintiff requested that Defendants re-produce their site lists in native format and update their lists to include PADEP's internal Facility ID numbers.[2] The parties' subsequent meet-and-confers focused on clarifying

---

[1] Defendants request a short extension of the page limit to respond to Plaintiff's 6-page letter.

[2] Plaintiff's suggestion that Defendants already were obligated by CMO 119 to provide PADEP internal numbers is incorrect and belied by the subsequent request that Defendants voluntarily agree to do so. As cited above, the CMO required Defendant to provide a site identification number only "if applicable." Furthermore, the term was not defined, and many Defendants reasonably responded to the CMO by providing their own internal station ID number.

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue New York New York 10173-1922 Telephone: +1 212 547 5400 Facsimile: +1 212 547 5444 www.mwe.com

The Honorable Shira A. Scheindlin
February 11, 2016
Page 3

Plaintiff asserts the crime-fraud exception (*Pls.' Preconf. Ltr.*, at 4), but it has done nothing to satisfy the showing required to trigger its application, notwithstanding the repeated assertion that LAC drove GPMI into bankruptcy. That assertion ignores critical facts, particularly the actual cause of GPMI's declaration of bankruptcy—an adverse arbitration award of $230 million. In any event, there is no valid reason to permit disclosure of privileged communications about a wholly collateral matter. Plaintiff recently admitted that the alleged fraudulent transfer in 2009 is only relevant, if at all, to evaluating the extent to which LAC controlled GPMI. *See Opp. to LAC Mot. to Dismiss* (Feb. 5, 2016), Dkt. #4372. Whether LAC exercised control over GPMI's assets in 2009 is irrelevant to whether LAC controlled GPMI's operating decisions during the period in which MTBE gasoline was sold. Indeed, whether attorney-client communications were used to facilitate an allegedly fraudulent transaction in 2009 will shed no light on whether LAC dominated GPMI regarding the claims in this litigation.

Plaintiff asks for an *in camera* review. While not objecting to such review, LAC believes it would be an unproductive use of the Court's time. Plaintiff has identified only one attorney-client communication for which it seeks disclosure, and the substance of that communication was a topic of testimony that the Court previously reviewed and found should be redacted because it is "indeed privileged." *Order*, at 2 (May 26, 2015), Dkt. #4215.

### III. *Commonwealth of Pennsylvania*: Alternative Service on OAO Lukoil

Plaintiff has failed to make the evidentiary showing necessary to establish that Lukoil North America LLC is a managing agent for PJSC Lukoil (formerly named OAO Lukoil). But, in light of the authorities it cites about service in Russia, PJSC Lukoil will not oppose alternative service. PJSC notes that bringing it into the case is unnecessary and will impose burdens and complications inherent in international litigation involving non-English speakers. Thus, PJSC respectively suggests that the Court defer alternative service until after it rules on LAC's pending motion to dismiss. If Plaintiff is unable to pierce GPMI's veil to reach its immediate parent, it makes no sense for Plaintiff to try to pierce several levels higher into the corporate structure.

### IV. *OCWD*: Use of Public Records Act to Conduct Discovery

The parties have exchanged correspondence regarding Defendants' recent California Public Records Act ("CPRA") requests to water purveyors in the Orange County Water District ("District"). Exs. C-D. The District's demand that Defendants "cease and desist" their CPRA efforts and assertions that Defendants are conducting illicit discovery that circumvents the discovery process appear to be based on a misapprehension of the requests and applicable law.[3]

Public record requests are not discovery requests. Litigants are not barred from making

---

[3] Ms. O'Reilly suggests that Defendants intentionally used D.C. counsel to conceal their requests. That is not true. Matthew Thurlow has made appearances on behalf of ConocoPhillips in several MTBE matters. He is a member of the California Bar. His firm, Latham & Watkins LLP, has represented ConocoPhillips in the Orange County matter since the District filed the case.

