UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                              :
IN RE METHYL TERTIARY BUTYL       :
ETHER ("MTBE") PRODUCTS          :
LIABILITY LITIGATION                    :
-------------------------------------------------------  :
                                              :
This document relates to:                :
                                              :
*Commonwealth of Pennsylvania, et al. v.* :
*Exxon Mobil Corporation, et al.*, 14 Civ. :
6228                                         :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/29/16

**OPINION AND ORDER**

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

This is a consolidated multi-district litigation ("MDL") relating to contamination — actual or threatened — of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water. In this case, the Commonwealth of Pennsylvania ("the Commonwealth") alleges that defendants' use and handling of MTBE has contaminated, or threatens to contaminate groundwater within its jurisdiction.

Currently before the Court is LUKOIL Americas Corporation's ("LAC's") motion for reconsideration of this Court's April 4, 2016 Opinion (the

1

"Challenged Opinion") requiring LAC to produce two attorney-client privileged emails (the "emails") on the ground that the crime-fraud exception applied.[1] Familiarity with the Challenged Opinion is presumed for purposes of this Order. LAC argues that it was manifestly unjust for this Court to conclude that there was probable cause to support allegations that LAC caused its wholly owned subsidiary Getty Petroleum Marking Inc. ("GPMI") to take actions defrauding GPMI's creditors — allegations that were previously brought by GPMI trustees in bankruptcy proceedings, survived a motion to dismiss, proceeded to a seventeen-day trial, and eventually settled.[2] For the following reasons, LAC's Motion for Reconsideration is DENIED.

## II.   BACKGROUND

### A.   Factual History

The history of GPMI's bankruptcy was covered in depth in the Challenged Opinion. In short, starting in 2005 — five years after LAC acquired GPMI — several factors, including an unfavorable Master Lease and supply contract as well as fallout from Hurricane Katrina, combined to make GPMI

---

[1]   The Challenged Opinion is *In re MTBE Prods. Liab. Litig.*, No. 14 Civ. 6228, 2016 WL 1367226 (S.D.N.Y. Apr. 4, 2016) [hereinafter *Challenged Opinion*].

[2]   *See generally In re GPMI Adversary Proceeding*, No. 11-2941 (Bankr. S.D.N.Y.).

unprofitable.[3] GPMI subsequently sold many of its profitable assets to another LUKOIL entity, and LAC then sold GPMI to a third party for one dollar.[4]

The Commonwealth alleges that the GPMI restructuring was a plan hatched by LAC to "fraudulently strip GPMI of its valuable assets and steer it into bankruptcy in order to escape liabilities, including environmental damage at MTBE contaminated stations."[5] Indeed, the allegations made by the Commonwealth are precisely the allegations made by GPMI's bankruptcy trustees against LAC in an action to claw back GPMI's transferred assets.[6] Although the claims proceeded to a seventeen-day trial, the parties settled the claims before a verdict was reached.[7]

The emails, sent at a time when GPMI was experiencing financial difficulties in December, 2008, are between LAC employees, GPMI employees, and Michael Lewis, who served as the general counsel for both organizations. The

---

[3] *See Challenged Opinion*, 2016 WL 1367226, at *2-4.

[4] *See id.*

[5] The Commonwealth of Pennsylvania's Letter Opposing Assertion of Attorney-Client Privilege at 5.

[6] *See Challenged Opinion*, 2016 WL 1367226, at *3.

[7] *See* Memorandum in Support of Defendant LUKOIL Americas Corporation's Motion for Reconsideration of this Court's Order Requiring the Production of Privileged Communications ("Def. Mem.") at 1 n.1.

3

discussions contemplate the sale of GPMI's assets as well as the possibility that GPMI would enter bankruptcy.[8] Importantly, the emails concern who will pay outside counsel for work done on GPMI's restructuring. Despite being General Counsel for GPMI and sending the emails from his "getty.com" email account, Lewis explains that LAC, not GPMI, must pay the bills so that "we" — referring to LAC — "maintain control" of the attorney-client privilege for "confidential communications" concerning GPMI's own restructuring.[9] This complex payment "juggling" was necessary because of anticipated "future discovery."[10]

### B. Procedural History

On January 8, 2016, LAC moved to dismiss the Second Amended Complaint for failure to state a claim and for lack of personal jurisdiction. A seventeen-page declaration from Vincent De Laurentis, former President and Chief Operating Officer of GPMI, submitted in support of the motion, explains at length his account of GPMI's bankruptcy, including discussion of the restructuring efforts. In an opposition brief filed February 5, 2016, the Commonwealth argued, inter alia, that LAC's actions amounted to a fraudulent transfer of funds that led to

---

[8] *See id.* at 1.

