Case 1:00-cv-01898-VSB-VF Document 4458-17 Filed 07/19/17 Page 1 of 16
Case 15-3934, Document 172-2, 07/19/2017, 2031716, Page1 of 16

15-3934-cv
*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*

# In the
# United States Court of Appeals
# For the Second Circuit

_____

August Term, 2016

No. 15-3934-cv

_____

IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

_____

ORANGE COUNTY WATER DISTRICT,
*Plaintiff-Appellant*,

*v.*

TEXACO REFINING AND MARKETING, INC., EQUILON ENTERPRISES LLC, SHELL OIL COMPANY, d/b/a SHELL OIL PRODUCTS US, ATLANTIC RICHFIELD COMPANY, f/k/a ARCO PETROLEUM COMPANY, d/b/a ARCO PRODUCTS COMPANY, a/k/a ARCO, BP PRODUCTS NORTH AMERICA, INC., BP WEST COAST LLC, (DOE 3),
*Defendants-Appellees;*

UNOCAL CORPORATION, CONOCOPHILLIPS COMPANY, CHEVRON U.S.A., INC., d/b/a CHEVRON PRODUCTS COMPANY, d/b/a CHEVRON CHEMICAL COMPANY, UNION OIL COMPANY OF CALIFORNIA, INC., TOSCO CORPORATION, EXXON MOBIL CORPORATION, f/k/a EXXON CORPORATION, d/b/a EXXONMOBIL REFINING AND SUPPLY COMPANY, EXXONMOBIL CHEMICAL, CORPORATION, EXXON, CHEMICAL U.S.A., MOBILE CORPORATION, ULTRAMAR, INC., VALERO REFINING AND MARKETING COMPANY, VALERO REFINING COMPANY-CALIFORNIA, VALERO REFINING, TESORO PETROLEUM CORPORATION, (DOE 4),

TESORO REFINING AND MARKETING COMPANY, INC., PETRO-DIAMOND, INC., (DOE 6), SOUTHERN COUNTIES OIL CO., (DOE 7), ARCO CHEMICAL COMPANY, (DOE 201), LYONDELL CHEMICAL COMPANY, F/K/A ARCO CHEMICAL COMPANY G&M OIL COMPANY, INC., 7-ELEVEN, INC., USA GASOLINE CORPORATION, DOES, 9-200, AND DOES 202-1000, INCLUSIVE, CHEVRON CORPORATION, EXXON MOBILE OIL CORPORATION, TMR COMPANY, CHEVRONTEXACO CORPORATION,
*Defendants.*

———

Appeal from the United States District Court
for the Southern District of New York.
No. 04-cv-4968 — Shira A. Scheindlin, *Judge*.

———

Argued: December 5, 2016
Decided: June 12, 2017

———

Before: PARKER, RAGGI AND HALL, *Circuit Judges*.

———

Plaintiff-Appellant Orange County Water District appeals from a judgment in consolidated multi-district litigation in the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*).[1] The district court granted summary judgment to Defendants-Appellees BP and Shell on the ground that the Orange County Water District's suit was barred by res judicata as a consequence of earlier consent judgments entered in California state court resolving similar suits against BP and Shell brought by the Orange County District Attorney.

---

[1] This case has since been reassigned to Judge Vernon S. Broderick.

Because we conclude that the record does not sufficiently establish that the Orange County District Attorney and the Orange County Water District were in privity, we vacate the district court's res judicata determination and remand the claims against BP and Shell to the Southern District of New York for further proceedings consistent with this opinion.

_____

MICHAEL D. AXLINE, Miller & Axline, A Professional Corporation, Sacramento, CA, *for Plaintiff-Appellant*.

MATTHEW T. HEARTNEY, Arnold & Porter LLP, Los Angeles, CA, STEPHANIE B. WEIRICK, Arnold & Porter LLP, Washington, D.C., PETER C. CONDRON, Sedgwick LLP, Washington, D.C., *for Defendants-Appellees*.

_____

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal arises from contamination of groundwater in Orange County, California, from various oil companies' use of the gasoline additive methyl tertiary butyl ether ("MTBE"). This case, initially brought in 2003 in California state court, was removed to the Central District of California and transferred in 2004 to the Southern District of New York by the Judicial Panel on Multidistrict Litigation. *See* 28 U.S.C. § 1407. The district court transferred to the Central District of California all claims except those against BP and Shell.[2] The district court granted the defendants summary judgment on those claims. Those claims are the subject of this appeal.

