```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/25/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE")
PRODUCTS LIABILITY LITIGATION

Master File No. 1:00 – 1898
MDL 1358
M21 – 88

This document relates to:

*Commonwealth of Pennsylvania, et al. v.
Exxon Mobil Corp., et al.*, No. 1:14-cv-06228

---

### ~~PROPOSED~~ CASE MANAGEMENT ORDER

### AGREEMENT ON THE PRODUCTION OF
### ELECTRONICALLY STORED INFORMATION (ESI)

WHEREAS the parties having "met and conferred" and having reached agreement on a protocol to govern the production of electronically stored information,

It is hereby ORDERED that:

This Agreement on the Production of Electronically Stored Information (hereafter "Agreement") is by and between the plaintiff and defendants hereto, in the action presently pending in the United States District Court for the Southern District of New York entitled *In Re: Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, Master File C.A. No. 1:00-1898, M21-88, MDL No. 1358, *Commonwealth of Pennsylvania, et al. v. Exxon Mobil Corp., et al.*, No. 1:14-cv006228.

This Agreement governs the production of ESI subsequent to the execution of the Agreement.

I. ELECTRONICALLY STORED INFORMATION

    a. All structured data, typically stored with enforced composition to atomic data types, includes but is not limited to: relational databases (*e.g.*, Oracle, SQL Server), data warehouses, spreadsheets (*e.g.*, Excel, Lotus 123), financial systems, document management systems, statistical systems, and analytical systems. File extensions/types that may constitute structured data include: .DAT, .RPT, .XLS, .XLSX, .XLSB, .123, .SDC, .ODS, .DBF, .MDF, .CSV, .MDB and .ACCDB. As to any structured data maintained utilizing software ore data management systems or other systems that are less ubiquitous than MS Access or MS Excel, the files shall be provided as comma or tab delimited text files. All ubiquitous structured data shall be produced in native format to the extent reasonably practicable and shall have unique bates numbers.

b. ALL EMAIL:

   i. Shall be produced as single page "tiff" (Group IV black and white 300 dpi) images with file names that match the bates number; multi page extracted text files with file names that match the first bates number of the document; and any objective field data contained in a delimited text field; and summation DII IPRO, or Concordance DAT/Opticon image load files which includes all document breaks;

   ii. Shall include in the load file, to the extent practicable, for e-mails with attachments: (a) the beginning attachment range number(s); (b) the ending attachment range number(s), where the "attachment range" records the relationship of e-mails to their attachment; and (c) Custodian; and

   iii. Shall include in the load file, to the extent practicable, metadata information including: (a) the individual to whom the communication was directed ("To"); (b) the author of the e-mail communication ("From"); (c) who was copied ("cc") and/or blind copied ("bcc"); (d) the subject line of the e-mail ("Re" or "Subject"); and (e) the date and time sent; and (f) custodian.

c. ALL OTHER ESI:

   i. Shall be produced as single page "tiff" (Group IV black and white 300 dpi) images with file names that match the bates number; multi page extracted text files, or OCR text files when extracted text is unavailable, with file names that match the first bates number of the document; any objective field data contained in a delimited text field; and summation DII IPRO, or Concordance DAT/Opticon image load files that include all document breaks; and

   ii. Shall include in the load file, to the extent practicable: (a) the file extension ("DocType") (*e.g.*, .doc, .pdf, .jpeg, etc.) and (b) Custodian; (c) filename; (d) location; (e) create date/time; (f) modified date/time; (g) file size; and (h) Hash/SHA value.

d. OTHER:

   i. PASSWORD-PROTECTED OR ENCRYPTED FILES: Documents that are locked by a password or encrypted as they are kept in the ordinary course of business shall be produced, if possible, in a form that is unlocked or decrypted. Where files that cannot be unlocked or decrypted or for which read-only protection cannot be removed, the parties will provide the list of the file names and meet-and-confer regarding the production of such documents.

  ii. MODELS: Models (groundwater, hydrology, etc.) shall be produced in their native format where possible. If the model is in a proprietary format that is difficult to produce, the parties shall meet-and- confer on the best method to produce the model. To the extent the purchase of a license(s) is required to view/utilize the model, the parties shall meet-and-confer regarding the costs of the model with the understanding that reasonable costs shall be borne by the requesting party.

  iii. DATA DESCRIPTIONS: Data descriptions necessary to use and understand the data should be provided as available and applicable (*e.g.*, abbreviation key, code key, etc.).

  iv. COLOR DOCUMENTS: Documents shall be produced in color where necessary to interpret the documents.

  v. DE-DUPLICATION: If a responsive document is located on a centralized server or network, an individual employee's computer, or otherwise located within a party's possession, custody or control, the producing party shall not be required to produce multiple copies of the same responsive document.

  vi. METADATA AND NATIVE FILES: If a producing party believes that it cannot comply with one or more portions of this Agreement regarding the production of metadata and/or Native Files, such party shall inform the requesting party in writing at the time of production as to why compliance with the protocol, or any part thereof, is unreasonable or not possible. When an individual or a small number of files are being collected independently of an ESI collection being performed by ESI consultants (*e.g.*, in response to a deposition notice, during a witness interview), such files may be produced without the metadata, especially the Hash/SHA value, described herein.

II.  BEST EFFORTS COMPLIANCE

The parties shall make their best efforts to resolve any differences concerning compliance with this Agreement. If a producing party believes it cannot comply with one or more portions of this agreement, such party shall inform the requesting party in writing at the time of production as to why compliance with the protocol, or any part thereof, is unreasonable or not possible. No party may seek relief from the Court concerning compliance with the Agreement until it has met and conferred with the other party to this action.

           SO ORDERED   6/25/18

              _Julia Fm_