# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/3/14

:

**IN RE: METHYL TERTIARY BUTYL**          :
**ETHER ("MTBE") PRODUCTS**               :
**LIABILITY LITIGATION**                  :

------------------------------------------------ :

**OPINION AND ORDER**

:
**This document relates to:**             :

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

:
*New Jersey Dep't of Envtl. Prot. v. Atlantic*   :
*Richfield Co.,* No. 08 Civ. 312 (SAS)           :

:

------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the New Jersey Department of Environmental Protection ("NJDEP"), the

Commissioner of the NJDEP, and the Administrator of the New Jersey Spill

Compensation Fund allege that defendants use and handling of MTBE has

contaminated, or threatened to contaminate groundwater at service stations,

refineries, and terminals throughout New Jersey.  Familiarity with the facts of this

1

case is presumed for the purposes of this Order.

Currently before the Court is a motion for summary judgment brought by various defendants[1] seeking dismissal of plaintiffs' (1) public nuisance claim to the extent it seeks damages beyond abatement; and (2) trespass claim on the grounds that plaintiffs failed to prove that they have exclusive possession of New Jersey's groundwater. For the reasons stated below, the motion is GRANTED.

## II.   BACKGROUND[2]

On June 19, 2012, plaintiffs filed their Fourth Amended Complaint ("FAC"), asserting claims of (1) strict liability, (2) negligence, (3) public nuisance,

---

[1]   Comprising Atlantic Richfield Company; BP America, Inc.; BP Amoco Chemical Company; BP Amoco Corporation; BP Products North America, Inc.; Chevron Corporation; Chevron U.S.A., Inc. ("CUSA"); Coastal Eagle Point Oil Company; ConocoPhillips Company; Cumberland Farms, Inc.; Duke Energy Merchants, LLC; El Paso Corporation (n/k/a El Paso LLC); Exxon Mobil Corporation; Exxon Mobil Oil Corporation; Equilon Enterprises LLC; Getty Petroleum Marketing Inc.; Getty Properties Corporation; Gulf Oil Limited Partnership; Hess Corporation; Kewanee Industries, Inc.; Lyondell Chemical Company; Mobil Corporation; Motiva Enterprises LLC; Shell Oil Company; Shell Oil Products Company LLC; Shell Trading (US) Company; Sunoco, Inc.; Sunoco, Inc. (R&M); Unocal Corporation. *See* Defendants' Notice of Motion for Partial Summary Judgment on Plaintiffs' Public Nuisance Claim for Damages and Trespass Claim.

[2]   The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with this motion, and the exhibits attached thereto. These facts are undisputed. *See* Plaintiffs' Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claim for Damages and Trespass Claim ("Pl. Opp. 56.1") (admitting all facts set forth in defendants' Rule 56.1 statement).

and (4) trespass against defendants.[3]

Plaintiffs purport to bring their common law claims — including public nuisance and trespass — in their sovereign capacity as *parens patriae*.[4] Specifically, the FAC asserts that the NJDEP "is vested with the authority to protect and seek compensation for any injury to [the waters of the State] on behalf of the State, which is the trustee, for the benefit of the citizens, of all natural resources within its borders . . . ."[5] The basis of both the public nuisance and trespass claims is that defendants' conduct contaminated the "waters of the State," which the State holds in trust for the public.[6] As relief for their public nuisance claim, plaintiffs seek both abatement and damages.[7]

## III.   LEGAL STANDARD

### A.   Summary Judgment

---

[3]     *See* FAC ¶¶ 111-174.

[4]     *See id.* ¶ 1; Defendants' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment on Plaintiffs' Public Nuisance Claim for Damages and Trespass Claim ("Def. 56.1") ¶ 1.

[5]     FAC ¶ 1.

[6]     *See id.* ¶¶ 124-125, 154.  Plaintiffs do not own the land at sixteen of the nineteen trial sites at issue.  *See* Def. 56. 1 ¶ 2.  The remaining three sites are owned by the State of New Jersey and the New Jersey Department of Treasury — neither of which are parties to this action.  *See id.* ¶¶ 3-4.

[7]     *See id.* at Count II (Public Nuisance), Prayer for Relief.

3

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[8]  "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]  "A fact is material if it might affect the outcome of the suit."[10]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[11]  To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[12] and "'may not rely on conclusory

---

[8]      *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[9]      *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[10]      *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012).

[11]      *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord Powell v. Donahoe*, 519 Fed. App'x 21, 22 (2d Cir. 2013).

[12]      *Gioia v. Forbes Media LLC*, 501 Fed. App'x 52, 54 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

4

allegations or unsubstantiated speculation.'"[13]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[14] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[15]

### B.   New Jersey Law

#### 1.   Public Nuisance

New Jersey law on public nuisance follows the Restatement (Second) of Torts.[16] The Restatement defines public nuisance as "an unreasonable interference with a right common to the general public."[17] A plaintiff suing for public nuisance can seek "damages [or] the injunctive remedy of abatement."[18]

---

[13]   *Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[14]   *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[15]   *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[16]   *See In re Lead Paint Litig.*, 191 N.J. 405, 424 (2007).

[17]   Restatement (Second) of Torts § 821B(1) (1979).

[18]   *In re Lead Paint*, 191 N.J. at 427.

