UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation**

MLD NO. 1358 (SAS)
Master File No. 1:00-1898

**DEFENDANTS CHEVRON U.S.A. INC.'S AND UNION OIL COMPANY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

This Document Relates To:
*Orange County Water District v. Unocal Corp., et al. 04 Civ. 4968 (SAS)*

## DEFENDANTS CHEVRON U.S.A. INC.'S AND UNION OIL COMPANY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

TO ALL PARTIES HEREIN AND THEIR RESPECTIVE ATTORNEYS OF

RECORD:

NOTICE IS HEREBY GIVEN that Defendants Chevron U.S.A. Inc. and

Union Oil Company of California will bring a Motion for Order Determining Good

Faith Settlement, pursuant to California Code of Civil Procedure section 877.6, and

request issuance of the following Court Orders:

1

(1) An order determining that the Settlement Agreement, Exhibit 1 to the Declaration of Charles C. Correll, Jr. submitted in support of this motion, between Plaintiff Orange County Water District ("OCWD") on the one hand and Defendants Chevron U.S.A. Inc. and Union Oil Company of California on the other hand (collectively, the "Chevron U.S.A. Defendants"), was entered into in good faith, as defined under California Code of Civil Procedure sections 877 and 877.6;

(2) An order determining that the negotiations of the Settlement Agreement between OCWD and the Chevron U.S.A. Defendants were conducted fairly, in good faith, and at arm's length, and that there is no evidence of bad faith, fraud, collusion, tortious conduct, or any intent to impact unfairly or injure the rights or interests of other defendants, former defendants, prior settling defendants, or others;

(3) An order pursuant to California Code of Civil Procedure section 877.6(c) that all parties who are released from claims by OCWD under the Settlement Agreement are entitled to protection as settling tortfeasors to the extent provided by California Code of Civil Procedure section 877.6(c); and

(4) Entry of judgment under Federal Rule of Civil Procedure 54(b).

The Motion for Order Determining Good Faith Settlement is based on this notice of motion, the memorandum of points and authorities, the declaration

2

of Charles C. Correll, Jr., and exhibits attached thereto, the papers, records, and documents on file herein, as well as such evidence and arguments as may be presented at the time of hearing on this matter.  Based on discussions with counsel for the remaining defendants, no hearing appears necessary because the remaining defendants do not oppose this motion. This was not an intended agreement with any particular statements in the motion, but simply a non-opposition to the motion itself.

Respectfully submitted,

Dated:  January 8, 2019                   KING & SPALDING LLP


By:   /s/Charles C. Correll, Jr.
         Charles C. Correll, Jr.

CHARLES C. CORRELL, JR. (SBN 258085)
ccorrell@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:  (415) 318-1200
Facsimile:  (415) 318-1300

JEREMIAH J. ANDERSON (admitted *pro hac vice*)
jjanderson@kslaw.com
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, TX 77002
Telephone:  (713) 751-3200
Facsimile:  (713) 751-3290

*Attorneys for Defendants*
CHEVRON U.S.A. INC. and UNION OIL COMPANY OF CALIFORNIA

## **TABLE OF CONTENTS**

I.       BACKGROUND.................................................................................1

   A.   HISTORY OF MANUFACTURE AND SALE OF MTBE GASOLINE...............2

   B.   FOCUS SITE LIABILITY............................................................3

   C.   NON-FOCUS PLUME EXPOSURE ................................................6

   D.   TRIAL COURT RULINGS .........................................................7

   E.   PRIOR ORDERS FINDING SETTLEMENTS IN GOOD FAITH......................10

   F.   SETTLEMENT BETWEEN OCWD AND THE CHEVRON U.S.A.
        DEFENDANTS......................................................................11

II.      DISCUSSION ..................................................................12

   A.   CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 877.6 PERMITS THE
        COURT TO DETERMINE THE GOOD FAITH OF A SETTLEMENT REACHED
        BY ONE OF SEVERAL NAMED DEFENDANTS ........................................12

   B.   THE SETTLEMENT BETWEEN OCWD AND THE CHEVRON U.S.A.
        DEFENDANTS WAS MADE IN GOOD FAITH AND MEETS THE STANDARDS
        GOVERNING THIS DETERMINATION ....................................................14

        1.   A rough approximation of OCWD's total potential recovery ..15

        2.   The settlement is a rough approximation of the Chevron U.S.A.
             Defendants' proportionate liability............................................16

        3.   The amount paid in settlement is reasonable............................19

        4.   The allocation of proceeds among plaintiffs does not apply to
             this settlement .........................................................................20

        5.   The settlement recognizes that the Chevron U.S.A. Defendants
             may pay less in settlement than after trial................................20

        6.   The financial condition and insurance policy limits of the
             Chevron U.S.A. Defendants is not relevant to the settlement ..21

        7.   Fraud, collusion, and tortious misconduct have not played a role

in the negotiations between OCWD and the Chevron U.S.A. Defendants ...............................................................................21

C.   ANY PARTY CHALLENGING THE SETTLEMENT BEARS THE BURDEN OF PROVING LACK OF GOOD FAITH..........................................................22

