UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**In re: Methyl Tertiary Butyl Ether
("MTBE") Products Liability Litigation**

MLD NO. 1358 (SAS)
Master File No. 1:00-1898

**DECLARATION OF
CHARLES C. CORRELL, JR.
IN SUPPORT OF
DEFENDANTS CHEVRON
U.S.A. INC.'S AND UNION
OIL COMPANY OF
CALIFORNIA'S  NOTICE OF
MOTION AND MOTION FOR
ORDER DETERMINING
GOOD FAITH SETTLEMENT**

This Document Relates To:
*Orange County Water District v. Unocal
Corp., et al. 04 Civ. 4968 (SAS)*

## DECLARATION OF CHARLES C. CORRELL, JR. IN SUPPORT OF DEFENDANTS CHEVRON U.S.A. INC.'S AND UNION OIL COMPANY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

I, CHARLES C. CORRELL, JR., hereby declare and state as follows:

1.      I am an attorney licensed to practice law in the State of California, and

a partner at King & Spalding, LLP and attorney for defendants Chevron U.S.A.

Inc. and Union Oil Company of California.  I have personal knowledge of the facts

set forth below, and if called to testify, will do so truthfully and competently.

2.      I have communicated with counsel for the remaining defendants the

key terms of the settlement and each have represented to me that their clients will

not oppose Defendants' Motion for Order Determining Good Faith Settlement. Their non-opposition was not an agreement with any particular statements in the motion, but simply a non-opposition to the motion itself.

3.      The trial of 27 focus sites is set for January 15, 2019 in the Central District of California before Judge Cormac Carney.  Defendants Chevron U.S.A. Inc. and Union Oil Company of California (together, the "Chevron U.S.A. Defendants") are defendants at eight of these sites (the "Focus Plume Sites").

4.      OCWD claims that there are hundreds of additional sites at issue in the MDL for which the Chevron Defendants are potentially liable (the "Non-Focus Plume Sites").  The Chevron U.S.A. Defendants dispute the number of sites that remain in the MDL for which they could be potentially liable.  The Chevron U.S.A. Defendants contend that only 19 sites remain in the MDL for which they could be potentially liable.  OCWD's claims related to the remaining MDL sites are subject to future discovery, motion practice, and additional trials.

5.      The following sites of the Chevron U.S.A. Defendants are at issue in the Phase 1 trial: Chevron #9-1921; Chevron #9-5401; Chevron #9-5568; Unocal #5123; Unocal #5226; Unocal #5376; Unocal #5399; and Unocal #5792.

6.      Based on discovery in this and other cases, Chevron U.S.A. Inc. ("Chevron U.S.A.") first started using MTBE as an octane booster in its gasoline in the late 1980s.  After the passage of the oxygenate mandate in the Clean Air Act in

1990, Chevron U.S.A. expanded its use of MTBE and constructed an MTBE plant at the El Segundo refinery located in Southern California to comply with the federal mandate.  In 1999, California announced that it would ban MTBE in gasoline effective beginning in 2003.  Although this deadline was later extended to the beginning of 2004 due to a shortage of ethanol, Chevron U.S.A. stopped manufacturing and selling gasoline with MTBE in California in early 2003.

7.    Based on discovery in this and other cases, Union Oil Company of California ("Union Oil"), operating under the retail name Unocal, began using MTBE in some gasoline as an octane booster in the late 1980s and increased its use to comply with the Clean Air Act's oxygenate mandate in the early 1990s.  Union Oil ceased using MTBE in gasoline, and ceased marketing gasoline in California, in 1997 when it sold its refining and retail businesses to Tosco.

8.    At each of the Focus Plume Sites, the Chevron U.S.A. Defendants have worked with regulators to clean up and remediate any releases or contamination.  Seven of the eight sites have received regulatory closure, and closure at the eighth site is imminent.  The granting of closure means that the regulators overseeing and directing remediation have determined that any remaining, low-level contamination at the site is not a threat to groundwater or the environment, the site does not pose a threat to human health, and the remaining contamination is not a nuisance.  These findings are explicitly stated in the written

3

closure orders for seven of the eight sites of the Chevron U.S.A. Defendants.  The

regulator has already made these findings at the final site of the Chevron U.S.A.

Defendants that has not yet received official regulatory closure.

9.     OCWD failed to object to closure at all but one of the sites of the

Chevron U.S.A. Defendants, despite being notified of potential closure and having

an opportunity to object.

10.     OCWD's experts have not found that additional remediation is needed

at the Chevron U.S.A. Defendants' sites.

11.     The Chevron U.S.A. Defendants contend that testing performed by

OCWD confirmed that the Chevron U.S.A. Defendants' sites have been

successfully remediated and that there are no threats – on-site or off-site – to

drinking water.  For example, in 2011 OCWD retained a consultant to conduct

cone penetration testing ("CPT") at two of the Chevron U.S.A. Defendants' sites.

The consultant collected groundwater samples from CPT borings at locations

offsite and downgradient of the two sites where OCWD believed it would find

MTBE.  But neither MTBE nor TBA were detected at any sampling location

selected by OCWD or at any sampling depth (other than two trace detections at

shallow depths at estimated concentrations too low for the lab even to quantify).

12.     The Chevron U.S.A. Defendants contend that OCWD has not incurred

any treatment or remediation costs related to MTBE or TBA in groundwater at the

Focus Plume Sites, and its experts cannot say that future remediation will be necessary or what it would cost at any of the Focus Plume Sites.

13.    OCWD has not provided evidence specifically linking the Chevron U.S.A. Defendants' gasoline with MTBE to releases from sites remaining in the MDL.  OCWD has also not yet developed any of its causation or damages evidence against the Chevron U.S.A. Defendants at sites that remain in the MDL.

