# Exhibit A

TIMOTHY R. MACDONALD (*Admitted Pro Hac Vice*)
timothy.macdonald@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
Telephone: 303.863.1000
Facsimile: 303.832.0428

MATTHEW T. HEARTNEY (State Bar No. 123516)
matthew.heartney@arnoldporter.com
STEPHANIE B. WEIRICK (State Bar No. 204790)
stephanie.weirick@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

*Attorneys for Atlantic Richfield Company, BP West Coast*
*Products LLC, and BP Products North America Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ORANGE COUNTY WATER DISTRICT,<br><br>              Plaintiff,<br><br>   v.<br><br>UNOCAL CORPORATION, *et al.*,<br><br>              Defendants. | Case No. 8:03-cv-01742-CJC (DFMx)<br>*Assigned to: Hon. Cormac J. Carney*<br><br>**DEFENDANTS ATLANTIC RICHFIELD COMPANY'S, BP WEST COAST PRODUCTS LLC'S, BP PRODUCTS NORTH AMERICA INC.'S NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Declaration of Matthew T. Heartney submitted concurrently herewith*]<br><br>Date: February 25, 2019<br>Time: 1:30 p.m.<br>Courtroom: 7C<br>Judge: Hon. Cormac J. Carney |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Monday, February 25, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7C of the above-entitled court, located at 350 W. 1st Street, Los Angeles, California, 90012, Defendants Atlantic Richfield Company, BP West Coast Products LLC, and BP Products North America Inc. (collectively, "BP") will bring a Motion for Order Determining Good Faith Settlement, pursuant to California Code of Civil Procedure section 877.6, and respectfully request issuance of the following orders:

(1) An order determining that the Settlement Agreement, Exhibit 1 to the accompanying Declaration of Matthew T. Heartney, between Plaintiff Orange County Water District ("OCWD") on the one hand and BP on the other hand was entered into in good faith, as defined under California Code of Civil Procedure sections 877 and 877.6;

(2) An order determining that the negotiations of the Settlement Agreement between OCWD and BP were conducted fairly, in good faith, and at arm's length, and that there is no evidence of bad faith, fraud, collusion, tortious conduct, or any intent to impact unfairly or injure the rights or interests of other defendants, former defendants, prior settling defendants, or others;

(3) An order pursuant to California Code of Civil Procedure section 877.6(c) that all parties who are released from claims by OCWD under the Settlement Agreement are entitled to protection as settling tortfeasors to the extent provided by California Code of Civil Procedure section 877.6(c); and

(4) Entry of judgment pursuant to Federal Rule of Civil Procedure 54(b).

This Motion is based on the notice of motion; the memorandum of points and authorities; the declaration of Matthew T. Heartney, and exhibits attached thereto; the papers, records, and documents on file herein; as well as such evidence and arguments as may be presented at the time of hearing on this matter.

This motion is made following conference of counsel pursuant to L.R. 7-3. I have communicated with counsel for defendants ExxonMobil and Shell, including informing them of the key terms of BP's settlement with OCWD, and each have represented to me that their clients do not oppose BP's motion for good faith approval of its settlement. Nor does OCWD oppose the filing of this motion.

Respectfully submitted,

Dated: January 23, 2019

ARNOLD & PORTER KAYE SCHOLER LLP

By: _____*/s/ Matthew T. Heartney*_____
    Matthew T. Heartney
    Attorneys for Defendants
ATLANTIC RICHFIELD COMPANY,
BP WEST COAST PRODUCTS LLC,
AND BP PRODUCTS NORTH
AMERICA INC.

Case 1:00-cv-01898-VSB-VF Document 4543-1 Filed 01/23/19 Page 5 of 26
Case 8:03-cv-01742-CJC-DFM Document 603 Filed 01/28/19 Page 4 of 25 Page ID
#:27076

# TABLE OF CONTENTS

**Page**

I.    CASE BACKGROUND.................................................................................1

    A.   BP's Manufacture And Sale of MTBE Gasoline.....................................2

    B.   OCWD's Claims At BP's Focus Sites. .....................................................2

    C.   OCWD's Claims At BP's Non-Focus Sites...............................................4

    D.   MDL and Trial Court Rulings..................................................................5

    E.   Prior Orders Finding Settlements in Good Faith. ...................................7

    F.   Events Leading Up To The Proposed Settlement. ...................................8

II.   DISCUSSION............................................................................................9

    A.   Code of Civil Procedure Section 877.6 Permits the Court to
       Determine the Good Faith of a Settlement Reached by One of
       Several Named Defendants. ......................................................................9

    B.   The Settlement Between OCWD and BP Was Made in Good Faith
       and Meets the Standards Governing this Determination. .....................10

       1.   A rough approximation of OCWD's total potential recovery......11

       2.   The settlement is a rough approximation of BP's proportionate
          liability. .................................................................................12

       3.   The amount paid in settlement is reasonable...............................14

       4.   The allocation of proceeds among plaintiffs does not apply to
          this settlement. .......................................................................14

       5.   The settlement recognizes that BP may pay less in settlement
          than after trial.........................................................................14

       6.   The financial condition and insurance policy limits of BP is
          not relevant to the settlement..................................................15

