# Exhibit B

1  TIMOTHY R. MACDONALD (*Admitted Pro Hac Vice*)
   timothy.macdonald@arnoldporter.com
2  ARNOLD & PORTER KAYE SCHOLER LLP
   370 Seventeenth Street, Suite 4400
3  Denver, CO 80202-1370
   Telephone:  303.863.1000
4  Facsimile:   303.832.0428

5  MATTHEW T. HEARTNEY (State Bar No. 123516)
   matthew.heartney@arnoldporter.com
6  STEPHANIE B. WEIRICK (State Bar No. 204790)
   stephanie.weirick@arnoldporter.com
7  ARNOLD & PORTER KAYE SCHOLER LLP
   777 South Figueroa Street, 44th Floor
8  Los Angeles, CA 90017-5844
   Telephone:  213.243.4000
9  Facsimile:   213.243.4199

10 *Attorneys for Atlantic Richfield Company, BP West Coast Products LLC, and BP Products North America Inc.*

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                  SOUTHERN DIVISION

14

15 ORANGE COUNTY WATER              Case No. 8:03-cv-01742-CJC (DFMx)
   DISTRICT,
16                                  *Assigned to:  Hon. Cormac J. Carney*
                  Plaintiff,
17                                  **DECLARATION OF MATTHEW T.
        v.                          HEARTNEY IN SUPPORT OF
18                                  DEFENDANTS ATLANTIC
   UNOCAL CORPORATION, *et al.*,    RICHFIELD COMPANY'S, BP
19                                  WEST COAST PRODUCTS LLC'S,
                  Defendants.       BP PRODUCTS NORTH AMERICA
20                                  INC.'S MOTION FOR ORDER
                                    DETERMINING GOOD FAITH
21                                  SETTLEMENT**

22
                                    Date: February 25, 2019
23                                  Time: 1:30 p.m.
                                    Courtroom: 7C
24                                  Judge: Hon. Cormac J. Carney

25

26

27

28

I, MATTHEW T. HEARTNEY, declare as follows:

1.      I am an attorney admitted to the practice of law in the State of California and a partner at Arnold & Porter Kaye Scholer LLP, attorneys for defendants Atlantic Richfield Company, BP West Coast Products LLC, BP Products North America Inc. (collectively, "BP"). I have represented the present BP defendants or other BP affiliates in numerous lawsuits involving gasoline containing methyl tertiary butyl ether ("MTBE"), and have been counsel of record for BP in the present case since it was filed in May 2003. I have been BP's outside counsel most directly involved in the mediation and settlement negotiations which led to the proposed settlement between BP and plaintiff Orange County Water District ("OCWD"). Except where noted below, I have personal knowledge of the facts set forth in this declaration, and if called upon to testify, will do so truthfully and competently.

2.      A true and correct copy of the settlement agreement between BP and OCWD is attached hereto as Exhibit 1. Exhibit 1 has been fully executed by OCWD and by BP. The terms set forth in Exhibit 1 constitute all of the terms and understandings that make up the parties' settlement. At no time when negotiating their agreement did the parties discuss or agree to side agreements or understandings not set forth therein.

3.      I have communicated with counsel for defendants ExxonMobil and Shell, including informing them of the key terms of BP's settlement with OCWD, and each have represented to me that their clients do not oppose BP's motion for good faith approval of this settlement.

4.      Prior to BP's proposed settlement, the Phase I trial in this action was scheduled to address a group of 17 focus sites. BP was the owner or operator at six of these sites, and was identified by State and local regulators as the responsible party for these sites. These sites are known as stations ARCO 1887, ARCO 1912, ARCO 1905, ARCO 3085, ARCO 6036 and ARCO 6131. OCWD also contends that BP is responsible for two additional sites initially owned and operated by Thrifty Oil

MATTHEW T. HEARTNEY'S DECLARATION IN SUPPORT OF BP'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

Case 8:03-cv-01742-CJC-DFM Document 300-2 Filed 01/23/19 Page 4 of 27 Page ID
Case 1:00-cv-01898-VSB-VF Document 4543-2 Filed 01/23/19 Page 4 of 27
#:27100

Company ("Thrifty") (a party not named in this lawsuit) that later were leased by BP. These sites are known as Thrifty 368 and 383. Together, these eight sites are referred to as BP's "Focus Sites."

5. In addition to the sites included in the upcoming Phase I trial, OCWD is pursuing claims concerning approximately 100 additional service station sites that remain pending in the Southern District of New York. OCWD's claims at these sites are subject to further discovery and motion practice and, following remand to the Central District of California, further trial proceedings. Based on past MDL proceedings, BP understands that OCWD is asserting claims against BP at 19 sites that were owned or operated by BP, together with 15 Thrifty sites, all of which remain pending in the MDL. These additional sites are referred to as BP's "Non-Focus Sites."

