## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **In Re: Methyl Tertiary Butyl Ether ("MTBE")** **Products Liability Litigation** | **Master File No. 1:00 – 1898** **MDL 1358 (VSB)** **M21-88** |

---

**This document relates to:**

*Commonwealth of Pennsylvania v. ExxonMobil Corp., et al.* (No. 14-cv-06228)
*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.* (No. 07 CIV. 10470)

---

### DEFENDANTS SUNOCO, INC., SUNOCO, INC. (R&M), ENERGY TRANSFER PARTNERS, L.P., ETP HOLDCO CORPORATION, SUNOCO PARTNERS MARKETING & TERMINALS, L.P., AND PUERTO RICO SUN OIL COMPANY'S EIGHTH AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES

Pursuant to the Master Answer agreement among the parties, Case Management

Order No. 6, the Court's instructions during the January 13, 2005 status conference, and the

Court's Opinion and Order from August 2, 2021, Sunoco, Inc. (R&M) (now known as Sunoco

(R&M) LLC); Sunoco, Inc. (formerly known as Sun Company, Inc. and now known as ETC

Sunoco Holdings LLC)[1]; Sunoco Partners Marketing and Terminals L.P.[2]; Energy Transfer

Partners L.P. (now known as Energy Transfer Operating, L.P.); ETP Holdco Corporation,[3] and

Puerto Rico Sun Oil Company[4] (collectively "Sunoco") answer the Complaints in MDL 1358 for

---

[1] Without waiving any of its defenses, Sunoco notes that Sunoco, Inc. (formerly known as Sun Company, Inc. and now known as ETC Sunoco Holdings LLC) is a parent holding company that conducts no business of its own and therefore should be dismissed from these actions.

[2] Sunoco Partners Marketing and Terminals L.P.—which is named only in the *Commonwealth of Pennsylvania* action and therefore whose answer applies only to that action—did not design, manufacture, market, or refine MTBE or gasoline containing MTBE.

[3] Energy Transfer Partners L.P. (now known as Energy Transfer Operating, L.P.) and ETP Holdco Corporation—which are named only in the *Commonwealth of Pennsylvania* action and therefore whose answer applies only to that action—did not design, manufacture, market, distribute, or refine MTBE or gasoline containing MTBE.

[4] To the best of Sunoco's knowledge, Puerto Rico Sun Oil Company—which is named only in the *Commonwealth of Puerto Rico* action and therefore whose answer applies only to that action—did not design, manufacture, or refine MTBE of gasoline containing MTBE.

each of the above-noted cases in which Sunoco has been properly named and served (hereinafter "Complaints") as follows:

I.       **ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS**

    A.       **Basic Defendant Information**

        Sunoco, Inc. (R&M) (now known as Sunoco (R&M) LLC, formerly known as Sun Company, Inc. (R&M), Sun Oil Company of Pennsylvania and Sun Oil Company of Pennsylvania, among other names) was a Pennsylvania corporation until it converted to a Pennsylvania limited liability company under the name of Sunoco (R&M), LLC on December 28, 2016.  Its principal place of business is 8111 Westchester Drive, Suite 600, Dallas, Texas 75225, and its agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

        Sunoco, Inc. (formerly known as Sun Oil Company (PA), Sun Oil Company, and Sun Company, Inc. among other names) was a Pennsylvania corporation until it converted to a Pennsylvania limited liability company under the name of ETC Sunoco Holdings LLC on December 11, 2018, with its principal place of business at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225.  Its agent is the Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

        Sunoco Partners Marketing & Terminals L.P. is a Texas limited partnership with a principal place of business at 3807 West Chester Pike, Newtown Square, Pennsylvania 19073, and that its agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

        Energy Transfer Partners, L.P. (now known as Energy Transfer Operating, L.P.) admits that it is a Delaware limited partnership with its principal place of business at 811 Westchester Drive, Dallas, Texas 75225, and that its agent is the Corporation Service Company,

251 Little Falls Drive, Wilmington, Delaware 19808.  Energy Transfer Partners, L.P. (now known as Energy Transfer Operating, L.P.) merged with Sunoco, Inc. (now known as ETC Sunoco Holdings LLC, formerly known as Sun Oil Company (PA), Sun Oil Company, among other names) in October 2012.

ETP Holdco Corporation is a Delaware corporation with its principal place of business at 811 Westchester Drive, Dallas, Texas 75225.  Its registered agent is the Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  ETP Holdco Corporation is a wholly owned subsidiary of Energy Transfer Partners, L.P. (now known as Energy Transfer Operating, L.P.).  Energy Transfer Partners, L.P. (now known as Energy Transfer Operating, L.P.) merged with Sunoco, Inc. (now known as ETC Sunoco Holdings LLC, formerly known as Sun Oil Company (PA), Sun Oil Company, among other names) in October 2012.

Puerto Rico Sun Oil Company, which became Puerto Rico Sun Oil Company LLC in 2001, merged with and into Sunoco (R&M), LLC in 2018.  Its principal place of business is 8111 Westchester Drive, Suite 600, Dallas, Texas 75225, and its agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

    **B.**    <u>**Jurisdiction**</u>

Sunoco denies that jurisdictional allegations made by certain Plaintiffs are sufficient to confer subject matter jurisdiction upon the Court.

    **C.**    <u>**Sale or Distribution of Gasoline with MTBE or TBA to States in Question**</u>

Sunoco admits that it manufactured, refined, distributed, supplied, sold, or marketed gasoline containing MTBE in certain areas, but denies that it did so in all relevant areas.  Sunoco denies that it manufactures, refines, distributes, sells or markets gasoline to which TBA has been intentionally added.

D.     **Allegations Regarding Production of MTBE or TBA**

Sunoco, at one or more times during the relevant time period, manufactured

MTBE.  Sunoco specifically denies that it "introduced" MTBE.

E.     **Allegations Regarding Properties and Behavior of MTBE**

Sunoco admits that MTBE is an aliphatic ether that does not occur naturally.

Sunoco admits that there are various methods for the production of MTBE and that one method

of production is from methanol and isobutylene.

Sunoco states that solubility and mobility are relative properties and that while

MTBE and other ethers may be more soluble and mobile in water than certain gasoline

components, such as the BTEX compounds, they are less soluble and mobile in water than other

components sometimes blended in gasoline, such as ethanol.  Sunoco further states that MTBE's

behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of

factors, including the nature or method of its release, the geological setting, and environmental

and microbial factors.

Sunoco states that while under certain conditions MTBE may biodegrade less

readily than some other components of gasoline, MTBE has been found to naturally attenuate

and biodegrade in numerous ways.

F.     **Allegations Regarding MTBE's Degradation Product:  TBA**

Sunoco admits that TBA is the product of the hydrolysis of isobutylene.  Sunoco

admits that TBA can be an intermediate product of MTBE biodegradation.  Sunoco is without

sufficient knowledge or information as to the truth of the remaining allegations concerning the

use of TBA as an oxygenate in gasoline.

Sunoco states that solubility and mobility are relative properties and that TBA is

more soluble and mobile in water than certain gasoline components, such as the BTEX

compounds.  Sunoco further states that TBA's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Sunoco is without sufficient knowledge or information as to the truth of the remaining allegations concerning the properties, characteristics and persistence of TBA in groundwater, or its presence in water supplies.  Sunoco denies that it breached any duty to Plaintiffs, regulators, or the general public.

### G.    Allegations Regarding Motivation of Defendants to Add MTBE to Gasoline

Sunoco admits only that MTBE was added to certain gasoline products in varying concentrations to comply with federal fuel volatility and oxygenate requirements and/or to improve the octane rating of these products.  Sunoco denies that MTBE was not the only viable option of achieving higher octane levels in gasoline.

