**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

*In Re:  Methyl Tertiary Butyl Ether ("MTBE")*
*Products Liability Litigation*

**Master File No. 1:00 – 1898**
**MDL 1358**
**M21-88**

ORAL ARGUMENT REQUESTED

---

**This Document Relates To:**

***Commonwealth of Pennsylvania, et al. v. Exxon***
***Mobil Corp., et al.,***

**No. 1:14-CV-06228-VSB-DCF**

---

**MEMORANDUM OF LAW IN SUPPORT OF (1) PJSC LUKOIL'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, (2) LUKOIL PAN AMERICAS
LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND
(3) THE REMAINING LUKOIL DEFENDANTS' MOTION TO DISMISS
<u>FOR FAILURE TO STATE A CLAIM</u>**

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ...................................................................................................1

Relevant Background .....................................................................................................5

    A.     This Court Dismissed All Claims Against LAC for Failure to State a Claim .........5

    B.     The Remaining LUKOIL Defendants .......................................................6

    C.     Additional Facts in Support of PJSC's Motion to Dismiss for Lack of
           Personal Jurisdiction .........................................................................8

    D.     Additional Facts in Support of LPA's Motion to Dismiss for Lack of
           Personal Jurisdiction .........................................................................9

Argument ....................................................................................................................10

I.      The Second Amended Complaint Should Be Dismissed Against PJSC And LPA
        For Lack Of Personal Jurisdiction .................................................................10

    A.     This Court Lacks Personal Jurisdiction Over PJSC and LPA Because They
           Have No Contacts With Pennsylvania ....................................................11

         i.     There Is Neither General Nor Specific Jurisdiction Over PJSC ............13

         ii.    There Is Neither General Nor Specific Jurisdiction Over LPA ...............15

    B.     This Court Lacks Personal Jurisdiction Over PJSC Under an Alter Ego
           Theory of Jurisdiction ......................................................................17

    C.     Because the Commonwealth Has Failed to Plead Any Specific Facts
           Establishing PJSC's or LPA's Contacts With Pennsylvania, It Is Not
           Entitled to Jurisdictional Discovery .....................................................26

II.     The Second Amended Complaint Should Be Dismissed Against The Remaining
        Lukoil Defendants For Failure To State A Claim ...............................................27

    A.     This Court Should Dismiss the Second Amended Complaint Against PJSC
           Because the Commonwealth Has Failed to Plead a Theory of Indirect
            Liability .......................................................................................27

    B.     This Court Should Dismiss the Second Amended Complaint as to LNA
           Because the Commonwealth Has Not Stated a Claim Based on Successor
            Liability .......................................................................................30

    C.     This Court Should Dismiss the Second Amended Complaint Against LPA
           Because It Fails to Plead Any Facts Against LPA ..................................31

Conclusion ..................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*,
    846 A.2d 1264 (Pa. Super. Ct. 2004) .......................................................................19, 22, 24

*In Re: Asbestos Products Liab. Litig. (No. VI)*,
    384 F. Supp. 3d 532 (E.D. Pa. 2019) .....................................................................11, 12, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................27, 31

*Barber v. Pittsburgh Corning Corp.*,
    464 A.2d 323 (Pa. Super. Ct. 1983) ............................................................................18

*Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*,
    340 A.2d 225 (Md. 1975) ..........................................................................................28

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................27, 32

*Bertles v. Cycle Grp.*,
    No. 18-4707, 2020 WL 1028044 (E.D. Pa. Mar. 3, 2020) ........................................11, 13, 16

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ..............................................................................................11

*Botwinick v. Credit Exchange, Inc.*,
    213 A.2d 349 (Pa. 1965) ........................................................................................18, 22

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016)........................................................................................12

*Canon U.S.A., Inc. v. F & E Trading LLC*,
    No. 15-cv-6015, 2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ............................................32

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
    491 B.R. 335 (S.D.N.Y. 2013)......................................................................................30

*Chant Eng'g Co. Inc. v. Cumberland Sales Co.*,
    No. CV 20-4559, 2021 WL 848062 (E.D. Pa. Mar. 5, 2021)..........................................12, 13

*In re Chocolate Confectionary Antitrust Litig.*,
    674 F. Supp. 2d 580 (M.D. Pa. 2009) ..........................................................................19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................................11, 12, 15, 16

*In re Enterprise Rent-A-Car Wage & Hour Employ. Practices Litig.*,
   735 F. Supp. 2d 277 (W.D. Pa. 2010)........................................................20, 22, 25

*Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*,
   360 F. Supp. 2d 665 (E.D. Pa. 2005) .....................................................................19

*Fletcher-Harlee Corp. v. Szymanski*,
   936 A.2d 87 (Pa. Super. Ct. 2007)..........................................................................19

*Fulano v. Fanjul Corp.*,
   236 A.3d 1 (Pa. Super. Ct. 2020).............................................................18, 19, 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..........................................................................................11, 12

*Grand River Enterprises Six Nations, Ltd. v. Pryor*,
   425 F.3d 158 (2d Cir. 2005)....................................................................................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)................................................................................................12

*Hildreth v. Tidewater Equip. Co.*,
   838 A.2d 1204 (Md. 2003) .....................................................................................28

*Holmes v. Allstate Corp.*,
   No. 11-cv-1543, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012) ................................32

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998)....................................................................................11

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..........................................................................................11, 12

*Leneau v. Ponte*,
   No. 1:16-CV-776-GHW, 2018 WL 566456 (S.D.N.Y. Jan. 25, 2018) ....................32

*Lieberman v. Corporacion Experienca Unica, S.A.*,
   226 F. Supp. 3d 451 (E.D. Pa. 2016) .....................................................................25

*Lutz v. Rakuten, Inc.*,
   376 F. Supp. 3d 455 (E.D. Pa. 2019) ...............................................................18, 19

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   959 F. Supp. 2d 476 (S.D.N.Y. 2013).....................................................................27

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007)..................................................................13

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
    714 F.3d 659 (2d Cir. 2013)..................................................................21

*In re PCH Assocs.*,
    949 F.2d 585 (2d Cir. 1991)..................................................................28

*Pennsylvania v. Exxon Mobil Corp. (In re MTBE Prods. Liab. Litig.)*,
    No. 14-cv-06228 (S.D.N.Y. July 2, 2015) (Scheindlin, J.), ECF No. 152 ............32

*Pescatore v. Pan Am. World Airways, Inc.*,
    97 F.3d 1 (2d Cir. 1996)......................................................................28

*Ritchie v. Northern Leasing Sys., Inc.*,
    14 F. Supp. 3d 229 (S.D.N.Y. 2014)......................................................32

*Rose v. Continental Aktiengesellschaft (AG)*,
    No. CIV.A. 99-3794, 2001 WL 236738 (E.D. Pa. Mar. 2, 2001)...........................18

*Schiavone v. Aveta*,
    41 A.3d 861 (Pa. Super. Ct. 2012), *aff'd*, 91 A.3d 1235 (Pa. 2014).....................11

*Serio v. Baystate Properties, LLC*,
    60 A.3d 475 (Md. Ct. Spec. App. 2013) ............................................28, 29

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018)..................................................................18

*Smith v. Ford Motor Co.*,
    No. 1814, 2014 WL 8845355 (Pa. Ct. Com. Pl. Jan. 24, 2014).......................20, 24

*State of Maryland v. Exxon Mobile Corp.*,
    406 F. Supp. 3d 420 (D. Md. 2019).....................................................14, 17, 25

*Telcordia Tech Inc. v. Telkom SA Ltd.*,
    458 F.3d 172 (3d Cir. 2006)..................................................................13

*Thomas v. Venditto*,
    925 F. Supp. 2d 352 (E.D.N.Y. 2013) ..................................................32

*TNK Marine Transp., LLC v. Big 3 Diesel Repair, LLC*,
    No. 2:18-cv-01211-MJH, 2018 WL 6602214 (W.D. Pa. Dec. 17, 2018)....................26

*Wedner v. Unemployment Board*,
    296 A.2d 792 (Pa. 1972)......................................................................22

*Williams by Williams v. OAO Severstal*,
　　No. 938 WDA 2017, 2019 WL 4888570 (Pa. Super. Ct. Oct. 3, 2019) ...............17, 22, 23, 24

*Yates v. Kassem*,
　　No. 5:21-CV-02625, 2021 WL 3046910 (E.D. Pa. July 20, 2021) ........................................16

*Zubik v. Zubik*,
　　384 F.2d 267 (3d Cir. 1967)..................................................................................................24

**Statutes**

15 Pa.C.S. § 411(a) ....................................................................................................................15

42 Pa.C.S. § 5301(a)(2)........................................................................................................12, 15

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)................................................................................................................31

Fed. R. Civ. P. 12(b)(2)...........................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6).................................................................................................. *passim*

