UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
In Re: Methyl Tertiary Butyl Ether ("MTBE")   :   Master File No. 1:00-1898
Products Liability Litigation                              :   MDL 1358
                                                           :
This document relates to:                                  :
                                                           :   **OPINION & ORDER**
*New Jersey Department of Environmental*       :
*Protection et al. v. Amerada Hess Corporation* :
*et al.*, Case No. 08 Civ. 312 (VSB)              :
                                                           :
-----------------------------------------------------------X

Appearances:

Leonard Z. Kaufmann
Cohn, Lifland, Pearlman, Herrmann & Knopf, L.L.P.
Saddle Brook, New Jersey

John K. Dema, Scott E. Kauff
Law Offices of John K. Dema, P.C.
Rockville, Maryland

Duane C. Miller, Michael Axline
Miller & Axline, P.C.
Sacramento, California

Daniel Berger, Tyler E. Wren
Berger & Montague, P.C.
Philadelphia, Pennsylvania

*Special Counsel for Plaintiffs*

David J. Lender, Diane Sullivan
Jed P. Winer
Weil, Gotshal & Manges LLP
New York, New York

Marc A. Rollo, Carlos M. Bollar, Charles J. Dennen
Archer & Greiner, P.C.
Haddonfield, New Jersey

*Counsel for Defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation*

VERNON S. BRODERICK, United States District Judge:

Before me is a motion filed by Defendants Exxon Mobil Corp. and ExxonMobil Oil Corp. (together, "Exxon") arguing that certain claims brought in this action should be dismissed "as unripe under" Federal Rule of Civil Procedure 12(b)(1).  (Doc. 610 ("Ripeness Br.")). Because Exxon's argument is inconsistent with binding Second Circuit law, the motion is DENIED.

I. **Factual Background and Procedural History**[1]

This action is part of a consolidated multidistrict litigation ("MDL") related to the alleged contamination of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water.  *See In re MTBE Prods. Liab. Litig.*, MDL No. 1358 (SAS), 2015 WL 7758530, at *1 (S.D.N.Y. Dec. 1, 2015).  In this action (the "New Jersey case" or the "New Jersey action"), New Jersey[2] alleges that Defendants'[3] manufacture or use of MTBE has contaminated, or threatens to contaminate, groundwater within its jurisdiction.

---

[1] The following factual summary is presented for background purposes only, and I only recount fact necessary for context related to the instant motion.  I make no findings of fact and reach no conclusions of law in Part I of my decision.  In deciding whether there is subject matter jurisdiction, I may consider the affidavits and exhibits the parties attached to their briefs regarding Exxon's present motion brought under Rule 12(b)(1).  *See Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) ("In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint.").

Familiarity with the underlying facts and the procedural history of the case is presumed for the purposes of this Opinion & Order.  A thorough recitation of the background facts related to this MDL is provided in United States District Court Judge Shira A. Scheindlin's decision *In re MTBE Products Liability Litigation*, 379 F. Supp. 2d 348, 364–67 (S.D.N.Y. 2005).  Further procedural history can be found in my September 30, 2019 Opinion & Order. (Doc. 582.)

[2] Plaintiffs refer to themselves as "Plaintiffs" in their briefing on the present motion.  (*See generally* Doc. 619.) According to the electronic docket, the individual Plaintiffs are the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund.  I refer them hereinafter as "New Jersey" or "Plaintiffs."

[3] Many of the Defendants originally named in this action have settled over the course of the litigation.  A more complete list of the Defendants in this action can be found in prior Opinions & Orders.  (*See* Doc. 582, at 2 n.3.)

