# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into by and between LUKOIL Americas Corporation ("LAC"), LUKOIL North America, LLC ("LNA"), LUKOIL Pan Americas LLC ("LPA"), and PJSC LUKOIL ("PJSC") (hereinafter the "Settling Defendants") and the Commonwealth of Pennsylvania and each and every Executive agency, acting through the Pennsylvania Attorney General, the Pennsylvania Insurance Department ("PID"), the Pennsylvania Department of Environmental Protection ("DEP"), and the Pennsylvania Underground Storage Tank Indemnification Fund ("USTIF" or "the Fund"), on their own behalf, and on behalf of their officers, employees and agents in their official capacities including in all capacities described in the Second Amended Complaint, including, without limitation, in all of the capacities set forth in Paragraphs 35 through 41 of the Second Amended Complaint, and in their capacity as trustee of natural resources (collectively the "Commonwealth"). (The Settling Defendants and the Commonwealth are sometimes referred to collectively herein as the "Settling Parties" or "Parties").

## I.   BACKGROUND

A.      On June 19, 2014, the Commonwealth filed two complaints in the Court of Common Pleas of Philadelphia County, Trial Division, Nos. 140602880 and 140602881. The cases were removed by the defendants to federal court and consolidated into *Commonwealth of Pennsylvania, etc. v. Exxon Mobil Corporation, et al*, 1:14-cv-06228-SAS (the "Litigation") and later assigned to the multi-district litigation in the United States District Court for the Southern District of New York ("MDL"). On November 6, 2015, the Commonwealth filed a Second Amended Complaint. The Litigation is currently pending against the Settling Defendants, except

for LAC because it was previously dismissed, as part of the MDL, styled *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL No. 1358.

B.     The Commonwealth, through the Litigation, seeks, among other things: (a) to recover past and future costs it has and will incur to redress alleged injury and the threat of future injury to waters and soil of the Commonwealth caused by methyl tertiary butyl ether ("MTBE") and its degradation and breakdown products; (b) to recover damages from, and obtain injunctive relief against, the MTBE Defendants;[1] (c) restoration and other equitable and statutory relief from the MTBE Defendants' alleged unfair and deceptive acts and practices in marketing MTBE and gasoline containing MTBE ("MTBE Gasoline") in Pennsylvania; and (d) to recover monies paid by USTIF to the Insurance Defendants (or to their contractors or vendors on those Defendants' behalf) for claims relating to releases from underground storage tank systems owned or operated by the Insurance Defendants as set forth in Counts VIII and IX of the Commonwealth's Second Amended Complaint.

C.     The Settling Defendants deny these claims and all other material allegations asserted against them.

D.     The Commonwealth contends that it has both an interest and a duty as a sovereign in protecting the health, safety, and well-being, both physical and economic, of its citizens with respect to the waters of the Commonwealth.

E.     The Commonwealth contends that, through DEP and USTIF, pursuant to the Environmental Rights Amendment to the Pennsylvania Constitution, Pa. Const. Art. 1, § 27 ("ERA"), it is trustee of Pennsylvania's public natural resources. The Commonwealth contends that it holds these natural resources as the common property of all the people, including

---

[1] Any capitalized terms used herein that are not yet defined shall have the meanings ascribed to them in Section II.

generations yet to come; and as Constitutional Trustee of these resources, it is charged with conserving and maintaining Pennsylvania's natural resources, including the waters of the Commonwealth, for the benefit of all its citizens. The Commonwealth contends that, through DEP and USTIF, and as trustee of Pennsylvania's public natural resources, it is authorized to assert the claims set forth in the Litigation including, but not limited to, the common law, statutory and product liability claims set forth in Counts I through IX of the Second Amended Complaint.[2]

      F.     The Commonwealth contends that DEP is the executive agency of the Commonwealth vested with the authority to administer and enforce the Pennsylvania Clean Streams Law, 35 P.S. §§691.101 – 691.1001 ("CSL"); the Pennsylvania Hazardous Sites Cleanup Act, 35 P.S. §§ 6020.101– 6020.1305 ("HSCA"); the Pennsylvania Storage Tank and Spill Prevention Act, 35 P.S. §§ 6021.101 – 6021.2104 ("STSPA"), and the Pennsylvania Land Recycling and Environmental Remediation Standards Act, 35 P.S. §§ 6026.101 – 6026.908 ("Act 2"). The Commonwealth contends that DEP is charged by these Acts and the ERA with responsibility for protecting, maintaining, conserving, and restoring, as need be, the Commonwealth's surface and ground water natural resources. The Attorney General is vested with the statutory authority to enforce the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 *et seq.* ("UTPCPL").

      G.     LUKOIL Americas Corporation is a holding company incorporated under the laws of Delaware with its principal place of business at 302 Harper Drive, Suite 303, Moorestown, New Jersey 08057.

---

[2] On August 2, 2021, the Court granted the Certain Defendants' Motion to Dismiss, dismissing Count III (Public Nuisance), and Counts VI and VII (violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law against certain Defendants).

H. LUKOIL North America, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 302 Harper Drive, Suite 303, Moorestown, New Jersey 08057.

I. LUKOIL Pan Americas LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 3200 Kirby Drive, Suite 900, Houston, Texas 77098.

J. PJSC LUKOIL or "Public Joint Stock Company LUKOIL" (formerly known as OAO Lukoil) is a corporation organized under the laws of the Russia Federation.

K. The Settling Defendants (expressly denying fault or liability) and the Commonwealth now desire to settle all disputes between them arising in any way from or that could have been asserted in connection with the Litigation, and all claims and damages released in Section III.2, prior to any verdict or finding of liability and prior to all of the evidence being presented to any court or any appeals from any of the decisions or rulings rendered to this point in the Litigation. In entering into this Settlement Agreement, no party makes any admission of any fact, responsibility, fault, or liability.

The Settling Parties, intending to be legally bound, agree as follows:

## II. DEFINITIONS

Unless otherwise expressly provided, terms used in this Settlement Agreement that are defined in the STSPA and its implementing regulations shall have their statutory or regulatory meaning. Whenever the terms listed below are used in this Settlement Agreement, the following definitions shall apply:

1. "Covered Substances" shall mean each and all of the following: (i) MTBE, tertiary butyl alcohol ("TBA"), tertiary amyl methyl ether ("TAME"), diisopropyl ether

("DIPE"), ethyl tertiary butyl ether ("ETBE"), and any other oxygenate; (ii) benzene, toluene, ethylbenzene, or xylene where and when it (or they) was (or were) released or discharged into the environment as a constituent of gasoline; and (iii) any degradation products of a substance or substances listed above.

