| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK IN RE MTBE LITIGATION MASTER FILE No. 1:00-1898 MDL No. 1358 (VSB) |
| Plaintiffs, | Civil Action No. 08 Civ. 00312 |
| V. | JUDICIAL CONSENT ORDER AS TO THE CHEVRON SETTLING PARTIES ONLY |
| ATLANTIC RICHFIELD CO., et al., | |
| Defendants. | |

This matter was opened to the Court by Matthew J. Platkin, Attorney General of New Jersey, Deputy Attorney General Gwen Farley, Leonard Z. Kaufmann, Esq. of Cohn Lifland Pearlman Herrmann & Knopf LLP, Scott E. Kauff, Esq. of the Law Offices of John K. Dema, P.C., Michael Axline, Esq. of Miller Axline P.C., and Tyler Wren, Esq. of Berger & Montague P.C., Special Counsel to the Attorney General, appearing as attorneys for plaintiffs New Jersey Department of Environmental Protection ("DEP" or "Department") and the Commissioner of the Department ("Commissioner"), in their named capacity, as parens patriae, and as trustee of the natural resources of New Jersey, and the Administrator of the New Jersey Spill Compensation Fund ("Administrator"), and Charles Correll of King & Spalding LLP representing Chevron Corporation, Chevron

1

U.S.A. Inc., Kewanee Industries, Inc., and UNOCAL Corporation, and these Parties having amicably resolved their dispute before trial:

## I. BACKGROUND

A.        The Plaintiffs initiated this action on or around June 28, 2007 by filing a complaint against Chevron Corporation, Chevron U.S.A. Inc., Kewanee Industries, Inc., UNOCAL Corporation, and other defendants in the Superior Court of the State of New Jersey, Mercer County, Docket MER-L-1622-07, pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 ("the Spill Act"), the Water Pollution Control Act, N.J.S.A. 58:10A-1 to -20, and the common law. The matter was removed to the United States District Court for the District of New Jersey, and later assigned to the multi-district litigation in the United States District Court for the Southern District of New York, MDL No. 1358 (VSB) ("Multi-District Litigation"). There was a remand of nineteen trial sites to the United States District Court for the District of New Jersey, Civil Action No.: 15-6468 (FLW)(LHG); the remainder of the case continues in the Southern District of New York.

B.        The Plaintiffs filed amended complaints; the latest was the Fifth Amended Complaint, which was filed September 28, 2018 and included Chevron Corporation, Chevron U.S.A. Inc., Kewanee Industries, Inc., and UNOCAL Corporation, as defendants (the "Complaint").

C.       Plaintiffs, in their Complaint, seek past and future damages they have incurred and will incur as a result of alleged widespread contamination of the waters of New Jersey by MTBE.

D.       Plaintiffs, in their Complaint, seek injunctive relief concerning the remediation of MTBE discharges.

E.       Chevron Corporation is a Delaware corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California. Chevron Corporation is the ultimate parent company of Texaco Inc. and TRMI-H LLC. Chevron U.S.A Inc. is a Pennsylvania corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California. UNOCAL Corporation is a Delaware Corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California. Kewanee Industries, Inc. is a Delaware corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California. Chevron Corporation, Chevron U.S.A. Inc., UNOCAL Corporation and Kewanee Industries, Inc. will be collectively referred to herein as "the Chevron Defendants."

F.       The Chevron Defendants filed responsive pleadings in which they denied liability and asserted various defenses to the allegations contained in the Complaint. Discovery included information about Texaco Inc., TRMI-H LLC, and Union Oil of California. The Chevron Defendants, Texaco Inc., TRMI-H LLC, and Union Oil of California will be collectively referred to herein as

3

the "the Chevron Settling Parties" and individually as "a Chevron Settling Party".

G.    The Chevron Defendants represent that they do not, as of the effective date of this Judicial Consent Order, utilize or knowingly distribute MTBE as an additive to gasoline in New Jersey.

