```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
IN RE: Methyl Tertiary Butyl Ether       :    Master File No:
("MTBE") Products Liability Litigation   :       1:00-1898
                                         :
This Document Relates To:  Commonwealth  :    14cv6228 (DLC)
of Pennsylvania v. Exxon Mobil           :
Corporation, et al., Case No. 1:14-cv-   :      OPINION AND
6228                                     :         ORDER
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Commonwealth of Pennsylvania:
James A. Donahue, III
Neil F. Mara
Pennsylvania Office of the Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120

Yechiel Michael Twersky
Daniel Berger
Tyler E. Wren
Berger Montague, PC
1818 Market St Suite 3600
Philadelphia, PA 19103

Eric S. Pasternack
Stewart L. Cohen
Robert L. Pratter
Michael Coren
Cohen, Placitella & Roth, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103

Michael Axline
Tracey L. O'Reilly
Molly McGinley Han
Miller & Axline, P.C.
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825

For defendants Exxon Mobil Corp. et al., and on behalf of moving
defendants:

James A. Pardo
Lisa A. Gerson
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017

DENISE COTE, District Judge:

This case is part of a consolidated multi-district litigation ("MDL") relating to the contamination of groundwater caused by releases of gasoline containing methyl tertiary butyl ether ("MTBE"). In this action, the Commonwealth of Pennsylvania ("Commonwealth") alleges that the defendants, which include dozens of gasoline manufacturers, distributors, and sellers, are liable for actual or threatened MTBE contamination in Pennsylvania's drinking water. This Opinion addresses moving defendants' February 25, 2025 motion for summary judgment on the Commonwealth's strict product liability claims.[1] For the following reasons, the motion is granted.

## Background

The following facts are taken from the Commonwealth's second amended complaint ("SAC"). They provide background for the discussion of the legal issues raised by the defendants' motion.

---

[1] A list of moving defendants can be found in Attachment A to the defendants' notice of this motion, docketed at ECF No. 953, Case No. 1:14-cv-6228.

MTBE was blended into gasoline from the 1980s to 2000s, at least in part to increase gas's octane, which is meant to reduce tailpipe emissions of carbon monoxide.  Gasoline containing MBTE was widely distributed in Pennsylvania for use in motor vehicles.  MTBE can and did enter the environment through spills, leaks, and other releases of gasoline from various storage and delivery systems, such as underground storage tanks at gas stations.  Compared to other ingredients of gasoline, MTBE does not easily adhere to soil particles and is highly soluble in water.  Once in water, MTBE dissolves easily and moves through the ground quickly.  As a result, it penetrates deeply into underground aquifers; this contamination can spread underground over great distances.  Once contamination occurs, MTBE is difficult to remove and can make drinking water unfit for consumption, due to its foul taste and odor and potential adverse health effects.

The Commonwealth initiated this case in Pennsylvania state court on June 19, 2014.  It was removed to the United States District Court for the Eastern District of Pennsylvania on July 17.  On July 30, the United States Judicial Panel on Multidistrict Litigation ("Panel") transferred the case to this District for pretrial proceedings pursuant to 28 U.S.C. § 1407.  On November 6, 2015, the Commonwealth filed its SAC.  Relevant

to this motion, Counts I and II of the SAC allege strict product liability based on defective design and failure to warn, respectively ("strict liability claims").

Discovery began in April 2016. Consistent with the conduct of other MTBE cases consolidated in this district, 75 focus sites were identified to be the subject of trial in the first phase of this litigation. Fact and expert discovery with respect to the 75 focus sites was completed in late 2022.

On February 25, 2025, the moving defendants filed for summary judgment on the strict liability claims. Three other motions for partial summary judgment were filed on the same day -- two by defendants and one by the Commonwealth. On February 26, the Panel reassigned the MDL to this Court. An Order of March 6 set a briefing schedule for this motion and other motions for summary judgment. This motion was fully briefed on April 11.

