UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
                                   :
IN RE: Methyl Tertiary Butyl       :
Ether ("MTBE") Products Liability  :     Master File
Litigation                         :        No:
                                   :      1:00-1898
This Document Relates To:          :
Commonwealth of Pennsylvania v.    :    14cv6228 (DLC)
Exxon Mobil Corporation, et al.,   :
Case No. 1:14-cv-6228              :    OPINION AND
                                   :        ORDER
                                   :
---------------------------------- X

APPEARANCES:

For plaintiff Commonwealth of Pennsylvania:
James A. Donahue, III
Neil F. Mara
Pennsylvania Office of the Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120

Yechiel Michael Twersky
Daniel Berger
Tyler E. Wren
Berger & Montague, PC
1818 Market St Suite 3600
Philadelphia, PA 19103

Eric S. Pasternack
Stewart L. Cohen
Robert L. Pratter
Michael Coren
Cohen, Placitella & Roth
2001 Market Street, Suite 2900
Philadelphia, PA 19103

Michael Axline
Tracey L. O'Reilly
Molly McGinley Han
Miller & Axline, P.C.
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825

For defendants Chevron U.S.A. Inc., Texaco Inc., and TRMI-H LLC,
and on behalf of moving defendants:
Charles C. Correll, Jr.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, CA 94015

J. Robert Sheppard, III
King & Spalding LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002

DENISE COTE, District Judge:

This case is part of a consolidated multi-district litigation ("MDL") relating to the contamination of groundwater caused by releases of gasoline containing methyl tertiary butyl ether ("MTBE"). In this action, the Commonwealth of Pennsylvania ("Commonwealth") alleges that the defendants, which include dozens of gasoline manufacturers, distributors, and sellers, are liable for actual or threatened MTBE contamination in Pennsylvania's drinking water. Certain of the defendants in this MDL have moved for partial summary judgment regarding the Commonwealth of Pennsylvania's claim that defendants negligently failed to provide warnings of the dangers of MTBE.[1] For the following reasons, the motion is granted in part.

---

[1] A list of moving defendants can be found in the attachment to the defendants' notice of this motion, docketed at ECF No. 1007, Case No. 1:14-cv-6228.

## Background

The following facts are taken from the documents submitted in connection with this motion.  They are taken in the light most favorable to the plaintiff, as the non-moving party, unless otherwise noted.

MTBE was blended into gasoline from the 1980s to 2000s, at least in part to increase the octane level of gasoline, which is meant to reduce harm tailpipe emissions.  Gasoline containing MBTE was widely distributed in Pennsylvania for use in motor vehicles.  MTBE can and did enter the environment through spills, leaks, and other releases of gasoline from various storage and delivery systems, such as underground storage tanks ("USTs") at gas stations.  Compared to other ingredients of gasoline, MTBE does not easily adhere to soil particles and is highly soluble in water.  Once in water, MTBE dissolves easily and moves through the ground quickly.  As a result, it penetrates deeply into underground aquifers; this contamination can spread underground over great distances.  Once contamination occurs, MTBE is difficult to remove and can make drinking water unfit for consumption, due to its foul taste and odor and potential adverse health effects.

A.   Moreau's Opinion on Warnings

The Commonwealth's expert on underground petroleum storage systems, Marcel Moreau, has opined that the harms of MTBE releases could have been mitigated by the defendants' promulgation of warnings and information about the safe handling of MTBE.  His report states that "MtBE producers took no steps to warn the petroleum distributors, marketers, and users of their products of the unique products of MtBE," despite knowing that many underground storage tank systems around the country were in poor condition.  His report lists various warnings that the defendants did not give:

> Oil refiners issued no warnings to owners of storage systems that lacked corrosion protection, spill containment, and overfill prevention concerning the increased potential for gasoline blended with MtBE to cause groundwater contamination.  Oil refiners provided no warning to UST system technicians that practices such as draining used gasoline filters into the ground were no longer acceptable.