# EXHIBIT 4

1

G2GYMTBC

1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x
3
    In Re: METHYL TERTIARY BUTYL
4           ETHER ("MTBE") PRODUCTS          00 CV  1898 (SAS)
            LIABILITY LITIGATION
5
    ------------------------------x
6
                                             New York, N.Y.
7                                            February 16, 2016
                                             4:05 p.m.
8
    Before:
9
            HON. SHIRA A. SCHEINDLIN
10
                                             District Judge
11

12              APPEARANCES

13

14      Attorneys for Plaintiffs
        DUANE C. MILLER
15      MICHAEL AXLINE
        JOHN GILMOUR
16      LEONARD KAUFMANN

17      Attorneys for Defendants
        JAMES PARDO
18      LISA GERSON
        JEFF PARKER
19      ANDREW RUNNING
        JIM TUITE
20      ALAN DRAUS

21

22

23

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

4

G2GYMTBC

1    etc., etc.

2            I don't see any point in putting off the actual making

3    of service.  It's not that difficult.  It's better to get it

4    done.  So there's the ruling, so to speak, on that.  Go ahead

5    and make service.

6            On the other two issues, the middle issue relates to

7    the alleged privilege assertion.  There I thought the

8    suggestion of in-camera review makes sense.

9            I've already seen some of the transcripts regarding

10   the bankruptcy proceedings.  I don't see why I shouldn't do the

11   same with respect to the group of documents as to which there's

12   an alleged privilege on the basis of which they're being

13   withheld.

14           So if anybody wants to be heard further, okay.  But

15   I'm willing to review them.  I can't tell exactly how many.

16   Sometimes it seems like one; sometimes it seems like six.  How

17   many are there?

18           MR. TUITE:  Your Honor, James Tuite for LUKOIL

19   Americas's Corporation.  At this point, plaintiff has only

20   identified one document.  Again, we're happy to submit that.

21   It's just that these documents are attorney communications

22   relating to a transaction --

23           THE COURT:  Then it won't take you long.  If it's one

24   document, it's clearly attorney-client, and there's no

25   exception.  It shouldn't take you forever to figure it out.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G2GYMTBC

1    was give you a list of names and identify whether they're

2    counsel or not.  We can certainly do that.

3              THE COURT:  That's easy.  I'm saying more than that.

4    If you're addressing an exception to the usual attorney-client

5    privilege, I need to know the context of why that exception

6    would work.

7              So I'm going to suggest that you each can submit in

8    camera a five-page, double-spaced submission as to, in your

9    case, why you think it's privileged and, in your case, why you

10   think it's no longer privileged, if it ever was, etc., and

11   hopefully between the documents and the submissions, I'll be

12   able to make some kind of an intelligent ruling.

13             MR. AXLINE:  We'll do that.

14             THE COURT:  When is the date for these submissions?

15   Can you do it in a week?  Can you do it by the close of

16   business on the 23rd of February, which is a week from today?

17             MR. TUITE:  My only hesitation, your Honor, is our

18   reply brief is due this Friday.  If we could have maybe one or

19   two more days, that would be fine.

20             THE COURT:  The close of business on the 24th.

21             MR. TUITE:  Okay, your Honor.

22             MR. AXLINE:  For your Honor's benefit and for

23   Mr. Tuite's benefit as well, I think we will be addressing the

24   choice of laws issue in our letter as to which law applies to

25   the privilege issue here for these documents.

# EXHIBIT 5

E-SERVICE
56851526
Mar 02 2015
08:21PM
File & ServeXpress

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re: Methyl Tertiary Butyl Ether ("MTBE")*<br>*Products Liability Litigation* | **Master File No. 1:00 – 1898**<br>**MDL 1358 (SAS)**<br>**M21-88** |

This Document Relates To:

***Commonwealth of Pennsylvania, et al., v.***
***Exxon Mobil Corp., et al.***, No. 1:14-CV-06228-SAS

### PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S NOTICE OF DEPOSITION OF LUKOIL AMERICAS CORPORATION ON DESIGNATED ISSUES WITH PRODUCTION OF DOCUMENTS AND VIDEOTAPING