[9] Documents At-Issue ("emails") at LUK0064374.

[10] *Id.*

4

GPMI's bankruptcy and that these transfers demonstrate that "LAC dominated and controlled GPMI, and used GPMI as an agent for or division of LAC" which would justify the exercise of personal jurisdiction over LAC.[11] In reply, LAC addressed these allegations with numerous citations to the De Laurentis Declaration.[12]

In a letter submitted in preparation for the February 16, 2016 MDL-wide status conference, the Commonwealth notified the Court of the emails which were inadvertently disclosed by LAC. In that letter the Commonwealth argued that (1) the emails are not privileged and (2) privilege was waived. The Commonwealth also asserted that the emails were subject to the crime-fraud exception because "LAC purposefully stripped GPMI of its most valuable assets in anticipation that GPMI would declare bankruptcy," and reiterated the assertion from its opposition brief that "the actions taken by LAC were intended to defraud creditors" of GPMI.[13] In a reply letter LAC stated that it would "not object[] to [*in*

---

[11] Plaintiff Commonwealth of Pennsylvania's Opposition to Defendant LUKOIL Americas Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim at 21.

[12] *See* Reply Memorandum in Support of Defendant LUKOIL Americas Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim at 7 n.6.

[13] Plaintiffs' Letter in Advance of the February 16, 2016 MTBE Status Conference at 3-4.

*camera*] review."[14]

At the February 16, 2016 conference, I sought the parties' input on the proper procedure for *in camera* review. I suggested that the parties address the issues in "a five-page, double-spaced submission," and inquired "Does that sound reasonable?"[15] At that time, LAC's counsel agreed to the procedure except to note that "[m]y only hesitation, your Honor, is our reply brief [for the motion to dismiss] is due this Friday. If we could have one or two more days, that would be fine."[16] I granted this request. Following *in camera* review, I issued the Challenged Opinion.

### III. APPLICABLE LAW

The standard for granting a motion for reconsideration is strict. "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'"[17] "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the

---

[14] Defendants' Reply Letter in Advance of the February 16, 2016 MTBE Status Conference at 3.

[15] Transcript of February 29, 2016 Conference ("2/29/16 Tr.") at 6:12-15.

[16] *Id.* at 7:17-19.

[17] *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

6

interests of finality and conservation of scarce judicial resources.'"[18] Typical grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[19]

## IV. DISCUSSION

### A. The Court Gave LAC Ample Opportunity to Be Heard

LAC's primary contention in requesting reconsideration is that it was manifestly unjust as well as clear error for this Court not to call for additional briefing once it determined that the crime-fraud exception applies. LAC now argues that although it made no request, it should have been granted an additional chance to defend its position. The Court's failure to request additional briefing, LAC contends, resulted in "[m]aterial [m]isunderstandings of [f]acts."[20] LAC both misstates the record and fails to demonstrate how the Challenged Opinion was clearly erroneous or manifestly unjust.

---

[18] *Oji v. Yonkers Police Dep't*, No. 12 Civ. 8125, 2013 WL 4935588, at *1 (S.D.N.Y. Sept. 11, 2013) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

[19] *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted). *Accord Shrader*, 70 F.3d at 257 (describing grounds for reconsideration as "matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

[20] Def. Mem. at 5.

LAC begins by noting that the Court forced LAC to condense a seventeen-day trial into five pages. This is incorrect. The seventeen-page De Laurentis Declaration was in the record, directly addressed GPMI's restructuring, and was cited more than twenty times in the Challenged Opinion. The Court extensively discussed and considered this evidence despite the fact that the declaration is nearly twice as long as permitted by my individual rules. In short, LAC had ample opportunity to be heard.[21] I also considered LAC's reply brief in support of its motion to dismiss which discusses the fraud allegations, as well as LAC's reply letter in preparation for the February 29, 2016 conference. Notably, LAC is not arguing that the Court overlooked any facts already in the record.