---

[2] Defendants Atlantic Richfield Company, BP West Coast Products LLC, and BP Products North America, Inc. are collectively referred to as "BP." Defendants Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining and Marketing Inc. are collectively referred to as "Shell."

Case 1:00-cv-01898-VSB-VF Document 4458-1 Filed 07/19/17 Page 4 of 16
Case 15-3934, Document 172-2, 07/19/2017, 2081716, Page4 of 16

No. 15-3934-cv

Plaintiff-Appellant Orange County Water District (the "District"), which is responsible for groundwater quality in the Orange County basin, alleged that the addition of MTBE to gasoline sold by BP and Shell and other defendants that leached from underground storage tanks contaminated, or threatens to contaminate, groundwater at more than four hundred sites within the District's jurisdiction. The District sued in 2003. Claims against BP and Shell for MTBE contamination had been brought by the Orange County District Attorney ("OCDA") in 1999 and were settled in 2002 and 2005 respectively.

In 2015, BP and Shell moved for summary judgment on the ground that res judicata arising from the 2002 and 2005 settlements barred the District's 2003 lawsuit. The district court granted the motion, dismissed the District's claims against BP and Shell, and remanded the claims against the remaining defendants to the Central District of California for trial. *See* 28 U.S.C. § 1407(a).

On appeal, the District challenges the lower court's application of res judicata on the ground that it was not in privity with the OCDA. Because, based on the record before us, we cannot conclude that the District and OCDA are in privity, we vacate the judgment and remand the district's claims against BP and Shell to the Southern District of New York for further proceedings.

## I. BACKGROUND[3]

### A. The Orange County Water District

The District is a public corporation created by the California state legislature under the Orange County Water District Act ("the District Act") to manage, regulate, replenish, and protect the groundwater basin generally covering the northern half of Orange County. *See* District Act §§ 1(a); 2(6). The District provides water to more than two million users, but it is not a water retailer and does

---

[3] Unless otherwise noted, the facts recited below are undisputed and derive from the parties' submissions on summary judgment.

4

1  not provide water directly to the public. *See* Orange County Water
2  District, What We Do, http://www.ocwd.com/what-we-do/ (last
3  visited May 26, 2017). Nineteen water producers, including cities,
4  other water districts, and private water companies, obtain water
5  from the District's groundwater basin and sell it to the public. *See*
6  Orange County Water District, Member Agencies,
7  http://www.ocwd.com/working-with-us/member-agencies/ (last
8  visited May 26, 2017).

9  The District also protects various rights to water from the
10 Santa Ana River, which is the primary source of water in the basin.
11 *See* Orange County Water District, About,
12 http://www.ocwd.com/about/ (last visited May 26, 2017). Pursuant
13 to that obligation, the District may bring claims on behalf of the
14 public, that is, the water users in its service areas. *Orange County*
15 *Water Dist. v. City of Riverside*, 173 Cal. App. 2d 137, 167 (1959); *see*
16 *also* District Act § 2(9).[4] The District also may bring claims on its own
17 behalf under the District Act to recover costs it paid, or will pay, to
18 remediate groundwater contamination. *See* District Act § 8. Finally,
19 the District is authorized to "act jointly with or cooperate with the
20 United States or any agency thereof, the State of California or any

---

[4] Section 2(9) of the District Act provides:
> To carry out the purposes of this act, to commence, maintain, intervene in, defend, and compromise, in the name of the district, or otherwise, and to assume the costs and expenses of any and all actions and proceedings now or hereafter begun to prevent interference with water or water rights used or useful to lands within the district, or diminution of the quantity or pollution or contamination of the water supply of the district, or to prevent unlawful exportation of water from the district, or to prevent any interference with the water or water rights used or useful in the district which may endanger or damage the inhabitants, lands, or use of water in the district; provided, however, that the district shall not have power to intervene or take part in, or to pay costs or expenses of, actions or controversies between the owners of lands or water rights all of which are entirely within the boundaries of the district and which do not involve pollution or contamination of water within the district or exporting water outside of the district's boundaries or any threat thereof.