The remedies available depend on the type of plaintiff bringing suit. A private plaintiff "can sue for damages caused by the public nuisance only if [he] has 'suffered harm of a kind different from that suffered by other members of the public.'"[19] Thus, his "special injury" must be "an injury different in kind, rather than in degree."[20] In addition, "if a private plaintiff has a right to sue for damages because of a harm different in kind, then [he] may also pursue an action to abate the nuisance as it affects all members of the public."[21]

"Conversely, however, the public entity, as the modern representative of the sovereign in public nuisance litigation, has only the right to abate."[22] As the New Jersey Supreme Court has emphasized:

> [T]here is no right either historically, or through the Restatement (Second)'s formulation, for the public entity to seek to collect money damages in general. . . . Rather, there is only a private plaintiff's right to recover damages through an action arising from a special injury.[23]

Therefore, an award of damages "is limited to the extent of the special injury sustained by the private plaintiff, and is not a remedy available to a public

---

[19]   *Id.* (quoting Restatement (Second) of Torts § 821C(1)).

[20]   *Id.* at 436.

[21]   *Id.* (citing Restatement (Second) of Torts § 821C(2)(a)) at 428.

[22]   *Id.* (citing Restatement (Second) of Torts § 821C(2)(b)).

[23]   *Id.*

6

entity plaintiff to the extent that it acts in the place of the sovereign."[24]  If, however, New Jersey law permits a public entity to sue for damages as a private plaintiff,[25] "[the public entity] must, therefore, identify a special injury as to which an award of money damages may attach."[26]

### 2.  Trespass

Under common law, "[a]n action for trespass arises upon the unauthorized entry onto another's property, real or personal."[27]  Because "trespass . . . is actionable, irrespective of any appreciable injury . . . , a plaintiff may assert a claim for whatever damages the facts may lawfully warrant."[28]  The plaintiff need not "show[] fault as a basis of liability."[29]

Additionally, trespass requires that "the invasion . . . be to land that is

---

[24]  *Id.* at 435 (internal quotation marks omitted).

[25]  *See id.* at 435 n.10 (finding it "debatable" whether public entities are authorized to proceed as private plaintiffs in a trespass action to obtain damages).

[26]  *Id.* at 435.

[27]  *New Jersey Dep't of Envt'l Prot. v. Exxon Mobil Corp.*, No. UNN-L-3026-04, 2008 WL 4177038, at *7 (N.J. Super. Aug. 29, 2008) (citing *Pinkowski v. Twp. of Montclair*, 299 N.J. Super. 557, 571 (App. Div. 1997)).

[28]  *Id.* (citing *Pinkowski*, 299 N.J. Super. at 571).

[29]  *Id.*

in the *exclusive possession* of the plaintiff."[30] "Land in the public trust is held by the State on behalf of a second party, the people."[31] Thus, such land cannot be in "exclusive possession" of the State.

## IV.   DISCUSSION

### A.   The Public Nuisance Claim

Defendants contend that plaintiffs cannot recover damages for their public nuisance claim because they are purportedly acting "in the place of the sovereign."[32] Even if plaintiffs were proceeding as private litigants, they have failed to show any "special injury."[33] Thus, defendants argue that plaintiffs are not entitled to damages for their public nuisance claim.[34]

As an initial matter, plaintiffs do not purport to be proceeding as private litigants — nor can they — given the statements in the FAC to the

---

[30]   *Id.* (citing *New Jersey Dep't of Envt'l Prot. v. Ventron Corp.*, 94 N.J. 473, 488-89 (1983)) (emphasis added).

[31]   *Id.*

[32]   Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment on Plaintiffs' Public Nuisance Claim for Damages and Trespass Claim ("Def. Mem.") at 3 (citing FAC ¶ 1).

[33]   *Id.* at 4.

[34]   *See id.*

contrary.[35]  Instead, they admit that they brought all claims in their *parens patriae*

capacity and under the public trust doctrine.[36]  Therefore, under New Jersey law,

plaintiffs have only the right to abate.[37]  Plaintiffs cite no controlling case that

states otherwise.[38]

Plaintiffs, nevertheless, insist they are entitled to damages because

they have demonstrated a "special injury."[39]  They contend that damages to water

---

[35]    *See* FAC ¶ 14 ("[T]he State is the trustee, for the benefit of its
citizens, of all natural resources . . . ."); ¶ 17 ("[T]he State, through plaintiffs
[NJ]DEP and the Administrator, seeks damages as *parens patriae* and under the
public trust doctrine.").

[36]    *See* Pl. Opp. 56.1 ¶ 1.

[37]    *See In re Lead Paint*, 191 N.J. at 427 ("[T]he public entity, as the
modern representative of the sovereign in public nuisance litigation, has only the
right to abate.").

[38]    Plaintiffs rely on two cases to support their argument that they may
recover damages when proceeding in their public capacity.  The first is a case from
the District Court of the Virgin Islands.  *See* Pl. Mem. at 5 (citing *Commissioner of
the Dep't of Planning and Natural Res. v. Century Alumina Co.*, No. 05 Civ. 0062,
2008 WL 4809897, at *10 n.8 (D.V.I. Oct. 31, 2008)).  The second — a New
Jersey case — addresses only liability, not remedies available for public nuisance.
*See* Pl. Mem. at 3-4 (citing *Ventron*, 94 N.J. at 490).  Both cases are inapposite in
light of the New Jersey Supreme Court's 2007 ruling in *Lead Paint*.