D.   THE COURT SHOULD DIRECT ENTRY OF JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(B) REGARDING THE COURT'S DETERMINATION OF A GOOD FAITH SETTLEMENT................................23

III.      CONCLUSION ....................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Ford, Inc. v. Superior Court*,
  741 P.2d 124 (Cal. 1987) ............................................................................................16, 17

*Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*,
  409 F. Supp. 2d 136 (N.D.N.Y. 2005) .................................................................. 23

*AmeriPride Servs. v. Valley Indus. Servs.*,
  No. S-04-1494-LKK/JFM, 2007 U.S. Dist. LEXIS 51364 (E.D.
  Cal. July 2, 2007) ................................................................................................. 14, 23

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
  819 F.2d 1519 (9th Cir. 1987) .............................................................................. 23

*Erreca's v. Superior Court*,
  24 Cal.Rptr.2d 156 (Cal.Ct.App. 1993) ..............................................................13

*Heppler v. J. M. Peters Co.*,
  87 Cal. Rptr. 2d 497, 514 (Cal. Ct. App. 1999) ....................................15, 17, 19

*In re MTBE Prod. Liab. Litig.*,
  578 F. Supp. 2d 519 (S.D.N.Y. 2008) .................................................................7

*In re MTBE Prod. Liab. Litig.*,
  67 F. Supp. 3d 619, 634-35(S.D.N.Y. 2014) .......................................................8

*In re MTBE Prod. Liab. Litig.*,
  676 F. Supp. 2d 139 (S.D.N.Y. 2009) .................................................................8

*In re MTBE Prod. Liab. Litig.*,
  824 F. Supp. 2d 524 (S.D.N.Y. 2011) .................................................................8

*In re MTBE Prod. Liab. Litig.*,
  No. 04 Civ. 4968 (SAS), 2011 WL 5075148 (S.D.N.Y. Oct. 25,
  2011) ......................................................................................................................8

*Rutgard v. Haynes*,
  61 F. Supp. 2d 1082 (S.D. Cal. 1999).................................................................. 20

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*,
    698 P.2d 159 (Cal. 1985) .............................................................................*passim*

**Statutes**

Cal. Code Civ. Proc. § 877.6(b) .................................................................... 13

Cal. Code Civ. Proc. § 877.6(c) .................................................................... 13

Cal. Code Civ. Proc. § 877.6(d) .............................................................. 13, 22

Federal Rule of Civil Procedure 54(b) ................................................... 23, 24

**Other Authorities**

3 Cal. Civ. Proc. Before Trial, § 50.16, p. 2395 (4th ed. 2010) ............................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BACKGROUND

The Orange County Water District ("OCWD")[1] brought this case in 2003, alleging various claims against refiners of gasoline that contained the additive Methyl Tertiary Butyl Ether ("MTBE").[2]  OCWD alleges that releases of gasoline containing MTBE at gasoline service stations within its territory (the "District") have contaminated or threaten to contaminate drinking water production wells within the District.  OCWD also alleges that Tertiary Butyl Alcohol ("TBA") has contaminated or threatens to contaminate drinking water production wells within the District.[3]  The case was transferred to a multi-district litigation ("MDL") proceeding where it has been pending for 15 years.  The MDL court remanded a subset of "focus site" stations for a "Phase 1" trial.  The trial of 27 focus sites is set for January 15, 2019 in the Central District of California before Judge Cormac

---

[1] OCWD is a water manager, which is an agency that was created by the California legislature in the 1930s to help protect against over pumping and over utilization of water within Orange County.  OCWD does not supply water to customers within Orange County.  That task is performed by separate water districts within the County.

[2] MTBE is an oxygenate that was added to gasoline in Southern California by some, but not all, refiners starting in the mid-1980s.  Its use increased to include all refiners in 1992 to comply with oxygenate requirements in the Clean Air Act Amendments.  It remained in gasoline until 2003.

[3] OCWD alleges that TBA is present in the environment as a gasoline constituent, an impurity in commercial grade MTBE, or a degradation or breakdown product of MTBE.

Carney.  Defendants Chevron U.S.A. Inc. and Union Oil Company of California (together, the "Chevron U.S.A. Defendants") are defendants at eight of these sites (the "Focus Plume Sites").[4]  Declaration of Charles C. Correll Jr. ("Correll Decl.") ¶ 3.  OCWD claims that there are hundreds of additional sites at issue in the MDL for which the Chevron Defendants are potentially liable (the "Non-Focus Plume Sites").  *Id.* at ¶ 4.  The Chevron U.S.A. Defendants dispute the number of sites that remain in the MDL for which they could be potentially liable.  *Id.*  OCWD's claims related to the remaining MDL sites are subject to future discovery, motion practice, and additional trials.  *Id.*

This Motion for Good Faith Determination is brought by the Chevron U.S.A. Defendants in the above-referenced case.