14.    Based on the filings in this case and my experience herein, on four prior occasions, defendants in this action have sought and obtained orders finding settlements to be in good faith.  First, 7-Eleven, a retailer that purchased and re-sold gasoline containing MTBE (but never refined it), paid $1.7 million in a settlement agreement.  Second, Petro Diamond, a distributor of gasoline that did not own any stations in the area serviced by OCWD, settled for $2 million related to potential liability from sales to sites in OCWD's territory.  Third, Lyondell Chemical, which was in bankruptcy, entered into a settlement having a cash value of slightly more than $3.5 million.   Fourth, ConocoPhillips Company, Phillips 66, and Tosco Corporation (together, "ConocoPhillips") entered into a settlement for $4.8 million.  ConocoPhillips purchased many service stations from Union Oil and shared liability at those stations with Union Oil.  Its settlement amount related to claims for Focus Plume Sites, as well as potential liability for Non-Focus Plume Sites in the District.  All four of these settlements were deemed to be in good faith

by this Court and/or the MDL court.

15.     The Chevron U.S.A. Defendants are aware that defendant G&M Oil has tentatively settled its liability with OCWD for $3 million.  G&M Oil, a gasoline station operator, never refined gasoline with MTBE.  Based on recent filings in this case, G&M Oil has filed a motion requesting that the Court deem its settlement to be in good faith.

16.     The Chevron U.S.A. Defendants engaged in a multi-party mediation before Judge Wagner (ret.) on October 14, 2016, but the parties did not reach a settlement.  Subsequently, the Chevron U.S.A. Defendants and OCWD engaged in a full-day mediation session on December 13, 2018 before Hon. A. Howard Matz (ret.).  That mediation did not resolve the case, but Judge Matz issued a mediator proposal on December 17, 2018.  Both parties accepted the proposal on or about December 21 not knowing if the other side would also accept the terms of the proposal.  The parties did not discuss or agree to any side agreements or understandings.  There is no fraud, collusion, or tortious misconduct in this settlement that was aimed at injuring the interests of the non-settling defendants.

17.     The terms of the settlement as written in the agreement constitute all of the terms and understandings between the parties that form this proposed settlement.  Attached hereto as Exhibit 1 is a true and correct copy of the executed Settlement Agreement between OCWD and the Chevron U.S.A. Defendants (the

"Settlement Agreement"). The Settlement Agreement compromises disputed liability and accounts for the prior rulings of this Court as well as the MDL court. The Chevron U.S.A. Defendants have agreed to pay OCWD $11 million pursuant to the Settlement Agreement. It is the largest settlement reached to date in this case.

18.     In reaching this amount, the parties considered the Chevron U.S.A. Defendants' potential legal defenses and OCWD's lack of evidence of damages in light of the regulatory closure at seven sites and imminent closure at the eighth. The parties also considered the possible damage claims arising from future investigation and remediation at these sites, as well as potential liability and damages at all stations in the MDL that OCWD claims received gasoline refined by the Chevron U.S.A. Defendants, even if many of these claims are not yet ripe.

19.     OCWD seeks $296,424.77 in past costs attributable to the Chevron U.S.A. Defendants. OCWD claims it incurred costs to investigate MTBE contamination within its territory, but the Chevron U.S.A. Defendants contend that the majority of these past costs are litigation expenses and not expenses caused by MTBE contamination. Further, the Chevron U.S.A. Defendants contend that OCWD has failed to support its alleged past costs with expert testimony or to tie those costs to any specific site or defendant.

20.     OCWD also seeks damages to further investigate and/or monitor the

7

eight sites of the Chevron U.S.A. Defendants. Its experts estimate it will cost $79,050 to conduct such activities at each site, for a total of $632,400.

21. The alleged past and future damages at the eight trial sites of the Chevron U.S.A. Defendants are approximately $930,000 ($296,424.77 + $632,400). OCWD also seeks punitive damages.

22. OCWD has asserted larger damage claims at three sites unrelated to the Chevron U.S.A. Defendants totaling approximately $25 million ("Large Claim Sites"). There are 19 Chevron- and Union Oil-branded stations on OCWD's Non-Focus Site plume list with ripe claims, although OCWD claims it can assert claims at other stations as well. There is a possibility that one or more of these stations could lead to a large damages claim approaching the amount of the Large Claim Sites. Thus, a rough approximation of OCWD's potential recovery in this case could be between the settlement amount and $30 million, although there are many unknowns at this time, especially as to the sites that remain in the MDL.

23. The amount agreed to in settlement was not limited in amount by the potential existence of insurance or insurance policy limits. Nor was the financial condition of the Chevron U.S.A. Defendants a factor in any way to increase or decrease the agreed settlement amount.

24. On January 7, 2019, the trial court, Judge Carney in the Central District of California, considered this same motion and determined that the *Tech-*

*Bilt* factors were satisfied and that the settlement between OCWD and the Chevron U.S.A. Defendants was made in good faith and, as a result, granted the Motion for Good Faith Settlement Determination brought by the Chevron U.S.A. Defendants. A true and correct copy of the trial court's order is attached hereto as Exhibit 2.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this 8th day of January, 2019 in San Francisco, CA.


Respectfully submitted,


 /s/ Charles C. Correll, Jr.
CHARLES C. CORRELL, JR.

## **CERTIFICATE OF SERVICE**

The undersigned counsel for Defendant Chevron U.S.A. Inc. hereby certifies that a true and correct copy of the foregoing document was served electronically through the CM-ECF (electronic case filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on January 8, 2019.

 /s/ Charles C. Correll, Jr.
CHARLES C. CORRELL, JR.