       7.   Fraud, collusion, and tortious misconduct have not played a
          role in the negotiations between OCWD and BP. ........................15

BP'S NOTICE OF MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case 1:00-cv-01898-VSB-VF Document 4543-1 Filed 01/23/19 Page 6 of 26
Case 8:03-cv-01742-CJC-DFM Document 803-1 Filed 01/28/19 Page 5 of 29 Page ID
#:27077

C. Any Party Challenging the Settlement Bears the Burden of Proving
Lack of Good Faith. ..................................................................15

D. The Court Should Direct Entry of Judgment Pursuant to Federal
Rule of Civil Procedure 54(b) Regarding the Court's Determination
of a Good Faith Settlement. ......................................................16

III. CONCLUSION ..................................................................17

Case 1:00-cv-01898-VSB-VF Document 4543-1 Filed 01/23/19 Page 7 of 26
Case 8:03-cv-01742-CJC-DFM Document 603 Filed 01/28/19 Page 6 of 25 Page ID
#:27078

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agway, Inc. Emps.' 401(k) Thrift Inv. Plan v. Magnuson,*
   409 F. Supp. 2d 136 (N.D.N.Y. 2005) ................................................................ 16

*Abbott Ford, Inc. v. Superior Court,*
   43 Cal. 3d 858, 741 P.2d 124 (1987) ................................................................. 12

*AmeriPride Servs. v. Valley Indus. Servs.,*
   Nos. CIV. S-00-113-LKK JFM, S-04-1494-LKK/JFM, 2007 U.S.
   Dist. LEXIS 51364 (E.D. Cal. July 2, 2007) ............................................ 10, 16

*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.,*
   819 F.2d 1519 (9th Cir. 1987) .......................................................................... 16

*Erreca's v. Superior Court,*
   19 Cal. App. 4th 1475, 24 Cal. Rptr. 2d 156 (1993) ........................................ 9

*Heppler v. J.M. Peters Co.,*
   73 Cal. App. 4th 1265, 87 Cal. Rptr. 2d 497 (1999) ............................ 11, 12, 14

*In re MTBE Prod. Liab. Litig.,*
   279 F.R.D. 131 (S.D.N.Y. 2011) ........................................................................ 6

*In re MTBE Prod. Liab. Litig.,*
   578 F. Supp. 2d 519 (S.D.N.Y. 2008) ........................................................ 12, 13

*In re MTBE Prod. Liab. Litig.,*
   67 F. Supp. 3d 619 (S.D.N.Y. 2014) ................................................................. 6

*In re MTBE Prod. Liab. Litig.,*
   676 F. Supp. 2d 139 (S.D.N.Y. 2009) ............................................................... 5

*In re MTBE Prod. Liab. Litig.,*
   824 F. Supp. 2d 524 (S.D.N.Y. 2011) ............................................................... 6

*Rutgard v. Haynes,*
   61 F. Supp. 2d 1082 (S.D. Cal. 1999) .............................................................. 14

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.,*
   38 Cal. 3d 488, 698 P.2d 159 (1985)...........................................................*passim*

Case 1:00-cv-01898-VSB-VF Document 4543-1 Filed 01/23/19 Page 8 of 26
Case 8:03-cv-01742-CJC-DFM Document 603 Filed 01/23/19 Page 7 of 25 Page ID
#:27079

**Statutes**

Federal Rule of Civil Procedure 54(b) ................................................................. 16, 17

California Code of Civil Procedure Section 877 ............................................................ 9

California Code of Civil Procedure Section 877.6 ......................................................... 9

California Code of Civil Procedure Section 877.6(b) .................................................... 9

California Code of Civil Procedure Section 877.6(c) .................................................. 10

California Code of Civil Procedure Section 877.6(d) ............................................. 9, 15

Clean Air Act ................................................................................................................. 2

Orange County Water District Act ...................................................................... 4, 5, 6


**Other Authorities**

3 Cal. Civ. Proc. Before Trial (CEB) § 50.16 (2019) ........................................ 14

BP'S NOTICE OF MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. CASE BACKGROUND

Plaintiff OCWD brought this case in 2003 in California Superior Court, alleging claims against refiners and marketers of gasoline that contained the additive methyl tertiary butyl ether ("MTBE"). OCWD alleges that releases of gasoline containing MTBE at service stations within its territory have contaminated or threaten to contaminate drinking water supplies and water production wells. OCWD also alleges that tertiary butyl alcohol ("TBA") has contaminated or threatens to contaminate drinking water supplies and water production wells.

The case was removed to the U.S. District Court for the Central District of California and then transferred to a multi-district litigation proceeding ("MDL"), where it has been pending for 15 years. The MDL court remanded a subset of "focus plume site" stations for a Phase I trial. Prior to BP's settlement, this trial was scheduled to address a total of 18 focus sites, and was to begin on January 15, 2019 in the Central District of California. BP was the owner or operator at six of these sites and was identified by regulators as the responsible party, and OCWD contends that BP was also responsible for two additional sites owned and operated by Thrifty Oil Company ("Thrifty"). Declaration of Matthew T. Heartney In Support Of Motion For Order Determining Good Faith Settlement ("Heartney Decl.") ¶ 4. Together, these eight sites are referred to as BP's "Focus Sites."[1] In addition, OCWD claims that BP is responsible for 34 or more additional sites that have not been remanded to this Court (the "Non-Focus Sites"). *Id.* at ¶ 5. OCWD's claims related to the Non-Focus Plume Sites are subject to future discovery, motion practice, and additional trials. *Id.*

BP's settlement was announced shortly before the Phase I trial was to begin, and, on January 14, 2019, the Court severed OCWD's claims against BP from that

[1] BP's Focus Sites consist of: ARCO 1887, ARCO 1912, ARCO 1905, ARCO 3085, ARCO 6036, ARCO 6131, Thrifty 368, and Thrifty 383. Heartney Decl. ¶ 4.