6. Atlantic Richfield Company ("Atlantic Richfield") first added MTBE to gasoline sold in California in August 1989. After the passage of the oxygenate mandate in the Clean Air Act in 1990, Atlantic Richfield complied with this federal mandate by adding MTBE to its gasoline at the times, and in the amounts, required by federal law. In 1999, California announced that it would ban MTBE in gasoline effective beginning in 2003. In April 2000, Atlantic Richfield was acquired by BP and, subsequently, Atlantic Richfield transferred its West Coast retail and refining assets to an affiliate, BP West Coast Products LLC ("BP West Coast"). Although California extended the deadline for use of MTBE until the beginning of 2004, BP ceased manufacturing and selling gasoline with MTBE in California in January 2003.

7. At the six Focus Sites owned or operated by BP, BP and its successors, together with the professional remediation consultants retained for this purpose, have worked under the scrutiny and oversight of State and local regulators to carry out the remedial actions required to investigate, contain, and clean up the complained of MTBE releases. Such efforts have proven successful. At all six sites, initial concentrations of MTBE and TBA have been contained and reduced to levels that

Case 8:03-cv-01742-CJC-DFM Document 600-2 Filed 01/23/13 Page 49 of 26 Page ID
#:27101
Case 1:00-cv-01898-VSB-VF Document 3543-2 Filed 01/23/13 Page 5 of 27

pose no remaining threat to the deeper aquifers from which Orange County water production wells draw water supplied to consumers. Two of these sites have received regulatory closure and, at the remaining sites, cleanup efforts are far advanced, with several of the sites either close to obtaining closure or under pre-closure monitoring programs. When regulatory closure is granted, State and local regulators overseeing the site have determined that any remaining contamination attributable to the site is not a threat to groundwater or production wells and that the site does not constitute a nuisance. For these reasons, none of the six sites should pose any credible threat to drinking water supplies or production wells in Orange County.

8. At the two Thrifty sites, the needed remedial actions have been carried out by Thrifty under the supervision of State and local regulators, without involvement by BP. Both sites have received regulatory closure, and at one of them (Thrifty 368), OCWD's expert Anthony Brown has withdrawn his prior opinions that MTBE and TBA were not adequately delineated and that additional investigation and/or remedial work is required; instead, he now acknowledges that no further work is needed there. In addition, because BP had no connection to the Thrifty sites at the times when MTBE was released there, and because Thrifty alone has been responsible for conducting the needed remedial actions at these sites under the regulators' oversight, OCWD's claims against BP based on these sites are unsupported and lacking in merit.

9. Starting in 2010, OCWD retained Hargis + Associates, a sophisticated hydrogeology consulting firm, to conduct cone penetration testing ("CPT") at fifteen of defendants' stations, including ARCO 1887, ARCO 1912, ARCO 1905, and Thrifty 383. This work consisted of advancing CPT borings down to nearly 100 feet below ground surface at numerous locations offsite and downgradient of the selected sites in order to collect water samples. As established during discovery, OCWD selected locations for these borings at which it believed significant concentrations of MTBE and TBA would be found. Rather than locating "escaped" contamination,

MATTHEW T. HEARTNEY'S DECLARATION IN SUPPORT OF BP'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

OCWD's CPT sampling produced MTBE and TBA results that were either non-detect at all depths sampled or, in a few instances, low detections of MTBE or TBA. As BP's expert Tony Daus will testify, these results fall well below any level that could justify the extensive investigation and cleanup efforts sought by OCWD.

10.     Today, OCWD's experts Anthony Brown and Robert Stollar acknowledge that they have failed to locate MTBE or TBA concentrations at seven of the eight BP Focus Sites sufficient to allow them to opine that any additional cleanup or remediation work will be required.   Instead, these experts contend that OCWD should recover payments of $79,050 for each of these seven sites to fund continued CPT work attempting to locate additional MTBE or TBA.  At the single remaining site (ARCO 1905), Mr. Brown proposes that OCWD implement a $3.14 million program to install and operate a groundwater extraction remedial system.  In his deposition, Mr. Brown conceded that OCWD's  justification for this program rests upon detections of MTBE and TBA levels of 270 parts per billion ("ppb") and 46 ppb at a single depth in one of the 18 CPT borings conducted at this site.  All sampling at the other 17 CPT borings at this site produced only non-detect results at all depths sampled or de minimis detections of MTBE or TBA.  As BP's experts Dr. Michael Kavanaugh and Tony Daus will testify, the limited one-time only detections of MTBE and TBA at ARCO 1905 in no way supports conducting further cleanup or remediation steps at this site.  To date, OCWD has not incurred any treatment or remediation costs related to MTBE or TBA at any of the eight BP Focus Sites.

11.     OCWD also seeks to recover from defendants some $6.5 million in past costs and expenditures that it claims were incurred to investigate MTBE and TBA contamination within its territory.  Defendants' discovery indicates that a large majority of these costs represent litigation expenses, and not costs or expenses incurred in response to alleged contamination or that could be appropriately awarded under the OCWD Act.  Moreover, OCWD has failed to support its alleged past costs with expert testimony or to tie those costs to any specific site or defendant.