Sunoco denies allegations that it produced or marketed MTBE to profit from gasoline refining "waste byproducts."  Similarly, Sunoco denies that it added MTBE to gasoline solely "to boost octane cheaply and increase [its] own profits."  Sunoco denies that MTBE is a "waste byproduct" of the process of refining intermediate feedstocks into gasoline.

Sunoco admits that in 1990, with the Clean Air Act amendments (hereinafter "CAAA"), the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992).  In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.  Reformulated gasolines (hereinafter "RFG") used since that time have sometimes contained between 10% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content.

Sunoco denies that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and oxy-fuel regions when CAAA requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.  Sunoco is without sufficient knowledge or information as to whether the available supply of ethanol became sufficient to meet the demand for oxygenated gasoline at any relevant time.

Sunoco admits that at all times when it owned refineries, refined intermediate feedstocks, and made gasoline, it complied with the legal requirements of the lead phase-out, the RFG Program the Oxygenated Fuel Program and the Mobile Source Air Toxics Rule.  Sunoco further states that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

H.     **Allegations Regarding Contamination of Groundwater and Gasoline Containing MTBE**

Sunoco states that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  Sunoco further states that MTBE's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the nature, extent and persistence of leaks, spills, or releases of MTBE upon groundwater or surface water.

Sunoco admits that sensitivities to the taste and odor of MTBE vary among individuals and depends on other variables, such as personal experience and other substances in

the water.  Sunoco states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning human health risks from MTBE.  Sunoco states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

## I.    <u>Allegations Regarding Storage and Handling of Gasoline</u>

Sunoco admits that it is commonly known that gasoline is sometimes released into the environment from underground storage tanks ("USTs") and other means, and states that it and, according to reports, other major oil companies, have spent hundreds of millions of dollars or more over the past 30 years to upgrade USTs to comply with federal regulations, eliminate or reduce leaks, and to improve leak detection.  Sunoco states that it is common knowledge that gasoline, whether or not it contains MTBE, is a dangerous product that should always be handled carefully and should not be spilled.  Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning gasoline containing MTBE "exacerbat[ing] the threat that leaking USTs and other spills presented to groundwater;" "additional quantities of MTBE reach[ing] the soil and groundwater in the form of rainfall;" or "additional quantities of MTBE reach[ing] the soil and groundwater through vaporization from USTs."

Sunoco is without sufficient knowledge or information as to the truth of Plaintiffs' allegations regarding the existence of "widespread contamination" of groundwater by MTBE. Sunoco states that Plaintiffs' allegation that "MTBE contamination of groundwater was and is … inevitable and foreseeable" is a legal conclusion which does not require a response by Sunoco.

**J.      Allegations Regarding Knowledge of MTBE Contamination at Particular Locations in 1980s**

The Complaints purport to describe various publicly reported incidents of MTBE contamination in New Jersey, New York, and Maine in the 1980s.  Sunoco states that it was widely known among government regulators in the 1980s that various incidents involving releases of gasoline containing MTBE -- including those listed in Plaintiffs' Complaints -- had occurred.

Sunoco admits that in the early 1980s there was publicity regarding a contamination event in Rockaway, New Jersey.  Sunoco states that it is aware of certain release events in New York, some of which involved MTBE.

Sunoco states that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine.  Sunoco states that information about MTBE was known to government and the scientific community, as the 1986 Garrett and Moreau paper illustrates.

**K.      Allegations Regarding Defendants' "Constructive Knowledge" of MTBE and "Threats Posed to Groundwater"**

Sunoco states that Plaintiffs' allegation that "Defendants were or should have been aware that MTBE contamination of groundwater was inevitable, as a result of MTBE's water-seeking properties, recalcitrance to biodegradation and bioremediation, and the long history of nationwide gasoline spills, leaks, and other losses …" is a legal conclusion which does not require a response by Sunoco.

Sunoco states that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the American Petroleum Institute's ("API") Toxicology Committee.

Sunoco is without sufficient knowledge or information as to the truth of the allegations that it had "early knowledge" of any "need to do low level, long-term ingestion studies on the effects of MTBE." Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning whether such studies had been conducted by other persons, entities or organizations.

Sunoco denies Plaintiffs' allegation that it "possess[es] vastly superior knowledge, resources, experience and other advantages in comparison to anyone or any agency" with respect to gasoline and MTBE. Sunoco denies Plaintiffs' allegation that at all times relevant to this litigation it has "been in a position to know, identify and confirm the threat which MTBE posed and poses to groundwater."

Sunoco denies Plaintiffs' allegations that it failed to state the "truth about MTBE" and "act in accordance with the truth about MTBE." Furthermore, Sunoco states that Plaintiffs' allegation that it had "a duty to disclose" information about MTBE is a legal conclusion which does not require a response by Sunoco.

Sunoco denies that it breached any duty to Plaintiffs, regulators, or the general public.

L. **Allegations Regarding Participation in Industry Associations or Lobbying Activities**

The chemical properties of ethers like MTBE have been known in the public arena for many years. Plaintiffs' claim that Defendants somehow hid this information from them, or from the U.S. government, is baseless. Sunoco denies that it had any agreement with another Defendant to withhold from Plaintiffs or government regulators information concerning MTBE. Specifically, Sunoco denies that in the early 1980s it formed or was part of any formal or informal task-forces or committees created for the "purpose of concealing the actual threat of

MTBE, facilitating the … use of MTBE without regard to its impact on Plaintiff(s) and convincing the public and regulators that increasing concentrations of MTBE in gasoline was desirable."

Sunoco admits it was at one or more times during the relevant time period a member of the API, the Oxygenated Fuels Association ("OFA"), and/or the MTBE Committee. Sunoco denies that its membership in API, OFA, and/or the MTBE Committee constituted "conspir[ing] to conceal the risk of MTBE contamination of groundwater" and Sunoco further denies that its membership in API, OFA, and/or the MTBE Committee constituted "placing corporate profits" above protection of the environment and Plaintiffs.

Sunoco admits that prior to 1990, Congress was preparing to take action to address the nation's smog problem.  Sunoco admits that federal government agencies were aware of information concerning MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986.  Sunoco states that it, like the federal government, was aware of the Garrett and Moreau paper in or about 1986.  Sunoco admits that it participated in an OFA committee called the MTBE Toxicology Committee.  Sunoco admits that a Testing Consent Order was entered with EPA in or about 1988 by various major oil companies.

In response to Plaintiffs' allegation that Congress adopted the RFG Program as part of the CAAA "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," Sunoco states that many major oil companies in fact actively resisted the RFG Program's requirement of oxygen content levels.

**M.**     **Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments**

Sunoco states that although the CAAA did not literally require the use of MTBE as a gasoline additive, in practical terms, the CAAA certainly did compel MTBE's use.  EPA and

Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use.

N.   **Allegations Regarding MTBE-Related Actions Taken by State or Federal Governmental Bodies**

Sunoco admits that in 2001, EPA provided advance notice of its intent to initiate rulemaking pursuant to TSCA to eliminate or limit the use of MTBE as a fuel additive.  No such rulemaking was ever initiated.  Sunoco admits that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future.  Sunoco admits that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

O.   **Allegations Regarding Representations to Plaintiffs and the Public, Including Downstream Gasoline Handlers, About Gasoline with MTBE**

Sunoco denies that it "misrepresented the properties of MTBE" to Plaintiffs or the public, or "withheld information" about "the dangers of MTBE."  Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning when the public "started to become aware of the dangers of MTBE."