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants PJSC LUKOIL and

LUKOIL Pan Americas LLC submit this Memorandum of Law, together with the Declaration of

Anatoly Martynov and the Declaration of Stephen Wolfe, in support of their Motions to Dismiss

the Commonwealth of Pennsylvania's Second Amended Complaint.  Additionally, pursuant to

Federal Rule of Civil Procedure 12(b)(6), PJSC LUKOIL, LUKOIL Pan Americas LLC, and

LUKOIL North America LLC submit this Memorandum of Law in support of their Motion to

Dismiss the Second Amended Complaint for failure to state a claim

## PRELIMINARY STATEMENT

The Second Amended Complaint attempts to hold four LUKOIL entities liable for the

alleged conduct of a separate corporate entity, Getty Petroleum Marketing Inc. ("GPMI"), which

operated gas stations in Pennsylvania during the time prior to 2006 when methyl tert-butyl ether

("MTBE") was in use.  On August 2, 2021, this Court dismissed all claims against one of those

LUKOIL entities—LUKOIL Americas Corporation ("LAC") —finding that the Second

Amended Complaint fails to state a claim against LAC.  ECF No. 662.[1]  From 2001 to 2011,

LAC was the direct parent holding company of GPMI.  Because the Commonwealth of

Pennsylvania (the "Commonwealth") failed to allege that LAC engaged in conduct sufficient to

justify veil piercing, this Court recognized that the corporate separateness between GPMI and its

parent LAC must be respected.  August 2 Order, at 39.  In addition, this Court found that the

Second Amended Complaint failed to allege any facts to support the theory that LAC was a

successor in liability for pre-2001 MTBE contamination.  *Id.* at 40.  The August 2 Order is law of

the case and has not been challenged.

---

[1] In this memorandum of law, the Court's August decision, ECF No. 662, is referred to as the "August 2 Order."

The three remaining LUKOIL entities must also be dismissed.  First, this Court lacks personal jurisdiction over two of the three—PJSC LUKOIL ("PJSC")[2] and LUKOIL Pan Americas LLC ("LPA").  Second, even if this Court could exercise personal jurisdiction over each of the remaining LUKOIL entities, the allegations in the Second Amended Complaint against PJSC, LUKOIL North America LLC ("LNA"), and LPA (together, the "Remaining LUKOIL Defendants"), where they even exist, fare no better than those against LAC. Accordingly, the Remaining LUKOIL Defendants should be dismissed from the Second Amended Complaint.

For the convenience of the Court, below is an organization chart depicting the corporate entities relevant to the allegations against the Remaining LUKOIL Defendants in the Second Amended Complaint:[3]

## LUKOIL Entities Organization Chart



---

[2] PJSC was formerly known as OAO LUKOIL and is sometimes referred to in the Second Amended Complaint as LUKOIL Oil Company.

[3] This organization chart is as of the time period relevant to the allegations contained in the Second Amended Complaint.

***This Court Lacks Personal Jurisdiction Over PJSC and LPA***

This Court lacks personal jurisdiction over PJSC, a publicly-traded company created under the laws of the Russian Federation, whether under a traditional contacts analysis or an alter ego theory of jurisdiction. PJSC has never owned or operated a single gas station in the United States. PJSC has never sold a single gallon of gasoline in the United States. PJSC has never refined any petroleum in the United States. PJSC has never blended any gasoline, much less any MTBE, in the United States. PJSC has never opened a single office, owned or leased any property, or even had a mailing address or a telephone listing anywhere in the United States. PJSC simply has no presence in the Commonwealth of Pennsylvania and could not be further from "home" for purposes of exercising personal jurisdiction based on its own contacts (or lack thereof) with the Commonwealth.

Moreover, under Pennsylvania law, this Court may not exercise personal jurisdiction over PJSC by imputing the jurisdictional contacts of an American subsidiary. Specifically, the Court should decline to exercise alter ego jurisdiction over PJSC because the factors that may establish personal jurisdiction on an alter ego theory are not pled in the Second Amended Complaint. PJSC did not own the stock of any subsidiary in the United States. PJSC shares no directors or officers with any of its subsidiaries in the United States. PJSC maintains its own books and records and its accounts were not comingled with any American subsidiary. PJSC employs its own personnel. PJSC never controlled the day-to-day operations of any American subsidiary. And the Second Amended Complaint does not and cannot allege otherwise.

Similarly, the claims against LPA should be dismissed in their entirety because LPA has no contacts with Pennsylvania and there are no allegations—nor could there be—that LPA is the alter ego of another entity. LPA has absolutely no presence in Pennsylvania and had nothing to

do with the events and issues in dispute in this case.  LPA has never done business or maintained operations in Pennsylvania, and has never used or distributed MTBE in Pennsylvania.  The Commonwealth has pled nothing to the contrary—and, in fact, has pled virtually nothing at all with respect to LPA.  Simply put, LPA has no place in this lawsuit.

Accordingly, this Court should dismiss all claims against PJSC and LPA pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over each of PJSC and LPA.

### The Second Amended Complaint Fails to State a Claim Against the Remaining LUKOIL Defendants

As with LAC, the Second Amended Complaint fails to state a claim against the Remaining LUKOIL Defendants.  *First*, the Second Amended Complaint does not allege any facts to support a claim of direct liability against PJSC, which has no employees or operations in the United States.  Any claim of indirect liability requires the Second Amended Complaint to contain allegations sufficient to pierce multiple layers of corporate separateness—first between GPMI and its immediate parent company LAC, and then from LAC through multiple separate entities to PJSC.  This Court's August 2 Order already determined that the allegations in the Second Amended Complaint are insufficient to disregard the corporate separateness between GPMI and LAC.  By definition, those same factual allegations are not, and cannot be, sufficient to pierce multiple corporate veils to PJSC.  Accordingly, PJSC must be dismissed.

*Second*, LNA, a subsidiary of LAC, did not come into existence until 2007 (and did not acquire assets until 2009)—after MTBE was no longer in use.  As a result, the Second Amended Complaint could not plausibly assert a liability theory against LNA based on any conduct of LNA while MTBE was in use.  In addition, there are no allegations that LNA otherwise subsequently agreed to liability for MTBE contamination, which means the Commonwealth's

theory of successor liability fails, as this Court explained in its August 2 Order.  Accordingly, LNA must be dismissed.

*Third*, and finally, the Second Amended Complaint alleges only that LPA is a Delaware limited liability company with a registered address in Pennsylvania, but its principal place of business in New York.  There are no specific allegations at all against LPA that could put LPA on notice of the claims against it, whether standing alone or in connection with the other LUKOIL entities.  As a result, LPA must be dismissed.

For the reasons set forth in the August 2 Order, as well as the additional reasons explained below, this Court should dismiss all claims against PJSC, LNA and LPA pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## RELEVANT BACKGROUND

### A.  *This Court Dismissed All Claims Against LAC for Failure to State a Claim*

The Commonwealth alleges widespread use of MTBE by dozens of defendants over many years that resulted in the contamination of the ground waters of Pennsylvania.  LAC was named as a defendant in this lawsuit and it was alleged that LAC should be held liable for the conduct of its former subsidiary, GPMI.[4]

From 2001 to 2011, GPMI was a wholly-owned subsidiary of LAC, which in turn was owned by PJSC, a publicly-traded company in Moscow, Russian Federation.  ECF No. 175 (the "Second Amended Complaint" and hereinafter, "SAC") ¶¶ 74, 83.  The Commonwealth alleged

---

[4] In June 2014, the Commonwealth sued LAC and numerous other defendants in the Court of Common Pleas of Philadelphia County.  ECF No. 1, at 5.  The case was removed to federal court, ECF No. 1, and transferred to this multi-district litigation, ECF No. 11, where the Commonwealth amended its complaint ("First Amended Complaint").  ECF No. 36.  In December 2014, LAC moved to dismiss the First Amended Complaint for lack of personal jurisdiction and failure to state a claim.  *See* ECF No. 86.  In November 2015, the Commonwealth again amended its complaint.  ECF No. 175 (the "Second Amended Complaint").  In addition to LAC, the Second Amended Complaint named PJSC, LNA, and LPA as defendants (together, the "LUKOIL Defendants").

that GPMI leased and operated service stations in Pennsylvania until 2011, when GPMI filed for

bankruptcy.  SAC ¶¶ 326-27, 329-30.  LAC itself was not alleged to have used MTBE or

operated gas stations in Pennsylvania, but the Commonwealth asserted an alter ego theory of

liability for LAC as the direct parent of GPMI.  SAC ¶¶ 344-47.  The Commonwealth thus

focused its allegations as to LAC—and the other LUKOIL Defendants—on the relationship

between GPMI and LAC, as well as the circumstances of GPMI's bankruptcy, which was alleged

to be the result of a fraudulent transfer of GPMI's assets from LAC to LNA in 2009.  SAC

¶¶ 317-24.