2

The present motion, brought by Exxon, concerns the extent of the damages, if any, that New Jersey may seek in this action against Exxon over Exxon's allegedly having caused MTBE contamination in the waters of New Jersey. To understand this motion, it is helpful to define some of the remedies available under governing New Jersey environmental law. Under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10–23.11 *et seq.* (the "Spill Act"), the term "remediation" refers to "the reduction of contaminants 'to risk-based standards.'" (Ripeness Opp. 12[4] (quoting *New Jersey Dep't of Env't Prot. v. Amerada Hess Corp.* ("*Restoration Opinion*"),[5] 323 F.R.D. 213, 223 (D.N.J. 2017) (citation omitted)). For MTBE, the operative risk-based standard is 70 parts per billion ("ppb") or less of MTBE in water. *See Restoration Opinion*, 323 F.R.D. at 217. Remediation can be imposed administratively by the New Jersey Department of Environmental Protection ("NJDEP"). *See* N.J.S.A. 58:10–23.11b.

"[P]rimary restoration" refers to "the reduction of contaminants to pre-discharge conditions." *Restoration Opinion*, 323 F.R.D. at 223 (internal quotation marks omitted). Because "MTBE" is "not naturally occurring in groundwater, the pre-discharge level" is "at or near zero ppb," meaning that primary restoration is only achieved once near zero ppb MTBE is water is reached. *Id.* at 227–28.[6] "[P]rimary restoration damages" thus refers to damages measuring "the cost of restoring resources to their pre-discharge condition." *Id.* at 215 n.1 (citing *N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 923 A.2d 345, 356 (N.J. Super. Ct. App.

---

[4] "Ripeness Opp." refers to Plaintiffs' Memorandum of Law in Opposition to ExxonMobil's Motion to Dismiss Plaintiffs' Natural Resource Damages Claims as Unripe. (Doc. 619.)

[5] The *Restoration Opinion* was issued in an action remanded from this MDL Court. Specifically, in April of 2015, that action was remanded from this Court to the United States District Court for the District of New Jersey to handle matters pertaining to MTBE contamination at specific sites in New Jersey. *See* 323 F.R.D. 215 & n.2. The parties' briefs refer to the *Restoration Opinion*, and no party questions the factual accuracy or legal correctness of the *Restoration Opinion*.

[6] I use the term "near zero" because current detection technology struggles to differentiate between 1 ppb of MTBE in water and 0 ppb of MTBE in water. *Id.* at 227–28.

Div. 2007)). By comparison to primary restoration, "compensatory restoration" refers to the damages a polluter may be ordered to pay "for the lost use of the services and value of the contaminated resources during the period of their contamination pending restoration." *Id.*

For over a decade now, Exxon has undertaken efforts to remediate MTBE contamination in groundwater at various sites in New Jersey under the framework of remediation plans approved by the NJDEP. (*See* Ripeness Br. 4–6.)[7] Over the course of remediation, one of New Jersey's experts on the damages Exxon may be asked to pay has repeatedly lowered his assessment of primary restoration damages, seemingly, as Exxon argues, because remediation has succeeded, at least in part, in abating the amount of MTBE in groundwater at the sites in question. (*Id.* at 6–10 (citations omitted)).

Exxon filed the present motion under Rule 12(b)(1) on April 6, 2021, along with supporting briefing and an attorney declaration attaching exhibits. (Docs. 609, 610, 611.) New Jersey filed its opposition brief, along with its own exhibits, on June 4, 2021. (Doc. 619.) Exxon filed its reply brief on July 23, 2021, (Doc. 620), and it requested oral argument on the motion that same day, (Doc. 621).

## II.     Legal Standard

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal quotation marks omitted)). While a

---

[7] *See also Restoration Opinion*, 323 F.R.D. at 217–18.

4

district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and citations omitted); *see also Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11 Civ. 1169(PAC)(RLE), 2012 WL 1438347, at *2 (S.D.N.Y. Mar. 14, 2012) ("In deciding jurisdictional issues, the court may rely on affidavits and other evidence outside the pleadings.").