2.      "Released Claims and Damages" shall mean each and all the following:

(a) all actions, causes of actions, suits, claims, or demands asserted against or that could have been asserted against the Settling Defendants in the Second Amended Complaint involving Covered Substances;

(b) all actions, causes of actions, suits, claims or demands, whether at law or in equity, whether known or unknown, whether suspected or unsuspected, fixed or contingent, liquidated or unliquidated, that could have been asserted against the Releasees, as that term is defined in II.13, as of the Effective Date, arising out of or relating to:

(i) the facts pled in the Second Amended Complaint relating to the use, presence or release of Covered Substances;

(ii) the use, presence or release of Covered Substances in, at, upon, under or from the Release Sites identified in the Commonwealth's MTBE Release Site List disclosed pursuant to CMO 119 §§ II.A and III.B on December 31, 2015, and April 12, 2016, and the stations identified on Exhibit A, or in any future Release Site List disclosed by the Commonwealth at any time in the Litigation; and

(iii) all past, present and future investigation, monitoring or remediation costs that were, could have been, or could be incurred or recoverable by the Commonwealth relating to the presence or release of Covered Substances in public or private wells within the Commonwealth;

(c) all prayers or requests for damages, injunctive relief, civil penalties, restitution or other equitable relief that were alleged against or that could have been alleged against the Settling Defendants in the Second Amended Complaint involving Covered Substances, including claims for attorneys' fees or other costs of the Litigation;

(d) all prayers or requests for damages, injunctive relief, civil penalties, restitution or other equitable relief, whether at law or in equity, whether known or unknown, whether suspected or unsuspected, fixed or contingent, liquidated or unliquidated, that could have been alleged against the Releasees, as that term is defined in II.13, as of or prior to the Effective Date, arising out of or relating to:

(i) the facts pled in the Second Amended Complaint relating to the use, presence or release of Covered Substances;

(ii) the use, presence or release of Covered Substances in, at, upon, under or from the Release Sites identified in the Commonwealth's MTBE Release Site List disclosed pursuant to CMO 119 §§ II.A and III.B on December 31, 2015, and April 12, 2016, or any future Release Site List disclosed by the Commonwealth at any time in the Litigation; and

(iii) all past, present and future investigation, monitoring or remediation costs that were, or could have been, incurred or recoverable by the Commonwealth relating to the presence or release of Covered Substances in public or private wells within the Commonwealth;

(e) all claims, prayers or requests for damages, injunctive relief, civil penalties, restitution or other equitable relief, demands, suits, liabilities, common law causes of action, appeals, constitutional causes of action, statutory causes of action, or regulatory causes of action, whether

at law or in equity, whether known or unknown, whether suspected or unsuspected, fixed or contingent, liquidated or unliquidated, arising out of or relating to each and all of the following:

(i) the actual or threatened presence of Covered Substances and their degradation or breakdown products in the ground or waters within the Commonwealth, including natural resource damages (including, without limitation, all actions, causes of actions, suits, claims or demands that were or could have been asserted against the Releasees arising out of or relating to the use, presence or release of Covered Substances in, at, upon, under or from the Release Sites identified in the Commonwealth's MTBE Release Site List disclosed pursuant to CMO 119 §§ II.A and III.B on December 31, 2015, and April 12, 2016, or any future Release Site List disclosed by the Commonwealth at any time in the Litigation);

(ii) the discharge of Covered Substances and their degradation or breakdown products into the ground or waters within the Commonwealth occurring prior to the Effective Date, that do, or could in the future threaten, affect, or otherwise impact the waters of the Commonwealth including, but not limited to, natural resource damages; and

(iii) all past, present and future investigation, monitoring or remediation costs that were, could have been, or could be incurred or recoverable by the Commonwealth relating to the presence or release of Covered Substances in public or private wells within the Commonwealth; and

(iv) all claims, prayers or requests for damages, injunctive relief, civil penalties, restitution or other equitable relief, demands, suits, liabilities, common law causes of action, appeals, constitutional causes of action, statutory causes of action, or

regulatory causes of action, whether at law or in equity, whether known or unknown, whether suspected or unsuspected, fixed or contingent, liquidated or unliquidated, arising out of or relating to each and all of the following:

(a) Releasees' liability to the Releasors under the common law, natural resource damage claims, or products liability or strict liability claims with respect to discharges of Covered Substances and their degradation products occurring prior to the Effective Date that now, or in the future, threaten or affect the soil, or waters of Pennsylvania;

(b) Releasees' liability (to the extent such liability exists) under any applicable federal or state statute, regulation or order, including Future Cleanup and Removal Costs, premised upon Releasees' Upstream Activities prior to the Effective Date of the Settlement Agreement; and/or

(c) the design, testing, manufacture, refining, blending, marketing, handling, sale, exchange, import, distribution, storage, transfer, purchase, trading, branding, supply or other use of or transactions involving MTBE, including all warnings or other communications relating to MTBE, for any reason.

3.      "Released Claims and Damages" do not include claims reserved in Paragraph III.5 of this Settlement Agreement.

4.      "Executive agency" shall mean the Governor of Pennsylvania and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government, but the term does not include any court or other officer or agency of the unified judicial system, the General Assembly and its officers and agencies, or any independent agency as set forth at 42 Pa. C.S. §102. Without limiting the foregoing, Executive

agencies include the Pennsylvania Attorney General, the Pennsylvania Department of Environmental Protection, the Pennsylvania Insurance Department, and the Pennsylvania Underground Storage Tank Indemnification Fund. Notwithstanding the foregoing, Executive agencies shall not include any state administered college or university.

 5. "Day" shall mean a calendar day unless expressly stated to be a working date.

 6. "Effective Date" shall mean the date that all Settling Parties have executed this Settlement Agreement.

 7. "Future Cleanup and Removal Costs" shall mean costs, cleanup, response, remediation and removal activities that the Commonwealth incurs after the Effective Date that (1) arise out of (a) a release at an Owned, Operated, or branded Site which occurred during the period in which Releasees owned, Operated, or branded the Site; or (b) an unreported release from a truck, tank truck, railcar, barge, ship, or vessel owned or leased by Releasees, and (2) for which Releasees are liable under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the Hazardous Sites Cleanup Act (HSCA), the Clean Streams Law (CSL), Storage Tank and Spill Prevention Act (STSPA) and/or Act 2 including, without limitation, the reopeners identified in 35 P.S. § 6026.505. Future Cleanup and Removal Costs shall not include costs, cleanup, response, remediation, and removal activities arising out of Upstream Activities.