H.    The Parties to this Judicial Consent Order ("JCO") recognize, and this Court by entering this JCO finds, that the Parties to this JCO have negotiated this JCO in good faith; that the implementation of this JCO will allow the Parties to this JCO to avoid continued, prolonged, and complicated litigation; and that this JCO is fair, reasonable, and in the public interest.

**THEREFORE**, with the consent of the Parties to this JCO, it is hereby **ORDERED and ADJUDGED**:

## II. <u>JURISDICTION</u>

1.    This case was removed to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1446(d) and the Energy Policy Act of 2005, 42 U.S.C. § 7545, <u>et seq.</u>, which expressly authorized the removal of legal actions related to allegations involving MTBE contamination, and then assigned to the United States District Court for the Southern District of New York as part of the Multi-District Litigation. Part of the litigation was remanded to the United States District Court for the District of New Jersey.

2.        For purposes of approving and implementing this JCO, the
Parties to this JCO waive all objections and defenses they may
have to the jurisdiction of this Court and the United States
District Court for the District of New Jersey over the Parties and
this JCO.  The Parties shall not challenge the jurisdiction of the
United States District Court for the Southern District of New York
or the United States District Court for the District of New Jersey
to enforce this JCO against the parties to this JCO.

## III. PARTIES BOUND

3.        This JCO applies to, and is binding upon, the Plaintiffs
and the Chevron Settling Parties, as defined above and below (each,
a "Party" and collectively, the "Parties").

## IV. DEFINITIONS

4.        Unless otherwise expressly provided, terms used in this
JCO that are defined in the Spill Act or in the regulations
promulgated under the Spill Act, shall have their statutory or
regulatory meaning.  Whenever the terms listed below are used in
this JCO, the following definitions shall apply:

        "Damages" shall mean all damages caused by discharges of
MTBE prior to the effective date of this JCO, whether or not known
or suspected to exist by Plaintiffs, that at any time threaten or
affect waters of New Jersey, including but not limited to natural
resource damages, sought in the Complaint.  "Damages" do not

include a Chevron Settling Party's obligation to perform Remediation except for those matters expressly released or for which a covenant not to sue is granted in Paragraph 6(b) below. Damages also do not include Past Cleanup and Removal Costs or Future Cleanup and Removal Costs, except for those matters expressly released in Paragraph 6(b) below or for which a covenant not to sue is granted in Paragraph 6(b) below.

"Day" shall mean a calendar day unless expressly stated to be a Working Day. "Working Day" shall mean a day other than a Saturday, Sunday, or State holiday. In computing time under this JCO, where the last day would fall on a Saturday, Sunday, or State holiday, time shall run until the close of business of the next Working Day.

A "Chevron Site" means any site in New Jersey for which a Chevron Settling Party is in any way responsible for MTBE discharged at that site unless such responsibility is based solely upon the Chevron Settling Parties' Upstream Activities.

"Future Cleanup and Removal Costs" shall mean all direct and indirect costs of any kind for any purpose the Plaintiffs incur on or after the effective date of this JCO, including oversight costs, with respect to MTBE that threatens or affects the waters of New Jersey for which a Chevron Settling Party is responsible under any applicable federal or state statute, regulation or order.

"MTBE" shall mean methyl tertiary butyl ether, neat or as a part of gasoline or as a contaminant of other fuel, and the degradation byproducts of commercial grade MTBE, including tertiary butyl alcohol ("TBA"). In addition, MTBE shall include TBA when TBA is present in MTBE gasoline.

"Paragraph" shall mean a portion of this JCO identified by an Arabic numeral or an upper case letter.

"Past Cleanup and Removal Costs" shall mean all direct and indirect costs of any kind for any purpose the Plaintiffs incurred before the effective date of this JCO, including oversight costs, with respect to MTBE that threatens or affects the waters of New Jersey for which a Chevron Settling Party is responsible under any applicable federal or state statute, regulation or order.