## Discussion

Among other claims, the Commonwealth alleges that the moving defendants are strictly liable for the defective design and failure to warn of dangers from gas containing MTBE, which the moving defendants manufactured and distributed. The moving defendants argue that these claims fail because Pennsylvania law recognizes strict product liability only for dangerous products

4

that reach the retail market.  Here, the Commonwealth seeks
damages for injuries suffered while the gas was still in the
distribution system and before it was purchased by any consumer.
Because the moving defendants are correct, their motion is
granted.

    A. Strict Liability

    Strict products liability, in Pennsylvania and elsewhere,
finds its origins in the recognition of food sellers'
responsibility for selling products safe for human consumption.
Tincher v. Omega Flex, Inc., 104 A.3d 328, 344 (Pa. 2014);
Restatement (Second) of Torts § 402A cmt. b (Am. L. Inst. 1965).
Over the twentieth century, courts applied the same rule -- that
is, liability without privity of contract or any showing of
negligence -- to consumer products generally.  Restatement
(Second) of Torts § 402A cmt. b (Am. L. Inst. 1965).  Strict
liability earns its name by virtue of holding sellers liable "to
the user or consumer even though [they have] exercised all
possible care in the preparation and sale of the product."  Id.
cmt. a.  According to the Second Restatement, the justification
for imposing such a harsh rule

        has been said to be that the seller, by marketing his
        product for use and consumption, has undertaken and
        assumed a special responsibility toward any member of
        the consuming public who may be injured by it; that
        the public has the right to and does expect, in the
        case of products which it needs and for which it is

> forced to rely upon the seller, that reputable sellers
> will stand behind their goods; that public policy
> demands that the burden of accidental injuries caused
> by products intended for consumption be placed upon
> those who market them, and be treated as a cost of
> production against which liability insurance can be
> obtained; and that the consumer of such products is
> entitled to the maximum of protection at the hands of
> someone, and the proper persons to afford it are those
> who market the products.

Id. cmt. c.  The U.S. Supreme Court has added that "[p]roducts liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty."  E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866 (1986).  As a result, "[t]he manufacturer is liable whether or not it is negligent because public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market."  Id. (citation omitted).

Given this context, under Pennsylvania law "[t]he duty in strict liability pertains to the duty of a manufacturer and of suppliers in the chain of distribution to the ultimate consumer."  Tincher, 104 A.3d at 383.  Accordingly,

> a person or entity engaged in the business of selling
> a product has a duty to make and/or market the
> product -- which is expected to and does reach the
> user or consumer without substantial change in the
> condition in which it is sold -- free from a defective
> condition unreasonably dangerous to the consumer or
> the consumer's property.

6

Id. (emphasis added) (quoting Restatement (Second) of Torts §
402A(1) (Am. L. Inst. 1965)).  A strict liability claim in
Pennsylvania "requires that physical harm be caused to the
ultimate user or consumer, or to his property."  Thorne v. Pep
Boys Manny Moe & Jack Inc., 980 F.3d 879, 891 (3d Cir. 2020)
(citation omitted).  The comments to the Second Restatement of
Torts, which the Pennsylvania Supreme Court has adopted,
Tincher, 104 A.3d at 399, explain that a "consumer" in this
context is not limited to one who actually purchases or uses the
product, but also includes someone who, for example, helps
prepare a purchased product for consumption or receives the
purchased product as a gift.  Restatement (Second) of Torts §
402A cmt. l (Am. L. Inst. 1965).  "Consumption includes all
ultimate uses for which the product is intended," and "'User'
includes those who are passively enjoying the benefit of the
product . . . as well as those who are utilizing it for the
purpose of doing work upon it."  Id.  The rule that strict
liability arises from the producer's duty to the ultimate
consumer aligns with the common law's objective of "informing a
seller's conduct toward consumers as a group," and its
acknowledgment that "in placing a product on the market,"
manufacturers and distributors aim to "sell the product,
including making the product attractive for sale by making

implicit representations of the product's safety." <u>Tincher</u>, 104 A.3d at 402.