He also wrote that steps "that would have greatly lessened the number and magnitude of MtBE release incidents" included acknowledging and warning that "MtBE posed an increased threat to groundwater over traditional gasoline."  He opined that people throughout the gasoline supply chain should have been warned that gasoline containing MTBE differed from other gasoline.  According to Moreau, they should have been warned about the consequences of spilling even small amounts and

4

informed of measures to minimize releases and mitigate their consequences.  Instead, he wrote, "[t]he public position of the oil industry was that MtBE gasoline could be handled just like traditional gasoline."

Moreau's report set forth certain measures that different groups should have been instructed to take.  Those groups included owners of UST systems, engineers designing UST systems, fuel delivery drivers, and personnel operating or servicing UST systems.  Moreau wrote that these warnings should have been communicated "repeatedly and using media that the target audience was likely to see, hear, or read."

In a report rebutting the opinions of the one of the defense experts, Moreau further clarified his view on how the defendants should have issued warnings regarding MTBE.  He first explained what he meant by "warning":

> My definition of warning goes beyond simple "messaging" such as "Don't Spill."  My definition of warning includes industry standards and recommended practices, educational documents, informational seminars, and publicity campaigns aimed at describing solutions and raising awareness about the threat to groundwater quality posed by gasoline in general and MtBE in particular.  My definition of warning includes steps to take to effectively contain MtBE gasoline in underground storage systems, detect subsurface releases effectively, and remediate releases efficiently when releases do happen.  My definition of warning includes detailed information concerning engineering solutions such as secondary containment, MtBE-specific leak detection, and pre-installed remediation systems.

He wrote that the "types of warnings that were needed included industry standards and recommended practices, UST operation manuals, and equipment maintenance and servicing procedures." He further explained that, "[i]n addition to printed media," these warnings should have been conveyed through education and training materials and programs. The information would have supplemented existing warnings regarding gasoline in general, which note its flammability and toxicity. Warnings related to USTs, he wrote, "would have provided detailed instructions for storage system owners, operators, service technicians and fuel delivery personnel on how to keep gasoline out of the environment." He also explained while "mere warning labels on fuel dispensers" "would have had limited effect in changing behaviors," his proposal went further, "more akin to an upgrading of industry standards by modifying industry recommended practices and an extensive training and education program."

In a 2022 deposition, Moreau was asked whether he had "fashion[ed] the language of a specific warning that [he] believe[d] should have been provided to service station dealers in Pennsylvania regarding the presence of MTBE in their gasoline." He said that he had not, and that he thought "training and education" would have been more appropriate than a

"warning" as the question had framed it.  He explained that a
"warning in the sense of 'don't spill' or something that is very
generic and . . . not very specific would not have had much of
an effect; . . .  the information that people needed was much
more extensive and much more on the level of training and
education than a simple, you know, 'look before you cross the
street' kind of warning."  Moreau said that each of the groups
of people in the gasoline supply chain "needed some specific
information relating to their responsibilities, how to
accomplish their tasks with absolute minimum spillage of
gasoline, because you could not afford to have even very small
releases of MTBE gasoline . . . ."

     During a 2014 deposition in another case in this MDL,
Moreau was asked whether the measures he recommended would have
entirely eliminated releases of MTBE.  He answered, "No, I don't
think we could have eliminated MTBE releases.  [They] would have
been reduced."  Moreau went on to explain that some releases
still would have occurred because, given the thousands of
storage systems in operation, and the billions of gallons of
gasoline they store, releases "are always going to be a part of
the picture."  "The question is," he said, "how prevalent are
they going to be."

B.   Other Evidence of the Need to Warn

Apart from Moreau's report and testimony, the Commonwealth offers several documents prepared by employees of the defendants from the late 1980s and 1990s commenting on the consequences of adding MTBE to gasoline for tank operators.  A 1991 internal Chevron memorandum explained the danger of MTBE's high solubility in water compared to benzene, another ingredient of gasoline and a common contaminant.  It concluded by noting,

> Our highest degree of concern right now is with
> service stations without spill containment manholes
> that are, or will be, served by racks that are
> blending MTBE.  The combination of MTBE gasoline being
> delivered, the lack of spill containment manholes, and
> shallow groundwater could be tremendously expensive
> for us in the long run.  As they say, an ounce of
> prevention is worth a pound of cure, and in this case
> prevention is certainly prudent.