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs Commonwealth of Pennsylvania, et al., will take the oral deposition of Defendant Lukoil Americas Corporation ("Defendant"), with respect to the matters set forth in the notice under "Designated Issues", on **April 7, 2015**, beginning at 10:00 a.m. at the offices of Akin Gump Strauss Haver & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036. The deposition will continue from day to day, weekends and holidays excepted, until completed.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to the Designated Issues to the extent of any information known or reasonably available to the deponent. Plaintiffs request that, not later than 10 days prior to the deposition, Defendant provide (1) the names and titles of the person(s)

1

10.     The DOCUMENT or statement identifying the source, including which Lukoil entity, that paid, guaranteed and/or wired funds for:

     a.     The $93,000,000 to the account as designated by the Trustee for Getty Petroleum Marketing Inc. Trust as stated in the "Settlement Agreement" (at 3 ¶2) in *In re G.P.M.I. and Liquidating Trustee* ("GPMI v. LAC Adversary Proceeding"), No. 11-15606 (S.D.N.Y.Bk.) (See Ex. A attached to Liquidating Trustee's Motion for Approval of Settlement of Claims Against Lukoil Americas Corp., et.al., filed July 17, 2013.

     b.     The "pay-off" amounts discussed in the Restructuring Plan and in LAC001676.

     c.     The cash payments made to Cambridge Securities discussed in LAC001976-1979.

11.     The contract and/or agreement with Houlihan Lokey regarding the valuation of GPMI assets, including assets located in Pennsylvania.

12.     A true and correct copy of the following depositions and all exhibits thereto:

     a.     Deposition of Vadim Gluzman taken in the GPMI v. LAC Adversary Proceeding.

     b.     Deposition of Vincent De Laurentis taken in the GPMI v. LAC Adversary Proceeding.

     c.     Depositions of each person who held a position, during the relevant time period, as an officer and/or director of LAC taken in the GPMI v. LAC Adversary Proceeding.

8

d.  Depositions of each person who held a position, during the relevant time period, as an officer and/or director of LAC taken in *Getty Petroleum Inc. and Bionol Clearfield LLC*, A.A.A. Case No. 50 198 T 00398 10.

e.  In all cases in which LAC and/or GPMI was a party, all depositions of Andrew Paymer, Paul Stendardi and any other person that discussed: (1) LAC and/or GPMI's supply of GASOLINE during the relevant time period; and/or (2) the marketing of GASOLINE by LAC and/or GPMI.

13.  DOCUMENTS reflecting the ownership of Lukoil Americas Corporation for the relevant time period.

14.  DOCUMENTS reflecting every subsidiary owned, in whole or in part, by YOU, and the dates and percentages of ownership.

15.  A DOCUMENT identifying YOUR past and/or present officers, managers directors and employees (temporary, permanent or contract).

16.  All DOCUMENTS reflecting communications and memorialization of communications, between any of YOUR past and/or present officers, managers, directors and employees with any agency, employee or representative of the Commonwealth of Pennsylvania, including but not limited to the Governor of Pennsylvania, any staff member of the Governor of Pennsylvania, and/or the Pennsylvania Department of Community and Economic Development.

17.  All DOCUMENTS identifying the date, amount, and/or originating entity of all equity infusions, distributions, loans, guarantees and/or transfers that involved YOU and GPMI.

18.  A DOCUMENT reflecting YOUR past and/or present checking accounts and the signatories on each account which received any funds, wire transfers and/or deposits from GPMI.

9

the "significant advertising and marketing campaign" to brand or re-brand Getty and Mobil service stations to Lukoil stations (LAC02456 (JX713)).

29.     All transcripts of the depositions taken, including deposition exhibits, and all trial exhibits,  in the adversary proceeding in the bankruptcy court for *In re G.P.M.I. and Liquidating Trustee*, (GPMI v. LAC Adversary Proceeding), No. 11-15606 (S.D.N.Y.Bk.).