In addition, LAC was given an opportunity to object to the specific procedures for *in camera* review and declined to do so. The only accommodation it requested — an extension of time — was granted. LAC was fully aware of the arguments that would be made by the Commonwealth because the Commonwealth had twice made these arguments in its pre-conference letter and in its opposition to LAC's motion to dismiss, and LAC had twice responded in its replies. It had also defended against these allegations at a seventeen-day trial. LAC's argument that its due process rights were violated because it never saw the Commonwealth's *in*

---

[21] *See* Individual Rules and Procedures IV.H ("Affidavits/declarations may not exceed ten (10) double-spaced pages.").

8

*camera* submission is disingenuous at best.

Finally, I know of no decision in which a court found that a party's due process rights were violated after that party agreed to the procedures for an *in camera* review. Indeed, many decisions have found that the failure to object to *in camera* review itself constitutes a waiver of due process rights.[22] LAC cites to cases that are either not controlling or do not address the present facts.[23] These

---

[22] *See, e.g., United States v. Gallego*, 191 F.3d 156, 171 (2d Cir. 1999) abrogated on other grounds by *Crawford v. Washington*, 541 U.S. 36 (2004) (failure to object waived any right defendant had to participate in examination of potential jurors conducted *in camera*); *Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir. 1998) (same).

[23] *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 97 (3d Cir. 1992), as amended (Sept. 17, 1992), stands for the proposition that "the party invoking the privilege has the absolute right to be heard by testimony and argument." LAC was affirmatively heard not only on the allegations but on the procedure that the Court would follow in addressing those allegations. LAC's citation to *In re Omnicom Group, Inc. Secs. Litig.*, 233 F.R.D. 400 (S.D.N.Y. 2006), a decision emphasizing the importance of developing a full record before finding the crime-fraud exception applicable, is similarly unavailing because LAC consented to the *in camera* procedures.
In addition, *In re Taylor*, 567 F.2d 1183 (2d Cir. 1977), only emphasizes that in general *in camera* review is disfavored. It does not outline specific procedures necessary to satisfy due process. *United States v. Zolin*, 491 U.S. 554, 572 (1989), decided after *Taylor*, establishes that the once an initial showing has been made that the crime-fraud exception applies "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." Here, such an initial showing was unnecessary because LAC consented to *in camera* review.

9

cases fall well short of "'controlling decisions'" overlooked by this Court.[24]

### B. LAC's Factual Arguments Fail to State a Ground for Reconsideration

LAC submits additional evidence in an attempt to establish that GPMI did indeed receive fair consideration, arguing that "the Court pointed to *no evidence* indicating a gap between the value of the assets that GPMI sold and the value of the consideration that GPMI received."[25] But LAC misapprehends the probable cause standard. The Court is not required to conclude that GPMI received insufficient consideration. The record contained ample evidence indicating that profitable assets were stripped in an attempt to prevent creditors from reaching those assets.[26] If fair consideration had been paid, those transactions would not have deprived GPMI's creditors of assets. The evidence establishing intent to deprive creditors of GPMI's assets provides support for the conclusion that there is probable cause to believe that fair consideration was not received.

Regardless, the additional evidence submitted by LAC cannot support reconsideration. The submission of this evidence amounts to nothing more than an

---

[24] *Analytical Surveys*, 684 F.3d at 52 (quoting *Shrader*, 70 F.3d at 257).

[25] Def. Mem. at 5.

[26] *See* Challenged Opinion, 2016 WL 1367226, at *6-7.

attempt to impermissibly "'relitigate an issue already decided.'"[27] The evidence now presented by LAC is not properly considered on a motion for reconsideration because it is not "new evidence" that was previously unavailable.[28] The fact that LAC could have submitted additional favorable evidence from a seventeen-day trial is obvious — but my role was not to retry or decide that case. The crime-fraud exception is governed by a probable cause standard for this very reason. Conducting a full trial on a collateral issue, particularly one of this magnitude, would be an impossible burden.

Finally, LAC argues that the emails could not have been in furtherance of wrongdoing. This is so, LAC reasons, because LAC and GPMI made no attempt to hide their restructuring efforts. Once more, this is merely an attempt to relitigate the issue. I found that the efforts of GPMI's General Counsel to transfer the attorney-client privilege from GPMI to LAC were a clear attempt to conceal the allegedly fraudulent scheme. Lewis knew GPMI would likely enter bankruptcy and knew that the transactions, facilitated by outside counsel, to

---

[27] *Kalican v. Dzurenda*, 583 Fed. App'x 21, 23 (2d Cir. 2014) (quoting *Shrader*, 70 F.3d at 257).