Cal. Water Code App § 40-(2)9.

5

agency thereof, [and] any county of the State of California . . . to carry out the provisions and purposes of [the District Act]." *Id.* at § 2(11).

### B. The Orange County District Attorney

The OCDA represents the people of California. Its mission is to "enhance public safety and welfare and create a sense of security in the community through the vigorous enforcement of criminal and civil laws in a just, honest, efficient and ethical manner." *See* Mission Statement, http://orangecountyda.org/office/mission.asp (last visited May 26, 2017). With respect to water, the OCDA is charged with protecting the people's "primary interest in the conservation, control, and utilization of the water resources of the state." Joint Appendix on Appeal ("App.") 4246 (quoting Cal. Water Code § 13000). Pursuant to this charge, the OCDA is authorized to sue on behalf of the public "to protect the public from health and safety hazards" and "prevent destruction of Orange County's groundwater resources and otherwise protect the environment." App. 4240. However, the OCDA may not prosecute a cause of action on behalf of a different public agency, such as the District. *See People v. Superior Court*, 224 Cal. App. 4th 33, 41–44 (Cal. Ct. App. 2014).

### C. Prior MTBE Litigation

In 1999, the OCDA sued BP and Shell in Orange County Superior Court. Both suits asserted claims based on releases of MTBE from underground storage tanks at BP and Shell gas stations resulting in the contamination of adjacent soil and groundwater. Both suits alleged that the MTBE releases constituted continuing and permanent nuisances. *See* Cal. Civ. Code §§ 3479 and 3480. The OCDA sought damages and injunctive relief requiring the investigation, abatement and cleanup of contaminated areas as well as steps to control the potential migration of MTBE plumes. The OCDA's complaints specifically alleged that it was not representing any water district. *See* App. 4241, 4339.

6

Though not a party to the OCDA's lawsuits, the District knew about them. On July 14, 2000, the District's general manager wrote to the Orange County Director of Environmental Health regarding the suits, stating:

> The Orange County Water District has appreciated the opportunity to provide technical assistance to your department and to the Orange County District Attorney to help in the enforcement of cleanup of MTBE and other petroleum contaminants from leaking gasoline storage tanks in Orange County.

App. 4306.

In 2002, the OCDA and BP agreed to settle. Accordingly, the Orange County Superior Court entered a consent judgment settling all of the OCDA's claims against BP. The settlement constituted "a release from any known or unknown past or present claims, violations, or causes of action that were or could have been asserted in the First Amended Complaint" with regard to MTBE contamination. App. 4220. Pursuant to the terms of the settlement, BP agreed to reimburse OCDA's investigation costs and to fund and implement a "plume delineation" program to combat MTBE migration. BP also became subject to injunctive relief prohibiting it from adding MTBE to gasoline produced in California. Subsequently, in 2003, the District sued several oil companies, including BP and Shell, for MTBE contamination.

In January 2005, Shell also agreed to settle with the OCDA and a hearing was scheduled to consider the settlement. The District appeared and opposed the settlement on the ground that its 2003 suit against Shell was pending. The District also requested the opportunity to formally move to intervene. Shell opposed intervention on the ground that the motion was untimely. The OCDA also opposed intervention, contending that:

> The Water District's claims are common-law based; they are damage based; they are independent of our claims; and we have always taken the position, and the Court has read in the document we have taken the position, that there's nothing we're doing in this settlement that has anything to do with precluding the Water District from pursuing their case in Federal Court.

App. 4420. The court denied the District's motion to intervene and entered a consent judgment settling all claims against Shell. The relief provided in the consent judgment with Shell was similar to that provided in the consent judgment with BP, including compensation to the OCDA for investigation costs, the funding of a plume delineation program, and other injunctive relief.

Although, as noted, the OCDA was compensated for its investigation costs and for the funding of a plume delineation program, neither settlement awarded the District reimbursement for its cleanup costs, or compensation for BP and Shell's contamination of the groundwater in the District, something the OCDA was not authorized to recover. In its suit, the District alleges that following the OCDA settlements, MTBE plumes have migrated from BP and Shell's stations toward the District's water production wells. *See* App. 4506.