[39]    *See* Pl. Mem. at 5-13.  Plaintiffs rely on this Court's opinion in *In re
Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, in which I held
that Orange County Water District ("OCWD") may seek damages on its public
nuisance claim to the extent that the alleged nuisance interfered with its "valid
usufructuary interest."  457 F. Supp. 2d 455, 466 (S.D.N.Y. 2006).  Unlike the
OCWD, which withdrew and replenished the groundwater, plaintiffs have no
usufructuary interest in the groundwater.  To the contrary, plaintiffs state that they

they hold "in trust" is "*per se* separate, distinct, and independent" of any individual damages to the state's citizens.[40]  Even if plaintiffs could prove "special injury" — which they cannot[41] — a public entity may recover damages only when acting as a private litigant.[42]  Because plaintiffs — by their own admission[43] — are not proceeding as "private litigants," they may not recover damages.

### B.    The Trespass Claim

Defendants next argue that plaintiffs' trespass claim must fail because they cannot prove a required element — exclusive possession.[44]  Defendants contend that because plaintiffs purportedly hold the "waters of the state" in trust for the citizens, they lack exclusive possession.[45]

---

protect ground water for "members of the public" to use. Pl. Mem. at 9.

[40]    Pl. Mem. at 7.

[41]    For support, plaintiffs again rely mainly on decisions from other jurisdictions. *See id.* at 7-8.  The few New Jersey cases cited do not support awarding damages based on public nuisance. *See id.* at 7-8, n.3, n.4.

[42]    *See In re Lead Paint*, 191 N.J. at 435 ("The damage award [for public nuisance] is limited to the extent of the special injury sustained by the private plaintiff, and is not a remedy available to a public entity plaintiff to the extent that it acts in the place of the "sovereign.").

[43]    *See supra* text accompanying notes 36 and 37.

[44]    *See* Def. Mem. at 5-7.

[45]    *Id.* at 6 (citing *Exxon*, 2008 WL 4177038, at *7) ("This court cannot find that land subject to the public trust is in the 'exclusive possession' of the

10

Plaintiffs insist that they are, nevertheless, entitled to bring their

trespass claim. *First*, plaintiffs argue that the New Jersey legislature has explicitly

granted them the right to bring a trespass action.[46] However, plaintiffs rely on a

provision of the New Jersey Waterfront Development Act that relates only to the

navigable waters of the State. If the legislature intended to grant the State the right

to bring a trespass action for *groundwater*, it would have so stated.[47] *Second*,

plaintiffs claim — without citation — that New Jersey law does not require

exclusive possession.[48] Instead, plaintiffs urge that "the proper inquiry is the right

to 'control' the [groundwater] as against all others."[49] Plaintiffs' claim has no

support.[50] New Jersey law clearly requires exclusive possession as an element of

---

state."). Plaintiffs object to reliance on this case based on a New Jersey Rule of
Court which states that unpublished cases lack binding authority. Nevertheless, I
find this case persuasive.

[46]   *See* Pl. Mem. at 14 (citing N.J.S.A. 12:5-2) (authorizing the NJDEP to
"prevent the encroachment or trespass upon the waterfront of any of the *navigable
waters* of this State . . .") (emphasis added).

[47]   Plaintiffs cite to another provision that defines "natural resources" to
include all waters "owned, managed, held in trust or otherwise controlled by the
State." Pl. Mem. at 13 (citing N.J.S.A. 58:10-23.11b). This provision says nothing
about whether the State has exclusive possession of the groundwater.

[48]   *See id.*

[49]   *Id.* at 14.

[50]   Plaintiffs cite only one New Jersey case, which involves an ejectment
action brought under N.J.S.A. 2A:35-1. *See* Pl. Mem. at 14-15 (citing *Marder v.*

11

trespass.[51] Further, the groundwater lies under or on private land.[52] Thus,

plaintiffs' possessory interest in that water is necessarily subordinate to that of the

private landowners.[53] The State — as trustee for the citizenry including those

---

*Realty Constr. Co.*, 84 N.J. Super. 313, 321 (App. Div. 1964), *aff'd*, 43 N.J. 508 (1964)). If anything, *Marder* undermines plaintiffs' argument because that court found that a construction company trespassed on a landowner's private property — land undoubtedly in the landowner's exclusive possession. *See id.*

[51]     *See Ventron*, 94 N.J. at 488 ("[A]ny actual invasion that . . . interfered with the plaintiff's exclusive possession of his land constituted an actionable trespass . . ."); *Exxon*, 2008 WL 4177038, at *7 ("The gravamen of the tort of trespass is that someone has interfered with a party's exclusive possession of the land."); *Newark v. Eastern Airlines, Inc.*, 159 F. Supp. 750, 761-62 (D.N.J. 1958) (holding that a plaintiff without an "exclusive possessory interest" in the property at issue "may not maintain an action in trespass").