### A.    History of Manufacture and Sale of MTBE Gasoline

Chevron U.S.A. Inc. ("Chevron U.S.A.") first started using MTBE as an octane booster in its gasoline in the late 1980s.  Correll Decl. ¶ 6.  After the passage of the oxygenate mandate in the Clean Air Act in 1990, Chevron U.S.A. expanded its use of MTBE and constructed an MTBE plant at the El Segundo refinery located in Southern California to comply with the federal mandate.  *Id.*  In

---

[4] The following sites of the Chevron U.S.A. Defendants are at issue in the Phase 1 trial: Chevron #9-1921; Chevron #9-5401; Chevron #9-5568; Unocal #5123; Unocal #5226; Unocal #5376; Unocal #5399; and Unocal #5792.  Correll Decl. at ¶ 5.

1999, California announced that it would ban MTBE in gasoline effective beginning in 2003. *Id.* Although this deadline was later extended to the beginning of 2004 due to a shortage of ethanol, Chevron U.S.A. stopped manufacturing and selling gasoline with MTBE in California in early 2003. *Id.*

Union Oil Company of California ("Union Oil"), operating under the retail name Unocal, also began using MTBE in some gasoline as an octane booster in the late 1980s and increased its use to comply with the Clean Air Act's oxygenate mandate in the early 1990s. Correll Decl. ¶ 7. Union Oil ceased using MTBE in gasoline, and ceased marketing gasoline in California, in 1997 when it sold its refining and retail businesses to Tosco. *Id.*

## B.    Focus Site Liability

The Phase 1 trial involves eight sites of the Chevron U.S.A. Defendants. Correll Decl. ¶ 3. At each of these sites, the Chevron U.S.A. Defendants have worked with regulators to clean up and remediate any releases or contamination and those efforts have been effective. Correll Decl. ¶ 8. Seven of the eight sites have received regulatory closure, and closure at the eighth site is imminent. *Id.* The granting of closure means that the regulators overseeing and directing remediation have determined that any remaining, low-level contamination at the site is not a threat to groundwater or the environment, the site does not pose a threat to human health, and the remaining contamination is not a nuisance. *Id.*

These findings are explicitly stated in the written closure orders.  *Id*.  This process has concluded for seven of the Chevron U.S.A. Defendants' eight sites, and the regulator has already made these findings at the remaining site that has not yet received official regulatory closure.  *Id*.  OCWD failed to object to closure at all but one of these sites, despite being notified of potential closure and having an opportunity to object.  Correll Decl. ¶ 9.  Even in the litigation, OCWD's experts have not found that additional remediation is needed at the Chevron U.S.A. Defendants' sites.  Correll Decl. ¶ 10.

OCWD claims that it seeks damages to investigate and remediate off-site MTBE at each of these sites, but the Chevron U.S.A. Defendants contend that the minimal testing performed by OCWD confirmed that the Chevron U.S.A. Defendants' sites have been successfully remediated and that there are no threats – on-site or off-site – to drinking water.  Correll Decl. ¶¶ 10-11.  For example, in 2011 OCWD retained a consultant to conduct cone penetration testing ("CPT") at two of the Chevron U.S.A. Defendants' sites.  Correll Decl. ¶ 11.  The consultant collected groundwater samples from CPT borings at locations offsite and downgradient of the two sites where OCWD believed it would find MTBE.  *Id*. But neither MTBE nor TBA were detected at any sampling location selected by OCWD or at any sampling depth (other than two trace detections at shallow depths at estimated concentrations too low for the lab even to quantify).  *Id*.  The Chevron

U.S.A. Defendants contend that these results confirm that there has been no lateral or vertical migration of MTBE or TBA, the MTBE plumes at the Chevron U.S.A. Defendants' sites have been contained and remediated, and these sites do not pose a threat to drinking water.

The Chevron U.S.A. Defendants contend that OCWD has not incurred any treatment or remediation costs related to MTBE or TBA in groundwater at the eight sites of the Chevron U.S.A. Defendants, and its experts cannot say that future remediation will be necessary or what it would cost at any of the Chevron Defendants' sites.  Correll Decl. ¶ 12.  OCWD's experts have only been able to estimate that it will incur $79,050 at each of the Chevron U.S.A. Defendants' sites to investigate and monitor MTBE and TBA in the future.  Correll Decl. ¶ 20.  But, the Chevron U.S.A. Defendants contend that even these damages fail because there is nothing to investigate or monitor as the sites have received (or will receive) closure from the regulatory authorities overseeing remediation.  Correll Decl. ¶ 8.  At each site that has (or will) receive closure, the regulators have determined that the MTBE plumes are stable or decreasing and pose no threat to water supply wells within OCWD's territory.  *Id*.  In discovery, OCWD has also identified costs that it claims it incurred to investigate MTBE contamination within its territory, but the Chevron U.S.A. Defendants contend that the majority of these past costs are litigation expenses and not expenses caused by MTBE contamination.  Correll

Decl. ¶ 19.  Further, OCWD has failed to support its alleged past costs with expert testimony or to tie those costs to any specific site or defendant.  *Id*.

Thus, the Chevron U.S.A. Defendants contend that OCWD cannot prove that it has suffered damages related to MTBE at the eight sites of the Chevron U.S.A. Defendants in the Phase 1 trial because it has not incurred treatment or remediation costs and the regulatory closure of each site means that there will be no future investigation or monitoring costs.