Case 1:00-cv-01898-VSB-VF Document 4548 Filed 01/23/19 Page 10 of 26
Case 8:03-cv-01742-CJC-DFM Document 605 Filed 05/23/13 Page 9 of 25 Page ID
#:27081

1  trial to allow OCWD's claims against the remaining defendants – ExxonMobil and

2  Shell – to proceed to trial as scheduled.  Thereafter, ExxonMobil and Shell also

3  announced a settlement of OCWD's lawsuit.

4       **A.**      **BP's Manufacture And Sale of MTBE Gasoline.**

5       Atlantic Richfield Company ("Atlantic Richfield") first used MTBE in

6  gasoline sold in California in August 1989.  Heartney Decl. ¶ 9.  After the passage

7  of the oxygenate mandate in the Clean Air Act in 1990, Atlantic Richfield complied

8  with this federal mandate by adding MTBE to its gasoline at the times, and in the

9  amounts, required by federal law.  *Id.*  In 1999, California announced that it would

10  ban MTBE in gasoline, effective beginning in 2003.  *Id.*

11       In April 2000, Atlantic Richfield was acquired by BP and, subsequently,

12  Atlantic Richfield transferred its West Coast retail and refining assets to an affiliate,

13  BP West Coast Products LLC ("BP West Coast").  Heartney Decl. ¶ 6.  Although

14  California extended the deadline for use of MTBE until the beginning of 2004, BP

15  ceased manufacturing and selling gasoline with MTBE in California in January

16  2003.  *Id*.

17       **B.**      **OCWD's Claims At BP's Focus Sites.**

18       At the six sites owned or operated by BP, BP and its successors, together with

19  the professional remediation consultants retained for this purpose, have worked

20  proactively under the close scrutiny and oversight of State and local regulators to

21  carry out the remedial actions needed to investigate, contain, and clean up the

22  complained of MTBE releases, and these efforts have proven successful.  Heartney

23  Decl. ¶ 7.  At all such sites, initial concentrations of MTBE and TBA have been

24  contained and reduced to levels that pose no remaining threat to the deeper aquifers

25  from which Orange County water production wells draw water supplied to

26  consumers.  *Id.*  Two of the sites have received full regulatory closure and, at the

27  remaining sites, cleanup efforts are far advanced, with several of the sites either

28  close to obtaining closure in short order or under pre-closure monitoring programs.

*Id.* Where regulatory closure is granted, the State and local regulators overseeing the site have determined that any remaining contamination attributable to the site is not a threat to groundwater or production wells and that the site does not constitute a nuisance. *Id.* None of the six sites pose any credible threat to drinking water supplies or production wells in Orange County.

At the two Thrifty sites, the needed remedial actions have been carried out by Thrifty under the supervision of State and local regulators, without involvement by BP.[2] Heartney Decl. ¶ 8. Both sites, moreover, have received regulatory closure, and at one of them (Thrifty 368), OCWD's expert has withdrawn his prior opinions that MTBE and TBA were not adequately delineated and that additional investigation and/or remedial work is required; instead, he acknowledges that no further work is required there. *Id.*

OCWD's lawsuit seeks damages and other relief to conduct additional investigation and/or remediation at BP's Focus Sites, but OCWD's own efforts to support its claims by retaining a consultant to conduct cone penetration testing ("CPT") at four of these sites shows just the opposite. *See* Heartney Decl. ¶ 9. The consultant, a sophisticated hydrogeological firm, advanced CPT borings down to nearly 100 feet below ground surface at numerous locations offsite and downgradient of these sites at which OCWD believed it would find MTBE and TBA, and collected water samples. *Id.* Rather than locating "escaped" contamination, OCWD's own sampling produced MTBE and TBA results that were either non-detect at all depths sampled or, in a few instances, identified low detections of MTBE or TBA falling well below any level justifying the extensive investigation and/or cleanup efforts sought by OCWD. *Id.*

---

[2] Because BP had no connection to the Thrifty sites when MTBE was released there, and because Thrifty alone has been responsible for conducting the needed remedial actions at these sites under the regulators' oversight, BP contends that OCWD's claims at these sites lack merit. Heartney Decl. ¶ 8.