- 5 -                     Case No. 8:03-cv-01742-CJC (DFMx)

Case 8:03-cv-01742-CJC-DFM   Document 803-1   Filed 01/23/19   Page 6 of 27   Page ID
#:27103
Case 1:00-cv-01898-VSB-VF   Document 4543-2   Filed 01/23/19   Page 7 of 27

12.     For good reason, OCWD's claims at the service station sites that remain in the MDL present even less exposure to BP in any future litigation or trials.  During the MDL, OCWD was permitted to select its "best" sites to be remanded to California for the Phase I trial and, after some 15 years of litigation, I am unaware of any credible evidence establishing that OCWD suffered any injury or damages attributable to any sites that remain in the MDL.  OCWD, for example, has yet to come forward with evidence linking gasoline supplied by BP to MTBE or TBA contamination present at any of these sites today, and OCWD has offered no evidence that any of these sites are responsible for any alleged impacts to groundwater or drinking water supplies in Orange County.  Moreover, given the amount of time it will take to complete discovery, motion practice, and pre-trial work for the sites remaining in the MDL, I consider it unlikely that OCWD could succeed in developing the panoply of evidence of violation, causation, and damages required to pursue claims at these sites, particularly in light of the passage of time since MTBE was removed from gasoline in 2003.

13.     The settlement negotiations which produced the present settlement were at arm's length and vigorously contested at all times.  I was a participant in all settlement negotiations between the parties, and I am aware of no evidence of fraud, collusion, or tortious misconduct aimed at injuring the interests of the non-settling defendants taking place at any time.

14.     In October 2018, OCWD and BP participated in a full-day mediation before Magistrate Judge Edward Infante, but did not reach a settlement.  Further discussions between Judge Infante and both parties continued thereafter and, in December 2018, the parties traded proposals back and forth through Judge Infante but again did not reach a settlement.  The parties' negotiations before Judge Infante set the stage for the final negotiations that produced the settlement by substantially narrowing the gap separating their position.  The parties concluded their settlement

MATTHEW T. HEARTNEY'S DECLARATION IN SUPPORT OF BP'S MOTION FOR ORDER DETERMINING
GOOD FAITH SETTLEMENT

on Sunday, January 13, 2019 after conducting further negotiations over the preceding ten days.

15.     BP agreed to pay OCWD the sum of $14 million in full satisfaction of all claims asserted against it.  In reaching this amount, the parties considered and discussed BP's potential legal defenses and the strengths and weaknesses of OCWD's evidence in support of its claims.  The parties also considered OCWD's possible damages claims faced by BP from future investigation and remediation at the sites in question, as well as the potential liability and damages at all stations remaining in the MDL as to which OCWD asserts claims against BP, even though certain of these claims do not yet appear to be ripe.  The settlement amount takes into account all of these factors and others, and thus is in "the ballpark" of a reasonable settlement.  The Settlement Agreement is neither fraudulent nor collusive, but was reached in arm's-length negotiations, and is easily within the reasonable range of BP's potential and comparative liability.

16.     In negotiating the settlement, BP considered OCWD's total potential recovery from its claims against BP.  OCWD's potential recovery from BP cannot be predicted with precision given the number of sites and claims that remain in this case (both before this Court and before the MDL court) and the individual circumstances at each site which bear on this question.  This is compounded by the fact that efforts to remediate any remaining contamination at the sites at which closure has not been granted are ongoing, further reducing any potential future costs for OCWD.  In addition, because most of the sites that remain in the MDL are subject to further discovery and motion practice, any estimate of damages at those sites is necessarily premature.

17.     Nonetheless, the information discussed in this declaration can be used to develop a rough, but reasonable, assessment of OCWD's total potential recovery from BP.  At BP's eight Phase I trial sites, OCWD's experts have computed its total alleged past and future damages as amounting to $3,689,934.  To this amount should

MATTHEW T. HEARTNEY'S DECLARATION IN SUPPORT OF BP'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

1   be added BP's proportionate share of OCWD's claimed $6.5 million in past costs and

2   expenses to investigate MTBE and TBA contamination in its territory.  BP's share of

3   this amount is likely be significantly reduced by OCWD's failure to support its past

4   cost claims with expert testimony or proof tying those costs specifically to BP, as

5   well as by the settlement credits attributable to OCWD's settlements with other

6   parties.

7        18.  As explained above, OCWD's claims against BP regarding the 34 stations

8   that remain in the MDL are likely to present even less exposure for BP than its Phase

9   I trial sites.  Nonetheless, it remains possible that, given the number of sites

10  remaining in the MDL, one or more of these could give rise to a substantial damages

11  claim similar to that associated with certain of the more substantial Phase I trial sites,

12  such as ARCO 1905 for example.