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning representations made by George Dominguez of the MTBE Committee on April 1 and 2 of 1987.  Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning a letter written in 1994 by "an official with the API" regarding the use of MTBE.  Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the publishing and distribution of the pamphlet on public health issues and MTBE in April 1996 by an OFA Agent.

Sunoco denies that it at any relevant time "greenwashed shameful facts," or "judged" MTBE contamination "too costly to clean up."  Sunoco states that its policy

consistently has been to promptly and effectively clean up any gasoline spill, regardless of its MTBE content.

Sunoco states that it is without sufficient knowledge or information as to the truth of the allegations concerning what alternative downstream handlers and the general public would have sought or whether the downstream handlers and the public would have demanded MTBE-free gasoline.

Sunoco states that Plaintiffs' allegation that its "failure to warn of the hazards posed by MTBE contamination of groundwater … deprived [Plaintiffs] of facts from which its injury from MTBE contamination could reasonably have been inferred" is a legal conclusion that does not require a response by Sunoco.  Sunoco denies that it breached any duty to warn or deprived Plaintiffs of any facts.

**P.** **Allegations Regarding Defendants Use of MTBE in Gasoline Post-Creation of the RFG Program**

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning historical or recent trends of MTBE use and content of MTBE in gasoline by the oil industry after the creation of the RFG program.

Sunoco denies that "MTBE [was] [its] oxygenate of choice," and denies that it "decided to forego" use of ethanol.  Sunoco states that due to supply and transport issues, ethanol has not been available to satisfy all the requirements of the RFG program.

**Q.** **Allegations Regarding MTBE's Effect upon Groundwater and Groundwater Wells**

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the frequency and extent of MTBE contamination in groundwater and surface water.

The findings and reports of the EPA Blue Ribbon Panel speak for themselves and Sunoco denies Plaintiffs' attempt to characterize or summarize them.

**R.    Allegations Regarding Plaintiffs' Claimed Inability to Identify Relevant Sources of Gasoline Leaks or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable.  In the vast majority of leak incidents, a responsible party can be and is identified.

Sunoco denies that gasoline can never be traced from a contamination site to its terminal or refinery source.

**S.    Allegations Purporting to Quote or Summarize Documents**

Numerous paragraphs in each Complaint purport to quote from or summarize documents, statutes, and regulations.  These written materials speak for themselves.  The documents, statutes, and regulations referenced by Plaintiffs, which are not attached to the Complaints, are the best evidence of their content, and Sunoco therefore denies Plaintiffs' attempts to summarize or characterize the contents of these written materials.

**T.    Allegations Regarding Defendants Unrelated to Sunoco**

Sunoco is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the Complaints regarding the specific statements, acts, or omissions of Defendants unrelated to Sunoco.

**U.    Allegations Regarding Particular Claims or Counts**

In response to the portions of the Complaints purporting to state particular common law or statutory claims, Sunoco incorporates each paragraph of this Master Answer as if fully restated herein.  Sunoco denies it is liable for any legal claim in any MDL 1358 Complaint.

V.     **Allegations Regarding Claimed Injuries or Damages**

       Some Complaints make claims about contamination to specific wells or water sources, and others do not.  Sunoco is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the Complaints regarding specific incidents of alleged contamination.  Sunoco believes publicly available documents regarding Plaintiffs will demonstrate that many of the wells or water resources at issue have not been impacted by MTBE, or have been impacted only at levels well below the state action standard for MTBE.

       With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, Sunoco admits that Plaintiffs seek the relief mentioned in the Complaints, but denies that Plaintiffs are entitled to any relief.

W.     **Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

       Sunoco denies that it intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to Plaintiffs or any other party.

X.     **Certain Plaintiffs' Allegations of Ownership of the Groundwater Resources**

       To the extent that Plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, Sunoco denies these allegations and denies that these Plaintiffs have standing to bring any claim based on allegations of property damage.

Y.     **Certain Plaintiffs' Allegations of Injury to Natural Resources**

       Certain Plaintiffs' Complaints contain allegations of damage to natural resources and seek compensation and other relief as the alleged trustee and/or owner of those natural resources.  Sunoco admits that groundwater, surface waters, wetlands, and other ecological

resources exist within the Commonwealths at issue in MDL 1358 ("MDL states"); admits that some of those resources are privately owned and some are not; admits that some natural resources may and do provide commercial, industrial, recreational, and other services to the people of the MDL states and to the economies of the MDL states.

Sunoco further admits that the police power of certain Plaintiffs extends to the protection and conservation of certain natural resources which are not the private property of any person or entity; admits that by a longstanding legal fiction this proposition is sometimes inexactly expressed by saying that a State is the owner or trustee of natural resources for the benefit of its people or citizens; admits that certain governmental agencies have limited regulatory authority with respect to natural resources within an MDL state as provided by law.

**Z.      Plaintiffs' Demands for Jury Trials**

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the Complaints.  These jury demands require no answer.  To the extent any answer is deemed necessary, Sunoco admits that the Plaintiffs demand jury trials, but denies that they are entitled to them.

**AA.      Commonwealth of Pennsylvania's Insurance Claims**

<u>(1)      Second Amended Complaint, Paragraphs 20–31</u>

Paragraphs 20, 22, and 24–30 in the Commonwealth of Pennsylvania's Second Amended Complaint ("SAC") do not require a response by Sunoco.  To the extent that allegations in those paragraphs require a response from Sunoco, Sunoco denies them.

With respect to SAC Paragraphs 21 and 23, Sunoco admits that it owned and operated USTs and associated equipment for dispensing gasoline in Pennsylvania.  Sunoco further admits that it participated in the Pennsylvania Underground Storage Tank Indemnification Fund ("USTIF") program.  Sunoco admits that it received claim payments from

USTIF for eligible corrective action costs incurred at UST release sites in Pennsylvania.  Sunoco is without sufficient knowledge or information to form a belief as to the truth of any other allegations to the extent they relate to other Defendants or third parties.

Sunoco denies the allegations in SAC Paragraph 31 as they relate to Sunoco. Specifically Sunoco denies the allegation that Sunoco received payments from both private insurers and USTIF for the same remediation expenses at any site at issue in the SAC or that Sunoco received USTIF monies for which it was not eligible.  Sunoco is without sufficient knowledge or information to form a belief as to the truth of any other allegations to the extent they relate to other Defendants or third parties.

(2)    SAC Count VIII, Paragraphs 411 and 423–433

In response to SAC Paragraph 411, Sunoco incorporates by reference its responses to all preceding paragraphs as if fully restated herein.

SAC Paragraph 423 contains Plaintiff's definition of "Sunoco Insurance Defendants" for purposes of the SAC, to which no responses is required.  To the extent a response is required, Sunoco admits that Paragraph 423 contains Plaintiff's definition of "Sunoco Insurance Defendants," but denies that such entities are properly named in this action.

With respect to SAC Paragraphs 424–427, Sunoco admits certain Sunoco Defendants held insurance policies that provided coverage for a variety of potential losses covering various time periods, but denies Plaintiff's characterization of those policies.  Sunoco is without sufficient knowledge to admit or deny these allegations as they relate to entities other than Sunoco, or to any remaining allegations in Paragraphs 424–427.

Sunoco is without sufficient knowledge or information to form a belief as to the truth of any allegations in SAC Paragraph 428.

Sunoco denies the allegations in SAC Paragraphs 429–430.

With respect to SAC Paragraph 431, Sunoco admits that it initiated litigation against certain of its insurers, but denies the Commonwealth's characterization of that litigation and denies the Commonwealth's implication that Sunoco improperly sought recovery under any insurance policy.

Sunoco denies the allegations in SAC Paragraphs 432–433.

Sunoco is without sufficient knowledge or information to form a belief as to the truth of any other allegations in SAC Count VIII.