 In December 2014, and again in January 2016, LAC moved to dismiss the First and

Second Amended Complaints, respectively.  *See* ECF Nos. 86, 244.  On August 2, 2021, this

Court granted LAC's motion to dismiss for failure to state a claim, finding that the

Commonwealth had failed to plausibly allege facts sufficient to warrant a finding that GPMI's

veil may be pierced for liability purposes and that the Commonwealth had not properly pled

successor liability.  August 2 Order, at 37-38.  Critically, and as discussed further below, this

Court found that the transfer of GPMI assets—around which the Commonwealth crafted its

allegations against the LUKOIL Defendants—was not the type of fraud or inequity that would

permit a piercing of the corporate veil, as it was GPMI itself, not the Commonwealth, upon

which a fraud was allegedly perpetrated.  *Id.*  This Court thus dismissed all claims against LAC.

*Id.* at 56.  That decision has not been challenged, and LAC is no longer a part of this case.

### B.  *The Remaining LUKOIL Defendants*

 With LAC dismissed from the case, three LUKOIL entities remain—PJSC, LNA, and

LPA.[5]

---

[5] After the Second Amended Complaint was filed, the parties entered into a stipulation that the Court so-
ordered on December 31, 2015 (the "2015 Stipulation"), setting a January 2016 deadline for the parties named in the

PJSC, a publicly-traded company domiciled in Russia, is alleged to be the direct parent of LAC and LNA and the indirect parent of GPMI from 2000 to 2011.  SAC ¶ 85.  There are no allegations in the Second Amended Complaint that PJSC itself operated stations or used MTBE in Pennsylvania.

LNA, a Delaware corporation, is alleged to be a wholly-owned subsidiary of LAC and an indirect subsidiary of PJSC.  SAC ¶ 84.  LNA was created in 2007 by LAC, SAC ¶ 315, and acquired certain of GPMI's assets in late 2009, well after the gasoline industry had stopped using MTBE.  SAC ¶¶ 317-20.

The final LUKOIL entity named in the Second Amended Complaint, LPA, is alleged to be a Delaware corporation with a Pennsylvania address and its principal place of business in New York.  SAC ¶ 86.  Save for "Lukoil" in its name, LPA is not alleged to have any connection to the other LUKOIL entities and LPA is not mentioned anywhere in the 10 pages out of the 158-page complaint focused on GPMI and LUKOIL.[6]  *See* SAC ¶¶ 296-347.

The Second Amended Complaint does not allege facts demonstrating that PJSC, LNA, or LPA themselves used or had any involvement with MTBE gasoline while MTBE was allegedly used by the defendants in this case.  Rather, as with LAC, the claims against the Remaining LUKOIL Defendants turn on whether the Commonwealth has alleged facts sufficient to pierce

---

First Amended Complaint ("First Amended Complaint Defendants") to answer or otherwise respond to the Second Amended Complaint.  ECF No. 232.  The 2015 Stipulation further provided that the time for the parties named in the Second Amended Complaint, including PJSC, LNA, and LPA, to answer or move to dismiss would be adjourned *sine dine*, with an answer date to be set following the Court's decision on the motions to dismiss filed by the First Amended Complaint Defendants.  *Id.*  Pursuant to the 2015 Stipulation and the Court's August 2 Order regarding the First Amended Complaint Defendants' motions to dismiss, the Remaining LUKOIL Defendants now move to dismiss the Second Amended Complaint.

[6] The only other mention of LPA in the Second Amended Complaint is in a list of twenty other defendants, including "Lukoil" generally, who allegedly "distributed, stored and sold MTBE gasoline in Pennsylvania" without any additional factual allegations as to LPA's purported involvement.  SAC ¶ 128.  As discussed *infra*, such group pleading is not sufficient to state a claim.  *See* II.C.

the corporate veil of GPMI under an alter ego theory, or established a basis for successor

liability.  As discussed below, the Commonwealth has not.

### C.   Additional Facts in Support of PJSC's Motion to Dismiss for Lack of Personal Jurisdiction

The Commonwealth has included PJSC and various of its indirect subsidiaries as

defendants implicated in the widespread allegations related to the use of MTBE in Pennsylvania.

*See* SAC ¶¶ 83-86.  PJSC, however, has never operated nor otherwise established any contacts

with the Commonwealth of Pennsylvania.  *See generally* Declaration of Anatoly Martynov dated

September 29, 2021 ("Martynov Decl.").[7]

PJSC is a publicly-traded joint stock company organized under the laws of the Russian

Federation.  Martynov Decl., ¶ 7.  Its headquarters are in Moscow, Russia.  *Id.*  PJSC is the

ultimate parent of more than one hundred subsidiaries.  *Id.* ¶ 8.  PJSC has never been directly

involved in the refining, distribution, or marketing of gasoline in the United States, including

gasoline blended with MTBE.  *Id.* ¶ 9.  Moreover, PJSC has never owned or operated a refinery

or petroleum terminal or station in the United States, *id.* ¶ 10, nor has PJSC ever sold gasoline,

much less MTBE, in the United States.  *Id.* ¶ 11.  Indeed, PJSC has no employees, and conducts

no operations, in the United States at all.  *Id.* ¶ 13.  The only operations in the United States

affiliated with PJSC are through the company's indirect subsidiaries.  *Id.*

PJSC is not, and never has been, the direct parent of GPMI, LAC, LNA, or LPA.  *Id.*

¶ 14.  At all relevant times, GPMI, LAC, LNA, and LPA were indirect wholly-owned

subsidiaries of PJSC, the ultimate parent company, removed by several tiers within PJSC's

overall corporate structure.  *Id.* ¶¶ 14-15.  PJSC maintains its primary business address in Russia,

---

[7] PJSC's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) in no way relies on the factual information contained in the Declaration of Anatoly Martynov.

and it has never shared an address or other mailing or telephone listing with its American subsidiaries.  *Id.* ¶ 17.  PJSC did not own the stock of its American subsidiaries.  *Id.* ¶ 18.  PJSC is governed by its own board of directors, holds its own directors' meetings, and reports to its own shareholders.  *Id.* ¶ 19.  None of PJSC's directors have ever been directors or officers of its American subsidiaries, including GPMI.  *Id.*  PJSC also maintains its own books and records, employs its own personnel, and forms its own contractual relationships.  *Id.* ¶ 21.  PJSC does not comingle its accounting with that of its American subsidiaries.  *Id.*

Finally, PJSC limited its involvement with its American subsidiaries to that typical of a parent holding company.  *Id.* ¶ 22.  While PJSC held occasional meetings in Moscow with various executives of its subsidiaries, these meetings were simply to provide general oversight and management.  *Id.*  PJSC never controlled the daily operations of its American subsidiaries, including its budgeting, marketing, operating, personnel, or sales, and similarly never demanded that its American subsidiaries seek its approval for the majority of their corporate actions.  *Id.* ¶¶ 23-24.

### D.  *Additional Facts in Support of LPA's Motion to Dismiss for Lack of Personal Jurisdiction*

Similarly, LPA has never operated or otherwise established any contacts with the Commonwealth.  *See generally* Declaration of Stephen Wolfe, dated October 1, 2021 ("Wolfe Decl.").[8]  LPA, a Delaware limited liability company was founded in 2002 and is headquartered in Texas.[9]  Wolfe Decl., ¶ 4.  LPA is a trading company whose core business is buying and selling crude oil and petroleum products such as heating oil, naphtha, gasoline, and gasoline

---

[8] LPA's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) in no way relies on the factual information contained in the Declaration of Stephen Wolfe.

[9] The Second Amended Complaint alleges that LPA has its principal place of business in New York but in the years since the Second Amended Complaint was filed, LPA has relocated its headquarters to Houston, Texas.

components, typically in large-volume or cargo-load transactions. *Id.* ¶ 5. In conducting its business, LPA does not itself use the product it buys and sells: after LPA makes a sale, it does not control, and does not participate in, the buyer's disposition of the purchased crude oil or petroleum products. *Id.* ¶ 6. LPA typically does not know, and has no way of determining, where the products it sells are ultimately delivered, used, or consumed. *Id.*

LPA has never owned or operated a refinery in Pennsylvania. *Id.* ¶ 8. At all relevant times, LPA did not own, operate, or lease a petroleum products terminal in Pennsylvania and LPA has never owned, operated, leased, or branded any retail service stations in Pennsylvania or anywhere in the United States. *Id.* ¶¶ 9-10. Importantly, LPA has never manufactured MTBE in Pennsylvania or anywhere in the United States. *Id.* ¶ 11. At all relevant times, LPA did not buy or sell pure ("neat") MTBE in Pennsylvania, nor did LPA blend MTBE into gasoline in Pennsylvania. *Id.* ¶ 12.

LPA has absolutely no presence in Pennsylvania. LPA does not maintain offices, employees, or agents in Pennsylvania, and LPA does not own property in Pennsylvania. *Id.* ¶¶ 13-14.