### III. Discussion

#### A. *Ripeness*

The crux of Exxon's motion is that, because its remediation efforts appear to be working to achieve the target standard of "less than 70 ppb" at certain MTBE contamination sites, the actions it is already undertaking are "likely to also lead to restoration of those sites to pre-discharge condition." (Ripeness Br. 18.) Exxon uses this to assert that New Jersey's claims for primary restoration damages at the sites relevant to this litigation "are not ripe for judicial determination." (*Id.*) Exxon says this is so because the extent of primary restoration damages are "conjectural and hypothetical and contingent on the result of the ongoing remediation." (*Id.*)

To be justiciable, a plaintiff's claim must be "ripe," meaning that it "must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). "The ripeness doctrine is drawn both from Article III limitations

on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Id.* (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). The constitutional requirement "overlaps with the standing doctrine, 'most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (quoting *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 226 (2d Cir. 2008)). Prudential ripeness, meanwhile, requires a court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Org. for Marriage*, 714 F.3d at 691 (quoting *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131–32 (2d Cir. 2008)). In other words, while a case may be constitutionally ripe, and thus within an Article III court's authority to decide, a "declar[ation] that a case is not prudentially ripe . . . means that the case will be *better* decided later." *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003).[8]

In an opinion in a case from this MDL, the Second Circuit held that the City of New York's claims against Exxon were both constitutionally and prudentially ripe. *MTBE*, 725 F.3d at 109–12. In that action, "[t]he City's theory of its legal injury [w]as that, by contaminating the water" at a site that the City had planned to develop for municipal drinking water known as the "Station Six Wells," "Exxon interfered with the City's right to use that water." *Id.* at 110. Exxon argued that asking a jury to assess damages on the claim was too "speculative" to be ripe, given that the City had not yet started to build the facility at the Station Six Wells. *See id.*

---

[8] The Second Circuit has "noted 'tension' between exercise of prudential restraint and" recent Supreme Court cases questioning whether an Article III court may choose not to hear cases that fall within their authority. *Lab. Council for Latin Am. Advancement v. United States Env't Prot. Agency*, 12 F.4th 234, 253 & n.2 (2d Cir. 2021). However, prudential ripeness is still presently part of the law. *See id.* at 253 (finding a challenge to an administrative regulation was "prudentially unripe for review at this time."). Some courts have characterized "[p]rudential ripeness" as "a tool a court may employ, in its discretion, when 'the case will be *better* decided later and the parties will not have constitutional rights undermined by the delay.'" *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 662 (S.D.N.Y. 2018) (quoting *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003)), *aff'd sub nom. Ahmed v. Cuccinelli*, 792 F. App'x 908 (2d Cir. 2020).

6

The Second Circuit rejected this argument. It reasoned that "Exxon's extensive discussion of the current disuse of the Station Six Wells and the future steps required to use them addresses the scope of the *damages* flowing from the injury, not whether there is an injury at all." *Id.* The Second Circuit held that "[t]he City's claims [we]re prudentially ripe" because the City

> brought suit only after testing showed the presence of MTBE in the Station Six Wells. The Amended Complaint therefore alleged a *present* injury—namely, that Station Six had *already* been contaminated with MTBE. . . . [W]hether that injury was significant enough for the City to prevail on its claims under New York law was a question for the jury.

*Id.* at 110–11. It further elaborated that "[w]hether a particular damages model is supported by competent evidence sufficient to render it non-speculative is analytically distinct from whether the underlying claim is ripe for adjudication." *Id.* at 111.

The Second Circuit's reasoning in its *MTBE* opinion controls here and forecloses Exxon's motion. As in the Second Circuit opinion, New Jersey's operative pleading alleges a present injury in the form of MTBE contamination and various locations. (5AC ¶¶ 3–5 ("MTBE discharges have been detected in waters of the State. . . . The Defendants include MTBE manufacturers and refiners and major-brand marketers of gasoline containing MTBE, . . . which has injured and continues to injure the waters of the State.").)[9] Exxon nowhere questions whether New Jersey is suffering from a present injury. Rather, its argument, at bottom, is that "it is inherently unreliable to try to predict future restoration tasks" and thus what "damages" may be imposed. (Ripeness Br. 20.) This is an argument about whether damages sought are too

---

[9] "5AC" refers to New Jersey's Fifth Amended Complaint in this action, which appears on the docket starting on the fourth file-stamped page of New Jersey's unopposed motion for leave to file its Fifth Amended Complaint. (Doc. 520.) I granted New Jersey's unopposed motion for leave on September 28, 2018. (Doc. 551.)

speculative, not about whether "the underlying claim is ripe for adjudication." *MTBE*, 725 F.3d at 111.