 8. "Insurance Defendants" shall mean the parties identified as such in the Second Amended Complaint filed in the Litigation.

 9. "MTBE" shall mean methyl tertiary butyl ether, neat, or as a part of gasoline or as a contaminant, and its degradation or breakdown byproducts, including, but not limited to, TBA. "MTBE" shall also mean TBA when TBA is present in MTBE gasoline.

10. "MTBE gasoline" shall mean gasoline containing MTBE for any reason or purpose, and shall include, without limiting the generality of this definition, "reformulated gasoline" as that term is defined by the United States Environmental Protection Agency that contains MTBE.

11. "MTBE Defendants" shall mean the parties identified as such in the Second Amended Complaint filed in the Litigation.

12. "Paragraph" or "Section" shall mean a portion of this Settlement Agreement identified by an Arabic numeral or an upper- or lower-case letter.

13. "Releasees" shall mean LUKOIL Americas Corporation, LUKOIL North America, LLC, LUKOIL Pan Americas LLC, and PJSC LUKOIL (formerly known as OAO Lukoil); and each of their past and present officers, directors, employees, agents, representatives, successors, assigns, insurers, and attorneys, including their respective parent companies, subsidiaries, affiliates, predecessors-in-interest and successors-in-interest, acting in all of their capacities.

14. "Releasors" shall mean:

(a) the Commonwealth, the Pennsylvania Attorney General, the Pennsylvania Department of Environmental Protection, the Pennsylvania Insurance Department, the Pennsylvania Underground Storage Tank Indemnification Fund, in all capacities set forth in the Second Amended Complaint, including, without limitation, the capacities set forth in Paragraphs 35 through 41 of the Second Amended Complaint, and in their capacity as trustee of natural resources, and each of its or their officers, employees, agents, officials, representatives, successors, assigns and attorneys, acting in all of its or their capacities, including in its or their sovereign capacities, in its or their proprietary capacities as owner

10

of public land or otherwise, and in its or their capacity as trustee of natural resources of the Commonwealth under the ERA; and

(b) any Executive agencies having authority to assert the Released Claims including, but not limited to, the Pennsylvania Attorney General, the Pennsylvania Department of Environmental Protection, the Pennsylvania Insurance Department, the Pennsylvania Underground Storage Tank Indemnification Fund, and each of its or their officers, employees, agents, officials, representatives, successors, assigns and attorneys, acting in all of its or their capacities, including in its or their sovereign capacities, in its or their proprietary capacities as owner of public land or otherwise, and in its or their capacity as trustee of natural resources of the Commonwealth under the ERA.

15.     "TBA" shall mean tertiary butyl alcohol.

16.     "Upstream Activities" shall mean the design, testing, refining, storage, blending, handling, import, manufacture, sale, supply, distribution, exchange, transfer, purchase, trading, marketing, and/or branding of MTBE or gasoline with MTBE.

17.     "Working Day" shall mean a day other than a Saturday, Sunday, or State holiday of the Commonwealth of Pennsylvania. In computing time under this Settlement Agreement, where the last day would fall on a Saturday, Sunday, or State holiday, time shall run until the close of business of the next Working Day.

## III.   TERMS OF AGREEMENT

### 1.     Settlement Consideration.

A.     Subject to Section III.4, the Settling Defendants will pay to the Commonwealth the sum of thirteen million dollars ($13,000,000) ("Settlement Payment"), in full and complete satisfaction of the Commonwealth's claims that have been released in Section III.2.

B.      The Settlement Payment shall be delivered in two installments. The Settling Defendants will make the first installment in the amount of six million, five hundred thousand dollars ($6,500,000) which shall be delivered to the Pennsylvania Attorney General Escrow Account (wiring instructions to be provided by the Commonwealth) within twenty (20) business days of the Effective Date. The Settling Defendants will make the second installment in the amount of six million, five hundred thousand dollars ($6,500,000) plus three percent (3%) APR interest for a total of six million, six hundred and ninety-five thousand dollars ($6,695,000), which shall be delivered to the Pennsylvania Attorney General Escrow Account (wiring instructions to be provided by the Commonwealth), within 365 days from the date of the first installment.

C.      In any action brought by the Commonwealth to enforce the terms of this Agreement, including but not limited to payment of the second installment, the Commonwealth shall be entitled to recover its costs and reasonable attorney fees from Settling Defendants should the Commonwealth prevail in the enforcement action.  If an enforcement action is necessary due to non-payment of the second installment, should the Commonwealth prevail it shall be entitled not only to costs and reasonable attorney fees, but interest at the rate of 10 percent (10%) per annum on the second installment amount, up to the date on which the Commonwealth receives payment of the second installment.

D.      The Settlement Payment does not constitute, or include the payment of, any fine or penalty. As of the Effective Date, there are no fines or penalties owed by any of the Settling Defendants to the Commonwealth or any Releasor(s).

E.      Pursuant to Section 162(f)(2) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2), the Parties agree that the Settlement Payment constitutes restitution for damage or

harm that may be caused by a violation of law, or as paid to come into compliance with such law. The Parties further agree that no part of the Settlement Payment constitutes reimbursement to the Commonwealth for costs of investigation or litigation.

F.       After the Effective Date, the Settling Parties shall not serve on each other discovery, as if the Court had dismissed the Settling Defendants and Releasees from the Litigation, and the Settling Parties shall withdraw any pending discovery requests to each other. No later than seven (7) days after payment of the first installment of the Settlement Payment, the Settling Defendants and Releasees shall inform the Court that they withdraw ECF 708-709 (also ECF 4644-4645) (Motion to Dismiss Pursuant to Rule 12(b)(2) and 12(b)(6) and related documents) and to the extent the Settling Defendants and Releasees jointly filed a Motion for Partial Summary Judgment, ECF 582-583 and ECF 578-579, the Settling Defendants and Releasees will also withdraw their joinder in those motions.