"Plaintiffs" shall mean plaintiffs DEP, the Commissioner, and the Administrator, including in their capacities as described in paragraphs 14 to 18 of the Complaint, and any successor department, agency or official. Plaintiffs hereby represent and warrant that they have the power and authority to enter into this Agreement.

"Remediation" shall mean compliance with the Administrative Requirements for the Remediation of Contaminated Sites, N.J.A.C. 7:26C, or any successor regulation, and all of the then-applicable remediation standards pursuant to N.J.S.A. 58:10B-12 and N.J.A.C. 7:26D, or any successor regulation. Remediation does not include restoration to pre-discharge conditions (primary restoration)

beyond what is necessary to comply with the applicable remediation standards pursuant to N.J.S.A. 58:10B-12 and N.J.A.C. 7:26D. Remediation also does not include any liability to comply with the Administrative Requirements for the Remediation of Contaminated Sites, N.J.A.C. 7:26C, or any successor regulation, and all of the then-applicable remediation standards pursuant to N.J.S.A. 58:10B-12 and N.J.A.C. 7:26D, or any successor regulation based solely upon Upstream Activities, and nothing herein shall be deemed an admission by a Chevron Settling Party that such liability can be based on Upstream Activities.

"Section" shall mean a portion of this JCO identified by a roman numeral.

"Chevron Settling Parties" is defined above and also includes the Chevron Settling Parties' parent companies, subsidiaries, successors, assigns, predecessors, along with the officers, directors, and employees of the Chevron Settling Parties and their parent companies, subsidiaries, successors, assigns, and predecessors. No other party named as a defendant in the Complaint shall be considered a related entity of the Chevron Settling Parties.

"Upstream Activities" means the manufacture, refining, blending, sale, supply, distribution, exchange, transfer, purchase, trading, marketing, and/or branding of MTBE or gasoline with MTBE. Upstream Activities do not include a discharge of MTBE

or gasoline with MTBE at or from a facility, as defined by N.J.A.C. 7:1E-1.6, in New Jersey that occurs at a time that the facility is owned, operated, or controlled by a Chevron Settling Party while the Chevron Settling Party is engaged in the manufacture, refining, blending, sale, supply, distribution, exchange, transfer, purchase, trading, marketing, and/or branding of MTBE or gasoline with MTBE.

## V.  CHEVRON SETTLING PARTIES' COMMITMENTS

5.  (a) Within thirty (30) Days after the effective date of this JCO, the Chevron Settling Parties shall pay, or cause to be paid, to the Plaintiffs the sum of One Hundred and Seventy Five Thousand Dollars ($175,000.00) (the "Settlement Payment") in full and complete satisfaction of Plaintiffs' claims that are released or for which a covenant not to sue is provided in Section VI of the JCO. Chevron U.S.A. Inc. is jointly and severally responsible for the Settlement Payment.

(b) The amount specified in Paragraph 5(a) above shall be paid by wire transfer pursuant to instructions provided by Plaintiffs. Notice of payment shall be emailed to: David Bean, at David.Bean@dep.nj.gov and David E. Haymes, Administrator, Spill Compensation Fund at David.Haymes@dep.nj.gov, and to Gary Wolf, Section Chief, Environmental Enforcement and Environmental Justice Section, Division of Law, Department of Law and Public Safety at

Gary.Wolf@law.njoag.gov or such other persons as Plaintiffs may designate.

## VI. PLAINTIFFS' COVENANTS AND RELEASES

6.    (a)    In consideration of, and upon receipt of, the payment required in Section V above, and except as otherwise provided in Section VII below, the Plaintiffs fully and forever release, covenant not to sue, and agree not to otherwise take judicial, administrative, or other action against the Chevron Settling Parties pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the Spill Act, the Water Pollution Control Act, or any other statute, or regulation for recovery of Damages, Past Cleanup and Removal Costs, injunctive relief sought in the Complaint, or attorneys' fees, consultants' and experts' fees, and other litigation costs sought in the Complaint for the sites identified by the Plaintiffs in NJMTBE-000-030608, attached hereto and incorporated herein by reference as Exhibit "A." The liability of any non-Chevron Settling Party is unaffected by this release and covenant not to sue except as set forth in the agreed stipulation, attached hereto as Exhibit "B." The foregoing release and covenant not to sue does not preclude Plaintiffs from seeking: (i) equitable, including injunctive, relief sought in the Complaint related to Remediation, (ii) attorneys' fees, consultants' and experts' fees, and other