Relatedly, a "manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user; the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer." <u>Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods Co.</u>, 898 A.2d 590, 600 (Pa. 2006).  While maintaining this rule, at least one Pennsylvania court has suggested that strict liability may arise from injuries resulting from "intended [or] logical extensions of the actionable uses" of a product.  <u>Commonwealth v. Monsanto Co.</u>, 269 A.3d 623, 661-62 (Pa. Commnw. Ct. 2021).

B. The Commonwealth's Strict Liability Claims

The Commonwealth cannot maintain claims for strict product liability because its theory of liability arises from harm unrelated to use of the product by consumers.[2]  The plaintiffs

---

[2] Neither party suggests that the Commonwealth's defective design and failure to warn claims are to be treated differently for the purposes of this motion.  Thus, this Opinion's analysis does not distinguish them either.  Also, the moving defendants argue separately that one focus site, Focus Site 69, cannot form the basis of any strict product liability claim because it was a manufacturing facility and thus the gas released there did not enter the stream of commerce at all.  The Commonwealth contests that position, but, because this Opinion's reasoning for granting partial summary judgment applies generally to the

allege that the defendants manufactured and distributed gas that was dangerous because, while it was still in the commercial supply chain, it was released into the environment and contaminated the Commonwealth's groundwater. The Commonwealth alleges no fact suggesting that this harm arose from consumer use of the gas or after the gas was purchased by a consumer. In fact, fundamental to its case is that the product leaked or spilled <u>instead</u> of reaching consumers' gas tanks. Because Pennsylvania law does not impose strict liability under these circumstances, and because there is no factual dispute bearing on that conclusion, partial summary judgment is granted to the defendants.[3]

In arguing to the contrary, the Commonwealth relies heavily on the intermediate appellate court decision in <u>Monsanto</u>, 269 A.3d 623, where the Pennsylvania Commonwealth Court denied the motion to dismiss a strict liability claim based on chemicals --

---

Commonwealth's theory of strict liability, it does not consider Focus Site 69 separately.

[3] The defendants also argue that they cannot be strictly liable because the alleged injury did not arise from "intended use" of the product. This argument is to some extent intertwined with the one discussed above, because it is based on the observation that the alleged harm occurred (or began to occur) while the product was in storage and without it being sold to consumers for them to power their vehicles. But because the product at issue did not reach consumers, as consumers, it is unnecessary to separately assess this argument.

polychlorinated biphenyls ("PCBs") -- leaching from the
defendant's products into the Commonwealth's water, soil, and
air.  Id. at 631-34, 662.  The claim in that case is
distinguishable on multiple grounds.  For one, the Commonwealth
alleged that the defective product had actually reached its
intended users when the contamination occurred; as the court
described the complaint, "PCBs entered the air, water,
sediments, and soils during their ordinary and prescribed uses.
Specifically, PCBs gradually escaped and dispersed from their
intended applications."  Id. at 632 (citation omitted).  Also,
the Monsanto court justified its decision to not dismiss the
claim based on its inability to declare as a matter of law that
the pleaded uses were not intended.  Id. at 662.  Even as it did
so, it acknowledged that "Pennsylvania courts have construed the
intended use criterion strictly."  Id. (citation omitted).  The
defendants' motion here is brought at a very different stage of
the case, and the plaintiff has not raised a triable issue of
fact as to whether MTBE reached the consumer.  To repeat, the
Commonwealth's claims are not based on injury that the
defendants' products caused upon reaching the gas-using public.

     Berrier v. Simplicity Mfg., Inc., 563 F.3d 38 (3d Cir.