A 1992 guideline by Amoco Oil Company ("Amoco") explained, in connection with the handling and storage of MTBE and similar chemicals, that "much greater attention must be placed on the increased environmental risks associated with uncontrolled releases of these materials . . . , exceeding that associated with our storage and handling of traditional gasoline products."  Several of these documents acknowledge the need to address even very small spills, such as those that take place when a dispensing nozzle does not automatically shut off or a customer is using a portable gasoline container.

8

Several of these documents recommended communications to handlers or users of gasoline based on MTBE's propensity for contamination.  A 1991 Chevron memorandum on "environmental concerns" of MTBE noted that "Proper disposal procedures should be established and published" related to water or soil that has come into contact with MTBE.  A 1993 Amoco document contemplated the need for a "No Spill" policy arising from "[e]stimates on the cost of MTBE remediation."  "This policy," it explained, "will require both capital improvements and an increased awareness of spill consequences in the attitudes of employees and everyone that handles Amoco's fuels."  It later continued, "The mission should be to increase the awareness of all employees and to specifically eliminate preventable spills occurring at service stations."  A 1994 Amoco memorandum analyzing MTBE remediation costs recommended "Re-emphasiz[ing] spill prevention efforts," including by "Providing personnel training on the safe handling of ethers."

A 1998 paper by the Western States Petroleum Association circulated to its "MTBE Task Force," including representatives of some defendants, made recommendations for reducing spills and leaks at service stations.  It noted that "[s]pills are generally the result of improper operating practices such as product losses during vehicle refueling," listed various steps

9

that service stations could take to reduce spills and leaks, and
recommended "[p]rovid[ing] training materials to full-service
attendants and self-service customers showing proper vehicle
refueling techniques."  Those materials could include inserts in
credit card bills, "point of sale materials"," public service
announcements, and instructional videos for driver education
classes.

A 1998 "Management Strategy for MTBE Remediation
Liabilities" by Mobil included "Compliance and Spill Prevention
Awareness Training" as a measure for preventing and detecting
leaks.  And a 1999 Exxon study on the sources of MTBE
contamination explained that filling underground tanks "presents
an opportunity where human error can lead to release of gasoline
to the environment."

C.    This Lawsuit

The Commonwealth initiated this case in Pennsylvania state
court on June 19, 2014.  It was removed to the United States
District Court for the Eastern District of Pennsylvania on July
17.  On July 30, the United States Judicial Panel on
Multidistrict Litigation ("Panel") transferred the case to this
District for pretrial proceedings pursuant to 28 U.S.C. § 1407.
On November 6, 2015, the Commonwealth filed its second amended
complaint ("SAC").  The Commonwealth's remaining claim is for

10

negligence.  One of the plaintiff's negligence theories is the
defendants' alleged failure to warn -- that is, that they
"failed to provide any warnings or special instructions" that
would have prevented or mitigated MTBE contamination and its
consequences.

Pursuant to a protocol overseen by the MDL Court, the
parties in this case have identified 75 Focus Sites for
discovery and the first trial in this litigation out of over
5,000 contaminated sites in Pennsylvania.  Seventy-
one Focus Sites remain at issue.  Fact and expert discovery with
respect to the Focus Sites was completed in late 2022.  On
February 26, the Panel reassigned the MDL to this Court.  An
Order of March 6 set a briefing schedule for this motion and
other motions for summary judgment.  This motion was filed on
March 21.  An Opinion of April 22 granted defendants' motion for
partial summary judgment on the plaintiff's strict liability
claims, including based on a failure-to-warn theory.  In re:
MTBE Prods. Liab. Litig., No. 14cv6228, 2025 WL 1194445
(S.D.N.Y. Apr. 22, 2025).  This motion was fully briefed on May
5.