30.     All DOCUMENTS relating to the 2009 restructuring of LAC, including but not limited to, the consideration, recommendation and decision to transfer assets located in Pennsylvania that were owned by GPMI.

31.     The original complaint and answer and every amendment to the complaint and answer filed in *Getty Petroleum Inc. and Bionol Clearfield LLC.*, A.A.A. Case No. 50 198 T 00398 10.

32.     A DOCUMENT identifying YOUR past and/or present addresses, telephone numbers, facsimile numbers, letterhead, and electronic mail addresses, including electronic mail addresses of all of YOUR officers, managers, and directors.

33.     A DOCUMENT reflecting YOUR role in branding and/or rebranding every service station located in Pennsylvania as a Lukoil station at any time between 2000 and the present.

34.     All annual and  semi-annual, financial statements, reports and budgets of Lukoil Americas Corporation and GPMI for the entire time YOU owned GPMI.

35.     All Documents concerning expenses incurred by Vadim Gluzman while acting on behalf of GPMI.  (A summary from GPMI accounting records is sufficient for this purpose.)

36.     All Documents concerning expenses incurred by Vadim Gluzman while acting on behalf of LAC.  (A summary from LAC accounting records is sufficient for this purpose.)

11

# EXHIBIT 6

Law Offices of

# MILLER & AXLINE

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE

TRACEY L. O'REILLY
DANIEL BOONE
JUSTIN MASSEY
BRYAN BARNHART
DAVE E. BLUM
MOLLY MCGINLEY HAN

April 7, 2016

**VIA EMAIL & U.S. MAIL**

James P. Tuite, Esq.
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036-1564

      Re:   *Commonwealth of Pennsylvania v. Exxon Mobil Corp., et al.*
           No. 1:14-cv-06228-SAS

Dear Jim:

      In light of the court's opinion of April 4, 2016, I request that you provide us the complete set of unredacted transcripts from *In re GPMI's* adversary proceeding against LAC and OAO Lukoil held in the United States Bankruptcy Court for Southern District of New York (Case No. 11-02941-SCC).

      Although Judge Scheindlin found on May 26, 2015, that the transcripts you submitted for *in camera* review last year were properly redacted for attorney-client privilege, on April 4, 2016, Judge Scheindlin found that the crime-fraud exception applies to documents concerning the GPMI restructuring, which is the topic addressed in the redacted testimony.

      In addition, we request that you provide us with all exhibits listed on the Joint Trial Exhibit List (LAC 3168-3210) from the adversary proceeding, including, but not limited to, the memos prepared by Akin Gump regarding GPMI's restructuring.

      Finally, you stated in your letter of January 5, 2016, that your client was withholding documents based on privilege. In light of the court's recent decision, we ask that your client reconsider. In addition, we ask that you provide a privilege log for all documents currently being withheld. If you would like to discuss this further, please contact me or Duane.

1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225;  Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288;  Email: toxictorts@toxictorts.org

James P. Tuite
April 7, 2016
Page 2

      If you do not agree to provide the unredacted transcripts, and all exhibits identified on the exhibit list (whether admitted at trial or not), we intend to ask the Court to order LAC to provide both based on the crime-fraud exception.

Sincerely,

Michael Axline
Counsel for the Commonwealth of Pennsylvania

cc via email: Matthew Parisi

1

## PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE

2

*Commonwealth of Pennsylvania v. Exxon Mobil Corporation, et al.*,
United States District Court, Southern District of New York Case No. 14-cv-06228 (SAS)

3

4

     I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

5

6

     On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

7

8

9

## PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S OPPOSITION TO DEFENDANT LUKOIL AMERICAS CORPORATION'S MOTION FOR RECONSIDERATION

10

11

     I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

12

13

     Executed on April 26, 2016, at Sacramento, California.

14

15

KATHY HERRON

16

17

18

19

20

21

22

23

24

25

26

27

28