[28] *Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, No. 15 Misc. 359, 2015 WL 9450645, at *3 (S.D.N.Y. Dec. 18, 2015) ("For evidence to be considered 'newly available,' it must be 'evidence that was truly newly discovered or could not have been found by due diligence.'" (quoting *Space Hunters, Inc. v. United States*, 500 Fed. App'x 76, 81 (2d Cir. 2012))).

remove assets from GPMI would likely be challenged as a fraudulent transfer. In order to protect the transferred assets, he advised LAC on a strategy to prevent GPMI's bankruptcy trustees from obtaining proof of any fraudulent scheme. The plan to give LAC control of the attorney-client privilege is *in furtherance* of fraud because if GPMI trustees had access to all communications with outside counsel, the alleged fraud may have been easily undone in the bankruptcy court.

### C. Disputed Points of Law Are Not Grounds for Reconsideration

As a final attempt at reconsideration, LAC argues that this court overlooked "[d]isputed [p]oints of [l]aw."[29] The argument is self-defeating. Reconsideration may only be granted where the Court overlooked "'controlling decisions.'"[30] LAC cites to no controlling authority for any of its three arguments.

*First*, citing to a case from the Northern District of California, LAC reiterates its argument that the Court should have postponed a decision on the crime-fraud exception until the record was better developed.[31] This argument, already addressed, does not even reference a specific ground for reconsideration. *Second*, LAC argues that the Court should apply a more stringent "in furtherance"

---

[29] Def. Mem. at 9.

[30] *Analytical Surveys*, 684 F.3d at 52 (quoting *Shrader*, 70 F.3d at 257).

[31] *See* Def. Mem. at 9 (citing *Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 436 (N.D. Cal. 1996)).

12

standard when the conduct at issue deals with the assertion of a legal right.[32] Yet the Challenged Opinion explicitly held that "Lewis' advice encourages, enables, and is in furtherance of the alleged wrongdoing."[33] *Third*, LAC recognizes that the Court found the emails relevant to the veil-piercing inquiry, but argues the Court did not explain how evidence that LAC dominated GPMI in 2009 could be probative of the fact that LAC dominated GPMI in earlier years. Once again LAC misconstrues the Court's holding. Later domination does not necessarily mean there was earlier domination but it does provide circumstantial evidence of an earlier course of conduct. Regardless, under Rule 26(b)(1) "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."[34]

## V.  CONCLUSION

---

[32]  *Id.* at 10.

[33]  *Challenged Opinion*, 2016 WL 1367226, at *7.

[34]  *Accord Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1368 (2d Cir. 1991) (holding that "information concerning financial transactions and movements of corporate assets subsequent to the transaction giving rise to this litigation was 'reasonably calculated to lead to the discovery' of evidence admissible on the issue of alter ego liability within the meaning of Rule 26(b)(1)"); *Wells Fargo Bank, N.A. v. Konover*, No. 05 Civ. 1924, 2009 WL 585430, at *12 (D. Conn. Mar. 4, 2009) (holding "evidence of control subsequent to the transaction giving rise to the litigation may be relevant to show control over the alleged alter ego"); *cf. EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014) ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process.").

13

For the foregoing reasons, LAC's Motion for Reconsideration is DENIED. The Clerk of the Court is directed to close this motion (Dkt. No. 285).[35]

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:	New York, New York
	April 29, 2016

---

[35]	LAC's request that the Court seal the relevant opinions and related briefing is also denied.

- Appearances -

**Liaison Counsel for Plaintiffs:**

Robert J. Gordon, Esq.
Robin L. Greenwald, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for the Commonwealth:**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
(916) 488-6688

**Liaison Counsel for Defendants:**

James A. Pardo, Esq.
Lisa A. Gerson, Esq.
McDermott, Will & Emery, LLP
340 Madison Avenue
New York, NY 10017
(212) 547-5400

**Counsel for LUKOIL Americas Corporation:**

James P. Tuite, Esq.
Katherine M. Katchen, Esq.
Matthew A. Scarola, Esq.
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000