### D. The District's Lawsuit against BP and Shell

In the 2003 suit that was filed in California state court against a number of oil companies, including BP and Shell, the District alleged that it suffered injury as a consequence of being required to expend funds "to investigate, clean up, abate, and/or remediate the MTBE . . . contamination caused by Defendants." App. 4365. The District asserted common law claims, primarily sounding in public nuisance, and a claim under the District Act "to recover compensatory and all other damages, including all necessary funds to investigate, monitor, prevent, abate, or contain any contamination

8

of, or pollution to, groundwaters within the District from MTBE." App. 4364. (In a subsequent filing, the District alleged that its remedial-action costs totaled over $3 million and estimated it would take "additional millions of dollars and decades before MTBE is cleaned up." App. 4108.) The District also sought injunctive relief "to protect the quality of the common water supplies of the District; to prevent pollution or contamination of that water supply; and to assure that the responsible parties—and not the District nor the public—bear the expense." App. 4364.

Defendants removed the case to federal court on grounds of diversity and the case was transferred to the Southern District of New York by the MDL Panel. After more than ten years of discovery and pre-trial proceedings, BP and Shell moved for summary judgment, contending that the District's claims were barred by the OCDA Consent Judgments under the doctrine of res judicata.

The district court agreed and granted the motion. Specifically, the court concluded that the Consent Judgments constituted final judgments on the merits; that the OCDA's prior lawsuits and the District's lawsuit contained identical causes of action; and "[b]ecause the District and the OCDA were both acting on behalf of the public to enforce the same primary right, the parties are in privity." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 46 F. Supp. 3d 440, 450 (S.D.N.Y. 2014), *judgment entered sub nom. In re Methyl Tertiary Butyl Ether ("Mtbe") Prod. Liab. Litigation*, No. 1358 (SAS), 2015 WL 7758530 (S.D.N.Y. Dec. 1, 2015). What makes this case a close one is that both the OCDA and the District have broad mandates under California law to protect the Orange County water supply.

With no claims remaining against BP and Shell, the district court remanded the District's suit to the Central District of California excluding BP and Shell as defendants. Before the remand order went into effect, the District moved to include BP and Shell as defendants in the order, contending that the district court's res judicata

ruling did not bar the District's continuing nuisance claims. The district court denied that motion, holding that the language of the Consent Judgments indicated an intention on behalf of the parties to resolve all such claims. The district court then entered a final judgment pursuant to Federal Rule of Civil Procedure 54(b) dismissing the District's suit against BP and Shell.

The District appeals the res judicata ruling and three prior orders of the district court against all defendants, including BP and Shell. Those orders granted summary judgment on the District's trespass claim; dismissed some of the District's common-law claims as time-barred, and denied the District's partial summary judgment motion seeking to recover its investigation costs under the District Act. We disagree with the district court's conclusion that the District's suit against BP and Shell is barred by res judicata. Accordingly, we vacate the grant of summary judgment on res judicata grounds and remand to the Southern District of New York for further proceedings. Because, as discussed below, the district court's Rule 54(b) order did not adequately certify the prior three orders, we lack jurisdiction to review them. Those orders can also be addressed on remand, either in the Southern District of New York or after any return of this action to the Central District of California.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007).

### A. Res judicata

The central issue in this appeal is whether the Consent Judgments have res judicata effect. California law governs our res judicata analysis. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Res judicata "gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797

(2010) (citation and quotation marks omitted) (emphasis in original). The doctrine "rests upon the ground that the party to be affected, or some other with whom [it] is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of [its] opponent." *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 575 (Cal. Ct. App. 2010) (citation and quotation marks omitted).

In California, res judicata applies when three elements are satisfied: "1) the issues decided in the prior adjudication are identical with those presented in the later action; 2) there was a final judgment on the merits in the prior action; and 3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication." *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Assoc. ("COAST")*, 60 Cal. App. 4th 1053, 1065 (Cal. Ct. App. 1998) (citations omitted). We conclude that the third element is not met because the current record does not support a finding of privity between the OCDA and the District.

### B. Privity

Under California law, parties are in privity where "the nonparty has an identity of interest with, and adequate representation by, the party in the first action and the nonparty should reasonably expect to be bound by the prior adjudication." *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 764 (9th Cir. 2003) (quoting *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 902 (Cal. Ct. App. 1992)).