[52]     *See* Def. 56.1 ¶ 2. The land at sixteen of the sites at issue is privately owned. *See id.* The remaining three sites are owned by non-parties. *See id.* ¶¶ 3-4. Even if plaintiffs had exclusive possession at these three sites, their trespass claim would fail because the non-parties consented to the delivery of gasoline — found to contain MTBE — to their property. *See Woodcliff, Inc. v. Jersey Constr. Inc.*, 900 F. Supp. 2d 398, 402 (D.N.J. 2012) (holding that trespass is an "inappropriate theory of liability" where the plaintiff claimed it had consented to the delivery of soil to its property, but not to the discharge of arsenic in the soil)).

[53]     This Court's 2011 opinion in the OCWD case is not to the contrary. *See In re MTBE Prods. Liab. Litig.*, 824 F. Supp. 2d 524 (S.D.N.Y. 2011). There, I held that under California law, OCWD's usufructuary rights were "subordinate to the State (acting pursuant to the public trust), [and] any overlying right holders (such as the defendants as owners of the sites)." *Id.* at 546-547. I did not hold that the interest of the State — as trustee — was superior to that of the private landowners.

12

landowners — cannot claim to be in exclusive possession.[54] By their own admission, "members of the public use groundwater for drinking, bathing, recreational, and similar uses."[55] In fact, plaintiffs must obtain permission to use the groundwater.[56] Therefore, plaintiffs cannot pursue their trespass claim.

## V. CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED. The Clerk of the Court is directed to close this motion (Doc. No. 277).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 3, 2014

---

[54]   *See Exxon*, 2008 WL 4177038, at *7 (holding that the NJDEP — who allegedly held land in the public trust — lacked "exclusive possession" required to maintain its trespass claim).

[55]   Pl. Mem. at 9.

[56]   *See* New Jersey Administrative Code § 7:19-1.3 (defining "person" for purposes of obtaining a water allocation permit to include any "subdivision of the State and any state"); *New Mexico v. General Elec. Co.*, 335 F. Supp. 2d 1185, 1202 (D.N.M. 2004) (finding it relevant to the State's claim for trespass that the State — like everyone else — had to obtain a permit to use the groundwater).

13

## - Appearances -

**For Plaintiffs:**

Gwen P. Farley
John J. Hoffman
Assistant Attorney Generals
Office of the Attorney General of the State of New Jersey
P.O. Box 080
Trenton, NJ 08625
(609) 292-4925

Daniel Berger, Esq.
Tyler E. Wren, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3098

Leonard Z. Kaufmann, Esq.
Cohn, Lifland, Pearlman, Herrmann & Knopf LLP
Park 80 Plaza West One
Saddle Brook, NJ 07663
(201) 845-9600

**For Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
Lisa A. Gerson, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10017
(212) 547-5400

# EXHIBIT 9

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/24/15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**Master File No. 1:00 - 1898**
**MDL 1358 (SAS)**
**M21-88**

**This Document Relates to:**

*New Jersey Department of Environmental*
*Protection, et al. v. Atlantic Richfield Co., et al.*
No. 1:08-cv-00312-SAS

### (JOINT PROPOSED) SUGGESTION TO REMAND

On January 3, 2008, the Judicial Panel on Multidistrict Litigation transferred the case

captioned *New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co.,*

*et al.*, Case No. 08-cv-00312 (S.D.N.Y.); 3:07-cv-5284 (D.N.J.) (the "Action"), to this Court for

coordinated and consolidated pretrial proceedings in MDL No. 1358. The Action involves

alleged contamination of groundwater with methyl-tertiary butyl ether ("MTBE") at thousands of

sites in the state of New Jersey.

On March 11, 2010, this Court issued Case Management Order #60, which set forth a

procedure for the parties to select a subset of those sites (the "Trial Sites") on which fact and

expert discovery would proceed. The Trial Sites are:

| *Site ID #* | *Site Name* |
|-------------|-------------|
| # 2156 | Skyline Service Center |
| # 4476 | Valero/APCO |
| # 6187 | West Windsor Getty |
| # 8857 | Livingston Exxon |
| # 9224 | Bloomfield Sunoco |
| # 10792 | Maple Shade CITGO |
| # 11126 | Baker's Waldwick Gulf |
| # 11346 | Shell Ridgewood |

| *Site ID #* | *Site Name* |
|---|---|
| # 15442 | 5 Points BP |
| # 41958 | HP Delta |
| # 4215 | Tinton Falls Boro DPW Facility |
| # 4318 | Leonardo State Marina |
| # 4729 | Colts Neck DPW Garage |
| # 8076 | NJDOT W. Orange Maintenance Yard |
| # 13363 | Camp Pedricktown WWTP |
| # 15814 | RC Cape May Holdings Corp. |
| # 42523 | Scarborough Office Tank |
| # 59237 | Tamcrest Country Club |
| # NJ0609001 | NJ State Prison Bayside |

The Court hereby finds that discovery on the Trial Sites has been substantially completed and that the coordinated and consolidated pretrial proceedings have run their course with respect to claims related to the Trial Sites.

The Court therefore suggests that the Panel remand to the United States District Court for the District of New Jersey all remaining claims as to the Trial Sites – consistent with CMO 107 (attached)[1] – for all further proceedings, including additional pretrial and trial proceedings.  As of this time this Court will retain jurisdiction over the remainder of the Action in order to conduct coordinated and consolidated pretrial proceedings.