### C.   Non-Focus Plume Exposure

This first trial will only address eight sites of the Chevron U.S.A. Defendants.  Correll Decl. ¶ 3.  Other sites owned, operated, or branded by the Chevron U.S.A. Defendants, as well as third-party sites, remain in the MDL and will be subject to future discovery, motion practice, and trial proceedings.  Correll Decl. ¶ 4.  For many of these sites, OCWD's claims may not yet be ripe.  *Id*.  The parties dispute the number of sites for which the Chevron U.S.A. Defendants could be liable that remain in the MDL.  *Id*.

Regardless of the number of sites for which the Chevron U.S.A. Defendants could be liable that remain in the MDL, the Chevron U.S.A. Defendants contend that they have even less exposure for these sites in future litigation and trials. OCWD was able to select its "best" sites for the Phase 1 trial, and as set forth above, after 15 years of litigation, the Chevron U.S.A. Defendants contend that

OCWD has no evidence of injury or damages at the Chevron U.S.A. Defendants'
sites.  Given the amount of time it will take to complete discovery, motion practice,
and pre-trial work for the sites that remain, the Chevron U.S.A. Defendants
contend that it is even more unlikely that OCWD will be able to establish an injury
or damages claim at the remaining sites given the significant passage of time.

While the Chevron U.S.A. Defendants have potential liability for releases of
MTBE gasoline at some of the sites remaining in the MDL, OCWD has not
provided evidence specifically linking the Chevron U.S.A. Defendants' gasoline
with MTBE to these releases.  Correll Decl. ¶ 13.  And while some of these
releases of gasoline with MTBE could have resulted in plumes that may have
impacted groundwater in Orange County, OCWD has not yet developed any of its
causation or damages evidence against the Chevron U.S.A. Defendants at those
sites.  *Id.*

### D.    Trial Court Rulings

The MDL court heard a number of motions and issued the following key
rulings:

- **Statute of Limitations.**  The MDL court held that the statute of
limitations barred all of OCWD's products liability, negligence, permanent
nuisance, and permanent trespass claims at all stations where there was an MTBE
detection of five parts per billion ("ppb") or higher in a groundwater monitoring

well associated with the station before May 6, 2000.  Based on that ruling, the

MDL court adjudicated these claims in favor of the defendants at 45 sites – all but

two of the remaining trial sites.  *See In re MTBE Prod. Liab. Litig.*, 676 F. Supp.

2d 139 (S.D.N.Y. 2009) (hereinafter "2009 Order").

- **Orange County Water District Act ("OCWD Act").**  The MDL

court held that OCWD had not incurred any "remedial costs," within the meaning

of the OCWD Act, and thus dismissed the OCWD Act claims at all of the trial sites

in this case.  *See In re MTBE Prod. Liab. Litig.*, 824 F. Supp. 2d 524 (S.D.N.Y.

2011); *In re MTBE Prod. Liab. Litig.*, No. 04 Civ. 4968 (SAS), 2011 WL 5075148,

at *5 (S.D.N.Y. Oct. 25, 2011) (hereinafter, together, the "2011 Orders"); *In re

MTBE Prod. Liab. Litig.*, 67 F. Supp. 3d 619, 634-35(S.D.N.Y. 2014) (hereinafter

the "2014 Order").

- **Trespass.**  The MDL court held that OCWD does not have an

exclusive right to the drinking water in its territory.  The MDL court therefore

dismissed OCWD's trespass claims at all of the trial sites. *See In re MTBE Prod.

Liab. Litig.*, 2011 WL 5075148, at *5.

- **Continuing Nuisance.**  The MDL court held that, where a defendant

both owned the underground storage tanks ("USTs") at a gasoline station and

supplied the station with gasoline, that defendant was a "substantial factor" in

causing any MTBE contamination at the station.  *See* 2011 Orders.  OCWD,

however, sought a broader order that the contamination was interfering with OCWD's use of the water, but was not awarded summary judgment because it had not submitted sufficient evidence with its motion that contamination interfered with OCWD's use of water. Later, the MDL court granted summary judgment for defendants on continuing nuisance claims where a defendant did not own and did not operate a site. *See* 2014 Order.

This Court has issued several important rulings as well:

- This Court ruled on a motion in limine concerning OCWD's expert, Stephen Wheatcraft, permitting him to testify concerning his contaminant fate and transport model, which predicts future MTBE contamination in various locations. Jan. 31, 2017 Order Denying Defendants' Daubert Motion to Exclude the Testimony of Dr. Wheatcraft, ECF No. 242 ("Jan. 31 Order").

- This Court also agreed that OCWD make seek declaratory relief and an order of abatement at each station where OCWD proves a nuisance. Nov. 3, 2016 Order Denying Defendants' Motion for Summary Judgment at 35-37, ECF No. 149.

- This Court also granted OCWD's Motions for Reconsideration of Orders granting Defendants' Motions for Summary Judgment regarding OCWD's negligence claims and claims under the OCWD Act. The Court held that recent case law warranted reconsideration of the MDL's prior rulings on those claims.