1  Today, OCWD's experts acknowledge that they have been unable to locate
2  MTBE or TBA concentrations at seven of the eight BP Focus Sites sufficient to
3  enable them to offer opinions that additional cleanup or remediation work will be
4  required there. Heartney Decl. ¶ 10. Instead, they opine only that OCWD should
5  obtain payments of $79,050 for each of these seven sites to fund continued
6  investigation work. *Id.* At the single remaining site, OCWD's experts propose a
7  $3.14 million program for installation of a groundwater extraction system but, as
8  explained by BP's hydrogeology expert, OCWD's justification for this program
9  rests entirely on its detection of MTBE and TBA at levels of 270 parts per billion
10 ("ppb") and 46 ppb at a single depth in one of the 18 CPT borings conducted at the
11 site. *Id.* All other sampling at the remaining 17 CPT borings produced non-detect
12 results at all depths sampled or, in a few instances, de minimis detections of MTBE
13 or TBA. *Id.* As BP's experts will testify, these results in no way support
14 conducting further cleanup or remediation steps at this site. *Id.*

15  In discovery, OCWD also has identified some $6.5 million in past costs and
16 expenditures that it claims were incurred to investigate MTBE and TBA
17 contamination in its territory, which it seeks to recover from defendants. Heartney
18 Decl. ¶ 11. BP contends that a large majority of these costs represent litigation
19 expenses, and not costs or expenses incurred in response to any alleged
20 contamination or that could be appropriately awarded under the OCWD Act. *Id.*
21 Moreover, OCWD has failed to support its alleged past costs with expert testimony
22 or to tie those costs to any specific site or defendant. *Id.*

23 **C. OCWD's Claims At BP's Non-Focus Sites.**

24  The Phase I trial was to involve BP's eight Focus Sites and nine sites at which
25 OCWD asserts claims against ExxonMobil or Shell. Additional sites owned,
26 operated, or attributed to BP, as well as all other sites attributed to ExxonMobil,
27 Shell, or other parties, remain in the MDL and would be subject to future discovery,
28 motion practice, and trial proceedings. Heartney Decl. ¶ 5. Based on past MDL

- 4 -  Case No. 8:03-cv-01742-CJC (DFMx)

BP'S NOTICE OF MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

proceedings, BP understands that OCWD is asserting claims against BP at 19

additional ARCO-brand sites owned or operated by BP, as well as 15 Thrifty sites,

that remain in the MDL. *Id.* At certain of the sites, OCWD's claims do not yet

appear to be ripe. *Id.* at ¶ 15.

BP believes that OCWD's claims based on sites remaining in the MDL

present even less exposure for it in any future litigation and trials. Heartney Decl. ¶

12. OCWD was able to select its "best" sites for the Phase I trial, and, after 15 years

of litigation, BP is aware of no credible evidence that OCWD has suffered any

cognizable injury or damages attributable to any of these sites. *Id.* Moreover, given

the amount of time it will take to complete discovery, motion practice, and pre-trial

work for the sites that remain, BP considers it unlikely that OCWD could succeed in

developing the panoply of evidence of violation, causation, and damages required to

pursue claims at these sites, particularly in light of the passage of time since MTBE

was removed from gasoline in 2003. *Id.*

### D. MDL and Trial Court Rulings.

The MDL court heard a number of dispositive motions filed by the parties,

and issued the following rulings:

- **Statute of Limitations.** The MDL court held that the statute of

limitations barred all of OCWD's products liability, negligence, permanent

nuisance, and permanent trespass claims at all stations where there was an MTBE

detection of five ppb or higher in a groundwater monitoring well associated with the

station before May 6, 2000. Based on that ruling, the MDL court adjudicated these

claims in favor of the defendants at 45 sites – including all of the remaining trial

sites. *See In re MTBE Prod. Liab. Litig.*, 676 F. Supp. 2d 139, 149–51, 154

(S.D.N.Y. 2009).

- **Orange County Water District Act ("OCWD Act").** The MDL court

held that OCWD had not incurred any "remedial costs" within the meaning of the

OCWD Act, and thus dismissed the OCWD Act claims at all of the trial sites in this

case.  *See In re MTBE Prod. Liab. Litig.*, 824 F. Supp. 2d 524, 535 (S.D.N.Y. 2011); *In re MTBE Prod. Liab. Litig.*, 279 F.R.D. 131, 138 (S.D.N.Y. 2011); *In re MTBE Prod. Liab. Litig.*, 67 F. Supp. 3d 619, 634–35 (S.D.N.Y. 2014).

- **Trespass.**  The MDL court held that OCWD does not have an exclusive right to the drinking water in its territory.  The MDL court therefore dismissed OCWD's trespass claims at all of the trial sites.  *See In re MTBE Prod. Liab. Litig.*, 279 F.R.D. at 139.

- **Continuing Nuisance.**  The MDL court held that, where a defendant both owned the underground storage tanks at a gasoline station and supplied the station with gasoline, that defendant was a "substantial factor" in causing any MTBE contamination at the station.  *See* In re MTBE Prod. Liab. Litig., 824 F. Supp. 2d at 542.  OCWD, however, sought a broader order that the contamination was interfering with OCWD's use of the water, but failed to receive summary judgment because it offered no evidence that such contamination had interfered with its use of water.  Later, the MDL court granted summary judgment for defendants on continuing nuisance claims where a defendant did not own and did not operate a site.  *See In re MTBE Prod. Liab. Litig.*, 67 F. Supp. 3d at 632–33.