13       19.  Taking the foregoing factors into consideration, a rough approximation of

14  OCWD's total potential recovery from BP might reasonably range between an

15  amount falling somewhat below the proposed settlement payment and an amount in

16  excess of that payment, although there remain many unknowns at this time, especially

17  as to the sites that remain in the MDL.

18       20.  The amount agreed to in BP's settlement with OCWD was not limited in

19  amount by the potential existence of insurance or insurance policy limits.  Nor was

20  the financial condition of BP a factor in any way to increase or decrease the agreed

21  settlement amount.

22       21.  As the Court is aware, since October 2017, three multi-million dollar

23  settlements between OCWD and other defendants in this action have been presented

24  to the Court, and each has been found to be in good faith.  BP's settlement with

25  OCWD has been the largest settlement reached to date in this case, and the good faith

26  approvals granted to these prior settlements provide potent evidence that BP's

27  settlement is "in the ballpark" of BP's proportionate share of liability in this matter.

28

Case 1:00-cv-01898-VSB-VF Document 4543-2 Filed 01/23/19 Page 10 of 27
Case 8:03-cv-01742-CJC-DFM Document 603-1 Filed 01/23/19 Page 10 of 27 Page ID
#:27106

- In 2017, ConocoPhillips Company, Tosco Corporation, and Phillips 66 ("Conoco") reached a $4.8 million settlement of OCWD's claims addressing two Phase I trial sites and what Conoco's counsel identified as some two dozen additional sites remaining in the MDL. *See* Declaration of John J. Lyons In Support Of Motion For Good Faith Approval, ECF No. 294-1, ¶ 17. No defendant objected to Conoco's motion for good faith approval and, after review, the Court granted approval.

- In December 2018, G&M Oil Company, Inc. and G&M Oil Company, LLC ("G&M"), a marketing company that had never produced MTBE gasoline, reached a $3 million settlement of OCWD's claims addressing two Phase I trial sites and some 14 additional sites in the MDL. No defendant objected to G&M's motion for good faith approval and, after review, the Court granted approval.

- In January 2019, Chevron U.S.A. Inc. and Union Oil Company of California ("Chevron") reached an $11 million settlement of OCWD's claims addressing eight Phase I trial sites and what Chevron's counsel identified as at least 19 additional sites remaining in the MDL. No defendant objected to Chevron's motion for good faith approval and, after review, the Court granted approval.

22. During the MDL proceedings, three other defendants obtained orders finding their settlements to be in good faith, including a $1.7 million settlement by 7-Eleven, a $2 million settlement by Petro Diamond, and a $3.5 million settlement by Lyondell Chemical. Both 7-Eleven and Petro Diamond were sellers of MTBE gasoline but did not produce such gasoline themselves, and Lyondell, which had been a major producer of neat MTBE, was in bankruptcy when its settlement was reached. In addition, since BP announced its settlement, the two remaining defendants in the Phase I trial, ExxonMobil and Shell, reached a settlement in principle with OCWD

which involved a joint settlement payment of $12.5 million.  The Court will subsequently be called upon to review this settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 23rd day of January, 2019.

By: _____/s/ Matthew T. Heartney_____
Matthew T. Heartney

Case 1:00-cv-01898-VSB-VF   Document 4543-2   Filed 01/23/19   Page 12 of 27
Case 3:03-cv-01742-CSC-DFM   Document 603-1   Filed 01/23/13   Page 10 of 26   Page ID
#:27108

# Exhibit 1

Exhibit 1
Page 11

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement And Release ("Settlement and Release") is made between the Orange County Water District (the "District"), on the one hand, and Atlantic Richfield Company, a Delaware corporation, BP Products North America Inc., a Maryland corporation, and BP West Coast Products LLC, a Delaware limited liability company (together, the "BP Defendants"), on the other hand, regarding the settlement of all claims between them in the litigation captioned *Orange County Water District v. Unocal Corporation, et al.,* 8:03-cv-01742-CJC (DFMx) (the "Litigation"), as of the effective date set forth below. These parties are referred to herein collectively as the "Parties" and individually as a "Party."

## I. RECITALS

A. On or about May 6, 2003, the District filed a complaint in Orange County Superior Court, entitled *Orange County Water District v. Unocal Corporation, et al.* seeking money damages and declaratory relief against certain members of the oil industry ("Defendants") who allegedly manufactured, distributed, transported, and/or sold gasoline containing methyl tertiary butyl ether ("MTBE") that was ultimately delivered to service stations within or near the boundaries of the District. The District alleges that gasoline containing MTBE was released from such gasoline station sites and contaminated and/or threatens to contaminate the soil, soil-vapor, surface water, and/or the groundwater basin managed, owned, operated, used, and/or protected by the District (the "Basin"). The District contends that Defendants, including the BP Defendants, should not have added MTBE to gasoline and that releases of gasoline with MTBE could have been prevented if Defendants, including the BP Defendants, had provided adequate warnings and instructions regarding MTBE and its proper handling and/or had properly installed and operated appropriate underground storage systems. The District also alleges that Defendants, including the BP Defendants, failed to operate their service stations properly and