(3)     SAC Count IX, Paragraphs 520–531

In response to SAC Paragraph 520, Sunoco incorporates by reference its responses to all preceding paragraphs as if fully restated herein.

SAC Paragraphs 521–529 require no response from Sunoco.  To the extent any allegation in those paragraphs requires a response as it relates to Sunoco, it is denied.  Sunoco is without sufficient knowledge or information to form a belief as to the truth of any allegations in those paragraphs as they relate to other Defendants or third parties.

Sunoco is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in SAC Paragraphs 530–531 concerning parties other than Sunoco.  As to the allegations directed at Sunoco, those allegations are denied.

## II.     GENERAL DENIAL OF REMAINING ALLEGATIONS

Sunoco denies the remaining allegations in the Complaints for which an answer is presently required, and in which it has been properly named and served.

## III.     RESERVATION OF RIGHT TO AMEND AND/OR SUPPLEMENT

Sunoco reserves the right to amend and/or supplement this Master Answer.

## IV.    <u>AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES</u>

For its separate defenses to the Complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served, Sunoco states as follows:

1.      Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.      At all relevant times, Sunoco's actions and its products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations, and specifications.

3.      Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of Sunoco.

4.      All acts and conduct of Sunoco, as alleged in the Complaints, conformed to and were done pursuant to statutes, government regulations, and industry standards, and were based upon the state of knowledge existing at all material times alleged in the Complaints.

5.      The relief sought by Plaintiffs' Complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.      Plaintiffs have failed to exhaust their administrative remedies.

7.      Plaintiffs have a plain, common, adequate, and speedy remedy at law.  The equitable causes of action alleged in the Complaints are thus barred.

8.      Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant

to its obligations under the Clean Air Act ("CAA") would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.      If it is determined that Plaintiffs or anyone on whose behalf Plaintiffs are allegedly suing, was injured, as set forth in the Complaints, which Sunoco denies, Sunoco alleges that such hardship is outweighed by the convenience and public benefit rendered by Sunoco's actions.

10.     Each purported cause of action asserted in the Complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.     To the extent that Plaintiffs have received or may receive the requested relief from a governmental agency, Sunoco asserts its entitlement to an appropriate set-off or reduction of any judgment against it.

12.     The appropriate forum for Plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.     The claims set forth in the Complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.     Each purported cause of action of the Complaints as applied to Sunoco is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate commerce in violation of the Commerce Clause of the United States Constitution.

15.     The Complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant Fed. R. Civ. P. 12(b)(6).

16.     Because Plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, Plaintiffs' claims are not ripe for adjudication.

17.     Plaintiffs suffered no losses or injuries that were proximately caused by Sunoco.

18.     Sunoco's conduct was not the cause in fact of any injuries alleged by Plaintiffs.

19.     Sunoco did not own, control, or release all the petroleum products that are alleged to have caused or threatened contamination of Plaintiffs' wells.

20.     Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

21.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to Sunoco are *de minimis* and therefore any injunction would pose a disproportionate hardship on Sunoco, as well as on the public, in comparison to the injury and/or damages allegedly suffered by Plaintiffs.  Accordingly, Plaintiffs are not entitled to injunctive relief as to Sunoco as a matter of law.

22.     Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

23.     Plaintiffs may not seek attorneys' fees as an element of relief.

24.     Plaintiffs have failed to properly present any claim for attorneys' fees.

25.     Because Plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be apportioned among same.

26.     The claims set forth in the Complaints are barred, in whole or in part, by the mootness doctrine.

27.     The Complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to Sunoco.

28.     The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

29.     The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

30.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against Sunoco in the Complaints.

31.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

32.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden is shifted in the future, Sunoco denies that it contributed to the contamination at issue.

33.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

34.     Plaintiffs assumed the risk of all acts, injuries, and damages that Plaintiffs now assert against Sunoco.

35.     Sunoco is entitled to total or partial indemnity from those individuals or entities who are responsible for Plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

36.     Plaintiffs lack the capacity to sue.

37.     Plaintiffs lack standing to sue.

38.     Plaintiffs' claims are barred because Sunoco's conduct caused no physical impact to Plaintiff's property.

39.     There is a defect or misjoinder of parties, in that Plaintiffs have failed to join indispensable or necessary parties.

40.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

41.     The claims set forth in the Complaints fail, in whole or in part, because of the failure to identify which Defendant, if any, proximately caused the alleged harm.

42.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to Sunoco.  Such actions are the superseding, supervening and/or intervening cause of Plaintiffs' injuries and therefore Plaintiffs may not recover from Sunoco as a matter of law.

43.     Plaintiffs' claims must be dismissed because they have failed to identify the particular Defendant that is responsible for the harms alleged by Plaintiffs.

44.     At all times, Sunoco acted with due care with respect to any petroleum or petroleum products used and took reasonable precautions against foreseeable acts or omissions.

45.     Any Sunoco gasoline product sold or distributed for resale was properly designed, formulated, prepared, and otherwise not defective in any respect.

46.     Plaintiffs' strict liability claims fail because the benefits of the product that Plaintiffs allege caused them harm, outweigh its dangers, if any.

47.     To the extent required, Sunoco provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

48.     Plaintiffs have failed to allege that Sunoco's alleged failure to provide an adequate warning proximately caused their injuries.

49.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by Sunoco was not unreasonably dangerous when made.

50.     The Plaintiffs' claims against Sunoco are barred by the bulk supplier doctrine.

51.     Sunoco sold its products to knowledgeable and sophisticated purchasers, and any injury alleged by Plaintiffs was caused by such purchasers' failure to observe known standards of care.

52.     Any injury, damage, or loss sustained by the Plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

53.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

54.     If any damages or injuries alleged in the Complaints occurred because of leaks in the gasoline storage tanks and associated piping, Sunoco is not liable for those damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for their intended purpose.

55.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the Defendants constituting an intentional, unreasonable interference with the Plaintiffs' interest in the use and enjoyment of their property.

56.     Plaintiffs' public nuisance claims must be dismissed because Plaintiff has failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

57.     Sunoco alleges that it owed no duty of care to Plaintiffs in connection with the matter alleged in the Complaints.

58.    The Complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

59.    Plaintiffs fail to state a claim for trespass because they cannot allege facts demonstrating willful intent to intrude on their property.

60.    Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

61.    The Complaints and each cause of action are barred based on Sunoco's valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

62.    Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

63.    There is no legal relationship upon which any duty could possibly be owed by Sunoco to Plaintiffs, and therefore, Plaintiffs' causes of action fail as a matter of law.

64.    The injuries and damages, if any, alleged by Plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under Plaintiffs' own legal theories, Sunoco is not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against Sunoco, such liability must be reduced where, and to the extent that, other compounds – about which Plaintiffs do not complain – contributed to the alleged injury.

65.    Sunoco is not liable for contamination where chemical compounds other than MTBE exceed state action levels or standards, requiring cleanup or regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

66.     Any injury, damage, or loss sustained by the Plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

67.     If it is determined that Plaintiffs or anyone on whose behalf Plaintiffs are allegedly suing, was injured, as set forth in the Complaints, which Sunoco denies, Sunoco alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to the Plaintiffs.

68.     If it is determined that Plaintiffs or anyone on whose behalf Plaintiffs are allegedly suing, was injured, as set forth in the Complaints, which Sunoco denies, Sunoco alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

69.     The injuries alleged in the Complaints, if any, may be reasonably apportioned among the Defendants, as each Defendant's alleged acts and omissions, including Sunoco's, is divisible and distinct.  Therefore, no Defendant is jointly and severally liable to Plaintiffs for any claim alleged in the Complaints.