LPA is a subsidiary of LITASCO SA. *Id.* ¶ 15. LPA has never held any interest in and does not control any other LUKOIL entity, including but not limited to PJSC, LAC, LNA, or GPMI, nor is LPA involved in the operation of any other LUKOIL entity. *Id.*

## **ARGUMENT**

## I.   **THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST PJSC AND LPA FOR LACK OF PERSONAL JURISDICTION**

This Court should dismiss the Second Amended Complaint against PJSC and LPA because this Court lacks personal jurisdiction over each of them. Because this case was transferred to this multi-district litigation from a federal district court sitting in Pennsylvania,

Pennsylvania is the relevant forum state.  *See* August 2 Order, at 18.  In assessing whether

personal jurisdiction exists, this Court must apply the law of the forum state, Pennsylvania.  *See*

*Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).  Thus, the

Commonwealth must show that exercising jurisdiction over PJSC and LPA in Pennsylvania is

proper.  *See Schiavone v. Aveta*, 41 A.3d 861, 865 (Pa. Super. Ct. 2012), *aff'd*, 91 A.3d 1235 (Pa.

2014) (the burden of proving personal jurisdiction is upon the party asserting it).

### A.  This Court Lacks Personal Jurisdiction Over PJSC and LPA Because They Have No Contacts With Pennsylvania

Courts analyze two questions to determine whether it may exercise personal jurisdiction

over a foreign defendant: "(1) whether Pennsylvania's long-arm statute provides for the exercise

of long-arm jurisdiction, and, if so; (2) whether the exercise of long-arm jurisdiction in this case

satisfies the requirements of the Due Process Clause of the Constitution."  *In Re: Asbestos*

*Products Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 536 (E.D. Pa. 2019) (citing *IMO Indus., Inc.*

*v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)).  Pennsylvania's long-arm statute is

"coextensive with the Due Process Clause," so this Court "need only analyze whether

jurisdiction is proper under federal Fourteenth Amendment jurisprudence."  *Id.* at 537 (citing

*Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).  Under the Due Process Clause, courts may

exercise personal jurisdiction over out-of-state defendants only when the defendant has "certain

minimum contacts with [the State] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  *Bertles v. Cycle Grp.*, No. 18-4707,

2020 WL 1028044, at *2 (E.D. Pa. Mar. 3, 2020) (quoting *Goodyear Dunlop Tires Operations,*

*S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310

(1945))).  "The minimum contacts requirement may be met through either of two theories of

personal jurisdiction: specific or general."  *Id.* (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549,

1558 (2017)).  In the instant case, there is neither general nor specific jurisdiction over PJSC and

LPA.

Under Pennsylvania law, a court may exercise general jurisdiction over a foreign entity

that "carr[ies] on [] a continuous and systematic part of its general business within [the]

Commonwealth."  42 Pa.C.S. § 5301(a)(2)(iii); *see also Goodyear*, 564 U.S. 915 at 919 (general

jurisdiction may be established against a foreign corporation "when their affiliations with the. . .

State are so 'continuous and systematic' as to render them essentially at home." (quoting *Int'l*

*Shoe*, 326 U.S. at 317).  "[T]he general jurisdiction inquiry 'does not focus solely on the

magnitude of the defendant's in-state contacts,' but 'calls for an appraisal of a corporation's

activities in their entirety, nationwide and worldwide.'"  *Brown v. Lockheed Martin Corp.*, 814

F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler*, 571 U.S. at 139 n.20).  Other than "truly

'exceptional'" cases, "a corporate defendant may be treated as 'essentially at home' only where it

is incorporated or maintains its principal place of business."  *Id.* (citing *Daimler* and dismissing

claims for lack of personal jurisdiction).  *See also In Re: Asbestos Products Liab. Litig. (No. VI)*,

384 F. Supp. 3d at 538 (explaining that "a corporation is typically 'at home' in only two places:

its state of incorporation and the state in which it has its principal place of business") (citing

*Daimler*, 571 U.S. at 137 & 139 n.19).

A court may still exercise personal jurisdiction even if a defendant is not "at home" in the

forum state if specific jurisdiction exists over the party.  "[S]pecific jurisdiction allows the court

to hear claims that arise from or relate to the party's contacts with the forum state, such that the

defendant should reasonably anticipate being hailed into court in that forum."  *Chant Eng'g Co.*

*Inc. v. Cumberland Sales Co.*, No. CV 20-4559, 2021 WL 848062, at *3 (E.D. Pa. Mar. 5, 2021)

(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984);

*Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006)).  Courts undertake a three-part inquiry to determine whether there is specific jurisdiction over a nonresident defendant: "(1) did the defendant purposefully direct its activities at the forum; (2) does the litigation arise out of or relate to at least one of those activities; and (3) does the exercise of jurisdiction otherwise comport with fair play and substantial justice?"  *Bertles*, 2020 WL 1028044, at *2 (dismissing complaint for lack of personal jurisdiction).  *See also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (setting out the three-part test); *Chant Eng'g Co.*, 2021 WL 848062, at *3 (dismissing complaint for lack of personal jurisdiction under the *O'Connor* test).

i.    *There Is Neither General Nor Specific Jurisdiction Over PJSC*

As a threshold matter, this Court lacks personal jurisdiction over PJSC based on PJSC's lack of contacts with the Commonwealth of Pennsylvania.  It cannot seriously be suggested that PJSC is at home anywhere in the United States, including in Pennsylvania.  PJSC is a publicly-traded joint stock company organized under the laws of the Russian Federation.  Martynov Decl., ¶ 7.  Its headquarters are in Moscow, Russia.  *Id.*  PJSC is the ultimate parent of over one hundred subsidiaries.  *Id.* ¶ 8.  PJSC has never been directly involved in the refining, distribution, or marketing of gasoline anywhere in the United States, including gasoline blended with MTBE. *Id.* ¶ 9.  PJSC has never owned or operated a refinery or petroleum terminal or station in the United States.  *Id.* ¶ 10.  Nor has PJSC ever sold gasoline, much less MTBE, in the United States.  *Id.* ¶ 11.  Indeed, PJSC has no employees, and conducts no operations, in the United States at all.  *Id.* ¶ 13.  The only operations in the United States affiliated with PJSC are through the company's indirect subsidiaries.  *Id.*  This Court clearly lacks general jurisdiction over PJSC.

This Court also lacks specific jurisdiction over PJSC.  Just as PJSC is not at home in the United States, PJSC has not directed its activities at Pennsylvania such that this Court should exercise specific personal jurisdiction over it.  PJSC has no presence in Pennsylvania, has no offices, employees, or agents in Pennsylvania, and does not conduct any business or operations in the Commonwealth.  *Id.*  Indeed, there are no allegations in the Second Amended Complaint that PJSC itself conducted any activities in Pennsylvania, thus the claims against PJSC could not possibly arise out of its activities in Pennsylvania.  Any basis for jurisdiction over PJSC would be through its indirect subsidiary, GPMI, which operated gas stations in Pennsylvania during the relevant time period, but as discussed below, that theory is baseless.

In a case based on nearly identical allegations, a federal district court in Maryland has already concluded that PJSC's nonexistent presence in Maryland—and the United States more generally—does not allow for the exercise of personal jurisdiction over the Russian corporation in these MTBE disputes.  In *State of Maryland v. Exxon Mobile Corp.*, 406 F. Supp. 3d 420 (D. Md. 2019), the court concluded that Maryland had "not made a *prima facie* showing that PJSC is subject to specific personal jurisdiction…based on its own conduct," because Maryland had failed to show that "PJSC purposefully availed itself of doing business in Maryland in any way, apart from its role as the indirect corporate parent of GPMI, a Maryland corporation," and that "PJSC's contacts with Maryland as the indirect corporate parent of GPMI" did not provide a basis for the suit against PJSC.  *Id.* at 446.[10]  Based on the similar facts alleged and applicable legal principles here, this Court should reach the same conclusion and decline to exercise jurisdiction over PJSC based on its own contacts (or lack thereof) with Pennsylvania.