Exxon attempts to distinguish the Second Circuit's holding and reasoning in *MTBE*, but its efforts are unavailing. It argues that whether New Jersey has "suffered an injury in th[e] context" of "primary restoration" "is contingent on the outcome of ongoing remediation." (Reply 9.)[10] However, this erroneously conflates whether an injury is sufficiently extant to render a claim ripe with how contingent a theory of damages on that claim may be. *Cf. MTBE*, 725 F.3d at 110 (finding that "the presence of MTBE" establishes a "*present* injury" that establishes prudential ripeness). Exxon cites no law that would support the notion that claims can be unripe simply because the extent of damages for those claims may vary based on how circumstances could change over time.

Moreover, New Jersey substantive law bolsters the conclusion that, where there is a pollutant like MTBE in its waters, New Jersey may seek damages for restoration regardless of remediation efforts.[11] As the Superior Court of New Jersey, Appellate Division has explained, both "primary restoration" and "remediation" are among the "processes covered by the broad definition of 'cleanup and removal costs'" under "the Spill Act." *Exxon Mobil Corp.*, 923 A.2d at 356. The phrase "cleanup or removal" appears throughout the Spill Act provision that vests New

---

[10] "Reply" refers to Exxon's Reply Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Natural Resource Damages Claims as Unripe. (Doc. 620.)

[11] As already mentioned, ripeness doctrine overlaps with the standing doctrine, "most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *MTBE*, 725 F.3d at 110 (internal quotation marks omitted). The law recognizes that an injury supporting standing "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotation marks omitted). Although a plaintiff "cannot establish Article III standing by relying entirely on a statutory violation" after a 2021 Supreme Court case, *see Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021)); here, New Jersey's claimed injury is due to the present detection of MTBE in its waters—a circumstance Exxon does not dispute. This is a "concrete harm" that supports "standing." *See TransUnion*, 141 S. Ct. at 2200.

Jersey with one of its relevant causes of action in this case. *See* N.J.S.A. 58:10–23.11u. That same statute clarifies that the "[u]se of any remedy specified in this section shall not preclude use of any other remedy. [NJDEP] may simultaneously pursue administrative and judicial remedies provided in this section." N.J.S.A. 58:10–23.11u(a)(1). If I were to adopt Exxon's argument, I would be reading these words out of the statute and imposing an administrative exhaustion requirement on New Jersey even though the governing law expressly states there is none. *See id.* Exxon's position, after all, is premised on the notion that remediation precludes an action for restoration damages until remediation is completed.[12]

Exxon also makes much of a New Jersey law that was enacted to "extend[] the statute of limitations for civil actions brought by the State" for "remediation" or restoration. *Exxon Mobil Corp.*, 923 A.2d at 357 (citing N.J.S.A. 58:10B–17.1 ("§ 17.1")). Under this statute, "[e]xcept where a limitations provision expressly and specifically applies . . . or where a longer limitations period would otherwise apply . . . any civil action concerning" damages for restoration "shall be commenced within five years and six months next after the cause of action shall have accrued." § 17.1(b)(1). The statute goes on to say that