**2.       Release and Covenant Not to Sue Releasees by Releasors.**

A.       Upon receipt of the first installment of the Settlement Payment by the Pennsylvania Attorney General pursuant to Section III.1.B, and subject to the reservations in Section III.5., the Releasors, on their own behalf and on behalf of all of their officers, employees and agents in their official capacities, including, but not limited to, under and pursuant to the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, 42 Pa. Cons. Stat. §§ 8321 *et seq.*, and the Pennsylvania Comparative Negligence Act, 42 Pa. Cons. Stat. § 7102, fully release, acquit, and forever discharge with prejudice, each and all of the Releasees from any and all Released Claims and Damages.

B.       Subject to the reservations set forth in Section III.5, infra, Releasors further covenant not to sue, continue to sue, or otherwise take judicial or administrative action against

any or all of the Releasees, on any or all of the Released Claims and Damages. Releasors further covenant not to sue, continue to sue, or otherwise take judicial or administrative action, whether at law or in equity, whether known or unknown, whether suspected or unsuspected, fixed or contingent, liquidated or unliquidated, against any or all of Releasees for past, present and future damages that were, could have been, or could be recoverable by the Commonwealth relating to the presence or release of Covered Substances in public or private wells within the Commonwealth.  Notwithstanding the foregoing, regulatory actions, including enforcement actions and administrative orders issued by the Commonwealth pursuant to the Storage Tank and Spill Prevention Act and Act 2 shall be exempt from the covenant not to sue in the preceding sentence.

C.      Nothing in this Release shall bar or limit the Commonwealth's rights to sue the Settling Defendants in order to enforce the terms of this Settlement Agreement.

D.      The releases and covenant not to sue contained in this Section III.2 shall take effect immediately upon payment of the first installment of the Settlement Payment to the Commonwealth pursuant to Section III.1.

E.      This release is intended to release only the Releasees. Apart from the Releasees, the Commonwealth is not releasing any other parties to the Litigation or any non-parties. Released Claims and Damages do not encompass any claim or cause of action against any other person or entity who are not Releasees, including any other Defendants named or to be named in the Litigation, or any other person or entity who manufactured, refined, distributed, transported, sold and/or supplied gasoline to or through any facility located within the Commonwealth. Nothing in this Settlement Agreement shall release any claim that the Commonwealth has against any Defendant who is not a Releasee. This release also does not release or exonerate the

14

Releasees from any contractual claim for indemnity. The Settling Defendants expressly reserve

all rights, including but not limited to, any right to indemnification and contribution, defenses,

claims, demands, and causes of action that the Settling Defendants may have concerning any

matter, transaction, or occurrence, whether or not arising out of the subject matter of the Second

Amended Complaint, against any person not a party to this Settlement Agreement.

F.      Notwithstanding any other provision herein, "Released Claims and Damages" do

not include any claim based on a release of gasoline, or any constituent thereof, into the

environment by the Settling Defendants, or other Releasees, occurring after the Effective Date of

this Settlement Agreement.

**3.      Contribution Protection.**

A.      This is a *pro rata* joint tortfeasor release made pursuant to the Uniform

Contribution Among Tortfeasors Act, 42 Pa. Cons. Stat. Ann. §§ 8321, *et seq.*, and (to the extent

applicable) the Comparative Negligence Act, 42 Pa. Cons. Stat. Ann. § 7102, and shall: (1)

constitute a complete discharge of any and all liability of the Releasees to the Releasors as set

forth in Section III.2, and (2) result in a *pro rata* share reduction of the damages recoverable

against all other joint tortfeasors or, if the common liability is apportioned in accordance with the

Comparative Negligence Act, by Releasees' proportionate share of the common liability. The

Parties agree that this Release is intended to preclude any contribution claim by a third party,

pursuant to 42 Pa. C.S. § 8327 or 42 Pa. C.S. § 7102(a.1)(4) or otherwise. The Parties agree that

this Settlement Agreement shall result in a *pro rata* share reduction of the Commonwealth's

damages recoverable against any and all other joint tortfeasors to the extent provided under 42

Pa. C.S. § 8327, 42 Pa. C.S. § 7102(a.1)(4), or any other statute, regulation, or common law

principle that provides contribution rights against the Releasees concerning any matter, transaction or occurrence relating to the Litigation or Damages sought in the Litigation.

B.      This is not a *pro tanto* release.

C.      Without limiting the generality of the foregoing, the Parties intend that the *pro rata* reduction would allow any non-settling joint tortfeasors to reduce the amount of the Commonwealth's recoverable damages against them in an amount equal to any share that is apportioned to any Releasee(s) in a final judicial determination (whether by verdict, award, or judgment; including after appeal if a timely appeal is taken) as a joint tortfeasor with Releasee(s):

i. If the damages (including after appeal if a timely appeal is taken) are apportioned based on proportionate share of liability under 42 Pa. Cons. Ann. § 7102(a.1)(4), then the applicable *pro rata* reduction shall be based upon the Releasees' proportionate share of the common liability.

ii. If the damages (including after appeal if a timely appeal is taken) are apportioned in a manner other than proportionate share of the common liability under 42 Pa. Cons. Ann. § 7102(a.1)(4) (*e.g.*, on a *per capita*, market share, or other basis), then the applicable *pro rata* reduction shall be based upon the Releasees' apportioned share of the damages in the manner in which such apportioned share was determined (*e.g.*, on a *per capita*, market share, or other basis).

iii. The Commonwealth shall provide all Non-Settling Defendants with the Release and Contribution Protection language of this Settlement Agreement and the Commonwealth agrees that the Settling Defendants may provide the Court and Non-Settling Defendants with copies of the Settlement Agreement.

16

iv. The Commonwealth agrees that, in any trial of this action, the trier of fact shall determine the Settling Defendants' or any other Releasees' percentage of relative fault for any and all claims in the same manner and in the same form of trial verdict as for all Non-Settling Defendants, as if the Settling Defendants or any other Releasee(s) had remained a Non-Settling Defendant. Without limiting the foregoing, the Commonwealth agrees that, in any trial of this action in which the Commonwealth is pursuing a claim or damage theory that implicates joint and several liability (including, without limitation, market share or per capita statewide liability), the Commonwealth will request that the trier of fact determine if the Settling Defendants are joint tortfeasors with Non-Settling Defendant(s) participating in the trial, and, if so, determine the Settling Defendants' percentage of relative fault at trial including, but not limited to, by requesting the inclusion of the Settling Defendants on the jury verdict slip. The Commonwealth agrees that Non-Settling Defendants have the right to submit jury instructions, or other pleadings, requesting that the trier of fact determine if the Settling Defendants are joint tortfeasors with Non-Settling Defendants participating in the trial and, if so, determine the Settling Defendants' percentage of relative fault. However, nothing herein shall be deemed to constitute an admission or waiver by the Parties that any of the Non-Settling Defendants and the Settling Defendants or other Releasees are joint tortfeasors.