litigation costs sought in the Complaint related to a particular Remediation and not generated in connection with the preparation of the Complaint or any of the proceedings in the Multi-District Litigation, or (iii) Remediation of any discharge at or from any Defendant's Site, provided the Chevron Settling Party's Remediation liability at such Chevron Site is not based solely on its Upstream Activities.

(b) Notwithstanding any other provision of this JCO, in consideration of, and upon receipt of, the payment(s) required in Section V above, the Plaintiffs fully and forever release, covenant not to sue, and agree not to otherwise take judicial, administrative, or other action against the Settling Defendants for Plaintiffs' causes of action based upon the Chevron Settling Parties' alleged liability (i) under the common law with respect to MTBE discharges that threaten or affect the waters of New Jersey; (ii) in equity (except as reserved in Paragraphs 6(a), 10, 11, 21, 23, and 24) with respect to MTBE discharges that threaten or affect the waters of New Jersey; (iii) under theories of products liability with respect to MTBE discharges that threaten or affect the waters of New Jersey; or (iv) under any applicable federal or state statute, regulation or order where such liability is premised upon the Chevron Settling Parties' Upstream Activities prior to the effective date of the JCO.

7.    The covenants and releases contained in this Section VI shall take effect upon the Plaintiffs receiving the payment that the Chevron Settling Parties are required to make pursuant to Section V above, in full, and in compliance with the terms of this JCO.

8.    The covenants and releases contained in this Section VI extend only to the Chevron Settling Parties and not to any other defendant, party, person, or entity.

9.    The covenants and releases contained in this Section VI do not pertain to any matters other than those expressly stated.

## VII. <u>PLAINTIFFS' RESERVATIONS</u>

10.    Except as set forth in Section VI, nothing in this JCO precludes Plaintiffs from taking judicial, administrative, or other action against a Chevron Settling Party to require the Chevron Settling Party to perform Remediation of any discharge at or from a Chevron Site.

11.    Plaintiffs reserve, and this JCO is without prejudice to, all rights against the Chevron Settling Parties except those expressly released or for which there is a covenant not to sue in Section VI. This reservation of rights includes, but is not limited to, the following:

   a. claims based on a Chevron Settling Party's failure to satisfy any term or provision of this JCO;

12

b. liability arising from a Chevron Settling Party being
in any way responsible for any hazardous substance other
than MTBE that is discharged into or threatens the waters
and/or soils of New Jersey.  To the extent MTBE is also
present along with another hazardous substance(s) in the
same location (e.g., the same water and/or soil) and
during the same time period, the Chevron Settling Party
shall receive the releases and covenants not to sue set
forth in Section VI above for the other hazardous
substance(s) coextensive in place and time with the
MTBE, subject to the obligations and reservations in
this Section VII and Section XI below, and subject to
the potential obligation (if any) to perform restoration
for substance(s) other than MTBE to pre-discharge
conditions (primary restoration) but only if the
restoration of the groundwater containing the MTBE would
not have also restored the groundwater by removing such
other hazardous substance(s) to pre-discharge
concentration(s).  A Chevron Settling Party shall not be
entitled to any release, covenant not to sue, or offset
or reduction in liability or damages for any hazardous
substance other than MTBE pursuant to this JCO where any
hazardous substance(s) other than MTBE are not in the
same location (e.g., the same water and/or soil) during

13

the same time period as the MTBE, except as provided by Paragraph 6(b), unless the restoration of the groundwater containing the MTBE also restores the groundwater by removing such other hazardous substance(s) to pre-discharge concentration(s);

c. liability for Future Cleanup and Removal Costs, except as released in Paragraph 6(b);

d. liability, except as released by Paragraph 6(b), for all claims paid in the three (3) years prior to the effective date of this JCO or in the future by the Spill Fund resulting from a discharge of MTBE at a site owned, operated, or controlled by a Chevron Settling Party at the time of the discharge that threatens or affects the waters of New Jersey, and for which the Chevron Settling Party is responsible under the statutes of New Jersey.

e. criminal liability; and

f. liability for any violation by a Chevron Settling Party of federal or state law that occurs after the effective date of this JCO.