2009), on which the Commonwealth also relies, is similarly
inapposite.  Berrier expressed doubt that the Pennsylvania

Supreme Court would deny recovery "under a strict liability theory to spectators at a sporting event who are injured by an airplane that crashes into the stadium because a wing was defectively designed." Id. at 60.  There too, and unlike in this case, the product had reached its end user.  Putting the Commonwealth's claims in terms of Berrier's analogy evokes a plane sitting in a hanger, waiting to be sold and wheeled out -- not one that has already been sold and taken flight.

Otherwise, many of the Commonwealth's arguments center on its ability to bring them as a foreseeable "bystander" injured by the product, or to "stand in the shoes" of the consumer as parens patriae.  It cites several 1970s cases for the proposition that strict liability can arise from injury to a bystander instead of the particular person using the product.  But in each of those cases, the product had reached the end of the commercial supply chain by the time the plaintiff was injured.  Fedorchik v. Massey-Ferguson, Inc., 438 F.Supp. 60, 61 (E.D. Pa. 1977); Salvador v. Atl. Steel Boiler Co., 319 A.2d 903, 904 (Pa. 1974); Pegg v. Gen. Motors Corp., 391 A.2d 1074, 1077 (Pa. Super. Ct. 1978).  And all three of those cases relied on Restatement (Second) of Torts § 402A, which requires that a product "is expected to and does reach the user or consumer."

The plaintiff also cites four decisions from other state and federal courts allowing strict liability claims alleging MTBE contamination.  None of these decisions applied Pennsylvania law.  Three of those decisions did not discuss the argument at issue here, which is that the alleged contamination occurred before the product reached the consumer.  Rhode Island v. Atl. Richfield Co., 357 F.Supp.3d 129, 141-42 (D.R.I. 2018) (rejecting a distinction between private persons and state agencies or employees as gas consumers); State v. Exxon Mobil Corp., 126 A.3d 266, 290 (N.H. 2015) (holding that state as parens patriae can bring failure to warn claim on behalf of New Hampshire residents); Holten v. Chevron U.S.A., No. 00-4703, 2002 U.S. Dist LEXIS 10155, at *7-8 (D.N.J. Apr. 10, 2022) (discussing the defendant's imputed knowledge of dangerousness in strict liability).  In one other, the United States District Court for the District of Maryland denied a motion to dismiss MTBE strict liability claims in part because it found Maryland law to allow bystanders to recover in strict liability for foreseeable harm, even if it occurs apart from consumer use of the product.[4]  State v. Exxon Mobil Corp., 406 F.Supp.3d 420,

---

[4] Although the Commonwealth does not cite it, the Court of Appeals for the Second Circuit used a similar analysis of New York law to affirm a verdict for the plaintiffs on a failure to warn claim following a bellwether trial in this MDL.  In re: MTBE Prods. Liab. Litig., 725 F.3d 65, 123 (2d Cir. 2013).

461-64 (D. Md. 2019).  This reasoning does not help the Commonwealth due to Pennsylvania's requirement that products have reached the consumer market for strict liability to apply.

Thus, the Commonwealth's arguments miss the mark.  The Pennsylvania Supreme Court has stated that strict liability applies in cases where a product is "expected to and does reach the user or consumer without substantial change in the condition in which it is sold."  <u>Tincher</u>, 104 A.3d at 383 (citation omitted).  That statement forecloses strict liability where, as here, the challenged defect arises entirely apart from any transfer to the consumer or indeed from use of the product at all.  In other words, the applicability of bystander liability is immaterial in this case.  The Commonwealth's strict liability claims founder not on the specific identity of the plaintiff or injured party but on the nature of the duty it accuses the defendants of having breached.  "The duty in strict liability pertains to the duty of a manufacturer and of suppliers in the chain of distribution to the ultimate consumer."  <u>Id.</u>

## Conclusion

The moving defendants' February 25, 2025 motion for summary

judgment as to the Commonwealth's claims for strict product liability is granted.

Dated:     New York, New York
           April 22, 2025

                                        _____
                                             DENISE COTE
                                    United States District Judge