## Discussion

The defendants move for summary judgment regarding the
Commonwealth's negligent failure-to-warn claim, arguing that the

11

plaintiff has no evidence of what warnings it alleges the
defendants should have given or of a causal connection between
their omission and the plaintiff's injuries.  They also argue,
in the alternative, that the Commonwealth's failure-to-warn
claim fails to the extent it is based on a duty for a particular
defendant to provide information to a Focus Site owned or
operated by that same defendant.  For the following reasons, the
defendants' arguments for summary judgment on the failure-to-
warn claim in general fall short, but its limited alternative
argument succeeds.

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  A fact is material if it "might affect the
outcome of the suit under the governing law."  Choi v. Tower
Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation
omitted).  "[S]ummary judgment must be rejected if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  Indemn. Ins. Co. of N. Am. v. Unitrans Int'l
Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted).  "The
court's role with respect to such a motion is not to resolve
disputed questions of fact but solely to determine whether, as
to any material fact, there is a genuine issue to be

tried." <u>Moll v. Telesector Res. Grp., Inc.</u>, 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted). "Reliance upon conclusory statements or mere allegations" is insufficient to defeat the motion, however. <u>Id.</u> at 228 (citation omitted). Summary judgment will be granted if "after adequate time for discovery, the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." <u>Id.</u> at 228 (citation omitted). Once the movant has pointed to an absence of evidence on an essential element of the plaintiff's case, "the nonmovant must set forth specific facts showing that there is a genuine issue for trial." <u>Bustamante v. KIND, LLC</u>, 100 F.4th 419, 432 (2d Cir. 2024) (citation omitted).

"The elements of negligence under Pennsylvania law are: (1) a legally recognized duty or obligation of the defendant, (2) the breach thereof, and (3) a causal connection between the breach and the plaintiffs' damages." <u>Shuker v. Smith & Nephew, PLC</u>, 885 F.3d 760, 776 (3d Cir. 2018) (citation omitted). The plaintiff has the burden to prove these elements by a preponderance of the evidence. <u>Walters v. UPMC Presbyterian Shadyside</u>, 187 A.3d 214, 221 (Pa. 2018). To prove causation, the plaintiff must "demonstrate the causal connection between the breach of a duty of care and the harm alleged: that the

increased risk was a substantial factor in bringing about the resultant harm." Green v. Pa. Hosp., 123 A.3d 310, 316 (Pa. 2015) (citation omitted).  The question whether the plaintiff has proven causation by a preponderance of the evidence "is normally a question of fact for the jury," unless "it is clear that reasonable minds could not differ on the issue." Rost v. Ford Motor Co., 151 A.3d 1032, 1049 (Pa. 2016) (citation omitted).

In products liability litigation, "[a] product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product." Zitney v. Wyeth LLC, 243 A.3d 241, 245 (Pa. Super. Ct. 2020) (citation omitted).  "To establish causation for failure to warn, it must be demonstrated that the user of the product would have avoided the risk had he or she been warned of it by the seller/manufacturer." French v. Commonwealth Assocs., Inc., 980 A.2d 623, 632 (Pa. Super. Ct. 2009) (citation omitted).  "To reach a jury on a failure to warn theory of liability, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury." Pavlik v. Lane Ltd./Tobacco Exps. Int'l, 135 F.3d 876, 881 (3d Cir. 1998).

14

I.   The Plaintiff's Failure-to-Warn Theory

     The defendants argue that the plaintiff has no evidence to support its failure-to-warn theory, both because it has not identified the precise language to be included in a warning and because it cannot prove that a warning would have prevented the Commonwealth's alleged injuries.  The Commonwealth responds that its expert Moreau has testified as to what instructions the defendants should have given and how they would have mitigated the alleged harm.[2]  The plaintiff is correct.