California law tracks the Supreme Court's federal common law definition of "adequacy" for purposes of the privity inquiry. *See Arias v. Superior Court*, 46 Cal. 4th 969, 989 (2009). Thus, "[a] party's representation of a nonparty is 'adequate' . . . only if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a

Case 1:00-cv-01898-VSB-VF Document 4458-17 Filed 07/19/17 Page 12 of 16
Case 15-3934, Document 172-2, 07/19/2017, 2081716, Page12 of 16

No. 15-3934-cv

representative capacity or the original court took care to protect the interests of the nonparty." *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) (citations omitted).

The district court found the OCDA and District to be in privity because they are "so identified in interest with [each other] that [they] represent[ ] the same legal right." *In re MTBE*, 46 F. Supp. 3d at 451-52 (quoting *Lerner v. Los Angeles City Bd. of Educ.*, 59 Cal.2d 382, 398 (1963)). The district court compared the OCDA and District's complaints and concluded that the District sought to enforce the same rights as the OCDA did in its prior suits, namely, to "prevent destruction of Orange County's groundwater resources and otherwise protect the environment." App. 4240.

The District argues that privity did not exist because its interests are distinct from the public's and that the OCDA was not an adequate representative of the District in the prior suits. BP and Shell, on the other hand, contend that the OCDA and the District are agents of the same government and therefore in privity. We agree with the District for the following reasons.

First, the record before us does not establish that the District and the OCDA are agents of the same government. Indeed, as acknowledged by the district court, this question is not determinative. The relevant question for privity analysis is whether "the interests of the District and the OCDA are aligned." *In re MTBE*, 46 F. Supp. 3d at 451. Here, it is clear that, on the one hand, the District and the OCDA have significant overlapping interests in protecting Orange County's groundwater resources and that the harm that the suits address and the relief sought are similar. On the other hand, it is clear that the District and the OCDA also have asserted interests in this case that diverge.

In *Orange County Water District v. Arnold Engineering Company*, 196 Cal. App. 4th 1110 (Cal. Ct. App. 2011), the only case that appears squarely to address the District's privity with the California

12

Case 1:00-cv-01898-VSB-VF Document 4458-17 Filed 07/19/17 Page 13 of 16
Case 15-3934, Document 172-2, 07/19/2017, 2081716, Page13 of 16

No. 15-3934-cv

public, the District sued various entities that owned, operated, or leased industrial facilities for contaminating groundwater within the District's jurisdiction. The defendants moved to disqualify the District's counsel on the ground that California law prohibited a public entity from paying a private attorney a contingency fee to prosecute a public nuisance abatement action. The trial court denied the motion, holding that the District was not pursuing the action on the public's behalf. Rather, the trial court found that the District brought the action on its own behalf to recover remediation costs and other damages it suffered distinct from any damages the public suffered. The California Court of Appeals affirmed the trial court, holding:

> Although the Water District represents the water users in its service area, and may bring litigation on their behalf, the Water District did not bring this action in a representative capacity or on its users' behalf. This action does not seek to enforce any rights the Water District's users may have in the groundwater or to recover any damages its users may have suffered from the contamination
>
> . . . .
>
> We conclude the trial court correctly determined the Water District's lawsuit is essentially an action seeking to recover the costs to investigate and remediate the contaminated groundwater, not a public nuisance abatement action prosecuted on the public's behalf.

*Id.* at 1125. While the issue of res judicata was not before the court, the holding lends significant support to the District's argument that it does have interests distinct from those of the public or those of the OCDA.

We next consider whether the District and the public's distinct interests are "aligned" for purposes of privity. First, there is no

13

Case 1:00-cv-01898-VSB-VF Document 4458-17 Filed 07/19/17 Page 14 of 16
Case 15-3934, Document 172-2, 07/19/2017, 2081716, Page14 of 16