SO ORDERED:

Dated: New York, New York
Febulary 24, 2015

Shira A. Scheindlin
U.S.D.J.

---

[1] Due to settlements and rulings that occurred after entry of CMO 107 the only defendants remaining at the trial sites are: Sunoco, Mobil, ExxonMobil, Getty Properties Corp., Getty Petroleum Marketing Inc., Gulf Oil Ltd. Partnership, Cumberland Farms, Shell, BP, and ConocoPhillips.

2

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/27/12

**IN THE UNITED STATERS DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*New Jersey Department of Environmental Protection v. Atlantic Richfield Co., et al.*<br>No. 08 Civ. 00312 | Master File No. 1-00-1898<br>MDL 1358 (SAS)<br>M21-88 |

**SHIRA A. SCHEINDLIN, U.S.D.J.**

[Pls' Proposed] **CASE MANAGEMENT ORDER NO.** 10

After conference with the parties, it is hereby ORDERED that Plaintiffs' claims with respect to the nineteen Trial Sites are limited to only the defendant or defendants identified below for each Site:

| Trial Site Name (Site ID #) | Identified Defendants |
|---|---|
| Skyline Service Center (# 2156) | Sunoco; Texaco; CITGO; Chevron |
| Valero/APCO (# 4476) | Valero; Mobil; ExxonMobil |
| West Windsor Getty (# 6187) | Chevron; Texaco; Getty Properties Corp.; Getty Petroleum Marketing, Inc. |
| Livingston Exxon (# 8857) | ExxonMobil |
| Bloomfield Sunoco (# 9224) | Sunoco |
| Maple Shade CITGO (# 10792) | Hess; CITGO |
| Baker's Waldwick Gulf (# 11126) | Gulf Oil Ltd. Partnership; Cumberland Farms; Chevron |
| Shell Ridgewood (# 11346) | Shell |
| 5 Points BP (# 15442) | CITGO; BP |
| HP Delta (# 41958) | Getty Properties Corp.; Texaco; BP; CITGO; ConocoPhillips; Chevron |
| Tinton Falls Boro DPW Facility (# 4215) | NONE |
| Leonardo State Marina (# 4318) | CITGO; Coastal |
| Colts Neck DPW Garage (# 4729) | NONE |
| NJDOT W. Orange Maintenance Yard (# 8076) | Gulf |

1

| Camp Pedricktown W WTP (# 13363) | NONE |
| RC Cape May Holdings Corp. (# 15814) | NONE |
| Scarborough Office Tank (# 42523) | NONE |
| Tamcrest Country Club (# 59237) | NONE |
| NJ State Prison Bayside (# NJ0609001) | Coastal |

SO ORDERED:

DATED:  New York, New York
        December 24, 2012

Shira A. Scheindlin
U.S.D.J.

2

# EXHIBIT 10

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/14/14

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ X
                              :

**IN RE: METHYL TERTIARY BUTYL**  :
**ETHER ("MTBE") PRODUCTS**    :     **OPINION AND ORDER**
**LIABILITY LITIGATION**         :
------------------------------------------------  :     **Master File No. 1:00-1898**
                              :     **MDL 1358 (SAS)**
**This document relates to:**      :     **M21-88**
                              :

*New Jersey Dep't of Envtl. Prot. v. Atlantic*  :
*Richfield Co.,* No. 08 Civ. 312 (SAS)     :
                              :
------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.     INTRODUCTION**

        This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In the

instant case, the New Jersey Department of Environmental Protection ("NJDEP"),

the Commissioner of the New Jersey Department of Environmental Protection, and

the Administrator of the New Jersey Spill Compensation Fund allege that Getty

Properties Corporation's ("Getty") use and handling of MTBE has contaminated,

or threatened to contaminate groundwater under its jurisdiction.  Familiarity with

the facts of this case is presumed for the purposes of this Opinion.

Getty seeks contribution from Robert Melecci, H.P. Delta, Inc. ("H.P. Delta"), and Dhandi Transport Inc. ("Dhandi") under the New Jersey Joint Tortfeasors Contribution Law,[1] the New Jersey Comparative Negligence Act,[2] and the New Jersey Spill Compensation and Control Act (the "Spill Act").[3]  Getty also seeks common law indemnification from these parties.  Dhandi and H.P. Delta each move for summary judgment on the ground that Getty cannot prove a causal nexus between their alleged discharges and the groundwater contamination at issue as required by New Jersey law.[4]  For the reasons stated below, the motion for summary judgment is DENIED.

---

[1]      *See* N.J. Stat. Ann. § 2A:53A-1, *et seq.*

[2]      *See id.* § 2A:15-5, *et seq.*

[3]      *See id.* § 58:10-23f.a.(2)(a).

[4]      *See New Jersey Dep't of Envtl. Prot. v. Dimant*, 51 A.3d 816, 830–31 (N.J. 2012).  H.P. Delta relies upon and incorporates by reference the arguments set forth in Dhandi's brief and supporting documentation.  *See* Memorandum of Law in Support of H.P. Delta's Motion for Summary Judgment ("H.P. Delta Mem.") at 1.