April 10, 2018 Order Granting OCWD's Motion for Reconsideration of Orders

Regarding Negligence Claim, ECF No. 342; February 8, 2018 Order granting

OCWD's Motion for Reconsideration of Orders Regarding OCWD Act, ECF No.

331.

**E.     Prior Orders Finding Settlements in Good Faith**

On four prior occasions, defendants in this action have sought and obtained

orders finding settlements to be in good faith.  Correll Decl. ¶ 14.

*First,* 7-Eleven, a retailer that purchased and re-sold gasoline containing

MTBE (but never refined it), paid $1.7 million in a settlement agreement that was

determined to be in good faith.  *Id.  Second,* Petro Diamond was a distributor of

gasoline that did not own any stations in the area serviced by OCWD.  Its

settlement amount of $2 million related to potential liability from sales to Non-

Focus Plume Sites in the District.  *Id.*  The settlement was determined to be in

good faith.  *Id.  Third*, Lyondell Chemical, which was in bankruptcy, entered into a

settlement, which was deemed in good faith, having a cash value of slightly more

than $3.5 million.  *Id.  Fourth*, ConocoPhillips Company, Phillips 66, and Tosco

Corporation (together, "ConocoPhillips") entered into a settlement, which was

deemed in good faith, for $4.8 million.  ConocoPhillips purchased many service

stations from Union Oil and shared liability at those stations with Union Oil.  Its

settlement amount related to claims for Focus Plume Sites, as well as potential

liability for Non-Focus Plume Sites in the District.  *Id.*

The Chevron U.S.A. Defendants are also aware that defendant G&M Oil has tentatively settled its liability with OCWD for $3 million.  Correll Decl. ¶ 15. G&M Oil, a gasoline station operator, never refined gasoline with MTBE.  *Id.* G&M Oil recently filed a motion seeking an order finding its settlement to be in good faith.  *Id.*

**F.      Settlement Between OCWD and the Chevron U.S.A. Defendants**

The negotiations between the Chevron U.S.A. Defendants and OCWD for resolution of this matter were at arms-length.  Correll Decl. ¶ 16.  The Chevron U.S.A. Defendants engaged in a multi-party mediation before Judge Wagner (ret.) on October 14, 2016, but the parties did not reach a settlement.  *Id.*  Subsequently, the Chevron U.S.A. Defendants and OCWD engaged in a full-day mediation session on December 13, 2018 before Hon. A. Howard Matz (retired).  *Id.*  That mediation did not resolve the case, but Judge Matz issued a mediator proposal on December 17, 2018.  *Id.*  Both parties accepted the proposal on or about December 21 not knowing if the other side would also accept the terms of the proposal.  *Id.* The parties did not discuss or agree to any side agreements or understandings.  *Id.* The terms of the settlement as written in the agreement constitute all of the terms and understandings between the parties that form this proposed settlement.  Correll Decl. ¶ 17.  A copy of that settlement agreement is attached to the Correll

Declaration as Exhibit 1 (the "Settlement Agreement"). *Id*. Exhibit 1 is an executed copy of the Settlement Agreement.

The Settlement Agreement compromises disputed liability and accounts for the prior rulings of this Court as well as the MDL court. *Id*. The Chevron U.S.A. Defendants have agreed to pay OCWD $11 million pursuant to the Settlement Agreement. *Id*. It is the largest settlement reached to date in this case. *Id*. In reaching this amount, the parties considered the Chevron U.S.A. Defendants' potential legal defenses and OCWD's lack of evidence of damages in light of the regulatory closure at seven sites and imminent closure at the eighth. Correll Decl. ¶ 18. Thus, the upcoming trial would involve sites for which the Chevron U.S.A. Defendants have strong defenses to liability and damages. The parties also considered the possible damage claims arising from future investigation and remediation at these sites, as well as potential liability and damages at all stations in the MDL that OCWD claims received gasoline refined by the Chevron U.S.A. Defendants, even if many of these claims are not yet ripe. *Id*. The settlement amount takes into account all of these factors and others, and thus is in "the ball park" of a reasonable settlement. *Id*.

## II.   **DISCUSSION**

 **A.** **California Code of Civil Procedure Section 877.6 Permits the Court to Determine the Good Faith of a Settlement Reached by**

### One of Several Named Defendants

The issue of the good faith of a settlement is determined by a court upon motion or other application of any party, on the basis of declarations served in support of the motion, any counter declarations filed in opposition, the settlement papers, or, in the discretion of the court, upon other evidence at the hearing.  Cal. Code Civ. Proc. § 877.6(b).  The burden of proof is on the party opposing the good faith motion.  Cal. Code Civ. Proc. § 877.6(d).  Any party who opposes a motion for determination of good faith settlement must demonstrate that "the settlement is so far 'out of the ballpark'. . . as to be inconsistent with the equitable objectives of the statute."  Cal. Code Civ. Proc. § 877.6(d); *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 698 P.2d 159, 167 (Cal. 1985).  Whether the settlement is in good faith pursuant to Sections 877 and 877.6 also rests in the sound discretion of the trial court.  *See Erreca's v. Superior Court*, 24 Cal.Rptr.2d 156, 166 (Cal.Ct.App. 1993).  A determination by the court that the settlement was made in good faith bars any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.  Cal. Code Civ. Proc. § 877.6(c).