This Court has issued several important rulings as well:

- This Court ruled on a motion in limine concerning OCWD's expert, Stephen Wheatcraft, permitting him to testify regarding his contaminant fate and transport model.  Order Denying Defs.' Daubert Mot. to Exclude Test. of Dr. Wheatcraft, Jan. 31, 2017, ECF No. 243.

- This Court also agreed that OCWD may seek declaratory relief and an order of abatement at each station where OCWD proves a nuisance.  Order Denying Defs.' Mot. for Summ. J. at 35–37, Nov. 3, 2016, ECF No. 149.

- In addition, this Court granted OCWD's Motions for Reconsideration of Orders granting Defendants' Motions for Summary Judgment regarding OCWD's negligence claims and claims under the OCWD Act.  The Court held that recent

1  case law warranted reconsideration of the MDL's prior rulings on those claims.

2  Order Granting OCWD's Mot. for Recons. of Orders Re Negligence Claim, Apr. 10,

3  2018 ECF No. 342; Order Granting OCWD's Mot. for Recons. of Orders Re

4  OCWD Act, Feb. 8, 2018, ECF No. 331.

5        **E.**    **Prior Orders Finding Settlements in Good Faith.**

6        Since October 2017, this Court has been presented with three multi-million

7  dollar settlements between OCWD and other defendants in this action, and has

8  found each to be in good faith. BP's settlement with OCWD has been the largest

9  settlement to date in this case, and BP believes that the good faith approvals reached

10  in prior settlements provide an important benchmark in evaluating whether its own

11  settlement should be found to be in good faith.

12        *First,* in 2017, defendants ConocoPhillips Company, Tosco Corporation, and

13  Phillips 66 ("Conoco") reached a $4.8 million settlement of OCWD's claims

14  addressing two Phase I trial sites and what Conoco's counsel identified as some two

15  dozen additional sites remaining in the MDL. Heartney Decl. ¶ 21; *see* Declaration

16  of John J. Lyons In Support Of Motion For Good Faith Approval, ECF No. 294-1,

17  ¶ 17. No defendant objected to Conoco's motion for good faith approval and, after

18  review, the Court granted approval. Heartney Decl. ¶ 21.

19        *Second,* in December 2018, defendants G&M Oil Company, Inc. and G&M

20  Oil Company, LLC ("G&M"), a marketing company that never produced MTBE

21  gasoline, reached a $3 million settlement of OCWD's claims addressing two Phase I

22  trial sites and some 14 additional sites in the MDL. Heartney Decl. ¶ 21. Again, no

23  defendant objected to G&M's motion for good faith approval and, after review, the

24  Court granted approval. *Id.*

25        *Third*, in January 2019, defendants Chevron U.S.A. Inc. and Union Oil

26  Company of California ("Chevron") reached an $11 million settlement of OCWD's

27  claims addressing eight Phase I trial sites and what Chevron's counsel identified as

28  at least 19 additional sites remaining in the MDL. Heartney Decl. ¶ 21. No

Case 8:03-cv-01898-VSB-VF Document 8045 Filed 01/23/19 Page 16 of 26
Case 8:03-cv-01742-CJC-DFMx Document 604 Filed 01/28/19 Page 19 of Page ID
#:27087

defendant objected to Chevron's motion for good faith approval and, after review, the Court granted approval. *Id.*

During the MDL proceedings, three other defendants obtained orders finding their settlements to be in good faith, consisting of a $1.7 million settlement by 7-Eleven, a $2 million settlement by Petro Diamond, and a $3.5 million settlement by Lyondell Chemical. Heartney Decl. ¶ 21. Both 7-Eleven and Petro Diamond were sellers of MTBE gasoline but did not produce such gasoline, and Lyondell, which had been a major producer of neat MTBE, was in bankruptcy when its settlement was reached. *Id.*

Since BP announced its settlement, the two remaining defendants in the Phase I trial, ExxonMobil and Shell, reached a settlement in principle with OCWD, which involves a joint settlement payment of $12.5 million. The Court will subsequently be called upon to review this settlement.

## F.     Events Leading Up To The Proposed Settlement.

The settlement negotiations between BP and OCWD were at arm's length and vigorously contested. Heartney Decl. ¶ 13. In October 2018, these parties participated in a full-day mediation before Magistrate Judge Edward Infante, but did not reach a settlement. *Id.* at ¶ 14. Further discussions between Judge Infante and both parties continued thereafter and, in December 2018, the parties traded proposals back and forth through Judge Infante but again did not reach a settlement. *Id.* The parties concluded the proposed settlement on Sunday, January 13, 2019 after conducting further negotiations over the preceding ten days. *Id.*

The terms set forth in the written agreement executed by the parties constitute all of the terms and understandings which make up this settlement. Heartney Decl. ¶ 2. A copy of that agreement is attached to the Heartney Declaration as Exhibit 1 ("Settlement Agreement"). *Id.* At no time during their negotiations did the parties discuss or agree to side agreements or understandings not set forth in that document. *Id.*

1       The Settlement Agreement compromises disputed liability and accounts for

2 the prior rulings of this Court as well as the MDL court.  BP has agreed to pay

3 OCWD the sum of $14 million in full satisfaction of all claims asserted against it in

4 this matter.  Heartney Decl. ¶ 15.  In reaching this amount, the parties considered