US:164223492v5

Exhibit 1
Page 12

failed to investigate and remediate releases of gasoline containing MTBE to the environment properly. The District also alleges TBA, which it contends is present as a gasoline constituent, an impurity in commercial grade MTBE, and a degradation or breakdown product of MTBE, contaminated and/or threatens to contaminate the soil, soil-vapor, surface water, and/or the Basin. Based on these allegations, the District asserted causes of action for products liability, negligence, trespass, nuisance, and violations of the Orange County Water District Act (the "OCWD Act"), seeking declaratory relief and damages for injuries the District claims to have suffered, in part, due to the actions and/or omissions of the BP Defendants. The BP Defendants deny the District's claims and all other material allegations asserted against them. Defendants removed the Litigation to federal court, and it is currently pending as part of a nationwide multi-district litigation in the Southern District of New York, styled *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL 1358, with a set of initial trial sites remanded for trial in the Central District of California.[1]

B.  The BP Defendants and the District, without any admission of liability and solely to avoid the expense and burden of future litigation, now desire to settle all disputes between them arising from the Litigation, and all related Claims (as defined below) prior to any judgment or finding of liability and prior to all of the evidence being presented to the court of appeals from decisions or rulings rendered to this point in the Litigation. In entering into this Settlement and Release, no Party makes any admission of any fact, responsibility, fault, or liability.

## II.  AGREEMENT

Based upon the Recitals set forth above and in consideration of the mutual promises and consideration hereinafter described, the Parties agree as follows:

---

[1]  While the Litigation was pending, the District filed First, Second, and Third Amended Complaints.

US:164223492v5

2

Exhibit 1
Page 13

1. **Release by the District.**

      a.      The District represents that it is a special water agency created to maintain, replenish, and manage groundwater resources in the District[2] and has the right to conduct investigations of the water quality in the District, to perform any necessary cleanup, abatement, or remedial work to prevent, abate, or contain any threatened or existing contamination or pollution of the surface or groundwaters in the District, and to recover its costs to perform any such activities. The District also represents that it has the right to litigate to protect groundwater resources within its boundaries. In the Litigation, the District is acting on its own behalf and within the full scope of its powers and authority under the OCWD Act to commence, maintain, and compromise any and all Claims (as defined below) related to the alleged interference with its water or water rights, alleged diminution of the quantity or quality of the water supply of the District, and/or alleged pollution or contamination of the water supply of the District that may endanger or damage the inhabitants, lands, or use of water in the District. West's Ann. Cal. Water Code App.§§ 40-2 and 40-8.

      b.      The District, in its governmental and/or sovereign capacity, or otherwise (as contemplated under Sec. 2, paragraph 9 of the OCWD Act), including on behalf of itself, its Board of Directors, and its predecessors, successors, agencies, commissions, departments, officers, employees, agents, officials, insurers, representatives, and attorneys, and for the benefit of the District, hereby releases and forever discharges the BP Defendants, including all divisions and companies owned or operated by the Released Parties (defined below) which sold or otherwise marketed gasoline products or remediated and/or oversaw the remediation of gasoline release sites, successors, successors-in-interest, predecessors, predecessors-in-interest, parents,

---

[2] Pursuant to its enabling Act, the District "include[s] and compris[es] all of the land with the exterior boundaries of the district," which are set forth in West's Ann. Cal. Water Code App.§§ 40-1. References to the District herein incorporate this definition of its boundaries.

Exhibit 1
Page 14

ultimate parent companies, and/or subsidiaries and their affiliates, together with all of their current and former respective officers, employees, directors, shareholders, officials, agents, accountants, attorneys, insurance carriers, and reinsurers (the "Released Parties"), of and from all Claims (as defined below). An "affiliate" or "affiliates" shall include any past, current or future direct or indirect subsidiary of any ultimate parent company of any of the BP Defendants, and any entity in which such ultimate parent company, or any of its past, current or future direct or indirect subsidiaries owns or owned, directly or indirectly, an interest larger than 50%.

        c.      For purposes of this Settlement and Release,

        i.      Except as provided in Paragraph II.1.e. below, "Claims" means any and all demands, actions, causes of action, suits, rights, matters, liens, obligations, assessments, damages (including, without limitation, diminution-in-value, stigma, property damage, lost enjoyment or use, lost profit, and punitive or exemplary damages), liabilities, investigation costs, remediation costs, restoration costs, remedies of any kind (including, without limitation, declaratory, injunctive or other court-ordered relief), other costs, losses, or expenses (including attorneys' fees, litigation costs, and expert witness fees) of any kind or nature whatsoever (whether legal or equitable, past, present, or future, ascertained or unascertained, known or unknown, suspected or unsuspected, whether based in tort, contract, any local, state, or federal law, common law, statute, ordinance, rule, or regulation, including but not limited to any direct, indemnification, and/or assigned claims), arising out of, relating to, or resulting from the conduct or alleged conduct that gave rise to the Litigation, including but not limited to: (i) actual or threatened soil, soil-vapor, groundwater, or surface water contamination within the District from Covered Substances (as defined below) manufactured, sold, marketed, stored, refined, supplied, distributed, or exchanged by the Released Parties; (ii) the District's investigation,