70.     Plaintiffs have unreasonably failed to mitigate their damages, if any.

71.     To the extent that any party has settled or may settle in the future with Plaintiffs, Sunoco asserts its entitlement to an appropriate credit or reduction of any judgment(s) against it.

72.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law, prohibiting excessive fines, principles of federalism, and the Commerce Clause.

73.     Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entities/authorities have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

74.     Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

75.     The damages sought by Plaintiffs are wholly speculative and conjectural.

76.      Some or all of the injury or damages suffered by Plaintiffs were the product of conduct for which Sunoco cannot have liability to Plaintiffs, since it is lawfully undertaken by Sunoco and its predecessors in the exercise of their rights as owner(s) of real property.

77.     Plaintiffs have not incurred "clean-up and removal" costs or "response costs" as those terms are defined in applicable statutes.

78.     Sunoco reserves the right to assert additional defenses that may be pertinent to Plaintiffs' claims when the precise nature of said claims are ascertained through discovery and based on facts developed as this matter progresses.

79.     Sunoco incorporates by reference any affirmative defense, whether general or specific to a specific State, alleged by other Defendants in MDL 1358.

The pleading of the defenses described above shall not be construed as an undertaking by Sunoco of any burden which would otherwise be the responsibility of Plaintiffs.

## V.     AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For its separate defenses to the Complaints in MDL 1358 from particular jurisdictions (for which an answer is presently required, and in which Sunoco has been properly named and served), Sunoco states as follows:

**PENNSYLVANIA**

1.     The Commonwealth of Pennsylvania's Second Amended Complaint ("SAC") and each purported cause of action, including those the Plaintiff purports to assert in its *parens patriae* capacity, are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to 42 Pa. Cons. Stat. Ann. § 5524.

2.      Plaintiffs have failed to exhaust their administrative remedies.  The Commonwealth must address the alleged leaks and/or spills through governmental agencies uniquely equipped to handle that task and charged with doing so, including, but not limited to, the Regional Offices of the Pennsylvania Department of Environmental Protection and its predecessor the Pennsylvania Department of Environment and Resources ("PADEP"), PADEP'S Bureau of Waste Management, Bureau of Land Recycling and Waste Management, Division of Storage Tanks in the Bureau of Watershed Conservation, and Bureau of Environmental Cleanup and Brownfields

3.      The Commonwealth's claims are barred, in whole or in part, by the doctrine of unclean hands.  Plaintiff cannot recover damages to the extent that its own improper conduct caused the alleged damages.  For example, on information and belief, both during and after the relevant time period when Plaintiff knew of the alleged risks presented by gasoline containing MTBE, Plaintiff (i) owned and operated underground storage tanks ("USTs"), (ii) arranged for the delivery and/or storage of gasoline containing MTBE in such USTs, and (iii) was responsible for the release of gasoline containing MTBE from such tanks.  Further, on information and belief, the Commonwealth performed and/or supervised the remediation of leaks, spills and/or releases of gasoline containing MTBE at sites that it owned or operated, and now seeks to hold Defendants liable for the damages caused by the Commonwealth's own storage of gasoline containing MTBE at such sites, releases of gasoline at such sites, and failure to clean-up such releases in a manner sufficient to avoid the damages it now claims.  The Commonwealth is prohibited from recovering from the Sunoco Defendants the damages caused by its own improper conduct.

4.      Plaintiff cannot invoke the doctrine of *nullum tempus* because the SAC, or one or more of the purported causes of action therein, does not seek to enforce a strictly public right.

5.     Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff seeks to impose liability and/or penalties on the Sunoco Defendants retroactively, or for conduct that was not actionable at the time it occurred.

6.     Plaintiff's claims are barred in whole or in part because there is a defect or misjoinder of parties, in that the Commonwealth failed to join indispensable or necessary parties.  The Commonwealth failed to sue the necessary or indispensable parties, which include, but are not limited to, downstream handlers that own underground storage tanks in Pennsylvania; retail gasoline stations in Pennsylvania that are independently owned and not operated by major oil companies; numerous jobbers operating in Pennsylvania; numerous rack marketers; various gasoline traders; gasoline blenders or owners of gasoline blending facilities in Pennsylvania; manufacturers of underground storage tanks; merchant producers of neat MTBE; importers of neat MTBE; and hundreds of spillers of gasoline and "Responsible Parties" identified by PADEP.

7.     Each purported cause of action asserted in the Complaint is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

a.     Defendants deny that MTBE and gasoline containing MTBE constitute defective products and/or that MTBE and gasoline containing MTBE were negligently designed, manufactured, stored, or handled by Defendants.

b.     However, even if Plaintiff could prove that MTBE and gasoline containing MTBE are defective products, or that MTBE and gasoline containing MTBE were negligently

designed, manufactured, stored, or handled by Defendants, Plaintiff cannot recover damages against Defendants because it assumed any risks, to the extent they existed, associated with MTBE and gasoline containing MTBE.

c.   On information and belief, Plaintiff, by and through several of its agencies (including, but not limited to, PADEP), and from those agencies' direct experiences at gasoline release sites, by no later than 1990 and perhaps significantly before that date, knew or should have known each of the alleged characteristics and properties of gasoline containing MTBE that Plaintiff now claims render such gasoline a "defective product," constitute negligent design by certain Defendants, and about which Plaintiff now alleges in its Complaint that Defendants should have provided warnings.  Because various acts taken by Plaintiff after it acquired such knowledge demonstrate that it assumed the alleged risks (to the extent they existed) relating to gasoline containing MTBE, Plaintiff is precluded from recovering any damages caused by its assumption of those alleged risks.

d.   Specifically, Plaintiff alleges that MTBE was more soluble than most other components of gasoline, could travel farther and faster in groundwater, in some instances, than most other components of gasoline, and could impart a taste and/or odor to drinking water at relatively low levels.  To the extent MTBE and gasoline containing MTBE possess these properties, Plaintiff knew or should have known that this was the case by no later than 1990 and perhaps significantly before that date based on its own experiences at gasoline release sites.

e.   Notwithstanding its actual or constructive knowledge, Plaintiff had gasoline containing MTBE delivered to its own storage tanks and, in many instances, supervised the investigation and remediation of gasoline releases from those storage tanks.

f.   Also notwithstanding its actual or constructive knowledge of MTBE's alleged characteristics and risks (to the extent they existed), after 1990 Plaintiff decided to opt several Pennsylvania counties into the federal RFG program.  Plaintiff made this opt-in decision knowing that, for many logistical and other reasons, refiners were (and would continue) manufacturing RFG by adding MTBE (an oxygenate) to comply with the RFG Program's mandate that such RFG contain an oxygenate.  Plaintiff made its opt-in decision so that, *inter alia*, it would obtain the significant air quality benefits that it has acknowledged resulted from the use of RFG in general, and RFG containing MTBE in particular.

g.   Notwithstanding its actual or constructive knowledge of MTBE's alleged characteristics and alleged risks (to the extent they existed), as of 2000 Plaintiff still recognized that the use of MTBE in Pennsylvania gasoline had beneficial effects.  In December 2000, Plaintiff created an "MTBE Action Plan" that acknowledged MTBE's role in "reducing air toxics emissions and pollutants that form ground level ozone."  CMW-PA-0004382–83.  To this day, Plaintiff has not banned the use of MTBE in gasoline in Pennsylvania.

h.   As demonstrated by the foregoing, at all relevant times Plaintiff was fully aware of MTBE's alleged characteristics and of the alleged risks posed by the sale and use of gasoline containing MTBE in Pennsylvania.

i.   As demonstrated by the foregoing, Plaintiff appreciated the alleged risks attendant to the sale and use of gasoline containing MTBE in Pennsylvania.

j.   As demonstrated by the foregoing, Plaintiff voluntarily responded to MTBE's alleged properties and risks by (1) opting several Pennsylvania counties into the federal RFG Program, knowing that MTBE would be the oxygenate used to meet the RFG Program's

oxygenate mandate; (2) continuing to allow the use of MTBE in gasoline sold in

Pennsylvania; and (3) taking delivery of, storing, and in many instances remediating releases

of gasoline containing MTBE at its own sites.

      k.   As a result of the foregoing, Plaintiff assumed the alleged risk.