---

[10] The Maryland court did not consider whether there was general jurisdiction over PJSC, as Maryland argued that PJSC was "properly subject to specific personal jurisdiction in [Maryland] based on its own activities and the activities of its indirect subsidiary, GPMI."  *State of Maryland*, 406 F. Supp. 3d at 445.

ii.        *There Is Neither General Nor Specific Jurisdiction Over LPA*

This Court also lacks jurisdiction over LPA based on its nonexistent presence in Pennsylvania.  Here, the only "allegation" relevant to establishing general jurisdiction over LPA is that it has a registered Pennsylvania address.  SAC ¶ 86.  It is incorporated in Delaware and has its principal place of business in Texas, Wolfe Decl., ¶ 4, so under *Daimler* and its progeny, LPA is definitively not "at home" in Pennsylvania.  *See In Re: Asbestos Products Liab. Litig. (No. VI)*, 384 F. Supp. 3d at 537 (discussing *Daimler*).  Simply having a registered address within Pennsylvania does not rise to the level of systematic and continuous contact necessary to allow for general jurisdiction.  *Id.*

Indeed, in *In Re: Asbestos Products Liab. Litig. (No. VI)*, the court considered this exact question and concluded that having registered to do business in Pennsylvania was not sufficient to establish general jurisdiction.  In that case, plaintiff argued that the court should exercise general jurisdiction over a defendant who had registered to do business in Pennsylvania on the theory that defendant consented to general jurisdiction under certain Pennsylvania statutes by registering to do business in the state.[11]  384 F. Supp. 3d at 536.  The defendant was incorporated and had its principal place of business in Virginia.  *Id.* at 535.  The court concluded that in light of *Daimler*, which "radically shifted the legal landscape regarding the application of general personal jurisdiction," *id.* at 537, the Pa. Statutory Scheme was unconstitutional.  The court found that "a mandatory statutory regime purporting to confer consent to general jurisdiction in

---

[11] The statutes at issue were Section 411 and Section 5301(a)(2)(i) of the Pennsylvania Statutes and Consolidated Statutes.  *In Re: Asbestos Products Liab. Litig. (No. VI)*, 384 F. Supp. 3d at 535-36.  Section 411 provides in relevant part that a foreign corporation "may not do business in this Commonwealth until it registers with the department."  15 Pa.C.S. § 411(a).  If a foreign corporation does business in the state without registering, as a penalty, it "may not maintain an action or proceeding in" the state.  *Id.* § 411(b).  "Section 5301(a)(2)(i) provides that registration as a foreign corporation in Pennsylvania "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such" entities.  *In Re: Asbestos Products Liab. Litig. (No. VI)*, 384 F. Supp. 3d. at 535-36 (quoting 42 Pa.C.S. § 5301(a)(2)).  The court referred to these statutes together as the "Pa. Statutory Scheme."  *Id.* at 536.

exchange for the ability to legally do business in a state is contrary to the rule in *Daimler* and, therefore, can no longer stand." *Id.* at 540-41. Such a statutory requirement "offends the Due Process Clause and is unconstitutional." *Id.* at 545. Accordingly, the court dismissed the defendant for lack of general personal jurisdiction. *Id.*

So too here, to exercise general jurisdiction over LPA in Pennsylvania on the basis that it registered an address in Pennsylvania, without ever actually doing any business in the state, would offend traditional notions of fair play and substantial justice. *Bertles*, 2020 WL 1028044, at *2-3. LPA does not conduct business of any sort in Pennsylvania, and the law is clear that having an address in Pennsylvania, without more, is meaningless. For that reason, this Court lacks general jurisdiction over LPA.

This Court also lacks specific jurisdiction over LPA. The Commonwealth cannot meet its burden of showing that LPA directed its activities at Pennsylvania such that this Court should exercise specific personal jurisdiction over LPA. LPA has no presence in Pennsylvania and does not conduct any business in the state; it has no offices, employees, or agents in Pennsylvania; and it does not own property in Pennsylvania. Wolfe Decl., ¶¶ 8-14. And there are no allegations in the Second Amended Complaint that LPA conducted any activities in Pennsylvania. With the exception of one conclusory statement in the Second Amended Complaint that LPA "distributed, stored and sold MTBE gasoline in Pennsylvania," SAC ¶ 128, the Commonwealth has not pled anything to suggest that its claims against LPA "arise out of or relate to" LPA's activities that were purposefully directed at Pennsylvania. *See Yates v. Kassem*, No. 5:21-CV-02625, 2021 WL 3046910, at *5 (E.D. Pa. July 20, 2021) (finding that specific personal jurisdiction could not be exercised over defendants because "[n]o part of [the] Complaint alleges injuries stemming from Defendants' conduct in Pennsylvania"). The Commonwealth has not alleged—nor can it—that

16

LPA purposefully directed its activities at Pennsylvania.  Accordingly, this Court does not have specific jurisdiction over LPA.[12]

### B.   This Court Lacks Personal Jurisdiction Over PJSC Under an Alter Ego Theory of Jurisdiction

Because PJSC has no direct contacts with Pennsylvania, the only viable theory of jurisdiction over PJSC would be an alter ego theory based on its relationship with GPMI, one of its American subsidiaries, but that theory fails as well.[13]  "Pennsylvania law governs whether this Court may exercise jurisdiction over a foreign corporation through an alter ego or veil-piercing theory."  August 2 Order, at 23.  In Pennsylvania, the jurisdictional veil-piercing inquiry is not a question of corporate law, but rather is a question of "whether it is reasonable to extend jurisdiction to an alien parent corporation based upon its actions within the forum as transmitted through the conduit of its wholly-owned subsidiary."  *Id.* at 24 (quoting *Williams by Williams v. OAO Severstal*, No. 938 WDA 2017, 2019 WL 4888570, at *4 (Pa. Super. Ct. Oct. 3, 2019)).  Where there are no direct contacts with Pennsylvania, the record must "demonstrate[] that the subsidiary is the alter ego of the parent to the extent that domination and control by the parent corporation renders the subsidiary a mere instrumentality of the parent; under such extreme circumstances the parent corporation may be held to be doing business within the state under the

---

[12] While the district court in Maryland found it had specific jurisdiction over LPA, *State of Maryland*, 406 F. Supp. 3d at 445, it remains that the Commonwealth's Second Amended Complaint in the instant case is insufficient to establish personal jurisdiction over LPA in Pennsylvania.  The complaint in the Maryland case was similarly devoid of specific allegations about LPA, which the court acknowledged.  *Id.* at 444 ("In fact, the Complaint contains few allegations specific to LPA.").  But the court reasoned it had specific personal jurisdiction over LPA based on extrinsic evidence about LPA's purported distribution of MTBE gasoline into Maryland.  *Id.* This Court should not be guided by that ruling in Maryland.  As in the Maryland case, the Second Amended Complaint impermissibly lumps LPA with dozens of other defendants without acknowledging that LPA is differently situated as a trading entity that does not actually handle the product it trades, let alone use or distribute the product in Pennsylvania.  Wolfe Decl., ¶ 6.  The allegations in the Second Amended Complaint do not put LPA on notice of the claims against it, including as to how its nonexistent contacts with Pennsylvania should subject it to litigation in the state.  *See also* II.C below.  Thus, the Commonwealth has not met its burden of showing that LPA directed any activities at Pennsylvania and to exercise personal jurisdiction over LPA would be unjust.

[13] It is not alleged—nor could it be—that LPA could be liable under an alter ego theory of personal jurisdiction.

17

facade of the subsidiary." *Barber v. Pittsburgh Corning Corp.*, 464 A.2d 323, 331 (Pa. Super. Ct. 1983) (quoting *Botwinick v. Credit Exchange, Inc.*, 213 A.2d 349, 354 (Pa. 1965) (New York parent not subject to jurisdiction in Pennsylvania even though its similarly named, wholly owned subsidiary was a Pennsylvania corporation and the two had a close business relationship)).

Here, the Commonwealth's allegations, even when taken at face value, fail to make a *prima facie* showing of such domination and control stretching all the way from PJSC to its far-flung American subsidiaries, especially concerning the matters at issue.  Under well-settled Pennsylvania law, such a showing is no easy task.  "Generally, a corporate parent will retain its distinct identity and not be subject to the jurisdictions of its subsidiaries, even when it shares common directors, officers and shareholders." *Fulano v. Fanjul Corp.*, 236 A.3d 1, 20 (Pa. Super. Ct. 2020) (citing *Botwinick*, 213 A.2d at 354). "While there are few cases addressing it, there is Pennsylvania precedent for an alter ego theory of personal jurisdiction over a foreign corporation." *Id.* at 19.  Under the alter-ego theory of personal jurisdiction, "if a subsidiary is 'merely the agent' of its parent corporation or the parent corporation 'controls' the subsidiary, 'then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary.'" *Id.* at 20 (quoting *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470-71 (E.D. Pa. 2019) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018))).  "That the companies may have a close relationship or may coordinate and cooperate . . . is not sufficient to impute forum contacts." *Rose v. Continental Aktiengesellschaft (AG)*, No. CIV.A. 99-3794, 2001 WL 236738, at *3 (E.D. Pa. Mar. 2, 2001).

In Pennsylvania, courts consider the following factors in determining whether a subsidiary is the alter ego of its parent corporation:

> (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a

trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Fulano*, 236 A.3d at 20 (quoting *Lutz*, 376 F. Supp. 3d at 471).