---

[12] This Spill Act provision also distinguishes a case from the Northern District of Alabama that Exxon cites at some length. *See Valley Creek Land & Timber, LLC v. Colonial Pipeline Co.*, 432 F. Supp. 3d 1360, 1366 (N.D. Ala. 2020), *appeal dismissed*, No. 20-10324-HH, 2021 WL 3174328 (11th Cir. Feb. 8, 2021). In that case, a plaintiff landowner brought damages claims against an alleged polluting pipeline company, and all of those claims "hinge[d], at least in part, on the alleged diminution in value of the property." *Id.* at 1364. The landowner had an agreement with the pipeline company under which the company would attempt to "remediate" the pollution damage it had done to the land. *Id.* at 1366. The court held that the plaintiff's "damages claims lack sufficient concreteness for adjudication and remain prudentially unripe," because, on "the face of the pleadings, it appears that [the defendant] could possibly remediate all of the damage from the gasoline spill such that no devaluation or limited use of the property would occur." *Id.* at 1366. The court also noted that "[n]o Supreme Court or Eleventh Circuit caselaw exists that clearly aligns with the facts in this case." *Id.* at 1367.

By contrast, here, the New Jersey statute allows New Jersey to seek restoration even while seeking remediation through an administrative remedy. Moreover, I am bound to apply controlling Second Circuit law that clearly states that "the presence of MTBE" creates a "*present* injury" that establishes prudential ripeness. *MTBE*, 725 F.3d at 110.

> [f]or purposes of determining whether a civil action subject to the limitations periods specified in paragraph (1) of this subsection has been commenced within time, no cause of action shall be deemed to have accrued prior to January 1, 2002 or until the completion of the remedial action for the entire contaminated site or the entire sanitary landfill facility, whichever is later.

§ 17.1(b)(2).

Exxon argues that this statute means New Jersey's "claims for primary restoration at sites with ongoing remediation have not accrued until remediation is complete . . . ." (Ripeness Br. 22.) Assuming, without deciding, that an argument regarding whether a claim has accrued under a particular statute is cognizable on a Rule 12(b)(1) motion,[13] Exxon's argument misapprehends the statute in question. The statute plainly does not set an accrual rule—it states a limitations period that starts to run from the time "after the cause of action shall have accrued." § 17.1(b)(1). It does not define when the cause of action accrues and leaves the reader to look elsewhere to determine whether a claim has "accrued." *Id.* The subsequent paragraph of the statute states that its function is "[f]or the purposes of determining whether" an action "has been commenced within time," § 17.1(b)(2), not for the purposes of assessing whether a claim has accrued.

### B.     *The Parties Shall Meet and Confer on the "Closed Sites"*

In its brief, Exxon asks that I "schedule a status conference to address [New Jersey's] claims related to 'closed sites,'" meaning sites of MTBE contamination that have reached a certain point in the remediation process under New Jersey regulatory law. (*See* Ripeness Br. 22.) New Jersey responds that this matter is more appropriately handled in the first instance through

---

[13] In general, claim "accrual is properly analyzed under Rule 12(b)(6), not Rule 12(b)(1)," and Exxon only made a motion under Rule 12(b)(1). *See Phillips v. Lynch*, Civil Action No. 15-1514, 2016 WL 3248307, at *6 (E.D.N.Y. June 9, 2016) (explaining this to be the case at least where "statute of limitations . . . is non-jurisdictional"), *aff'd sub nom. Phillips v. Boente*, 674 F. App'x 106 (2d Cir. 2017).

the meet and confer process.  (Ripeness Opp. 24.)  I agree with New Jersey, and apparently so does Exxon, as it makes no mention of the closed sites in its reply brief.

Accordingly, to the extent necessary, the parties shall meet and confer regarding the closed sites.  Any issues related to the closed sites that cannot be resolved through the meet and confer process, and which are appropriate for judicial resolution, may be addressed to the designated magistrate judge, to whom I have referred this action for general pretrial matters. (Doc. 622.)

### IV.  Conclusion

For the foregoing reason, Exxon's motion is DENIED.  The Clerk of Court is respectfully directed to close the open motions at docket entries 609 and 621 on the docket numbered 08-cv-312.[14]

SO ORDERED.

Dated: July 27, 2022
    New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge

---

[14] Docket entry 621 is Exxon's request for oral argument on the ripeness motion resolved by this Opinion & Order. (Doc. 621.)  It is thus DENIED.