v. The Commonwealth agrees to reduce, and not seek to collect, its recoverable damages against judicially-determined joint tortfeasors to the extent necessary to protect Releasees from any contribution action under any other statute, regulation or common law principle that provides for apportionment and contribution rights concerning the Litigation. Nothing herein shall require, or be construed to require, the Commonwealth to provide

any Non-Settling Defendant with a credit or reduction in the verdict, award or judgment (whichever is the final judicial determination) greater than the amount required to preclude common law or statutory contribution claims against any or all of the Releasees.

vi. Under this Settlement Agreement, the Commonwealth may elect not to enter judgment on any claim or cause of action against any Non-Settling Defendant.

vii. Nothing herein shall require the Commonwealth to reduce any verdict or judgment based on any third party's contractual indemnification claim against Releasees. This release does not release or exonerate the Settling Defendants from any third party's contractual indemnity claim.

**4.      Termination of the Litigation against the Settling Defendants.**

A.      If all Non-Settling Defendants agree to execute the Stipulation of Dismissal agreed upon by the Settling Parties, then the Commonwealth shall execute the agreed upon Stipulation of Dismissal and deliver it to the Settling Defendants within seven days of the payment of the first installment of the Settlement Payment. Upon receipt of the Stipulation of Dismissal, the Settling Defendants may file it.

B.      If a Stipulation of Dismissal or other form mutually agreeable to the Parties and Non-Settling Defendants, is not filed within ten (10) days of the first installment of the Settlement Payment, then within fifteen (15) Working Days of the delivery of the first installment of the Settlement Payment to the Pennsylvania Attorney General pursuant to Section III.1.B, or such other time as agreed to by the Parties, the Parties shall file a Joint Motion to Dismiss the Settling Defendants from the Litigation with prejudice pursuant to Fed. R. Civ. P. Rule 41(a)(2) or such other form as the Parties may agree.

C.      If the Joint Motion to Dismiss is not filed within fifteen (15) days of the first

installment of the Settlement Payment, then within twenty-one (21) days after the first

installment of the Settlement Payment, the Parties shall file competing Motions to Dismiss

pursuant to Fed. R. Civ. P. Rule 41(a)(2). The Parties agree that any Motion to Dismiss may

contain a request that the Court order the Commonwealth to return the installment(s) of the

Settlement Payment to the Settling Defendants if the Motion to Dismiss is denied and if the

Settling Defendants invokes their right to terminate this Settlement Agreement pursuant to

Section III.4.E. or Section III.4.F.

D.      If the Court does not endorse the Joint Motion to Dismiss filed under Section

III.4.B or a Motion to Dismiss filed under Section III.4.C within fourteen (14) days of

submission, then the Parties shall jointly request a conference with the Magistrate within seven

days thereafter.

E.      If the Court denies a Motion to Dismiss the Settling Defendants from the case,

then the Settling Defendants shall have the right to terminate this Settlement Agreement. In such

event, the Settling Defendants may terminate the Settlement Agreement by delivering a notice of

termination via email to the Commonwealth's counsel within either: (1) thirty (30) days of the

Court Order denying the Motion to Dismiss the Settling Defendants; or (2) such other time

which the Parties agree in writing. Upon delivery of such a notice of termination, this Settlement

Agreement shall be null and void. The Pennsylvania Attorney General shall return the Settlement

Payment funds to the Settling Defendants by check for overnight delivery at an address provided

by counsel for the Settling Defendants, within ten (10) business days of the notice of termination.

F.      If the Court does not act on a Motion to Dismiss within sixty (60) days after

submission, then the Settling Defendants shall have the right to terminate this Settlement

Agreement. In such event, the Settling Defendants may terminate the Settlement Agreement by delivering a notice of termination via email to the Commonwealth's counsel within either: (1) ninety (90) days of submission of the Motion to Dismiss the Settling Defendants if the Court has not yet acted on the Motion to Dismiss; or (2) such other time which the Parties agree in writing. Upon delivery of such a notice of termination, this Settlement Agreement shall be null and void. The Pennsylvania Attorney General shall return the Settlement Payment funds to the Settling Defendants by check for overnight delivery at an address provided by counsel for the Settling Defendants, within ten (10) business days of the notice of termination.

       G.     The Commonwealth shall assist and cooperate with the Settling Defendants and the Releasees to effectuate their dismissal with prejudice as named Defendants in the Litigation, including authorizing and instructing its attorneys to: (i) take such reasonable actions in conjunction with the Settling Defendants' attorneys to obtain a Court order under Fed. R. Civ. P. Rule 41(a)(2) so that all claims by the Commonwealth in the Litigation against the Settling Defendants and Releasees, and only the Settling Defendants and identified Releasees, consistent with this Settlement Agreement are dismissed with prejudice; (ii) to execute such other documents, pleadings or agreements as may be necessary to implement the Settling Defendants' and Releasees' release from liability under this Settlement Agreement; and (iii) to effectuate the dismissal with prejudice of the Settling Defendants and Releasees from any other action subject to the release herein.

       **5.**     **The Commonwealth's Reservations.**

       A.     Notwithstanding the release in Paragraph III.2.A, and the release and covenant in Paragraph III.2.B, the Commonwealth reserves the following actions, causes of actions, suits, claims and rights:

(i) claims based on the Settling Defendants' failure to satisfy any material term or provision of this Settlement Agreement;

(ii) claims arising from the Releasees being responsible for a hazardous substance other than a Covered Substance (as defined in Section II.1) that is discharged into the ground or waters of Pennsylvania except to the extent that the discharge relates to a site where a Covered Substance is or was present along with other hazardous substances. To the extent a Covered Substance is also present along with another hazardous substance(s) in the same location (*e.g.*, exact same water and/or soil) and during the same time period, the Settling Defendants shall receive a complete and total offset for liability and damages for the other hazardous substance(s) coextensive in place and time with the Covered Substance, subject to the potential obligation (if any) to perform restoration for substance(s) other than the Covered Substance to pre-discharge conditions (primary restoration) but only if the restoration of the Covered Substance would not have also restored such other hazardous substance(s). Releasees shall not be entitled to any release, covenant not to sue, or offset or reduction in liability or damages for any hazardous substance other than the Covered Substance pursuant to this Settlement Agreement where any hazardous substance(s) other than a Covered Substance are not in the same location (*e.g.*, exact same water and/or soil) during the same time period as the Covered Substance, unless the restoration of the Covered Substance also restores such other hazardous substance(s);

(iii)  Liability under the Pennsylvania Storage Tank and Spill Prevention Act, 25 P.S. §§ 977.1 et seq. for funds paid by the Underground Storage Tank Insurance Fund (USTIF) in response to any claims filed by the Settling Defendants based on the discharge of MTBE

after the effective date at a site owned or operated by the Settling Defendants for which the Settling Defendants are responsible.