## VIII. THE CHEVRON SETTLING PARTIES' COVENANT

12. The Chevron Settling Parties covenant not to sue or assert any claim or cause of action against the Department, Administrator, or Commissioner concerning the matters addressed in the Complaint

and this JCO, with the exception of the enforcement of the terms
of this JCO, unless a Chevron Settling Party is the subject of
third party claims or causes of action for which the Department,
Administrator, or Commissioner may be liable.

13.   The Chevron Settling Party's covenant in Paragraph 12 above
does not apply where the Plaintiffs sue or take judicial,
administrative, criminal or other action against a Chevron
Settling Party pursuant to Section VII above.

## IX.  NO FINDINGS OR ADMISSIONS OF LIABILITY

14.   Nothing contained in this JCO shall be considered an admission
by the Chevron Settling Parties, or a finding by the Plaintiffs or
this Court, of any wrongdoing or liability on the Chevron Settling
Parties' part.

## X.   EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION

15.   Nothing in this JCO shall be construed to create any rights
in, or grant any cause of action to, any person not a Party to
this JCO.  The preceding sentence shall not be construed to waive
or nullify any rights that any person not a signatory to this JCO
may have under applicable law.

16.   The Chevron Settling Parties expressly reserve all rights,
including, but not limited to, any right to indemnification and
contribution, defenses, claims, demands, and causes of action that
the Chevron Settling Parties may have concerning any matter,

transaction, or occurrence, whether or not arising out of the subject matter of the Complaint, against any person not a Party to this JCO.

17.  When entered, this JCO shall constitute a judicially approved settlement within the meaning of N.J.S.A. 58:10-23.11f.a.(2)(b) and 42 U.S.C. § 9613(f)(2) and will resolve the liability of the Chevron Settling Parties to the Plaintiffs for the purpose of providing contribution protection to the Chevron Settling Parties from contribution actions under CERCLA, the Spill Act, the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 *et seq.*, the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8 or any other statute, regulation or common law principle related to the causes of action pleaded in the Complaint or matters addressed in this JCO. The Parties agree, and by entering this JCO this Court finds, the Chevron Settling Parties are entitled, upon fully satisfying their payment obligation under this JCO, to protection from contribution actions pursuant to Sections 113(f)(2) of CERCLA, 42 U.S.C. §§ 9613(f)(2), the Spill Act, N.J.S.A. 58:10-23.11f.a.(2)(b), and any other statute, regulation, or common law principle that provides contribution rights against the Chevron Settling Parties with regard to the subject matter of the Complaint or matters addressed in this JCO.

18.  In accordance with N.J.S.A. 58:10-23.11e2 the Plaintiffs published a copy of the draft JCO on Plaintiffs' website, published

notice of this JCO in the New Jersey Register, and arranged for notice, as described in the following paragraph, to other parties in this case and to the other potentially responsible parties. Such notice included the following information:

    a.      the caption of this case;

    b.      the names of the Chevron Settling Parties;

    c.      a summary of the terms of this JCO; and

    d.      that a copy of the draft JCO is available on DEP's website.