     A.   Evidence of Causation

     The Commonwealth has, through its expert and other evidence, set forth a variety of ways that it contends the defendants should have issued warnings about the alleged dangers of MTBE.  Moreau testified regarding communications that he says defendants should have made to different parties that handled or stored MTBE and thus may have been able to prevent its spillage.  Furthermore, the Commonwealth has raised an issue of fact as to the causal connection between the defendants' alleged failure to warn and the MTBE contamination for which the Commonwealth seeks damages.  Moreau has opined that warnings would have decreased

---

[2] The parties' briefing also raises issues related to strict liability for failure to warn.  This Opinion does not address those arguments, because summary judgment was granted as to the strict liability claims in the Opinion of April 22.  In re: MTBE, 2025 WL 1194445, at *5.

both the number and size of releases of gasoline containing
MTBE, which in turn would have resulted in less groundwater
contamination.  Other evidence may show that members of the oil
industry (including at least some defendants) believed that
distributing information about handling MTBE was warranted to
mitigate contamination and its costs.  Construing the record in
favor of the plaintiff, it has a raised a triable issue of fact.

The defendants challenge the plaintiff's ability to prove
causation by pointing out that Moreau did not "fashion the
language of a specific warning" for "service station dealers,"
said a certain kind of warning "would not have had much of an
effect," and acknowledged that warnings would not have entirely
eliminated gasoline leaks and spills.  These arguments do not
justify summary judgment.  First, Moreau's report described both
the substance and form of various proposed instructional
materials to be provided to service stations and other parties,
such as drivers of trucks delivering gasoline to those stations.
These materials would both warn of the dangers of MTBE
contamination and advise the reader about how to mitigate the
risks arising from the transportation and storage of gasoline
containing MTBE.  That he did not himself draft a specific,
cabined warning to prevent the contamination of groundwater does

16

not entitle the defendants to summary judgment.[3]  As for the
admissions in his deposition, Moreau acknowledged merely that a
highly generic, superficial warning (such as a label reading
"Don't Spill") would not have been effective.  But just because
the plaintiff acknowledges one kind of warning would not work
does not mean it cannot prove that other kinds of warnings
would.  Finally, Moreau's acknowledgment that warnings would
have not have completely eliminated gasoline releases does not
foreclose the Commonwealth's ability to prove that a failure to
warn was a "substantial," even if not exclusive, cause of MTBE
contamination.[4]

---

[3] The defendants cite <u>Berrier v. Simplicity Corp.</u>, 413 F. Supp.
2d 431 (E.D. Pa. 2005), <u>vacated sub nom. on other grounds</u>,
<u>Berrier v. Simplicity Mfg., Inc.</u>, 563 F.3d 38 (3d Cir. 2009),
but that ruling arose in part from the court's "fail[ing] to
understand what additional warnings would be more effective" in
preventing accidents given the defendants' actual use of
relevant warnings and instructions.  <u>Id.</u> at 446.  The defendants
make no analogous argument here.  And in <u>Jacobson v. BMW of N.
Am., LLC</u>, No. CV 02-181, 2006 WL 8435046 (W.D. Pa. Feb. 22,
2006), <u>report and recommendation adopted</u>, 2006 WL 8435047 (W.D.
Pa. Mar. 24, 2006), the proffered evidence regarding failure to
warn was two sentences in an expert report such that the theory
"appear[ed] almost as an afterthought," omitting far more than
just specific language of a proposed warning.  <u>Id.</u> at *4.  Not
so here.

[4] Because the plaintiff has raised an issue of fact as to whether
the defendants' alleged failure to warn about MTBE's dangers was
a substantial factor in MTBE contamination, it is unnecessary to
decide the applicability of the "heeding presumption," which the
parties dispute.

B.    Duty to Train or Educate

The defendants next argue that Moreau's opinion that defendants should have provided training and educational information cannot support a failure-to-warn claim.  But the Commonwealth is correct that Pennsylvania negligence law is not so limited.  First, Moreau did not testify that he <u>only</u> recommended "training and education" akin to seminars and publicity campaigns, as the defendants suggest.  In doing so, they overread language from one of his reports that contrasts the usefulness of a short and generic warning label with the other forms of warnings he recommends.  In fact, his reports and testimony proposed communications in a variety of forms, including "printed media" and ranging from "recommended practices" to "detailed instructions" on avoiding or responding to releases.[5]  See <u>Zitney</u>, 243 A.3d at 245 (defining a failure-to-warn claim as arising from inadequate "warnings or <u>instructions</u>" (emphasis supplied)).