No. 15-3934-cv

1   dispute that the OCDA is not empowered to bring lawsuits on the
2   District's behalf; or, conversely, that the District cannot do so on
3   behalf of the OCDA. Further, there is no indication from the record
4   that the OCDA shared in the District's distinct right to recover its
5   costs to investigate and remediate groundwater contamination, a
6   right the District Act confers exclusively on the District. *See* District
7   Act § 8; *People v. Superior Court*, 224 Cal. App. 4th at 41–44. Indeed,
8   the district court itself found it compelling that the parties were not
9   aligned given their assurances to that effect. *See In re MTBE*, 46 F.
10  Supp. 3d at 452. The OCDA explicitly represented in its complaints
11  against BP and Shell that it did "not represent[ ] any water district or
12  other municipality," App. 4241, 4339, and the Shell consent
13  judgment specifically states that it was "not intend[ed] . . . to legally
14  bar, estop, release, alter, or supersede any investigation, action,
15  order, request, demand or directive of . . . the Orange County Water
16  District," App. 4403–04. Finally, if this were not dispositive, the
17  OCDA then stated on the record at the motion to intervene hearing
18  that its claims were distinct from those of the District and that its
19  lawsuit did not have "anything to do" with the District's suit in
20  federal court. App. 4420. *See, e.g.*, *City of Martinez*, 353 F.3d at 764
21  (concluding, under California law, that City not aligned with
22  interests of state agency where City was "informed that the
23  settlement would not preclude it from later raising its civil claims").

24        Finally, we do not believe that the OCDA adequately
25  protected the District's interests. The OCDA successfully opposed
26  the District's attempt to intervene in the OCDA's suits. Neither
27  settlement reimbursed the District's clean up costs or afforded it
28  other compensation. The injunctive relief in the OCDA Consent
29  Judgments has expired and the District alleges that MTBE plumes
30  from BP and Shell stations continue to migrate toward the District's
31  water production wells. These are interests unique to the District
32  that were not adjudicated in the prior suits. Their existence means
33  that the District's interests are not sufficiently aligned with those of

the OCDA. And the record does not establish that in the prior suits the trial court took special care to protect the District's interests. Taken together, these factors do not permit a finding of privity. *See City of Martinez*, 353 F.3d at 764. ("As [the City's] interests were not adequately represented by the [state] and it was told not to participate, it would be patently unfair to bar the City's claims based on res judicata.").

### C. **Prior district court orders**

The District asks that we review the district court's prior orders dismissing some of its claims against all defendants. We lack jurisdiction to do so.

Rule 54(b) requires the court to "expressly determine" the claims to which it is directing a final judgment. Fed. R. Civ. P. 54(b). Here, the district court's Rule 54(b) certification was limited solely to the claims that survived against BP and Shell at the time of the res judicata decision. The surviving claims were so much of the District's claims as had not already been dismissed as to all defendants based upon a failure (a) to comply with the statute of limitations, (b) to state a claim in trespass or (c) to state a claim under the District Act. While the district court did not explicitly limit the arguments that the District might raise on appeal, it plainly did not certify for appeal claims, common to all defendants, that had previously been dismissed for independent reasons. Indeed, it stated that the Rule 54(b) certification was granted as to the claims against BP and Shell dismissed on grounds of res judicata, which it concluded were the only ones that were properly "the focus of [an] appeal" because they were "discrete and separable issues that are appropriated decided by the circuit on a 54(b) certification." *In re MTBE*, 1358 (SAS), 2015 WL 7758530, at *4 (S.D.N.Y. Dec. 1, 2015); *see generally Novick v. AXA Network LLC*, 642 F.3d 304, 311 (2d Cir. 2011) ("[A] district court generally shall not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated." (internal quotation marks omitted)). Because the previously dismissed claims

15

Case 1:00-cv-01898-VSB-VF Document 4458-17 Filed 07/19/17 Page 16 of 16
Case 15-3934, Document 172-2, 07/19/2017, 2081716, Page16 of 16

No. 15-3934-cv

were not mentioned, and thus not adequately certified by the district court's Rule 54(b) order, we may not review them here. *See id.* at 314 (explaining that Rule 54(b) certification that fails to "expressly determine" claim for appeal or provide "reasoned, even if brief, explanation" to that effect "is insufficient to confer appellate jurisdiction" (internal quotation marks and citations omitted)).

## CONCLUSION

For the foregoing reasons, we vacate the district court's grant of summary judgment on res judicata grounds and remand the District's action against BP and Shell to the Southern District of New York for further proceedings consistent with this opinion. *See* 28 U.S.C. § 1407(a).