## II.   BACKGROUND[5]

From 1985 through 1987, Getty owned four underground storage tanks ("USTs") at the H.P. Delta Site (the "Site") and supplied gasoline to the station at that Site.[6]  In 1987, one of these tanks failed a tightness test, and as a result, all four tanks were removed.[7]  Gasoline-contaminated soil was left stockpiled at the Site for four months after the tank excavation, leading the NJDEP to issue an administrative consent order directing Getty to submit "sampling results to the NJDEP within five days, properly dispose of the contaminated soil within seven days, and submit a receipt of the proper disposal" within two weeks.[8]  The contaminated soil was subsequently removed, and the "NJDEP did not require further action regarding the removal of the USTs and subsequent disposal of stockpiled soil."[9]

---

[5]    The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with this motion, and the exhibits attached thereto.  These facts are undisputed unless otherwise noted.  Where disputed, the facts are viewed in the light most favorable to the nonmoving party. *See Beard v. Banks*, 548 U.S. 521, 529–30 (2006).

[6]    *See* Expert Report of James A. Schaefer, Jr. ("Schaefer Report"), Ex. 2 to Declaration of Kevin T. Bright, counsel for Dhandi, in Support of Dhandi's Motion for Summary Judgment ("Bright Decl."), at 4.

[7]    *See id.* at 8.

[8]    *Id.* at 10.

[9]    *Id.*

3

In 1988, Melecci, the Site's owner, installed new USTs as part of the gasoline dispensing system that is still in operation at the Site today.[10] There were no "regulatory reported environmental incidents" at the Site between 1989 and 2003.[11] In 2003, Melecci leased the station's operations to H.P. Delta.[12] Dhandi, a gasoline transport company, began delivering gasoline to the station that same year.[13] In 2004, the NJDEP issued a spill incident report after "[a] turbine spill containment sump on the UST containing regular gasoline was observed to be filled with gasoline."[14]

In 2005, MTBE was first detected in wells located southwest of the Site.[15] In 2006, the NJDEP conducted a compliance inspection of the Site's gasoline dispensing system.[16] "The inspection revealed soil contamination and

---

[10]    See id.

[11]    Id. at 11.

[12]    See id.

[13]    See Memorandum of Law in Support of Dhandi's Motion for Summary Judgment ("Dhandi Mem.") at 1.

[14]    Schaefer Report at 11.

[15]    See id. at 11–13.

[16]    See id. at 13.

floating product in observation wells . . . at the Site among other violations."[17]  The

NJDEP issued a UST Field Notice of Violation to H.P. Delta, noting "deficiencies

in tank overfill protection."[18]  The NJDEP imposed a delivery ban, and ordered that

the USTs be emptied within forty-eight hours.[19]

In response to the NJDEP's directive, H.P. Delta sued Melecci in New

Jersey Superior Court, claiming that contamination at the Site came primarily from

the former USTs.[20]  H.P. Delta subsequently amended its complaint to include

Getty as a defendant.[21]  Melecci filed a third party complaint against Dhandi,

claiming that Dhandi's negligence during gasoline deliveries contributed to the

contamination.[22]  On April 12, 2011, Getty sued Dhandi and H.P. Delta for

indemnification and contribution as part of the MDL proceedings, resulting in the

---

[17]    *Id.*

[18]    *Id.*

[19]    *See id.*

[20]    *See* H.P. Delta's Complaint and Jury Demand (No. MID-L-7781-07),
Ex. 4 to Bright Decl. ¶¶ 8–9.

[21]    *See* H.P. Delta's First Amended Complaint and Jury Demand (No.
MID-L-7781-07), Ex. 6 to Bright Decl., ¶ 5.

[22]    *See* Melecci's Answer, Affirmative Defenses, Counterclaim and Third
Party Complaint (No. MID-L-7781-07), Ex. 5 to Bright Decl., at 6–8.

stay of the state court proceedings.[23]

In the instant action, plaintiffs sue Getty, alleging that discharges at the Site caused contamination at off-site production wells.[24] NJDEP representative Gary Lipsius testified that the NJDEP believes that it is "likely" that MTBE contamination at the Site "is in some part responsible for the potable well contamination" at issue in this case.[25] The NJDEP's expert, Anthony Brown, concluded that discharges of MTBE gasoline occurred at the Site, and that "MTBE in groundwater extends at least 1,350 feet to the west-southwest of the Site . . . ."[26] Brown has further opined that while under natural conditions the regional groundwater in the area would flow to the northeast,

> the pumping of groundwater supply wells in the area has locally affected the groundwater flow patterns. It is likely that gradients in the bedrock in the vicinity of the Site were influenced by pumping at domestic supply wells. Given the distribution of these wells, groundwater in the bedrock likely flowed to the

---

[23]    *See* Dhandi's Local Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("Dhandi 56.1") ¶ 32.

[24]    *See* Revised Site Summary ID # - 41958 H.P. Delta Service Station ("Site Summary"), Ex. 9 to Bright Decl., at 46. Plaintiffs have not brought direct claims against Dhandi or H.P. Delta.

[25]    08/02/12 Deposition of Gary Lipsius ("Lipsius Dep."), Ex. 13 to Declaration of Susan M. Dean, counsel for Getty ("Dean Decl."), at 21.

[26]    Site Summary at 46 ("Gasoline releases have been reported at the Site in December 2004 and August 2006.").