As discussed below, the settlement between OCWD and the Chevron U.S.A. Defendants was made in good faith, and the Chevron U.S.A. Defendants' request for an order determining the good faith of the parties' settlement should be granted.

**B.** **The Settlement Between OCWD and the Chevron U.S.A.**

**Defendants Was Made in Good Faith and Meets the Standards**

**Governing this Determination**

Determination of the good faith of a settlement of one of several alleged

joint tortfeasors is assessed based on a variety of factors identified in *Tech-Bilt*,

and federal courts apply the *Tech-Bilt* factors when ruling on such a motion.  *See*

*AmeriPride Servs. v. Valley Indus. Servs.*, No. S-04-1494-LKK/JFM, 2007 U.S.

Dist. LEXIS 51364, at *9 (E.D. Cal. July 2, 2007) (citing *Shawmut Bank, N.A. v.*

*Kress Assocs.*, 33 F.3d 1477, 1504 (9th Cir. 1994)).  The key consideration for the

Court is whether the proposed settlement is within the "reasonable range" of the

settling defendant's proportional share of comparative liability for the plaintiff's

injuries.  *Tech-Bilt*, 698 P.2d at 166.  The Court should balance the relevant factors

to ensure that the settlement is not "so far out of the ballpark . . . to be inconsistent

with the equitable objectives of the statute."  *Id.* at 167.

The factors considered include: (1) a rough approximation of the plaintiff's

total potential recovery; (2) a rough approximation of the settling defendant's

proportionate liability; (3) the amount paid in settlement; (4) the allocation of

settlement proceeds among plaintiffs; (5) a recognition that the settling defendant

should pay less in settlement than if it were found liable at trial; (6) the financial

condition of the settling defendant; (7) the insurance policy limits of the settling

14

defendant; and (8) the existence of fraud, collusion, or tortious misconduct on the part of the settling party aimed to injure the interests of the nonsettling defendants. *Id.* at 166-67.  Each of these factors is evaluated on the basis of the information available to the parties at the time of the settlement, and no one factor is determinative.  *Id.* at 167.  "The fundamental inquiry . . . is whether the settling defendant is paying the plaintiff an amount that is so far below defendant's proportionate share of liability as to be completely 'out of the ballpark.'"  *Heppler v. J. M. Peters Co.*, 87 Cal. Rptr. 2d 497, 514 (Cal. Ct. App. 1999) (quoting *Tech-Bilt*, 698 P.2d at 167).

      1.   <u>A rough approximation of OCWD's total potential recovery</u>

OCWD's potential total recovery is impossible to predict with any precision given the number of defendants, sites, and claims that remain in this case (both in this Court and in the MDL court).  This is compounded by the fact that as time passes, the responsible parties continue to remediate contamination at their stations, further reducing any potential future costs for OCWD.  In addition, because most of the sites that remain in the MDL are subject to further discovery and motion practice, any estimate of damages at those sites is necessarily premature.  That said, the alleged past and future damages at the eight trial sites of the Chevron U.S.A. Defendants are approximately $930,000.  Correll Decl. ¶ 21.  OCWD also seeks punitive damages.  *Id.*  OCWD has asserted larger damage

claims at three sites unrelated to the Chevron U.S.A. Defendants totaling approximately $25 million ("Large Claim Sites").  Correll Decl. ¶ 22.

There are 19 Chevron- and Union Oil-branded stations on OCWD's Non-Focus Site Plume list with ripe claims, although OCWD claims it can assert claims at other stations as well.  *Id.*  There is a possibility that one or more of these stations could lead to a large damages claim approaching the amount of the Large Claim Sites.  *Id.*  Thus, a rough approximation of OCWD's potential recovery in this case could be between the settlement amount and $30 million, although there are many unknowns at this time, especially as to the sites that remain in the MDL. *Id*.

> ### 2.  The settlement is a rough approximation of the Chevron U.S.A. Defendants' proportionate liability

"[A] good faith settlement does not call for perfect or even nearly perfect apportionment of liability."  *Abbott Ford, Inc. v. Superior Court*, 741 P.2d 124, 134 (Cal. 1987).  The law requires only that the settlement is not "grossly disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be."  *Tech-Bilt*, 698 P.2d at 167 (quoting *Torres v. Union Pacific R.R. Co.*, 203 Cal. Rptr. 825 (Cal. Ct. App. 1984)).  Again, the "fundamental inquiry . . . is whether the settling defendant is paying the plaintiff an amount that is so far below the defendant's proportionate

share of liability as to be completely 'out of the ballpark.'" *Heppler*, 87 Cal. Rptr. 2d at 514. Further, "it is quite proper for a settling defendant to pay less than his proportionate share of the anticipated damages." *Abbott Ford*, 741 P.2d at 134. A court's evaluation of a settling defendant's proportional liability is based on the evidence available at the time of settlement. *Tech-Bilt*, 698 P.2d at 167. This is particularly true in this case, where the MDL court has previously stated that "the means of allocating liability in these cases remains highly contested." *In re MTBE Prod. Liab. Litig.*, 578 F. Supp. 2d 519, 528 (S.D.N.Y. 2008). Indeed, and as that court recognized in overruling objections to an MDL settlement for refiner defendants in 2008, "there is no evidentiary basis for estimating the individual liability of each defendant in these cases, making [the objecting defendant's suggested allocation] purely hypothetical." *Id.* at 529.