5 BP's potential legal defenses and the strengths and weaknesses of OCWD's

6 evidence in support of its claims, as discussed above.  *Id.*  The parties also

7 considered OCWD's possible damage claims arising from future investigation and

8 remediation activities at these sites, as well as the potential liability and damages at

9 all stations in the MDL as to which OCWD asserts claims against BP, even if certain

10 of these claims are not yet ripe.  *Id.*  The settlement amount takes into account all of

11 these factors and others, and thus is in "the ballpark" of a reasonable settlement.  *Id.*

12 **II.**     **DISCUSSION**

13       **A.**     **Code of Civil Procedure Section 877.6 Permits the Court to**

14               **Determine the Good Faith of a Settlement Reached by One of**

15               **Several Named Defendants.**

16       The issue of the good faith of a settlement is determined by a court upon

17 motion or other application of any party, on the basis of declarations served in

18 support of the motion, any counter declarations filed in opposition, the settlement

19 papers, or, in the discretion of the court, upon other evidence at the hearing.  Cal.

20 Code Civ. Proc. § 877.6(b).  The burden of proof is on the party opposing the good

21 faith motion.  *Id.* § 877.6(d).  Any party who opposes a motion for determination of

22 good faith settlement must demonstrate that "the settlement is so far 'out of the

23 ballpark'. . . as to be inconsistent with the equitable objectives of the statute."  *Id.*;

24 *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499–500, 698 P.2d

25 159 (1985).  Whether the settlement is in good faith pursuant to Sections 877 and

26 877.6 also rests in the sound discretion of the trial court.  *See Erreca's v. Superior*

27 *Court*, 19 Cal. App. 4th 1475, 1489, 24 Cal. Rptr. 2d 156 (1993).  A determination

28 by the court that the settlement was made in good faith bars any other joint

tortfeasor from any further claims against the settling tortfeasor for equitable contribution or partial or comparative indemnity or based upon on comparative negligence or comparative fault.  Cal. Code Civ. Proc. § 877.6(c).

As discussed below, the settlement between OCWD and BP was made in good faith, and BP's request for an order determining the good faith of the settlement should be granted.

### B.  The Settlement Between OCWD and BP Was Made in Good Faith and Meets the Standards Governing this Determination.

Determination of the good faith of a settlement of one of several alleged joint tortfeasors is assessed based on a variety of factors identified in *Tech-Bilt*, and federal courts apply the *Tech-Bilt* factors when ruling on such a motion.  *See AmeriPride Servs. v. Valley Indus. Servs.*, Nos. CIV. S-00-113-LKK JFM, S-04-1494-LKK/JFM, 2007 U.S. Dist. LEXIS 51364, at *9 (E.D. Cal. July 2, 2007) (citing *Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1504 (9th Cir. 1994)). The key consideration for the Court is whether the proposed settlement is within the "reasonable range" of the settling defendant's proportional share of comparative liability for the plaintiff's injuries.  *Tech-Bilt*, 38 Cal. 3d at 499.  The Court should balance the relevant factors to ensure that the settlement is not "so far 'out of the ballpark' . . . to be inconsistent with the equitable objectives of the statute."  *Id.* at 499–500.

The factors considered include: (1) a rough approximation of the plaintiff's total potential recovery; (2) a rough approximation of the settling defendant's proportionate liability; (3) the amount paid in settlement; (4) the allocation of settlement proceeds among plaintiffs; (5) a recognition that the settling defendant should pay less in settlement than if it were found liable at trial; (6) the financial condition of the settling defendant; (7) the insurance policy limits of the settling defendant; and (8) the existence of fraud, collusion, or tortious misconduct on the part of the settling party aimed to injure the interests of the non-settling defendants.

*Id.* at 499.  Each of these factors is evaluated on the basis of the information available at the time of the settlement, and no one factor is determinative.  *Id.* at 499.  "The fundamental inquiry . . . is whether the settling defendant is paying the plaintiff an amount that is so far below defendant's proportionate share of liability as to be completely '"out of the ball park."'"  *Heppler v. J.M. Peters Co.*, 73 Cal. App. 4th 1265, 1284, 87 Cal. Rptr. 2d 497 (1999) (quoting *Tech-Bilt*, 38 Cal. 3d at 499).

### 1.    A rough approximation of OCWD's total potential recovery.

OCWD's potential total recovery from BP cannot be predicted with precision given the number of sites and claims that remain in this case (both before this Court and before the MDL court) and the individual circumstances at each site which bear on this question.  This is compounded by the fact that efforts to remediate any remaining contamination at the sites at which closure has not been granted are ongoing, further reducing any potential future costs for OCWD.  In addition, because most of the sites that remain in the MDL are subject to further discovery and motion practice, any estimate of damages at those sites is necessarily premature.