Exhibit 1
Page 15

remediation, or restoration of any such actual or threatened contamination, and any other action or response arising out of, relating to, or resulting from such actual or threatened contamination; (iii) any operations of the Released Parties within the District prior to the date of this Settlement and Release which allegedly contributed to any such actual or threatened contamination within the District from Covered Substances; (iv) any alleged failure by the Released Parties to clean up or remove any Covered Substances from groundwater, surface water, soil-vapor, or soil on, under, or near any release site; (v) any liability, damages, fact, or circumstance that have or could have been raised as part of the Litigation against the Released Parties concerning Covered Substances; and (vi) any current or future claim of actual or threatened soil, soil-vapor, groundwater, or surface water contamination related to any gasoline station sites within the District's service area that sold, marketed, stored, supplied, or distributed gasoline manufactured, sold, marketed, stored, refined, supplied, distributed, or exchanged by the Released Parties.  The entirety of this Paragraph applies to, but is not limited to, any groundwater, surface water, soil, soil vapor, aquifers, water resources, wells, or other property within the District managed, owned, leased, operated, and/or otherwise used by the District, including later-acquired interests, and any waters flowing into the boundaries of the District.

ii.      "Covered Substances" shall mean refined petroleum products including, but not limited to, gasoline and all components of these products, including: (i) benzene, toluene, ethyl benzene and xylene; (ii) methyl tertiary butyl ether (MTBE), tertiary butyl alcohol (TBA), tertiary amyl methyl ether (TAME), diisopropyl ether (DIPE), and/or ethyl tertiary butyl ether; and (iii) any degradation products and/or by-products or impurities of a substance listed above.

Exhibit 1
Page 16

        d.      Apart from the Released Parties, the District is not releasing any other
party to the Litigation or any person or entity not a party to the Litigation, and the released
Claims do not include any Claim by or against any other person or entity, including any other
Defendants in the Litigation and including (but not limited to) any other person or entity who
manufactured, refined, distributed, sold, and/or supplied gasoline to any facility located within
the boundaries of the District, or that impacted waters flowing into the boundaries of the District.
The District agrees that it will not assert in the Litigation or any other proceeding Claims against
Tesoro Refining and Marketing Company or any successor thereof ("Tesoro") that have been
released against the Released Parties in this Settlement and Release and that relate to any
operations of the Released Parties within the District; this sentence does not include claims or
causes of action that arise from or are based upon conduct of Tesoro.

        e.      Notwithstanding any other provision herein, "Claims" do not include any
claim based on a release of gasoline, or any constituent thereof, into the environment by the
Released Parties occurring after the effective date of this Settlement and Release. "Claims" do,
however, include any claim based on a release of Covered Substances occurring on or before the
effective date of this Settlement and Release, whether known or unknown, regardless of the
extent to which such release might have migrated in the environment, if at all. A release into the
environment includes any release of gasoline or any constituent thereof into the air, soil, or
water, or to the area surrounding the container in which the material was intended to be stored
located within the boundaries of the District or impacting waters flowing into the boundaries of
the District.

Exhibit 1
Page 17

Case 3:03-cv-01742-CRB-VSP Document 6003-2 Filed 09/13/18 Page 19 of 26 Page ID
Case 1:00-cv-01898-VSB-VF Document 4543-2 Filed 02/13/18 Page 19 of 27 Page ID
#:27115

2.    **Consideration.**

As consideration for the foregoing releases, the Parties shall do the following:

a.    Within five (5) business days following receipt of a copy of this Settlement and Release executed by the District, the BP Defendants shall file with the court in the Litigation a motion for an order determining this settlement to be in good faith in accordance with sections 877 and 877.6 of the California Code of Civil Procedure. Alternatively, the BP Defendants may make an Application for Order Determining Good Faith Settlement pursuant to Code of Civil Procedure section 877.6(a)(2).

b.    Within 30 days of the date on which the court enters an order approving this Settlement and Release as a good faith settlement and confirming that the Released Parties are entitled to protection against contribution claims pursuant to California Code of Civil Procedure section 877.6, the BP Defendants shall pay to the District the total sum of fourteen million dollars ($14,000,000.00) (the "Settlement Payment") by a wire transfer to "Miller & Axline, A Professional Corporation, CA IOLTA Acct/Client Trust Account," 1050 Fulton Avenue, Suite 100, Sacramento, CA 95825, pursuant to the written instructions provided by the District or its counsel.

c.    Within five business days of its receipt of the Settlement Payment from the BP Defendants, the District shall dismiss the Litigation against the BP Defendants with prejudice. All Parties to this Settlement and Release shall bear their own attorneys' fees, expenses, and costs in connection with the Litigation.

d.    The District shall cooperate in securing court approval in the Litigation of the settlement between the Parties as one made in good faith by filing appropriate papers with the courts and/or appearing at any hearing(s) to consider those papers, if necessary.