8.      The mootness doctrine bars, in whole or in part, claims for those sites where, because the

issue of responsibility or damages already has been fully or partially resolved, there is no "live"

controversy.  For example, on information and belief, certain sites that appear to be at issue in

this case already have received regulatory closure from Plaintiff, already have been subject to

prior enforcement actions, and/or already have been addressed by prior settlements or consent

decrees executed on behalf of, or with the knowledge of, Plaintiff.  Additionally, on information

and belief, other sites that appear to be at issue in this case have never had an MTBE or TBA

detection in the groundwater, or do not currently have any MTBE or TBA in the groundwater.

Claims at sites like these (and others) are barred by the mootness doctrine because no actual case

or controversy remains (or ever existed) and, therefore, the Court lacks jurisdiction over

Plaintiff's claims related to such sites.

9.      The Complaint and each purported cause of action are barred, in whole or in part, by the

defense of laches.  The State's unreasonable and inexcusable delay in filing this action caused

substantial prejudice to Sunoco.  As detailed below, Plaintiff has known about MTBE for

decades and, through the PADEP, has worked cooperatively with the Defendants for years to

ensure that releases of gasoline containing MTBE are effectively remediated in accordance with

the Commonwealth's comprehensive environmental statutes and regulations.  Despite having all

of this knowledge and experience, Plaintiff waited years to belatedly commence this litigation.

Plaintiff's unreasonable, exceptional and inexcusable delay in bringing this action violates due

process and caused substantial prejudice to Sunoco's ability to respond to and obtain discovery to present its defenses and have a meaningful opportunity to be heard.

a.      On information and belief, and accepting Plaintiff's allegations regarding the alleged risks of MTBE, Plaintiff had knowledge of those alleged risks for decades before filing this litigation.  For instance, Plaintiff extensively studied the impact of releases of MTBE-blended gasoline and adopted comprehensive measures to address such impacts many years prior to filing this action.  Indeed, PADEP required testing for MTBE at UST release sites as early as the mid-1990s.

b.      On information and belief, Plaintiff also was aware of other MTBE litigation filed against certain of the Defendants named here and, specifically, the more than 100 cases that were transferred and consolidated as Multidistrict Litigation No. 1358 in this Court beginning in 2000.  On information and belief, Plaintiff also was aware of and monitored other non-MDL MTBE litigation, including the sovereign case filed by the State of New Hampshire in 2003.

c.      On information and belief, Plaintiff began exploring the possibility of initiating MTBE litigation with contingency-fee plaintiffs' law firms no later than 2010.

d.      Despite having knowledge about the alleged presence of MTBE in Pennsylvania groundwater and drinking water for decades, and also having knowledge of other MTBE-related litigation, the Commonwealth did not file the instant action until 2014.

e.      Plaintiff's inexcusable delay in bringing this action causes prejudice to the Sunoco.  Key witnesses are no longer available or no longer remember relevant information, and certain documents and other evidence no longer are available.  As a result, Sunoco's

ability to investigate Plaintiff's claims and prepare their defenses has been prejudiced by Plaintiff's inexcusable delay in bringing its claims.

10.     Plaintiff is estopped from asserting claims at law or in equity against Sunoco in the SAC. Equitable estoppel is based on numerous actions that Plaintiff voluntarily took and on which Sunoco relied.  Such reliance is detrimental unless equitable estoppel is applied.

a.     For example, Plaintiff, acting through PADEP, set action levels for MTBE and established other risk-based corrective action policies that allowed for the investigation, remediation and closure of sites where low levels of MTBE remained in soil and groundwater.

b.     Plaintiff established a 20 parts per billion action level for MTBE in the mid-1990s, required testing for MTBE at UST release sites beginning as early as the mid-1990s, and requires parties responsible for releases from USTs to restore or replace any drinking water supply with any detectable level of MTBE in it.

c.     Parties conducting investigations and/or remediations of sites where MTBE was released ("Responsible Parties"), including certain Defendants, for years have worked closely and cooperatively with PADEP and abided by, and continue to abide by, the corrective action policies and regulations enacted by Plaintiff.  These Responsible Parties, including many Defendants, have devoted significant time and resources to investigating and remediating gasoline release sites, including sites with MTBE impacts, at and under Plaintiff's direction and in accordance with its policies and regulations.  In so doing, these Responsible Parties have relied in good faith on Plaintiff's oversight, policies, regulations and other guidance, and PADEP's determination that action no longer is needed at a particular site pursuant to PADEP's mandate to protect human health and the environment.  In addition, Defendants

that merely supplied gasoline to service stations in Pennsylvania relied in good faith on Plaintiff's policies, knowing that the parties responsible for releases at service stations would be required to follow PADEP's investigatory and remedial requirements, and that all investigative, remedial and closure activities were subject to PADEP oversight and approval on behalf of Plaintiff.

     d.     Notwithstanding the acts and positions detailed above that Plaintiff officially took in its stance as a regulator, as a litigant Plaintiff now seeks to hold all Defendants jointly and severally liable for, *inter alia*, the cost of "remediation of all groundwater containing detectable levels of MTBE until restored to non-detectable levels, including in both public and private drinking water wells." *See*, *e.g.*, SAC Count I, Prayer for Relief a.2).  Such relief would work to Defendants' detriment, requiring them to reinvestigate sites that were previously closed in compliance with PADEP regulations and with Plaintiff's explicit and informed approval, and to take other actions that Plaintiff previously deemed unnecessary to protect public health and the environment.  Plaintiff is equitably estopped from obtaining relief where Responsible Parties abided by corrective action policies and regulations that Plaintiff established, and where those Responsible Parties relied upon Plaintiff's guidance, directives and binding instructions at specific MTBE release sites, including but not limited to, Commonwealth-owned properties (where Plaintiff itself released gasoline containing MTBE and was the party responsible for performing remedial activities).

     e.     On information and belief, Defendants supplied parts of Pennsylvania with RFG that contained MTBE based on the Commonwealth's informed actions to voluntarily opt those geographic areas into the federal RFG Program.  Plaintiff is equitably estopped from

obtaining relief based on Defendants' supply of such RFG to those areas of the State,

including but not limited to, relief at properties owned by the Commonwealth.

11.     The Commonwealth's claims are barred in whole or in part to the extent the

Commonwealth received or may receive the requested relief from a governmental agency or any

other source, including, but not limited to, the EPA, USTIF and/or the Pennsylvania Insurance

Department.  These claims are barred because the Sunoco asserts its entitlement to an

appropriate set-off or reduction of any judgment against it.  Further, any award in damages for

treatment of MTBE must be set-off or reduced by the cost of treating other contaminants,

regardless of the presence of MTBE.

a.      Plaintiff waived the right to pursue damages for those gasoline release sites

where Plaintiff previously approved remediation plans and/or authorized site closure in a

manner that allowed MTBE to remain present, including sites where Plaintiff itself was the

party responsible for the gasoline release and subsequent cleanup.  Upon information and

belief, Plaintiff (and, specifically, the PADEP) approves a remediating party's corrective

action plan only after ensuring that implementation of the plan will adequately protect human

health, safety, and the environment.  The level of remediation required by such a corrective

action plan is site-specific and within the discretion of Plaintiff, who has the authority to

require Responsible Parties "to perform other tasks or make modifications as prescribed by

[PADEP]" in order to receive PADEP's approval of the remedial action.  *See* 25 Pa.