"These factors are best viewed as a non-exclusive guide to help resolve the broader issue of whether the companies have a single functional and organic identity," and the court may consider "any evidence bearing on the corporations' functional interrelationship." *Id.* at 20-21 (quoting *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 676 (E.D. Pa. 2005) and *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009)).[14]

The Pennsylvania Superior Court's reasoning in *Fulano* is instructive.  In that case, plaintiffs argued that the court should exercise general personal jurisdiction over a foreign corporation under an alter ego theory of jurisdiction, because, plaintiffs alleged, the foreign parent controlled the Pennsylvania-based subsidiary.  *Fulano*, 236 A.3d at 19.  The court concluded that the trial court did not err in declining to impute personal jurisdiction through an alter ego theory based on multiple factors, including that the parent owned none of the subsidiary's stock; there were no common officers or directors between the two entities; there was no common use of employees or interchange of managerial or supervisory personnel; neither entity shared bank accounts; they maintained separate financial and accounting records;

---

[14] Even outside the jurisdictional context, there is no "specific two- or three-pronged" test to determine whether to pierce the veil of a Pennsylvania corporation.  *See Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 95 (Pa. Super. Ct. 2007) ("[T]here appears to be no clear test or well settled rule in Pennsylvania . . . as to exactly when the corporate veil can be pierced and when it may not be pierced.") (quoting *Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio*, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004)).

and the subsidiary was independently financed. *Id.* at 22.  Accordingly, the court found that the facts weighed in favor of finding that the parent and subsidiary behaved as "a typical parent-subsidiary relationship rather than [the subsidiary] being the mere instrumentality of [the parent]." *Id. See also In re Enterprise Rent-A-Car Wage & Hour Employ. Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) (applying the ten factors and finding that ownership, shared directors, common marketing images, and a unified information technology system did not implicate the parent company's control over the Pennsylvania subsidiary's internal workings or daily operations).

So too here, PJSC and its American subsidiaries had a typical parent-subsidiary relationship.  PJSC did not own GPMI stock.  Martynov Decl., ¶ 18.  PJSC has its own board of directors and none of PJSC's directors were ever directors or officers of GPMI.  *Id.* ¶ 19.  PJSC maintains its own books and records and its accounts were not comingled with GPMI.  *Id.* ¶ 21.  PJSC employed its own personnel.  *Id.*  PJSC never controlled the day-to-day operations of GPMI, including its budgeting, marketing, operating, personnel, or sales.  *Id.* ¶ 23.  PJSC never demanded that GPMI seek its approval for the majority of its operations.  *Id.* ¶ 24.  PJSC provided management oversight as the parent corporation, but never directed that GPMI undertake any certain action.  *Id.* ¶ 26.  PJSC made every effort to maintain corporate separateness, observe corporate formalities, and functioned independently from GPMI in all regards.  Based on the totality of these factors, it would be unjust to exercise personal jurisdiction over PJSC on an alter ego theory based on its connection to GPMI.  *See Smith v. Ford Motor Co.*, No. 1814, 2014 WL 8845355, at *3 (Pa. Ct. Com. Pl. Jan. 24, 2014) (no alter ego jurisdiction where subsidiary was "a fully funded and viable company which maintains separate and independent books, records, financial statements, and bank accounts").

The Commonwealth may not rely on the conclusory allegations in the Second Amended Complaint to support its assertion of personal jurisdiction.  The Commonwealth in large part relies on threadbare and conclusory allegations to assert that PJSC's indirect subsidiaries were in fact its agents or alter egos.  *See, e.g.*, SAC ¶ 301 ("GPMI acted as agent for . . . [PJSC] and LAC"); ¶ 304 ("GPMI, LAC and LNA acted as agents for [PJSC]"); ¶ 313 ("Vadim Gluzman, on behalf of and as an agent for [PJSC] . . ."); ¶ 339 ("acted as alter-egos and/or as if GPMI was a department"); and ¶ 345 ("directly, indirectly, and through agents and/or officers, or alter-egos, successors in liability").  By the same token, the Commonwealth emphasizes, without support, that certain actions were allegedly taken at PJSC's direction.  *See, e.g.*, *id.* ¶ 301 ("GPMI, at the direction of LAC and [PJSC], entered into an Amended Master Lease . . ."); ¶ 305 ("with the approval and at the direction of [PJSC] and LAC, GPMI obtained a loan . . ."); and ¶ 314 ("[PJSC] directed LAC to create LNA . . .").  Far from well-pleaded allegations, these are simple legal conclusions.  Glaringly absent from these legal conclusions are any supporting factual allegations describing how each entity or person was acting as PJSC's agent or alter ego.  Standing alone, the Commonwealth's "conclusory" allegations are "insufficient for specific personal jurisdiction purposes."  *O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 676 (2d Cir. 2013).

The Commonwealth makes much hay of the fact that PJSC used its "trademarks to conduct business . . . through subsidiaries that held themselves out as Lukoil," SAC ¶ 296, "put the Lukoil trademarks" on various items, *id.* ¶ 303, and that the American subsidiaries "held themselves out as 'Lukoil' in signage . . . and other business activities," *id.* ¶ 304, but none of that establishes PJSC's control and domination of GPMI.  A subsidiary's use of its parent's trademarks does not, by itself, "rise to the level of necessary control to establish [alter ego]."

*Fulano*, 236 A.3d, at 21 (allegations that subsidiary "is free to use [parent's] trademark symbol without any compensation" does not establish alter ego relationship).  *See also In re Enterprise*, 735 F. Supp. 2d at 323 ("The common marketing image and joint use of trademarked logos fail to render [subsidiary] an alter ego of [parent] . . . this evidence does not demonstrate the necessary control by defendant parent over the subsidiaries.").  Because the Commonwealth fails to allege how the use of a PJSC or PJSC-related logo "would [] rise to the level of necessary control to establish [alter ego]," its trademark-related allegations necessarily fail to justify the exercise of jurisdiction over PJSC.  *See Fulano*, 236 A.3d at 21.

Moreover, the Commonwealth's allegations that "[PJSC] regularly called" its subsidiaries' executives to meetings to "tell them how to manage" the subsidiaries, SAC ¶ 343, or required those executives to report back to the parent, *id*. ¶ 334, establish nothing more than the "typical [interactions] in a parent-subsidiary relationship and does not involve the kind of day-to-day control needed to establish an alter ego relationship." *Fulano*, 236 A.3d at 21.  The mere fact that a subsidiary's executives meet regularly with the parent's executives is not enough to overcome the "strong presumption in Pennsylvania against piercing the corporate veil." *Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) (quoting *Wedner v. Unemployment Board*, 296 A.2d 792, 794 (Pa. 1972) (affirming district court's decision to refuse to pierce the corporate veil)).  Even allegations that the parent and subsidiary shared officers and directors—which is not the case here—do not suffice without more.  *Williams*, 2019 WL 4888570, at *5 ("Typically, a corporate parent . . . retains its distinct identity even though it may share common directors, officers, and shareholders with a subsidiary.") (citing *Botwinick*, 213 A.2d at 354).

In *Williams*, the court reviewed the ten factors referenced above and concluded that the subsidiary in that case was the "instrumentality" of the parent because "the relevant facts demonstrat[ed] a level of involvement by [the parent] that exceed[ed] mere macro-management." 2019 WL 4888570, at *9.  The court pointed to many facts that weighed in favor of exercising alter ego jurisdiction, including that the parent and subsidiary shared members on their respective boards of directors; the parent trained the subsidiary's CFO; the parent required the subsidiary's executives to travel to its Russian headquarters several times per year; the parent's executives visited the subsidiary's operation annually; and the parent maintained daily contact with the subsidiary's legal department and required regular submission of financial and performance reports.  *Id.* at *12.  The court highlighted that the parent acquired the subsidiary to mine an essential element in its steel-making operation, making the subsidiary "little more than a source of coal for [the parent's] steel manufacturing machine."  *Id.*  With that set of facts, the court reasoned that the parties did "not present the typical parent-subsidiary relationship." *Id.*

The facts of this case could not be more different.[15]  The Commonwealth has not alleged that PJSC controlled its American subsidiaries through its regular meetings or that it managed the daily minutiae of their internal affairs, budgeting, marketing, operating, personnel, or sales.  Nor has the Commonwealth alleged that PJSC required its American subsidiaries to obtain its approval for the majority of their operations.  And with good reason: PJSC never did.  *See* Martynov Decl., ¶¶ 23-24.  At most, PJSC provided the oversight and direction typical of a parent holding corporation, none of which allows this Court to disregard the "general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call

---

[15] Although this Court concluded that the Commonwealth had made out a *prima facie* case for alter ego jurisdiction over LAC on the basis of its contacts with GPMI, based in large part on the *Williams* decision, August 2 Order, at 24-35, the Court should reach a different result as to PJSC for the reasons elaborated herein.

for an exception." *Advanced Tel. Sys.*, 846 A.2d at 1278 (citing *Zubik v. Zubik*, 384 F.2d 267,

273 (3d Cir. 1967)); *see also Smith*, 2014 WL 8845355, at *3 (a parent "requiring approval of

[the subsidiary's] officers and directors, supervising its operations and product lines, and

approving certain aspects of its day-to-day business activities" were indicia of "normal parent-

subsidiary relationship"). There is nothing about the relationship between PJSC and GPMI that

sets it apart as anything other than a typical parent and subsidiary.