(iv) any contractual undertaking or liability obligating the Settling Defendants to indemnify the liability of any non-released party;

(v) liability for any violation by Releasees of federal or state law for discharges that occur after the Effective Date of this Settlement Agreement; and

(vi) Future Cleanup and Removal Costs.

B.      Nothing in this Settlement Agreement shall relieve, abate or diminish the Settling Defendants' responsibility and liability for timely undertaking and completing any investigative, response or remedial activity it has under any agreement prior to the Effective Date, or any existing court or administrative order, if any.

**6.      Court Approval.**

A.      If at any time, including after the Effective Date of the Settlement Agreement, the Court determines, decides or orders, that Court approval of the Settlement Agreement is required, then within fifteen (15) days upon such determination, decision or order by the Court, the Parties shall move the Court for an expedited approval of the Settlement Agreement ("Joint Motion"). If the Parties cannot agree on the form of a Joint Motion, then within fifteen (15) days thereafter, the Parties shall file competing Motions to Approve Settlement Agreement. The Parties agree that any Motion to Approve Settlement Agreement will contain a request that the Court order the Commonwealth to return the Settlement Payment to the Settling Defendants if the Motion to Approve Settlement Agreement is denied and the Settling Defendants invoke their right to terminate this Settlement Agreement pursuant to Section III.6.C. Nothing in this

Settlement Agreement shall require the Commonwealth to make any material changes to the Settlement Agreement to gain Court approval.

B.     If for any reason the Court does not approve the Settlement Agreement in its entirety, or any of the provisions set forth in Paragraphs II and III.1 – III.5, by that date which is sixty (60) days after the Parties file the Joint Motion or the Parties file competing Motions to Approve Settlement Agreement, then this Settlement Agreement shall become void upon thirty (30) days written notice, at the sole discretion of any Party, provided that such Party has cooperated in good faith to obtain such approval as herein provided. In such event, the Commonwealth agrees that the Pennsylvania Attorney General shall return the Settlement Payment funds to the Settling Defendants by check for overnight delivery to an address provided by counsel for the Settling Defendants within ten (10) days following the date on which this Settlement Agreement becomes void. If after the Commonwealth returns the Settlement Payment funds the Court approves the Settlement Agreement and dismisses the claims against the Settling Defendants based on the Joint Motion or one or both of the aforesaid competing Motions, the Settling Defendants agree they shall, at their option, either promptly repay the Settlement Amount to the Commonwealth (in which case this Settlement Agreement shall be reinstated as if never voided and the dismissal shall have full force and effect), or execute documents required to vacate the dismissal. If voided and not reinstated as herein provided, the terms of the Settlement Agreement may not be used as evidence in any litigation among the Parties or third parties, and all Parties to this Settlement Agreement shall be restored to the same status with the same claims and defenses (if any) as if this Settlement Agreement never existed.

C.     Without limiting the foregoing, the Commonwealth further agrees that if, for any reason, the Court by Court Order, Determination or other Decision decides not to approve the

Settlement Agreement, in its entirety, or any of the provisions set forth in Paragraphs II and III.1 – III.5, after submission of a Motion to Approve Settlement Agreement, then the Settling Defendants may serve a written election within thirty (30) days of that Court Order, Determination or other Decision providing that this Settlement Agreement is terminated, by delivering a notice of termination via email to the Commonwealth's counsel. Thereafter, the Commonwealth agrees that the Pennsylvania Attorney General shall return the Settlement Payment funds to the Settling Defendants by check for overnight delivery to an address provided by counsel for the Settling Defendants within ten (10) business days of that notice of termination and all Parties to this Settlement Agreement shall be restored to the same status with the same claims and defenses (if any) as if this Settlement Agreement never existed, except the vacatur of the default provided for in Section III.1(G) will not thereafter be challenged by the Commonwealth.

7.      **Entire Agreement; No Modification.**

Each Party individually and collectively declares and represents that no promises, inducements, or other agreements not expressly contained herein have been made with regard to the settlement of the Litigation; that this Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter of the Litigation; and that all terms of this Settlement Agreement are contractual and not recitals only. All prior agreements and understandings, oral agreements and writings regarding the matters set forth herein are expressly superseded hereby and are of no further force or effect. This Settlement Agreement may not be altered, amended, or modified in any respect except by a writing duly executed by the Party to be charged.

**8.     Binding Effect.**

This Settlement Agreement shall inure to the benefit of each party to the Settlement

Agreement, and to the Releasees, and to the benefit of their predecessors, successors,

subsidiaries, representatives, agents, officers, directors, employees, and personal representatives,

past, present, and future.

**9.     Authority.**

The Settling Parties represent and warrant that the undersigned respective signatories

have all requisite power to execute, bind, deliver, and perform this Settlement Agreement and

that this Settlement Agreement has been duly and validly executed and delivered by the Settling

Parties' representatives. The Commonwealth further warrants that the Pennsylvania Attorney

General has the requisite power to execute, bind, deliver and perform this Settlement Agreement

on behalf of the Commonwealth's Executive agencies. The Settling Parties further warrant that

they will not challenge or contest the validity of this Settlement Agreement and that they forever

waive any defense to its validity, including any defense based on any claim the Settlement

Agreement is ultra vires, or otherwise void.

**10.     Voluntary and Knowing Release.**

Each Party signing this Settlement Agreement represents and warrants that each of them:

(i) read, knows, and understands the contents hereof; (ii) has executed this Settlement Agreement

voluntarily; (iii) has not been influenced by any person or persons or attorney acting on behalf of

any Party; and (iv) understands that after signing this Settlement Agreement, each Party cannot

proceed against the others on account of any of the claims released herein.