19. In fulfillment of N.J.S.A. 58:10-23.11e2 the Parties have provided written notice of this JCO to all other parties in the case and to other potentially responsible parties by:

    a. The Chevron Settling Parties sending a letter to liaison defense counsel and serving a copy of such letter on counsel of record in the above captioned litigation via LexisNexis File and Serve; and

    b. The Chevron Settling Parties publishing notice in the following newspapers:

        i. Asbury Park Press;

        ii. Atlantic City Press;

        iii. Bergen Record;

        iv. Burlington County Times;

        v. New Jersey Herald;

        vi. South Jersey Times; and

17

vii. Star Ledger; and

c. The Plaintiffs distributing a copy of the New Jersey Register Notice via the Office of Natural Resource Restoration's website, which the public can access at http://nj.gov/dep/nrr/settlements/index.html.

This notice is deemed compliant with the notice requirement of N.J.S.A. 58:10-23.11e2.

20. The Plaintiffs will submit this JCO to the Court for entry pursuant to Paragraph 35 below unless, as a result of the notice of this JCO pursuant to Paragraphs 18 and 19 above, the Plaintiffs receive information that discloses facts or considerations that indicate to Plaintiffs, in their sole discretion, that the JCO is inappropriate, improper, or inadequate.

21. In any subsequent administrative or judicial proceeding initiated by the Plaintiffs relating to gasoline contamination at sites covered by this JCO, the Chevron Settling Parties shall not assert, and may not maintain, any defense or claim based upon the principles of the entire controversy doctrine and the argument that such matters should have been included in the above-captioned litigation; provided, however, that nothing in this Paragraph affects the enforceability of this JCO.

## XI. GENERAL PROVISIONS

22. Nothing in this JCO shall be deemed to constitute preauthorization of a claim against the Spill Fund within the meaning of N.J.S.A. 58:10-23.11k. or N.J.A.C. 7:1J.

23. To the extent required, all investigation and Remediation of hazardous substances performed by a Chevron Settling Party (if any) under State oversight (as opposed to federal oversight) will be performed pursuant to the Site Remediation and Reform Act, N.J.S.A. 58:10C-1 et seq., and the accompanying regulations (e.g., using a Licensed Site Remediation Professional) notwithstanding N.J.S.A. 58:10C-27(e).

24. The Plaintiffs enter into this JCO pursuant to the police powers of the State of New Jersey for the enforcement of the laws of the State and the protection of the public health and safety and the environment. All obligations imposed upon the Chevron Settling Parties by this JCO are continuing regulatory obligations pursuant to the police powers of the State of New Jersey.

25. No payment owed or made pursuant to this JCO is intended to constitute a debt, damage claim, penalty, or other claim that may be limited or discharged in a bankruptcy proceeding.

26. This JCO shall be governed and interpreted under the laws of the State of New Jersey.

27. If any provision of this JCO or the application thereof to any person or circumstance, to any extent, is held to be invalid

or unenforceable, (a) the parties hereto shall negotiate in good faith a valid and enforceable provision as similar in terms to such invalid or unenforceable provisions as may be possible and (b) the remainder of this JCO or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision of this JCO shall be valid and enforced to the fullest extent permitted by law.

## XII. EFFECTIVE DATE

28.  The effective date of this JCO shall be the date upon which this JCO is entered by the Court.

## XIII. RETENTION OF JURISDICTION

29.  This Court retains jurisdiction over both the subject matter of this JCO and the Parties for the duration of the performance of the terms and provisions of this JCO for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this JCO, or to effectuate or enforce compliance with its terms.

## XIV. COOPERATION AND DOCUMENT RETENTION

30.  The Chevron Settling Parties agree to make current employees available to testify at or prior to trial for this case only without the need to serve subpoenas so long as such employees are only asked to appear where they would otherwise be subject to a proper subpoena and Plaintiffs pay the costs of such employees' travel for the purpose of providing testimony.  With respect to former employees, the Chevron Settling Parties agree to use reasonable efforts to facilitate the appearance of such witnesses to testify at or prior to trial, so long as such former employees are only asked to appear where they would otherwise be subject to a proper subpoena, Plaintiffs pay the costs of such former employees' travel for the purpose of providing testimony, and the former employee consents to appear. The Chevron Settling Parties will provide to Plaintiffs last known addresses of former employees that are not willing to voluntarily testify unless prohibited by law or contract from doing so.