Second, the defendants fail to invoke any Pennsylvania caselaw drawing the strictly formalist line between "training

---

[5] In a rebuttal report, for instance, Moreau suggests that an 88-page "Product Safety Bulletin" produced by a major manufacturer of MTBE and promoting guidance for tank installation and operation and leak detection could have served as a model for information distributed by defendants to UST operators.

18

and education," on one hand, and "warning" or "instructions," on the other, that they propose.[6]  Nor do they explain why the common law would impose liability for failing to exercise care in posting a formal "warning" but not for failing to provide "education" when called for by circumstances involving a dangerous product.  In its section on negligent failure to warn, the Second Restatement of Torts refers to a supplier's broad duty to "exercise reasonable care to disclose [a dangerous product's] condition . . . to those who are to use it, or to inform them that it is fit only for . . . limited uses, or if used with . . . particular precautions" -- broad categories of information that may practically entail the supplier engaging in "education" or "training".  Restatement (Second) of Torts § 388 cmt. h.[7]

---

[6] The definitions of those words suggest doing so would be difficult.  Compare Warn, Merriam-Webster, https://www.merriam-webster.com/dictionary/warn ("to given notice to beforehand especially of danger or evil"), with Educate, Merriam-Webster, https://www.merriam-webster.com/dictionary/educate ("to provide with information").

[7] See Hahn v. Richter, 673 A.2d 888, 890 (Pa. 1996) (referring to § 388 of the Second Restatement to evaluate a negligent failure-to-warn claim).  The Commonwealth Court noted in Chin v. New Flyer of Am., Inc., 169 A.3d 689 (Pa. Commw. Ct. 2017), that Pennsylvania had yet to adopt § 388 of the Restatement, but that appears to have been in reference to the sophisticated purchaser defense, which is not at issue here.  Id. at 702.

In support of their argument, the defendants rely primarily on Mackowick v. Westinghouse Electric Corp., 575 A.2d 100 (Pa. 1990), which noted that "[t]he duty to adequately warn does not require the manufacturer to educate a neophyte in the principles of the product." Id. at 102. By reading that line to mean that the duty to warn cannot include training or education, the defendants take it out of context. The next sentence continues, "[a] warning of inherent dangers is sufficient if it adequately notifies the intended user of the unobvious dangers inherent in the product." Id. (emphasis in original). The defendants do not argue here that the alleged dangers of MTBE were widely known or obvious, or that its users and handlers should have known of them without the information the Commonwealth argues was not provided.[8] Central to the plaintiff's theory is the notion that the addition of MTBE called for instruction beyond what someone accustomed to handling gasoline without MTBE would know. The defendants' argument appears to be instead about the

---

[8] Moreau wrote that the introduction of MTBE meant that for the first time gasoline "releases on the order of teaspoons were a serious concern" and "this new hazard was not at all obvious to the delivery drivers, gas station operators, storage system technicians, or people fueling their cars or lawnmowers."

form or extent of the warnings that the plaintiff proposes.
Mackowick does not advance such an argument.[9]

Furthermore, in another action within this MDL, a negligent
failure-to-warn claim (albeit under different state law) was
allowed to proceed although it was based at least in substantial
part on Moreau's testimony that the defendants "should have
provided better training and education to trial site operators
and employees regarding the specific dangers of MTBE." In re:
MTBE Prods. Liab. Litig., No. M21-88, 2015 WL 3763645, at *2
(S.D.N.Y. Jun 16, 2015), motion for reconsideration granted in
part on other grounds, 2015 WL 4939602 (S.D.N.Y. Aug. 19, 2015);
see id. at *6 ("It is ultimately for a jury to decide whether
local operators, empowered with more knowledge about how to
prevent MTBE contamination, could have succeeded in doing so.").
And the Court of Appeals for the Second Circuit affirmed
judgment on a New York failure-to-warn claim based on evidence
that the defendants should have provided information on the