6

west-southwest [of the Site] when the supply wells were actively pumping.[27]

Getty's expert, James Schaefer, has opined that MTBE contamination detected at the off-site wells resulted from releases at the Site that occurred between 2004 and 2006.[28] According to Schaefer, one of the causes of the MTBE contamination at the off-site production wells "appears to be reported overfilling or spills/releases during gasoline deliveries made by Dhandi Transport."[29] Melecci has testified that he saw Dhandi spill gasoline at the Site on multiple occasions.[30]

## III.   APPLICABLE LAW

### A.   Legal Standard

Summary judgment is appropriate "only where, construing all the

---

[27]    *Id.* at 26.

[28]    Schaefer Report at 23 ("The investigation, testing, available Site related and public data and analysis of the same, indicate that MTBE detected at the off-Site wells were the result of the 2004-2006 hydrocarbon spills/release(s) at the HP Delta Service Station from the new UST system.").

[29]    *Id.* Dhandi and H.P. Delta dispute Schaefer's opinion, calling this statement "pure speculation, completely unsupported by fact." Dhandi Mem. at 15.

[30]    In the state court action, Melecci testified that Dhandi spilled "every time" it made deliveries, and that he was present for "at least 60%" of the deliveries. 12/24/08 Deposition of Melecci ("12/24/08 Melecci Dep."), Ex. 3 to Dean Decl., at 54–55. In this action, Melecci testified that he saw Dhandi spill a total of six times. *See* 09/12/12 Deposition of Melecci ("09/12/12 Melecci Dep."), Ex. 12 to Dean Decl., at 96–97.

evidence in the light most favorable to the non-movant and drawing all reasonable

inferences in that party's favor, there is 'no genuine issue as to any material fact

and . . . the movant is entitled to judgment as a matter of law.'"[31]  "A genuine

dispute exists if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."[32]  "A fact is material if it might affect the outcome of the

suit."[33]

     "The moving party bears the burden of establishing the absence of any

genuine issue of material fact."[34]  To defeat a motion for summary judgment, the

non-moving party "'must do more than simply show that there is some

metaphysical doubt as to the material facts,'"[35] and "'may not rely on conclusory

---

[31]    *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[32]    *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[33]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012).

[34]    *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord Powell v. Donahoe*, 519 Fed. App'x 21, 22 (2d Cir. 2013).

[35]    *Valenti v. Penn Mut. Life Ins. Co.*, 511 Fed. App'x 57, 58, (2d Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

allegations or unsubstantiated speculation . . . .'"[36]

"'The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'"[37]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[38]

**B.   Contribution Under the New Jersey Spill Act**

The Spill Act provides, in pertinent part: "[A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."[39]  Under the Spill Act, dischargers "shall have a right of contribution against all other dischargers and

---

[36]   *Northeast Research, LLC v. One Shipwrecked Vessel,* 729 F.3d 197, 214 (2d Cir. 2013) (quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).

[37]   *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 601 (S.D.N.Y. 2004) (quoting *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

[38]   *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[39]   N.J. Stat. Ann. § 58:10-23.11g.c.(1).

persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance."[40]

A party seeking contribution under the Spill Act must demonstrate a causal nexus between the discharge and the discharger.[41]  "A nexus also must be demonstrated to exist between the discharge for which one is responsible — in any way — and the contaminated site for which cleanup and other related authorized costs are incurred."[42]  Although "some causal link is undoubtedly required to impose liability for damages resulting from a discharge," courts should not "import[] a proximate-cause analysis into the calculus when assessing the bases for relief [under the Spill Act]."[43]  There need only be a demonstrable nexus between "the discharger [and] the discharge that is alleged to be the, or a, culprit in the

---

[40]    *Id.* § 58:10-23.11f.a.(2)(a).

[41]    *See Dimant*, 51 A.3d at 830 ("[T]he phrase 'in any way responsible' requires some connection between the discharge complained of and the alleged discharger . . . .").

[42]    *Id.* at 831 (citing *New Jersey Tpk. Auth. v. PPG Indus.*, 197 F.3d 96, 106 (3d Cir. 1999)).

[43]    *Id.* at 833 ("Liability for post-discharge removal naturally exists independent of damages arising from a discharge itself.  As a result, it appears that all liability under the Spill Act is not tied to a static causation nexus.").

environmental contamination in issue."[44]

## IV.   DISCUSSION

Dhandi and H.P. Delta allege that Getty is unable to prove either of the causal links necessary to sustain liability under the Spill Act. *First*, they claim that there is not sufficient evidence for a reasonable finder of fact to conclude that they were responsible for discharges at the Site. *Second*, they claim that Getty cannot link contamination at the Site to contamination in the off-site wells. However, based on the record before the Court, there are triable issues of material fact as to both causal links.

Getty has produced evidence that both Dhandi and H.P. Delta were responsible for spills at the Site. Schaefer has opined that MTBE contamination at the Site was the result of spills from the USTs in use when H.P. Delta operated the station, as well as Dhandi's overfilling during deliveries.[45]   Melecci's testimony supports that Dhandi spilled gasoline at the Site on multiple occasions.[46]   Getty has also produced evidence linking contamination at the Site to the off-site wells.   Both

---

[44]     *Id.* at 830.

[45]     *See* Schaefer Report at 23.