Based on the limited evidentiary record, the Chevron U.S.A. Defendants' substantial defenses to OCWD's claims, and OCWD's inability to prove that it has suffered damages related to MTBE or TBA at the Chevron U.S.A. Defendants' sites, the amount the Chevron U.S.A. Defendants have agreed to pay OCWD is within the ballpark of a rough approximation of OCWD's total recovery as to the Chevron U.S.A. Defendants. With respect to the Focus Plume Sites, site-specific discovery and the evidentiary record support a finding that the settlement between OCWD and the Chevron U.S.A. Defendants is in good faith. As discussed above,

the Chevron U.S.A. Defendants have eight sites in the Phase 1 trial, and these sites have received (or will receive) closure from the regulatory authorities overseeing remediation. Correll Decl. ¶ 8. The Chevron U.S.A. Defendants contend that OCWD has not incurred any treatment or remediation costs related to MTBE at these sites, and there are no future investigation or monitoring costs given the closure status at each site. Correll Decl. ¶¶ 8, 12. Even if further investigation or monitoring is needed at the Chevron U.S.A. Defendants' sites, OCWD's experts only estimate it will cost $79,050 to conduct such activities at each site. Correll Decl. ¶ 20. OCWD also seeks $296,424.77 in past costs attributable to the Chevron U.S.A. Defendants' sites. Correll Decl. ¶ 19. As a result, damages for these eight sites combined are likely to be approximately $930,000, an amount that constitutes a tiny portion of the Chevron U.S.A. Defendants' proposed settlement amount. Correll Decl. ¶ 21.

As for the Non-Focus Plume Sites, examining the evidence available at the time of settlement, it is clear that OCWD and the Chevron U.S.A. Defendants entered into the proposed settlement in good faith. OCWD has yet to provide evidence specifically linking gasoline with MTBE manufactured by the Chevron U.S.A. Defendants to releases at Non-Focus Plume Sites, OCWD has not yet developed any of its causation or damages evidence against the Chevron U.S.A. Defendants, and OCWD has not presented evidence at this point that gasoline with

MTBE manufactured by the Chevron U.S.A. Defendants was responsible for any of the alleged impacts to groundwater identified by OCWD's experts.   Correll Decl. ¶ 13.  At bottom, the proposed settlement takes into account the Chevron U.S.A. Defendants' potential liability at the Non-Focus Plume Sites (including sites that may not yet have ripe claims) for any current or future damages, with the qualification that limited evidence has been put forth by OCWD.  On this evidentiary record, the Chevron U.S.A. Defendants are likely paying more than their share of liability for the Non-Focus Plume Sites, and the amount is clearly "in the ballpark."

### 3.   The amount paid in settlement is reasonable

The Chevron U.S.A. Defendants deny liability to OCWD and believe a jury would not find them liable in this action.  That said, uncertainty remains as to whether OCWD would prevail, and if so, whether and how much a jury might award (including punitive damages).  The Chevron U.S.A. Defendants also desire to end the continued expense associated with the defense of protracted discovery and litigation in this case.  As such, and for the reasons discussed above, the settlement is reasonable and is not "completely out of the ballpark" of the reasonable range of the Chevron U.S.A. Defendants' proportional share of comparative liability at the time of settlement.  *Heppler*, 87 Cal. Rptr. 2d at 514 (quoting *Tech-Bilt*, 698 P.2d at 167).

4.    <u>The allocation of proceeds among plaintiffs does not apply to</u>
<u>this settlement</u>

OCWD is the only party bringing this action.  As such, allocation of
settlement proceeds among multiple plaintiffs does not apply.

5.    <u>The settlement recognizes that the Chevron U.S.A. Defendants</u>
<u>may pay less in settlement than after trial</u>

"The uncertainty and expense of litigation make a settlement for less than
the total potential liability sometimes in the best interest of the plaintiff."  3 Cal.
Civ. Proc. Before Trial, § 50.16, p. 2395 (4th ed. 2010); *see Rutgard v. Haynes*, 61
F. Supp. 2d 1082, 1089 (S.D. Cal. 1999) ("[E]ven if it could be shown that
Defendant's settlement was less than the amount of a possible judgment against
him at trial, this settlement amount is still appropriate as plaintiffs avoided the risks
and costs of going to trial, where their proof against Defendant might have failed,
or the amount of damages awarded might have been markedly less.").  The parties'
settlement was reasonable at the time of settlement and reflects recognition by both
parties that litigation over the Focus Plume Sites and Non-Focus Plume Sites will
be complicated and protracted.  The settlement also reflects recognition that it is
difficult and often entirely speculative to predict what damages, if any, may be
imposed upon a defendant in this type of case, even if damages can be proved.
Moreover, recovery could be delayed and further complicated by future litigation

20

of sites that remain in the MDL, additional trials, and possible appeals from any

judgment.  Of course, the cost of the extensive litigation activities in any number

of trials could well exceed the amount of the settlement.  All of these

considerations are brought to bear in assessing whether this settlement is in a

"ballpark" range, and they support a finding that it is.