At BP's eight Phase I trial sites, OCWD's experts have computed its total alleged past and future damages as amounting to $3,689,934.  Heartney Decl. ¶ 17.  To this amount should be added BP's proportionate share of OCWD's claimed $6.5 million in past costs and expenses to investigate MTBE and TBA contamination in its territory.  *Id.*  BP's share of this amount is likely to be significantly reduced by OCWD's failure to support its past cost claims with expert testimony or proof tying those costs specifically to BP, as well as by the settlement credits attributable to BP from OCWD's settlements with other parties.  *Id.*

As explained above, OCWD's claims against BP regarding 34 additional stations which remain in the MDL are likely to present even less exposure for BP than its Phase I trial sites.  Heartney Decl. ¶ 18.  Nonetheless, it remains possible that, given the number of sites remaining in the MDL, one or more of these sites

could give rise to a substantial damages claim similar to that associated with BP's Focus Sites. *Id.*

Taking all of the foregoing factors into consideration, a rough approximation of OCWD's total potential recovery from BP might reasonably range between an amount falling below the proposed settlement payment and an amount in excess of that payment, although there remain many unknowns at this time, especially as to the sites that remain in the MDL. Heartney Decl. ¶ 18.

## 2. <u>The settlement is a rough approximation of BP's proportionate liability.</u>

"[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability." *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 874, 741 P.2d 124 (1987). The law requires only that the settlement is not "'grossly disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be.'" *Tech-Bilt*, 38 Cal. 3d at 499 (quoting *Torres v. Union Pac. R.R. Co.*, 157 Cal. App. 3d 499, 509, 203 Cal. Rptr. 825 (1984)). Again, the "fundamental inquiry . . . is whether the settling defendant is paying the plaintiff an amount that is so far below the defendant's proportionate share of liability as to be completely '"out of the ballpark."'" *Heppler*, 73 Cal. App. 4th at 1284 (quoting *Tech-Bilt*, 38 Cal. 3d at 499). Further, "it is quite proper for a settling defendant to pay less than his proportionate share of the anticipated damages." *Abbott Ford*, 43 Cal. 3d at 874. A court's evaluation of a settling defendant's proportional liability is based on the evidence available at the time of settlement. *Tech-Bilt*, 38 Cal. 3d at 499. This is particularly true in this case, where the MDL court has previously stated that "the means of allocating liability in these cases remains highly contested." *In re MTBE Prod. Liab. Litig.*, 578 F. Supp. 2d 519, 528 (S.D.N.Y. 2008). Indeed, as that court recognized in overruling objections to an MDL settlement for refiner defendants in 2008, "there is no evidentiary basis

for estimating the individual liability of each defendant in these cases, making [the objecting defendant's suggested allocation] purely hypothetical." *Id.* at 529.

Based on the limited evidentiary record, BP's substantial defenses to OCWD's claims and OCWD's inability to prove that it has suffered substantial damages related to MTBE or TBA at BP's sites in this lawsuit, the settlement amount that BP has agreed to pay is well within the ballpark of a rough approximation of OCWD's total recovery as to BP. With respect to BP's Focus Sites, site-specific discovery and the evidentiary record in this case support a finding that the settlement between OCWD and BP is in good faith. As discussed above, BP has eight Focus Sites in the Phase I trial, including the two Thrifty sites at which OCWD seeks to hold BP responsible, and four of these sites have received closure from State and local regulators. Heartney Decl. ¶¶ 7–8. To date, OCWD has not incurred any treatment or remediation costs related to MTBE or TBA at these sites. *Id.* at ¶ 10. In all, OCWD's experts have been able to identify a total of $3,689,934 in past and future damages at all eight sites combined, or slightly more than one quarter of BP's proposed settlement payment. *Id.* at ¶ 17.

With respect to OCWD's claims at sites remaining in the MDL, it again is clear that OCWD and BP entered into the proposed settlement in good faith. OCWD has yet to provide evidence linking MTBE gasoline supplied by BP at any of these sites to any MTBE or TBA contamination that remains there today, and OCWD has offered no evidence that any of these sites are responsible for any alleged impacts to groundwater or drinking water supplies in Orange County. Heartney Decl. ¶ 12. As such, the proposed settlement is fully adequate to take into account BP's potential liability to OCWD for sites remaining in the MDL (including sites that may not yet have ripe claims), with the qualification that limited evidence has been put forth by OCWD. On this evidentiary record, BP is likely paying more than its share of liability for these sites, and the amount is clearly "in the ballpark."

### 3. The amount paid in settlement is reasonable.

BP denies liability to OCWD and believes that a jury should not find it liable in this action. All the same, uncertainty remains as to whether OCWD would prevail, and if so, whether and how much a jury might award (including punitive damages). BP also desires to end the continued expense associated with the defense of protracted discovery and litigation in this case, including the costs associated with a 10-week jury trial. For these reasons also, the settlement is not "completely out of the ball park" of the reasonable range of BP's proportional share of comparative liability at the time of settlement. *Heppler*, 73 Cal. App. 4th at 1284 (quoting *Tech-Bilt*, 38 Cal. 3d at 499) (internal quotation marks omitted).

### 4. The allocation of proceeds among plaintiffs does not apply to this settlement.

OCWD is the only party bringing this action. As such, allocation of settlement proceeds among multiple plaintiffs is not a consideration for purposes of the good faith settlement determination.