Exhibit 1
Page 18

e.      This Settlement and Release and the dismissal of the Litigation against the BP Defendants with prejudice are supported by the mutual promises and covenants contained herein, which the Parties agree constitute good and valuable consideration.

**3.      Waiver.**

With respect to, and subject to the terms of, the release contained in Paragraph II.1 above, the District expressly waives any rights or benefits available under section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Party understands and acknowledges the significance and consequence of the specific waiver of section 1542 set forth above. Each Party acknowledges that its attorneys have explained to its authorized representatives the meaning and effect of section 1542 and the waiver thereof. Each Party understands fully the statutory language of section 1542 and, with this understanding, nevertheless elects to, and does, assume all risks for claims released under this Settlement and Release, known or unknown, heretofore and thereafter arising from the subject matter of the Litigation or of this Settlement and Release. Each Party fully understands that if the facts with respect to which this Settlement and Release is executed are found hereafter to be other than or different from the facts now believed by it to be true, it expressly accepts and assumes the risk of such possible difference in facts and agrees that this Settlement and Release shall be and remain effective notwithstanding such difference in facts.

Exhibit 1
Page 19

4. **Conditions Precedent.**

This Settlement and Release and all obligations of the Parties hereto are conditioned upon obtaining court approval of the settlement in the Litigation as a good faith settlement as that term is defined in California Code of Civil Procedure section 877.6.

5. **No Admission.**

This Settlement and Release is a compromise of disputed claims as to which the Parties have not had an opportunity to present all evidence of their claims and defenses, nor have they had full opportunity to appeal any decisions or rulings rendered in the Litigation. This Settlement and Release fully and finally settles all Claims by the District against the Released Parties and prevents any further actions by the District against the Released Parties in the Litigation. The Parties agree that in recognition of the expenses of further litigation, the uncertainty of any possible judgment, and any appeals which might have been successful if pursued, the amount of monies paid should not be construed as anything other than the compromise of disputed liability. Neither the payment of any consideration hereunder nor anything contained in this Settlement and Release shall be interpreted or construed to be an admission on the part of, nor to the prejudice of, any person hereto. The Released Parties expressly deny any and all liability associated with or related to the Claims.

6. **Authority to Sign; Indemnity.**

Each Party represents and warrants that the individual who executes this Settlement and Release on behalf of the corporation, city, district, governmental agency, partnership, joint venture, unincorporated association, or other entity has the appropriate authority of the officers, shareholders, members, or board of directors of said entity to do so. In the event that the individual who executes this Settlement and Release did not have such

Exhibit 1
Page 20

authority on behalf of the corporation or governmental entity, then the Parties agree to defend, indemnify, and hold harmless each other Party from any claim that such authority did not exist.

### 7. Final Settlement.

The Parties understand and agree that this Settlement and Release shall act as a release of all future Claims whether such Claims are currently known, unknown, foreseen, or unforeseen. The Parties understand and acknowledge the significance and consequence of the specific waiver of California Civil Code section 1542 described above and hereby assume full responsibility for any injury, loss, damage, or liability that may hereafter be incurred by reason of or related to the matters alleged in the Litigation, raised by said dispute, or defined as Claims herein.

## GENERAL PROVISIONS

### 8. Entire Agreement; No Modification.

Each Party individually and collectively declares and represents that no promises, inducements, or other agreements not expressly contained herein have been made with regard to the settlement of the Litigation; that this Settlement and Release contains the entire agreement between the Parties hereto with respect to the subject matter of the Litigation; and that the terms of this Settlement and Release are contractual and not recitals only. All prior agreements, understandings, oral agreements, and writings regarding the matters set forth herein are expressly superseded hereby and are of no further force or effect. This Settlement and Release may not be altered, amended, or modified in any respect except by a writing duly executed by the Party to be charged.

### 9. Binding Effect.

This Settlement and Release shall inure to the benefit of the Parties hereto and the Released Parties, and shall benefit thereby their predecessors, predecessors-in-interest,

Exhibit 1
Page 21

successors, successors-in-interest, parents, subsidiaries, affiliates, officers, directors, and employees, past, present, and future. The court in the Central District of California, Case No: SACV 03-01742-CJC (DFMx) shall retain jurisdiction to enforce the terms of this settlement.