Code § 245.313(c)(4).  On information and belief, Plaintiff routinely approves corrective

action plans, including at Commonwealth-owned or Commonwealth-operated sites (where

Plaintiff itself released gasoline containing MTBE and performed remediation), which do *not*

require the complete removal of all MTBE from soil and/or groundwater.  Indeed, on

information and belief, in many instances Plaintiff (through the PADEP) approves corrective action plans that do not require active remediation at all but, instead, allow for the monitored natural attenuation of gasoline contamination, including MTBE contamination.

      b.     On information and belief, Plaintiff also often approves closure of remediation sites involving MTBE, ending the Responsible Parties' remediation obligations at the site, without requiring that all MTBE be removed at or around the site.  Plaintiff approves these closures where it has concluded that additional remediation is not necessary to protect public health and the environment.  Such closure decisions often are memorialized in "Act 2" letters from PADEP and, in at least some instances, those letters only reserve Plaintiff's right to pursue further enforcement for site impacts or activities that are unrelated to those for which closure has been granted.  Upon information and belief, some Act 2 letters include explicit liability protections for remediation of the site.  Plaintiff has waived the right to pursue the Responsible Party for additional remedial activity or costs relating to the MTBE that Plaintiff, in granting site closure, determined did not require further remediation.

12.    Any injury, damage or loss sustained by the Commonwealth was proximately caused by and/or contributed to by its own negligence, carelessness, and/or omissions.

      a.     Sunoco denies that MTBE and gasoline containing MTBE constitute defective products and/or that MTBE and gasoline containing MTBE were negligently designed, manufactured, stored, or handled.

      b.     However, even if Plaintiff could prove that MTBE and gasoline containing MTBE are defective products, or that MTBE and gasoline containing MTBE were negligently designed, manufactured, stored, or handled by Sunoco, Plaintiff cannot recover damages against Sunoco because it was contributorily negligent.

c.      On information and belief, Plaintiff owned (and still owns) multiple underground storage tank systems into which it placed gasoline containing MTBE.

d.      On information and belief, Plaintiff operated multiple underground storage tanks systems into which it placed gasoline containing MTBE.

e.      On information and belief, Plaintiff had a legal duty under the common law and its own statutes and regulations to inspect, maintain, repair and/or operate those underground storage tank systems into which it placed gasoline containing MTBE with due care and in a manner that protected human health and the environment.

f.      On information and belief, many of Plaintiff's aforementioned underground storage tank systems spilled, leaked or otherwise released gasoline containing MTBE into groundwater of Pennsylvania.

g.      On information and belief, the spills, leaks and/or releases of MTBE gasoline from underground storage tank systems owned and/or operated by Plaintiff proximately resulted in the contamination of groundwater resources in Pennsylvania.

h.      On information and belief, after the spillage, leakage and/or release of gasoline containing MTBE from its own underground storage tank systems, Plaintiff remediated the release sites in accordance with its own statutes and regulations.  As with many release sites for which Defendants were the Responsible Parties, Plaintiff ceased remediation activities at sites where its own underground storage tank systems released gasoline containing MTBE without requiring that all MTBE be removed at or around the site.  Plaintiff approved these closures because it appropriately concluded that additional remediation was not necessary to protect public health and the environment.

i.       However, if, as Plaintiff now alleges in this litigation, it was negligent or otherwise wrongful for Defendants to not remove all MTBE from sites where gasoline containing MTBE was released, it also was negligent or otherwise wrongful for Plaintiff to not remove all MTBE from sites where its own underground storage tank systems released gasoline containing MTBE.

j.       In the alternative, in remediating sites at which its own underground storage tank systems released gasoline containing MTBE, Plaintiff neglected to comply with one or more of the statutes and regulations that other Responsible Parties (including, allegedly, many of the Defendants in this case) must comply with in the event of such a gasoline release and, as a result, proximately caused additional contamination of the Commonwealth's groundwater resources.

k.       Plaintiff cannot hold Sunoco liable for Plaintiff's own releases of gasoline containing MTBE, or for Plaintiff's conduct in not following its own statutory and regulatory obligations under Pennsylvania law.

13.   The Commonwealth has unreasonably failed to mitigate its damages, if any.

a.       Plaintiff seeks to hold Defendants responsible for the cost of restoring groundwater and drinking water wells to undetectable levels of MTBE.  *See, e.g.*, SAC, Count I Prayer for Relief.  Yet, outside of this litigation, as a regulator, Plaintiff routinely permits Responsible Parties—including Commonwealth departments and agencies—to cease remediation with MTBE remaining in the environment at levels *above* the non-detect standard that it now demands be imposed in this case.  Plaintiff allows this to occur because it knows that remediation of MTBE to undetectable levels is not necessary to protect human health or the environment.  Upon information and belief, Plaintiff will approve a remediating

party's corrective action plan only after ensuring that implementation of the plan will adequately protect human health, safety, and the environment. The level of remediation required by such a corrective action plan is site-specific and within the discretion of Plaintiff, who has the authority to require Responsible Parties "to perform other tasks or make modifications as prescribed by [PADEP]" in order to receive PADEP's approval of the remedial action. *See* 25 Pa. Code § 245.313(c)(4). Indeed, Plaintiff could have set its environmental investigation/remediation standard for MTBE at zero, but it chose not to do so.

b.     Sunoco Defendants *agree* with Plaintiff that site investigation and remediation of MTBE to undetectable levels is not reasonable or necessary, for MTBE or any other constituent of gasoline. But if Plaintiff is allowed to pursue such extreme relief in this case as a litigant, Plaintiff would have failed to mitigate the very damages it now claims. By permitting Responsible Parties—including Commonwealth entities—to remediate only to certain site-specific levels, and to cease remedial activities before groundwater has been returned to so-called "pre-discharge" conditions, Plaintiff has neglected, for decades, to mitigate the conjured damages it now seeks to recover from many of those remediating parties in this case. Moreover, on information and belief, Plaintiff has contributed to its alleged damages by, for example, allowing or requiring Responsible Parties to remove remediation systems and monitoring wells that, under the Commonwealth's current litigation theory, must now be reactivated or re-installed again; and also by permitting MTBE to remain in groundwater at detectable (albeit safe) levels and potentially travel further in groundwater than it would have if Plaintiff had required remediation to pre-contaminated conditions at the time remedial action was taking place. On information and belief, Plaintiff

also has engaged in the above conduct in its role as the "Responsible Party" at Commonwealth-owned remediation sites—*e.g.*, ceasing remediation activities despite MTBE remaining in the groundwater at detectable levels.

      c.      In sum, Plaintiff should not be allowed to seek costs and injunctive relief for investigation and remediation of MTBE down to levels it never previously required of itself or other Responsible Parties.

14.    The SAC and each purported cause of action asserted therein fail because any attempt to impose liability on Sunoco without specific proof of injury, causation or damages would improperly relieve the Commonwealth of its burden of proof, prevent Sunoco from asserting certain individualized defenses and exculpating themselves at specific sites, and violate Sunoco's due process rights under the United States and Pennsylvania Constitutions.

15.    Plaintiff cannot recover for any alleged natural resource damages because it has no statutory or common-law basis to do so in this action.