The Commonwealth's allegations fail to satisfy another important factor in the alter ego

jurisdiction analysis, which is to show that the subsidiary was performing functions that the

parent corporation would ordinarily do itself. *See Williams*, 2019 WL 4888570, at *7 (citing the

eighth factor, "the subsidiary's performance of business functions that the parent company would

normally conduct"). The Commonwealth alleges that PJSC and its American subsidiaries had,

among other things, "similar or supplementary business functions," SAC ¶ 344, but does not

plausibly allege that any subsidiary was performing functions that PJSC would normally

conduct. Indeed, the operations of GPMI, which are central to the Commonwealth's Second

Amended Complaint, were completely distinct from PJSC's operations. GPMI existed prior to

its acquisition by LAC, and served a purpose well distinct from PJSC: the operation of hundreds

of service stations in the United States and their associated petroleum storage and distribution

infrastructure. In *Williams*, as described above, the court reviewed multiple factors to determine

whether it could exercise alter ego jurisdiction in Pennsylvania over a foreign parent company.

2019 WL 4888570, at *9-13. For many reasons, the court concluded it had jurisdiction,

including because the subsidiary was "performing an essential function in the steel making

process that [the parent] would otherwise have to perform internally." *Id.* at *13. By contrast,

PJSC, as a holding company in the Russian Federation that has never been directly involved in

the refining, distribution, or marketing of gasoline in the United States, could not itself have

performed GPMI's function in Pennsylvania or anywhere else. *See In re Enterprise*, 735 F.

Supp. 2d at 324 (finding it would have been improper to impute jurisdiction because "the

subsidiary is not performing a function that the parent would otherwise have had to perform

itself").

The best the Commonwealth can do is allege that PJSC was involved in *one* significant

transaction—the acquisition of GPMI—a venture that the Commonwealth concedes was out of

the ordinary as it was the "first [acquisition] by a Russian company of a publically [*sic*] held U.S.

company." SAC ¶ 299. In any event, the guarantees and related financing PJSC allegedly

provided to GPMI via other subsidiaries are insufficient to meet the Commonwealth's burden to

establish PJSC's control. *Lieberman v. Corporacion Experienca Unica, S.A.*, 226 F. Supp. 3d

451, 470 (E.D. Pa. 2016) (transfers of money between affiliate companies do not "rise to the

level" of alter ego under Pennsylvania law). The Commonwealth's allegations about the

acquisition and eventual bankruptcy filing of GPMI—the truth of which PJSC disputes, *see*

Martynov Decl., ¶ 27—do not establish that PJSC had any involvement in the subsidiaries'

actions outside of a single transaction, and are thus insufficient to warrant an exercise of alter ego

jurisdiction over PJSC.

In the MTBE case pending in the District of Maryland, the court declined to exercise alter

ego jurisdiction over PJSC based on the conduct of GPMI. *State of Maryland*, 406 F. Supp. 3d at

446-48. Although the evidence demonstrated that "PJSC exercised some control over GPMI,"

including that "PJSC contributed capital to GPMI, served as a guarantor on GPMI's major

contracts, oversaw GPMI's budget, and shared its brand name with GPMI," the court concluded

that Maryland had "not sustained its burden of showing that PJSC exerted a degree of control

over GPMI greater than that of a typical parent company." *Id.* at 447. The court cited to multiple facts to support its conclusion that "PJSC and GPMI existed largely as separate entities," including that "they maintained their own books and records, had their own boards of directors, and did not comingle their accounts," and that "PJSC never exercised control over the day-to-day operations of GPMI." *Id.* Moreover, the Maryland court determined that "the exercise of personal jurisdiction over PJSC, a foreign corporation, would impose a significant burden upon it" and "would offend traditional notions of fair play and substantial justice." *Id.* at 448. All of those facts and principles are before this Court as well and support a similar finding here.

### C. Because the Commonwealth Has Failed to Plead Any Specific Facts Establishing PJSC's or LPA's Contacts With Pennsylvania, It Is Not Entitled to Jurisdictional Discovery

As explained above, when the Commonwealth's bare legal conclusions are set aside, its remaining allegations in the Second Amended Complaint fail to make even a *prima facie* case establishing PJSC's or LPA's contacts with Pennsylvania. Thus, to the extent the Commonwealth seeks it, jurisdictional discovery is not warranted here. *See, e.g.*, *TNK Marine Transp., LLC v. Big 3 Diesel Repair, LLC*, No. 2:18-cv-01211-MJH, 2018 WL 6602214, at *4 (W.D. Pa. Dec. 17, 2018) (denying the plaintiff's request to take jurisdictional discovery where the plaintiff "only has suggested speculative allegations that discovery may likely yield more specific examples of Big 3's contacts with Pennsylvania" which "falls short of setting forth a prima facie case that Big 3 purposefully availed itself in conducting activity in Pennsylvania").

## II.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST THE REMAINING LUKOIL DEFENDANTS FOR FAILURE TO STATE A CLAIM

Even if this Court were to find a basis for exercising personal jurisdiction over PJSC and

LPA, this Court should dismiss the Second Amended Complaint against the Remaining LUKOIL

Defendants for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also In

re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 489 (S.D.N.Y.

2013) ("[T]he court 'need not accord [l]egal conclusions, deductions or opinions couched as

factual allegations. . .a presumption of truthfulness'") (citation omitted).  "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

### A.   This Court Should Dismiss the Second Amended Complaint Against PJSC Because the Commonwealth Has Failed to Plead a Theory of Indirect Liability

This Court should dismiss the Second Amended Complaint against PJSC for the same

reason that it dismissed the claims against LAC—the Commonwealth has not, and cannot, plead

sufficient facts to pierce the corporate veil as to PJSC.  The Commonwealth does not have direct

claims against PJSC—a Russian corporation that is not alleged to have ever had its own

operations or presence in Pennsylvania.  *See supra*, I.A.i.  Rather, as with LAC, any claims

against PJSC turn on whether PJSC can be held liable for GPMI's alleged conduct related to

MTBE.  The Commonwealth spins a narrative about the alleged fraudulent transfer of GPMI's

assets between the LUKOIL entities, but as this Court has already found, the facts pled in the Second Amended Complaint about the alleged fraud upon GPMI are not sufficient to pierce the corporate veil of GPMI's direct parent, LAC.  This Court's reasoning in its August decision dismissing all claims against LAC is the law of the case,[16] and if the veil cannot be pierced as to GPMI's direct parent, then it cannot be pierced as to PJSC, GPMI's indirect parent who sits many entities above LAC in the corporate structure.

In its August 2 Order, this Court dismissed the Commonwealth's veil-piercing theory as to LAC, concluding that the Commonwealth had "failed to allege sufficient facts to state a claim against LAC on a veil-piercing theory, and so any claims premised on GPMI's conduct following its acquisition by LAC must be dismissed."  August 2 Order, at 39.  Applying Maryland law,[17] this Court explained that in Maryland, "a corporation's veil will only be pierced 'where it is necessary to prevent fraud or enforce paramount equity.'"  *Id.* at 36-37 (quoting *Serio v. Baystate Properties, LLC*, 60 A.3d 475, 488 (Md. Ct. Spec. App. 2013) (quoting *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 340 A.2d 225 (Md. 1975))).  *See also Hildreth v. Tidewater Equip. Co.*, 838 A.2d 1204, 1210 (Md. 2003) (courts will disregard the corporate entity when "the corporation is used as a mere shield for the perpetration of a fraud" or where failing to disregard the corporate form will create "an inequitable result, involving fundamental unfairness").  The Court noted that "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil."  *Id.* at 37 (quoting *Serio*, 60 A.3d at 484 (citation omitted)).

---

[16] *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ("Under the law of the case doctrine, a decision on an issue made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.").  The Second Circuit has "repeatedly stated [that it] will not depart from the law of the case absent cogent or compelling reasons."  *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996) (internal quotation marks and alteration omitted).

[17] As this Court explained, "in accordance with Judge Scheindlin's earlier determination [in this case], Maryland law applies to whether GPMI's corporate veil should be pierced…."  August 2 Order, at 36.