11.    **Costs and Expenses.**

All fees, costs, and expenses incurred by the Settling Parties in the Litigation, in negotiating this Settlement Agreement, and in attaining this settlement, shall be paid by the Parties incurring them.

12.    **Acknowledgments.**

Each of the Parties declares that it has read and understands the terms of this Settlement Agreement, that it has been represented by counsel in the negotiation, execution, and delivery of this Settlement Agreement, and that it executes this Settlement Agreement voluntarily after consultation with counsel. Each of the Parties participated in the drafting of this Settlement Agreement. In the event of any ambiguity, the ambiguity shall not be construed against either Party.

13.    **Warranties.**

Except as expressly set forth in this Settlement Agreement, the Parties have not made and make no other representations, warranties, statements, promises, or agreements to each other.

14.    **References.**

References made in this Settlement Agreement, including use of the pronoun "it," shall be deemed to include, where applicable, masculine, feminine, singular or plural, individuals, government entities, partnerships, or corporations. As used in this Settlement Agreement, "person" shall mean any natural person, government entity, corporation, partnership, limited partnership, trust, estate, or other entity, and the term "affiliate" shall mean any partnership, joint venture, corporation, or other entity in which such person has an interest, or which controls, is controlled by, or is under common control with such person.

15.     **Invalid Provisions.**

With the exception of Paragraphs II and III.1 – III.5, if any provision of this Settlement Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Settlement Agreement, then such provision(s), or portion(s) thereof, shall be fully severable and the invalidity, illegality, or unenforceability shall not affect any other provision of this Settlement Agreement. If the non-severable provisions of this Settlement Agreement are found to be invalid or unenforceable, then the Settling Parties shall have all rights available to them at law. Notwithstanding the foregoing, nothing herein shall affect the Parties' rights to terminate the Settlement Agreement pursuant to Section III.4 and Section III.6.

16.     **Applicable Law and Jurisdiction.**

This Settlement Agreement shall be interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Pennsylvania (without regard to the conflicts of law principles) and the decisions of the Pennsylvania courts. Any dispute arising out of or based upon this Settlement Agreement or related to the enforcement thereof shall be brought in either the Commonwealth Court of Pennsylvania or a federal court in Pennsylvania, both of which shall be the exclusive forum and venue for any such action. The Settling Defendants and Releasees (acting through the Settling Defendants as their authorized agent) consent to the jurisdiction of the Commonwealth Court of Pennsylvania, waiving any claim or defense that such forum is not convenient or proper. Notwithstanding the foregoing, nothing in Paragraph 16 shall preclude or affect the Parties' right to file in the United States District Court for the Southern District of New York (or any other Court in which the Litigation is pending) a (1) Stipulation of Dismissal pursuant to Fed. R. Civ. P. Rule 41(a)(1); (2) Motion to Dismiss Fed. R. Civ. P. Rule 41(a)(2); or (3) Motion to Approve Settlement Agreement as set forth in this Settlement Agreement.

17.     **Counterparts and Electronic Signature.**

This Settlement Agreement may be executed in counterparts, and all such executed counterparts shall constitute an agreement which shall be binding upon the Parties, notwithstanding that the signatures of all Parties and Parties' designated representatives do not appear on the same page. Additionally, this Settlement Agreement may be executed through electronic signature, which shall be considered to have the same binding legal effect as a written signature.

18.     **Incorporation of Recitals; Entire Agreement and Successors and Assigns.**

The recitals to this Settlement Agreement are incorporated into the terms of this agreement. This Settlement Agreement is a fully integrated agreement which sets forth the entire agreement and understanding of the Settling Parties concerning the subject matter of this Settlement Agreement. Except as provided herein, this Settlement Agreement shall be binding upon the successors and assigns of the parties and may not be waived, rescinded, canceled, terminated, supplemented, amended, or modified in any manner without the prior written consent of both the Settling Defendants and the Commonwealth.

19.     **Admissibility of Agreement.**

Except for the sole purpose of enforcing the terms thereof, or as required by law, or as provided for by this Settlement Agreement, this Settlement Agreement shall not be admissible in any action or suit. This is the amicable resolution of a dispute and not an admission by any Party of liability or fault.

**AGREED TO AND ACCEPTED BY:**

**LUKOIL AMERICAS CORPORATION**

By: _____

Name & Title: Robert Ferluga, Director

Date: _____

LUKOIL NORTH AMERICA, LLC

By:

Name & Title: Robert Ferluga, Director

Date:

30

**LUKOIL PAN AMERICAS LLC**

By: _____

Name & Title: Stephen Wolfe, Managing Director

Date: _____5/16/2023_____

**PJSC LUKOIL**

By: _____

Name & Title: Aleksandr K. Matytsyn, First Vice-President

Date: ___5/12/2023___

**THE COMMONWEALTH OF PENNSYLVANIA**

Michelle Henry, Attorney General

By: _[signature]_

James Donahue, III,
First Deputy Attorney General
Office of Attorney General

Date: _6/22/2023_

By: _____

Title: Richard Negrin, Acting Secretary,
Department of Environmental Protection
Date: _____ 6 / 14 / 23 _____

By: _____

Title: Michael Humphreys, Acting Commissioner,
Pennsylvania Insurance Department, on behalf
of the Insurance Department and the Underground
Storage Tank Indemnification Fund

Date: June 16, 2023

By: _____  Digitally signed by Michelle Light
                                      Date: 2023.06.27 14:14:31 -04'00'

Title: Comptroller
Governor's Office of the Budget
Date: _____

**APPROVED AS TO FORM AND LEGALITY:**

Office of Chief Counsel
Department of Environmental Protection
Date: _____6/14/23_____

*Kathryn Speaks*

Office of Chief Counsel
Department of Insurance
Date:  6/20/2023

Digitally signed by Jonathan D.
Koltash
DN: cn=Jonathan D. Koltash,
o=Governor's Office of General
Counsel, ou,
email=jokoltash@pa.gov, c=US
Date: 2023.06.20 08:40:04 -04'00'

Office of General Counsel
Date:

Amy M.
Elliott

Digitally signed by Amy M. Elliott
DN: cn=Amy M. Elliott, o=Pennsylvania
Office of Attorney General, ou=Chief
Deputy Attorney General,
email=aelliott@attorneygeneral.gov,
c=US
Date: 2023.06.23 10:22:54 -04'00'

Office of Attorney General
Date: _____

# EXHIBIT A

EXHIBIT A

Pennsylvania v. Exxon Mobil Corp., et al.