31.  The Chevron Settling Parties shall comply with the provisions of the March 15, 2005 Order for Preservation of Documents entered in this matter for so long as required under the terms of that Order.


XV.  <u>MODIFICATION</u>

32.  This JCO may only be modified by written agreement between the Parties with approval by the Court and represents the entire

21

integrated agreement between the Plaintiffs and the Chevron Settling Parties, and supersedes all prior negotiations, representations or agreements, either written or oral.

33. Nothing in this JCO shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this JCO.

## XVI. ENTRY OF THIS JCO

34. The Chevron Settling Parties consent to the entry of this JCO without further notice after the comment period specified in Paragraphs 18 and 19 above.

35. Upon conclusion of the Plaintiffs' review of any public comment(s) received as a result of the notice described in Paragraphs 18 and 19 above, the Plaintiffs shall promptly submit this JCO to the Court for entry.

36. If for any reason the Court should decline to approve this JCO in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation among the Parties or third parties.

37. Within thirty days of the Plaintiffs' receipt of payment as set forth in Section V above, Plaintiffs shall request that the Court dismiss this Complaint as to the Chevron Defendants with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

## XVII. SIGNATORIES/SERVICE

38. Each undersigned representative of Plaintiffs and the Chevron Defendants certifies that he or she is authorized to enter into the terms and conditions of this JCO, and to execute and legally bind such Party to this JCO.

39. This JCO may be signed and dated in any number of counterparts, each of which shall be an original, and such counterparts shall together be one and the same JCO.

40. Each Chevron Defendant identifies in this paragraph an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this JCO.  The Chevron Defendants agree to accept service in this manner, and to waive the formal service requirements set forth in the New Jersey Rules of Court or Federal Rules of Civil Procedure, including service of a summons.

**For Chevron Corporation, Chevron U.S.A. Inc. Kewanee Industries, Inc. and UNOCAL Corporation:**  Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833-3505

41. The Parties to this JCO agree that it was negotiated fairly between them at arms' length and that the final terms of this JCO shall be deemed to have been jointly and equally drafted by them, and that the provisions of this JCO therefore should not be construed against a Party to it on the grounds that the Party drafted or was more responsible for drafting the provision(s).

**SO ORDERED** this   22th  day  of  February, 2024   ,              .

Vernon S. Broderick
U.S.D.J.

Matthew J. Platkin
Attorney General of New Jersey
Attorney for Plaintiffs

By: _____
Gwen Farley
Deputy Attorney General

Dated: _____

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION CONSENTS TO
THE FORM AND ENTRY OF THIS ORDER


By: _____
David Haymes, Director
Division of Enforcement, Technical, and Financial Support


Dated: February 6, 2024


By: _____
Paul Sofa
Chief Advisor, Legal and Regulatory Affairs
Dated: February 6, 2024



NEW JERSEY SPILL COMPENSATION FUND CONSENTS TO THE FORM AND ENTRY
OF THIS ORDER


By: _____
David E. Haymes, Administrator
New Jersey Spill Compensation Fund

Dated: February 6, 2024

CHEVRON CORPORATION CONSENTS TO THE FORM AND ENTRY OF THIS ORDER

By: _____
Kari H. Endries, Assistant Secretary

Dated: _____January 25, 2023_____


CHEVRON U.S.A. INC. CONSENTS TO THE FORM AND ENTRY OF THIS ORDER

By: _____
Scott M. Banks, Assistant Secretary

Dated: _____January 25, 2023_____


Kewanee Industries, Inc. CONSENTS TO THE FORM AND ENTRY OF THIS ORDER

By: _____
Valerie B. Villaraza, Vice President and Secretary

Dated: _____January 25, 2023_____


UNOCAL Corporation CONSENTS TO THE FORM AND ENTRY OF THIS ORDER

By: _____
Scott M. Banks, Assistant Secretary

Dated: _____January 25, 2023_____