---

[9] The same is true, for the same reason, with respect to the two
other Pennsylvania cases the defendants cite for this argument.
Dauphin Deposit Bank & Trust Co. v. Toyota Motor Corp., 596 A.2d
845, 849 (Pa. Super. Ct. 1991) (holding a liquor manufacture had
no duty to warn of the danger of drinking and driving, which is
"obvious" and "known to most people"); Fletcher v. Raymond
Corp., 623 A.2d 845, 848 (Pa. Super. Ct. 1993) ("The duty to
warn, however, does not require a manufacturer to educate and
instruct a novice in the principles of the product's operation."
(emphasis added)).

"special risks" of MTBE and of a kind unlikely to be widely known or found on a simple warning label: "advis[ing] customers to test for the presence of MTBE when they discovered gasoline contamination at a spill site," and providing "information to operators about the environmental problems associated with MTBE in particular," for example.  In re: MTBE Prods. Liab. Litig., 725 F.3d 65, 123-24 (2d Cir. 2013); see also id. at 123 (citing Moreau's testimony that "a public education campaign, informing everybody who was pumping gas about the dangers of MTBE, was necessary to reduce MTBE contamination" (citation omitted)). While these decisions rested on law not directly applicable here, the defendants provide no compelling reason to hold that Pennsylvania law requires a different approach.

II.  Whether Defendants Can Be Liable for Focus Sites They Owned

The plaintiff has alleged that certain defendants who are gasoline manufacturers and suppliers owned or operated certain Focus Sites during the time period at issue in this litigation. The defendants contend, in the alternative to the arguments addressed above, that a failure-to-warn theory cannot succeed in those circumstances, because they had no duty to warn themselves.  This argument succeeds.

In connection with this motion, the defendants list 32 Focus Sites[10] which the Commonwealth contends at least one defendant or set of defendants owned or operated during time periods relevant to the Commonwealth's claims.[11]  In response, the plaintiff does not identify any authority suggesting that Pennsylvania law imposes a supplier's duty to warn itself or its own employees.  Accordingly, the motion is granted to the extent the plaintiff's failure-to-warn claim is that certain defendants should have communicated internally about MTBE's dangers.[12]

The plaintiff makes two arguments to the contrary, one referencing the law and one about the facts.  First, the Commonwealth criticizes the defendants' citation to a June 16, 2015 Opinion in another case within this MDL, which noted that "there can be no duty to warn oneself."  In re: MTBE, 2015 WL 3763645, at *6.  Since the plaintiff identifies no reason to believe that the same principle does not apply with equal force in Pennsylvania, it is unnecessary to address the dispute

---

[10] The defendants' initial brief listed 33 Focus Sites, including Focus Site 28, but its reply withdraws the motion with respect to that particular Site.

[11] Those time periods are listed in the defendants' reply brief.

[12] To be clear, the defendants do not argue that defendants in their capacity as manufacturers or suppliers had no duty to warn employees of other defendants that owned or operated a Focus Site, at least not in this section of its motion.

23

regarding that 2015 Opinion.  The plaintiff, which carries the burden of proof, does not cite any support for the notion that Pennsylvania courts recognize a duty to warn oneself or one's own employees or agents.

Second, the Commonwealth argues that summary judgment cannot be granted for the defendants because they have not admitted that they owned or operated the Sites at issue. Instead, the defendants merely point out that the Commonwealth alleges their ownership.  The plaintiff, which carries the burden of proof, does not argue the defendants did not own or operate the Focus Sites their motion identifies.  Accordingly, there is no triable issue of fact preventing summary judgment as to the Sites owned or operated by the defendants.

## Conclusion

The moving defendants' March 21, 2025 motion for partial summary judgment on the Commonwealth's negligent failure-to-warn claim is granted in part.  To the extent a Site was owned or operated by the defendant who manufactured or supplied the gasoline containing MTBE released at that Site, the claim associated with that Site is granted as to that defendant.

Dated:    New York, New York
          June 11, 2025

                                        _____
                                        DENISE COTE
                                        United States District Judge

24