[46]     *See* 12/24/08 Melecci Dep. at 54–55. Melecci's conflicting testimony creates a triable issue of fact as to whether — and how often — Dhandi discharged MTBE gasoline at the Site. *See* 09/12/12 Melecci Dep. at 95.

Schaefer's expert report and Brown's Site Summary link discharges that occurred at the Site to the off-site contamination.[47] The NJDEP believes it is "likely" that contamination at the Site contributed to the off-site contamination.[48] Getty has therefore submitted evidence of both causal links.

The moving parties rely heavily on *New Jersey Department of Environmental Protection v. Dimant*, citing factual similarities with this case and asserting that Getty has not proven a causal nexus as a matter of law.[49] However, the facts and procedural posture of *Dimant* are markedly different from this case. In *Dimant*, the New Jersey Supreme Court affirmed that a third party defendant was not liable for contribution under the Spill Act where the contamination at issue preceded that defendant's operations, and where a discharge had only been observed on one occasion.[50] After a trial, the lower court concluded that the

---

[47]   *See* Schaefer Report at 23; Site Summary at 26.  Dhandi alleges that Brown's analysis of the groundwater flow demonstrates that the off-site contamination could not have originated at the Site.  *See* Dhandi Mem. at 8–9. Because Brown opines otherwise, this is a disputed material fact not properly decided on summary judgment.  *See Ebewo*, 309 F. Supp. 2d at 601.

[48]   *See* Lipsius Dep. at 21.

[49]   *See* Dhandi Mem. at 16.

[50]   *See Dimant*,  51 A.3d at 824–26, 835 ("[The NJDEP] never presented sufficient proof of a reasonable, tenable basis for how the drip of fluid . . . observed at [the defendant's business] one day in 1988 resulted in the contamination of the groundwater [off site].").

12

plaintiff had failed to link the defendant's discharge with the contamination for which the defendant was supposedly liable.[51]   In contrast to *Dimant*, there are multiple discharges alleged in this case that are temporally consistent with the contamination at issue,[52] and my task on summary judgment "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them."[53]   This case is thus readily distinguishable from *Dimant*.

Moreover, *Dimant* clarified that a causal nexus inquiry under the Spill Act is not equivalent to a proximate cause analysis.[54]   Getty need not prove that discharges by Dhandi or H.P. Delta at the Site were the primary or proximate cause of the contamination at the off-site wells.   Evidence regarding other potential sources of contamination is not relevant.   Getty has produced evidence from which a fact finder could reasonably conclude that Dhandi and H.P. Delta discharged gasoline at the Site,[55] and that discharges at the Site contaminated the off-site

---

[51]   *See id.* at 835 ("In the end, the trial court here did what courts must do. It found the facts and, having found them, determined them lacking.  The [NJ]DEP's proofs were inadequate to obtain the relief it sought from [the defendant].").

[52]   *See* Schaeffer Report at 23; Site Summary at 46; 12/24/08 Melecci Dep. at 54–55.

[53]   *Ebewo*, 309 F. Supp. 2d at 601.

[54]   *See Dimant*, 51 A.3d at 833.

[55]   *See* Schaeffer Report at 23; 12/24/08 Melecci Dep. at 54–55.

wells.[56] The Court cannot weigh this evidence, or decide whether it supports an inference of Dhandi's or H.P. Delta's liability at this time.[57]

## V.   CONCLUSION

For the foregoing reasons, the motions for summary judgment are DENIED. The Clerk of the Court is directed to close these motions (Doc. Nos. 318, 324).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 14, 2014

---

[56]      *See* Schaeffer Report at 23; Site Summary at 46.

[57]      *See Redd,* 678 F.3d at 174.  Given the issues of disputed fact raised by Getty, the Court need not consider plaintiffs' opposition papers. *See* Plaintiffs' Response to Third Party Motion for Summary Judgment; Plaintiffs' Local Rule 56.1 Statement of Material Facts in Opposition to Third Party Motion for Summary Judgment.

-14-

**– Appearances –**

**For Getty:**

John C. McMeekin II, Esq.
Susan M. Dean, Esq.
Rawle & Henderson LLP
1 South Penn Square
Philadelphia, Pennsylvania  19107
(215) 575-4200

**For Plaintiffs:**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California  95825
(916) 488-6688

Gwen Farley
Assistant Attorney General
Office of the Attorney General of the
State of New Jersey
25 Market Street, P.O. Box 093
Trenton, New Jersey  08625
(609) 985-2845

**Liaison Counsel for Plaintiffs:**

Leonard Z. Kaufmann, Esq.
Cohn, Lifland, Pearlman, Herrmann &
Knopf LLP
Park 80 Plaza West One
Saddle Brook, New Jersey  07663
(201) 845-9600

**For Dhandi:**

Kevin T. Bright, Esq.
Lila Wynne, Esq.
Marshall, Dennehey, Warner, Coleman
& Goggin
200 Lake Drive East, Suite 300
Cherry Hill, New Jersey  09002
(856) 414-6000

**For H.P. Delta:**

Stuart J. Lieberman, Esq.
Michael G. Sinkevich, Esq.
Lieberman & Blecher, P.C.
10 Jefferson Plaza, Suite 400
Princeton, New Jersey  09540
(732) 355-1311

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10017
(212) 547-5400