      6.    <u>The financial condition and insurance policy limits of the</u>

               <u>Chevron U.S.A. Defendants is not relevant to the settlement</u>

The amount agreed to in settlement was not limited in amount by the

potential existence of insurance or insurance policy limits.  Correll Decl. ¶ 23.  Nor

was the financial condition of the Chevron U.S.A. Defendants a factor in any way

to increase or decrease the agreed settlement amount.  *Id.*

      7.    <u>Fraud, collusion, and tortious misconduct have not played a role</u>

               <u>in the negotiations between OCWD and the Chevron U.S.A.</u>

               <u>Defendants</u>

The Settlement Agreement was reached after extensive negotiations,

including a full-day mediation session before the Hon. A. Howard Matz (Ret.) of

Bird Marella P.C.  Correll Decl. ¶ 16.  Further, the final settlement amount was the

result of a mediator's proposal issued by Judge Matz on December 17, 2018.  *Id.*

Both sides accepted Judge Matz's proposal without knowledge of whether the

other side would agree.  *Id.*  There is no fraud, collusion, or tortious misconduct in

this settlement that was aimed at injuring the interests of the non-settling defendants.  *Id.*

Finally, on January 7, 2019, the trial court, Judge Carney in the Central District of California, considered this same motion and determined that the *Tech-Bilt* factors were satisfied and that the settlement between OCWD and the Chevron U.S.A. Defendants was made in good faith and, as a result, granted the Motion for Good Faith Settlement Determination brought by the Chevron U.S.A. Defendants. See Correll Decl., ¶ 24.

### C.   Any Party Challenging the Settlement Bears the Burden of Proving Lack of Good Faith

In the event a party challenges the good faith of the Chevron U.S.A. Defendants' settlement with OCWD, that party bears the burden of proving the lack of good faith.  Cal. Code Civ. Proc. § 877.6(d).  Again, this burden is to show that the settlement "is so far 'out of the ballpark' . . . to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 698 P.2d at 167.  As summarized above, this settlement meets all of the *Tech-Bilt* factors needed to establish that it is within a "reasonable range" of the Chevron U.S.A. Defendants' potential liability given the uncertainties and unpredictability of litigation of this matter and its costs, the nature of the environmental contamination alleged and its remedial cleanup, and the other factors that apply.  The Settlement Agreement is neither fraudulent

nor collusive, but was reached in arm's-length negotiations, and is easily within the reasonable range of the Chevron U.S.A. Defendants' potential and comparative liability.  Correll Decl. ¶¶ 16-22.

**D.    The Court Should Direct Entry of Judgment Pursuant to Federal Rule of Civil Procedure 54(b) Regarding the Court's Determination of a Good Faith Settlement**

When multiple parties or claims are involved, the Court is empowered to direct entry of final judgment as to some of the claims or parties.  FED. R CIV. P. 54(b); *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1524- 1525 (9th Cir. 1987).  In order for a party to obtain protection against alleged joint tortfeasor liability, California law requires that a court determine that the party's settlement was entered into in good faith.  Therefore, the Chevron U.S.A. Defendants respectfully request that the Court enter such a judgment pursuant to Federal Rule of Civil Procedure 54(b).  There is no just reason to delay entering final judgment under Rule 54(b), which would protect the Chevron U.S.A. Defendants from any alleged joint tortfeasor claims and effectuate the terms of the Settlement Agreement.  *See AmeriPride Servs.*, 2007 U.S. Dist. LEXIS 51364, at *9, 11-12; *see also Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 140 (N.D.N.Y. 2005) ("[T]he desirability of promoting settlement of litigated claims, particularly when presented in the context of

complex litigation . . . cannot be understated.").

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Chevron U.S.A. Defendants respectfully request that the Court grant their motion for an order determining good faith settlement and enter the proposed order and judgment pursuant to Rule 54(b), such that all pending and future claims or cross-claims against Chevron U.S.A. Inc. and Union Oil Company of California for equitable comparative contribution, or comparative or partial indemnity, based on comparative fault or comparative negligence, are dismissed and forever barred.

Respectfully submitted,

Dated:  January 8, 2019                  KING & SPALDING LLP

By:  _/s/Charles C. Correll, Jr._
         Charles C. Correll, Jr.

CHARLES C. CORRELL, JR. (SBN 258085)
ccorrell@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:  (415) 318-1200

JEREMIAH J. ANDERSON (admitted *pro hac vice*)
jjanderson@kslaw.com
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, TX 77002
Telephone:  (713) 751-3200

*Attorneys for Defendants*
CHEVRON U.S.A. INC. and UNION OIL COMPANY OF CALIFORNIA

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendant Chevron U.S.A. Inc. hereby certifies that a true and correct copy of the foregoing document was served electronically through the CM-ECF (electronic case filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on January 8, 2019.

 /s/ Charles C. Correll, Jr.
CHARLES C. CORRELL, JR.