### 5. The settlement recognizes that BP may pay less in settlement than after trial.

"The uncertainty and expense of litigation make a settlement for less than the total potential liability sometimes in the best interest of the plaintiff." 3 CAL. CIV. PROC. BEFORE TRIAL (CEB) § 50.16 (2019); *see Rutgard v. Haynes*, 61 F. Supp. 2d 1082, 1089 (S.D. Cal. 1999) ("[E]ven if it could be shown that Defendant's settlement was less than the amount of a possible judgment against him at trial, this settlement amount is still appropriate as plaintiffs avoided the risks and costs of going to trial, where their proof against Defendant might have failed, or the amount of damages awarded might have been markedly less."). The parties' settlement was reasonable at the time of settlement and reflects recognition by both parties that continued litigation in this case would be complicated and protracted. The settlement also reflects recognition that it is difficult and often entirely speculative

- 14 -

to predict what damages, if any, may be imposed upon a defendant in this type of case, even if liability can be proved. In addition, recovery could be delayed and further complicated by future litigation of sites that remain in the MDL, additional trials, and possible appeals from any judgment. Finally, the cost of the extensive litigation activities in any number of lengthy trials could easily exceed the amount of the settlement. All of these considerations are brought to bear in assessing whether this settlement is in a "ballpark" range, and they support a finding that it is.

### 6. The financial condition and insurance policy limits of BP is not relevant to the settlement.

The amount agreed to in settlement was not limited in amount by the potential existence of insurance or insurance policy limits. Heartney Decl. ¶ 20. Nor was the financial condition of BP a factor in any way to increase or decrease the agreed settlement amount. *Id.*

### 7. Fraud, collusion, and tortious misconduct have not played a role in the negotiations between OCWD and BP.

The Settlement Agreement was reached after extensive negotiations between the parties, including the involvement in both a full-day mediation session and thereafter by the Hon. Edward Infante. Heartney Decl. ¶ 14. The parties' negotiations before Judge Infante set the stage for the final negotiations that produced the settlement by substantially narrowing the gap separating their positions. *Id.* There is no evidence of fraud, collusion, or tortious misconduct in this settlement aimed at injuring the interests of the non-settling defendants. *Id.*

### C. Any Party Challenging the Settlement Bears the Burden of Proving Lack of Good Faith.

In the event a party challenges the good faith of BP's settlement with OCWD, that party bears the burden of proving the lack of good faith. Cal. Code Civ. Proc. § 877.6(d). Again, this burden is to show that the settlement "is so far 'out of the ballpark' . . . to be inconsistent with the equitable objectives of the statute." *Tech-*

Case 8:03-cv-01898-VSB-VF Document 6454-3 Filed 01/23/19 Page 24 of 26
Case 8:03-cv-01742-CJC-DFM Document 604 Filed 01/28/19 Page 22 of 25 Page ID
#:27095

*Bilt*, 38 Cal. 3d at 499. As summarized above, this settlement meets all of the *Tech-Bilt* factors needed to establish that it is within a "reasonable range" of BP's potential liability given the uncertainties and unpredictability of litigation of this matter and its costs, the nature of the environmental contamination alleged here, the disputed scope of further investigation and remedial actions, if any, required at the sites at issue, together with all other factors discussed above. The Settlement Agreement is neither fraudulent nor collusive, but was reached in arm's-length negotiations, and is well within the reasonable range of BP's potential and comparative liability. Heartney Decl. ¶ 15.

### D. The Court Should Direct Entry of Judgment Pursuant to Federal Rule of Civil Procedure 54(b) Regarding the Court's Determination of a Good Faith Settlement.

When multiple parties or claims are involved, the Court is empowered to direct entry of final judgment as to some of the claims or parties. FED. R. CIV. P. 54(b); *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1524–25 (9th Cir. 1987). In order for a party to obtain protection against alleged joint tortfeasor liability, California law requires that a court determine that the party's settlement was entered into in good faith. BP respectfully requests that the Court enter such a judgment pursuant to Federal Rule of Civil Procedure 54(b). There is no just reason to delay entering final judgment under Rule 54(b), which would protect BP from any alleged joint tortfeasor claims and effectuate the terms of the Settlement Agreement. *See AmeriPride Servs.*, 2007 U.S. Dist. LEXIS 51364, at *9, 11–12; *see also Agway, Inc. Emps.' 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 140 (N.D.N.Y. 2005) ("[T]he desirability of promoting settlement of litigated claims, particularly when presented in the context of complex litigation . . . cannot be understated.").

## III. CONCLUSION

For the foregoing reasons, BP respectfully requests that the Court grant its motion for an order determining the good faith of its settlement and enter the proposed order and judgment pursuant to Rule 54(b), such that all pending and future claims or cross-claims against BP for equitable comparative contribution or comparative or partial indemnity, based on comparative fault or comparative negligence, are dismissed and forever barred.

Dated: January 23, 2019

ARNOLD & PORTER KAYE SCHOLER LLC

By: _____*/s/ Matthew T. Heartney*_____
   Matthew T. Heartney
   Attorneys for Defendants
ATLANTIC RICHFIELD COMPANY,
BP WEST COAST PRODUCTS LLC,
and BP PRODUCTS NORTH
AMERICA INC.

# CERTIFICATE OF SERVICE

The undersigned counsel for BP hereby certifies that a true and correct copy of the foregoing document was served electronically through the CM-ECF (electronic case filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on January 23, 2019.

Dated: January 23, 2019          By: _____ */s/ Matthew T. Heartney*
                                       Matthew T. Heartney