The BP Defendants represent and warrant that the undersigned have all requisite power to execute, bind, deliver, and perform this Settlement and Release on behalf of the Released Parties and that this Settlement and Release has been duly and validly executed and delivered by them as the BP Defendants' corporate representatives. The District represents and warrants that the undersigned have all requisite power to execute, bind, deliver, and perform this Settlement and Release on behalf of the District and that this Settlement and Release has been duly and validly executed and delivered by them as the District's representatives. The BP Defendants and the District warrant that they will not challenge or contest the validity of this Settlement and Release and that they forever waive any defense to its validity, including any defense based on any claim the Settlement and Release is *ultra vires,* or otherwise void.

**10.    Further Documents.**

To the extent any documents are required to be executed or delivered to effectuate this Settlement and Release, each Party hereto agrees to execute and deliver such other and further documents as may be required to carry out the terms of this Settlement and Release.

**11.    Further Actions.**

To the extent any actions are required to be taken to effectuate this Settlement and Release, each Party hereto agrees to take said actions as may be required to carry out the terms of this Settlement and Release.

Exhibit 1
Page 22

12.    **Representation.**

Each Party hereto represents and acknowledges that each of them has been represented by counsel with respect to this Settlement and Release and any and all matters covered by or related to such Settlement and Release. Each Party hereto has been fully advised with respect to all rights which are affected by this Settlement and Release.

13.    **Voluntary and Knowing Release.**

Each Party signing this Settlement and Release represents and warrants that each of them: (i) read, knows, and understands the contents hereof; (ii) has executed this Settlement and Release voluntarily; (iii) has not been influenced by any person(s) or attorney acting on behalf of any Party; and (iv) understands that after signing this Settlement and Release, each Party cannot proceed against the others on account of any of the matters described herein.

14.    **Headings, Number, and Gender.**

Headings are used herein for convenience only and shall have no force or effect in the interpretation or construction of this Settlement and Release. As used in this Settlement and Release, the singular shall include the plural and the masculine, feminine, and neutral genders.

15.    **Ownership of Claims; Indemnity.**

Each Party hereto represents that no other person or entity has or has had any interest in the Claims alleged in this action on behalf of the District; that they have the sole right and exclusive authority to execute this Settlement and Release and receive the consideration specified in this Settlement and Release; and that each Party has not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims within the scope of this Settlement and Release.

No payment owed or made pursuant to this Settlement and Release is intended to constitute a debt, damage claim penalty, or other claim that may be limited or discharged in a bankruptcy proceeding.

Exhibit 1
Page 23

Nothing in this Settlement and Release shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Settlement and Release other than the Released Parties, which are all intended third-party beneficiaries.

**16.    Payment of Attorneys' Fees and Court Costs.**

Each Party hereto shall be responsible for the payment of its own court costs, attorneys' fees, and all other expenses, costs, and fees in connection with the matters referred to in the Litigation and in this Settlement and Release.

**17.    Applicable Law.**

This Settlement and Release shall be construed and interpreted in accordance with the laws of the State of California.

**18.    Severability.**

If any provision or any part of any provision of this Settlement and Release is for any reason held to be invalid, unenforceable, or contrary to any public policy, law, statute, or ordinance, then the Parties shall negotiate in good faith a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible in order to preserve the remainder of this Settlement and Release as valid and fully enforceable.

**19.    Counterparts.**

This Settlement and Release may be executed in counterparts, and all such executed counterparts shall constitute an agreement that shall be binding upon the Parties hereto, notwithstanding that the signatures of all Parties and Parties' designated representatives do not appear on the same page.

**20.    Admissibility of Agreement.**

The Parties hereto expressly agree that this Settlement and Release and all communications prior to and leading up to this agreement are subject to California Evidence

Exhibit 1
Page 24

Code section 1119 (a) & (b); however, the Settlement and Release shall be admissible for the sole purpose of enforcing the terms thereof. Notwithstanding the foregoing, the District may make the Settlement and Release available when required by the California Public Records Act or other law provided that this shall not affect the non-admissibility of the Settlement and Release for purposes other than enforcing its terms.

     21.    **Attorneys' Fees and Costs to Enforce Agreement.**

If any action is required to be taken by any Party to this Settlement and Release to enforce the terms hereof, the prevailing party in any such action shall be entitled to reasonable attorneys' fees and costs.

The Parties below named have executed this Settlement and Release as of the date and year appearing below adjacent to the signatures of the Parties. This Settlement and Release is effective as of the final date of the Parties' signatures below.

*[[Signatures on Following Page]]*

Exhibit 1
Page 25

Dated: 1/16/19

ORANGE COUNTY WATER DISTRICT

By: _____
Its: _President_

By: _MICHAEL R. MARKUS_
Its: _GENERAL MANAGER_

Approved as to Form:
By: _____
    General Counsel, Orange County Water District

Dated: 1/17/2019

ATLANTIC RICHFIELD COMPANY

By: _____
Its: _SENIOR COUNSEL_

Dated: 1/17/2019

BP PRODUCTS NORTH AMERICA INC.

By: _____
Its: _SENIOR COUNSEL_

Dated: 1/17/2019

BP WEST COAST PRODUCTS LLC

By: _____
Its: _SENIOR COUNSEL_