16.    Plaintiff cannot obtain, via subrogation, reimbursement payments that USTIF made to Defendants and third parties for their investigation and remediation activities at certain release sites.

      a.      In this Complaint, "the Commonwealth sues pursuant to its statutory right of subrogation under 25 Pa. Code § 977.40(a) to the third-party claims against MTBE Defendants of the UST owners and operators who received payments under USTIF ...." SAC 40.

      b.      In subrogation, Plaintiff must step into the shoes of USTIF claimants, including many of the Defendants in this case, to assert claims that Plaintiff believes those claimants

could have brought against other parties for the cleanup costs at their sites. See 25 Pa. Code § 977.40(a).

c.       In this action, Plaintiff seeks reimbursements paid on claims submitted to USTIF before June 19, 2012 - two years before Plaintiff commenced this action on June 19, 2014.

d.       Plaintiff cannot recover via subrogation because a subrogee takes a subrogor's claims subject to any defenses that could be asserted against the subrogor. Those defenses include the statute of limitations, which, for the subrogated tort claims here, is two years. 42 Pa. Stat. § 5524 (stating that the statute of limitations for property damage actions based on negligent or intentional tort, including product liability, is two years).

e.       None of the subrogation claims are Plaintiff's to assert. Only USTIF, and specifically its Board, has the legal capacity to bring the claims. The Board is not a party to this action. Thus, Plaintiff may not assert subrogation claims.

17.     To the extent Plaintiff seeks to recover money paid by USTIF to the Sunoco Defendants from the Sunoco Defendants, its claims are barred by the anti-subrogation rule.

18.     To the extent Plaintiff seeks to recover payments from the Sunoco Defendants based upon claims that gasoline releases took place prior to 1994 at sites at which USTIF reimbursed the Sunoco Defendants for the costs of remediating those sites, its claims are barred by the doctrines of res judicata, collateral estoppel, and/or settlement and release based on USTIF's acceptance of those claims for payment.

19.     USTIF provides primary coverage for purposes of reimbursement of investigation and cleanup costs at underground storage tank sites, and therefore the existence of other forms of insurance are irrelevant to USTIF's obligations to reimburse the Sunoco Defendants for the costs

of investigation and remediation at underground storage tank sites because those policies become excess coverage.

**PUERTO RICO**

1.      The Complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to P.R. Laws Ann. tit. 31, §§ 5141, 5928.

2.      Recovery is barred or must be reduced, in whole or in part, based on the Plaintiffs' concurrent imprudence, as set out in P.R. Laws Ann. tit. 31, §§ 5141, as well as other statutes and case law relating to the doctrines of contributory or comparative negligence.

3.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of absorption.

4.      Gasoline containing MTBE did not fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

5.      Gasoline containing MTBE does not embody excessive preventable danger.

6.      At the time that Sunoco designed its MTBE containing gasoline, there was no feasible, safer design.

7.      Insofar as the Commonwealth seeks to recover damages through the action authorized by the Puerto Rico Public Policy Environmental Act ("PPEA"), P.R. Laws Ann. tit. 12 § 8001 *et seq.*, it is barred from recovering under common law theories, such as public nuisance, trespass, strict products liability, and negligence.

8.      The Commonwealth lacks standing to bring a citizen suit under the PPEA.  P.R. Laws Ann. tit. 12 § 8001 *et seq.*

9.      The Commonwealth has not established a particular injury and therefore has not met the burden to establish a trespass action for the actions alleged in the Complaint.

10.     The Commonwealth has not established Sunoco's intent to trespass on land owned by the Commonwealth.

11.     Trespass is not an acknowledged cause of action under the Puerto Rico Civil Code or as an equitable cause of action for acts or omissions occurring within the jurisdiction of Puerto Rico.

12.     The Commonwealth does not have standing to bring a public nuisance action for the actions alleged in the Complaint.

13.     Sunoco is not liable for any alleged public nuisance because the Commonwealth, through its acts and omissions, impliedly consented to and had knowledge of all activities and conditions alleged in the Complaint.

14.     The Commonwealth has failed to allege "special damages," a prerequisite to the assertion of a public nuisance claim.

15.     Future costs are not authorized by P.R. Laws Ann. tit. 32 § 2761.

16.     The Commonwealth's Complaint fails to plead the elements of a negligence claim under Art. 1802 of the Puerto Rico Civil Code with sufficient clarity, specificity, and particularity, including the alleged damages sustained by the Commonwealth, the alleged acts or omissions of Sunoco and the causal nexus.

17.     The Commonwealth lacks standing to bring a citizen suit under the PPEA.  P.R. Laws Ann. tit. 12 § 8001 *et seq.*

18.     Sunoco is not liable under the PPEA because its actions have not contributed to or created any damage or degradation to any of the Commonwealth's natural resources.

19.     The Commonwealth lacks standing to bring a suit for alleged violations to the Water Pollution Control Act ("WPCA").  P.R. Laws Ann. tit. 24 § 591 *et seq.*

20.     MTBE is not considered an "other" pollutant as defined in the WPCA.  P.R. Laws Ann. tit. 24 § 591(h).

21.     MTBE is not considered a "Pollutant" by the Commonwealth's Water Quality Standards Regulations, Department of State Regulation No. 6616.

22.     MTBE is not considered a "Regulated Substance" as defined in the Commonwealth's Underground Storage Tank Regulations, Department of State Regulation No. 4362.

23.     The Commonwealth cannot demonstrate that EPA was unaware of information the Commonwealth alleges should have been disclosed under the Toxic Substances Control Act ("TSCA") when the Commonwealth's TSCA claim was brought.

24.     Sunoco has not failed to provide EPA with any data related to MTBE that was reportable under TSCA § 8(e).

25.     Plaintiffs have failed to state a claim for relief against Sunoco under the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. § 6901 *et seq.* ("RCRA").

26.     MTBE is not a hazardous waste or solid waste as those terms are currently defined by RCRA and applicable regulations and guidance.

27.     Plaintiffs failed to provide Sunoco with the proper notice required before asserting claims under RCRA.

28.     Plaintiffs do not have the proper authority required to pursue claims against Sunoco under RCRA.

29.     The Commonwealth's claims fail, in whole or in part, based on the doctrine of *in pari delicto*.

*        *        *

For each Commonwealth described above, Sunoco incorporates by reference any affirmative defense, whether general or specific to another State or Commonwealth, alleged herein or by other Defendants in MDL 1358.  The pleading of the defenses described above shall not be construed as an undertaking by Sunoco of any burden which would otherwise be the responsibility of Plaintiffs.

**WHEREFORE**, Sunoco requests entry of judgment dismissing the Complaints with prejudice, and awarding Sunoco its costs and attorneys' fees, and such other relief as the Court may deem just and proper.

Dated: October 1, 2021

/s/ Graham C. Zorn
John S. Guttmann (JG 7601)
Nessa Horewitch Coppinger (*pro hac vice*)
Graham C. Zorn (*pro hac vice*)
Daniel Eisenberg (*pro hac vice*)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, N.W., Suite 100
Washington, DC 20036
(202) 789-6000
Fax: (202) 789-6190

Daniel M. Krainin (DK 1128)
Paula J. Schauwecker (PS 3449)
BEVERIDGE & DIAMOND, P.C.
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400
Fax: (212) 702-5450

*Attorneys for Defendants Sunoco, Inc. (f/k/a Sun Company, Inc.), Sunoco, Inc. (R&M), Sunoco Partners Marketing & Terminals L.P., Energy Transfer Partners, L.P., ETP Holdco Corporation, and Puerto Rico Sun Oil Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of Sunoco's Eighth Amended Master Answer was served upon counsel for Plaintiffs and all other counsel of record via the Court's CM/ECF system and File & Serve*Xpress* on October 1, 2021.


<u>*/s/ Graham C. Zorn*</u>
Graham C. Zorn