This Court concluded that the Commonwealth had not met its burden of showing that piercing GPMI's corporate veil was necessary under either prong of Maryland's restrictive test. Indeed, this Court found that the "Commonwealth does not even attempt to demonstrate how piercing GPMI's veil would prevent fraud or enforce a paramount equity[] such that veil-piercing is warranted under Maryland law." August 2 Order, at 37.  Regarding the fraud prong, the Court found that the allegations that LAC fraudulently transferred GPMI's assets to LNA prior to GPMI's bankruptcy did not support piercing the corporate veil. *Id.* at 37-38. Notwithstanding the Commonwealth's arguments in its briefing, this Court concluded that nothing in the Second Amended Complaint itself "suggests that the alleged fraudulent transfer of assets constitutes a fraud or inequity that could be prevented or mitigated by piercing GPMI's corporate veil." *Id.*  Indeed, as the Court rightly pointed out, the "Commonwealth has not alleged that it was a victim or that it has been impacted by the purported fraud in any way," but rather alleged that GPMI itself was the victim of a fraud, so the fraud exception to Maryland's rule of corporate separateness is inapplicable here. *Id.* at 38.

As for the paramount inequity exception, this Court similarly found that the Commonwealth had failed to meet its burden.  As this Court explained, "no Maryland appellate court has ultimately 'found an equitable interest more important than the state's general interest in limited shareholder liability,'" so "the paramount inequity exception is also inapplicable." *Id.* at 38-39 (quoting *Serio*, 60 A.3d at 484-85).  Because the Court concluded that "the alleged fraudulent transfer of GPMI's assets does not constitute the type of 'fraud' that warrants piercing the corporate veil under Maryland law," this Court found that the Commonwealth could not avail itself of the paramount inequity exception either. *Id.* at 39.  Accordingly, this Court dismissed all claims against LAC premised on GPMI's conduct following its acquisition by LAC.

Claims that fail against LAC must similarly fail against PJSC as the connection between GPMI and PJSC is even more attenuated.  If the veil cannot be pierced as to GPMI's direct parent, LAC, then the Commonwealth cannot instead pierce multiple veils to reach PJSC, the indirect parent of GPMI, through LAC.  *See Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 349 (S.D.N.Y. 2013) (explaining that to disregard "sister" subsidiaries, a plaintiff must "double-pierce," that is, "the veils separating each entity from the shared corporate parent must be pierced").  The Commonwealth's allegations that PJSC participated in the alleged fraud against GPMI, as opposed to a fraud that impacted or damaged the Commonwealth in any way, are not sufficient to pierce the veil as to PJSC.  August 2 Order, at 38.  This Court's reasoning as to LAC applies with even more force to PJSC as GPMI's indirect parent, and all claims against PJSC premised on GPMI's conduct should be dismissed.

### B.  This Court Should Dismiss the Second Amended Complaint as to LNA Because the Commonwealth Has Not Stated a Claim Based on Successor Liability

The Commonwealth's claims against LNA should similarly be dismissed because the August 2 Order already concluded that the Commonwealth has failed to plead a basis for successor liability.  LNA did not exist until 2007 and did not acquire assets until 2009, SAC ¶¶ 314-15, 317-20, and there are no allegations in the SAC to suggest that LNA had anything to do with the operation of gasoline stations before 2009, years after the industry stopped using MTBE.  The Commonwealth, therefore, has no direct claims against LNA.

Instead, it appears the Commonwealth's theory as to LNA is that it should be responsible for GPMI's alleged conduct simply because LNA acquired certain of GPMI's assets in 2009.  However, as this Court has already determined, the Second Amended Complaint is completely devoid of the factual allegations required to establish successor liability.  August 2 Order, at 40.

Therefore, any claims against LNA based on successor liability for GPMI's alleged conduct should be dismissed.

### C.   This Court Should Dismiss the Second Amended Complaint Against LPA Because It Fails to Plead Any Facts Against LPA

This Court should dismiss the Second Amended Complaint against LPA because the Commonwealth has not articulated a single allegation against LPA that could put LPA on notice of the case against it.  Indeed, while other defendants are referred to by name throughout the Second Amended Complaint, the only mentions of LPA in the entire Second Amended Complaint are in one paragraph describing LPA as a "Delaware limited liability company with a registered Pennsylvania address" with its principal place of business in New York, SAC ¶ 86, and another stating in a conclusory fashion that LPA along with multiple other defendants "distributed, stored and sold MTBE gasoline in Pennsylvania."  SAC ¶ 128.[18]  While the Federal Rules of Civil Procedure generally require only a short and plain statement of the claim and do not require a party to plead detailed factual allegations, *see* Fed. R. Civ. P. 8(a)(2), a plaintiff does have to plead sufficient facts to give rise to a reasonable inference that the named defendant is liable for the alleged misconduct.  *Iqbal*, 556 U.S. at 678.  Therefore, even with the liberal pleading standards provided by the Federal Rules of Civil Procedure, the Commonwealth is still required to place LPA on notice of the claims against it.

To the extent the Commonwealth attempts to rely on its allegations against the other LUKOIL Defendants to establish liability against LPA, such an attempt to lump all the LUKOIL Defendants together does not pass muster.  First, LPA is not alleged to be a part of the corporate

---

[18] It is no surprise that there are no allegations against LPA because LPA has nothing to do with the manufacturing of MTBE gasoline and/or the operation of gas stations.  LPA is a trading entity.  It is not an oil refiner and it has never owned or operated refineries or gas stations in Pennsylvania or anywhere else.  More specifically, LPA has never manufactured MTBE gasoline.  *See* I.A. above.

family through which it has attempted to assert liability against PJSC, LAC, and LNA for

GPMI's alleged conduct. *Compare* SAC ¶¶ 83-85 (describing PJSC, LAC, and LNA in relation

to each other) *with* ¶ 86 (describing LPA without any mention of another LUKOIL entity).

Moreover, this sort of group pleading is widely discouraged by federal courts. *Canon*

*U.S.A., Inc. v. F & E Trading LLC*, No. 15-cv-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29,

2017) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants

together for pleading purposes.") (citing *Ritchie v. Northern Leasing Sys., Inc*., 14 F. Supp. 3d

229, 236 (S.D.N.Y. 2014)); *Holmes v. Allstate Corp*., No. 11-cv-1543, 2012 WL 627238, at * 22

(S.D.N.Y. Jan. 27, 2012) ("[G]roup pleading" violates Fed. R. Civ. P. 8(a)'s requirement that a

pleading "give each defendant fair notice of the claims against it."). *See also, e.g.*, *Leneau v.*

*Ponte*, No. 1:16-CV-776-GHW, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018)

("[C]omplaints that rely on 'group pleading' and fail to differentiate as to which defendant was

involved in the alleged unlawful conduct are insufficient to state a claim.") (internal citations

omitted); Opinion and Order, *Pennsylvania v. Exxon Mobil Corp. (In re MTBE Prods. Liab.*

*Litig.)*, No. 14-cv-06228 (S.D.N.Y. July 2, 2015) (Scheindlin, J.), ECF No. 152 at 18 ("The

remaining allegations accusing defendants – as a group – of engaging in deceptive conduct or

otherwise violating the UTPCPL are simply too vague as to each defendant under *Twombly* and

its progeny to state a claim."); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013)

(dismissing § 1983 claims for impermissible group pleading, where, "aside from four paragraphs

that state where these defendants reside and where they are employed [the defendants were] are

not mentioned anywhere in the Complaint").

The Commonwealth failed to include any factual allegations against LPA in the Second

Amended Complaint that could put LPA on notice of how it is connected to the alleged MTBE

contamination or any other alleged claims against it.  This is not surprising, as a trading entity like LPA simply has nothing to do with the MTBE dispute.  The general strategy of lumping defendants into a group and alleging that the group did something supposedly objectionable is wholly insufficient to establish a cause of action against LPA.  Absent any allegation to support a claim against LPA in the Second Amended Complaint, the Court should dismiss LPA.

## **CONCLUSION**

For the foregoing reasons, PJSC and LPA respectfully request that this Court dismiss the Commonwealth's Second Amended Complaint as against them, with prejudice, for lack of personal jurisdiction, and deny any attempt for jurisdictional discovery, and the Remaining LUKOIL Defendants respectfully request that this Court dismiss the Second Amended Complaint, with prejudice, for failure to state a claim against them.

Dated: October 1, 2021               Respectfully submitted,

/s/ Joseph L. Sorkin
Joseph L. Sorkin
Anne M. Evans
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Phone: 212-872-1000, Fax: 212-872-1002
jsorkin@akingump.com
aevans@akingump.com

Ellen L. Pierce (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street
Suite 4100
Philadelphia, PA 19103
Phone: 215-965-1200, Fax: 215-965-1210
epierce@akingump.com

*Counsel for PJSC LUKOIL, LUKOIL North*
*America LLC, and LUKOIL Pan Americas LLC*

33

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2021, I caused a true and correct copy of the foregoing

Memorandum of Law as well the accompanying Notice of Motion and supporting declarations to

be served by CM/ECF to all counsel of record registered to the Court's CM/ECF system as well

as by electronic filing via File & ServeXpress on all counsel of record.


/s/ Anne M. Evans_____