MTBE Litigation - LUKOIL Stations

| STATION NAME AND/OR NUMBER | STREET ADDRESS | CITY | STATE |
|---|---|---|---|
| | 3150 Pennell Road | ASTON | PENNSYLVANIA |
| # 2634476 | 1215 South Trooper Road | AUDUBON | PENNSYLVANIA |
| | 1310 Center Street | BETHLEHEM | PENNSYLVANIA |
| # 2634517 | 2130 Schoenersville Road | BETHLEHEM | PENNSYLVANIA |
| # 67649 | Hanover & South Main Street | BIGLERVILLE | PENNSYLVANIA |
| Subway # 67639 | 415 West High Street | CARLISLE | PENNSYLVANIA |
| Buyrite # 67640 | 1512 Spring Road | CARLISLE | PENNSYLVANIA |
| # 69505 | Route 41 & Newport Road | CHRISTIANA | PENNSYLVANIA |
| # 2634587 | 1196 West Lincoln Highway | COATESVILLE | PENNSYLVANIA |
| # 69438 | 1370 Lancaster Avenue | COLUMBIA | PENNSYLVANIA |
| # 67432 | Route 309 & Fairmount Street | COOPERSBURG | PENNSYLVANIA |
| # 67655 | 601 US Route 15 North | DILLSBURG | PENNSYLVANIA |
| # 69008 | 618 Ben Franklin Highway | DOUGLASSVILLE | PENNSYLVANIA |
| Ramsey's Service Center # 90216 | 659 Burmont Road | DREXEL HILL | PENNSYLVANIA |
| | 1434 Knox Avenue | EASTON | PENNSYLVANIA |
| # 69409 | 13th & Northampton Streets | EASTON | PENNSYLVANIA |
| # 69425 | Route 72 & Long Lane | EBENEZER | PENNSYLVANIA |
| # 69616 | 8009 Old York Road | ELKINS PARK | PENNSYLVANIA |
| # 67623 | Route 116 & Orrtanna Road | FAIRFIELD | PENNSYLVANIA |
| # 2705883 | PO Box 556 | JAMISON | PENNSYLVANIA |
| R M Raab Inc # 90213 | 1920 Jenkintown Road | JENKINTOWN | PENNSYLVANIA |
| # 2705866 | 848 Baltimore Pike | KENNETT SQUARE | PENNSYLVANIA |
| # 69507 | 1201 Lititz Pike | LANCASTER | PENNSYLVANIA |
| # 69503 | 1000 Manor Street | LANCASTER | PENNSYLVANIA |
| | 44 E Liberty Street | LANCASTER | PENNSYLVANIA |
| # 69416 | 518 Greenfield Road | LANCASTER | PENNSYLVANIA |
| | George H. Blouch Fuel | LEBANON | PENNSYLVANIA |
| # 69472 | 327 West Main Street | LEOLA | PENNSYLVANIA |
| # 69422 | 191 North Main Street | MANHEIM | PENNSYLVANIA |
| # 69690 | Route 16 | MCCONNELLSBURG | PENNSYLVANIA |
| # 2634477 | Baltimore Pike & Leany Avenue | MORTON | PENNSYLVANIA |
| | 102 East Main Street | MOUNT JOY | PENNSYLVANIA |
| # 69424 | 302 Highland Drive | MOUNTVILLE | PENNSYLVANIA |
| # 90208 | 700 Montgomery Avenue | NARBERTH | PENNSYLVANIA |
| # 69467 | 2520 Lititz Pike | NEFFSVILLE | PENNSYLVANIA |
| # 67601 | 2711 Limekiln Pike | NORTH HILLS | PENNSYLVANIA |
| Getty # 67617 | 3650 William Penn Highway | PALMER TOWNSHIP | PENNSYLVANIA |
| Friends Petroleum Inc # 69728 | 2101 South 11th Street | PHILADELPHIA | PENNSYLVANIA |
| Shree Pramukh Krupa Inc # 69267 | 220 Franklin Mills Circle | PHILADELPHIA | PENNSYLVANIA |
| # 67610 | 5302-04 Rising Sun Avenue | PHILADELPHIA | PENNSYLVANIA |
| Waterfront Gas LLC # 69708 | Delaware Ave & Spring Garden Street | PHILADELPHIA | PENNSYLVANIA |
| # 69440 | 1001 Buchert Road | POTTSTOWN | PENNSYLVANIA |
| Mount Carbon # 69016 | Route 51 & RR #3 | POTTSVILLE | PENNSYLVANIA |
| Fairlane # 69019 | Route 61 Rd #5 | POTTSVILLE | PENNSYLVANIA |
| # 69444 | 1000 Chestnut Street | READING | PENNSYLVANIA |
| # 2634472 | 958 North 13th Street | READING | PENNSYLVANIA |
| # 69680 | 3901 Perkiomen Avenue | REIFFTON | PENNSYLVANIA |
| # 69430 | Route 697 | REINHOLDS | PENNSYLVANIA |
| # 69445 | 2 West Penn Street | ROBESONIA | PENNSYLVANIA |
| # 69485 | 2102 Main Street | ROTHSVILLE | PENNSYLVANIA |
| # 69684 | 20 Hade Road | ST THOMAS | PENNSYLVANIA |
| # 2634512 | Route 320 & Baltimore Pike | SPRINGFIELD | PENNSYLVANIA |
| SMWM Inc # 90228 | 2629 Route 1 | TREVOSE | PENNSYLVANIA |
| | 751 Gap Newport Pike | WEST GROVE | PENNSYLVANIA |
| # 69661 | 401 Penn Avenue | WEST READING | PENNSYLVANIA |
| # 2634461 | 2595 Maryland Road | WILLOW GROVE | PENNSYLVANIA |
| Fishers Inc # 90217 | 919 East Willow Grove Avenue | WYNDMOOR | PENNSYLVANIA |
| # 2634963 | 1665 State Hill Road | WYOMISSING | PENNSYLVANIA |
| # 69673 | 4 Chel Tenham Drive | WYOMISSING HILLS | PENNSYLVANIA |
| # 69449 | 1105 Hanover Avenue | YORK | PENNSYLVANIA |
| | 1200 Mount Rose Avenue | YORK | PENNSYLVANIA |
| Citgo # 69010 | 2039 South Queen Street | YORK | PENNSYLVANIA |
| # 69441 | 451 East Philadelphia Street | YORK | PENNSYLVANIA |